CLOSED,APPEAL,ETT–5D,LC2,PROTO

# U.S. District Court
# DISTRICT OF KANSAS (Kansas City)
# CIVIL DOCKET FOR CASE #: <u>2:20–cv–02068–HLT–JPO</u>
## *Internal Use Only*

Jaiyeola v. Garmin International, Inc.
Assigned to: District Judge Holly L. Teeter
Referred to: Magistrate Judge James P. O'Hara
Case in other court:  10CCA, 21–03075
                  10CCA, 21–03108
                  10CCA, 21–03114
Cause: 42:1983 Civil Rights Act

Date Filed: 02/19/2020
Date Terminated: 06/24/2021
Jury Demand: Plaintiff
Nature of Suit: 442 Civil Rights: Jobs
Jurisdiction: Diversity

**Plaintiff**

**Ganiyu Ayinla Jaiyeola**
*ECF Notifications Only*

represented by **Ganiyu Ayinla Jaiyeola**
749 Preserve Cir Dr SE Apt 6
Grand Rapids, MI 49548
616–635–4025
Email: <u>ganiyu.jaiyeola@gmail.com</u>
PRO SE
*Bar Number:*
*Bar Status:*

V.

**Defendant**

**Garmin International, Inc.**

represented by **Kerri S. Reisdorff**
Ogletree, Deakins, Nash, Smoak &
Stewart, PC – KC
4520 Main Street, Suite 400
Kansas City, MO 64111
816–471–1301
Fax: 816–471–1303
Alternative Phone:
Cell Phone:
Email: <u>kerri.reisdorff@ogletree.com</u>
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 19709*
*Bar Status: Active*

**Margaret K. Young**
Ogletree, Deakins, Nash, Smoak &
Stewart, PC – KC
4520 Main Street, Suite 400
Kansas City, MO 64111
816–471–1301
Fax: 816–471–1303

Alternative Phone: 816–410–2231
Cell Phone:
Email: margaret.young@ogletree.com
*TERMINATED: 02/25/2021*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 28533*
*Bar Status: Active*

Email All Attorneys
Email All Attorneys and Additional Recipients

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 02/19/2020 | 1 | | COMPLAINT (No Summons Issued) with trial location of Kansas City, filed by Ganiyu Ayinla Jaiyeola. (Attachments: # 1 Exhibit List, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibi E, # 7 Exhibit F, # 8 Exhibit G, # 9 Exhibit H, # 10 Exhibit I, # 11 Exhibit J, # 12 Exhibit K, # 13 Exhibit L, # 14 Exhibit M, # 15 Exhibit N, # 16 Exhibit O, # 17 Exhibit P, # 18 Exhibit Q, # 19 Exhibit R, # 20 Exhibit R–1, # 21 Exhibit R–2, # 22 Exhibit R–3, # 23 Exhibit R–4, # 24 Exhibit R–5, # 25 Exhibit S, # 26 Exhibit S–1, # 27 Exhibit S–2, # 28 Exhibit S–3, # 29 Exhibit S–4, # 30 Exhibit S–5, # 31 Exhibit S–6, # 32 Exhibit S–7, # 33 Exhibit S–8, # 34 Exhibit S–9, # 35 Exhibit S–10, # 36 Exhibit S–11, # 37 Exhibit S–12, # 38 Exhibit S–13, # 39 Exhibit S–14, # 40 Exhibit T)(ca) (Entered: 02/19/2020) |
| 02/19/2020 | 2 | | CIVIL COVER SHEET re 1 Complaint, by Plaintiff Ganiyu Ayinla Jaiyeola. (ca) (Entered: 02/19/2020) |
| 02/19/2020 | 3 | | MOTION for Leave to Proceed in forma pauperis NOTE – Access to document is restricted pursuant to the courts privacy policy. by Plaintiff Ganiyu Ayinla Jaiyeola (referred to Magistrate Judge James P. O'Hara) (Attachments: # 1 Affidavit, # 2 Exhibit List, # 3 Exhibit A, # 4 Exhibit B)(ca) (Entered: 02/19/2020) |
| 02/19/2020 | 4 | | MOTION to Appoint Counsel by Plaintiff Ganiyu Ayinla Jaiyeola (referred to Magistrate Judge James P. O'Hara) (Attachments: # 1 Exhibit List, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E, # 7 Exhibit F, # 8 Exhibit G, # 9 Exhibit H, # 10 Exhibit I (ca) (Entered: 02/19/2020) |
| 02/19/2020 | 5 | | DOCKET ANNOTATION: Plaintiff Ganiyu Ayinla Jaiyeola is a registered pro se participant and will receive ECF notifications only. (gw) (Entered: 02/19/2020) |
| 02/20/2020 | 6 | | ORDER granting 3 motion for leave to proceed in forma pauperis; denying 4 motion to appoint counsel. The Clerk shall issue summons to the US Marshal or Deputy Marshal, who are appointed pursuant to Fed. R. Civ. P. 4(c)(3). Signed by Magistrate Judge James P. O'Hara on 2/20/20. (jc) (Entered: 02/20/2020) |
| 02/20/2020 | | | SUMMONS ISSUED as to Garmin International, Inc. (issued to US Marshal USM 285 for service) (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry) (ca) (Entered: 02/20/2020) |
| 02/28/2020 | 7 | | |

| | | |
|---|---|---|
| | | SUMMONS RETURNED EXECUTED –– Certified Mail (USM 285) by Ganiyu Ayinla Jaiyeola upon Garmin International, Inc. served on 2/25/2020, answer due 3/17/2020. (ca) (Entered: 02/28/2020) |
| 02/28/2020 | | NOTICE Re: Pro Se Mailing. Document 7 Return of Service of Summons Executed filed by Ganiyu Ayinla Jaiyeola mailed to Ganiyu Ayinla Jaiyeola on 2/28/2020 by regular mail. (ca) (Entered: 02/28/2020) |
| 02/28/2020 | 8 | CLERKS ORDER EXTENDING TIME until 3/31/2020 for Defendant Garmin International, Inc. to answer or otherwise plead. Signed by deputy clerk on 2/28/2020. (ca) (Entered: 02/28/2020) |
| 03/31/2020 | 9 | ANSWER to 1 Complaint by Garmin International, Inc.(Reisdorff, Kerri) (Entered: 03/31/2020) |
| 03/31/2020 | 10 | MOTION to Dismiss *(Partial)* by Defendant Garmin International, Inc. (Reisdorff, Kerri) (Entered: 03/31/2020) |
| 03/31/2020 | 11 | MEMORANDUM IN SUPPORT of 10 MOTION to Dismiss *(Partial)* by Defendant Garmin International, Inc.(Reisdorff, Kerri) (Entered: 03/31/2020) |
| 04/14/2020 | 12 | MEMORANDUM IN OPPOSITION by Plaintiff Ganiyu Ayinla Jaiyeola re 10 MOTION to Dismiss *(Partial)*. (Attachments: # 1 Exhibit Index, # 2 Exhibits A–E)(smc) (Entered: 04/14/2020) |
| 04/27/2020 | 13 | REPLY TO RESPONSE TO MOTION by Defendant Garmin International, Inc. re: 10 MOTION to Dismiss *(Partial)* (Reisdorff, Kerri) (Entered: 04/27/2020) |
| 04/28/2020 | 14 | MOTION for Leave to file SURREPLY in Opposition to Defendant's Reply in Support of Defendant's Partial Motion to Dismiss by Plaintiff Ganiyu Ayinla Jaiyeola. (smc) (Entered: 04/29/2020) |
| 04/29/2020 | | **MOTION REFERRAL to Magistrate Judge REMOVED as to: 14 MOTION for Leave to file SURREPLY IN OPPOSITION TO DEFENDANT'S REPLY IN SUPPORT OF DEFENDANT'S PARTIAL MOTION TO DISMISS. The motion will be resolved by the District Judge.(ss)** (Entered: 04/29/2020) |
| 04/29/2020 | 15 | ORDER denying 14 Motion for Leave to File Surreply. Entered by District Judge John W. Broomes on 04/29/2020. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (jmr) (Entered: 04/29/2020) |
| 08/12/2020 | 16 | INITIAL ORDER SETTING SCHEDULING CONFERENCE: Scheduling Conference set for 9/29/2020 at 11:00 AM by Telephone before Magistrate Judge James P. O'Hara. Report of Parties Planning Meeting deadline 9/21/2020. Rule 26 Initial Disclosures Deadline set for 9/21/2020. All parties and counsel participating in this phone conference are directed to dial the conference center line 888–363–4749, using access code 8914911 to join the conference. Signed by Magistrate Judge James P. O'Hara on 8/12/2020. (ss) (Entered: 08/12/2020) |
| 08/12/2020 | | NOTICE Re: Pro Se Mailing. Document 16 Initial Order Setting Scheduling Conference, mailed to Ganiyu Ayinla Jaiyeola on 8/12/2020 by regular mail. (hw) (Entered: 08/12/2020) |

| 08/12/2020 | 17 | | MEMORANDUM AND ORDER granting in part and denying in part 10 Defendant's Partial Motion to Dismiss. Defendant's motion to dismiss count II of Plaintiff's complaint is DENIED. Defendant's motion to dismiss count VI of Plaintiff's complaint is GRANTED. Signed by District Judge John W. Broomes on 8/12/2020. (mam) (Entered: 08/12/2020) |
| 09/29/2020 | 18 | | MINUTE ENTRY for proceedings held before Magistrate Judge James P. O'Hara: SCHEDULING CONFERENCE held on 9/29/2020. (AT&T conference line.) (This is a TEXT ENTRY ONLY. There is no .pdf document associated with this entry.) (ss) (Entered: 09/29/2020) |
| 09/29/2020 | 19 | | SCHEDULING ORDER: Discovery deadline 3/31/2021. Dispositive motion deadline 6/1/2021. Proposed Pretrial Order due by 4/9/2021. Final Pretrial Conference set for 4/19/2021 at 9:00 AM in KC Courtroom 223 (JPO) before Magistrate Judge James P. O'Hara. Signed by Magistrate Judge James P. O'Hara on 9/29/2020.Mailed to pro se party Ganiyu A. Jaiyeola by regular mail. (ss) (Entered: 09/29/2020) |
| 10/06/2020 | 20 | | NOTICE OF SERVICE by Ganiyu Ayinla Jaiyeola of First Set of Interrogatories, Plaintiff's First Requests to Admit, and Plaintiff's First Request for Production of Documents. (hw) (Entered: 10/06/2020) |
| 10/06/2020 | 21 | | CERTIFICATE OF SERVICE of First Interrogatories and First Request for Production of Documents to Plaintiff by Garmin International, Inc.. (Reisdorff, Kerri) (Entered: 10/06/2020) |
| 10/06/2020 | 22 | | MOTION for Protective Order by Defendant Garmin International, Inc. (referred to Magistrate Judge James P. O'Hara) (Young, Margaret) (Entered: 10/06/2020) |
| 10/06/2020 | 23 | | MEMORANDUM IN SUPPORT of 22 MOTION for Protective Order by Defendant Garmin International, Inc. (Attachments: # 1 Exhibit Ex. A – Protective Order)(Young, Margaret) (Entered: 10/06/2020) |
| 10/06/2020 | 24 | | NOTICE OF SERVICE by Ganiyu Ayinla Jaiyeola of Confidential Settlement Report to Magistrate Judge O'Hara. (hw) (Entered: 10/06/2020) |
| 10/06/2020 | 25 | | NOTICE OF SERVICE by Ganiyu Ayinla Jaiyeola of Plaintiff's Report (in edited Word and edited pdf format) of the Parties Planning Conference (September 9, 2020) to Magistrate Judge O'Hara. (hw) (Entered: 10/06/2020) |
| 10/13/2020 | 26 | | TRANSCRIPT of Telephone Conference held September 29, 2020 before Judge James P. O'Hara, Court Reporter Dani Murray, 913–907–1434, dani_murray@ksd.uscourts.gov. Transcript purchased by: Mr. Jaiyeola.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.ksd.uscourts.gov. Please read this policy carefully. If no Notice of Intent to Redact is filed within the allotted time, this transcript will be made electronically available on the date set forth below.** |

| | | | |
|---|---|---|---|
| | | | Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter or PACER. Release of Transcript Restriction set for 1/11/2021. (dm) (Entered: 10/13/2020) |
| 10/13/2020 | 27 | | MOTION for Extension of Time to File Response as to 22 MOTION for Protective Order by Plaintiff Ganiyu Ayinla Jaiyeola (referred to Magistrate Judge James P. O'Hara) (Attachments: # 1 Index, # 2 Exhibit A)(hw) (Entered: 10/13/2020) |
| 10/13/2020 | 28 | | ORDER granting 27 plaintiff's unopposed motion for extension. Plaintiff shall respond to defendant's motion for protective order 22 by October 20, 2020. Signed by Magistrate Judge James P. O'Hara on 10/13/20. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (jc) (Entered: 10/13/2020) |
| 10/15/2020 | 29 | | RESPONSE by Plaintiff Ganiyu Ayinla Jaiyeola re 22 Motion for Protective Order. (Attachments: # 1 Index of Exhibits, # 2 Exhibit)(hw) (Entered: 10/15/2020) |
| 10/16/2020 | 30 | | Unopposed MOTION for Extension of Time to File Reply as to 22 MOTION for Protective Order *Defendant's Unopposed Motion for Extension of Time to File Reply in Support of its Motion for Protective Order* by Defendant Garmin International, Inc. (referred to Magistrate Judge James P. O'Hara) (Young, Margaret) (Entered: 10/16/2020) |
| 10/16/2020 | 31 | | ORDER granting 30 defendant's unopposed motion for extension of time. Defendant shall file its reply in support of its motion for protective order 22 by October 26, 2020. Signed by Magistrate Judge James P. O'Hara on 10/16/20. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (jc) (Entered: 10/16/2020) |
| 10/21/2020 | 32 | | NOTICE OF SERVICE by Ganiyu Ayinla Jaiyeola of Answers to Defendant Garmin's First Interrogatories. (hw) (Entered: 10/21/2020) |
| 10/21/2020 | 33 | | NOTICE OF SERVICE by Ganiyu Ayinla Jaiyeola of Answers to Defendant Garmin's First Request for Production of Documents. (hw) (Entered: 10/21/2020) |
| 10/26/2020 | 34 | | REPLY TO RESPONSE TO MOTION of 22 MOTION for Protective Order by Defendant Garmin International, Inc. (Attachments: # 1 Exhibit Protective Order, # 2 Exhibit Plaintiff Email)(Reisdorff, Kerri) Modified on 10/27/2020 to correct title, incorrect event used (hw). (Entered: 10/26/2020) |
| 11/05/2020 | 35 | | MOTION for Disqualification of Magistrate Judge by Plaintiff Ganiyu Ayinla Jaiyeola. (smc) (Entered: 11/05/2020) |
| 11/05/2020 | 36 | | MEMORANDUM IN SUPPORT of 35 MOTION for Disqualification of Magistrate Judge by Plaintiff Ganiyu Ayinla Jaiyeola. (Attachments: # 1 Exhibit Index, # 2 Exhibit A)(smc) (Entered: 11/05/2020) |
| 11/06/2020 | 37 | | ORDER REFERRING MOTION to Magistrate Judge James P. O'Hara re 35 MOTION for Recusal filed by Ganiyu Ayinla Jaiyeola. Entered by District Judge John W. Broomes on 11/06/2020. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.)(jmr) (Entered: |

| | | | |
|---|---|---|---|
| | | | 11/06/2020) |
| 11/09/2020 | 38 | | ORDER denying 35 plaintiff's motion to disqualify. Signed by Magistrate Judge James P. O'Hara on 11/9/20. (jc) (Entered: 11/09/2020) |
| 11/09/2020 | 39 | | ORDER granting 22 defendant's motion for protective order. Signed by Magistrate Judge James P. O'Hara on 11/9/20. (jc) (Entered: 11/09/2020) |
| 11/09/2020 | 40 | | PROTECTIVE ORDER. The court finds good cause to enter defendant's proposed protective order. Signed by Magistrate Judge James P. O'Hara on 11/9/20. (jc) (Entered: 11/09/2020) |
| 11/10/2020 | 41 | | CERTIFICATE OF SERVICE of Defendant's Second Requests for Production of Documents to Plaintiff by Garmin International, Inc.. (Young, Margaret) (Entered: 11/10/2020) |
| 11/13/2020 | 42 | | MOTION for Order (Titled Plaintiff's Motion Regarding Objections to Magistrate Judge's Order on Motion to Recuse) by Plaintiff Ganiyu Ayinla Jaiyeola. (smc) (Entered: 11/13/2020) |
| 11/13/2020 | 43 | | Objection to Order of Magistrate Judge re 38 Order on Motion for Recusal by Plaintiff Ganiyu Ayinla Jaiyeola. (smc) (Entered: 11/13/2020) |
| 11/16/2020 | | | **MOTION REFERRAL to Magistrate Judge REMOVED as to: 42 MOTION for Order. The motion will be resolved by the District Judge.(ss)** (Entered: 11/16/2020) |
| 11/18/2020 | 44 | | Unopposed MOTION for extension of time *to file Motion to Compel Discovery* by Defendant Garmin International, Inc. (referred to Magistrate Judge James P. O'Hara) (Young, Margaret) (Entered: 11/18/2020) |
| 11/18/2020 | 45 | | ORDER granting 44 defendant's unopposed motion for extension of time. For good cause, defendant shall file any motion to compel plaintiff's discovery responses by December 21, 2020. Signed by Magistrate Judge James P. O'Hara on 11/18/20. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (jc) (Entered: 11/18/2020) |
| 11/23/2020 | 46 | | NOTICE OF SERVICE by Ganiyu Ayinla Jaiyeola of Answers to Defendant Garmin's Second Request for Production of Documents. (ca) (Entered: 11/23/2020) |
| 12/01/2020 | 47 | | NOTICE OF SERVICE by Ganiyu Ayinla Jaiyeola of Second Set of Interrogatories. (heo) (Entered: 12/01/2020) |
| 12/01/2020 | 48 | | NOTICE OF SERVICE by Ganiyu Ayinla Jaiyeola of Second Set of Request For Documents and Things to Defendant Garmin. (heo) (Entered: 12/01/2020) |
| 12/09/2020 | 49 | | MINUTE ORDER REASSIGNING CASE. Case reassigned to District Judge Holly L. Teeter for all further proceedings. District Judge John W. Broomes no longer assigned to case. Signed by deputy clerk on 12/9/20. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.)(kao) (Entered: 12/09/2020) |
| 12/15/2020 | 50 | | CERTIFICATE OF SERVICE of First Supplemental Answers and Objections to Plaintiff's First Interrogatories to Defendant Garmin by Garmin International, Inc.. (Reisdorff, Kerri) (Entered: 12/15/2020) |

| 12/16/2020 | 51 | | ORDER denying 42 Motion for Order and overruling 43 Objection to Order of Magistrate Judge. Signed by District Judge Holly L. Teeter on 12/16/2020. (ctv) (Entered: 12/16/2020) |
|---|---|---|---|
| 12/18/2020 | 52 | | MOTION for extension of time to file Motion to Compel Discovery by Plaintiff Ganiyu Ayinla Jaiyeola. (referred to Magistrate Judge James P. O'Hara) (ca) (Entered: 12/18/2020) |
| 12/18/2020 | 53 | | ORDER granting 52 plaintiff's unopposed motion for extension of time. Plaintiff shall file any motion to compel defendant's discovery responses by January 19, 2021. Signed by Magistrate Judge James P. O'Hara on 12/18/20. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (jc) (Entered: 12/18/2020) |
| 12/21/2020 | 54 | | Unopposed MOTION for extension of time by Defendant Garmin International, Inc. (referred to Magistrate Judge James P. O'Hara) (Young, Margaret) (Entered: 12/21/2020) |
| 12/22/2020 | 55 | | ORDER granting 54 unopposed motion for extension of time for Defendant to file a motion to compel regarding Defendant's Interrogatory No. 10 and Defendant's Request for Production No. 13. The new deadline for Defendant to file a motion to compel this discovery is now 30 days after Plaintiff's deposition. Signed by Magistrate Judge James P. O'Hara on 12/22/2020. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (amh) (Entered: 12/22/2020) |
| 12/26/2020 | 56 | | NOTICE OF SERVICE by Ganiyu Ayinla Jaiyeola of Third Set of Request for Documents and Things to Defendant Garmin. (heo) (Entered: 12/28/2020) |
| 12/29/2020 | 57 | | Joint MOTION for extension of time *for Parties to File Expert Witness Disclosures* by Defendant Garmin International, Inc. (referred to Magistrate Judge James P. O'Hara) (Reisdorff, Kerri) (Entered: 12/29/2020) |
| 12/29/2020 | 58 | | ORDER granting 57 joint motion to extend expert disclosure deadlines. Plaintiff shall serve his expert disclosures by January 22, 2021. Defendant shall serve its expert disclosures by February 12, 2021. Rebuttal experts must be disclosed by March 8, 2021. Signed by Magistrate Judge James P. O'Hara on 12/29/20. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (jc) (Entered: 12/29/2020) |
| 01/05/2021 | 59 | | CERTIFICATE OF SERVICE of Answers and Objections to Plaintiff's Second Interrogatories and Responses and Objections to Plaintiff's Second Request for Production of Documents by Garmin International, Inc.. (Reisdorff, Kerri) (Entered: 01/05/2021) |
| 01/07/2021 | 60 | | NOTICE by Plaintiff Ganiyu Ayinla Jaiyeola of taking deposition of John Mudd on 1/21/2021. (heo) (Entered: 01/07/2021) |
| 01/08/2021 | 61 | | Plaintiff's MOTION for Expedited Hearing and MOTION for Protective Order Excluding Defendant Representatives During the Deposition of Fact Witnesses by Plaintiff Ganiyu Ayinla Jaiyeola. (referred to Magistrate Judge James P. O'Hara) (Attachments: # 1 Index of Exhibits, # 2 Ex A)(heo) (Entered: 01/11/2021) |
| 01/08/2021 | 62 | | MEMORANDUM IN SUPPORT of 61 MOTION for Expedited Hearing and MOTION for Protective Order Excluding Defendant Representatives During |

| | | | |
|---|---|---|---|
| | | | the Deposition of Fact Witnesses by Plaintiff Ganiyu Ayinla Jaiyeola. (Attachments: # 1 Index of Exhibits, # 2 Exhibits)(heo) (Entered: 01/11/2021) |
| 01/12/2021 | 63 | | PLAINTIFF'S MOTION TO COMPEL DISCOVERY and ACCELERATED HEARING REQUESTED by Plaintiff Ganiyu Ayinla Jaiyeola. (referred to Magistrate Judge James P. O'Hara) (Attachments: # 1 Index of Exhibits, # 2 Exhibits A–C)(ca) (Entered: 01/12/2021) |
| 01/12/2021 | 64 | | MEMORANDUM IN SUPPORT of 63 MOTION TO COMPEL DISCOVERY and ACCELERATED HEARING REQUESTED by Plaintiff Ganiyu Ayinla Jaiyeola. (Attachments: # 1 Index of Exhibits, # 2 Exhibits A–H)(ca) Modified title on 1/12/2021 (ca). (Entered: 01/12/2021) |
| 01/12/2021 | 65 | | ORDER denying 61 Motion for Hearing; denying 61 Motion for Protective Order. Signed by Magistrate Judge James P. O'Hara on 1/12/21. (jc) (Entered: 01/12/2021) |
| 01/12/2021 | 66 | | ORDER re 63 plaintiff's motion to compel. The court previously granted plaintiff's unopposed motion for extension of time to compel defendant's discovery responses, which gave plaintiff an additional month to file a motion to compel (ECF No. 53). Plaintiff has now filed that motion and asks the court to expedite deadlines so it's fully briefed and ruled on to accommodate a recently–noticed January 21, 2021 deposition. The court does not find good cause to do so and will not expedite deadlines as to this motion. Defendant shall have the full 14 days to respond to the motion and plaintiff shall have 14 days to reply. If this means plaintiff has to postpone the January 21 deposition, so be it. Signed by Magistrate Judge James P. O'Hara on 1/12/21. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (jc) (Entered: 01/12/2021) |
| 01/13/2021 | 67 | | MOTION for Reconsideration re 65 Order on Motion for Hearing, Order on Motion for Protective Order by Plaintiff Ganiyu Ayinla Jaiyeola. (referred to Magistrate Judge James P. O'Hara) (ca) (Entered: 01/13/2021) |
| 01/13/2021 | 68 | | MEMORANDUM IN SUPPORT of 67 MOTION for Reconsideration re 65 Order on Motion for Hearing, Order on Motion for Protective Order by Plaintiff Ganiyu Ayinla Jaiyeola. (Attachments: # 1 Index of Exhibits, # 2 Exhibits A–E)(ca) (Entered: 01/13/2021) |
| 01/14/2021 | 69 | | NOTICE by Defendant Garmin International, Inc. of taking deposition of Ganiyu Jaiyeola on February 18, 2021 (Reisdorff, Kerri) (Entered: 01/14/2021) |
| 01/14/2021 | 70 | | AMENDED NOTICE by Defendant Garmin International, Inc. of taking deposition of Ganiyu Jaiyeola on February 18, 2021 (Reisdorff, Kerri) Modified title on 1/15/2021 (ca). (Entered: 01/14/2021) |
| 01/15/2021 | 71 | | ORDER denying 67 plaintiff's motion for reconsideration. Signed by Magistrate Judge James P. O'Hara on 1/15/21. (jc) (Entered: 01/15/2021) |
| 01/15/2021 | 72 | | NOTICE of Clarification re 70 Amended Notice to Take Deposition by Ganiyu Ayinla Jaiyeola (Attachments: # 1 Index of Exhibits, # 2 Exhibits A – E)(ca) (Entered: 01/15/2021) |
| 01/15/2021 | 73 | | Motion for Review (titled: Plaintiff's Objection on Magistrate Judge's Order Regarding Plaintiff's Motion For Protective Order Excluding Defendant |

| | | | |
|---|---|---|---|
| | | | Representatives During the Deposition of Fact Witness) re 65 Order on Motion for Hearing, Order on Motion for Protective Order by Plaintiff Ganiyu Ayinla Jaiyeola(ca) Modified event on 1/15/2021 (ca). (Entered: 01/15/2021) |
| 01/15/2021 | 74 | | SUPPLEMENT (titled: Plaintiff's Memorandum on Objection to Order) to 73 Motion for Review re 65 Order on Motion for Hearing, Order on Motion for Protective Order by Plaintiff Ganiyu Ayinla Jaiyeola. (ca) Modified title on 1/15/2021 (ca). (Entered: 01/15/2021) |
| 01/17/2021 | 76 | | AMENDED NOTICE by Plaintiff Ganiyu Ayinla Jaiyeola of taking deposition of John Mudd on 2/23/2021. (heo) (Entered: 01/19/2021) |
| 01/19/2021 | 75 | | ORDER overruling 73 Plaintiff's Objection. Signed by District Judge Holly L. Teeter on 1/19/2021. (md) (Entered: 01/19/2021) |
| 01/19/2021 | 77 | | MOTION for Order to Expand the Number of Interrogatories by Plaintiff Ganiyu Ayinla Jaiyeola. (referred to Magistrate Judge James P. O'Hara) (Attachments: # 1 Index of Exhibits, # 2 Exhibits)(heo) (Entered: 01/19/2021) |
| 01/19/2021 | 78 | | MEMORANDUM IN SUPPORT of 77 MOTION for Order to Expand the Number of Interrogatories by Plaintiff Ganiyu Ayinla Jaiyeola. (heo) (Entered: 01/19/2021) |
| 01/21/2021 | 79 | | NOTICE OF SERVICE by Ganiyu Ayinla Jaiyeola of Economics Expert Report. (heo) (Entered: 01/21/2021) |
| 01/21/2021 | 80 | | NOTICE OF SERVICE by Ganiyu Ayinla Jaiyeola of First Supplemental Disclosures Pursuant to Fed. R. Civ. P. 26(a)(1). (heo) (Entered: 01/21/2021) |
| 01/22/2021 | 81 | | MOTION for Disqualification of Magistrate Judge Pursuant to 28 USC 455(a) by Plaintiff Ganiyu Ayinla Jaiyeola. (referred to Magistrate Judge James P. O'Hara) (heo) (Entered: 01/22/2021) |
| 01/22/2021 | 82 | | MEMORANDUM IN SUPPORT of 81 MOTION for Disqualification of Magistrate Judge by Plaintiff Ganiyu Ayinla Jaiyeola. (heo) (Entered: 01/22/2021) |
| 01/25/2021 | 83 | | ORDER denying 81 plaintiff's second motion for disqualification. Signed by Magistrate Judge James P. O'Hara on 1/25/21. (jc) (Entered: 01/25/2021) |
| 01/25/2021 | 84 | | CERTIFICATE OF SERVICE of Responses and Objections to Third Request for Production from Plaintiff by Garmin International, Inc.. (Reisdorff, Kerri) (Entered: 01/25/2021) |
| 01/26/2021 | 85 | | ***FILED INCORRECTLY, SEE DE 86 FOR CORRECTED ENTRY*** RESPONSE TO MOTION by Defendant Garmin International, Inc. re: 63 Motion to Compel, Motion for Hearing (Attachments: # 1 Exhibit List Index, # 2 Exhibit Jan 4, 2021 Email, # 3 Exhibit Nov. 22, 2019 Email and Letter, # 4 Exhibit Declaration of David Kight, # 5 Exhibit Redacted Nov. 22, 2019 Email, # 6 Exhibit Nov. 25, 2019 Email and Letter)(Reisdorff, Kerri) Modified to reflect correct event type on 1/26/2021. (gw) Modified on 1/28/2021 to disregard and unlink relationship with 63 (sz). (Entered: 01/26/2021) |
| 01/26/2021 | 86 | | RESPONSE by Defendant Garmin International, Inc. re 63 Motion to Compel, Motion for Hearing. (sz) (Entered: 01/28/2021) |
| 01/27/2021 | 87 | | |

| | | | |
|---|---|---|---|
| | | | MOTION for Review (titled, "Plaintiff's Motion on Objections to Magistrate Judge's Order (ECF No. 83) to Recuse Magistrate") by Plaintiff Ganiyu Ayinla Jaiyeola. (heo) (Entered: 01/28/2021) |
| 01/27/2021 | 88 | | OBJECTION(S) to 83 Order on Motion for Disqualification by Ganiyu Ayinla Jaiyeola. (heo) (Entered: 01/28/2021) |
| 01/28/2021 | | | DOCKET ANNOTATION: Docket entry 85 Reply to Response to Motion, filed by Garmin International, Inc. was filed using the incorrect event and has been re−filed at de 86 to satisfy the response deadline, per JPO Chambers. (sz) (Entered: 01/28/2021) |
| 02/01/2021 | 89 | | Unopposed MOTION for extension of time *for Defendant to Serve Objections to Plaintiff's Expert Disclosures* by Defendant Garmin International, Inc. (referred to Magistrate Judge James P. O'Hara) (Young, Margaret) (Entered: 02/01/2021) |
| 02/01/2021 | 90 | | ORDER granting 89 defendant's unopposed motion for extension. Defendant shall serve any objections to plaintiff's expert disclosures by February 18, 2021. Signed by Magistrate Judge James P. O'Hara on 2/1/21. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (jc) (Entered: 02/01/2021) |
| 02/01/2021 | 93 | | MOTION Objecting to Defendant's Filing of Two Responses to Plaintiff's Motion re 85 Response to Motion, 86 Response to Motion by Plaintiff Ganiyu Ayinla Jaiyeola. (referred to Magistrate Judge James P. O'Hara) (heo) (Entered: 02/02/2021) |
| 02/02/2021 | 91 | | RESPONSE by Defendant Garmin International, Inc. re 77 Motion for Order *to Expland Number of Interrogatories* (Attachments: # 1 Exhibit Exhbit List, # 2 Exhibit D Responses to P First Set of Interrogatories, # 3 Exhibit Excerpt of D Responses to P Second Set of Interrogatories, 1, # 4 Exhibit D responses to P Second Set of Request for Production, 2, 5, 8, # 5 Exhibit 1st page of Cormack's 2019 Performance Appraisal)(Reisdorff, Kerri) (Entered: 02/02/2021) |
| 02/02/2021 | 92 | | CERTIFICATE OF SERVICE of First Supplemental Response and Objections to Plaintiff's Second Request for Production of Documents by Garmin International, Inc.. (Reisdorff, Kerri) (Entered: 02/02/2021) |
| 02/03/2021 | 94 | | ORDER denying as moot 93 plaintiff's motion objecting to defendant's response. Defendant timely filed a response 85 to plaintiff's motion to compel 63 , but the response was incorrectly docketed as a reply, not a response. The court re−docketed the response as ECF No. 86 in the correct category, but the pleading is identical. Plaintiff should cite ECF No. 86 in his reply, which is due on February 9, 2021. Signed by Magistrate Judge James P. O'Hara on 2/3/21. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (jc) (Entered: 02/03/2021) |
| 02/03/2021 | 95 | | NOTICE OF SERVICE by Ganiyu Ayinla Jaiyeola of Plaintiff's Second Supplemental Disclosures Pursuant to Fed. R. Civ. P. 26(a)(1). (heo) (Entered: 02/03/2021) |
| 02/09/2021 | 96 | | REPLY TO RESPONSE TO MOTION by Plaintiff Ganiyu Ayinla Jaiyeola re: 63 Motion to Compel, Motion for Hearing (Attachments: # 1 Index of |

| | | | |
|---|---|---|---|
| | | | Exhibits, # 2 Exhibits)(kas) (Entered: 02/09/2021) |
| 02/10/2021 | 97 | | ORDER denying 63 Plaintiff's Motion to Compel. Signed by Magistrate Judge James P. O'Hara on 2/10/21. (jc) (Entered: 02/10/2021) |
| 02/11/2021 | 98 | | ORDER denying Plaintiff's 87 Motion for Review. Plaintiff's objection 88 is overruled. Signed by District Judge Holly L. Teeter on 2/11/2021. (md) (Entered: 02/11/2021) |
| 02/16/2021 | 99 | | AMENDED NOTICE OF REMOTE VIDEO DEPOSITION OF MR. JOHN MUDD by Plaintiff Ganiyu Ayinla Jaiyeola. (kas) (Entered: 02/16/2021) |
| 02/17/2021 | 100 | | OBJECTION to Order of Magistrate Judge re 97 Order on Motion to Compel by Plaintiff Ganiyu Ayinla Jaiyeola. (Attachments: # 1 Memorandum in Support)(kas) (Entered: 02/17/2021) |
| 02/17/2021 | 101 | | ORDER. In light of the parties' ongoing discovery disputes, as discussed in their February 12, 2021 e–mail correspondence, the court stays all discovery. This includes the noticed depositions. A more detailed order from the court is forthcoming. Signed by Magistrate Judge James P. O'Hara on 2/17/21. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (jc) (Entered: 02/17/2021) |
| 02/18/2021 | 102 | | REPLY TO RESPONSE TO MOTION by Plaintiff Ganiyu Ayinla Jaiyeola re: 77 Motion for Order to Expand the Number of Interrogatories. (Attachments: # 1 Index of Exhibit, # 2 Exhibit A)(kas) (Entered: 02/18/2021) |
| 02/18/2021 | 103 | | MOTION for Sanctions by Plaintiff Ganiyu Ayinla Jaiyeola. (referred to Magistrate Judge James P. O'Hara) (kas) (Entered: 02/18/2021) |
| 02/19/2021 | 104 | | ORDER denying 77 plaintiff's motion for leave to serve additional interrogatories. Signed by Magistrate Judge James P. O'Hara on 2/19/21. (jc) (Entered: 02/19/2021) |
| 02/19/2021 | 105 | | ORDER TO SHOW CAUSE – Plaintiff shall show cause to Judge Teeter, in writing, by March 5, 2021, why this case shouldn't be dismissed as a sanction for his abusive litigation tactics. Plaintiff also shall show cause why he shouldn't now be required to reimburse defendant for all or at least some of the attorney fees and expenses incurred in response to his frivolous filings. Further, plaintiff shall represent he is able and willing to abide by controlling rules of procedure, case law, and the court's discovery orders and, just as importantly, refrain from filing frivolous discovery motions and equally frivolous motions for review of routine discovery rulings. Should Judge Teeter later conclude that there's good cause to keep the case on the docket, the undersigned will convene a scheduling conference to discuss new deadlines. Signed by Magistrate Judge James P. O'Hara on 2/19/2021. (Attachments: # 1 Exhibit A)(heo) (Entered: 02/19/2021) |
| 02/24/2021 | 106 | | MOTION to Withdraw as Attorney by Defendant Garmin International, Inc. (referred to Magistrate Judge James P. O'Hara) (Reisdorff, Kerri) Modified on 2/25/2021 to change filers name (sz). (Entered: 02/24/2021) |
| 02/25/2021 | 107 | | ORDER granting 106 Motion to Withdraw as Attorney. Signed by Magistrate Judge James P. O'Hara on 2/25/2021. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (ss) (Entered: 02/25/2021) |

| 02/25/2021 | 108 | | MOTION for Certificate of Appealability and MOTION to Stay Case by Plaintiff Ganiyu Ayinla Jaiyeola ) (ca) (Entered: 02/26/2021) |
|---|---|---|---|
| 02/25/2021 | 109 | | MEMORANDUM IN SUPPORT of 108 MOTION for Certificate of Appealability and MOTION to Stay Case by Plaintiff Ganiyu Ayinla Jaiyeola (Attachments: # 1 Exhibit List, # 2 Exhibits)(ca) (Entered: 02/26/2021) |
| 02/26/2021 | | | **MOTION REFERRAL to Magistrate Judge REMOVED as to: 108 MOTION for Certificate of Appealability MOTION to Stay Case. The motion will be resolved by the District Judge. (jc)** (Entered: 02/26/2021) |
| 03/10/2021 | 110 | | RESPONSE by Defendant Garmin International, Inc. re 108 Motion for Certificate of Appealability, Motion to Stay Case ( (Reisdorff, Kerri) (Entered: 03/10/2021) |
| 03/12/2021 | 111 | | REPLY TO RESPONSE TO MOTION by Plaintiff Ganiyu Ayinla Jaiyeola re: 108 Motion for Certificate of Appealability, Motion to Stay Case (Attachments: # 1 Exhibit List, # 2 Exhibit)(ca) (Entered: 03/12/2021) |
| 04/14/2021 | 112 | | ORDER and NOTICE OF HEARING. Status Conference is set for **5/7/2021 at 09:00 AM** in KC Courtroom 463 (HLT) before District Judge Holly L. Teeter. SEE ORDER FOR DETAILS. Signed by District Judge Holly L. Teeter on 4/14/2021. (md) (Entered: 04/14/2021) |
| 04/20/2021 | 113 | | MOTION for Reconsideration re 112 Order and Notice of Hearings by Plaintiff Ganiyu Ayinla Jaiyeola. (ca) (Entered: 04/20/2021) |
| 04/20/2021 | 114 | | MEMORANDUM IN SUPPORT of 113 MOTION for Reconsideration re 112 Order and Notice of Hearing by Plaintiff Ganiyu Ayinla Jaiyeola.(ca) (Entered: 04/20/2021) |
| 04/20/2021 | | | **MOTION REFERRAL to Magistrate Judge REMOVED as to: 113 MOTION for Reconsideration re 112 Order, Set/Reset Deadlines/Hearings. The motion will be resolved by the District Judge.(ss)** (Entered: 04/20/2021) |
| 04/20/2021 | 115 | | ORDER re 113 MOTION for Reconsideration. On April 20, 2021, Plaintiff filed a motion for reconsideration 113 and 114 . The Court reviewed the filings and sets the following expedited briefing schedule and telephonic hearing: any response is due on or before 5:00 pm on April 23, 2021 and any reply is due on or before 12:00 p.m. on April 27, 2021. The Court will hold a telephonic motion hearing on April 29, 2021 at 10:00 a.m. via CONFERENCE LINE 1–877–411–9748 and ACCESS CODE 6895973 before District Judge Holly L. Teeter. Signed by District Judge Holly L. Teeter on 4/20/2021. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.)(md) (Entered: 04/20/2021) |
| 04/23/2021 | 116 | | RESPONSE by Defendant Garmin International, Inc. re 113 Motion for Reconsideration (Reisdorff, Kerri) (Entered: 04/23/2021) |
| 04/23/2021 | 117 | | MOTION for Order (titled: Plaintiff's Motion for the Appointment of a Special Master) by Plaintiff Ganiyu Ayinla Jaiyeola. (ca) (Entered: 04/23/2021) |
| 04/23/2021 | 118 | | MEMORANDUM IN SUPPORT of 117 MOTION for Order by Plaintiff Ganiyu Ayinla Jaiyeola.(ca) (Entered: 04/23/2021) |

| 04/26/2021 | | | **MOTION REFERRAL to Magistrate Judge REMOVED as to: 117 MOTION for Order. The motion will be resolved by the District Judge. (jc)** (Entered: 04/26/2021) |
|---|---|---|---|
| 04/26/2021 | 119 | | REPLY TO RESPONSE TO MOTION by Plaintiff Ganiyu Ayinla Jaiyeola re: 113 Motion for Reconsideration. (ca) (Entered: 04/26/2021) |
| 04/29/2021 | 120 | | MOTION to Disqualify Judge (titled: Plaintiff's Motion for Disqualification of Magistrate Judge Pursuant to 28 U.S.C. 455(a)) by Plaintiff Ganiyu Ayinla Jaiyeola. (ca) (Entered: 04/29/2021) |
| 04/29/2021 | 121 | | MEMORANDUM IN SUPPORT of 120 MOTION to Disqualify Judge by Plaintiff Ganiyu Ayinla Jaiyeola.(ca) (Entered: 04/29/2021) |
| 04/29/2021 | | | **MOTION REFERRAL to Magistrate Judge REMOVED as to: 120 MOTION to Disqualify Judge. The motion will be resolved by the District Judge.(md)** (Entered: 04/29/2021) |
| 04/29/2021 | 122 | | MINUTE ENTRY for proceedings held before District Judge Holly L. Teeter: MOTION HEARING held on 4/29/2021. The Court denies Plaintiff's Motion for Reconsideration 113 for the reasons stated on the record. The Court will hold an in–person Status Conference on May 7, 2021 at 9:00 a.m. in Kansas City Courtroom 463 as outlined in Doc. 112. (Court Reporter Kelli Stewart.) (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (md) Modified on 4/30/2021 to change "Defendant's" to "Plaintiff's" in regards to the Motion for Reconsideration(kas). (Entered: 04/29/2021) |
| 04/30/2021 | | | NOTICE OF DOCKET TEXT MODIFICATION by Deputy Clerk regarding 122 : updated text to change "Defendant's" to "Plaintiff's" regarding the Motion for Reconsideration. (kas) (Entered: 04/30/2021) |
| 04/30/2021 | 123 | | NOTICE OF APPEAL as to 122 Minute Entry by Plaintiff Ganiyu Ayinla Jaiyeola. (kas) (Entered: 04/30/2021) |
| 04/30/2021 | | | APPEAL FEE STATUS: Filing fee not paid re: 123 Notice of Appeal on behalf of Plaintiff Ganiyu Ayinla Jaiyeola. Filer granted IFP status in District Court on 2/20/2020. (THIS IS A TEXT ONLY ENTRY–NO DOCUMENT IS ASSOCIATED WITH THIS TRANSACTION) (kas) (Entered: 04/30/2021) |
| 04/30/2021 | 124 | | PRELIMINARY RECORD ON APPEAL transmitted to 10CCA re 123 Notice of Appeal. (Attachments: # 1 Preliminary Packet)(kas) (Entered: 04/30/2021) |
| 04/30/2021 | | | (Court only) **MOTION REFERRED: 120 MOTION to Disqualify Judge. Referred to Magistrate Judge James P. O'Hara for ruling. (kao)** (Entered: 04/30/2021) |
| 04/30/2021 | 125 | | (Referral Removed per 140 Order) ORDER REFERRING MOTION to Magistrate Judge James P. O'Hara re 120 MOTION to Disqualify Judge filed by Ganiyu Ayinla Jaiyeola. Signed by District Judge Holly L. Teeter on 4/30/21. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.)(kao) Modified on 5/25/2021 (ca). (Entered: 04/30/2021) |
| 04/30/2021 | 126 | | APPEAL DOCKETED in 10CCA on 4/30/2021 and assigned Appeal No. 21–3075 re 123 Notice of Appeal filed by Ganiyu Ayinla Jaiyeola. (kas) |

| | | | |
|---|---|---|---|
| | | | (Entered: 04/30/2021) |
| 05/03/2021 | 127 | | ORDER and NOTICE OF CANCELLED HEARING. Plaintiff filed an interlocutory appeal on April 30, 2021. The appeal relates to the in−person Status Conference set for May 7, 2021, at 9:00 a.m. in Kansas City Courtroom 463. Because of the appeal, the Court cancels the May 7, 2021 hearing. Absent other instruction from the Tenth Circuit, the Court will reset the hearing once the mandate issues. Signed by District Judge Holly L. Teeter on 5/3/2021. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.)(md) (Entered: 05/03/2021) |
| 05/03/2021 | 128 | | MOTION for Reconsideration re 125 Order Referring Motion, by Plaintiff Ganiyu Ayinla Jaiyeola. (referred to Magistrate Judge James P. O'Hara) (Attachments: # 1 Exhibit List, # 2 Exhibit A).(ca) (Entered: 05/03/2021) |
| 05/03/2021 | 129 | | MEMORANDUM IN SUPPORT of 128 MOTION for Reconsideration re 125 Order Referring Motion, by Plaintiff Ganiyu Ayinla Jaiyeola.(ca) (Entered: 05/03/2021) |
| 05/04/2021 | 130 | | MOTION FOR A SCHEDULING ORDER by Plaintiff Ganiyu Ayinla Jaiyeola. (referred to Magistrate Judge James P. O'Hara). (ca) Modified on 5/4/2021 to re−title entry (sz). (Entered: 05/04/2021) |
| 05/04/2021 | 131 | | ORDER re 130 MOTION for Order filed by Ganiyu Ayinla Jaiyeola, 128 MOTION for Reconsideration. See order for details. Signed by Magistrate Judge James P. O'Hara on 5/4/21. (jc) (Entered: 05/04/2021) |
| 05/07/2021 | 132 | | RESPONSE by Defendant Garmin International, Inc. re 117 Motion for Order *to Appoint Special Master* (Reisdorff, Kerri) (Entered: 05/07/2021) |
| 05/11/2021 | 133 | | REPLY TO RESPONSE TO MOTION by Plaintiff Ganiyu Ayinla Jaiyeola re: 117 Motion for Order.(ca) (Entered: 05/11/2021) |
| 05/11/2021 | 134 | | TRANSCRIPT of Telephonic Motion Hearing (23 pgs) held 04/29/2021 before Judge Holly L. Teeter, Court Reporter Kelli Stewart, 913−735−2334, kelli_stewart@ksd.uscourts.gov. Transcript purchased by: Mr. Ganiyu Jaiyeola.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.ksd.uscourts.gov. Please read this policy carefully. If no Notice of Intent to Redact is filed within the allotted time, this transcript will be made electronically available on the date set forth below.**<br><br>Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Release of Transcript Restriction set for 8/9/2021. (ks) (Entered: 05/11/2021) |
| 05/11/2021 | 135 | | NOTICE OF (titled: Notice Regarding ECF No. 115 Transcript of Telephone Motion Hearing) re 115 Order, by Ganiyu Ayinla Jaiyeola. (Attachments: # 1 Index of Exhibit, # 2 Exhibit A)(ca) (Entered: 05/12/2021) |

| 05/19/2021 | 136 | | ORDER of 10CCA DISMISSING APPEAL as to 123 Notice of Interlocutory Appeal filed by Ganiyu Ayinla Jaiyeola ( Appeal No. 21–3075). (ca) (Entered: 05/19/2021) |
| 05/20/2021 | 137 | | Order rescheduling in person status conference. This Court originally set this case for in–person status conference on May 7, 2021 and denied Plaintiff's motion for reconsideration. Plaintiff appealed, so the Court cancelled the status conference. The Tenth Circuit dismissed the appeal 136 . The Court reschedules the in person status conference for **June 9, 2021, at 1:00 p.m.** in Courtroom 463 of the Kansas City, Kansas Courthouse, 500 State Avenue, Kansas City, Kansas 66101. At the hearing, the Court will take up the show cause order 105 , Plaintiff's motion for certificate of appealability 108 , and Plaintiff's motion for appointment of a special master 117 . The Court reminds that parties of its statement during the teleconference – the Court is not imposing filing restrictions but will if either party files continues to file multiple motions on repetitive issues. Signed by District Judge Holly L. Teeter on 5/20/2021. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.)(md) (Entered: 05/20/2021) |
| 05/21/2021 | 138 | | MOTION for Reconsideration (titled: Plaintiff's Motion to Reconsider the Order in ECF No. 137 Accelerated Consideration Requested) re 137 Order by Plaintiff Ganiyu Ayinla Jaiyeola. (ca) (Entered: 05/21/2021) |
| 05/21/2021 | 139 | | MEMORANDUM IN SUPPORT of 138 MOTION for Reconsideration re 137 Order by Plaintiff Ganiyu Ayinla Jaiyeola.(ca) (Entered: 05/21/2021) |
| 05/21/2021 | | | **MOTION REFERRAL to Magistrate Judge REMOVED as to: 138 MOTION for Reconsideration re 137 Order,,,,, Set/Reset Deadlines/Hearings,,,,. The motion will be resolved by the District Judge.(amh)** (Entered: 05/21/2021) |
| 05/25/2021 | 140 | | ORDER denying 120 Motion to Disqualify Judge; granting in part and denying in part 128 Motion for Reconsideration; granting in part and denying in part 138 Motion for Reconsideration. The Court GRANTS Plaintiff's request to withdraw Doc. 125. The Court removes this referral. The undersigned will resolve Plaintiff's motion to disqualify. The court further orders that the June 9, 2021 hearing remains as scheduled (Doc.137). The parties are expected to appear absent further order of the Court. Signed by District Judge Holly L. Teeter on 5/25/2021. (ca) (Entered: 05/25/2021) |
| 05/26/2021 | 141 | | MOTION to Vacate 105 Order to Show Cause (titled: Plaintiff's Motion for Relief from ECF No. 105 Order Accelerated Consideration Requested) by Plaintiff Ganiyu Ayinla Jaiyeola. (ca) (Entered: 05/26/2021) |
| 05/26/2021 | 142 | | MEMORANDUM IN SUPPORT of 141 MOTION to Vacate 105 Order to Show Cause by Plaintiff Ganiyu Ayinla Jaiyeola.(ca) (Entered: 05/26/2021) |
| 05/28/2021 | 143 | | Unopposed MOTION for extension of time *to respond to Plaintiff's Motion for Scheduling Order* by Defendant Garmin International, Inc. (referred to Magistrate Judge James P. O'Hara) (Reisdorff, Kerri) (Entered: 05/28/2021) |
| 05/28/2021 | 144 | | RESPONSE by Plaintiff Ganiyu Ayinla Jaiyeola re 143 Motion for Extension of Time. (ca) (Entered: 05/28/2021) |
| 05/28/2021 | 145 | | |

| | | | |
|---|---|---|---|
| | | | ORDER granting 143 motion for extension of time until June 16, 2021, for defendant to respond to plaintiff's motion for scheduling order (ECF No. 130 ). Although plaintiff opposes the motion (ECF No. 144), the court finds good cause for the extension. Signed by Magistrate Judge James P. O'Hara on 5/28/2021. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (amh) (Entered: 05/28/2021) |
| 05/28/2021 | 146 | | MOTION to Continue Status Conference (titled: Plaintiff's Motion to Reschedule June 9, 2021 Conference) by Plaintiff Ganiyu Ayinla Jaiyeola. (ca) (Entered: 05/28/2021) |
| 05/28/2021 | | | **MOTION REFERRAL to Magistrate Judge REMOVED as to: 146 MOTION to Continue Status Conference. The motion will be resolved by the District Judge.(ss)** (Entered: 05/28/2021) |
| 06/01/2021 | 147 | | MOTION for Reconsideration (titled: Plaintiff's Motion to Reconsider the Order No. 140 Accelerated Consideration Requested) re 140 Order on Motion to Disqualify by Plaintiff Ganiyu Ayinla Jaiyeola. (ca) (Entered: 06/01/2021) |
| 06/01/2021 | 148 | | MEMORANDUM IN SUPPORT of 147 MOTION for Reconsideration by Plaintiff Ganiyu Ayinla Jaiyeola. (Attachments: # 1 Index of Exhibits, # 2 Exhibit A)(ca) (Entered: 06/01/2021) |
| 06/01/2021 | 149 | | MOTION to Continue Status Conference (titled: Plaintiff's Amended Motion to Reschedule June 9, 2021 Conference Accelerated Consideration Requested) by Plaintiff Ganiyu Ayinla Jaiyeola. (ca) (Entered: 06/01/2021) |
| 06/01/2021 | | | **MOTION REFERRAL to Magistrate Judge REMOVED as to: 147 MOTION for Reconsideration re 140 Order and 149 MOTION to Continue Status Conference. The motion will be resolved by the District Judge.(md)** (Entered: 06/01/2021) |
| 06/02/2021 | 150 | | ORDER denying 146 Motion to Continue Status Conference; denying 147 Motion for Reconsideration ; denying 149 Motion to Continue Status Conference. Any future filings aimed at reconsidering, rescheduling, continuing, vacating, or otherwise obstructing the June 9, 2021 hearing will likely result in a monetary sanction of $200. THE COURT FURTHER ORDERS that the June 9, 2021 hearing remains as scheduled (Doc.137). The parties are expected to appear absent further order of the Court. See Order for additional details. Signed by District Judge Holly L. Teeter on 6/2/21. (kao) (Entered: 06/02/2021) |
| 06/02/2021 | 151 | | MOTION to Continue Status Conference (titled: Plaintiff's Motion to Stay ECF No. 137 Accelerated Consideration Requested) by Plaintiff Ganiyu Ayinla Jaiyeola. (ca) (Entered: 06/03/2021) |
| 06/02/2021 | 152 | | MEMORANDUM IN SUPPORT of 151 MOTION to Continue Status Conference by Plaintiff Ganiyu Ayinla Jaiyeola.(ca) (Entered: 06/03/2021) |
| 06/03/2021 | | | **MOTION REFERRAL to Magistrate Judge REMOVED as to: 151 MOTION to Continue Status Conference. The motion will be resolved by the District Judge.(ss)** (Entered: 06/03/2021) |
| 06/03/2021 | 153 | | ORDER denying 151 Motion to Stay. Plaintiff seeks a stay of the June 9, 2021 hearing because of four pending motions. Plaintiff submitted this motion before the Court issued its order yesterday denying three of those motions |

|  |  |  | (Doc. 150). Accordingly, Plaintiff's motion is denied as moot as to those motions. Plaintiff's request to stay the hearing based on the pendency of Doc. 141 is denied. Plaintiff has been warned that the hearing will not be continued because of any pending motions. Doc. 140 at 9. The June 9, 2021 hearing will be held as scheduled. See Doc. 137. Plaintiff is cautioned that failure to appear may result in the sanction of dismissal of this case with prejudice. Although the Court warned in Doc. 150 that any further motions to avoid the June 9, 2021 hearing would result in a sanction of $200, the Court will not impose a sanction for this motion because it was submitted to the Clerk shortly before the Court's order was filed. Plaintiff is warned that the Court will very likely impose monetary or other sanctions on any further filings of this nature. Signed by District Judge Holly L. Teeter on 6/3/2021. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (md) (Entered: 06/03/2021) |
| 06/07/2021 | 154 |  | DOCKET ANNOTATION: The clerk' s office received an email with attachments from the plaintiff on 6/4/2021. The documents were forwarded to 10CCA on 6/7/2021. (ca) (Entered: 06/07/2021) |
| 06/08/2021 | 155 |  | LETTER FROM 10CCA stating petition for writ of mandamus docketed – assigned 10CCA case No. 21–3100. (ca) (Entered: 06/08/2021) |
| 06/08/2021 | 156 |  | NOTICE (titled: Notice of Filing of Petition for Writ of Mandamus with Motion for Stay) by Ganiyu Ayinla Jaiyeola. (Attachments: # 1 Index of Exhibits, # 2 Exhibits)(ca) (Entered: 06/08/2021) |
| 06/09/2021 | 157 |  | MINUTE ENTRY for proceedings held before District Judge Holly L. Teeter: STATUS CONFERENCE held on 6/9/2021. The Court denies 108 Motion for Certificate of Appealability and Motion to Stay Case. The Court denies 117 Motion for Order (titled: Plaintiff's Motion for the Appointment of a Special Master.) The Court takes under advisement the 105 Order to Show Cause. Order to follow.(Court Reporter Kelli Stewart.) (md) (Additional attachment(s) added on 6/18/2021: # 1 Exhibit 1) (md). (Entered: 06/09/2021) |
| 06/10/2021 | 158 |  | Notice: Plaintiff's OBJECTION to Magistrate Judge James P. O'Hara's Presence at the In–Person Hearing on June 9, 2021 by Ganiyu Ayinla Jaiyeola. (Attachments: # 1 Index of Exhibits, # 2 Exhibit A)(ca) (Entered: 06/10/2021) |
| 06/15/2021 | 159 |  | Second MOTION for Extension of Time to File Response as to 130 MOTION for Order *Plaintiff's Motion for Scheduling Order* by Defendant Garmin International, Inc. (referred to Magistrate Judge James P. O'Hara) (Attachments: # 1 Exhibit 1)(Reisdorff, Kerri) (Entered: 06/15/2021) |
| 06/16/2021 | 160 |  | RESPONSE by Plaintiff Ganiyu Ayinla Jaiyeola re 159 Motion for Extension of Time to File Response/Reply, (ca) (Entered: 06/16/2021) |
| 06/16/2021 | 161 |  | ORDER granting 159 second motion for extension of time. Defendant shall respond to plaintiff's motion for scheduling order 130 within seven days after the court rules on the 105 order to show cause. The court declines the request in plaintiff's response 160 to sanction defendant. Signed by Magistrate Judge James P. O'Hara on 6/16/21. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (jc) (Entered: 06/16/2021) |
| 06/16/2021 | 162 |  | NOTICE OF APPEAL as to 161 Order on Motion for Extension of Time to File Response/Reply by Plaintiff Ganiyu Ayinla Jaiyeola. (ca) (Entered: |

| | | | |
|---|---|---|---|
| | | | 06/17/2021) |
| 06/17/2021 | | | APPEAL FEE STATUS: filing fee not paid re: <u>162</u> Notice of Appeal on behalf of Plaintiff Ganiyu Ayinla Jaiyeola. Filer granted IFP status in District Court on 2/20/2020. (THIS IS A TEXT ONLY ENTRY–NO DOCUMENT IS ASSOCIATED WITH THIS TRANSACTION) (ca) (Entered: 06/17/2021) |
| 06/17/2021 | <u>163</u> | | PRELIMINARY RECORD ON APPEAL transmitted to 10CCA re <u>162</u> Notice of Appeal. (Attachments: # <u>1</u> Preliminary Packet)(ca) (Entered: 06/17/2021) |
| 06/17/2021 | <u>164</u> | | APPEAL DOCKETED in 10CCA on 6/17/2021 and assigned Appeal No. 21–3108 re <u>162</u> Notice of Appeal. (ca) (Entered: 06/17/2021) |
| 06/18/2021 | <u>165</u> | | MEMORANDUM AND ORDER – The Court denies Plaintiff's Motion to Vacate Show Cause Order <u>141</u> . The Court denies Plaintiff's Motion for Sanctions <u>103</u> . The Court overrules Plaintiff's Objection to Order of the Magistrate Judge <u>100</u> . Plaintiff's Motion for a Scheduling Order <u>130</u> is granted to the extent he seeks a scheduling order and denied in all other respects. The parties are ordered to confer on dates for Plaintiff's deposition and contact Judge O'Hara's chambers to verify his availability within five days of this order. Plaintiff's failure to abide by these sanctions and orders will likely result in the imposition of additional sanctions, including dismissal of this case with prejudice and without further notice. Signed by District Judge Holly L. Teeter on 6/18/2021. (md) (Entered: 06/18/2021) |
| 06/18/2021 | <u>166</u> | | RESPONSE by Plaintiff Ganiyu Ayinla Jaiyeola re <u>165</u> Memorandum and Order.(hw) (Entered: 06/18/2021) |
| 06/21/2021 | <u>167</u> | | MOTION to Disqualify Magistrate Judge and District Judge by Plaintiff Ganiyu Ayinla Jaiyeola. (ca) (Entered: 06/21/2021) |
| 06/21/2021 | <u>168</u> | | MEMORANDUM IN SUPPORT of <u>167</u> MOTION to Disqualify Magistrate Judge and District Judge by Plaintiff Ganiyu Ayinla Jaiyeola. (Attachments: # <u>1</u> Index of Exhibits, # <u>2</u> Exhibits)(ca) (Entered: 06/21/2021) |
| 06/21/2021 | | | **MOTION REFERRAL to Magistrate Judge REMOVED as to: <u>167</u> MOTION to Disqualify Magistrate and District Judges. The motion will be resolved by the District Judge.(md)** (Entered: 06/21/2021) |
| 06/23/2021 | <u>169</u> | | MOTION for Leave to Depose Defendant's 12 Witnesses by Plaintiff Ganiyu Ayinla Jaiyeola. (referred to Magistrate Judge James P. O'Hara) (Attachments: # <u>1</u> Index of Exhibits, # <u>2</u> Exhibit A)(ca) (Entered: 06/23/2021) |
| 06/23/2021 | <u>170</u> | | MEMORANDUM IN SUPPORT of <u>169</u> MOTION for Leave to Depose Defendant's 12 Witnesses by Plaintiff Ganiyu Ayinla Jaiyeola. (Attachments: # <u>1</u> Index of Exhibits, # <u>2</u> Exhibit A)(ca) (Entered: 06/23/2021) |
| 06/24/2021 | <u>171</u> | | MEMORANDUM AND ORDER – THE COURT THEREFORE ORDERS that this case is DISMISSED WITH PREJDUICE. THE COURT FURTHER ORDERS that Plaintiff's Motion to Disqualify Magistrate Judge and District Judge (Doc. <u>167</u> ) is DENIED and DEEMED FRIVOLOUS. THE COURT FURTHER ORDERS that Plaintiff's Motion for Leave to Depose Defendant's 12 Witnesses (Doc. <u>169</u> ) is DENIED AS MOOT. THE COURT FURTHER ORDERS that this case is closed. Plaintiff is cautioned that continued frivolous or vexatious motion practice in this case may result in the imposition of monetary sanctions or filing restrictions, or both. Signed by District Judge |

| | | | |
|---|---|---|---|
| | | | Holly L. Teeter on 6/24/2021. (ca) (Entered: 06/24/2021) |
| 06/24/2021 | 172 | | JUDGMENT. Signed by deputy clerk on 6/24/2021. (ca) (Entered: 06/24/2021) |
| 06/24/2021 | 173 | | NOTICE OF APPEAL as to 172 Judgment by Plaintiff Ganiyu Ayinla Jaiyeola. (ca) Modified file date on 6/30/2021 (ca). (Entered: 06/25/2021) |
| 06/25/2021 | | | APPEAL FEE STATUS: filing fee not paid re: 173 Notice of Appeal – Final Judgment. Filer granted IFP status on 2/20/2020. (THIS IS A TEXT ONLY ENTRY–NO DOCUMENT IS ASSOCIATED WITH THIS TRANSACTION) (ca) (Entered: 06/25/2021) |
| 06/25/2021 | 174 | | PRELIMINARY RECORD ON APPEAL transmitted to 10CCA re 173 Notice of Appeal – Final Judgment. (Attachments: # 1 Preliminary Packet)(ca) (Entered: 06/25/2021) |
| 06/25/2021 | 175 | | NOTICE OF APPEAL as to 165 Memorandum and Order, 157 Minute Entry by Plaintiff Ganiyu Ayinla Jaiyeola. (ca) (Entered: 06/25/2021) |
| 06/25/2021 | | | APPEAL FEE STATUS: filing fee not paid re 175 Notice of Appeal on behalf of Plaintiff Ganiyu Ayinla Jaiyeola. Filer granted IFP status in District Court on 2/20/2020. (THIS IS A TEXT ONLY ENTRY–NO DOCUMENT IS ASSOCIATED WITH THIS TRANSACTION) (ca) (Entered: 06/25/2021) |
| 06/25/2021 | 176 | | PRELIMINARY RECORD ON APPEAL transmitted to 10CCA re 175 Notice of Appeal. (Attachments: # 1 Preliminary Packet)(ca) (Entered: 06/25/2021) |
| 06/29/2021 | 177 | | APPEAL DOCKETED in 10CCA on 6/28/2021 and assigned Appeal No. 21–3114 re 173 Notice of Appeal and 175 Notice of Appeal filed by Ganiyu Ayinla Jaiyeola. (ca) (Entered: 06/29/2021) |
| 06/30/2021 | 178 | | DOCKET ANNOTATION: File date of 6/25/2021 for 173 Notice of Appeal changed to 6/24/2021 due to clerk error; document received in clerk's office on 6/24/2021. (ca) (Entered: 06/30/2021) |
| 06/30/2021 | | | (Court only) ***Staff notes – clerk notified 10CCA of change in file date for 173 Notice of Appeal. They advised both notices of appeal ( 173 and 175 ) combined into one appeal in 10CCA. (ca) (Entered: 06/30/2021) |



FILED

FEB 19 2020

TIMOTHY M. O'BRIEN CLERK
By_____Deputy

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**AT KANSAS CITY, KANSAS**

)
)
GANIYU AYINLA JAIYEOLA,          )        Case No.: *2:20-cv-2068- JWB -JPO*
)
*Plaintiff,*            )        COMPLAINT
v.                                )
)
GARMIN INTERNATIONAL, INC.,      )        JURY TRIAL DEMANDED
)
*Defendant.*           )
)
)
)
)

**Introduction**

1.      Plaintiff Ganiyu Jaiyeola ("Jaiyeola") alleges Defendant Garmin International, Inc.

("Garmin"), by failing to hire Plaintiff, violated Plaintiff's rights under Title VII of the Civil

Rights Act of 1964, as amended ("Title VII" – Race (African American), Color (Black), and

National Origin (Nigerian)), 29 U.S.C. § 621, et seq. (Age Discrimination in Employment Act, as

amended ("ADEA"), 42 U.S.C. §12112(b)(4) (Disability Association Discrimination - Title I of

the Americans with Disabilities Act ("ADA")), The Kansas Age Discrimination in Employment

Act[1] (Chapter 44, Art. 11, K.S.A., and specifically within the meaning of subsection (a)(1) of

Section 44-1113 of said Act - "KADEA") and 42 U.S.C. § 1983 (Denial of Due Process – "Due

Process"). Garmin is also liable for discrimination under Section 703(a) of Title VII because the

fact that Jaiyeola was not hired by Garmin was based on the influence of a Garmin employee with

---

[1] See
http://www.kslegislature.org/li/b2019_20/statute/044_000_0000_chapter/044_011_0000_article/04
4_011_0013_section/044_011_0013_k/

-1-

a discriminatory motive; Subordinate Bias Liability ("cat's paw" theory of liability)[2].

2.      In November 2019, Garmin failed to hire Jaiyeola, then age 64, for the "Advanced

Materials Engineer - Metals-19001CL" position he had applied and interviewed for.  On July 25,

2019, Jaiyeola had a joint "Technical Phone Interview" with Mr. John Mudd (Mechanical

Engineering Manager - Hiring Manager) and Mr. Jared Klein (Mechanical Engineering

Manager).  Both Garmin Managers remarked that Jaiyeola had highly pertinent qualifications and

experience for the Garmin job under consideration.  Indeed, the next day (July 26, 2019), Garmin

invited Jaiyeola for an on-site interview at Garmin Headquarters/Manufacturing Center in Olathe,

Kansas.

3.      A recent diversity rating report on Garmin concluded that "Diverse employees at

Garmin International score the company 64/100 across various culture categories, placing Garmin

International in the bottom 45% of companies in the United States with 10,000+ Employees for

Comparably's diversity score. The Diversity score provides insights into how diverse employees

feel and rate their work experience at Garmin International across various culture dimensions."[3].

**Parties**

4.      Plaintiff Jaiyeola was born on June 22, 1955 in Nigeria and has been 64 years old or

older at all pertinent times referenced herein.  He is Black, his national origin is Nigerian, he is a

naturalized citizen of the United States, he is a current resident of Grand Rapids, Kent County,

Michigan, and he has resided in Michigan at all pertinent times.

5.      Defendant Garmin (headquartered in Olathe, Kansas) is an American multinational

---

[2] See

*Equal Employment Opportunity Commission v. BCI Coca-Cola Bottling Company of Los Angeles*,
450 F. 3d 476 (10th Cir. 2006)

[3] See

https://www.comparably.com/companies/garmin-international/diversity (as it appeared on February
12, 2020)

technology company that is into GPS navigation and wearable technology for diverse markets including automotive, aviation, marine, fitness, outdoor recreation, tracking, and mobile apps.

### Nature of Action

6.      This failure-to-hire action seeks redress for Defendant's violation of Plaintiff's rights under Title VII, ADEA, KADEA, and ADA.  Defendant Garmin is also liable for discrimination under Section 703(a) of Title VII because the fact that Jaiyeola was not hired by Garmin was based on the influence of a Garmin employee with a discriminatory motive; Subordinate Bias Liability ("cat's paw" theory of liability)[4].  Defendant's denial of Due Process to Plaintiff is also an issue in this action.

### Jurisdictional Basis

7.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, 29 U.S.C. § 626(b)-(c), and 29 U.S.C. § 216(b).

8.      This Court has subject matter jurisdiction (over Title VII, ADEA, KADEA, ADA, and Due Process claims) pursuant to 28 U.S.C. § 1332(a) as the amount in controversy is greater than $75,000, exclusive of interest and costs, and is between citizens of different states.

9.      This Court has supplemental jurisdiction over Jaiyeola's state law claim pursuant to 28 U.S.C. § 1367, as that claim arises out of the same operative facts as Jaiyeola's other claim and, together, they form part of the same case or controversy.

10.     Defendant Garmin is located within this district.   Accordingly, as the acts complained of herein took place within this District, the venue is proper in this district under 28 U.S.C. §1391.

11.     This Court has personal jurisdiction over the Defendant because it engages in

---

[4] See
*Equal Employment Opportunity Commission v. BCI Coca-Cola Bottling Company of Los Angeles,* 450 F. 3d 476 (10th Cir. 2006)

continuous and systematic business contacts within the State of Kansas and maintains a substantial

physical presence in this State, including the operation of its corporate headquarters in Olathe,

Kansas.

**Administrative remedies have been exhausted**

12.     Jaiyeola incorporates by reference the above paragraphs as though set forth

separately herein.

13.     Jaiyeola filed a Charge of Discrimination (No. 563-2020-00499) with the U.S.

Equal Employment Opportunity Commission ("EEOC"), for Title VII, ADEA, and ADA

Association Discrimination on November 26, 2019.  See Ex A.

14.     Jaiyeola filed another Charge of Discrimination (No. 41705-20) with the Kansas

Human Rights Commission ("KHRC"), for Title VII, ADEA, KADEA, and ADA Association

Discrimination on December 13, 2019.  See Ex B.

15.     EEOC issued Jaiyeola a Notice of his Right-to-Sue for Charge No. 563-2020-

00499 on December 4, 2019.  See C.

16.     KHRC agreed with the determination of the EEOC.  See Ex D.

17.     This complaint has been filed within 90 days of Jaiyeola receiving EEOC's Notice

of Right-to-Sue.

18.     Accordingly, Jaiyeola has met all the administrative prerequisites prior to filing

this f a i l u r e - t o - h i r e  action.

**Facts Common to All Counts**

19.     Jaiyeola has the following educational qualifications: 1.) a 1979 B.Sc. in Chemistry

(Biochemistry Minor) from the University of Ibadan, Nigeria; 2.) a 1985 Masters in Inorganic

Chemistry (Bioinorganic) from the University of Ibadan, Nigeria; 3.) a 1991 Masters in Inorganic

Chemistry (Solid State Inorganic) from the University of Connecticut, Storrs; 4.) a 1995 Ph.D. in Materials Science from the University of Connecticut, Storrs; and 5.) a Masters in Business Administration (Major: Organization and Management, Minor: Marketing) from Syracuse University, Syracuse, New York.  Since 1995, Jaiyeola has had extensive work experience in Materials Engineer positions with many companies including Element Materials Technology, Stryker, Boeing, Honeywell, and Carrier Corporation.

20.     Jaiyeola saw an advertisement for the position of "Advanced Materials Engineer - Metals-19001CL" at Garmin International on a Job Board (www.indeed.com) and he applied on July 3, 2019.  See Ex E and Ex F.

21.     Jaiyeola applied with his resume and cover letter.  Jaiyeola's resume and cover letter indicate extensive Materials Engineering experience with a wide variety of metals including aluminum metals.  See Ex G and Ex H.

22.     Jaiyeola had Human Resources ("HR") phone interview with Ms. Michelle Cormack (Senior Technical Recruiter) on July 23, 2019.  See Ex I.

23.     On July 25, 2019, Jaiyeola had a joint "Technical Phone Interview" with Mr. John Mudd (Mechanical Engineering Manager - Hiring Manager) and Mr. Jared Klein (Mechanical Engineering Manager).  See Ex J.

24.     On July 26, 2019 (a day after the "Technical Phone Interview" on July 25, 2019), Jaiyeola received an invitation for an on-site interview (at Garmin Headquarters in Olathe, Kansas) from Mr. Evan Northup (Garmin's HR Coordinator).  In the electronic mail invitation, one of the questions that Northup asked was the following: "What is your date of birth?".  Jaiyeola replied and provided the following answer: "What is your date of birth?:                    ʻ  See Ex K.

25.     On August 5, 2019, Cormack sent Jaiyeola an "Assignment" for the on-site

-5-

interview at Garmin Headquarters in Olathe, Kansas.  See Ex L.  The "Assignment" topic:

> "Gold plating is required on a charge/data pin connection to reduce contact resistance.
> This is a wearable product, and therefore cannot employ nickel in the plating solution. The
> ideal design utilizes SUS 316 as the base material for the pin to prevent corrosion in the
> event that the gold plating wears through or is otherwise compromised such that the
> underlying material is exposed. Propose an ideal process, material, and/or plating
> specification that would enable a reliable 100μin thick hardened gold layer to be plated
> onto SUS 316 pin."

26.     Jaiyeola did an on-site interview at Olathe, Kansas, on August 14, 2019.

27.     Jaiyeola first did HR interview with Cormack.  During the interview Cormack made the following statements: "Jeff is John's boss.  If Jeff doesn't like you, John will not hire you.".  When Cormack interviewed Jaiyeola, she informed him of the nearby (to Olathe, Kansas) places to live and Jaiyeola informed her that he has a son (6 years old) who has Down Syndrome and that he would want to live in a school district that has facilities for Down Syndrome students. Cormack told Jaiyeola she has teachers in her family, and she would get the information on nearby school systems that have facilities for Down Syndrome students, and she would send the information to Jaiyeola that interview day or the next (August 14 or 15, 2019).  Jaiyeola never heard back from Cormack on that information.

28.     Next, Ms. Diane McLendon (Advanced Materials Engineer - Polymers) gave Jaiyeola a tour of Garmin facilities in Olathe.  McLendon and Jaiyeola had technical discussions on the job requirements for the position during the tour.  In particular, McLendon mentioned that the Engineering group had an urgent need for a suitable aluminum alloy, and Jaiyeola mentioned

his extensive experience with material selection of suitable aluminum alloys for different application environments.

29.     After the tour, Jaiyeola did technical interviews with 3 separate teams composed of Mudd, Mr. Jeff Minelli (Director of Mechanical Engineering), Garmin Mechanical Engineering Team Leaders, and Garmin Mechanical Engineering Managers. See Ex M.

30.     Mudd was part of the first technical interview team that Jaiyeola faced. Others in this team included Minelli and Mr. Jacob Zeller (Mechanical Engineering Manager - Automotive). During the interview, Minelli repeatedly asked Jaiyeola the same question in exactly the same way about aluminum alloys. Jaiyeola was very uncomfortable by the repetition of the question because Jaiyeola had to repeat his answers each time Minelli asked the same question. Minelli didn't argue Jaiyeola's answers or indicated that he didn't understand Jaiyeola's answers.

31.     During Jaiyeola's technical interview with the second or third interview team, Mudd opened the door to the interview room, stood by the door (he didn't come inside), and informed Jaiyeola (to the hearing of the interviewing team) that he would not be at Jaiyeola's PowerPoint presentation. Mudd did not give any reason why he wasn't going to be at the presentation and the discussion. Jaiyeola was surprised and concerned that Mudd would not attend his presentation and discussion. Jaiyeola was also concerned about the optics Mudd's announcement made to the technical team that was interviewing Jaiyeola at that instant. The interviewing team heard what Mudd said. Jaiyeola became very uncomfortable for the rest of the team interview and during Jaiyeola's subsequent PowerPoint presentation and discussion.

32.     Immediately after the technical interviews with the 3 teams, Jaiyeola did a PowerPoint presentation on the Garmin "Assignment" (part of the interview requirement) in a conference room and had a discussion on the "Assignment" with a group of Garmin Mechanical

-7-

Engineering Team Leaders, Garmin Mechanical Engineering Managers, Mechanical Engineers, and McLendon after the presentation. About 10 Engineers were present for the presentation and discussion. Cormack was not present.

33.     Mudd did not attend Jaiyeola's PowerPoint presentation on the Garmin "Assignment" and he did not participate in the discussion on the "Assignment". Therefore, Mudd did not have a complete and direct information to fairly decide on hiring Jaiyeola for the Garmin position.

34.     McLendon and one Garmin Engineer saw Jaiyeola to the door after the PowerPoint presentation and discussion. McLendon collected Jaiyeola's visitor's badge at the door.

35.     On August 15, 2019, Jaiyeola sent a "Thank You" electronic mail to Garmin. See Ex N.

36.     On August 22, 2019, Jaiyeola sent an "Update" request electronic mail to Cormack. On August 23, 2019, Cormack replied that "We are still considering you as a candidate, as we look at others as well. So, at this point, no decision has been made. I hope to know more next week!". Cormack never got back to Jaiyeola on Garmin's "decision". See Ex O.

37.     On November 13, 2019 (about 3 months after Jaiyeola's on-site job interview at Olathe), Jaiyeola received an electronic mail from Garmin (from Mr. Michael Risinger) stating that Jaiyeola was not hired for the position of Advanced Materials Engineer - Metals-19001CL at Garmin. Garmin's reasons were "Because there is a high level of emphasis placed on achieving the best match between each candidate and position at Garmin, the hiring team has carefully reviewed the qualifications and skills on your application and information discussed during the interview. Garmin is unable to offer you employment at this time, but please keep in mind that Garmin is a dynamic and growing organization, so it is possible that in the future there may be other career opportunities that better match your qualifications.". See Ex P.

38.     On November 13, 2019 (the same day that Jaiyeola received the job denial electronic mail from Garmin), Jaiyeola visited the Garmin "Jobs" website and noticed that the position of "Advanced Materials Engineer - Metals-19001CL" at Garmin International that he interviewed for was still open.

39.     Jaiyeola read Garmin's Equal Employment Opportunity policy statement ("EEO Policy Statement"[5]) at Garmin's website.  See Ex Q.  The statement, signed by Mr. Cliff Pemble (Garmin's President and CEO), requested that EEO complaints should be directed to Ms. Laurie Minard (Garmin's Vice President of HR and "EEO Coordinator").

40.     On November 22, 2019, Jaiyeola followed the guidelines in Garmin's EEO statement and filed a complaint (copied to Cormack) with Mudd (See Ex R.) on Garmin's failure to hire him.

41.     On November 25, 2019, Jaiyeola again followed the guidelines in Garmin's EEO statement and made a phone call to the office Minard to complain about Garmin's job denial. Jaiyeola spoke with Minard's Executive Assistant.  The Executive Assistant told Jaiyeola the following: 1.) Mudd notified Minard of Jaiyeola's complaint that morning (November 25, 2019), 2.) Jaiyeola should send his complaint to Garmin's Legal Department (to the attention of Mr. David Kight), and 3.) Jaiyeola should file his complaint with the Kansas EEOC office.

42.     On November 25, 2019, Jaiyeola filed a complaint with Minard (complaint was electronically mailed to Kight) on Garmin's failure to hire him.  See Ex S.

43.     On November 26, 2019, Jaiyeola filed a Charge of Discrimination (No. 563-2020-00499) with the EEOC for Title VII, ADEA, and ADA Association Discrimination.

44.     On November 27, 2019, Jaiyeola received a reply to his complaint (dated

---

[5] See

https://careers.garmin.com/en-US/

November 25, 2019) from Kight.  Kight gave the following Garmin reasons as to why Garmin did

not hire Jaiyeola: "After considering all candidates and Garmin's current business needs, Garmin

withdrew the opening, the job posting has been removed and no one was hired for this position.".

Kight's reply did not indicate that Garmin did any investigation; as stated in Garmin's EEO

statement.  See Ex Q.

45.     Minard, Garmin's EEO Coordinator, never contacted Jaiyeola.

46.     On December 13, 2019, Jaiyeola filed another Charge of Discrimination (No.

41705-20) with KHRC for Title VII, ADEA, KADEA, and ADA Association Discrimination.

47.     To date, Garmin has given two "inconsistent"[6] reasons (from Risinger and Kight -

See Ex T.) for not hiring Jaiyeola.

48.     Upon information and belief, Garmin removed the job that Jaiyeola applied for

from Garmin's career website on or after November 22, 2019 (the day that Jaiyeola filed a

complaint with Mudd - See Ex R.).  Jaiyeola saw the job at the career site on November 13, 2019.

49.     Upon information and belief, the fact that Garmin pulled the advertisement for the

position from the Garmin job site and the two inconsistent reasons given by Garmin constitute a

pretext for not hiring Jaiyeola.

## COUNT I
### Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq*.
### Race, Color, and National Origin Discrimination

50.     Jaiyeola realleges and incorporates all preceding paragraphs.

51.     Garmin was an employer for the purposes of Title VII.

52.     Jaiyeola applied to Garmin for employment for the position of "Advanced Materials

Engineer - Metals-19001CL".

53.     Jaiyeola was interviewed over the phone and on-site at Garmin Headquarters in

---

[6] *Fassbender v. Correct Care Solutions*, LLC, 890 F.3d 875 (2018)

Olathe, Kansas, by at least 12 Garmin employees (including a Director of Mechanical Engineering, Senior Engineering Managers, Engineering Managers, and Engineers).

54.     Upon information and belief, all the Garmin employees that interviewed Jaiyeola were White.

55.     Garmin has discriminated against Jaiyeola in violation of Title VII by subjecting him to different treatment on the basis of his Race (African American), Color (Black), and National Origin (Nigerian).  Jaiyeola has been treated differently as a result of Garmin's wrongful conduct and its policies, practices, and procedures.

56.     As a direct and proximate result of Garmin's intentional Race (African American), Color (Black), and National Origin (Nigerian) discrimination, Jaiyeola has been denied employment, denied the fair opportunity to obtain employment, and denied fair opportunities with regard to positions, compensation, and/or employment with Garmin.

57.     The adverse failure-to-hire employment action alleged above directly and proximately caused Jaiyeola to suffer damages, including lost wages, lost benefits, garden variety emotional distress, humiliation, intimidation, embarrassment, and frustration.

58.     The Garmin employee who did not hire Jaiyeola was an agent of Garmin who was acting in the court and scope of his agency with Garmin or acted with express authority from Garmin.

59.     Garmin, through its agents or employees, acted outrageously by engaging in discriminatory practices with malice or reckless indifference to Jaiyeola's Federally protected rights.  Garmin is therefore liable for punitive damages in an amount sufficient to punish Garmin and to deter it and other employers from engaging in similar conduct.

WHEREFORE, Jaiyeola prays for judgment against Garmin on Count I of his Complaint, for a finding that he has been subjected to unlawful discrimination in violation of 42 U.S.C.

§2000e, et seq.; for placement in the Garmin position that he applied and interviewed for; compensatory and punitive damages; equitable relief; costs expended; reasonable attorneys' fees provided by 42 U.S.C. §2000e-5(k) (if Jaiyeola uses the services of an Attorney); and for such other and further relief the Court deems just and proper.

## COUNT II
**Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, et seq.**
**Section 703(a) of Title VII**
**Race, Color, and National Origin Discrimination**
**Subordinate Bias Liability("cat's paw" theory of liability)[7]**

60.     Jaiyeola realleges and incorporates all preceding paragraphs.

61.     Garmin was an employer for the purposes of Title VII.

62.     Jaiyeola applied to Garmin for employment for the position of "Advanced Materials Engineer - Metals-19001CL".

63.     Jaiyeola had HR phone interview with Ms. Michelle Cormack (Senior Technical Recruiter) on July 23, 2019.

64.     On July 25, 2019, Jaiyeola had a joint "Technical Phone Interview" with Mr. John Mudd (Mechanical Engineering Manager - Hiring Manager) and Mr. Jared Klein (Mechanical Engineering Manager).   Both Garmin Managers remarked that Jaiyeola had highly pertinent qualifications and experience for the Garmin job under consideration.   They were particularly excited that Jaiyeola would be the eyes for Garmin U.S.A. at the Garmin manufacturing plant in Taipei, Taiwan.

65.     On July 26, 2019 (a day after the "Technical Phone Interview" on July 25, 2019), Jaiyeola received an invitation for an on-site interview (at Garmin Headquarters in Olathe, Kansas).

66.     When Cormack interviewed Jaiyeola on-site at Olathe, Kansas, on August 14, 2019,

---

[7] See
*Equal Employment Opportunity Commission v. BCI Coca-Cola Bottling Company of Los Angeles*, 450 F. 3d 476 (10th Cir. 2006)

she again informed Jaiyeola that the Hiring Manager was Mudd and his boss was Mr. Jeff Minelli

(Director of Mechanical Engineering) and she made the following statements: "Jeff is John's boss.

If Jeff doesn't like you, John will not hire you.".

67.     Jaiyeola's first team technical interview team on August 14, 2019, was composed

of Minelli, Mudd, and Mr. Jacob Zeller (Mechanical Engineering Manager - Automotive).

During the interview, Minelli repeatedly asked Jaiyeola the same question in exactly the same

way about aluminum alloys.  Jaiyeola was very uncomfortable by the repetition of the question

because Jaiyeola had to repeat his answers each time Minelli asked the same question.  Minelli

didn't argue Jaiyeola's answers or indicated that he didn't understand Jaiyeola's answers.

68.     Jaiyeola had a technical interview with 3 technical teams on August 14, 2019.  After

the technical interview with the first team (Minelli, Mudd, and Zeller), Mudd informed Jaiyeola

that he would not be present for Jaiyeola's PowerPoint presentation and discussion with the 3

technical teams and Garmin Engineers.  Mudd gave Jaiyeola no reason for that decision.  The

PowerPoint presentation and discussion was an "Assignment" (a current Garmin Engineering issue

for PowerPoint presentation and discussion with Garmin Engineers) that Cormack sent to Jaiyeola

on August 5, 2019 as part of the requirements for the on-site interview at Garmin Headquarters.

Cormack wrote: "The hiring team wanted me to send this your way so that you could be prepared

to discuss this during your interview.".  Jaiyeola prepared for the PowerPoint presentation and

discussion for 9 days.  Mudd was not present for Jaiyeola's PowerPoint presentation and discussion

to the 3 technical teams and Garmin Engineers.

69.     Towards the end of Jaiyeola's PowerPoint presentation and discussion, Mr. Jacob

Zeller (Mechanical Engineering Manager - Automotive) made a comment that Jaiyeola's

PowerPoint presentation was not on the topic that he was asked to present.  Zeller's comment was

not correct, and Mr. Aaron Lindh (Mechanical Engineering Manager – Outdoor Segment) quickly

corrected Zeller. Jaiyeola was surprised by the Zeller comment. Zeller was on the first technical team (Minelli, Mudd, and Zeller) that interviewed Jaiyeola earlier that day.

70.     Mudd did not hire Jaiyeola based on the influence of Minelli; who had a discriminatory motive. Garmin should therefore be held liable for discrimination under Section 703(a) of Title VII of the Civil Rights Act of 1964 as it relates to subordinate bias liability.

71.     Garmin has discriminated against Jaiyeola in violation of Title VII by subjecting him to different treatment on the basis of his Race (African American), Color (Black), and National Origin (Nigerian). Jaiyeola has been treated differently as a result of Garmin's wrongful conduct and its policies, practices, and procedures.

72.     As a direct and proximate result of Garmin's intentional Race (African American), Color (Black), and National Origin (Nigerian) discrimination, Jaiyeola has been denied employment, denied the fair opportunity to obtain employment, and denied fair opportunities with regard to positions, compensation, and/or employment with Garmin.

73.     The adverse failure-to-hire employment action alleged above directly and proximately caused Jaiyeola to suffer damages, including lost wages, lost benefits, garden variety emotional distress, humiliation, intimidation, embarrassment, and frustration.

74.     The Garmin employee who did not hire Jaiyeola was an agent of Garmin who was acting in the court and scope of his agency with Garmin or acted with express authority from Garmin.

75.     Garmin, through its agents or employees, acted outrageously by engaging in discriminatory practices with malice or reckless indifference to Jaiyeola's Federally protected rights. Garmin is therefore liable (subordinate bias liability) for punitive damages in an amount sufficient to punish Garmin and to deter it and other employers from engaging in similar conduct.

WHEREFORE, Jaiyeola prays for judgment against Garmin on Count II of his Complaint,

for a finding that he has been subjected to unlawful discrimination in violation of Section 703(a) of Title VII of the Civil Rights Act of 1964 (subordinate bias liability); for placement in the Garmin position that he applied and interviewed for; compensatory and punitive damages; equitable relief; costs expended; reasonable attorneys' fees provided by 42 U.S.C. §2000e-5(k) (if Jaiyeola uses the services of an Attorney); and for such other and further relief the Court deems just and proper.

### COUNT III
### Violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. §621, *et seq*.
### ("ADEA")
### Age Discrimination

76.     Jaiyeola realleges and incorporates all preceding paragraphs.

77.     Garmin was an employer for the purposes of ADEA.

78.     Garmin requested (through an electronic mail dated July 26, 2019) for Jaiyeola's date of birth when Garmin was scheduling Jaiyeola for the on-site interview (on August 14, 2019) at Olathe, Kansas, and Jaiyeola provided his date of birth to Garmin.

79.     Jaiyeola was at least 64 years old when he applied and interviewed for the position of "Advanced Materials Engineer - Metals-19001CL" at Garmin.

80.     Jaiyeola is within the class of persons protected by 29 U.S.C. 621, *et seq.*.

81.     At all times material, Jaiyeola is entitled to the rights and protections provided under the ADEA.

82.     Garmin discriminated against Jaiyeola on the basis of his age in violation of the ADEA.

83.     Garmin, by and through its officers, employees and agents, engaged in a continuing pattern and practice of discrimination against or disparate treatment of Jaiyeola based upon Jaiyeola's age, ultimately not hiring Jaiyeola.

84.     The materially adverse acts alleged above directly and proximately caused Jaiyeola to suffer damages, including lost wages, lost benefits, garden variety emotional distress, humiliation, intimidation, embarrassment, and frustration.

85.     Garmin's treatment of Jaiyeola was done with malice and reckless indifference to Jaiyeola's Federally protected rights.  Garmin is therefore liable for punitive damages in an amount sufficient to punish Garmin and to deter it and other employers from engaging in similar conduct.

WHEREFORE, Jaiyeola prays for judgment against Garmin on Count III of his Complaint, for a finding that he has been subjected to unlawful discrimination in violation of the ADEA; for placement in the Garmin position that he applied and interviewed for; compensatory and punitive damages; equitable relief; costs expended; reasonable attorneys' fees provided by 29 U.S.C. §§262(b) and 216(b) (if Jaiyeola uses the services of an Attorney); and for such other and further relief the Court deems just and proper.

### COUNT IV
**Violation of the Kansas Age Discrimination in Employment Act (Chapter 44, Art. 11, K.S.A., and specifically within the meaning of subsection (a)(1) of Section 44-1113 of said Act. ("KADEA")**
**Age Discrimination**

86.     Jaiyeola realleges and incorporates all preceding paragraphs.

87.     Garmin was an employer in the State of Kansas for the purposes of KADEA.

88.     The KADEA prohibits an employer from discriminating on the basis of age.

89.     Garmin requested (through an electronic mail dated July 26, 2019) for Jaiyeola's date of birth when Garmin was scheduling Jaiyeola for the on-site interview (on August 14, 2019) at Olathe, Kansas, and Jaiyeola provided his date of birth to Garmin.

90.     Jaiyeola was at least 64 years old when he applied and interviewed for the position of "Advanced Materials Engineer - Metals-19001CL" at Garmin.

91.     Jaiyeola is within the class of persons protected by KADEA.

-16-

92.     At all times material, Jaiyeola is entitled to the rights and protections provided under the KADEA.

93.     Garmin discriminated against Jaiyeola on the basis of his age in violation of the KADEA.

94.     Garmin, by and through its officers, employees and agents, engaged in a continuing pattern and practice of discrimination against or disparate treatment of Jaiyeola based upon Jaiyeola's age, ultimately not hiring Jaiyeola.

95.     The materially adverse acts alleged above directly and proximately caused Jaiyeola to suffer damages, including lost wages, lost benefits, garden variety emotional distress, humiliation, intimidation, embarrassment, and frustration.

96.     Garmin's treatment of Jaiyeola was done with malice and reckless indifference to Jaiyeola's KADEA protected rights.  Garmin is therefore liable for punitive damages in an amount sufficient to punish Garmin and to deter it and other employers from engaging in similar conduct.

WHEREFORE, Jaiyeola prays for judgment against Garmin on Count IV of his Complaint, for a finding that he has been subjected to unlawful discrimination in violation of the KADEA; for placement in the Garmin position that he applied and interviewed for; compensatory and punitive damages; equitable relief; costs expended; reasonable attorneys' fees provided by KADEA (if Jaiyeola uses the services of an Attorney); and for such other and further relief the Court deems just and proper.

## COUNT V
### Violation of Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12112(b)(4) Disability Association Discrimination

97.     Jaiyeola realleges and incorporates all preceding paragraphs.

98.     Garmin was an employer for purposes of the ADA.

-17-

99.     Jaiyeola has a 6-year-old son who has Down Syndrome and therefore classified as disabled for purposes of the ADA.

100.    Jaiyeola's son has a record of being disabled for purposes of the ADA.

101.    When Cormack interviewed Jaiyeola on August 14, 2019, she informed him of the nearby (to Olathe, Kansas) places to live and Jaiyeola informed her that he has a son (6 years old) who has Down Syndrome and that he would want to live in a school district that has facilities for Down Syndrome students.  Cormack told Jaiyeola she has teachers in her family, and she would get the information on nearby school systems that have facilities for Down Syndrome students, and she would send the information to Jaiyeola that interview day or the next (August 14 or 15, 2019). Jaiyeola never heard back from Cormack on that information.

102.    The failure-to-hire adverse employment action alleged above directly and proximately caused Jaiyeola to suffer damages, including lost wages, lost benefits, garden variety emotional distress, humiliation, intimidation, embarrassment, and frustration.

103.    The person who failed to hire Jaiyeola was an agent of Garmin who was acting in the court and scope of his agency with Garmin or acted with express authority from Garmin.

104.    Garmin, through its agents or employees, acted outrageously by engaging in discriminatory practices with malice or reckless indifference to Jaiyeola's Federally protected rights.  Garmin is therefore liable for punitive damages in an amount sufficient to punish Garmin and to deter it and other employers from engaging in similar conduct.

105.    Garmin has discriminated against Jaiyeola in violation of ADA by subjecting him to different treatment on the basis of his son's Down Syndrome disability.  Jaiyeola has been treated differently as a result of Garmin's wrongful conduct and its policies, practices, and procedures.

WHEREFORE, Jaiyeola prays for judgment against Garmin on Count V of his Complaint, for a finding that he has been subjected to unlawful discrimination in violation of 42

U.S.C. §12112(b)(4) (Disability Association Discrimination); for placement in the Garmin position that he applied and interviewed for; compensatory and punitive damages; equitable relief; costs expended; reasonable attorneys' fees provided by 42 U.S.C. §2000e-5(k) (if Jaiyeola uses the services of an Attorney); and for such other and further relief the Court deems just and proper.

**COUNT VI**
**Deprivation of Due Process Under the Fourteenth Amendment, 42 U.S.C. § 1983**

106.    Jaiyeola realleges and incorporates all preceding paragraphs.

107.    Jaiyeola saw an advertisement for the position of "Advanced Materials Engineer - Metals-19001CL" at Garmin International on a Job Board (www.indeed.com) and he applied on July 3, 2019.

108.    Jaiyeola had HR phone interview with Ms. Michelle Cormack (Senior Technical Recruiter) on July 23, 2019. Cormack informed Jaiyeola that the Hiring Manager for the position was Mr. John Mudd.

109.    On July 25, 2019, Jaiyeola had a joint "Technical Phone Interview" with Mr. John Mudd (Mechanical Engineering Manager - Hiring Manager) and Mr. Jared Klein (Mechanical Engineering Manager).

110.    On July 26, 2019 (a day after the "Technical Phone Interview" on July 25, 2019), Jaiyeola received an invitation for an on-site interview (at Garmin Headquarters in Olathe, Kansas) from Mr. Evan Northup (Garmin HR Coordinator) to occur August 14, 2019.

111.    On August 5, 2019, Cormack sent Jaiyeola an "Assignment" (a PowerPoint presentation and a discussion of the presentation with Garmin Engineers) for the on-site interview at Garmin Headquarters in Olathe, Kansas.

112.    During Jaiyeola's technical interview with the second or third interview team, Mudd

opened the door to the interview room, stood by the door (he didn't come inside), and informed Jaiyeola (to the hearing of the interviewing team) that he would not be at Jaiyeola's PowerPoint presentation and discussion.  Mudd did not give any reason why he wasn't going to be at the presentation and the discussion.  Jaiyeola was surprised and concerned that Mudd would not attend his presentation and discussion.   Jaiyeola was also concerned about the optics Mudd's announcement made to the technical team that was interviewing Jaiyeola at that instant.  The interviewing team heard what Mudd said.  Jaiyeola became very uncomfortable and embarrassed for the rest of the team interview and during Jaiyeola's subsequent PowerPoint presentation and discussion.

113.    Mudd did not attend Jaiyeola's PowerPoint presentation and discussion.

114.    Jaiyeola's PowerPoint presentation and discussion were part of the on-site interview requirements for the job that Jaiyeola applied for.

115.    Mudd did not have all of the necessary information to make an informed decision about hiring Jaiyeola for the position Jaiyeola applied for because Mudd did not attend Jaiyeola's PowerPoint presentation and discussion.

116.    Mudd's decision not to hire Jaiyeola constituted a denial of due process to Jaiyeola because his decision was based on less than complete information[8].

117.    That materially adverse acts alleged above directly and proximately caused Jaiyeola to suffer damages, including lost wages, lost benefits, garden variety emotional distress, humiliation, intimidation embarrassment, and frustration.

118.    Garmin's action against Jaiyeola was done with malice and reckless indifference to Jaiyeola's Federally protected rights under the Constitution.  Garmin is therefore liable for punitive

_____

[8] See

*Blackford v. Kansas Employment SEC. Bd. of Review*, 938 F. Supp. 739 (D. Kan. 1996)

damages in an amount sufficient to punish Garmin and to deter it and other employers from engaging in similar conduct.

WHEREFORE, Jaiyeola prays for judgment against Garmin on Count VI of his Complaint, for a finding that he has been denied due process in violation of 42 U.S.C. § 1983 (Deprivation of Due Process); for placement in the Garmin position that he applied and interviewed for; compensatory and punitive damages; equitable relief; costs expended; reasonable attorneys' fees (if Jaiyeola uses the services of an Attorney); and for such other and further relief the Court deems just and proper.

### Jury Demand and Place of Trial

Jaiyeola respectfully requests a trial by jury on all issues so triable in Kansas City, Kansas.

### Designation of Place of Trial

Jaiyeola respectfully requests that trial in this matter be held at the Robert J. Dole Courthouse, 500 State Avenue, Kansas City, Kansas 66101.


Ganiyu Ayinla Jaiyeola
749 Preserve Circle Drive SE
Apartment 6
Grand Rapids, Michigan 49548
Tel.:  616.635.4025
ganiyu.jaiyeola@gmail.com
*pro se*

PLAINTIFF

-21-

Index of Exhibits - Complaint

Exhibit A      Jaiyeola's Charge of Discrimination (No. 563-2020-00499) with EEOC.

Exhibit B      Jaiyeola's Charge of Discrimination (No. 41705-20) with KHRC.

Exhibit C      EEOC Right-to-sue letter issued to Jaiyeola.

Exhibit D      KHRC agrees with EEOC determination.

Exhibit E      Advertisement for "Advanced Materials Engineer - Metals-19001CL" position at Garmin.

Exhibit F      Copy of electronic mail showing that Human Resources at Garmin received Jaiyeola's job application.

Exhibit G      Jaiyeola's resume for the job application.

Exhibit H      Jaiyeola's cover letter for the job application.

Exhibit I      Copy of electronic mail showing that Ms. Michelle Cormack (Senior Technical Recruiter) will have a Human Resources phone interview with Jaiyeola on July 23, 2019.

Exhibit J      Copy of electronic mail showing that Mr. John Mudd (Mechanical Engineering Manager - Hiring Manager) and Mr. Jared Klein (Mechanical Engineering Manager) will have a joint "Technical Phone Interview" with Jaiyeola on July 25, 2019.

Exhibit K      Copy of electronic mail (dated July 26, 2019 and before the on-site job interview on August 14, 2019 at Olathe) from Mr. Evan Northup (Human Resources Coordinator) requesting for information on Jaiyeola's date of birth.

Exhibit L      Copy of electronic mail showing that Ms. Michelle Cormack (Senior Technical Recruiter) sent (on August 5, 2019) Jaiyeola an "Assignment" for the on-site interview at Garmin Headquarters in Olathe, Kansas, on August 14, 2019.

Exhibit M      Interview schedule that Ms. Michelle Cormack (Senior Technical Recruiter) handed to Jaiyeola on August 14, 2019.

Exhibit N      Copy of electronic mail showing Jaiyeola's "Thank You" electronic mail to Garmin on August 15, 2019.

Exhibit O      Copy of electronic mail showing Jaiyeola's "Update" request to Garmin on August 22, 2019.

Exhibit P      Copy of electronic mail from Garmin Human Resources (Mr. Michael Risinger) stating that Jaiyeola was not selected for the "Advanced Materials Engineer - Metals-19001CL" position at Garmin.

Exhibit Q      Garmin's EEO policy statement.

| | |
|---|---|
| Exhibit R | Jaiyeola's complaint to Mr. John Mudd (Mechanical Engineering Manager - Hiring Manager). |
| Exhibit R1 | "EXHIBIT A - Copy of electronic mail from Garmin Human Resources (Mr. Michael Risinger) stating that Jaiyeola was not selected for the "Advanced Materials Engineer - Metals-19001CL" position at Garmin." |
| Exhibit R2 | "EXHIBIT B - Copy of electronic mail (dated July 26, 2019 and before the on-site job interview on August 14, 2019 at Olathe) from Mr. Evan Northup (Human Resources Coordinator) requesting for information on Jaiyeola's date of birth." |
| Exhibit R3 | "EXHIBIT C - Interview schedule that Ms. Michelle Cormack (Senior Technical Recruiter) handed to Jaiyeola on August 14, 2019." |
| Exhibit R4 | "EXHIBIT D - Copy of electronic mail showing that Ms. Michelle Cormack (Senior Technical Recruiter) sent (on August 5, 2019) Jaiyeola an "Assignment" for the on-site interview at Garmin Headquarters in Olathe, Kansas, on August 14, 2019." |
| Exhibit R5 | "EXHIBIT E - Garmin's EEO policy statement." |
| Exhibit S | Jaiyeola's complaint to Ms. Laurie Minard (Garmin's Vice President of Human Resources). |
| Exhibit S1 | "EXHIBIT A - Advertisement for "Advanced Materials Engineer - Metals-19001CL" position at Garmin." |
| Exhibit S2 | "EXHIBIT B - Copy of electronic mail showing that Human Resources at Garmin received Dr. Ganiyu Jaiyeola's job application." |
| Exhibit S3 | "EXHIBIT C - Dr. Ganiyu Jaiyeola's resume for the job application." |
| Exhibit S4 | "EXHIBIT D - Dr. Ganiyu Jaiyeola's cover letter for the job application." |
| Exhibit S5 | "EXHIBIT E - Copy of electronic mail showing that Ms. Michelle Cormack (Senior Technical Recruiter) will have a Human Resources phone interview with Dr. Ganiyu Jaiyeola on July 23, 2019." |
| Exhibit S6 | "EXHIBIT F - Copy of electronic mail showing that Mr. John Mudd (Mechanical Engineering Manager - Hiring Manager) and Mr. Jared Klein (Mechanical Engineering Manager) will have a joint "Technical Phone Interview" with Dr. Ganiyu Jaiyeola on July 25, 2019." |
| Exhibit S7 | "EXHIBIT G - Copy of electronic mail showing that Ms. Michelle Cormack (Senior Technical Recruiter) sent (on August 5, 2019) Dr. Ganiyu Jaiyeola an "Assignment" for the on-site interview at Garmin Headquarters in Olathe, Kansas, on August 14, 2019." |

Exhibit S8    "EXHIBIT H - Interview schedule that Ms. Michelle Cormack (Senior Technical Recruiter) handed to Dr. Ganiyu Jaiyeola on August 14, 2019 afternoon."

Exhibit S9    "EXHIBIT I - Copy of electronic mail showing Dr. Ganiyu Jaiyeola's "Thank You" electronic mail to Garmin on August 15, 2019."

Exhibit S10   "EXHIBIT J - Copy of electronic mail showing Dr. Ganiyu Jaiyeola's "Update" request to Garmin on August 22, 2019."

Exhibit S11   "EXHIBIT K - Copy of electronic mail from Garmin Human Resources (Mr. Michael Risinger) stating that Dr. Ganiyu Jaiyeola was not selected for the "Advanced Materials Engineer - Metals-19001CL" position at Garmin."

Exhibit S12   "EXHIBIT L - Copy of electronic mail (dated July 26, 2019 and before the on-site job interview on August 14, 2019 at Olathe) from Mr. Evan Northup (Human Resources Coordinator) requesting for information on Dr. Ganiyu Jaiyeola's date of birth."

Exhibit S13   "EXHIBIT M - A copy of my PowerPoint presentation."

Exhibit S14   "EXHIBIT N - Garmin's EEO policy statement."

Exhibit T     Garmin has given two "inconsistent"[1] reasons (from Risinger and Kight) for not hiring Jaiyeola.

---

[1] *Fassbender v. Correct Care Solutions*, LLC, <u>890 F.3d 875</u> (2018)

# EXHIBIT A

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974.  See enclosed Privacy Act Statement and other information before completing this form. | [ ] FEPA<br>[X] EEOC | 563-2020-00499 |

| KANSAS HUMAN RIGHTS COMMISSION | and EEOC |
|---|---|
| *State or local Agency, if any* | |

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone | Year of Birth |
|---|---|---|
| DR. GANIYU A JAIYEOLA | (616) 635-4025 | 1955 |

| Street Address | City, State and ZIP Code |
|---|---|
| 749 PRESERVE CIR DR SE, APT 6,  GRAND RAPIDS, MI 49548 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others.  *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| GARMIN INTERNATIONAL | | |

| Street Address | City, State and ZIP Code |
|---|---|
| 1200 E. 151ST STREET,  OLATHE,  KS 66062 | |

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

| | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| [X] RACE  [X] COLOR  [ ] SEX  [ ] RELIGION  [X] NATIONAL ORIGIN<br>[ ] RETALIATION  [X] AGE  [ ] DISABILITY  [ ] GENETIC INFORMATION<br>[ ] OTHER *(Specify)* | Earliest: 07-03-2019   Latest: 11-13-2019<br>[ ] CONTINUING ACTION |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

ON OR ABOUT JULY 3, 2019, I APPLIED FOR AN ADVANCED MATERIALS ENGINEER - METALS - 19001CL FOR GARMIN INTERNATIONAL. I SAW THE POSITION ON INDEED.COM BUT ONCE I SELECTED APPLY, I WAS BROUGHT TO GARMIN'S INTERNAL WEBSITE AND COMPLETED THE APPLICATION PROCESS. NEXT, I COMPLETED SEVERAL TELEPHONIC INTERVIEWS WITH HR AND MANAGEMENT FROM ON OR ABOUT JULY 23, 2019, THROUGH JULY 25, 2019. ON OR ABOUT AUGUST 14, 2019, I COMPLETED AN ONSITE INTERVIEW IN OLATHE, KANSAS FOR THE POSITION. FOR THE ONSITE INTERVIEW, I FIRST MET WITH HR TO COMPLETE AN INTERVIEW. NEXT, I WAS GIVEN A TOUR OF THE FACILITIES AND HAD A TECHNICAL DISCUSSION REGARDING THE JOB REQUIREMENTS FOR THE POSITION. THEN I HAD 3 SEPARATE TEAM TECHNICAL INTERVIEWS FOLLOWED BY A POWERPOINT PRESENTATION THAT THE HIRING MANAGER DID NOT ATTEND.

I BELIEVE I WAS NOT SELECTED FOR THE POSITION BECAUSE OF MY RACE (AFRICAN AMERICAN), NATIONAL ORIGIN (NIGERIAN), AGE (OVER 40) AND MY SON'S DISABILITY IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED AND THE AGE DISCRIMINATION IN EMPLOYMENT ACT

| I want this charge filed with both the EEOC and the State or local Agency, if any.  I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct.<br><br>**Digitally signed by Ganiyu Jaiyeola on 11-26-2019 05:18 PM EST** | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>*(month, day, year)* |

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA <br> ☒ EEOC | 563-2020-00499 |

**KANSAS HUMAN RIGHTS COMMISSION**                                    and EEOC

*State or local Agency, if any*

**(ADEA) OF 1967, AS AMENDED AND THE AMERICANS WITH DISABILITIES ACT AMENDMENTS ACT (ADAAA) OF 2008, AS AMENDED.**

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| **Digitally signed by Ganiyu Jaiyeola on 11-26-2019 05:18 PM EST** | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (*month, day, year*) |

CP Enclosure with EEOC Form 5 (11/09)

**PRIVACY ACT STATEMENT:** Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

1. **FORM NUMBER/TITLE/DATE.** EEOC Form 5, Charge of Discrimination (11/09).

2. **AUTHORITY.** 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

3. **PRINCIPAL PURPOSES.** The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

4. **ROUTINE USES.** This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws). Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination. This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions. A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

5. **WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.** Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of. Without a written charge, EEOC will ordinarily not act on the complaint. Charges under Title VII, the ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed. Charges may be clarified or amplified later by amendment. It is not mandatory that this form be used to make a charge.

### NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA. Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements. You will be told which agency will handle your charge. When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter. Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so <u>within 15 days</u> of your receipt of its findings. Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

### NOTICE OF NON-RETALIATION REQUIREMENTS

Please **notify** EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge. Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA and Section 207(f) of GINA, it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation,

proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.

# EXHIBIT B



Landon State Office Bldg.
900 S.W. Jackson St., Suite 568 S.
Topeka, Kansas 66612-1258

**Kansas**
Human Rights Commission

Phone: (785) 296-3206
Fax: (785) 296-0589
TTY (785) 296-0245
800# 1-888-793-6874
www.khrc.net

Melvin J. Neufeld, Chair, Garden City
Harold Schorn, II, Vice Chair, Newton
David Brant, Wichita
Michael Kane, Kansas City
James Terrones, Olathe
Jonathon Westbrook, Kansas City

Laura Kelly, Governor
Ruth Glover, Executive Director
Bill Wright, Assistant Director
Barbara Girard, Investigative Admin.
Robert Easterling, Investigative Admin.
Barb Wangerin, Office Manager

December 16, 2019

Ganiyu A. Jaiyeola
749 Preserve Cir. Dr. Se Apt. 6
Grand Rapids, MI 49548

RE:   Case No. 41705-20, Jaiyeola vs. GARMIN INTERNATIONAL

Dear Ganiyu A. Jaiyeola:

This is to acknowledge receipt of your formal complaint charging the above captioned Respondent with violating the Kansas Act Against Discrimination or the Kansas Age Discrimination in Employment Act. A copy of the complaint is enclosed for your information.

Since your complaint is first filed with the Equal Employment Opportunity Commission (EEOC), the Kansas Human Rights Commission will be notified of the results. Kansas Human Rights Commission will review the results of the completed EEOC investigation to determine if there has been a violation of the Kansas Act Against Discrimination. If we need additional information to make a determination, we will contact you at a later date. Until then, all contacts should be made, and any documentation sent to the EEOC District Office in Kansas City, Kansas.

If you have questions, please do not hesitate to call.

Sincerely,

*Robert Easterling*

Robert Easterling
Investigative Administrator

RE/kp
Enclosure

# STATE OF KANSAS
# KANSAS HUMAN RIGHTS COMMISSION

KHRC Docket No. 41705-20

EEOC Dual-Filed Charge No.* 563-2020-00499
*(Only for first filed KHRC, second filed EEOC complaints)

On the complaint of

Ganiyu A. Jaiyeola

                                    Complainant,

vs.

                                    Respondent,

Garmin International and its Representatives

I, Ganiyu A. Jaiyeola, residing at 749 Preserve Cir. Dr. SE, Apt. 6, Grand Rapids, MI 49548

charge Garmin International and its Representatives, whose address is 1200 E. 151st St., Olathe, KS 66062

With an unlawful practice within the meaning of:

[X] The Kansas Act Against Discrimination (Chapter 44, Art. 10, K.S.A.) and specifically within the meaning of subsection (a)(1) of Section 44-1009 of said Act, because of my:

(X) RACE              ( ) SEX                 ( ) RETALIATION
( ) RELIGION          (X) NATIONAL ORIGIN     ( ) GENETIC INFORMATION
(X) COLOR             ( ) ANCESTRY            ( ) FAMILIAL STATUS
(X) DISABILITY, RECORD OF, AND/OR REGARDED AS DISABLED

[X] The Kansas Age Discrimination in Employment Act (Chapter 44, Art. 11, K.S.A.) and specifically within the meaning of subsection (a)(1) of Section 44-1113 of said Act, because of my:
(X) AGE          ( ) RETALIATION

Alleged Date of Incident, on or about July 3, 2019, to November 13, 2019.

The aforesaid charges are based on the following facts:

I.     My race is African American. My national origin is Nigeria. I am associated with my son, who has a disability. I was born in 1955.

II.    I applied for the position of Advanced Materials Engineer at Respondent's place of business on July, 3, 2019.

# STATE OF KANSAS
# KANSAS HUMAN RIGHTS COMMISSION

(continued)

KHRC Docket No. _41705-20_

EEOC Dual-Filed Charge No.* _563-2020-00499_
*(Only for first filed KHRC, second filed EEOC complaints)

A.    See attached Charge of Discrimination.

I have not commenced any action, civil or criminal, based upon the grievance set forth above, except

*I declare under penalty of perjury that the foregoing is true and correct; and if this document is executed outside the state of Kansas, I declare under penalty of perjury under the laws of the state of Kansas that the foregoing is true and correct.*

Executed on _December 13, 2019_      x _____
                 (Date)                    (Signature of Complainant)

## FILED

DEC 13 2019

Kansas Human Rights Commission

Docket No. 41705-20

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA ☒ EEOC | 563-2020-00499 |

| KANSAS HUMAN RIGHTS COMMISSION | and EEOC |
|---|---|
| State or local Agency, if any | |

| Name (indicate Mr., Ms., Mrs.) | Home Phone | Year of Birth |
|---|---|---|
| DR. GANIYU A JAIYEOLA | (616) 635-4025 | 1955 |

| Street Address | City, State and ZIP Code |
|---|---|
| 749 PRESERVE CIR DR SE, APT 6,  GRAND RAPIDS, MI 49548 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| GARMIN INTERNATIONAL | | |

| Street Address | City, State and ZIP Code |
|---|---|
| 1200 E. 151ST STREET, OLATHE, KS 66062 | |

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

| DISCRIMINATION BASED ON (Check appropriate box(es).) | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| | Earliest          Latest |
| ☒ RACE  ☒ COLOR  ☐ SEX  ☐ RELIGION  ☒ NATIONAL ORIGIN | 07-03-2019    11-13-2019 |
| ☐ RETALIATION  ☒ AGE  ☐ DISABILITY  ☐ GENETIC INFORMATION | |
| ☐ OTHER (Specify) | ☐ CONTINUING ACTION |

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):
ON OR ABOUT JULY 3, 2019, I APPLIED FOR AN ADVANCED MATERIALS ENGINEER - METALS - 19001CL FOR GARMIN INTERNATIONAL. I SAW THE POSITION ON INDEED.COM BUT ONCE I SELECTED APPLY, I WAS BROUGHT TO GARMIN'S INTERNAL WEBSITE AND COMPLETED THE APPLICATION PROCESS. NEXT, I COMPLETED SEVERAL TELEPHONIC INTERVIEWS WITH HR AND MANAGEMENT FROM ON OR ABOUT JULY 25, 2019, THROUGH JULY 25, 2019. ON OR ABOUT AUGUST 14, 2019, I COMPLETED AN ONSITE INTERVIEW IN OLATHE, KANSAS FOR THE POSITION. FOR THE ONSITE INTERVIEW, I FIRST MET WITH HR TO COMPLETE AN INTERVIEW. NEXT, I WAS GIVEN A TOUR OF THE FACILITIES AND HAD A TECHNICAL DISCUSSION REGARDING THE JOB REQUIREMENTS FOR THE POSITION. THEN I HAD 3 SEPARATE TEAM TECHNICAL INTERVIEWS FOLLOWED BY A POWERPOINT PRESENTATION THAT THE HIRING MANAGER DID NOT ATTEND.

I BELIEVE I WAS NOT SELECTED FOR THE POSITION BECAUSE OF MY RACE (AFRICAN AMERICAN), NATIONAL ORIGIN (NIGERIAN), AGE (OVER 40) AND MY SON'S DISABILITY IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED AND THE AGE DISCRIMINATION IN EMPLOYMENT ACT

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| Digitally signed by Ganiyu Jaiyeola on 11-26-2019 05:18 PM EST | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |

Kansas Human Rights Commission

Docket No. 41705-20

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 563-2020-00499 |

| KANSAS HUMAN RIGHTS COMMISSION | and EEOC |
|---|---|
| State or local Agency, if any | |

(ADEA) OF 1967, AS AMENDED AND THE AMERICANS WITH DISABILITIES ACT AMENDMENTS ACT (ADAAA) OF 2008, AS AMENDED.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| Digitally signed by Ganiyu Jaiyeola on 11-26-2019 05:18 PM EST | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(month, day, year) |

# EXHIBIT C

EEOC Form 161 (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### DISMISSAL AND NOTICE OF RIGHTS

| To: | Ganiyu A. Jaiyeola<br>749 Preserve Cir Dr SE<br>APT 6<br>Grand Rapids, MI 49548 | From: | Kansas City Area Office<br>Gateway Tower II<br>400 State Avenue, Suite 905<br>Kansas City, KS 66101 |
|---|---|---|---|

|  | On behalf of person(s) aggrieved whose identity is<br>CONFIDENTIAL (29 CFR §1601.7(a)) | | |
|---|---|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 563-2020-00499 | Leah Sibert,<br>Investigator | (913) 551-5655 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

Enclosures(s)

_for:_ Natascha Deguire,
Area Office Director

12/4/2019
(Date Mailed)

cc:
Dave Kight, Asst. General Counsel
GARMIN INTERNATIONAL
1200 E. 151st Street
Olathe, KS 66062

# EXHIBIT D



**Kansas**
Human Rights Commission

Landon State Office Bldg.
900 S.W. Jackson St., Suite 568 S.
Topeka, Kansas 66612-1258

Phone: (785) 296-3206
Fax: (785) 296-0589
TTY (785) 296-0245
800# 1-888-793-6874
www.khrc.net

Melvin J. Neufeld, Chair, Garden City
Harold Schorn, II, Vice Chair, Newton
David Brant, Wichita
Michael Kane, Kansas City
James Terrones, Olathe
Jonathon Westbrook, Kansas City

Laura Kelly, Governor
Ruth Glover, Executive Director
Bill Wright, Assistant Director
Barbara Girard, Investigative Admin.
Robert Easterling, Investigative Admin.
Barb Wangerin, Office Manager

January 8, 2020

Ganiyu A. Jaiyeola
749 Preserve Cir. Dr. SE, Apt. 6
Grand Rapids, MI 49548

RE:   Case No. 41705-20, Jaiyeola vs. Garmin International

Dear Ganiyu A. Jaiyeola:

The above referenced complaint was filed with both the U.S. Equal Employment Opportunity Commission (EEOC) and dual filed with the Kansas Human Rights Commission (KHRC). EEOC investigated your complaint and issued a No Probable Cause determination. KHRC investigating commissioner assigned to this case has reviewed the investigation conducted by EEOC, found it to be sufficient and complete and has concluded that the summarization of facts and/or determination issued to the parties by EEOC to adequately address the issues involved in the KHRC complaint. Based upon a review of the information provided through the EEOC investigation, the KHRC investigating commissioner hereby issues a determination of No Probable Cause regarding the above complaint filed with KHRC.

KHRC determinations of probable cause/no probable cause as to the complaints filed with the agency are not appeasable or subject to reconsideration. However, this determination constitutes exhaustion of administrative remedies should the complainant choose to pursue this matter further by court action. Such matters may be reviewed with legal counsel representing a party to such a complaint.

Sincerely,

Robert Easterling
Investigative Administrator

# EXHIBIT E

Garmin

Job Description

Advanced Materials Engineer - Metals-19001CL

Description

As a leading worldwide provider of navigation devices and wearable technology, our focus is on developing, designing and supporting superior products. Our advanced technology promotes performance, safety and ease of use in every market we serve. That makes us an engineering and technology company with a keen focus on recruiting talent in those fields. But the same vertical integration business model that keeps all design and manufacturing processes in-house also gives us the incentive to hire top performers from different backgrounds, including operations, finance and accounting, information technology, sales, marketing and communications.

We're seeking an Advanced Materials Engineer at our headquarters in Olathe, KS with expertise in metals and their associated finishes to manage relations with key materials suppliers and internal customers to drive technology and innovation that ensure product relevancy. In this role, you'll be involved with managing supplier relations, driving innovation, and ensuring product integration. You will also be responsible for assisting the design team in root causing and resolving metal's related issues. Key functions of this role are below:

Managing Supplier Relations

Perform industry wide survey of material's (i.e. aluminum, steel, titanium, magnesium, and more) manufacturers that meet Garmin's Engineering and Industrial Design requirements.

Visit suppliers to evaluate their capability to meet high volume manufacturing demands and quality standards.

Work with suppliers on metal materials and finishes, and capability roadmap, aligning with Garmin's needs.

Provide technical input to Engineering and our suppliers to resolve quality issues related to materials and finishes.

Driving Innovation

Continually evaluate new metal materials, finishes, and processes and regularly communicate status to the Product Development Team and Management.

Bring key suppliers on site to demonstrate capabilities to the larger Garmin team.

Product Integration

-1-

Work closely with the Product Development Team to ensure that new metal materials and processes are properly implemented in design and properly executed by Garmin's suppliers.

Be our go-to engineer for questions regarding materials and finishes that come up during design.

Manage database of metal material and finishing options.

Oversee the process by which new metal materials and finishes are validated.

Be on the forefront of emerging safety and environmental regulations as related to metal materials and finishes.

OTHER RESPONSIBILITIES:

Perform other job-related duties as assigned

Domestic and international travel required


Qualifications

Bachelor of Science in Materials Science, Mechanical Engineering, Chemical Engineering, Metallurgical Engineering or another degree relevant for successful performance of the essential functions of this job description

5+ years of industry experience in material or process development

Excellent academics (cumulative GPA greater than or equal to 3.0 as a general rule)

Demonstrated strong and effective verbal, written, and interpersonal communication skills

Demonstrated knowledge of Garmin's overall product line and customers

Demonstrates exemplary judgment regarding product usability, customer expectations, and creative product tradeoffs

Experience with metals and their associated finishes

Ability to organize and direct multiple projects simultaneously

Experience in providing concise reports with audience appropriate conclusions and recommendations

Strong attention to detail and resolution to tackle complex problems

Experience working with suppliers throughout the world

Fluency in Mandarin or Japanese is a plus.


At Garmin, we like to laugh, have fun and work hard. It comes easily when you work on cool products with hard-working individuals who share the same passion. We offer numerous

-2-

opportunities to get involved – kickball anyone? – and believe strongly in a work-life balance so your creativity can flow.

Our benefits, designed to lead an evolving marketplace, support innovation and encourage a healthy balance between work and life, keep us competitive and allow our associates to make their own decisions about their well-being and future. We offer a choice of healthcare plans—with low or no premiums—which consistently rank in the 90th percentile when compared to other high-tech employers, plus dental and vision plans for you and your family. In addition, our financial benefits rate 82% above the median for technology companies comparable in size. Our 401K retirement plan provides 5% of pay base contribution plus a match of 75 cents for every dollar you contribute to a maximum of 10% of your compensation. The employee stock purchase plan allows for shares to be bought at a 15% discount.

Relocation assistance provided. Never been to Kansas City? You are missing out! Check out www.mykc.co

Garmin International is an equal opportunity employer. Qualified applicants will receive consideration for employment without regard to race, religion, color, national origin, citizenship, sex, sexual orientation, gender identity, veteran's status, age or disability.

Job Engineering

Primary Location US-KS-Olathe

Organization Consumer Engineering

Schedule Full-time

-3-

# EXHIBIT F

from:   Human Resources <invalidemail@garmin.com>

to:   Ganiyu Jaiyeola <ganiyu.jaiyeola@gmail.com>

date:   Jul 3, 2019, 9:40 PM

subject:   Thank you for applying at Garmin!

mailed-by:   garmin.com

7/3/19


Dear Ganiyu,

Thank you for your interest in Garmin International. We are delighted to receive your application for the position of Advanced Materials Engineer - Metals.

What happens next? Our Talent Acquisition team will review your background and if the role is a match to your skills and experience, we will get in touch to discuss next steps. If you would like to review your candidate file, click here https://garmin.taleo.net/careersection/careersection/candidateportal/myaccount/myAccountView. jsf?lang=en&csNo=10180&portal=20100010522. If we have further interest or require additional information, a member of our Human Resources Department will contact you.

In the meantime, we invite you to explore life at Garmin by following us on social. Be part of the story! Follow Garmin Careers on Facebook, Twitter, and Instagram.

We thank you for your interest in Garmin International and wish you continued success in your job search.


Best regards,

Human Resources Department

Garmin International


Garmin International is an equal opportunity employer. Qualified applicants will receive consideration for employment without regard to race, color, religion, sex, sexual orientation, gender identity, national origin, disability or protected veteran status. For our EEO policy, please click here. If you'd like more information on your EEO rights under the law, please click here.


Replies to this message are undeliverable and will not reach the Human Resources Department. Please do not reply. No phone calls please.

-1-

# EXHIBIT G

**GANIYU JAIYEOLA (GJ)**
749 Preserve Circle Dr SE 6
Grand Rapids, Michigan 49548

Cell:  (616) 635-4025                    GANIYU.JAIYEOLA@gmail.com
                                         GJAIYEOLA@yahoo.com

https://www.linkedin.com/pub/ganiyu-jaiyeola-gj/4/1b1/b8b

## MAJOR ACCOMPLISHMENTS

- Technical Liaison between Carrier and DOE on Corrosion/Materials issues for Ammonia-HVAC System for United States
- Development of Electrochemical Sensor for Detecting Corrosion in Integral Fuel Tank of U.S. Air Force planes
- Qualification of Rinse Water Additives and Corrosion Preventive Compounds for the U.S. Air Force Aging Aircraft Program
- Patent (Corrosion Inhibitor) at UtilX: (United States Patent Application: 20090114882) ELECTRICAL CABLE RESTORATION FLUID
- Technical Liaison Between UtilX and Dow Corning on Silicone Fluids
- Technical Leader on a $2 million/year Sifco Halliburton Drill Bits contract for Silver plating
- Set up the process for Nickel, Chrome, and Gold electroplating at Cross China (in China)
- Technical Liaison Between Federal-Mogul (Greenville, Michigan) and Federal-Mogul (Wiesbaden, Germany) on a Lead-free Plating Line Technology Transfer from Federal-Mogul Wiesbaden
- Technical Liaison Between Stryker Instruments (Kalamazoo, Michigan) and Dr. Weigert Company (Hamburg, Germany) on Neodisher MediClean forte (Alkaline Detergent for Medical and Surgical Instruments)

## MAJOR EXPERTISE

- Corrosion, Metallurgy, Failure Analysis, Risk Analysis, Materials Integrity, Consulting, Project Management, Bioinorganic Chemistry, Electrochemistry, Analytical Chemistry, Inorganic Chemistry, Organic Chemistry, Physical Chemistry, Non-Destructive Evaluation, Materials Compatibility, Materials Selection, Coatings, Electroplating, Product Development, Supplier Qualification, Quality Control, Formulations,

GANIYU JAIYEOLA                    -2-

Metals, Non-Metals, Ferrous alloys, Non-ferrous alloys, Plastics, Polymeric Materials, Technical Support, Litigation Support

## EDUCATION
- MBA (Marketing/Organization & Management), Syracuse Univ., NY
- Ph.D. Materials Science (Metallurgy/Corrosion), Univ. of Connecticut, CT
- M.S.  Chemistry (Inorganic Chemistry), Univ. of Connecticut, CT
- M.Sc. Chemistry (Bioinorganic Chemistry), Univ. of Ibadan, Nigeria
- B.Sc.  Chemistry (Minor: Biochemistry), Univ. of Ibadan, Nigeria

## EXPERIENCE
**GJ-OJ Consulting LLC            Grand Rapids, MI            07/15–Present**
**Metallurgical/Corrosion/Materials/Failure Analysis Engineer (Automotive, Aerospace, Defense, Cosmetics, Coatings, Plating, Power, Utilities, HVAC, Oil & Gas, Medical Device, Energy, Chemicals, Food, and other Industries)**
- Materials Compatibility & Selection for different work environments, Corrosion, Risk Analysis & Materials Integrity, Metallurgy, Electrochemistry, Electroplating, Failure Analysis, Quality Control, Project Management, Supplier Qualification, Chemical Formulations, Coatings. Evaluations of piping circuits and systems at a Pharmaceutical Plant for corrosion failures.  Failure Modes and Effects Analysis (FMEA).  API 570, API 571, ASME B31.3.  Non-Destructive Evaluations.

**Element Materials Technology          Wixom, MI          06/11–07/15**
**Corrosion/Metallurgical Engineer (Element Materials Technology is a Test Laboratory for the Automotive, Aerospace, Defense, Cosmetics, Coatings, Plating, Power, Utilities, HVAC, Oil & Gas, Medical Device, Energy, Chemicals, Food, and other Industries)**
- Materials Compatibility & Selection for different work environments, Corrosion, Risk Analysis & Materials Integrity, Metallurgy, Electrochemistry, Non-Destructive Evaluation, Electroplating, Failure Analysis, Quality & Process Control, Chemistry, Coatings, Plant visits, Litigation Support

**Stryker                          Kalamazoo, MI          10/10–5/11**
**Manufacturing Engineer – Coatings, Inks, Detergents, Sterilization (Consulting: Medical Devices)**

**GANIYU JAIYEOLA**                    -3-

- Corrosion/Metallurgical/Compatibility qualification testing of composites, metallic, non-metallic, and polymeric materials. Detergent-Washer, Autoclave, and Sterrad Testing – Alloys, Inks (Pad-Print, Screen-Print, and Laser Print), and Coatings. Selection and Qualification of Coatings, Failure Analysis, Product Development and Specification Writing, Customer Support, Bench Chemistry, Electrochemistry, Bioinorganic Chemistry, Project Manager, Supplier Qualification, and Quality Control

**Federal-Mogul                    Greenville, MI              1/07–10/08**
**Electrochemist (Powertrain, Automotive)**
- Compatibility testing and qualification of rust-removing formulations. Protective efficiency of oils on plated bearings. Electroplating Operations Management: Lead, Nickel, and Tin. Evaluation of various Cleaner Chemistries. Bench Chemistry. Non-Destructive Evaluation. Supplier Qualification. Failure Analysis, Product Development. Customer Support, Supervision of employees, Project Manager

**A. T. Cross Company               Lincoln, RI                2/06–1/07**
**Lead Materials Engineer (Cosmetics, Finishing)**
- Corrosion/Metallurgical/Compatibility qualification testing of composites, metallic, non-metallic, and polymeric materials. Electroplating, PVD Coatings, Failure Analysis, Product Development. Customer Support. Materials and Plating Technical support to Cross China and Cross China suppliers (plated materials) in China. Bench Chemistry. Non-Destructive Evaluation. Electroplating: Nickel, Chrome, Gold, Silver, Rhodium, Platinum, and Copper. Project Manager, Supplier Qualification and Quality

**Boeing                            Renton, WA                 1/06–2/06**
**Material & Process Engineer - (Consulting: Aerospace)**
- Corrosion/Metallurgical/Compatibility qualification testing of composites, metallic, non-metallic, solvents, and polymeric materials. Failure Analysis. Non-Destructive Evaluation, Product Development. Customer Support

**Sifco                             Independence, OH           2/05–8/05**
**Technology/R&D Manager (Automotive, Power, Aerospace, Oil &Gas)**
- Led the Corrosion and Materials Teams. Developed a rust-preventing cleaning process for Halliburton. Bench Chemistry, Product Development, Formulations, Technical Leader on a $2 million/year Halliburton Drill Bits Contract for Silver plating, Failure Analysis, Metallurgical evaluation of

GANIYU JAIYEOLA                    -4-

materials, Materials Testing, Non-Destructive Evaluation, Project Manager, Technical/Marketing Support

**Utilx Corporation**                    **Kent, WA**               **9/03–02/05**
**Materials Scientist (Power, Utilities, Communication)**
- Corrosion, Metallurgy, and Materials Testing. Developed Corrosion Inhibitor for Silanes used in Power Cable Desiccation (Patent obtained), Bench Chemistry, Product Development, Formulations, Failure Analysis, Project Manager, Technical Team Leader, Technical Liaison Between UtilX and Dow Corning, Non-Destructive Evaluation, Cathodic Protection, Supplier Qualification and Quality. Supervision of employees, Technical/Marketing Support

**Univ. Dayton Res. Institute**          **Dayton, OH**             **5/02–9/03**
**Corrosion Research Engineer (Wright-Patterson Air Force Base, Ohio)**
**(Aerospace, Military)**
- Qualified Corrosion Preventive Compounds (CPC) and Rinse Water Additives for aluminum alloys. Electroplated materials. Bench Chemistry, Failure Analysis. Determination of pitting potentials by electrochemical methods for different alloys in different application environments. Non-Destructive Evaluation, Project Manager, Technical/Marketing Support

**Honeywell**
**NASA Johnson Space Center**
**White Sands Test Facility**            **Las Cruces, NM**         **1/01–5/02**
**Materials Scientist (Aerospace, Defense)**
- Failure Analysis, Participated in Development of Electrochemical sensor for detecting corrosion in integral fuel tank of U.S. Air Force planes. Electroplated materials. Non-Destructive Evaluation, Project Manager, Supervision of employees, Technical/Marketing Support

**Carrier Corporation**                  **Syracuse, NY**           **10/95–1/99**
**Senior Scientist (HVAC)**
- Optimization of a Corrosion inhibitor for high brine environments. Qualification of different alloys for different atmospheric corrosion requirements. Bench Chemistry, Product Development, Formulations, Failure Analysis. Technical (Corrosion) Liaison between Carrier and Department of Energy (DOE) on Ammonia HVAC System for United States. Electroplated materials. Exposure and electrochemical testing of

**GANIYU JAIYEOLA**                              -5-

coatings for use on compressors.  Non-Destructive Evaluation, Project Manager, Supplier Qualification and Quality

## REPRESENTATIVE PUBLICATION

- Jaiyeola, Ganiyu A.: Microbiologically-Influenced Corrosion of Galvanized Steel by a Metalworking Lube. J Fail. Anal. and Preven. **13**, 136-139 (2013).

## REPRESENTATIVE MARKETING ARTICLE

- Jaiyeola, Ganiyu, "Hidden beneath the surface", World Pipelines, Coatings & Corrosion, p. 85, 2014.

## PATENT

- United States Patent Application: 20090114882; ELECTRICAL CABLE RESTORATION FLUID

## PROFESSIONAL SOCIETY MEMBERSHIPS

- American Chemical Society
- National Association of Corrosion Engineers
- ASM International

## COMPUTER SKILLS

- Customized Data Acquisition and Data Analysis Software
- Microsoft:  Word, Excel, PowerPoint, Project; Access, Outlook, Visio

**GANIYU JAIYEOLA**                    -6-

## SOME COMPLETED PROJECTS

- "Development and Qualification of Candidate Corrosion Inhibitors for High Temperature Lithium Bromide HVAC Solutions"

- "Optimization of a Molybdate Corrosion Inhibitor for High Temperature 64% Lithium Bromide HVAC Solutions"

- "Metallurgical Evaluations of NOx Detectors".

- "Metallurgical Evaluations of Magnesium Alloy Used for Automotive Cameras".

- "Metallurgical Failure Analysis of Farm Equipment and Fasteners Exposed to Lubricant Containing Molybdenum Disulfides"

- "Failure Analysis of Anodized Aluminum Used in Roof Rails for SUV".

- "Failure Analysis of Electroless Nickel Plating on Aluminum Part".

- "Failure Analysis of an Aluminum 7075 Mold".

- "Corrosion Failure Analysis of Combustion Chamber-Heat Exchanger Weldments".

- "Corrosion Failure Analysis of FDM Plastic Flange and Metal Lock Ring".

- "SEM-EDS Analysis of Carbon/Graphite Discs".

- "EDS Line Scan for Nickel in 316 Stainless Steel Tube Sections".

- "Failure Analysis of Hot Dip Galvanized Steel".

- "SEM-EDS Analysis of Contaminants in Brazed Joints".

- "Metallurgical and Corrosion Failure Analysis of Automotive Diesel Fuel Injectors".

**GANIYU JAIYEOLA**                    -7-

- "Corrosion Failure Analysis of Electrocoated Galvannealed Low Carbon Steel after Salt Spray Testing".

- "Corrosion Failure Analysis of Aluminum Casting Boiler Parts".

- "Corrosion Failure Analysis of Casting 304 Stainless Steel in Food Applications".

- "Failure Analysis of Residues from Brazed Aluminum 3003-H14 Heater Core Tubes Exposed to Ethylene Glycol".

- "SEM/EDS Analysis of a Blister on an Aluminum Bus Bar".

- "Corrosion Testing of Copper and Welded Copper Alloys per MIL-STD-3026".

- "Galvanic Corrosion in 304 Stainless Steel Sewage Switch Plate".

- "Corrosion Fatigue and Stress Corrosion Cracking of TP304H Stainless Steel in a Refinery Process".

- "Failure Analysis of Residues from Exhaust Gas Recirculation 316L Tube Exposed to Ethylene Glycol".

- "Intergranular Corrosion Testing of Welded 304 Stainless Steel".

- "Failure Analysis of Blisters on a Chrome-Plated Plastic".

- "Corrosion Failure Analysis of E-coated Martensitic Steel Bumper Beams".

- "Failure Analysis of a Corrosive Residue on a Medical Device".

- "Crevice Corrosion of 436M2 Steel Roof Rails Due to Rolling Laps".

- "Effect of Hydrogen Fluoride Vapor on 1522 and 1019 Steel".

**GANIYU JAIYEOLA**                    -8-

- "Corrosion Failure Analysis of Injection Molding Dies (P-20 Mold Steel) Exposed to a Mixture of acrylonitrile-butadiene-styrene (ABS), styrene-maleic-anhydride (SMA), and Zinc Stearate (Release Agent)".

- "Evaluation of Silver Plated 410 Stainless Steel for High Temperature General Corrosion, Stress Corrosion Cracking, and Hydrogen Embrittlement".

- FMEA Corrosion Failures in Piping Circuits and Systems at a Pfizer Plant. API 570, API 571, and ASME B31.3.

- "Metallurgical and Corrosion Failure Analysis of a Brake Rear Drum".

# EXHIBIT H

Ganiyu Jaiyeola
749 Preserve Circle Dr SE 6
Grand Rapids, Michigan 49548
Cell:  (616) 635-4025
GANIYU.JAIYEOLA@gmail.com
GJAIYEOLA@yahoo.com

Dear Hiring Manager:

My background includes the following:
• Project Experience: Carrier, Honeywell, NASA, U.S. Air Force, UtilX, Sifco, Halliburton, Schlumberger, FMC, Hughes Christensen, GM, Toyota, Caterpillar, GE, Boeing, Hamilton Standard, Messier-Dowty, Solar Turbines, Stryker, Marathon Oil, Jet Fuel Pipelines (Detroit International Airport, Michigan), Siemens, Element Materials Technology (Test Laboratory).  Pfizer.

• Management Experience: R&D Manager, Technical Team Leader, Project Manager, Budget, Materials Testing Supervisor, Failure Analysis Supervisor, Laboratory Manager, Technical Support Supervisor, Tiger Team Leader

• R&D: Corrosion, Electrochemistry, Metallurgy, Coatings, Paints, and Chemistry (Inorganic, Organic, Physical, Analytical, and Organometallic)

• Developing and maintaining guideline documents on Corrosion, Metallurgy, Coatings, Electrochemistry, Composites, Additives, Fluids, Materials Testing

• Providing consulting and technical support to customers on Corrosion, Metallurgy, Drill Bits, Gate Valves, Coatings, Paints, Chemistry, Electrochemistry, Electroplating, Electroless Nickel, Composites, Additives, Fluids

• Advanced degrees in Chemistry and Laboratory research experience in Chemistry (Analytical, Inorganic, Organic, Physical, Organometallic, Bioinorganic, and Electrochemistry)

• Chemical synthesis (Organic and Inorganic) and analytical methods for product characterization (FTIR, NMR, UV. Mass Spec, etc)

• Supplier Qualification and Quality Control

• Determination of physical and chemical properties of fluids and materials

**GANIYU JAIYEOLA**                    -2-

• Bio-compatibility testing of materials

• Non-Destructive Evaluations

• Project management in a multi-tasking environment

• Codes: API 570, API 571, ASME B31.3.

• Metallurgy - Metallography and Microscopy: Steel, Aluminum, Copper, Nickel, Titanium

• Surface characterization techniques: including SEM/EDS, XRD, AES, XPS, EAFM, XRF

• Material characterization techniques: including GC/MS, NMR, FT-IR, UV, DSC, and TGA

• Corrosion characterization techniques: including Potential measurements, Impedance, and Exposure testing

• Materials qualification: including AMS, SAE, ASTM, GM, Chrysler, Boeing, and Military Standards

• Product development

• Formulations and Testing – Inks, Coatings, Anti-corrosion solutions

• Primary R&D interface between vendor manufacturing or research companies and employer

• Writing material specifications and reports

• International experience - Mexico, Canada, South Korea, U.K., France, Japan, and China

• Excellent PC skills

I have written and presented technical reports to companies and governmental agencies.  I have excellent team, organizational, communication (written and verbal), and interpersonal skills.

**GANIYU JAIYEOLA**                    -3-

Thank you.

Sincerely,

Ganiyu Jaiyeola (GJ)

# EXHIBIT I

from:   evan.northup@garmin.com

to:     ganiyu.jaiyeola@gmail.com

cc:     evan.northup@garmin.com

date:   Jul 22, 2019, 9:11 AM

subject:        Phone Interview Confirmation

mailed-by:      garmin.com


July 22, 2019


Dear Ganiyu,

Thank you very much for your continued interest in Garmin, and specifically, the Advanced Materials Engineer - Metals position.

To confirm, your phone interview is scheduled on July 23, 2019 at 10:00 am Central Time/11:00 am Eastern Time with Michelle Cormack, Senior Technical Recruiter.

I am attaching some information on our benefits package.  I encourage you to check out Garmin's Corporate Responsibility Report, a look at our mission, vision, values and dedication to corporate citizenship and environmental awareness.

We look forward to talking with you further regarding your experience and interests.  If you have any accommodation requests, please let me know so that I can make those arrangements.


Evan Northup

Recruiting Coordinator

Evan.Northup@garmin.com

913-440-5356


-1-

## Advanced Materials Engineer - Metals

Description :
As a leading worldwide provider of navigation devices and wearable technology, our focus is on developing, designing and supporting superior products. Our advanced technology promotes performance, safety and ease of use in every market we serve. That makes us an engineering and technology company with a keen focus on recruiting talent in those fields. But the same vertical integration business model that keeps all design and manufacturing processes in-house also gives us the incentive to hire top performers from different backgrounds, including operations, finance and accounting, information technology, sales, marketing and communications.

We're seeking an **Advanced Materials Engineer** at our headquarters in Olathe, KS with expertise in metals and their associated finishes to manage relations with key materials suppliers and internal customers to drive technology and innovation that ensure product relevancy.  In this role, you'll be involved with managing supplier relations, driving innovation, and ensuring product integration.  You will also be responsible for assisting the design team in root causing and resolving metal's related issues. Key functions of this role are below:

Managing Supplier Relations

- Perform industry wide survey of material's (i.e. aluminum, steel, titanium, magnesium, and more) manufacturers that meet Garmin's Engineering and Industrial Design requirements.
- Visit suppliers to evaluate their capability to meet high volume manufacturing demands and quality standards.
- Work with suppliers on metal materials and finishes, and capability roadmap, aligning with Garmin's needs.
- Provide technical input to Engineering and our suppliers to resolve quality issues related to materials and finishes.

Driving Innovation

- Continually evaluate new metal materials, finishes, and processes and regularly communicate status to the Product Development Team and Management.
- Bring key suppliers on site to demonstrate capabilities to the larger Garmin team.

Product Integration

- Work closely with the Product Development Team to ensure that new metal materials and processes are properly implemented in design and properly executed by Garmin's suppliers.
- Be our go-to engineer for questions regarding materials and finishes that come up during design.
- Manage database of metal material and finishing options.
- Oversee the process by which new metal materials and finishes are validated.

- Be on the forefront of emerging safety and environmental regulations as related to metal materials and finishes.

OTHER RESPONSIBILITIES:

- Perform other job-related duties as assigned
- Domestic and international travel required

Qualifications:
Bachelor of Science in Materials Science, Mechanical Engineering, Chemical Engineering, Metallurgical Engineering or another degree relevant for successful performance of the essential functions of this job description

- 5+ years of industry experience in material or process development
- Excellent academics (cumulative GPA greater than or equal to 3.0 as a general rule)
- Demonstrated strong and effective verbal, written, and interpersonal communication skills
- Demonstrated knowledge of Garmin's overall product line and customers
- Demonstrates exemplary judgment regarding product usability, customer expectations, and creative product tradeoffs
- Experience with metals and their associated finishes
- 
- Ability to organize and direct multiple projects simultaneously
- Experience in providing concise reports with audience appropriate conclusions and recommendations
- Strong attention to detail and resolution to tackle complex problems
- Experience working with suppliers throughout the world

Fluency in Mandarin or Japanese is a plus.

At Garmin, we like to laugh, have fun and work hard. It comes easily when you work on cool products with hard-working individuals who share the same passion. We offer numerous opportunities to get involved – kickball anyone?  – and believe strongly in a work-life balance so your creativity can flow.

Our benefits, designed to lead an evolving marketplace, support innovation and encourage a healthy balance between work and life, keep us competitive and allow our associates to make their own decisions about their well-being and future. We offer a choice of healthcare plans— with low or no premiums—which consistently rank in the 90th percentile when compared to other high-tech employers, plus dental and vision plans for you and your family. In addition, our financial benefits rate 82% above the median for technology companies comparable in size. Our 401K retirement plan provides 5% of pay base contribution plus a match of 75 cents for every dollar you contribute to a maximum of 10% of your compensation. The employee stock purchase plan allows for shares to be bought at a 15% discount.

-3-

Relocation assistance provided.  Never been to Kansas City? You are missing out! Check out www.mykc.co

*Garmin International is an equal opportunity employer.  Qualified applicants will receive consideration for employment without regard to race, religion, color, national origin, citizenship, sex, sexual orientation, gender identity, veteran's status, age or disability.*

-4-

# EXHIBIT J

from:   Northup, Evan <Evan.Northup@garmin.com>

to:   "ganiyu.jaiyeola@gmail.com" <ganiyu.jaiyeola@gmail.com>

date:   Jul 23, 2019, 2:23 PM

subject:   Garmin International Technical Phone Interview Confirmation

mailed-by:   garmin.com


Hi Ganiyu,

I have scheduled your one-hour technical phone interview for Thursday, July 25th at 10:00 am Central Time/11:00 am Eastern Time for the Advanced Materials Engineer – Metals position.

John Mudd & Jared Klein will be calling you and conducting the interview.

If you have any questions please feel free to call me at 913-440-5356.

Thank you so much and we look forward to speaking with you soon!


Best,


Evan Northup | Human Resources Coordinator

Garmin International | Direct: 913.440.5356

Garmin_Logo_Rgsd_CMYK Delta


CONFIDENTIALITY NOTICE: This email and any attachments are for the sole use of the intended recipient(s) and contain information that may be Garmin confidential and/or Garmin legally privileged. If you have received this email in error, please notify the sender by reply email and delete the message. Any disclosure, copying, distribution or use of this communication (including attachments) by someone other than the intended recipient is prohibited. Thank you.

# EXHIBIT K

from:   Northup, Evan <Evan.Northup@garmin.com>

to:     "ganiyu.jaiyeola@gmail.com" <ganiyu.jaiyeola@gmail.com>

date:   Jul 26, 2019, 5:53 PM

subject:       Garmin International On-Site Interview Request

Northup, Evan <Evan.Northup@garmin.com>

Jul 26, 2019, 5:53 PM

to me


Hi Ganiyu,

We are interested in bringing you on-site for an interview for the Advanced Materials Engineer - Metals position. Would you please look at your schedule and give me a few dates and times that you would be available to come to Kansas City to interview?

The flight, hotel and rental car will all be a direct bill to Garmin. We will fly you in the day before your interview, and you have the option to leave right after your interview, or stay an additional night to see the Kansas City area. I will send you an expense report when everything is finalized, so please keep your receipts for meals, parking, rental car gas, etc. Please let me know if you have any questions or concerns.   Would you also please let me know the following:


•       What airport do you fly out of?

•       How does your name appear on your driver's license?

•       What is your date of birth?

•       What time of day do you want to come to Kansas City? Would you like to leave after your interview, or stay an extra night?


As soon as you get back with me, I will start the process of scheduling the interview, and will be in contact with you to confirm the dates and the details. Please provide me with the best phone number to reach you at so that I can call you to discuss travel arrangements.

I look forward to hearing from you soon!


Best,



-1-

Evan Northup | Human Resources Coordinator

Garmin International | Direct: 913.440.5356


Garmin_Logo_Rgsd_CMYK Delta

CONFIDENTIALITY NOTICE: This email and any attachments are for the sole use of the
intended recipient(s) and contain information that may be Garmin confidential and/or Garmin
legally privileged. If you have received this email in error, please notify the sender by reply
email and delete the message. Any disclosure, copying, distribution or use of this communication
(including attachments) by someone other than the intended recipient is prohibited. Thank you.

-2-

# EXHIBIT L

from:   Cormack, Michelle <Michelle.Cormack@garmin.com>

to:     "ganiyu.jaiyeola@gmail.com" <ganiyu.jaiyeola@gmail.com>

date:   Aug 5, 2019, 9:23 AM

subject:        Garmin: Assignment


Good morning, Ganiyu:

We are excited to meet you next week!  The hiring team wanted me to send this your way so that you could be prepared to discuss this during your interview.

Gold plating is required on a charge/data pin connection to reduce contact resistance. This is a wearable product, and therefore cannot employ nickel in the plating solution. The ideal design utilizes SUS 316 as the base material for the pin to prevent corrosion in the event that the gold plating wears through or is otherwise compromised such that the underlying material is exposed. Propose an ideal process, material, and/or plating specification that would enable a reliable $100\mu$in thick hardened gold layer to be plated onto SUS 316 pin.

Please give this some thought and be prepared to discuss!

Thanks -- see you soon!

Michelle


Garmin_Logo_Rgsd_CMYK black


Michelle Cormack

Michelle.Cormack@Garmin.com

Senior Technical Recruiter

Direct: (913) 440-2733


Forbes Magazine ranks Garmin #5 on America's Best Large Employers List 2019! Check it out here

Kansas City is a great place to live AND work:  https://vimeo.com/315976670

logo-beatyesterday

CONFIDENTIALITY NOTICE: This email and any attachments are for the sole use of the intended recipient(s) and contain information that may be Garmin confidential and/or Garmin

-1-

89

legally privileged. If you have received this email in error, please notify the sender by reply email and delete the message. Any disclosure, copying, distribution or use of this communication (including attachments) by someone other than the intended recipient is prohibited. Thank you.

-2-

from:   Ganiyu Jaiyeola <ganiyu.jaiyeola@gmail.com>

to:     "Cormack, Michelle" <Michelle.Cormack@garmin.com>

date:   Aug 5, 2019, 11:53 AM

subject:        Re: Garmin: Assignment


Morning Michelle,

I am excitedly looking forward to the meeting next week!

Thanks for the heads-up on the gold plating discussion issue.  I will gladly provide some suggestions.  See you next week!


Sincerely,


Ganiyu Jaiyeola

616-635-4025

-3-

from:   Cormack, Michelle <Michelle.Cormack@garmin.com>

to:      Ganiyu Jaiyeola <ganiyu.jaiyeola@gmail.com>

date:   Aug 5, 2019, 12:02 PM

subject:      RE: Garmin: Assignment


Sounds great!


Garmin_Logo_Rgsd_CMYK black


Michelle Cormack

Michelle.Cormack@Garmin.com

Senior Technical Recruiter

Direct: (913) 440-2733


Forbes Magazine ranks Garmin #5 on America's Best Large Employers List 2019! Check it out here

Kansas City is a great place to live AND work:  https://vimeo.com/315976670

logo-beatyesterday

-4-

# EXHIBIT M

## Cormack, Michelle

| | |
|---|---|
| **Subject:** | OSI - Ganiyu Jaiyeola, Advanced Materials Engineer - Metals |
| **Location:** | Your office |
| | |
| **Start:** | Wed 8/14/2019 1:00 PM |
| **End:** | Wed 8/14/2019 1:30 PM |
| | |
| **Recurrence:** | (none) |
| | |
| **Meeting Status:** | Accepted |
| | |
| **Organizer:** | HR Coordinator - Evan Northup |
| **Required Attendees:** | Cormack, Michelle |
| | |
| **Categories:** | Business |

Michelle, please meet Ganiyu in the North lobby at this time. Diane will be picking them up at your office around 1:30. Thanks!

1:00-1:30: Michelle Cormack (Her office)
1:30-2:00: Tour with Diane McLendon
2:00-3:00: Jeff Minelli, John Mudd & Jacob Zeller (Conference Room 1450)
3:00-4:00: Jared Klein & Paul Rollheiser (Conference Room 1450)
4:00-5:00: John Whiteside, Aaron Lindh & Brian Sandefur (Conference Room 1450)

1

# EXHIBIT N

from:   Ganiyu Jaiyeola <ganiyu.jaiyeola@gmail.com>

to:   John.Mudd@garmin.com,

Jared.Klein@garmin.com,

"Cormack, Michelle" <Michelle.Cormack@garmin.com>,

"Northup, Evan" <Evan.Northup@garmin.com>

date:   Aug 15, 2019, 10:11 AM

subject:   Thank You

Dear John, Jared, Michelle, and Evan:

Thank you for providing me the opportunity for an on-site interview for the "Advanced Materials Engineer - Metals" position at Garmin.

The information that I got from you and all the engineers that I met with gave me an insight into how the Garmin family keeps Garmin at the forefront of location technologies.  Garmin is definitely a forward looking company.

I am very enthusiastic about the challenges involved with this position.  Diane shared her experience with me on the challenges that she has been addressing the last 4 years as the Materials Engineer responsible for polymeric materials.  Aaron alerted me to the fact that I may be faced with 70 Mechanical Engineers needing my opinion on alloys, processing issues, product development parameters, failure analysis, and many more challenges!  My qualifications and professional experience adequately prepare me for the challenges enumerated by your engineers. Some of my product development experience include developing an electrochemical sensor for the integral fuel tank of Aircraft, materials qualification and selection for a NOx sensor for automotive emission monitoring, and selection of a robust magnesium alloy for the integral structure of a rear-view camera for automotive applications.  I was part of a team that got a patent on a corrosion inhibitor for silanes used in power and telephone cables.  My extensive product development and failure analysis experience include many alloys (including steel and aluminum), processes (including Electroplating and PVD), anodised Aluminum, and powder-coated Aluminum die cast parts.

I gave a presentation on an issue with Hard Gold plating/coating to your engineers at the end of my interview.  A copy of the presentation is attached to this email.  Many interesting questions came up during the presentation.  Electroplating hard gold with a robust wear resistance and therefore long life is better done if a strike of pure gold (14K/18K) is plated directly on SS 316 immediately before at least 75% Gold is plated.  Electroplating tends to be an art and good platers are always refining their processes.  I have worked with platers to develop and refine plating processes.

-1-

I believe I can contribute to the goals of Garmin.  I am a team player and a quick learner.  I hope I get the opportunity to make a contribution to Garmin.

Thank you for your time.


Sincerely,


Ganiyu Jaiyeola

616-635-4025

# EXHIBIT O

from:   Ganiyu Jaiyeola <ganiyu.jaiyeola@gmail.com>

to:     "Cormack, Michelle" <Michelle.Cormack@garmin.com>

date:   Aug 22, 2019, 1:21 PM

subject:       Update


Good Afternoon Michelle,

Do you have any update on my candidacy for the "Advanced Materials Engineer - Metals" position?

Thank you.


Sincerely,


Ganiyu Jaiyeola

616-635-4025


-1-

from:   Cormack, Michelle <Michelle.Cormack@garmin.com>

to:   Ganiyu Jaiyeola <ganiyu.jaiyeola@gmail.com>

date:   Aug 23, 2019, 11:12 AM

subject:   RE: Update

mailed-by:   garmin.com


Good morning! We are still considering you as a candidate, as we look at others as well. So, at this point, no decision has been made.  I hope to know more next week!


Garmin_Logo_Rgsd_CMYK black


Michelle Cormack - Senior Technical Recruiter

Direct: (913) 440-2733


Learn more about Garmin's:

People/Passion/Products


CONFIDENTIALITY NOTICE: This email and any attachments are for the sole use of the intended recipient(s) and contain information that may be Garmin confidential and/or Garmin legally privileged. If you have received this email in error, please notify the sender by reply email and delete the message. Any disclosure, copying, distribution or use of this communication (including attachments) by someone other than the intended recipient is prohibited. Thank you.

-2-

# EXHIBIT P

from:   Human Resources <invalidemail@garmin.com>

to:   ganiyu.jaiyeola@gmail.com

date:   Nov 13, 2019, 1:40 PM

subject:   Advanced Materials Engineer - Metals-19001CL at Garmin

mailed-by:   garmin.com

November 13, 2019

Dear Ganiyu,

Thank you for taking the time to interview with us regarding the position of Advanced Materials Engineer - Metals. Because there is a high level of emphasis placed on achieving the best match between each candidate and position at Garmin, the hiring team has carefully reviewed the qualifications and skills on your application and information discussed during the interview.

Garmin is unable to offer you employment at this time, but please keep in mind that Garmin is a dynamic and growing organization, so it is possible that in the future there may be other career opportunities that better match your qualifications.

Garmin invites you to visit its Career Section regularly and apply for other positions which match your qualifications and interests. Your resume and application is maintained in our database, but in order to be considered for other positions, you must apply directly to that specific position.

Thanks for your interest in Garmin. Garmin wishes you the best in your career search.

Best regards,

Michael Risinger

Garmin International

Garmin Careers on FB:  www.facebook.com/garmincareers

Garmin Careers on Twitter:  www.twitter.com/garmincareers

-1-

Garmin Careers on Instagram:  www.instagram.com/garmincareers

Garmin is an equal opportunity employer and does not discriminate on the basis of race, color, religion, national origin, age, sex, sexual orientation, disability, veteran or military status, or other protected status covered by federal, state, or local law.

Replies to this message are undeliverable and will not reach the Human Resources Department. It is Garmin's policy to provide this letter as a means for communicating the status of your application.  We are unable to provide further details regarding the reason for a hiring decision.

-2-

# EXHIBIT Q

 **GARMIN.** | 1200 East 151st Street
Olathe, Kansas 66062
P: 913-397-8200  F: 913-397-8282

## A NOTICE AND INVITATION TO ALL EMPLOYEES AND APPLICANTS FROM

### CLIFF PEMBLE, PRESIDENT & CEO

### AFFIRMATIVE ACTION AND EQUAL EMPLOYMENT OPPORTUNITY POLICY STATEMENT

Garmin has been and will continue to be an equal opportunity employer. To assure full implementation of this equal employment policy, we will take steps to assure that:

a. Persons are recruited, hired, assigned and promoted without regard to race, religion, color, national origin, citizenship, sex, sexual orientation, gender identity, veteran's status, age or disability.

b. All other personnel actions, such as compensation, benefits, transfers, layoffs and recall from layoffs, access to training, education, tuition assistance and social recreation programs are administered without regard to race, religion, color, national origin, citizenship, sex, sexual orientation, gender identity, veteran's status, age or disability.

c. Employees and applicants shall not be subjected to harassment, intimidation, threats, coercion or discrimination because they have: (1) filed a complaint; (2) assisted or participated in an investigation, compliance review hearing or any other activity related to the administration of any federal, state or local law requiring equal employment opportunity; (3) opposed any act or practice made unlawful by any federal, state or local law requiring equal opportunity or (4) exercised any other right protected by federal, state or local law requiring equal opportunity.

I have appointed Laurie Minard to take on the responsibilities of EEO Coordinator. As EEO Coordinator, Laurie will be responsible for the day to day implementation and monitoring of this Affirmative Action Plan. As part of that responsibility, Laurie will periodically analyze the Company's personnel actions and their effects to insure compliance with our equal employment policy.

If you, as one of our employees or as an applicant for employment, have any questions about this policy or would like to be considered under our Affirmative Action Plan, please see Laurie Minard during regular business hours. This is also a reminder that employees may update their disability status at any time by contacting Laurie Minard.

I have reviewed and fully endorse our Affirmative Action and Equal Employment Opportunity program. In closing, I ask the continued assistance and support of all of the Company's personnel to attain our objective of equal employment opportunity for all.

Sincerely,

Cliff Pemble
President & CEO

# EXHIBIT R

749 Preserve Circle Drive SE 6

Grand Rapids, Michigan 49548

November 22, 2019

(616) 635-4025

gjaiyeola@yahoo.com

ganiyu.jaiyeola@gmail.com

Mr. John Mudd

Mechanical Engineering Manager

Garmin International

1200 East 151st Street

Olathe, Kansas 66062

RE:   Advanced Materials Engineer - Metals-19001CL at Garmin

Concerns and Complaint About My On-site Job Interview on August 14, 2019

Dear Mr. Mudd,

1. This is a complaint.

2. I did an on-site interview for the above position (Advanced Materials Engineer - Metals-19001CL at Garmin) on August 14, 2019.

3. Ms. Michelle Cormack (Senior Technical Recruiter) and you told me you were the Hiring Manager for the position.

4. On November 14, 2019 (exactly 3 months after my on-site job interview), I received an electronic mail from Mr. Michael Risinger stating that I was not selected (Ex A) for the position of Advanced Materials Engineer - Metals-19001CL at Garmin.  Mr. Risinger gave no reasons.

5. I believe I was not selected for the position because of my race (African American), my age, and my son's disability (Down Syndrome).

6. My main concerns and the issues in my complaint are the following:

   a. Mr. Evan Northup (Human Resources Coordinator) requested for and I provided the information regarding my date of birth (Ex B) when he scheduled me for the on-site job interview.

2.

    b.   When Ms. Cormack interviewed me, she told me that if your boss did not like me, you would not hire me. From what I remember, she referred to your boss as Mr. Jeff Minelli (Director, Mechanical Engineering at Garmin International). You were in the same interview team (Ex C) with Mr. Minelli during my interview.

    c.   When Ms. Cormack interviewed me, she informed me of the nearby places to live. I informed her that I have a son (6-years old) who has Down Syndrome and that I would want to live in a school district that has facilities for Down Syndrome students. She told me she would get the information on nearby school systems that have facilities for Down Syndrome students, and she would send the information to me on August 14 or 15, 2019. I never heard back from her on that information.

    d.   On August 5, 2019, Ms. Cormack informed me that the "hiring team" wanted me to discuss a "Garmin: Assignment" (Ex D) as part of the interview requirement for the above position. I spent days researching the assignment and preparing a PowerPoint presentation. You did not attend my PowerPoint presentation and discussion during the on-site interview on August 14, 2019.

7.    Please forward my complaint to the EEOC department (Ex E) at Garmin International (Laurie Minard - Vice President, HR at Garmin International, Inc.).


Thank you.


Sincerely,


Ganiyu A. Jaiyeola, Ph.D., MBA

(616) 635-4025

# EXHIBIT A

R-1

from:   Human Resources <invalidemail@garmin.com>

to:      ganiyu.jaiyeola@gmail.com

date:   Nov 13, 2019, 1:40 PM

subject:   Advanced Materials Engineer - Metals-19001CL at Garmin

mailed-by:    garmin.com


November 13, 2019


Dear Ganiyu,

Thank you for taking the time to interview with us regarding the position of Advanced Materials
Engineer - Metals. Because there is a high level of emphasis placed on achieving the best match
between each candidate and position at Garmin, the hiring team has carefully reviewed the
qualifications and skills on your application and information discussed during the interview.


Garmin is unable to offer you employment at this time, but please keep in mind that Garmin is a
dynamic and growing organization, so it is possible that in the future there may be other career
opportunities that better match your qualifications.


Garmin invites you to visit its Career Section regularly and apply for other positions which
match your qualifications and interests. Your resume and application is maintained in our
database, but in order to be considered for other positions, you must apply directly to that
specific position.


Thanks for your interest in Garmin. Garmin wishes you the best in your career search.


Best regards,


Michael Risinger

Garmin International

Garmin Careers on FB:  www.facebook.com/garmincareers

Garmin Careers on Twitter: www.twitter.com/garmincareers

-1-

Garmin Careers on Instagram:  www.instagram.com/garmincareers

Garmin is an equal opportunity employer and does not discriminate on the basis of race, color, religion, national origin, age, sex, sexual orientation, disability, veteran or military status, or other protected status covered by federal, state, or local law.

Replies to this message are undeliverable and will not reach the Human Resources Department. It is Garmin's policy to provide this letter as a means for communicating the status of your application.  We are unable to provide further details regarding the reason for a hiring decision.

# EXHIBIT B

R-2

from:   Northup, Evan <Evan.Northup@garmin.com>

to:   "ganiyu.jaiyeola@gmail.com" <ganiyu.jaiyeola@gmail.com>

date:   Jul 26, 2019, 5:53 PM

subject:   Garmin International On-Site Interview Request

Northup, Evan <Evan.Northup@garmin.com>

Jul 26, 2019, 5:53 PM

to me


Hi Ganiyu,

We are interested in bringing you on-site for an interview for the Advanced Materials Engineer - Metals position. Would you please look at your schedule and give me a few dates and times that you would be available to come to Kansas City to interview?

The flight, hotel and rental car will all be a direct bill to Garmin. We will fly you in the day before your interview, and you have the option to leave right after your interview, or stay an additional night to see the Kansas City area. I will send you an expense report when everything is finalized, so please keep your receipts for meals, parking, rental car gas, etc. Please let me know if you have any questions or concerns.   Would you also please let me know the following:


•        What airport do you fly out of?

•        How does your name appear on your driver's license?

•        What is your date of birth?

•        What time of day do you want to come to Kansas City? Would you like to leave after your interview, or stay an extra night?


As soon as you get back with me, I will start the process of scheduling the interview, and will be in contact with you to confirm the dates and the details. Please provide me with the best phone number to reach you at so that I can call you to discuss travel arrangements.

I look forward to hearing from you soon!


Best,


-1-

Evan Northup | Human Resources Coordinator

Garmin International | Direct: 913.440.5356


Garmin_Logo_Rgsd_CMYK Delta

CONFIDENTIALITY NOTICE: This email and any attachments are for the sole use of the intended recipient(s) and contain information that may be Garmin confidential and/or Garmin legally privileged. If you have received this email in error, please notify the sender by reply email and delete the message. Any disclosure, copying, distribution or use of this communication (including attachments) by someone other than the intended recipient is prohibited. Thank you.

# EXHIBIT C



## Cormack, Michelle

| | |
|---|---|
| **Subject:** | OSI - Ganiyu Jaiyeola, Advanced Materials Engineer - Metals |
| **Location:** | Your office |
| **Start:** | Wed 8/14/2019 1:00 PM |
| **End:** | Wed 8/14/2019 1:30 PM |
| **Recurrence:** | (none) |
| **Meeting Status:** | Accepted |
| **Organizer:** | HR Coordinator - Evan Northup |
| **Required Attendees:** | Cormack, Michelle |
| **Categories:** | Business |

Michelle, please meet Ganiyu in the North lobby at this time. Diane will be picking them up at your office around 1:30. Thanks!

1:00-1:30: Michelle Cormack (Her office)
1:30-2:00: Tour with Diane McLendon
2:00-3:00: Jeff Minelli, John Mudd & Jacob Zeller (Conference Room 1450)
3:00-4:00: Jared Klein & Paul Rollheiser (Conference Room 1450)
4:00-5:00: John Whiteside, Aaron Lindh & Brian Sandefur (Conference Room 1450)

1

# EXHIBIT D

R-4

from:   Cormack, Michelle <Michelle.Cormack@garmin.com>

to:      "ganiyu.jaiyeola@gmail.com" <ganiyu.jaiyeola@gmail.com>

date:   Aug 5, 2019, 9:23 AM

subject:       Garmin: Assignment


Good morning, Ganiyu:

We are excited to meet you next week!  The hiring team wanted me to send this your way so that you could be prepared to discuss this during your interview.

Gold plating is required on a charge/data pin connection to reduce contact resistance. This is a wearable product, and therefore cannot employ nickel in the plating solution. The ideal design utilizes SUS 316 as the base material for the pin to prevent corrosion in the event that the gold plating wears through or is otherwise compromised such that the underlying material is exposed. Propose an ideal process, material, and/or plating specification that would enable a reliable $100\mu in$ thick hardened gold layer to be plated onto SUS 316 pin.

Please give this some thought and be prepared to discuss!

Thanks – see you soon!

Michelle


Garmin_Logo_Rgsd_CMYK black


Michelle Cormack

Michelle.Cormack@Garmin.com

Senior Technical Recruiter

Direct: (913) 440-2733


Forbes Magazine ranks Garmin #5 on America's Best Large Employers List 2019! Check it out here

Kansas City is a great place to live AND work:  https://vimeo.com/315976670

logo-beatyesterday

CONFIDENTIALITY NOTICE: This email and any attachments are for the sole use of the intended recipient(s) and contain information that may be Garmin confidential and/or Garmin legally privileged. If you have received this email in error, please notify the sender by reply email and delete the message. Any disclosure, copying, distribution or use of this communication (including attachments) by someone other than the intended recipient is prohibited. Thank you.

from:   Ganiyu Jaiyeola <ganiyu.jaiyeola@gmail.com>

to:     "Cormack, Michelle" <Michelle.Cormack@garmin.com>

date:   Aug 5, 2019, 11:53 AM

subject:        Re: Garmin: Assignment


Morning Michelle,

I am excitedly looking forward to the meeting next week!

Thanks for the heads-up on the gold plating discussion issue.  I will gladly provide some suggestions.  See you next week!


Sincerely,


Ganiyu Jaiyeola

616-635-4025

from:   Cormack, Michelle <Michelle.Cormack@garmin.com>

to:   Ganiyu Jaiyeola <ganiyu.jaiyeola@gmail.com>

date:   Aug 5, 2019, 12:02 PM

subject:   RE: Garmin: Assignment


Sounds great!


Garmin_Logo_Rgsd_CMYK black


Michelle Cormack

Michelle.Cormack@Garmin.com

Senior Technical Recruiter

Direct: (913) 440-2733


Forbes Magazine ranks Garmin #5 on America's Best Large Employers List 2019! Check it out here

Kansas City is a great place to live AND work:  https://vimeo.com/315976670

logo-beatyesterday

# EXHIBIT E





1200 East 151st Street
Olathe, Kansas 66062
P: 913-397-8200  F: 913-397-8282

## A NOTICE AND INVITATION TO ALL EMPLOYEES AND APPLICANTS FROM

## CLIFF PEMBLE, PRESIDENT & CEO

### AFFIRMATIVE ACTION AND EQUAL EMPLOYMENT OPPORTUNITY POLICY STATEMENT

Garmin has been and will continue to be an equal opportunity employer.  To assure full implementation of this equal employment policy, we will take steps to assure that:

a.   Persons are recruited, hired, assigned and promoted without regard to race, religion, color, national origin, citizenship, sex, sexual orientation, gender identity, veteran's status, age or disability.

b.   All other personnel actions, such as compensation, benefits, transfers, layoffs and recall from layoffs, access to training, education, tuition assistance and social recreation programs are administered without regard to race, religion, color, national origin, citizenship, sex, sexual orientation, gender identity, veteran's status, age or disability.

c.   Employees and applicants shall not be subjected to harassment, intimidation, threats, coercion or discrimination because they have: (1) filed a complaint; (2) assisted or participated in an investigation, compliance review hearing or any other activity related to the administration of any federal, state or local law requiring equal employment opportunity; (3) opposed any act or practice made unlawful by any federal, state or local law requiring equal opportunity or (4) exercised any other right protected by federal, state or local law requiring equal opportunity.

I have appointed Laurie Minard to take on the responsibilities of EEO Coordinator.  As EEO Coordinator, Laurie will be responsible for the day to day implementation and monitoring of this Affirmative Action Plan.  As part of that responsibility, Laurie will periodically analyze the Company's personnel actions and their effects to insure compliance with our equal employment policy.

If you, as one of our employees or as an applicant for employment, have any questions about this policy or would like to be considered under our Affirmative Action Plan, please see Laurie Minard during regular business hours.  This is also a reminder that employees may update their disability status at any time by contacting Laurie Minard.

I have reviewed and fully endorse our Affirmative Action and Equal Employment Opportunity program.  In closing, I ask the continued assistance and support of all of the Company's personnel to attain our objective of equal employment opportunity for all.

Sincerely,

Cliff Pemble
President & CEO

# EXHIBIT S

749 Preserve Circle Drive SE 6

Grand Rapids, Michigan 49548

November 25, 2019

(616) 635-4025

gjaiyeola@yahoo.com

ganiyu.jaiyeola@gmail.com

Attention:    Mr. David Kight
              Garmin International
              Legal Dept.

RE:    EEOC Complaint to Ms. Laurie Minard (Vice President, HR at Garmin International)
       Advanced Materials Engineer - Metals-19001CL at Garmin

To Whom It May Concern:

1.    This is an EEOC complaint.

2.    I saw an advertisement for the position of "Advanced Materials Engineer - Metals-19001CL"
      (Ex A) at Garmin International ("Garmin") on a Job Board (www.indeed.com) and I applied
      (Ex B) on July 3, 2019.  My resume (Ex C) and cover letter (Ex D) are attached.

3.    I had a Human Resources phone interview with Ms. Michelle Cormack (Senior Technical
      Recruiter) on July 23, 2019 (Ex E).

4.    I had a joint "Technical Phone Interview" with Mr. John Mudd (Mechanical Engineering
      Manager - Hiring Manager) and Mr. Jared Klein (Mechanical Engineering Manager) on July
      25, 2019 (Ex F).

5.    Ms. Cormack sent me an "Assignment" (Ex G) for an on-site interview at Garmin Headquarters
      in Olathe, Kansas, on August 5, 2019.

6.    I did an on-site interview at Olathe, Kansas, on August 14, 2019.

7.    I first did a Human Resources interview with Ms. Cormack.

8.    Next, Ms. Diane McLendon (Advanced Materials Engineer - Polymers) gave me a tour of
      Garmin facilities.  Ms. McLendon and I had technical discussions on the job requirements for
      the position during the tour.  In particular, she mentioned the need for a suitable aluminum
      alloy and I mentioned my extensive experience with material selection of suitable aluminum
      alloys for different application environments.

2.

9.  After the tour, I did technical interviews with 3 separate teams composed of Mr. Mudd, Mr. Jeff Minelli (Director of Mechanical Engineering), Garmin Mechanical Engineering Team Leaders, and Garmin Mechanical Engineering Managers (Ex H).

10.  Mr. Mudd was part of the first technical interview team that I faced. Others in this team included Mr. Jeff Minelli and Mr. Jacob Zeller (Mechanical Engineering Manager - Automotive).

11.  Immediately after the technical interviews with the 3 teams, I did a PowerPoint presentation on the Garmin "Assignment" (part of the interview requirement) in a conference room and had a discussion on the "Assignment" with a group of Garmin Mechanical Engineering Team Leaders, Garmin Mechanical Engineering Managers, Mechanical Engineers, and Ms. McLendon after the presentation. I think about 10 Engineers were present for my presentation and discussion. Ms. Cormack was not present.

12.  Mr. Mudd did not attend my PowerPoint presentation on the Garmin "Assignment", and he did not participate in the discussion on the "Assignment".

13.  Ms. McLendon saw me to the door and took my visitor's badge after my presentation.

14.  I sent a "Thank You" (Ex I) electronic mail to Garmin on August 15, 2019.

15.  I sent an "Update" (Ex J) request electronic mail to Garmin on August 22, 2019.

16.  On November 13, 2019 (about 3 months after my on-site job interview at Olathe), I received an electronic mail from Garmin (from Mr. Michael Risinger) stating that I was not selected (Ex K) for the position of Advanced Materials Engineer - Metals-19001CL at Garmin. Mr. Risinger gave no reasons.

17.  I believe I was not selected for the position because of my race (African American), national origin (Nigerian), my age, and my son's disability (Down Syndrome).

18.  My main concerns and the issues in my EEOC complaint are the following:

   a.  Mr. Evan Northup (Human Resources Coordinator) requested for and I provided the information regarding my date of birth (Ex L) when he scheduled me for the on-site job interview.

   b.  When Ms. Cormack interviewed me, she told me that if Mr. Minelli (Mr. Mudd's boss) did not "like" me, Mr. Mudd would not hire me. Mr. Minelli was in the same interview team (Ex H) with Mr. Mudd during my interview. I don't recall if Mr. Minelli was present for my PowerPoint presentation and the discussion.

3.

   c.  When Ms. Cormack interviewed me, she informed me of the nearby places to live. I informed her that I have a son (6 years old) who has Down Syndrome and that I would want to live in a school district that has facilities for Down Syndrome students. She told me she would get the information on nearby school systems that have facilities for Down Syndrome students, and she would send the information to me on August 14 or 15, 2019. I never heard back from her on that information.

   d.  On August 5, 2019, Ms. Cormack informed me that the "hiring team" wanted me to discuss a "Garmin: Assignment" (Ex G) as part of the interview requirement for the Garmin position. I spent days researching the assignment and preparing a PowerPoint presentation. Mr. Mudd neither attended my PowerPoint presentation nor was present for the follow-up discussion on the "Garmin: Assignment" during my on-site interview on August 14, 2019.

   e.  During my technical interview with one of the three teams (either the 3:00 PM or the 4:00 PM team), Mr. Mudd opened the door to the room, stood by the door (didn't come inside), and informed me (to the hearing of the team) that he would not be at my PowerPoint presentation and discussion but he would get inputs from those present in making a decision for the position that I was interviewing for. He did not give any reason why he wasn't going to be at my presentation and the discussion. I was surprised and concerned that he would not attend my presentation and the discussion. I was also concerned of the optics his no-show announcement made to the technical team (who heard him) that was interviewing me at that instant. I became very uncomfortable for the rest of the interview and during my presentation and discussion and I concluded that Mr. Mudd had decided not to hire me for the position even though I had not completed the interview process.

19.   I have business cards from the following engineers: Aaron Lindh, Benjamin Dobbs, Brian Sandefur, Jacob Zeller, Jared S. Klein, John Mudd, and John Whiteside.

20.   A copy of my PowerPoint presentation is attached (Ex M).

21.   A copy of Garmin's EEOC policy statement (Ex N) is attached.

22.   Please let me know if you need any more information from me.


Thank you.

4.

Sincerely,

Ganiyu A. Jaiyeola, Ph.D., MBA

(616) 635-4025

# EXHIBIT A



Garmin

Job Description

Advanced Materials Engineer - Metals-19001CL

Description

As a leading worldwide provider of navigation devices and wearable technology, our focus is on developing, designing and supporting superior products. Our advanced technology promotes performance, safety and ease of use in every market we serve. That makes us an engineering and technology company with a keen focus on recruiting talent in those fields. But the same vertical integration business model that keeps all design and manufacturing processes in-house also gives us the incentive to hire top performers from different backgrounds, including operations, finance and accounting, information technology, sales, marketing and communications.


We're seeking an Advanced Materials Engineer at our headquarters in Olathe, KS with expertise in metals and their associated finishes to manage relations with key materials suppliers and internal customers to drive technology and innovation that ensure product relevancy.  In this role, you'll be involved with managing supplier relations, driving innovation, and ensuring product integration.  You will also be responsible for assisting the design team in root causing and resolving metal's related issues. Key functions of this role are below:


Managing Supplier Relations

Perform industry wide survey of material's (i.e. aluminum, steel, titanium, magnesium, and more) manufacturers that meet Garmin's Engineering and Industrial Design requirements.

Visit suppliers to evaluate their capability to meet high volume manufacturing demands and quality standards.

Work with suppliers on metal materials and finishes, and capability roadmap, aligning with Garmin's needs.

Provide technical input to Engineering and our suppliers to resolve quality issues related to materials and finishes.

Driving Innovation

Continually evaluate new metal materials, finishes, and processes and regularly communicate status to the Product Development Team and Management.

Bring key suppliers on site to demonstrate capabilities to the larger Garmin team.

Product Integration

-1-

Work closely with the Product Development Team to ensure that new metal materials and processes are properly implemented in design and properly executed by Garmin's suppliers.

Be our go-to engineer for questions regarding materials and finishes that come up during design.

Manage database of metal material and finishing options.

Oversee the process by which new metal materials and finishes are validated.

Be on the forefront of emerging safety and environmental regulations as related to metal materials and finishes.

OTHER RESPONSIBILITIES:

Perform other job-related duties as assigned

Domestic and international travel required


Qualifications

Bachelor of Science in Materials Science, Mechanical Engineering, Chemical Engineering, Metallurgical Engineering or another degree relevant for successful performance of the essential functions of this job description

5+ years of industry experience in material or process development

Excellent academics (cumulative GPA greater than or equal to 3.0 as a general rule)

Demonstrated strong and effective verbal, written, and interpersonal communication skills

Demonstrated knowledge of Garmin's overall product line and customers

Demonstrates exemplary judgment regarding product usability, customer expectations, and creative product tradeoffs

Experience with metals and their associated finishes

Ability to organize and direct multiple projects simultaneously

Experience in providing concise reports with audience appropriate conclusions and recommendations

Strong attention to detail and resolution to tackle complex problems

Experience working with suppliers throughout the world

Fluency in Mandarin or Japanese is a plus.


At Garmin, we like to laugh, have fun and work hard. It comes easily when you work on cool products with hard-working individuals who share the same passion. We offer numerous

opportunities to get involved – kickball anyone?  – and believe strongly in a work-life balance so your creativity can flow.

Our benefits, designed to lead an evolving marketplace, support innovation and encourage a healthy balance between work and life, keep us competitive and allow our associates to make their own decisions about their well-being and future. We offer a choice of healthcare plans—with low or no premiums—which consistently rank in the 90th percentile when compared to other high-tech employers, plus dental and vision plans for you and your family. In addition, our financial benefits rate 82% above the median for technology companies comparable in size. Our 401K retirement plan provides 5% of pay base contribution plus a match of 75 cents for every dollar you contribute to a maximum of 10% of your compensation. The employee stock purchase plan allows for shares to be bought at a 15% discount.

Relocation assistance provided.  Never been to Kansas City? You are missing out! Check out www.mykc.co

Garmin International is an equal opportunity employer.  Qualified applicants will receive consideration for employment without regard to race, religion, color, national origin, citizenship, sex, sexual orientation, gender identity, veteran's status, age or disability.

Job Engineering

Primary Location US-KS-Olathe

Organization Consumer Engineering

Schedule Full-time

-3-

132

# EXHIBIT B 

S-Z

from:   Human Resources <invalidemail@garmin.com>

to:     Ganiyu Jaiyeola <ganiyu.jaiyeola@gmail.com>

date:   Jul 3, 2019, 9:40 PM

subject:   Thank you for applying at Garmin!

mailed-by:   garmin.com

7/3/19


Dear Ganiyu,

Thank you for your interest in Garmin International.  We are delighted to receive your application for the position of Advanced Materials Engineer - Metals.

What happens next? Our Talent Acquisition team will review your background and if the role is a match to your skills and experience, we will get in touch to discuss next steps.  If you would like to review your candidate file, click here https://garmin.taleo.net/careersection/careersection/candidateportal/myaccount/myAccountView. jsf?lang=en&csNo=10180&portal=20100010522.  If we have further interest or require additional information, a member of our Human Resources Department will contact you.

In the meantime, we invite you to explore life at Garmin by following us on social.  Be part of the story!  Follow Garmin Careers on Facebook, Twitter, and Instagram.

We thank you for your interest in Garmin International and wish you continued success in your job search.


Best regards,

Human Resources Department

Garmin International


Garmin International is an equal opportunity employer.  Qualified applicants will receive consideration for employment without regard to race, color, religion, sex, sexual orientation, gender identity, national origin, disability or protected veteran status.  For our EEO policy, please click here.  If you'd like more information on your EEO rights under the law, please click here.


Replies to this message are undeliverable and will not reach the Human Resources Department. Please do not reply.  No phone calls please.

# EXHIBIT C



# GANIYU JAIYEOLA (GJ)
749 Preserve Circle Dr SE 6
Grand Rapids, Michigan 49548

Cell:  (616) 635-4025          GANIYU.JAIYEOLA@gmail.com
                              GJAIYEOLA@yahoo.com

https://www.linkedin.com/pub/ganiyu-jaiyeola-gj/4/1b1/b8b

## MAJOR ACCOMPLISHMENTS

- Technical Liaison between Carrier and DOE on Corrosion/Materials issues for Ammonia-HVAC System for United States
- Development of Electrochemical Sensor for Detecting Corrosion in Integral Fuel Tank of U.S. Air Force planes
- Qualification of Rinse Water Additives and Corrosion Preventive Compounds for the U.S. Air Force Aging Aircraft Program
- Patent (Corrosion Inhibitor) at UtilX: (United States Patent Application: 20090114882) ELECTRICAL CABLE RESTORATION FLUID
- Technical Liaison Between UtilX and Dow Corning on Silicone Fluids
- Technical Leader on a $2 million/year Sifco Halliburton Drill Bits contract for Silver plating
- Set up the process for Nickel, Chrome, and Gold electroplating at Cross China (in China)
- Technical Liaison Between Federal-Mogul (Greenville, Michigan) and Federal-Mogul (Wiesbaden, Germany) on a Lead-free Plating Line Technology Transfer from Federal-Mogul Wiesbaden
- Technical Liaison Between Stryker Instruments (Kalamazoo, Michigan) and Dr. Weigert Company (Hamburg, Germany) on Neodisher MediClean forte (Alkaline Detergent for Medical and Surgical Instruments)

## MAJOR EXPERTISE

- Corrosion, Metallurgy, Failure Analysis, Risk Analysis, Materials Integrity, Consulting, Project Management, Bioinorganic Chemistry, Electrochemistry, Analytical Chemistry, Inorganic Chemistry, Organic Chemistry, Physical Chemistry, Non-Destructive Evaluation, Materials Compatibility, Materials Selection, Coatings, Electroplating, Product Development, Supplier Qualification, Quality Control, Formulations,

**GANIYU JAIYEOLA**                                   -2-

Metals, Non-Metals, Ferrous alloys, Non-ferrous alloys, Plastics, Polymeric Materials, Technical Support, Litigation Support

## EDUCATION

- MBA (Marketing/Organization & Management), Syracuse Univ., NY
- Ph.D. Materials Science (Metallurgy/Corrosion), Univ. of Connecticut, CT
- M.S.  Chemistry (Inorganic Chemistry), Univ. of Connecticut, CT
- M.Sc. Chemistry (Bioinorganic Chemistry), Univ. of Ibadan, Nigeria
- B.Sc.  Chemistry (Minor: Biochemistry), Univ. of Ibadan, Nigeria

## EXPERIENCE

**GJ-OJ Consulting LLC            Grand Rapids, MI            07/15–Present**
**Metallurgical/Corrosion/Materials/Failure Analysis Engineer (Automotive, Aerospace, Defense, Cosmetics, Coatings, Plating, Power, Utilities, HVAC, Oil & Gas, Medical Device, Energy, Chemicals, Food, and other Industries)**

- Materials Compatibility & Selection for different work environments, Corrosion, Risk Analysis & Materials Integrity, Metallurgy, Electrochemistry, Electroplating, Failure Analysis, Quality Control, Project Management, Supplier Qualification, Chemical Formulations, Coatings. Evaluations of piping circuits and systems at a Pharmaceutical Plant for corrosion failures.  Failure Modes and Effects Analysis (FMEA).  API 570, API 571, ASME B31.3.  Non-Destructive Evaluations.

**Element Materials Technology          Wixom, MI          06/11–07/15**
**Corrosion/Metallurgical Engineer (Element Materials Technology is a Test Laboratory for the Automotive, Aerospace, Defense, Cosmetics, Coatings, Plating, Power, Utilities, HVAC, Oil & Gas, Medical Device, Energy, Chemicals, Food, and other Industries)**

- Materials Compatibility & Selection for different work environments, Corrosion, Risk Analysis & Materials Integrity, Metallurgy, Electrochemistry, Non-Destructive Evaluation, Electroplating, Failure Analysis, Quality & Process Control, Chemistry, Coatings, Plant visits, Litigation Support

**Stryker                          Kalamazoo, MI          10/10–5/11**
**Manufacturing Engineer – Coatings, Inks, Detergents, Sterilization (Consulting: Medical Devices)**

**GANIYU JAIYEOLA**                         -3-

- Corrosion/Metallurgical/Compatibility qualification testing of composites, metallic, non-metallic, and polymeric materials.  Detergent-Washer, Autoclave, and Sterrad Testing – Alloys, Inks (Pad-Print, Screen-Print, and Laser Print), and Coatings.  Selection and Qualification of Coatings, Failure Analysis, Product Development and Specification Writing, Customer Support, Bench Chemistry, Electrochemistry, Bioinorganic Chemistry, Project Manager, Supplier Qualification, and Quality Control

**Federal-Mogul**                    **Greenville, MI**           **1/07–10/08**
**Electrochemist (Powertrain, Automotive)**
- Compatibility testing and qualification of rust-removing formulations.  Protective efficiency of oils on plated bearings.  Electroplating Operations Management: Lead, Nickel, and Tin.  Evaluation of various Cleaner Chemistries.  Bench Chemistry.  Non-Destructive Evaluation.  Supplier Qualification.  Failure Analysis, Product Development.  Customer Support, Supervision of employees, Project Manager

**A. T. Cross Company**              **Lincoln, RI**            **2/06–1/07**
**Lead Materials Engineer (Cosmetics, Finishing)**
- Corrosion/Metallurgical/Compatibility qualification testing of composites, metallic, non-metallic, and polymeric materials.  Electroplating, PVD Coatings, Failure Analysis, Product Development.  Customer Support.  Materials and Plating Technical support to Cross China and Cross China suppliers (plated materials) in China.  Bench Chemistry.  Non-Destructive Evaluation.  Electroplating: Nickel, Chrome, Gold, Silver, Rhodium, Platinum, and Copper.  Project Manager, Supplier Qualification and Quality

**Boeing**                          **Renton, WA**             **1/06–2/06**
**Material & Process Engineer - (Consulting: Aerospace)**
- Corrosion/Metallurgical/Compatibility qualification testing of composites, metallic, non-metallic, solvents, and polymeric materials.  Failure Analysis.  Non-Destructive Evaluation, Product Development.  Customer Support

**Sifco**                        **Independence, OH**          **2/05–8/05**
**Technology/R&D Manager (Automotive, Power, Aerospace, Oil &Gas)**
- Led the Corrosion and Materials Teams.  Developed a rust-preventing cleaning process for Halliburton.  Bench Chemistry, Product Development, Formulations, Technical Leader on a $2 million/year Halliburton Drill Bits Contract for Silver plating, Failure Analysis, Metallurgical evaluation of

GANIYU JAIYEOLA                       -4-

materials, Materials Testing, Non-Destructive Evaluation, Project Manager, Technical/Marketing Support

**Utilx Corporation**                       **Kent, WA**                  **9/03–02/05**
**Materials Scientist (Power, Utilities, Communication)**
- Corrosion, Metallurgy, and Materials Testing. Developed Corrosion Inhibitor for Silanes used in Power Cable Desiccation (Patent obtained), Bench Chemistry, Product Development, Formulations, Failure Analysis, Project Manager, Technical Team Leader, Technical Liaison Between UtilX and Dow Corning, Non-Destructive Evaluation, Cathodic Protection, Supplier Qualification and Quality. Supervision of employees, Technical/Marketing Support

**Univ. Dayton Res. Institute**          **Dayton, OH**                **5/02–9/03**
**Corrosion Research Engineer (Wright-Patterson Air Force Base, Ohio) (Aerospace, Military)**
- Qualified Corrosion Preventive Compounds (CPC) and Rinse Water Additives for aluminum alloys. Electroplated materials. Bench Chemistry, Failure Analysis. Determination of pitting potentials by electrochemical methods for different alloys in different application environments. Non-Destructive Evaluation, Project Manager, Technical/Marketing Support

**Honeywell**
**NASA Johnson Space Center**
**White Sands Test Facility**              **Las Cruces, NM**            **1/01–5/02**
**Materials Scientist (Aerospace, Defense)**
- Failure Analysis, Participated in Development of Electrochemical sensor for detecting corrosion in integral fuel tank of U.S. Air Force planes. Electroplated materials. Non-Destructive Evaluation, Project Manager, Supervision of employees, Technical/Marketing Support

**Carrier Corporation**                   **Syracuse, NY**              **10/95–1/99**
**Senior Scientist (HVAC)**
- Optimization of a Corrosion inhibitor for high brine environments. Qualification of different alloys for different atmospheric corrosion requirements. Bench Chemistry, Product Development, Formulations, Failure Analysis. Technical (Corrosion) Liaison between Carrier and Department of Energy (DOE) on Ammonia HVAC System for United States. Electroplated materials. Exposure and electrochemical testing of

**GANIYU JAIYEOLA**                          -5-

coatings for use on compressors.  Non-Destructive Evaluation, Project Manager, Supplier Qualification and Quality

## REPRESENTATIVE PUBLICATION
- Jaiyeola, Ganiyu A.: Microbiologically-Influenced Corrosion of Galvanized Steel by a Metalworking Lube. J Fail. Anal. and Preven. **13**, 136-139 (2013).

## REPRESENTATIVE MARKETING ARTICLE
- Jaiyeola, Ganiyu, "Hidden beneath the surface", World Pipelines, Coatings & Corrosion, p. 85, 2014.

## PATENT
- United States Patent Application: 20090114882; ELECTRICAL CABLE RESTORATION FLUID

## PROFESSIONAL SOCIETY MEMBERSHIPS
- American Chemical Society
- National Association of Corrosion Engineers
- ASM International

## COMPUTER SKILLS
- Customized Data Acquisition and Data Analysis Software
- Microsoft:  Word, Excel, PowerPoint, Project, Access, Outlook, Visio

**GANIYU JAIYEOLA**                    -6-

# SOME COMPLETED PROJECTS

- "Development and Qualification of Candidate Corrosion Inhibitors for High Temperature Lithium Bromide HVAC Solutions"

- "Optimization of a Molybdate Corrosion Inhibitor for High Temperature 64% Lithium Bromide HVAC Solutions"

- "Metallurgical Evaluations of NOx Detectors".

- "Metallurgical Evaluations of Magnesium Alloy Used for Automotive Cameras".

- "Metallurgical Failure Analysis of Farm Equipment and Fasteners Exposed to Lubricant Containing Molybdenum Disulfides"

- "Failure Analysis of Anodized Aluminum Used in Roof Rails for SUV".

- "Failure Analysis of Electroless Nickel Plating on Aluminum Part".

- "Failure Analysis of an Aluminum 7075 Mold".

- "Corrosion Failure Analysis of Combustion Chamber-Heat Exchanger Weldments".

- "Corrosion Failure Analysis of FDM Plastic Flange and Metal Lock Ring".

- "SEM-EDS Analysis of Carbon/Graphite Discs".

- "EDS Line Scan for Nickel in 316 Stainless Steel Tube Sections".

- "Failure Analysis of Hot Dip Galvanized Steel".

- "SEM-EDS Analysis of Contaminants in Brazed Joints".

- "Metallurgical and Corrosion Failure Analysis of Automotive Diesel Fuel Injectors".

**GANIYU JAIYEOLA**                    -7-

- "Corrosion Failure Analysis of Electrocoated Galvannealed Low Carbon Steel after Salt Spray Testing".

- "Corrosion Failure Analysis of Aluminum Casting Boiler Parts".

- "Corrosion Failure Analysis of Casting 304 Stainless Steel in Food Applications".

- "Failure Analysis of Residues from Brazed Aluminum 3003-H14 Heater Core Tubes Exposed to Ethylene Glycol".

- "SEM/EDS Analysis of a Blister on an Aluminum Bus Bar".

- "Corrosion Testing of Copper and Welded Copper Alloys per MIL-STD-3026".

- "Galvanic Corrosion in 304 Stainless Steel Sewage Switch Plate".

- "Corrosion Fatigue and Stress Corrosion Cracking of TP304H Stainless Steel in a Refinery Process".

- "Failure Analysis of Residues from Exhaust Gas Recirculation 316L Tube Exposed to Ethylene Glycol".

- "Intergranular Corrosion Testing of Welded 304 Stainless Steel".

- "Failure Analysis of Blisters on a Chrome-Plated Plastic".

- "Corrosion Failure Analysis of E-coated Martensitic Steel Bumper Beams".

- "Failure Analysis of a Corrosive Residue on a Medical Device".

- "Crevice Corrosion of 436M2 Steel Roof Rails Due to Rolling Laps".

- "Effect of Hydrogen Fluoride Vapor on 1522 and 1019 Steel".

**GANIYU JAIYEOLA**                     -8-

- "Corrosion Failure Analysis of Injection Molding Dies (P-20 Mold Steel) Exposed to a Mixture of acrylonitrile-butadiene-styrene (ABS), styrene-maleic-anhydride (SMA), and Zinc Stearate (Release Agent)".

- "Evaluation of Silver Plated 410 Stainless Steel for High Temperature General Corrosion, Stress Corrosion Cracking, and Hydrogen Embrittlement".

- FMEA Corrosion Failures in Piping Circuits and Systems at a Pfizer Plant. API 570, API 571, and ASME B31.3.

- "Metallurgical and Corrosion Failure Analysis of a Brake Rear Drum".

# EXHIBIT D

5 - 4

Ganiyu Jaiyeola
749 Preserve Circle Dr SE 6
Grand Rapids, Michigan 49548
Cell:  (616) 635-4025
GANIYU.JAIYEOLA@gmail.com
GJAIYEOLA@yahoo.com

Dear Hiring Manager:

My background includes the following:
• Project Experience: Carrier, Honeywell, NASA, U.S. Air Force, UtilX, Sifco, Halliburton, Schlumberger, FMC, Hughes Christensen, GM, Toyota, Caterpillar, GE, Boeing, Hamilton Standard, Messier-Dowty, Solar Turbines, Stryker, Marathon Oil, Jet Fuel Pipelines (Detroit International Airport, Michigan), Siemens, Element Materials Technology (Test Laboratory).  Pfizer.

• Management Experience: R&D Manager, Technical Team Leader, Project Manager, Budget, Materials Testing Supervisor, Failure Analysis Supervisor, Laboratory Manager, Technical Support Supervisor, Tiger Team Leader

• R&D: Corrosion, Electrochemistry, Metallurgy, Coatings, Paints, and Chemistry (Inorganic, Organic, Physical, Analytical, and Organometallic)

• Developing and maintaining guideline documents on Corrosion, Metallurgy, Coatings, Electrochemistry, Composites, Additives, Fluids, Materials Testing

• Providing consulting and technical support to customers on Corrosion, Metallurgy, Drill Bits, Gate Valves, Coatings, Paints, Chemistry, Electrochemistry, Electroplating, Electroless Nickel, Composites, Additives, Fluids

• Advanced degrees in Chemistry and Laboratory research experience in Chemistry (Analytical, Inorganic, Organic, Physical, Organometallic, Bioinorganic, and Electrochemistry)

• Chemical synthesis (Organic and Inorganic) and analytical methods for product characterization (FTIR, NMR, UV. Mass Spec, etc)

• Supplier Qualification and Quality Control

• Determination of physical and chemical properties of fluids and materials

**GANIYU JAIYEOLA**                     -2-

• Bio-compatibility testing of materials

• Non-Destructive Evaluations

• Project management in a multi-tasking environment

• Codes: API 570, API 571, ASME B31.3.

• Metallurgy - Metallography and Microscopy: Steel, Aluminum, Copper, Nickel, Titanium

• Surface characterization techniques: including SEM/EDS, XRD, AES, XPS, EAFM, XRF

• Material characterization techniques: including GC/MS, NMR, FT-IR, UV, DSC, and TGA

• Corrosion characterization techniques: including Potential measurements, Impedance, and Exposure testing

• Materials qualification: including AMS, SAE, ASTM, GM, Chrysler, Boeing, and Military Standards

• Product development

• Formulations and Testing – Inks, Coatings, Anti-corrosion solutions

• Primary R&D interface between vendor manufacturing or research companies and employer

• Writing material specifications and reports

• International experience - Mexico, Canada, South Korea, U.K., France, Japan, and China

• Excellent PC skills

I have written and presented technical reports to companies and governmental agencies. I have excellent team, organizational, communication (written and verbal), and interpersonal skills.

**GANIYU JAIYEOLA**                    -3-

Thank you.

Sincerely,

Ganiyu Jaiyeola (GJ)

# EXHIBIT E

S- 5

from:    evan.northup@garmin.com

to:    ganiyu.jaiyeola@gmail.com  .

cc:    evan.northup@garmin.com

date:    Jul 22, 2019, 9:11 AM

subject:    Phone Interview Confirmation

mailed-by:    garmin.com


July 22, 2019


Dear Ganiyu,

Thank you very much for your continued interest in Garmin, and specifically, the Advanced
Materials Engineer - Metals position.

To confirm, your phone interview is scheduled on July 23, 2019 at 10:00 am Central Time/11:00
am Eastern Time with Michelle Cormack, Senior Technical Recruiter.

I am attaching some information on our benefits package.  I encourage you to check out
Garmin's Corporate Responsibility Report, a look at our mission, vision, values and dedication to
corporate citizenship and environmental awareness.

We look forward to talking with you further regarding your experience and interests.  If you have
any accommodation requests, please let me know so that I can make those arrangements.


Evan Northup

Recruiting Coordinator

Evan.Northup@garmin.com

913-440-5356


-1-

### Advanced Materials Engineer - Metals

Description :

As a leading worldwide provider of navigation devices and wearable technology, our focus is on developing, designing and supporting superior products. Our advanced technology promotes performance, safety and ease of use in every market we serve. That makes us an engineering and technology company with a keen focus on recruiting talent in those fields. But the same vertical integration business model that keeps all design and manufacturing processes in-house also gives us the incentive to hire top performers from different backgrounds, including operations, finance and accounting, information technology, sales, marketing and communications.

We're seeking an **Advanced Materials Engineer** at our headquarters in Olathe, KS with expertise in metals and their associated finishes to manage relations with key materials suppliers and internal customers to drive technology and innovation that ensure product relevancy.  In this role, you'll be involved with managing supplier relations, driving innovation, and ensuring product integration.  You will also be responsible for assisting the design team in root causing and resolving metal's related issues. Key functions of this role are below:

Managing Supplier Relations

- Perform industry wide survey of material's (i.e. aluminum, steel, titanium, magnesium, and more) manufacturers that meet Garmin's Engineering and Industrial Design requirements.
- Visit suppliers to evaluate their capability to meet high volume manufacturing demands and quality standards.
- Work with suppliers on metal materials and finishes, and capability roadmap, aligning with Garmin's needs.
- Provide technical input to Engineering and our suppliers to resolve quality issues related to materials and finishes.

Driving Innovation

- Continually evaluate new metal materials, finishes, and processes and regularly communicate status to the Product Development Team and Management.
- Bring key suppliers on site to demonstrate capabilities to the larger Garmin team.

Product Integration

- Work closely with the Product Development Team to ensure that new metal materials and processes are properly implemented in design and properly executed by Garmin's suppliers.
- Be our go-to engineer for questions regarding materials and finishes that come up during design.
- Manage database of metal material and finishing options.
- Oversee the process by which new metal materials and finishes are validated.

-2-

- Be on the forefront of emerging safety and environmental regulations as related to metal materials and finishes.

OTHER RESPONSIBILITIES:

- Perform other job-related duties as assigned
- Domestic and international travel required

Qualifications:
Bachelor of Science in Materials Science, Mechanical Engineering, Chemical Engineering, Metallurgical Engineering or another degree relevant for successful performance of the essential functions of this job description

- 5+ years of industry experience in material or process development
- Excellent academics (cumulative GPA greater than or equal to 3.0 as a general rule)
- Demonstrated strong and effective verbal, written, and interpersonal communication skills
- Demonstrated knowledge of Garmin's overall product line and customers
- Demonstrates exemplary judgment regarding product usability, customer expectations, and creative product tradeoffs
- Experience with metals and their associated finishes
- 
- Ability to organize and direct multiple projects simultaneously
- Experience in providing concise reports with audience appropriate conclusions and recommendations
- Strong attention to detail and resolution to tackle complex problems
- Experience working with suppliers throughout the world

Fluency in Mandarin or Japanese is a plus.

At Garmin, we like to laugh, have fun and work hard. It comes easily when you work on cool products with hard-working individuals who share the same passion. We offer numerous opportunities to get involved – kickball anyone?  – and believe strongly in a work-life balance so your creativity can flow.

Our benefits, designed to lead an evolving marketplace, support innovation and encourage a healthy balance between work and life, keep us competitive and allow our associates to make their own decisions about their well-being and future. We offer a choice of healthcare plans— with low or no premiums—which consistently rank in the 90th percentile when compared to other high-tech employers, plus dental and vision plans for you and your family. In addition, our financial benefits rate 82% above the median for technology companies comparable in size. Our 401K retirement plan provides 5% of pay base contribution plus a match of 75 cents for every dollar you contribute to a maximum of 10% of your compensation. The employee stock purchase plan allows for shares to be bought at a 15% discount.

-3-

Relocation assistance provided.  Never been to Kansas City? You are missing out! Check out www.mykc.co

*Garmin International is an equal opportunity employer.  Qualified applicants will receive consideration for employment without regard to race, religion, color, national origin, citizenship, sex, sexual orientation, gender identity, veteran's status, age or disability.*

-4-

# EXHIBIT F

S - 6

from:   Northup, Evan <Evan.Northup@garmin.com>

to:   "ganiyu.jaiyeola@gmail.com" <ganiyu.jaiyeola@gmail.com>

date:   Jul 23, 2019, 2:23 PM

subject:   Garmin International Technical Phone Interview Confirmation

mailed-by:   garmin.com

Hi Ganiyu,

I have scheduled your one-hour technical phone interview for Thursday, July 25th at 10:00 am
Central Time/11:00 am Eastern Time for the Advanced Materials Engineer – Metals position.

John Mudd & Jared Klein will be calling you and conducting the interview.

If you have any questions please feel free to call me at 913-440-5356.

Thank you so much and we look forward to speaking with you soon!

Best,

Evan Northup | Human Resources Coordinator

Garmin International | Direct: 913.440.5356

Garmin_Logo_Rgsd_CMYK Delta

CONFIDENTIALITY NOTICE: This email and any attachments are for the sole use of the
intended recipient(s) and contain information that may be Garmin confidential and/or Garmin
legally privileged. If you have received this email in error, please notify the sender by reply
email and delete the message. Any disclosure, copying, distribution or use of this communication
(including attachments) by someone other than the intended recipient is prohibited. Thank you.

# EXHIBIT G

S-7

from:   Cormack, Michelle <Michelle.Cormack@garmin.com>

to:   "ganiyu.jaiyeola@gmail.com" <ganiyu.jaiyeola@gmail.com>

date:   Aug 5, 2019, 9:23 AM

subject:   Garmin: Assignment

Good morning, Ganiyu:

We are excited to meet you next week!  The hiring team wanted me to send this your way so that you could be prepared to discuss this during your interview.

Gold plating is required on a charge/data pin connection to reduce contact resistance. This is a wearable product, and therefore cannot employ nickel in the plating solution. The ideal design utilizes SUS 316 as the base material for the pin to prevent corrosion in the event that the gold plating wears through or is otherwise compromised such that the underlying material is exposed. Propose an ideal process, material, and/or plating specification that would enable a reliable 100µin thick hardened gold layer to be plated onto SUS 316 pin.

Please give this some thought and be prepared to discuss!

Thanks – see you soon!

Michelle


Garmin_Logo_Rgsd_CMYK black


Michelle Cormack

Michelle.Cormack@Garmin.com

Senior Technical Recruiter

Direct: (913) 440-2733


Forbes Magazine ranks Garmin #5 on America's Best Large Employers List 2019! Check it out here

Kansas City is a great place to live AND work:  https://vimeo.com/315976670

logo-beatyesterday

CONFIDENTIALITY NOTICE: This email and any attachments are for the sole use of the intended recipient(s) and contain information that may be Garmin confidential and/or Garmin

legally privileged. If you have received this email in error, please notify the sender by reply email and delete the message. Any disclosure, copying, distribution or use of this communication (including attachments) by someone other than the intended recipient is prohibited. Thank you.

-2-

from:   Ganiyu Jaiyeola <ganiyu.jaiyeola@gmail.com>

to:      "Cormack, Michelle" <Michelle.Cormack@garmin.com>

date:   Aug 5, 2019, 11:53 AM

subject:        Re: Garmin: Assignment


Morning Michelle,

I am excitedly looking forward to the meeting next week!

Thanks for the heads-up on the gold plating discussion issue.  I will gladly provide some suggestions.  See you next week!


Sincerely,


Ganiyu Jaiyeola

616-635-4025

from:   Cormack, Michelle <Michelle.Cormack@garmin.com>

to:     Ganiyu Jaiyeola <ganiyu.jaiyeola@gmail.com>

date:   Aug 5, 2019, 12:02 PM

subject:        RE: Garmin: Assignment


Sounds great!


Garmin_Logo_Rgsd_CMYK black


Michelle Cormack

Michelle.Cormack@Garmin.com

Senior Technical Recruiter

Direct: (913) 440-2733


Forbes Magazine ranks Garmin #5 on America's Best Large Employers List 2019! Check it out here

Kansas City is a great place to live AND work:  https://vimeo.com/315976670

logo-beatyesterday


-4-

# EXHIBIT H



## Cormack, Michelle

| | |
|---|---|
| **Subject:** | OSI – Ganiyu Jaiyeola, Advanced Materials Engineer - Metals |
| **Location:** | Your office |
| **Start:** | Wed 8/14/2019 1:00 PM |
| **End:** | Wed 8/14/2019 1:30 PM |
| **Recurrence:** | (none) |
| **Meeting Status:** | Accepted |
| **Organizer:** | HR Coordinator - Evan Northup |
| **Required Attendees:** | Cormack, Michelle |
| **Categories:** | Business |

Michelle, please meet Ganiyu in the North lobby at this time. Diane will be picking them up at your office around 1:30. Thanks!

1:00-1:30: Michelle Cormack (Her office)
1:30-2:00: Tour with Diane McLendon
2:00-3:00: Jeff Minelli, John Mudd & Jacob Zeller (Conference Room 1450)
3:00-4:00: Jared Klein & Paul Rollheiser (Conference Room 1450)
4:00-5:00: John Whiteside, Aaron Lindh & Brian Sandefur (Conference Room 1450)

# EXHIBIT I



from:   Ganiyu Jaiyeola <ganiyu.jaiyeola@gmail.com>

to:   John.Mudd@garmin.com,

Jared.Klein@garmin.com,

"Cormack, Michelle" <Michelle.Cormack@garmin.com>,

"Northup, Evan" <Evan.Northup@garmin.com>

date:   Aug 15, 2019, 10:11 AM

subject:   Thank You


Dear John, Jared, Michelle, and Evan:

Thank you for providing me the opportunity for an on-site interview for the "Advanced Materials Engineer - Metals" position at Garmin.

The information that I got from you and all the engineers that I met with gave me an insight into how the Garmin family keeps Garmin at the forefront of location technologies.  Garmin is definitely a forward looking company.

I am very enthusiastic about the challenges involved with this position.  Diane shared her experience with me on the challenges that she has been addressing the last 4 years as the Materials Engineer responsible for polymeric materials.  Aaron alerted me to the fact that I may be faced with 70 Mechanical Engineers needing my opinion on alloys, processing issues, product development parameters, failure analysis, and many more challenges!  My qualifications and professional experience adequately prepare me for the challenges enumerated by your engineers. Some of my product development experience include developing an electrochemical sensor for the integral fuel tank of Aircraft, materials qualification and selection for a NOx sensor for automotive emission monitoring, and selection of a robust magnesium alloy for the integral structure of a rear-view camera for automotive applications.  I was part of a team that got a patent on a corrosion inhibitor for silanes used in power and telephone cables.  My extensive product development and failure analysis experience include many alloys (including steel and aluminum), processes (including Electroplating and PVD), anodised Aluminum, and powder-coated Aluminum die cast parts.

I gave a presentation on an issue with Hard Gold plating/coating to your engineers at the end of my interview.  A copy of the presentation is attached to this email.  Many interesting questions came up during the presentation.  Electroplating hard gold with a robust wear resistance and therefore long life is better done if a strike of pure gold (14K/18K) is plated directly on SS 316 immediately before at least 75% Gold is plated.  Electroplating tends to be an art and good platers are always refining their processes.  I have worked with platers to develop and refine plating processes.

-1-

I believe I can contribute to the goals of Garmin.  I am a team player and a quick learner.  I hope I get the opportunity to make a contribution to Garmin.

Thank you for your time.


Sincerely,


Ganiyu Jaiyeola

616-635-4025

-2-

# EXHIBIT J



from:   Ganiyu Jaiyeola <ganiyu.jaiyeola@gmail.com>

to:     "Cormack, Michelle" <Michelle.Cormack@garmin.com>

date:   Aug 22, 2019, 1:21 PM

subject:        Update

Good Afternoon Michelle,

Do you have any update on my candidacy for the "Advanced Materials Engineer - Metals" position?

Thank you.

Sincerely,

Ganiyu Jaiyeola

616-635-4025

-1-

from:   Cormack, Michelle <Michelle.Cormack@garmin.com>

to:   Ganiyu Jaiyeola <ganiyu.jaiyeola@gmail.com>

date:   Aug 23, 2019, 11:12 AM

subject:   RE: Update

mailed-by:   garmin.com


Good morning! We are still considering you as a candidate, as we look at others as well. So, at this point, no decision has been made.  I hope to know more next week!


Garmin_Logo_Rgsd_CMYK black


Michelle Cormack - Senior Technical Recruiter

Direct: (913) 440-2733


Learn more about Garmin's:

People/Passion/Products


CONFIDENTIALITY NOTICE: This email and any attachments are for the sole use of the intended recipient(s) and contain information that may be Garmin confidential and/or Garmin legally privileged. If you have received this email in error, please notify the sender by reply email and delete the message. Any disclosure, copying, distribution or use of this communication (including attachments) by someone other than the intended recipient is prohibited. Thank you.

# EXHIBIT K

S-11

from:   Human Resources <invalidemail@garmin.com>

to:     ganiyu.jaiyeola@gmail.com

date:   Nov 13, 2019, 1:40 PM

subject:    Advanced Materials Engineer - Metals-19001CL at Garmin

mailed-by:   garmin.com


November 13, 2019


Dear Ganiyu,

Thank you for taking the time to interview with us regarding the position of Advanced Materials
Engineer - Metals. Because there is a high level of emphasis placed on achieving the best match
between each candidate and position at Garmin, the hiring team has carefully reviewed the
qualifications and skills on your application and information discussed during the interview.


Garmin is unable to offer you employment at this time, but please keep in mind that Garmin is a
dynamic and growing organization, so it is possible that in the future there may be other career
opportunities that better match your qualifications.


Garmin invites you to visit its Career Section regularly and apply for other positions which
match your qualifications and interests. Your resume and application is maintained in our
database, but in order to be considered for other positions, you must apply directly to that
specific position.


Thanks for your interest in Garmin. Garmin wishes you the best in your career search.


Best regards,


Michael Risinger

Garmin International

Garmin Careers on FB:  www.facebook.com/garmincareers

Garmin Careers on Twitter:  www.twitter.com/garmincareers

Garmin Careers on Instagram:  www.instagram.com/garmincareers

Garmin is an equal opportunity employer and does not discriminate on the basis of race, color, religion, national origin, age, sex, sexual orientation, disability, veteran or military status, or other protected status covered by federal, state, or local law.

Replies to this message are undeliverable and will not reach the Human Resources Department. It is Garmin's policy to provide this letter as a means for communicating the status of your application.  We are unable to provide further details regarding the reason for a hiring decision.

# EXHIBIT L

S ~ 12

from:   Northup, Evan <Evan.Northup@garmin.com>

to:      "ganiyu.jaiyeola@gmail.com" <ganiyu.jaiyeola@gmail.com>

date:   Jul 26, 2019, 5:53 PM

subject:        Garmin International On-Site Interview Request

Northup, Evan <Evan.Northup@garmin.com>

Jul 26, 2019, 5:53 PM

to me


Hi Ganiyu,

We are interested in bringing you on-site for an interview for the Advanced Materials Engineer - Metals position.  Would you please look at your schedule and give me a few dates and times that you would be available to come to Kansas City to interview?

The flight, hotel and rental car will all be a direct bill to Garmin.  We will fly you in the day before your interview, and you have the option to leave right after your interview, or stay an additional night to see the Kansas City area.  I will send you an expense report when everything is finalized, so please keep your receipts for meals, parking, rental car gas, etc.  Please let me know if you have any questions or concerns.   Would you also please let me know the following:


•        What airport do you fly out of?

•        How does your name appear on your driver's license?

•        What is your date of birth?

•        What time of day do you want to come to Kansas City?  Would you like to leave after your interview, or stay an extra night?


As soon as you get back with me, I will start the process of scheduling the interview, and will be in contact with you to confirm the dates and the details. Please provide me with the best phone number to reach you at so that I can call you to discuss travel arrangements.

I look forward to hearing from you soon!


Best,

Evan Northup | Human Resources Coordinator

Garmin International | Direct: 913.440.5356


Garmin_Logo_Rgsd_CMYK Delta

CONFIDENTIALITY NOTICE: This email and any attachments are for the sole use of the intended recipient(s) and contain information that may be Garmin confidential and/or Garmin legally privileged. If you have received this email in error, please notify the sender by reply email and delete the message. Any disclosure, copying, distribution or use of this communication (including attachments) by someone other than the intended recipient is prohibited. Thank you.

# EXHIBIT M

S-13

# Suggestions For a Robust $100\ \mu\text{in Thick}$ Hard Gold Electroplating Or PVD Or CVD Coating On 316 Stainless Steel Pins

## Venue: Garmin (Olathe, Kansas)

### Dr. Ganiyu Jaiyeola

### August 14, 2019

**Garmin International Technical Team Statement:**
"Gold plating is required on a charge/data pin connection to reduce contact resistance. This is a wearable product, and therefore cannot employ nickel in the plating solution. The ideal design utilizes SUS 316 as the base material for the pin to prevent corrosion in the event that the gold plating wears through or is otherwise compromised such that the underlying material is exposed. Propose an ideal process, material, and/or plating specification that would enable a reliable 100 $\mu$in thick hardened gold layer to be plated onto SUS 316 pin."

# ISSUE PARAMETERS

- SUS 316 (SS 316)
- Gold Plating (Hard Gold, 100 µin)
- No Nickel (Dermatitis)

Appellate Case: 21-3114   Document: 010110544162   Date Filed: 07/06/2021   Page: 177

# SS 316

| Element | Weight % |
|---|---|
| Chromium | 16.0 min. – 18.0 max. |
| Nickel | 10.0 min. – 14.0 max. |
| Molybdenum | 2.00 min. – 3.00 max. |
| Carbon | 0.08 |
| Manganese | 2.00 |
| Phosphorous | 0.045 |
| Sulfur | 0.03 |
| Silicon | 0.75 |
| Nitrogen | 0.1 |
| Iron | Balance |

Appellate Case: 21-3114   Document: 010110544162   Date Filed: 07/06/2021   Page: 178

# ELECTROPLATING



Appellate Case: 21-3114   Document: 010110544162   Date Filed: 07/06/2021   Page: 179

# ELECTROPLATED GOLD

Advantages:

- Value

- Color (Aesthetics)

- Barrier (Protection)

Disadvantage:

- Soft Metal (Wears easily)

Appellate Case: 21-3114   Document: 010110544162   Date Filed: 07/06/2021   Page: 180

# GOLD ALLOYS

| | | | Color of Gold | Alloy Composition |
|---|---|---|---|---|
| | | | Yellow Gold (22K) | Gold 91.67% |
| | | | | Silver 5% |
| 24 | 99.90 | Pure gold | | Copper 2% |
| | | | | Zinc 1.33% |
| 18 | 75.00 | Gold with nickel, copper or zinc alloy | Red Gold (18K) | Gold 75% |
| | | | | Copper 25% |
| 14 | 58.33 | Gold with nickel, copper or zinc alloy | Rose Gold (18K) | Gold 75% |
| | | | | Copper 22.25% |
| 10 | 41.66 | Gold with nickel, copper or zinc alloy | | Silver 2.75% |

# GOLD ALLOY HARDNESS

| GOLD | HARDNESS LEVEL (MOHS SCALE) | COMMON ALLOYS |
|---|---|---|
| 24K yellow | 2.5 | |
| 18K yellow | 2.75 | silver, copper, zinc, nickel, palladium |
| 14K yellow | 3.0-4.0 | nickel, copper, silver, and zinc |
| 22K white | 2.8-4.0 | silver, palladium, nickel |

Appellate Case: 21-3114   Document: 010110544162   Date Filed: 07/06/2021   Page: 182

# ELECTROPLATED HARD GOLD

Alloyed Gold (at least 75% Gold) with:

Silver

Copper

Zinc

Palladium

- Corrosion protection
- Increased wear resistance
- Enhanced appearance

Appellate Case: 21-3114   Document: 010110544162   Date Filed: 07/06/2021   Page: 183

# ELECTROPLATED HARD GOLD

Grain Size:

- about 20-30 μm (130-200 HK25)
- Soft Gold: 1-2 μm (20-90 HK25)

Appellate Case: 21-3114    Document: 010110544162    Date Filed: 07/06/2021    Page: 184

# ELECTROPLATED HARD GOLD

Plated Gold life (10 years?):

- Gold (14K/18K – No Nickel) strike (0.1 µm = 3.94 µin JUST BEFORE Main bath)

- Main Gold bath of at least 75% Gold (18k – No Nickel)

- Thickness: 100 µin (2.54 micron)

Appellate Case: 21-3114   Document: 010110544162   Date Filed: 07/06/2021   Page: 185

# ELECTROPLATED HARD GOLD

General Plating Challenges:

- Uncontrollable large edge build-ups
- Part geometry affect the deposit's uniformity
- Channels and crevices are very difficult to electroplate

Appellate Case: 21-3114   Document: 010110544162   Date Filed: 07/06/2021   Page: 186

# ELECTROPLATED HARD GOLD

Gold Plating Failure Modes: No Adhesion

- Porosity (Pore Corrosion)
- Brittle Structure

# ELECTROPLATED HARD GOLD

## Adhesion Test:

- Tape Test
- Bend Test

Appellate Case: 21-3114   Document: 010110544162   Date Filed: 07/06/2021   Page: 188

# PHYSICAL VAPOR DEPOSITION (PVD) GOLD

PVD Gold (Not Real Gold): Extremely Hard and Durable

- Vacuum Process
  - Titanium Nitride (TiN) evaporated
  - Mixture of Reactive Gases
- Process Temperature: 50 to 400 °F

# PVD GOLD

- Typical Coating Thickness: 0.25 to 5 μm
- 0.5 μm will last for many years (?)

Gold Hardness (HK)

- PVD: 2800
- Electroplated: 130-200

Appellate Case: 21-3114   Document: 010110544162   Date Filed: 07/06/2021   Page: 190

# PVD GOLD

PVD Coating Test:

- Neutral salt spray (ASTM B117)
- CASS (Copper-Accelerated Acetic Acid-Salt Spray - ASTM-B368)

Appellate Case: 21-3114   Document: 010110544162   Date Filed: 07/06/2021   Page: 191

# PVD GOLD

Avoid:

- Tarnish or Rust remover
- Hydrochloric, Hydrofluoric, Phosphoric acid, or Caustic Agents
- Chlorine Solutions (Bleach)
- Scouring Pads (Scotch Brite®)

# PVD GOLD

Disadvantages:

- Cost to setup

- PVD coating will not level or fill like an electroplated finish; surface imperfections will still be visible after the coating process

# CHEMICAL VAPOR DEPOSITION (CVD) GOLD

CVD Gold (Not Real Gold): Harder than PVD Gold and More Durable

- Atmospheric Pressure or Vacuum Process (Higher Temperature than PVD)
  - Titanium Nitride (Chemically Formed)
  - Mixture of Reactive Gases
- Process Temperature: 1922 °F

# CVD GOLD

- Typical Coating Thickness: 4 to 12 μm
- 0.5 μm will last for many years (?)

Gold Hardness

- CVD: 2400 – 3200 HV (Higher than PVD or Electroplated)
- PVD: 2800 HK
- Electroplated: 130-200 HK

Appellate Case: 21-3114   Document: 010110544162   Date Filed: 07/06/2021   Page: 195

# CVD GOLD

Advantages:

- Better adhesion; TiN chemical reactions occur on the steel
- CVD is better able to coat internal surfaces than a PVD process

Disadvantages:

- Cost to setup
- High processing temperature for TiN (1922° F)
- Post-coating heat treating is required on Steel

QUESTIONS?

# EXHIBIT N

S-14



1200 East 151st Street
Olathe, Kansas 66062
P: 913-397-8200  F: 913-397-8282

### A NOTICE AND INVITATION TO ALL EMPLOYEES AND APPLICANTS FROM

### CLIFF PEMBLE, PRESIDENT & CEO

AFFIRMATIVE ACTION AND EQUAL EMPLOYMENT OPPORTUNITY POLICY STATEMENT

Garmin has been and will continue to be an equal opportunity employer. To assure full implementation of this equal employment policy, we will take steps to assure that:

a. Persons are recruited, hired, assigned and promoted without regard to race, religion, color, national origin, citizenship, sex, sexual orientation, gender identity, veteran's status, age or disability.

b. All other personnel actions, such as compensation, benefits, transfers, layoffs and recall from layoffs, access to training, education, tuition assistance and social recreation programs are administered without regard to race, religion, color, national origin, citizenship, sex, sexual orientation, gender identity, veteran's status, age or disability.

c. Employees and applicants shall not be subjected to harassment, intimidation, threats, coercion or discrimination because they have: (1) filed a complaint; (2) assisted or participated in an investigation, compliance review hearing or any other activity related to the administration of any federal, state or local law requiring equal employment opportunity; (3) opposed any act or practice made unlawful by any federal, state or local law requiring equal opportunity or (4) exercised any other right protected by federal, state or local law requiring equal opportunity.

I have appointed Laurie Minard to take on the responsibilities of EEO Coordinator. As EEO Coordinator, Laurie will be responsible for the day to day implementation and monitoring of this Affirmative Action Plan. As part of that responsibility, Laurie will periodically analyze the Company's personnel actions and their effects to insure compliance with our equal employment policy.

If you, as one of our employees or as an applicant for employment, have any questions about this policy or would like to be considered under our Affirmative Action Plan, please see Laurie Minard during regular business hours. This is also a reminder that employees may update their disability status at any time by contacting Laurie Minard.

I have reviewed and fully endorse our Affirmative Action and Equal Employment Opportunity program. In closing, I ask the continued assistance and support of all of the Company's personnel to attain our objective of equal employment opportunity for all.

Sincerely,

Cliff Pemble
President & CEO

# EXHIBIT T

1.

### FIRST REASON THAT GARMIN GAVE FOR NOT HIRING JAIYEOLA:

from:   Human Resources <invalidemail@garmin.com>

to:     ganiyu.jaiyeola@gmail.com

date:   Nov 13, 2019, 1:40 PM

subject:    Advanced Materials Engineer - Metals-19001CL at Garmin

mailed-by:     garmin.com

November 13, 2019

Dear Ganiyu,

Thank you for taking the time to interview with us regarding the position of Advanced Materials Engineer - Metals. Because there is a high level of emphasis placed on achieving the best match between each candidate and position at Garmin, the hiring team has carefully reviewed the qualifications and skills on your application and information discussed during the interview.

Garmin is unable to offer you employment at this time, but please keep in mind that Garmin is a dynamic and growing organization, so it is possible that in the future there may be other career opportunities that better match your qualifications.

Garmin invites you to visit its Career Section regularly and apply for other positions which match your qualifications and interests. Your resume and application is maintained in our database, but in order to be considered for other positions, you must apply directly to that specific position.

Thanks for your interest in Garmin. Garmin wishes you the best in your career search.

Best regards,

Michael Risinger

Garmin International

Garmin Careers on FB: www.facebook.com/garmincareers

Garmin Careers on Twitter:  www.twitter.com/garmincareers

Garmin Careers on Instagram:  www.instagram.com/garmincareers

Garmin is an equal opportunity employer and does not discriminate on the basis of race, color, religion, national origin, age, sex, sexual orientation, disability, veteran or military status, or other protected status covered by federal, state, or local law.

2.

Replies to this message are undeliverable and will not reach the Human Resources Department. It is Garmin's policy to provide this letter as a means for communicating the status of your application.   We are unable to provide further details regarding the reason for a hiring decision.

3.

## SECOND REASON THAT GARMIN GAVE FOR NOT HIRING JAIYEOLA:

from:   Kight, David <David.Kight@garmin.com>

to:     Ganiyu Jaiyeola <ganiyu.jaiyeola@gmail.com>

date:   Nov 27, 2019, 12:25 PM

subject:        RE: Ganiyu Jaiyeola_EEOC Complaint to Garmin

Mr. Jaiyeoloa,

We received your complaint regarding Garmin's decision to not pursue you for the position of Advanced Materials Engineer in Olathe. After considering all candidates and Garmin's current business needs, Garmin withdrew the opening, the job posting has been removed and no one was hired for this position. The decision to not move forward with your candidacy was not related in any way to the reasons that you have alleged in your complaint. We appreciate the time and effort that you invested in interviewing with Garmin. We wish you the best of luck in your future job search.


Dave Kight | Asst. Gen. Counsel – Employment & Reg. Affairs

Garmin International | Direct: 913.440.6151

FILED

FEB 19 2020

TIMOTHY M. O'BRIEN CLERK
By_____Deputy

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

GANIYU AYINLA JAIYEOLA )
)
**Plaintiff(s),** )
)
v. )   Case No. 2:20-cv-2068-JWB-JPO
GARMIN INTERNATIONAL, INC. )
)
**Defendant(s).** )
)

---

**MOTION FOR APPOINTMENT OF COUNSEL**
**AND DECLARATION OF GOOD FAITH EFFORTS TO OBTAIN COUNSEL**

I, _____GANIYU AYINLA JAIYEOLA_____, ask the court to appoint counsel, i.e. an

attorney to represent me in this case.   I understand that any false statements in this motion will

subject me to penalties of perjury.

I understand that in civil cases, there is no constitutional right to an appointed attorney.

While the court may appoint an attorney to represent me, it does so only in rare cases.   I

understand that if the court does not appoint an attorney, I must be prepared to represent myself

going forward in this case.

I understand that in deciding whether to appoint an attorney, the court will consider a

variety of factors, including but not limited to the following: (1) the merits of my claims; (2) the

nature and complexity of factual and legal issues raised in the claims; (3) my ability to present the

claims; (4) my financial ability to pay an attorney; and (5) my diligence in attempting to secure an

attorney.

I understand that with regard to the fifth factor, I must show that I have made a reasonably

diligent effort under the circumstances to obtain an attorney to represent me.   I understand that the court's Pro Se Guide (pages 26-27) suggests possible ways to find an attorney and/or obtain legal advice.

I understand that the court typically requires that before seeking an appointed attorney, a plaintiff confer with (not merely contact) at least five attorneys regarding legal representation. Below is a list of the attorneys that I have contacted, a detailed description of the efforts that I made to obtain representation, and the responses that I received:

(1)   Name of Attorney  Mark Schloegel
      Firm Name  The Popham Law Firm
      Address  712 Broadway, Suite 100, Kansas City, MO 64105
      Date(s) of Contact  December 12, 2019
      Method of Contact  Email
      Response Received  "Unfortunately we can't take you case.....". See Ex A.

(2)   Name of Attorney  Edward Keenan
      Firm Name  Keenan & Bhatia, LLC
      Address  929 Walnut Street, Suite 5107, Kansas City, MO 64106
      Date(s) of Contact  December 2019
      Method of Contact  Email and Phone
      Response Received  "After considering your potential case in light of....". See Ex B.

(3)   Name of Attorney  Albert F. Kuhl
      Firm Name  Law Offices of Albert F. Kuhl
      Address  15700 College Blvd., Ste. 102, Lenexa, Kansas 66219
      Date(s) of Contact  January 27, 2020
      Method of Contact  Email and Phone
      Response Received  "After reviewing your documentation, I am willing..". See Ex C.

4)  Name of Attorney  Brandon D. Burkhart
    Firm Name  Burkhart Law Group
    Address  4233 Roanoke Road, Suite 100, Kansas City, MO 64111
    Date(s) of Contact  December 19, 2019
    Method of Contact  Email and Phone
    Response Received  "We appreciate the confidence you have expressed in our firm; however, the firm has decided not to represent you in this matter.". See Ex D.

(5)  Name of Attorney  Katherine E. Myers
     Firm Name  Edelman, Liesen & Myers L.L.P.
     Address  208 W. Linwood Blvd., Kansas City, Missouri 64111
     Date(s) of Contact  December 19, 2019
     Method of Contact  Email
     Response Received  "Unfortunately, due to our current caseload, we are unable to represent you in this matter.". See Ex E.

(6)  Name of Attorney  Brad Thoenen
     Firm Name  HKM EMPLOYMENT ATTORNEYS LLP
     Address  1501 Westport Road, Kansas City, Missouri 64111
     Date(s) of Contact  February 10, 2020
     Method of Contact  Email and Phone
     Response Received  "We would like to take on your case.". See Ex F.

*(attach additional sheets, if necessary)*

I understand that I am required to establish that I am financially unable to retain my own attorney.

I have already completed and filed an Affidavit of Financial Status.

Yes ☐    No ☐

*OR*

I have completed and am now filing an Affidavit of Financial Status along with this motion.

Yes ☑    No ☐

In addition to the foregoing, I believe that the court should consider the following additional information:

Plaintiff is a disable.  Plaintiff has a 6-year-old son who has Down Syndrome.

_____

_____

*(attach additional sheets, if necessary)*

Pursuant to <u>28 U.S.C. § 1746,</u> I declare under penalty of perjury that the foregoing is true and correct.

Executed on _____02/18/20_____.
                          (Date)

_____
Signature of Plaintiff

GANIYU AYINLA JAIYEOLA
Name (print or type)

749 PRESERVE CIRCLE DRIVE SE, APT. 6
Address

GRAND RAPIDS     MI          49548
City                   State              Zip Code

(616) 635-4025
Telephone Number

ganiyu.jaiyeola@gmail.com
E-Mail Address

ˇ4ˇ

Index of Exhibits -- Motion Appointment of Counsel

Exhibit A       Mark Schloegel.

Exhibit B       Edward Keenan.

Exhibit C       Albert F. Kuhl.

Exhibit D       Brandon D. Burkhart.

Exhibit E       Katherine E. Myers.

Exhibit F       Brad Thoenen.

Exhibit G       A listing of Attorneys contacted and web sites visited.

Exhibit H       Attorney Representation Contracts (2) From Attorney Kuhl to Ganiyu Jaiyeola.

Exhibit I       Attorney Representation Contract (1) From Attorney Thoenen to Ganiyu Jaiyeola.

# EXHIBIT A

## LIST OF ATTORNEYS CONTACTED

### ATTORNEY 1

**from:  Mark Schloegel <schloegel@gmail.com>**

to:     "ganiyu.jaiyeola@gmail.com" <ganiyu.jaiyeola@gmail.com>

date:   Dec 12, 2019, 1:58 PM

subject:        Re: Contact form by Ganiyu Jaiyeola

Can you provide any facts or reasons why you believe race played a role?

===

On Thu, Dec 12, 2019 at 12:43 PM Ganiyu Jaiyeola <no-reply@pophamlaw.com> wrote:

Name: Ganiyu Jaiyeola

Email: ganiyu.jaiyeola@gmail.com

Phone: 6166354025

Message:        ON OR ABOUT JULY 3, 2019, I APPLIED FOR AN ADVANCED
MATERIALS ENGINEER - METALS - 19001CL FOR GARMIN INTERNATIONAL. I SAW
THE POSITION ON INDEED.COM BUT ONCE I SELECTED APPLY, I WAS BROUGHT
TO GARMIN'S INTERNAL WEBSITE AND COMPLETED THE APPLICATION PROCESS.
NEXT, I COMPLETED SEVERAL TELEPHONIC INTERVIEWS WITH HR AND
MANAGEMENT FROM ON OR ABOUT JULY 23, 2019, THROUGH JULY 25, 2019. ON
OR ABOUT AUGUST 14, 2019, I COMPLETED AN ONSITE INTERVIEW IN OLATHE,
KANSAS FOR THE POSITION. FOR THE ONSITE INTERVIEW, I FIRST MET WITH HR
TO COMPLETE AN INTERVIEW. NEXT, I WAS GIVEN A TOUR OF THE FACILITIES
AND HAD A TECHNICAL DISCUSSION REGARDING THE JOB REQUIREMENTS FOR
THE POSITION. THEN I HAD 3 SEPARATE TEAM TECHNICAL INTERVIEWS
FOLLOWED BY A POWERPOINT PRESENTATION THAT THE HIRING MANAGER DID
NOT ATTEND.

I BELIEVE I WAS NOT SELECTED FOR THE POSITION BECAUSE OF MY RACE
(AFRICAN AMERICAN), NATIONAL ORIGIN (NIGERIAN), AGE (OVER 40) AND MY
SON'S DISABILITY IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964,
AS AMENDED AND THE AGE DISCRIMINATION IN EMPLOYMENT ACT.

--

Mark Schloegel

The Popham Law Firm

712 Broadway, Suite 100

-1-

Kansas City, MO 64105

mark@pophamlaw.com

(816)221-2288 - office

(816)512-2621- direct

(816)221-3999 - fax

(816)914-1580 - cell

www.pophamlaw.com


Confidentiality Statement & Notice: The information contained in this e-mail is privileged, confidential information of the sender. Any review, retransmission, dissemination or other use of this information by any person other than the intended recipient is strictly prohibited.

----------------------------------------------------

**from:  Ganiyu Jaiyeola <ganiyu.jaiyeola@gmail.com>**

to:      Mark Schloegel <schloegel@gmail.com>

date:    Dec 12, 2019, 2:18 PM

subject:         Re: Contact form by Ganiyu Jaiyeola

Thank you for your quick reply.  Please see the attached files.


I contacted Garmin and the Kansas EEOC.  The investigator told me the EEOC Kansas office does not have the resources to investigate but she would send me a Right to Sue letter.  She did send me the letter.  I also contacted the Kansas Human Rights Commission (KHRC).  KHRC told me a complaint for me to sign will be sent to me in the mail.  I have not received the complaint yet.  If you want me to call you, please let me know.  Thank you.


Sincerely,


Ganiyu Jaiyeola, Ph.D., MBA

616-635-4025

----------------------------------------------------

**from:  Ganiyu Jaiyeola <ganiyu.jaiyeola@gmail.com>**

-2-

to:     Mark Schloegel <schloegel@gmail.com>

date:   Dec 12, 2019, 2:50 PM

subject:        Re: Contact form by Ganiyu Jaiyeola

The following two citations may be of relevance to my situation:

1. Leo v. Garmin International, Case No. 09-CV-2139 (D. Kan. May 21, 2010). (attached file)

2. The EEOC gives the following example with regards to the Association Provision of the Americans with Disabilities Act (ADA):

"........An employer may not terminate or refuse to hire someone due to that person's known association with an individual with a disability.

Example B: An employer is interviewing applicants for a computer programmer position. The employer determines that one of the applicants, Arnold, is the best qualified, but is reluctant to offer him the position because Arnold disclosed during the interview that he has a child with a disability. The employer violates the ADA if it refuses to hire Arnold based on its belief that his need to care for his child will have a negative impact on his work attendance or performance." (The U.S. Equal Employment Opportunity Commission, Questions and Answers About the Association Provision of the Americans with Disabilities Act, https://www.eeoc.gov/facts/association_ada.html (December 20, 2017)).

Thank you.


Sincerely,


Ganiyu Jaiyeola, Ph.D., MBA

616-635-4025

--------------------------------------------------

**from:  Mark Schloegel <schloegel@gmail.com>**

to:     Ganiyu Jaiyeola <ganiyu.jaiyeola@gmail.com>

date:   Dec 12, 2019, 3:14 PM

subject:        Re: Contact form by Ganiyu Jaiyeola

Unfortunately we can't take you case given the short notice and notice to sue.  You should speak with another attorney asap.

good luck. mark

-3-

# EXHIBIT B

LIST OF ATTORNEYS CONTACTED

**ATTORNEY 2**

**from:  Ganiyu Jaiyeola <ganiyu.jaiyeola@gmail.com>**

to:     ee@keenanfirm.com

date:   Jan 10, 2020, 11:26 AM

subject:        Potential Case: Jaiyeola v Garmin - Employment Discrimination

Hi,

I spoke with you towards the end of last year about my potential case and you said you would get back to me early this year.  A brief summary of my case is below.

Thank you.


Sincerely,


Ganiyu Jaiyeola, Ph.D., MBA

616-635-4025

==================

On or about July 3, 2019, I applied for ADVANCED MATERIALS ENGINEER - METALS - 19001CL position at GARMIN INTERNATIONAL, Olathe, Kansas. I saw the position on indeed.com. I applied at Garmin's internal website and I completed the application process. Next, I completed several telephone interviews with HR and management from on or about July 23, 2019 through July 25, 2019.  On August 14, 2019, I completed an onsite interview in Olathe, Kansas for the position.  For the onsite interview, I first met with HR to complete an interview. Next, I was given a tour of the facilities and had a technical discussion regarding the job requirements for the position.  Then I had 3 separate team technical interviews followed by a PowerPoint presentation that the Hiring Manager did not attend.

I believe I was not selected for the position because of my race (African American), Color (Black), National Origin (Nigerian), Age (over 40), and my Son's Disability (Down Syndrome) in violation of TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED AND THE AGE DISCRIMINATION IN EMPLOYMENT ACT.

The hiring denial was sent to me by an email dated November 13, 2019.  On November 13, 2019, Garmin's reason for not hiring me was "Because there is a high level of emphasis placed on achieving the best match between each candidate and position at Garmin, the hiring team has carefully reviewed the qualifications and skills on your application and information discussed

-1-

during the interview." After I complained (on November 25, 2019) to Garmin's VP HR, Garmin's reason (on November 27, 2019) for not hiring me was "After considering all candidates and Garmin's current business needs, Garmin withdrew the opening, the job posting has been removed and no one was hired for this position.". Garmin's reason for not hiring me has been "inconsistent" (Fassbender v. Correct Care Solutions, LLC, 890 F.3d 875 (2018)). After I got the denial email on November 13, 2019, I visited the Garmin job website and the job was still advertised. The job was therefore removed after November 13, 2019; probably after I complained to Garmin's VP HR through email on November 25, 2019.

I filed Employment Discrimination complaints with the Kansas EEOC and Kansas Human Rights Commission (KHRC). EEOC has issued me a right-to-sue letter.

---------------------------------------------------

**from:  E.E. Keenan <ee@keenanfirm.com>**

to:      Ganiyu Jaiyeola <ganiyu.jaiyeola@gmail.com>

date:    Jan 10, 2020, 11:35 AM

subject:     Re: Potential Case: Jaiyeola v Garmin - Employment Discrimination

Dear Ganiyu, I'm sorry to hear about your situation. What is the date on the right-to-sue letter you received?

I know you know this, but just to be clear, our firm has not been retained in this matter and not provided any advice yet, and you remain responsible for abiding by any statute of limitations or other deadlines.


Kind regards,


E.E.

Edward Emmett Bhatia ("E.E.") Keenan

Attorney

Keenan & Bhatia, LLC

New York Office

90 Broad Street, Suite 200

New York, NY  10004

Tel:  (917) 975-5278

-2-

Kansas City Office

929 Walnut Street, Suite 5107

Kansas City, MO  64106

Tel: (816) 809-2100

Note: Please send all paper correspondence to the New York office.

E-mail: ee@keenanfirm.com

Visit us online at www.keenanfirm.com

---------------------------------------------------

**from:  Julia Gokhberg <julia@kclaborlaw.com>**

to:      ganiyu.jaiyeola@gmail.com

date:    Jan 20, 2020, 1:25 PM

subject:    Thank You

Dear Mr. Jaiyeola,

Thank you so much for the chance to talk, and we are sorry to hear about what you are going through.  We are honored you would consider our firm for your potential case.

After considering your potential case in light of our current caseload, we regret that we will be unable to represent you in any claims you may have.  Our firm and its lawyers have not been retained as your attorneys, have not given any legal advice, and will not be acting as your attorneys.

This is not necessarily a reflection on the merits of any potential claims you may have, and you should continue to search for counsel if you wish to pursue any potential claims.  Please note that statutes of limitations and other procedural deadlines could bar your ability to pursue any claims if you do not act promptly and file your claims timely.  These statutes of limitation can be very short, so it is important to act promptly.

There are a number of very good employment lawyers in the Kansas area.  We would suggest contacting the following:


LAW OFFICES OF FREDRICK D. DEAY, II

Fredrick D. Deay, II

7575 W. 106th Street, No. 14

Overland Park, Kansas 66212

-3-

(913) 649-0687

fddpai@hotmail.com

==

Ted Lickteig

Lickteig Law Firm

913-894-1090

tjllawoffice@planetkc.com

==

Luanne Leeds

Leeds Law, LLC

515 SW Horne, Ste. 201

Topeka, KS 66606

(785)354-0727

Fax: (785)354-0728

leeds@leedslaw.us

==

Aaron C. McKee, Esq.

McKee Law, L.L.C.

222 South Cherry Street

Olathe, Kansas 66061

Office: (913) 768-6400

Facsimile: (913) 768-6420

Toll Free Facsimile: (877) 893-7620

www.mckee-law.com

aaronmckee@ksmoemploymentlaw.com

==

Kenneth D. Kinney

Attorney

-4-

Ralston Kinney, LLC

4717 Grand Avenue, Suite 250

Kansas City, MO 64112

Tel:  (816) 298-0070

Fax: (816) 298-9455

www.ralstonkinney.com

We do not know if they are in a position to take your case, but they would be worth a call.  There are other good attorneys as well; it is useful to ask if a lawyer is a member of the National Employment Lawyers Association ("NELA"), as NELA lawyers tend to have deeper experience and devotion to employment law matters.

We wish you the best going forward and will pray for a good resolution to your situation.

Kind regards,

Julia Gokhberg

Litigation Manager

Keenan & Bhatia, LLC

E-mail: julia@keenanfirm.com

Tel: (347) 721-0064

Visit us online at www.keenanfirm.com

-5-

# EXHIBIT C

LIST OF ATTORNEYS CONTACTED

**ATTORNEY 3**

**from:  Missy Renne <Missy@kcjoblawyer.com>**

to:      "ganiyu.jaiyeola@gmail.com" <ganiyu.jaiyeola@gmail.com>

date:    Jan 27, 2020, 2:19 PM

subject:      Law Offices of Albert F. Kuhl

Mr. Jaiyeola...My name is Missy and I am Mr. Kuhl's Legal Assistant.  Our office has received your email and I wanted to arrange an office meeting between you and Mr. Kuhl.  Please let me know some days/times which will work for you and I will confirm accordingly to Mr. Kuhl's schedule.  Thank you for your inquiry and we look forward to hearing from you.


Missy Renne

Law Offices of Albert F. Kuhl

15700 College Blvd.

Ste. 102

Lenexa, Kansas 66219

Tel: 913.438.2760

Fax: 913.327.8492

--------------------------------------------------

**from:  Ganiyu Jaiyeola <ganiyu.jaiyeola@gmail.com>**

to:      al@kcjoblawyer.com

cc:      Missy@kcjoblawyer.com

date:    Jan 27, 2020, 4:08 PM

subject:      Re: Law Offices of Albert F. Kuhl

Mr. Kuhl,

Thank you for talking with me.

My address:

749 Preserve Circle Drive SE

Apartment 6

-1-

Grand Rapids, Michigan 49548

Phone: 616-635-4025

Most recent compensation: $110K/yr (Base)

Garmin Job: $95K to $110K/yr (Base)

A copy of my complaints to Garmin Hiring Manager (Mr. John Mudd) and Garmin VP HR are attached. I sent to EEOC and Kansas Human Rights Commission a copy of my complaint to Garmin VP HR.

I look forward to speaking with you on Friday (January 31, 2020 at 1:00 PM - Your Time). Please let me know if you need any other information from me.

Thanks.


Ganiyu Jaiyeola

616-635-4025

-----------------------------------------------------

**from:  Albert Kuhl <Al@kcjoblawyer.com>**

to:     Ganiyu Jaiyeola <ganiyu.jaiyeola@gmail.com>

date:   Feb 7, 2020, 1:41 PM

subject:      Re: Law Offices of Albert F. Kuhl

Ganiyu,

After reviewing your documentation, I am willing to undertake court representation here in the District of Kansas. I am attaching two contractual alternatives for your consideration. Each is equally acceptable to me.

One option is a defined fee of $30,000.00 plus case expenses. Under this option, I shall litigate your case to conclusion at the District Court level for the stated fee, which is paid as a retainer at the onset of our work on your case. Any appeal is handled via separate contractual arrangement.

A second contractual option is a blended fee contract, in which the client tenders a defined fee at the onset of representation in the amount of $10,000.00, with a contingent component applicable to any settlement (or paid verdict) in the amount of 40%. Again, representation under the blended fee option extends through the District Court level, and does not apply to any appeal (aside from the fact that my contingent fee as owing for any paid verdict/settlement would remain applicable should I remain as your counsel in furtherance of any positive verdict received at the trial of your case).

-2-

Should you have any questions, please let me know.  I note that certain of your claims, as relate to your prior EEOC charge in particular, must be filed within 90 days of the Right to Sue document's issuance.  That deadline is approaching quickly, as you know, in early March 2020.

Thank you for the opportunity to be of service.

Regards,


Al Kuhl

Law Offices of Albert F. Kuhl

15700 College Blvd., Suite 102

Lenexa, KS  66219

Tel: 913.438.2760

Fax: 913.327.8492


CONFIDENTIALITY NOTICE: This e-mail transmission, and any documents, files or previous e-mail messages attached to it may contain confidential information that is legally privileged. If you are not the intended recipient, or a person responsible for delivering it to the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of any of the information contained in or attached to this transaction is STRICTLY PROHIBITED. If you have received this transmission in error, please immediately notify us by reply e-mail, by forwarding this to Al@kcjoblawyer.com or by telephone at 913.438.2760, and destroy the original transmission and its attachments without reading or saving in any manner. NOTICE: Please be advised that: (1) e-mail communication is not a secure method of communication, (2) any e-mail that is sent to you or by you may be copied and held by various computers it passes through as it goes from you to your intended recipient, or vise versa, (3) persons not participating in this communication may intercept this communication be improperly accessing sender's computer or recipient's computer or a computer connected to neither sender nor recipient through which the e-mail passed. You are being sent an e-mail because you have consented to receive communication via this medium. If you change your mind and want future communications to be sent in a different fashion, please notify this office immediately.

---------------------------------------------------

**from:  Ganiyu Jaiyeola <ganiyu.jaiyeola@gmail.com>**

to:     Albert Kuhl <Al@kcjoblawyer.com>

date:   Feb 14, 2020, 6:04 PM

subject:     Re: Law Offices of Albert F. Kuhl

-3-

Al,

Thank you for accepting to represent me in Court regarding my potential case.  I have reviewed your two contracts.  Unfortunately, I can't afford either of them.  I am continuing my search for a potential Attorney or I will just go pro se.  Thank you.


Sincerely,


Ganiyu Jaiyeola, Ph.D., MBA

616-635-4025

-4-

# EXHIBIT D

## LIST OF ATTORNEYS CONTACTED

### ATTORNEY 4

**from:  Ganiyu Jaiyeola <ganiyu.jaiyeola@gmail.com>**

to:      alice@burkhartlegal.com

date:    Dec 19, 2019, 2:08 PM

subject:      Potential Case: Ganiyu Jaiyeola_Employment Discrimination

Hi Alice,

Thank you for talking with me.  I got a referral to your law firm from Katherine E. Myers (Edelman, Liesen & Myers L.L.P.).

The attached files are directed to your attention.  Please let me know if you need any information from me.

Sincerely,


Ganiyu Jaiyeola, Ph.D., MBA

616-635-4025

---------------------------------------------------

**from:  Alice Kordenbrock <alice@burkhartlegal.com>**

to:      Ganiyu Jaiyeola <ganiyu.jaiyeola@gmail.com>

date:    Dec 19, 2019, 2:11 PM

subject:      Re: Potential Case: Ganiyu Jaiyeola_Employment Discrimination

Mr. Jaiyeola,

I have received your documents. I will forward these to the attorneys and we will be in touch with you.

Thank you


Alice Kordenbrock

Legal Assistant

Burkhart Law Group

4233 Roanoke Road, Suite 100

-1-

Kansas City, MO 64111

816.945.6467 - phone

816.945.6314 - fax

-------------------------------------------------

**from:  Alice Kordenbrock <alice@burkhartlegal.com>**

to:     Ganiyu Jaiyeola <ganiyu.jaiyeola@gmail.com>

date:   Dec 20, 2019, 1:03 PM

subject:     Burkhart Law - Ganiyu Jaiyeola

Dear Mr. Jaiyeola,

In response to your request when you contacted this firm, we have reviewed the information you provided regarding possible representation in the matter of employment discrimination. We appreciate the confidence you have expressed in our firm; however, the firm has decided not to represent you in this matter.  In declining to represent you in this matter, please understand that we are not expressing any opinion concerning the merits of your case.

If you still wish to pursue this legal issue or make a claim against any other party, you should be aware that the passage of time may bar you from doing so.  Since time is always important in legal concerns and could be critically short in your case, if you decide to contact another law firm about this matter, we recommend that you do so immediately.

We are not charging any fee for reviewing your case since we have declined to represent you and are not expressing an opinion as to the merits of your case.  If you need legal assistance for other concerns in the future, we hope you will again consider our firm.  Should you have any questions, please contact me.

Very truly yours,


Alice Kordenbrock

Legal Assistant

Burkhart Law Group

4233 Roanoke Road, Suite 100

Kansas City, MO 64111

816.945.6467 - phone

816.945.6314 - fax

-2-

# EXHIBIT E

LIST OF ATTORNEYS CONTACTED

**ATTORNEY 5**

**from:  Katherine Myers <kmyers@elmlawkc.com>**

to:     ganiyu.jaiyeola@gmail.com

date:   Dec 19, 2019, 12:15 PM

subject:        Re: *** MESSAGE FROM WEBSITE ***

Hello,

Thank you for contacting our law firm.  Unfortunately, due to our current caseload, we are unable to represent you in this matter.  Please understand we are not making any representations as to the potential merits of your case.  Here are the names of some other attorneys who could possibly assist:

BCU Law:  (816) 945-6467

Keenan Law:  (816) 809-2100

There may be short time limitations associated with your situation, that, if missed, could forever bar you from recovering.


On Thu, Dec 12, 2019 at 3:49 PM Ganiyu Jaiyeola <kmyers@elmlawkc.com> wrote:

From: Ganiyu Jaiyeola <ganiyu.jaiyeola@gmail.com>

Subject: Employment Discrimination

Message Body:

ON OR ABOUT JULY 3, 2019, I APPLIED FOR AN ADVANCED MATERIALS ENGINEER - METALS - 19001CL FOR GARMIN INTERNATIONAL. I SAW THE POSITION ON INDEED.COM BUT ONCE I SELECTED APPLY, I WAS BROUGHT TO GARMIN'S INTERNAL WEBSITE AND COMPLETED THE APPLICATION PROCESS. NEXT, I COMPLETED SEVERAL TELEPHONIC INTERVIEWS WITH HR AND MANAGEMENT FROM ON OR ABOUT JULY 23, 2019, THROUGH JULY 25, 2019. ON OR ABOUT AUGUST 14, 2019, I COMPLETED AN ONSITE INTERVIEW IN OLATHE, KANSAS FOR THE POSITION. FOR THE ONSITE INTERVIEW, I FIRST MET WITH HR TO COMPLETE AN INTERVIEW. NEXT, I WAS GIVEN A TOUR OF THE FACILITIES AND HAD A TECHNICAL DISCUSSION REGARDING THE JOB REQUIREMENTS FOR THE POSITION. THEN I HAD 3 SEPARATE TEAM TECHNICAL INTERVIEWS FOLLOWED BY A POWERPOINT PRESENTATION THAT THE HIRING MANAGER DID NOT ATTEND.

-1-

I BELIEVE I WAS NOT SELECTED FOR THE POSITION BECAUSE OF MY RACE (AFRICAN AMERICAN), NATIONAL ORIGIN (NIGERIAN), AGE (OVER 40) AND MY SON'S DISABILITY IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED AND THE AGE DISCRIMINATION IN EMPLOYMENT ACT.

--

This e-mail was sent from a contact form on Edelman, Liesen & Myers LLP (http://elmlawkc.com)

--

Best regards,


Katherine E. Myers

PLEASE NOTE OUR ADDRESS HAS CHANGED:

Edelman, Liesen & Myers L.L.P.

208 W. Linwood Blvd.

Kansas City, Missouri 64111

816-533-4976

Fax: 816-463-8449

kmyers@elmlawkc.com

You are hereby notified that e-mail is not a secure form of communication. Any email sent to you or by you may be copied or held by various computers it passes through in being received or delivered. Further, any email communication between us may be intercepted by a third party as it passes through various computers or through an individual improperly accessing your e-mail account. I am communicating with you because you have consented to receiving e-mail communication from myself and my law firm. If you no longer wish to communicate with myself and my law firm via e-mail, please notify me at once.

This e-mail (including any attachments) may contain material that (1) is confidential and for the sole use of the intended recipient, and (2) may be protected by the attorney-client privilege, attorney work product doctrine or other legal rules. Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited. If you are not the intended recipient, please contact Katherine E. Myers at the law firm of Edelman, Liesen, & Myers, L.L.P. at (816) 533-4976 and immediately delete all copies.

--------------------------------------------------

from:  Ganiyu Jaiyeola <ganiyu.jaiyeola@gmail.com>

-2-

to:      Katherine Myers <kmyers@elmlawkc.com>

date:    Dec 19, 2019, 1:19 PM

subject:     Re: *** MESSAGE FROM WEBSITE ***

Hi,

Thank you for your reply and for the referrals.  I will contact BCU and Keenan.

Sincerely,


Ganiyu Jaiyeola, Ph.D., MBA

616-635-4025

-3-

# EXHIBIT F

LIST OF ATTORNEYS CONTACTED

**ATTORNEY 6**

**from:  Ganiyu Jaiyeola <ganiyu.jaiyeola@gmail.com>**

to:     jziegelmeyer@hkm.com

date:   Feb 10, 2020, 11:25 AM

subject:        Potential Employment Discrimination Case: Jaiyeola v Garmin

Dear Mr. Ziegelmeyer, III,

I got your name from the Complaint in a case at the U.S. District Court of Kansas in Kansas City (Perine v. Merck Sharp & Dohme, Corp. - 2:19-cv-02568-DDC-JPO).

On or about July 3, 2019, I applied for "ADVANCED MATERIALS ENGINEER - METALS - 19001CL" position at GARMIN INTERNATIONAL, Olathe, Kansas. I saw the position on indeed.com. I applied at Garmin's internal website and I completed the application process. Next, I completed several telephone interviews with HR and management from on or about July 23, 2019 through July 25, 2019. On August 14, 2019, I completed an onsite interview in Olathe, Kansas, for the position. For the onsite interview, I first met with HR to complete an interview. Next, I was given a tour of the facilities and had a technical discussion regarding the job requirements for the position. Then I had 3 separate team-technical interviews followed by a PowerPoint presentation. During my third team-technical interview, the Hiring Manager opened the door to the interview room and told me (while he was standing at the door and to the hearing of the interviewers) that he was not going to be at my PowerPoint presentation; he did not give any reason. The Hiring Manager did not attend my PowerPoint presentation; a key requirement in my interview. I was interviewed (phone calls and onsite) by at least 12 Garmin employees. All the Garmin employees that interviewed me were White.

I hold a 1995 Ph.D. in Materials Science from the University of Connecticut, Storrs, Connecticut and a 2000 MBA from Syracuse University, Syracuse, New York.

I believe I was not selected for the position because of my race (African American), Color (Black), National Origin (Nigerian), Age (over 40), and my Son's Disability (Down Syndrome) in violation of TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED (42 U.S. Code § 2000e–2), THE AGE DISCRIMINATION IN EMPLOYMENT ACT (ADEA - 29 U.S.C. Section 621), and THE "ASSOCIATION" PROVISION OF The AMERICANS WITH DISABILITIES ACT (ADA - 42 U.S.C. §12112(b)(4)).

The hiring denial was sent to me by an email dated November 13, 2019. On November 13, 2019, Garmin's reason for not hiring me was "Because there is a high level of emphasis placed on achieving the best match between each candidate and position at Garmin, the hiring team has carefully reviewed the qualifications and skills on your application and information discussed during the interview." After I complained (on November 25, 2019) to Garmin's VP HR,

-1-

Garmin's reason (on November 27, 2019) for not hiring me was "After considering all candidates and Garmin's current business needs, Garmin withdrew the opening, the job posting has been removed and no one was hired for this position.". Garmin's reason for not hiring me has been "inconsistent" (Fassbender v. Correct Care Solutions, LLC, 890 F.3d 875 (2018)). Also, when I visited the Garmin job website on November 13, 2019 (the same day that I received the denial email), the job was still advertised. The job was therefore removed after November 13, 2019; probably after I complained to Garmin's VP HR (through email) on November 25, 2019.

I filed Employment Discrimination complaints with the Kansas EEOC and Kansas Human Rights Commission (KHRC). KHRC's determination letter to me stated that "...this determination constitutes exhaustion of administrative remedies should the complainant choose to pursue this matter further by court action.". I believe I have exhausted all the administrative remedies relevant to my claims; including Title VII, ADEA, and ADA (Leo v. Garmin International, Case No. 09-CV-2139 (D. Kan. September 24, 2009). EEOC issued me a right-to-sue letter dated December 4, 2019; my right to sue expires on March 3, 2020.

Thank you for your time.

Sincerely,


Ganiyu Jaiyeola, Ph.D., MBA

616-635-4025

=====================

Additional legal Information:

I read a 10th Circuit decision (Jones v. Azar, No. 18-2126 (10th Cir. 2019)) on age discrimination and a District Court of Kansas decision on denial of due process (Blackford v. Kansas Employment SEC. Bd. of Review, 938 F. Supp. 739 (D. Kan. 1996)) that may be of relevance to my case in terms of some of the facts and legal issues discussed.

I noted the following:

1. Perry v. Woodward, 199 F.3d 1126, 1140 n.10 (10th Cir. 1999)

"We have observed that in some circumstances"[t]he elimination of the position . . . does not necessarily eviscerate a plaintiff's claim" that the adverse employment action was motivated by unlawful discrimination."

2. Plotke v. White, 405 F.3d 1092, 1100 (10th Cir. 2005)

"(holding elimination of the plaintiff's position was not per se fatal to her discriminatory discharge claim under the facts of the case because this element "is a flexible one that can be satisfied differently in varying scenarios")."

-2-

3. "Elements of the Prima Facie Case"

In McDonnell Douglas, the Supreme Court enumerated the elements ..... (iv) after plaintiff's rejection, "the position remained open and the employer continued to seek applicants from persons of [plaintiff's] qualifications." McDonnell Douglas, 411 U.S. at 802."

After I received the first Garmin rejection reason ("Because there is a high level of emphasis placed on achieving the best match between each candidate and position at Garmin, the hiring team has carefully reviewed the qualifications and skills on your application and information discussed during the interview. Garmin is unable to offer you employment at this time, but please keep in mind that Garmin is a dynamic and growing organization, so it is possible that in the future there may be other career opportunities that better match your qualifications.") email on November 13, 2019, I checked the Garmin job site (on November 13, 2019) and found out that the position remained open. After I received the second Garmin rejection reason ("After considering all candidates and Garmin's current business needs, Garmin withdrew the opening, the job posting has been removed and no one was hired for this position.") email on November 27, 2019, I checked the Garmin job site (on November 27, 2019) and found out that the position was no longer posted. I believe the position was pulled from the job site after I filed a complaint with Garmin on November 25, 2019. I believe pulling of the position from the Garmin job site and the two rejection (and inconsistent) reasons given by Garmin constitute a pretext for not hiring me.

4. "cat's paw" Theory

Mr. John Mudd (Mechanical Engineering Manager) was the Hiring Manager for this position. Mr. Jeff Minelli (Director of Mechanical Engineering) was Mr. Mudd's Supervisor. I believe Mr. Minelli had improper and discriminatory bias against me and he influenced Mr. Mudd into making a negative employment decision about me. Ms. Michelle Cormack (Senior Technical Recruiter) told me on July 23, 2019 (interview day at Olathe, Kansas) that if Mr. Minelli didn't "like" me, Mr. Mudd would not hire me. During a team (Mr. Minelli, Mr. Mudd, and Mr. Jacob Zeller) interview on July 23, 2019, Mr. Minelli repeatedly asked me the same question in exactly the same way about aluminum alloys and I was very uncomfortable by the repetition of the question because I had to repeat my answers each time he asked the same question. Mr. Minelli didn't argue my answers or indicated he didn't understand my answers.

5. The Hiring Manager (Mr. John Mudd) denied me due process based on the following facts:

A. During my technical interview with one of the three teams (either the 3:00 PM or the 4:00 PM team in Olathe, Kansas), Mr. Mudd opened the door to the interview room, stood by the door (didn't come inside), and informed me (to the hearing of the interviewing team) that he would not be at my PowerPoint presentation. He did not give any reason why he wasn't going to be at my presentation and the discussion. I was surprised and concerned that he would not attend my presentation and the discussion. I was also concerned of the optics his announcement made to the technical team (who heard him) that was interviewing me at that instant. I became very

-3-

uncomfortable for the rest of the interview and during my subsequent PowerPoint presentation and discussion.

B. Mr. Mudd did not attend my PowerPoint presentation and the discussion (both Garmin interview requirements) that followed. There fore, Mr. Mudd did not have a complete and direct information to fairly decide on selecting me for the position.

Thank you for your time.

\---------------------------------------------------

**from:   Thoenen, Brad <bthoenen@hkm.com>**

to:     "ganiyu.jaiyeola@gmail.com" <ganiyu.jaiyeola@gmail.com>

cc:     "Ziegelmeyer, John" <JZiegelmeyer@hkm.com>,

"Thoenen, Brad" <bthoenen@hkm.com>

date:   Feb 12, 2020, 8:47 PM

subject:     Potential Employment Discrimination Case: Jaiyeola v Garmin

Ganiyu –

My name is Brad Thoenen, and I'm a colleague of John Ziegelmeyer's. John forwarded me your note and asked me to get in touch with you. Are you free on Friday morning or afternoon to stop by our office and chat for 30 minutes or so? I'd like to learn more about your case. Our address is below. I could meet at anytime from about 8:30 to 10:30 and then from 1:30 to 4. Let me know.

Thank you,

Brad

\---------------------------------------------------

**from:   Ganiyu Jaiyeola <ganiyu.jaiyeola@gmail.com>**

to:     "Thoenen, Brad" <bthoenen@hkm.com>

cc:     jziegelmeyer@hkm.com

date:   Feb 13, 2020, 1:10 PM

subject:     Re: Potential Employment Discrimination Case: Jaiyeola v Garmin

Brad,

Thank you for your mail and thanks to John for the referral.  By the way Dana Vaughn (Legal Assistant, Employee Rights Law Firm 1600 Genessee, Ste. 842, Kansas City, MO. 64102) also suggested John.

-4-

I actually live in Michigan.  I can speak with you tomorrow.  Please confirm a suitable time for you.  I am on Eastern Time.

I used one of John's Complaint and the Complaint from another case to create a draft cover sheet and a draft Complaint for my potential case.  Please see the attached files.

I look forward to speaking with you tomorrow.

Sincerely,


Ganiyu Jaiyeola

616-635-4025

--------------------------------------------------

**from:  Thoenen, Brad <bthoenen@hkm.com>**

to:     Ganiyu Jaiyeola <ganiyu.jaiyeola@gmail.com>

cc:     "Ziegelmeyer, John" <JZiegelmeyer@hkm.com>

date:   Feb 17, 2020, 10:41 AM

subject:      RE: Regarding Jaiyeola v Garmin

Ganiyu –

Thank you. Let me get you the draft fee agreement. We would like to take on your case. I'll get you a draft shortly.

Best,


Brad

--------------------------------------------------

**from:  Ganiyu Jaiyeola <ganiyu.jaiyeola@gmail.com>**

to:     "Thoenen, Brad" <bthoenen@hkm.com>

cc:     "Ziegelmeyer, John" <JZiegelmeyer@hkm.com>

date:   Feb 18, 2020, 10:02 AM

subject:      Re: Regarding Jaiyeola v Garmin

Brad,

My wife and I have reviewed your contract.  Considering our current financial situation, our conclusion is that we can't afford your services.

Thank you for accepting to represent me.


Sincerely,


Ganiyu Jaiyeola, Ph.D., MBA

616-635-4025

-6-

# EXHIBIT G

A LISTING OF ATTORNEYS CONTACTED AND WEB SITES VISITED

https://www.workplacefairness.org/file_KS

===========

https://lawyers.findlaw.com/lawyer/firm/employment-law-employee/kansas-city/missouri

==============

1.     https://www.kdh-law.com/Attorneys/X
2.     https://www.pophamlaw.com/know-youve-victim-employment-discrimination-kansas-
       city/Reply
3.     https://www.ralstonlawllc.com/X

Kenneth D. Kinney

Attorney

Ralston Kinney, LLC

4717 Grand Avenue, Suite 250

Kansas City, MO 64112

Tel:  (816) 298-0070

Fax: (816) 298-9455

www.ralstonkinney.com

Dear Mr. Kinney,

Someone from your office spoke with me to get the date (December 4, 2019) on my EEOC right-to-sue letter about a week ago; after I completed your online form regarding my potential case.

I am contacting you for possible representation because my potential case has an issue similar to a case that you litigated in 2018 (*Fassbender v. Correct Care Solutions, LLC*, 890 F.3d 875 (2018)) and also because I got your name as a referral (Julia Gokhberg, Litigation Manager, Keenan & Bhatia, LLC).

-1-

4.   https://www.carterlaw.org/Firm-Overview.shtmlX

5.   https://rahmlaw.com/X

6.   https://www.dgmlawyers.com/about-us/
     (https://www.dgmlawyers.com/?refPageViewId=556e095597a67e0d)

7.   https://www.elmlawkc.com/our-firm/Reply

8.   https://www.ncrpc.com/Attorneys/X (https://www.ncrpc.com/Employment-Law.shtml)

9.   http://www.danvosslaw.com/litigation-employment.phpX - Not taking new cases

10.  https://www.burkhartlegal.com/contact-us/ - Contacted alice@burkhartlegal.comX

11.  http://www.kclaborlaw.com/Keenan_Home_Page.html - Sent Inquiry: 929 Walnut Street,
     Kansas City, MO  64106, (816) 809-2100

12.  https://hkm.com/kansascity/

13.  https://brownandcurry.com/

14.  https://www.employeerightslawfirm.com/

15.  https://www.thornberrybrown.com/

16.  http://cornerstonefirm.com/

17.  https://www.duganschlozman.com/attorneys/ (Thank you for contacting us, we will get
     back to you shortly! 8826 Santa Fe Drive, Suite 307 Overland Park, KS 66212 Phone:
     913-322-3528 Fax: 913-904-0213 Mark Dugan (Mark@duganschlozman.com), Heather
     Schlozman (Heather@duganschlozman.com). Declined.

18.  https://kansascity.tswartzlaw.com/attorney-tara-m-swartz/

19.  http://civiljusticelawfirm.com/about-us/

20.  https://www.mbradylaw.com/

21.  LAW OFFICES OF FREDRICK D. DEAY, II

Fredrick D. Deay, II

7575 W. 106th Street, No. 14

Overland Park, Kansas 66212

(913) 649-0687

fddpai@hotmail.com

-2-

22.     Ted Lickteig_Declined

Lickteig Law Firm

913-894-1090

tjllawoffice@planetkc.com

23.     Luanne Leeds

Leeds Law, LLC

515 SW Horne, Ste. 201

Topeka, KS 66606

(785)354-0727

Fax: (785)354-0728

leeds@leedslaw.us

24.     Aaron C. McKee, Esq.

McKee Law, L.L.C.

222 South Cherry Street

Olathe, Kansas 66061

Office: (913) 768-6400

Facsimile: (913) 768-6420

Toll Free Facsimile: (877) 893-7620

www.mckee-law.com

aaronmckee@ksmoemploymentlaw.com

25.     Larry G. Michel

26.     Law Offices of Albert F. Kuhl

-3-

15700 College Blvd., Suite 200 Lenexa, KS 66219

Office@KCjoblawyer.com

Toll-Free: 877.506.7111

Tel: 913-438-2760

Fax: 913-327-8492

27.     http://cornerstonefirm.com/

28.     Lynne J. Bratcher

Bratcher Gockel Law, LC

attorneys@bgklawyers.com

29.     Anne E. Baggott

https://www.dysarttaylor.com/

30.     Jack D. McInnes

McInnes Law LLC

https://www.mcinnes-law.com/team/jorgensen/

31.     jlansford@bensonlaw.com

http://www.bensonlaw.com/

32.     nwjk@nwjklaw.com

Norman Kelly

Norton, Wasserman, Jones & Kelly, LLC

-4-

# EXHIBIT H

February 7, 2020

TO:   Ganiyu Jaiyeola

RE: Employment claims - Representation agreement

By this correspondence, I wish to confirm your retention of my services for the purpose of investigating, and pursuing, claims of unlawful treatment by Garmin, and/or any relevant employees or affiliates thereof.

You have agreed to tender an attorney fee payment totaling $30,000.00. In exchange for this payment, I shall litigate your case to conclusion at the District Court level, and/or comparable administrative trial level. Because of the uncertain nature of when or upon what basis this matter may be resolved, the parties acknowledge that this fee is not in any manner conditioned upon the specific result obtained or timing thereof. Further, the parties agree that this fee shall be earned in full at the conclusion of Counsel's completion of his investigation (including necessary initial legal research, document and/or witness review, and/or similar investigative efforts) and preparation of suit initiation papers inclusive of initial discovery requests and disclosures.

This is a lump-sum fee representation, and the fee as stated is without any contingency or specific hourly fee component. All case expenses shall be paid separately by you as incurred. An expense retainer may be required of you as necessary during the course of litigation. Although no specific hourly fee is contemplated by this agreement, it is understood my standard hourly rate in matters of this type is $495.00/hr. and paralegal time is billed at $120.00/hr.

Please sign and return the original copy of this letter, along with your attorney fee, and I shall commence my efforts on your behalf. I look forward to working with you.

Best Regards,


Albert F. Kuhl

Acknowledged and Agreed:


_____

244

## CONTINGENT FEE AGREEMENT
## CONTRACT FOR EMPLOYMENT OF ATTORNEYS

THIS AGREEMENT is made this _____ day of _____, 2020, by and between Ganiyu Jaiyeola ("Client"), and Albert F. Kuhl ("Counsel"), for certain legal representation by Counsel on behalf of Client.

## DESIGNATION OF CLAIMS

1.      The Client hereby employs Counsel to represent Client in connection with the claims of Client against Garmin, its parent(s) and/or subsidiaries, as appropriate (referred to herein as "Defendant"), and such other persons or entities as may be proper.  This engagement specifically relates to the Client's claims of compensation nonpayment, wrongful discharge, discrimination and/or retaliation as a result of mistreatment by Defendant.

2.      Counsel shall have the exclusive right to take all legal steps that he deems necessary to enforce the Client's claims.  However, Counsel will not compromise or settle the Client's claims without the Client's consent.

3.      Counsel is authorized to take all steps that he deems necessary for the proper investigation, preparation and trial of any actions filed in connection with the Client's claims, and any immediate post-trial motions.  Counsel is authorized to make decisions regarding all other matters he deems appropriate in his professional judgment with regard to the litigation. Counsel agrees, however, to consult with the Client before incurring substantial litigation expenses on his behalf.

## PAYMENT OF FEES AND EXPENSES

4.      The Client agrees that Counsel is to handle the Client's claims on a contingency fee basis, and that this representation will be upon the following terms and conditions:

(a)      Fees:  Counsel shall receive as a fee the amount set forth in the following subparagraphs, after reimbursement of any expenses incurred:

(i) Initial Fee:  Client agrees to pay to Counsel $10,000.00 as an initial fee in connection with Counsel's representation of Client at the District Court level, which the parties agree shall be earned in full at the conclusion of Counsel's completion of his investigation (including necessary initial legal research, document and/or witness review, and/or similar investigative efforts) and preparation of suit initiation papers inclusive of initial discovery requests; and

(ii) Settlement or Satisfaction of Judgment:  Counsel shall retain or claim 40% of any and all monies received or other compensation which may be paid or become due through settlement or otherwise.  The contingent fee described above will be calculated after deducting, from the settlement or judgment amount, any expenses incurred by either Counsel and/or Client.

1

     (iii)   <u>Settlement or Satisfaction of Non-Monetary Judgment</u>: It is understood that Counsel would normally charge $495.00 per hour for each hour of work performed on a matter of this type. Paralegal time is charged at $120.00 per hour. It is understood and agreed that, in the event that the remedy awarded the Client, either by way of court order, judgment or settlement does not include a monetary award, or includes monetary and non-monetary components, then the attorney's fees paid by the Client shall be an amount representing the greater of the above-referenced contingent fee, or Counsel's fees calculated on the hourly fee schedule set forth above in an amount equal to the number of hours worked on the case multiplied by the appropriate hourly fees. Counsel shall keep a record of all time spent in representation of the Client. As an example, should Client accept a settlement offer encompassing a job offer and a cash payment, then Counsel's fee shall be the applicable percentage of the cash payment, or the applicable hourly rate fee for all time expended by Counsel and their paralegal(s), whichever is greater.

     (iv)   <u>Court Awarded Fees</u>: It is understood and agreed that, in the event the Court should award attorney's fees in favor of the Client, the parties shall then multiply the number of hours worked on the case by Counsel by the appropriate hourly fee at Counsel's standard rates (not discounted).

     (v) <u>Settlement or Satisfaction of Judgment on Retrial</u>: This contract does not include any services performed after filing or responding to post-trial motions; therefore, Client and Counsel must agree upon additional fee terms before Counsel takes or responds to an appeal with an appellate court or proceeds with a new trial. If such terms cannot be agreed to, Client agrees that Counsel may withdraw from further representation but will retain a lien on the recovery of plaintiff to the extent of its fee entitlement as set forth in subparagraphs (i), (ii) and (iii) above.

     (vi) <u>Structured Settlement</u>: If a settlement is made in the form of a structured settlement, Counsel shall receive their fee as set forth above in subparagraphs (i), (ii) and (iii); however, in such an event, the phrase "all monies received" as used above in subparagraph (i) shall be the present value, as determined by independent actuary selected by both the Client and counsel, of the entire structured settlement package.

     (vii) <u>No Settlement or Satisfaction of Judgment</u>: If neither a settlement is made nor a judgment is satisfied at least in part, Counsel shall not receive a professional fee other than the Flat Fee stated above.

     (b) <u>Expenses</u>: Client agrees to pay all necessary litigation costs and expenses incurred in connection with such claims in any suit filed, including those costs and expenses related to investigation, filing fees, preparation for trial, trial, and post-trial motions. These expenses include, but are not limited to, such items as hospital and medical records, photographs, filing fees, costs of service, costs of depositions, summons and subpoenas, court reporting, exhibits, investigation expenses, expert witness fees (including fees for testimony and conferences), xeroxing, long-distance telephone charges, travel expenses, telecopies, delivery charges and the

2

like.  On request, an accounting will be made for all disbursements made on Client's behalf. Any expense payments made by Client or Counsel shall be reimbursed to the party paying the same before a division of the settlement or award occurs.   Counsel may request, at any time, an expense retainer be provided by Client and Client agrees to furnish the same to Counsel.

## ATTORNEY'S LIEN

5.  The parties further agree that Counsel shall have a lien for the amount of the attorneys fees and unpaid costs and expenses against said claim, case and cause of action, or the proceeds thereof, and against any judgment secured, and against all monies or other compensation which may be due for damages.

## OTHER

6.       If Client shall fail to pay any non-contingent fees or expenses when billed or shall fail to cooperate with Counsel in the preparation and prosecution of Client's legal matter, Counsel may withdraw from representation of Client and Client agrees to pay a reasonable fee for the work performed to the date of withdrawal.  Failure of the Client to pay such non-contingent fees or expenses shall be deemed to be a request by the Client that Counsel withdraw from further representation of the Client.  Counsel may withdraw at any time as ethically possible upon giving reasonable notice to the Client.  Client agrees Counsel shall only be required to maintain his file materials in the case for a period of three years.

7.  Client understands that Counsel makes no promise or guarantee of any kind as to any eventual settlement, judgment or other disposition of this case.

8.  Except in cases of Counsel's misconduct, Client agrees not to settle, compromise or litigate the claims covered by the Agreement or to retain any other attorney to handle said claims, without first paying said attorneys the costs, expenses and fees above specified.  Client agrees that Counsel may associate with such other attorneys as Counsel deems necessary.

COUNSEL:

_____

CLIENT:

_____

3

# EXHIBIT I



1501 WESTPORT ROAD
KANSAS CITY, MISSOURI 64111
TEL: 816.875.3332

## CONTINGENT FEE AGREEMENT

**Ganiyu Jaiyeola,** hereafter "Client" or "you," hereby employs the law firm HKM Employment Attorneys LLP, hereafter "Attorneys" or "we," on the following terms and conditions, to pursue relief against **Garmin International** and related individuals and entities ("Defendants") arising from the conduct of individuals at the company. Attorneys and Client now agree on the following terms and conditions for this representation.

Because this representation includes an employment claim, based on federal and state statutes, Client may be entitled to the recovery of reasonable attorneys' fees, costs, and legal expenses in addition to compensatory damages. For many employment cases, the attorneys' fees can exceed the compensatory damages sustained by the Client and, at times, the fees amount will exceed the damages by a substantial amount. Client has informed Attorneys that Client is not able to pay for attorneys' services on an hourly fee-for-services, on-going basis, and can only proceed with the representation if the fees are contingent and are to be paid from the financial recovery in the case. Attorneys agree to represent Client on a contingent basis, and Client agrees that Attorneys will be paid on a contingency (i.e., that Attorneys will not be paid for their work and time unless there is a recovery by settlement and/or verdict/judgment).

Accordingly, Client shall pay no attorneys' fees unless there is a recovery. The contingent attorneys' fees shall be withheld and paid out of funds recovered in this matter. Although the fee for attorneys' time and work is contingent, payment and obligation to pay to Attorneys any amounts disbursed or paid by Attorneys for litigation expenses and costs is not contingent upon recovery. Client is always obligated to pay the costs or disbursements advanced, as set forth below.

However, Client is legally responsible for all costs incurred in the defense of a claim should defendant prevail. Costs include, but are not limited to, copying costs, deposition costs and witness fees.

Client gives permission to Attorney to advance the payment of costs and expenses at Attorney's discretion. Client may reimburse Attorney as costs and expenses are incurred or, if Client reimburses Attorney upon settlement, Client agrees that such costs and expenses advanced shall be paid out of Client's portion of the settlement proceeds after payment of Attorneys' contingent fee described below. Costs and/or expenses include, but are not limited to, expert witness fees, filing fees, copy, scanning and facsimile expenses, postage, court reporter fees, travel expenses, expenses incurred attending relevant hearings, rental charges for relevant equipment usage, or the like.

Client agrees that HKM may, in its sole discretion, associate with other attorneys in the prosecution of Client's claims. Client authorizes the sharing of Client's file materials for such

2 | Contingent Fee Agreement

purposes. Client understands that the terms of this Agreement apply to other attorneys associate with Client's claims. Client understands and agrees that HKM may share the gross attorneys' fees set forth herein with any associated attorneys, including local counsel, co-counsel or the like. Any and all attorneys with whom HKM associates will assume and maintain joint responsibility for clients' representation, along with HKM. Client understands and agrees that HKM and their associated counsel will share the total attorneys' fees set forth below as they agree between themselves. Client approves the participation by all associated counsel and approves of the sharing of attorneys' fees, as agreed to between the attorneys.

**IT IS EXPRESSLY AGREED BY CLIENT THAT ATTORNEY <u>MAY</u> WITHDRAW FROM FURTHER REPRESENTATION IN THE EVENT THAT THE MISSOURI COMMISSION ON HUMAN RIGHTS, EQUAL EMPLOYMENT OPPORTUNITY COUNSEL OR SIMILAR STATE OR FEDERAL AGENCY ISSUES A "NO CAUSE" FINDING.**

**IT IS EXPRESSLY AGREED BY CLIENT THAT ATTORNEY <u>MAY</u> WITHDRAW FROM FURTHER REPRESENTATION IN THE EVENT THAT THE MATTER IS SUBJECT TO BINDING ARBITRATION.**

1.  **Attorneys' Fees**. Client agrees to pay Attorneys for legal services performed and time spent by Attorneys and necessary legal staff through a contingent fee. The fee is contingent (or conditioned) on recovery of funds (or reinstatement) from the opposing party or parties by way of settlement or after verdict/judgment. The contingency attorneys' fee is only due and payable from monetary recoveries from the opposing party, defendant employer, or other responsible parties. It is agreed that the attorneys are to be paid as follows:

    **The greater of (1) or (2):**

    **(1)** 40% of the "gross recovery" where only negotiations occur, and if no lawsuit is filed;
    42.5% of the "gross recovery" that results after a lawsuit is filed,
    45% if the case resolves within 120 days (or any time after) of trial; or
    50% of the "gross recovery" once jury selection at trial has commenced.

    **(2)** Court awarded attorneys' fees, if separately awarded and thereafter actually paid by defendant;

    The term "gross recovery" means total amount recover for client, whether paid by the defendant, insurers, agents, or judgment including any court-awarded attorneys' fees, prior to application of expenses or costs, or debts or encumbrances of any kind.

    The fees quoted DO NOT obligate attorneys to handle appeals, counterclaims and cross-claims and a new agreement will be necessary to cover appeals, counterclaims and cross-claims.

    In civil rights actions, client expressly acknowledges that if attorney is awarded attorney's fees, such award does not interfere with the obligations of client as set forth in this contract.

3 | Contingent Fee Agreement

Attorney reserves the right to withdraw from representation if Client fails to cooperate or follow Attorneys' advice on a material matter, or if any fact of circumstance arises or is discovered that would, in Attorney's view, render continuing representation unlawful or unethical.

It is understood and agreed that the Attorneys are willing to risk their time, efforts, and resources in an attempt to secure substantial justice for Client in exchange for the contingent fee set forth above.

If there is no money received on Client's behalf by settlement or judgment, the Attorneys shall receive nothing for their time and services, but shall be reimbursed for expenses and costs advanced, except if the Attorneys are discharged by the Client or the claim is abandoned.

It is common in these types of cases for the attorneys on the other side to look into your personal life, such as social media (including postings, photographs, tags, texts, emails, tweets, etc.) and distort and twist your information by claiming that your injuries are exaggerated.

2.    **Costs**.  Regardless of whether there is any recovery by settlement or judgment, **Client agrees to pay the pre-trial and trial expenses required to properly investigate and prepare Client's case**.  These expenses may include, but are not limited to:  court filing fees, process services fees, expert witness fees, expert consulting fees, charges for medical charts and reports, reasonable mileage and travel expenses, deposition expenses, investigation fees, legal research (e.g., Westlaw) fees, and other reasonable or necessary expenses incurred by Attorneys on Client's behalf.  Attorneys reserve the right to use an outside vendor to assist with printing and organizing documents, and Clients are charged for these outside vendor costs.  There is no extra charge to clients for our use of the firm's internal work product retrieval system.  Clients are charged for computer-assisted research from outside services to the extent that research charges attributable to a specific client matter can be allocated from the firm's flat-fee paid for online research resources such as Westlaw and LEXIS.  Even though Attorneys may advance costs, Client understands that Client is liable for those costs.  Client further agrees that any costs incurred by Attorney for which Client has not paid will be deducted from the proceeds of any recovery after calculation of Attorneys' fee.  Attorneys reserve the right to require Client to pay directly any costs incurred during Attorneys' handling of Client's case.

3.    **Investigation**.  Client understands that Attorneys will investigate Client's claims, and if Attorneys determine the claim to be lacking in merit or otherwise uneconomic or inappropriate to pursue, Attorneys shall have the right to cancel this agreement, in which case the Client will be responsible only for the costs or expenses incurred by Attorneys and will owe no Attorneys' fee.   Client acknowledges that Attorneys have made no guarantee regarding the outcome of the claim, and any and all expressions by Attorneys are matters of opinion only.

4.    **Authorization for Legal Action**.  Client is not agreeing to file a lawsuit at this time.  Client acknowledges and accepts that the scope of representation may, at the Attorneys' discretion, be limited to making demand for payment and other pre-litigation work. *Attorneys are not obligated to pursue and fully litigate a lawsuit on the claim.*

4 | Contingent Fee Agreement

If the parties agree to pursue a lawsuit or arbitration claim, Attorneys shall have the exclusive right to take all legal steps deemed necessary and proper to investigate, prepare, and present Client's claims for settlement and/or for trial, including the right to hire any expert consultants or expert witnesses who, in the judgment of the Attorneys, are required to properly prepare Client's claims. Client will be responsible for the costs of retaining and using any experts.

     5.    **Settlement of Claims.** Attorneys agree not to compromise or settle Client's claim without Client's approval.

     6.    **Identity of Client.** You confirm that we are being engaged by you, and not any of your family members, or any other entity or person unless Attorneys separately and explicitly undertake such representation in writing.

     7.    **Conflicts of Interest.** We have performed a search of our other clients to determine whether representing you might create a potential conflict of interest with any other clients. That check was done using your name and any other names you gave us. You agree to inform us immediately of all the parties or entities that you believe will be adverse (either now or in the future) to you in this matter.

     8.    **Client's Power of Attorney.** Client gives the Attorneys Client's Power of Attorney with respect to all matters pertaining to this case, including power to execute for Client on Client's behalf all pleadings, instruments, and verifications in the case, and all checks, drafts, releases, dismissals, deposits, and orders to the same extent as Client would act in Client's own behalf.

     9.    **Termination of Services.** In accordance with this Agreement, we retain the right to cease performing legal services and to terminate our legal representation for any reason consistent with ethical rules, including conflicts of interest or your failure to pay our legal fees and expenses when due. Our representation in any matter will also cease on completion of our work on that matter unless you ask us to perform additional work that we agree in writing to undertake. Performing additional services for you on the same or any other matter is subject to our mutual concurrence and clearance of conflicts, if any, and to an agreement upon the fees, costs, and expenses to be paid. We are unable to assure you that past, present, and future matters for other clients will not conflict us out of additional matters you might later ask us to undertake. On completion of a matter, we will close our files and, absent a specific written undertaking to do so, will not thereafter be obligated to docket milestones, make filings, pursue appeals, take other steps on your behalf on the matter, or monitor or advise you with respect to changes in the law or circumstances that might bear upon or adversely affect the completed matter. If you wish to have us return material from your files after the conclusion of a particular matter, we will provide you such material at your request and expense.

     10.    **Email Communication Disclaimer.** Although email is an efficient method for many communications, it can also be delayed in transit or otherwise missed (e.g., blocked by our anti-spam software). You cannot assume that each email message copied or sent to us was actually opened and read unless you receive a non-automated reply message indicating that he or she read the substance of your message. Further, if you are an employee adverse to your employer, please

5 | Contingent Fee Agreement

refrain from contacting us with your work email, as your employer may be able to view these emails.

11.  **Discharge of Attorneys.**  Client retains the right to abandon his/her claim at any time or discharge the attorneys at any time.  If Client, however, abandons his/her claim or discharges the attorney, Client hereby grants Attorney a lien on Client's claim and causes of action and any proceeds or judgments or settlements under it in an amount equal to the sums incurred as fees, costs, and/or expenses provided in this Agreement to the extent permitted by applicable law.

12.  **Fees for Collection of Settlement/Judgment Amount.**  The calculation of attorneys' fees set forth in this Agreement does not include time and work by Attorneys which may be required in post-verdict proceedings to collect on a judgment against the adverse party or parties.  If a final judgment or settlement amount in favor of Client is not paid within a reasonable time by the judgment debtor, legal services incurred for collection work by Attorneys shall be charged to Client at the then-standard hourly rates, plus costs and expenses.  If the collection work is performed by a collection agency or another attorney, instead of by us, Client will be responsible for those collection fees and costs as well.

13.  **Personnel.**  Client hereby authorizes HKM Employment Attorneys LLP to utilize the services of partner attorneys, associate attorneys, contract attorneys, paralegals and/or legal staff to assist in this matter and as appropriate in each case.  The billing rates for these services are listed above, in section 1.

14.  **Withdrawal by Attorneys.**  Attorneys have the right to withdraw from representation at any time if (a) withdrawal can be accomplished without material adverse effect on the interests of the Client; (b) the Client persists in a course of action involving the lawyer's services that the lawyer reasonably believes is criminal or fraudulent; (c) the Client has used the lawyer's services to perpetrate a crime or fraud; (d) the Client insists upon taking action that the lawyer considers repugnant or with which the lawyer has a fundamental disagreement; (e) the Client fails substantially to fulfill an obligation to the lawyer regarding the lawyer's services and has been given reasonable warning that the lawyer will withdraw unless the obligation is fulfilled; (f) the representation will result in an unreasonable financial burden on the lawyer or has been rendered unreasonably difficult by the Client; or (g) other good cause for withdrawal exists.  If Attorney withdraws for reason 15(a), Attorneys shall relinquish any right to any fees.  If Attorney withdraws for any reason other than 15(a), Client hereby grants a lien on Client's claim and causes of action and any proceeds of judgments or settlements under it in an amount equal to the sums incurred as fees, costs, and expenses provided in this Agreement.

15.  **Tax Advice.**  Any recovery in this representation (through negotiation, lawsuit, or arbitration), by either you or your attorneys, may, and in most cases likely will, have tax consequences.  Attorneys, however, are not tax attorneys, and we do not provide tax advice.  If you have any questions about the tax ramifications of any monetary award as a result of this lawsuit, we recommend that you contact a tax attorney or accountant.

16.  **Preservation of Evidence.**  You agree that you will preserve, maintain, and protect all evidence (electronic, hard copy, tangible, or otherwise) until your matter is closed.  This means

6 | Contingent Fee Agreement

that you will not destroy or alter documents that may be relevant to your matter; you will not delete email communications, text messages, photographic messages, voice messages, or other communications between you, your employer, or former or current employees of employer; you will preserve and protect all computers, pagers, cellular telephones, PDA's, tablets, and other devices until your matter is closed.

17.   **Social Media.** You agree to disclose to us any website on which you currently maintain, or previously maintained, a social media presence, such as Facebook, Twitter, LinkedIn, or MySpace. You agree not to disclose or discuss any aspect of your matter on any social media site.

18.   **Fee Arbitration.**   With the exception of malpractice claims, in the event a controversy arises with respect to this Agreement, jurisdiction and venue shall lie only in King County, Washington. All such controversies and disputes shall be subject to binding arbitration before the Judicial Dispute Resolution LLC in Seattle, Washington ("JDR"). The prevailing party in such arbitration shall be entitled to costs (including the arbitration costs and arbitrator fees) and reasonable attorneys' fees.

19.   **Other Counsel.**   You may consult independent counsel to advise you regarding these documents, and we encourage you to do so if you like. Also, you retain the right to consult with independent counsel at any time while we represent you. However, we are not responsible for any advice an independent counsel may give you, and such consultation will be entirely at your expense.

20.   **Binding Agreement.**   Client binds Client's heirs, executors, and legal representatives to the terms and conditions set forth in this contract to the extent permissible by law.

7 | Contingent Fee Agreement

**Client has read, understands, and agrees to the terms of this Agreement.**

DATED: _____     _____
                                   Ganiyu Jaiyeola

Address:_____

City, State and Zip:_____

Email: _____

Phone: _____

DOB: _____

SSN: _____

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

GANIYU AYINLA JAIYEOLA.,            )
                                    )
                Plaintiff,          )
                                    )
v.                                  )        Case No. 20-2068-JWB
                                    )
GARMIN INTERNATIONAL, INC.,         )
                                    )
                                    )
                Defendant.          )

## ORDER

    Plaintiff, proceeding pro se, brings this failure-to-hire employment discrimination case against defendant.[1]  He has moved to proceed with this action *in forma pauperis* (ECF No. 3) and has requested appointment of counsel (ECF No. 4).  As discussed below, the motion to proceed *in forma pauperis* is granted.  The court respectfully denies plaintiff's motion for appointment of counsel.

Motion to Proceed In Forma Pauperis

    Upon filing this action, plaintiff moved to proceed *in forma pauperis*.  Section 1915 of Title 28 of the United States Code allows the court to authorize the commencement of a civil action "without the prepayment of fees or security therefor, by a person who submits an affidavit [asserting] . . . the person is unable to pay such fees or give security therefor."[2]

---

[1] ECF No. 1.

[2] 28 U.S.C. § 1915(a)(1).

1

To succeed on a motion to proceed *in forma pauperis*, the movant must show a financial inability to pay the required filing fees.[3]  "One need not be 'absolutely destitute' to proceed [*in forma pauperis*], but [*in forma pauperis*] need not be granted where one can pay or give security for the costs 'and still be able to provide himself and dependents with the necessities of life.'"[4]  "Proceeding *in forma pauperis* in a civil case 'is a privilege, not a right—fundamental or otherwise.'"[5]  The decision to grant or deny *in-forma-pauperis* status under § 1915 lies within the "wide discretion" of the trial court.[6]

Based on the information contained in the affidavit accompanying his motion, plaintiff has shown a financial inability to pay the required filing fee.  His affidavit indicates that his monthly expenses, which total approximately $4,000, exceed his monthly income, which totals approximately $2,300.[7]  His application for leave to file and continue this action without payment of fees or costs (ECF No. 3) is hereby granted.  If not previously provided, plaintiff is directed to provide the address of defendant so that the Clerk of the Court may proceed with service of process.  The Clerk shall issue summons to the U.S. Marshal or Deputy Marshal, who are appointed pursuant to Fed. R. Civ. P. 4(c)(3).

---

[3] *United States v Garcia*, 164 Fed. App'x 785, 786 n.1 (10th Cir. 2006).

[4] *Lewis v. Center Market*, 378 F. App'x 780, 785 (10th Cir. 2010) (quoting *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339 (1948)).

[5] *Green v. Suthers*, No. 99-1447, 208 F.3d 226 (table), 2000 WL 309268, at *2 (10th Cir. Mar. 27, 2000) (quoting *White v. Colo.*, 157 F.3d 1226, 1233 (10th Cir. 1998)).

[6] *Id.*

[7] ECF No. 3-1.

2

Appointment of Counsel

In civil actions such as this one, there is no constitutional right to appointed counsel.[8] However, "under 28 U.S.C. § 1915(e)(1), a district court has discretion to request counsel to represent an indigent party in a civil case."[9]  The decision to appoint counsel lies solely in the court's discretion, which should be based on a determination that the circumstances are such that a denial of counsel would be fundamentally unfair.[10]  "In determining whether to appoint counsel, the district court should consider a variety of factors, including the merits of the litigant's claims, the nature of the factual issues raised in the claims, the litigant's ability to present his claims, and the complexity of the legal issues raised by the claims."[11]  The court also considers the efforts made by the litigant to retain his own counsel.[12]

---

[8] *Swafford v. Asture*, No. 12-1417-SAC, 2012 WL 5512038, at *1 (D. Kan. Nov. 14, 2012) (citing *Carper v. DeLand*, 54 F.3d 613, 616 (10th Cir. 1995) and *Durre v. Dempsey*, 869 F.2d 543, 547 (10th Cir. 1989)).

[9] *Commodity Futures Trading Comm'n v. Brockbank*, 316 F. App'x. 707, 712 (10th Cir. 2008) (upholding denial of defendant's motions for counsel).

[10] *Long v. Shillinger*, 927 F.2d 525, 527 (10th Cir. 1991).

[11] *Id.*

[12] *Lister v. City of Wichita, Kan.*, 666 F. App'x 709, 713 (10th Cir. 2016) (quoting *Castner v. Colo. Springs Cablevision*, 979 F.2d 1417, 1420 (10th Cir. 1992)); *Tilmon v. Polo Ralph Lauren Factory Store*, No. 17-2383-JAR, 2017 WL 3503678, at *1 (D. Kan. July 6, 2017).

3

Plaintiff's motion lists six attorneys with whom he has attempted to confer.[13]  Two of the attorneys offered to represent him, but plaintiff is unable to afford their fees.[14]  While it is clear from plaintiff's motion that he has been diligent in his efforts to find an attorney to represent him, other factors weigh against appointing counsel.

The factual and legal issues in this case are not extraordinarily complex.  The papers prepared and filed by plaintiff indicate he is capable of presenting this case without the aid of counsel, particularly given the liberal standards governing pro se litigants.  Indeed, based on the record so far, the court finds plaintiff to be an especially competent individual who is able to gather and present facts central to his case.  Although he is not trained as an attorney, and while an attorney might present this case more effectively, this fact alone does not warrant appointment of counsel.

The court has no doubt that the district judge assigned to this case will have little trouble discerning the applicable law.  It does not appear that this case presents any atypical or complex legal issues.  Finally, at this stage, the court is unable to determine whether plaintiff's claims are particularly meritorious.  In the end, while it is a close call, the court concludes that this is not a case in which justice requires the appointment of counsel.  If plaintiff devotes sufficient efforts to presenting his case, the court is certain that he can do so adequately without the aid of counsel.  Plaintiff's request for appointment of counsel is therefore denied, but without prejudice to the later refiling of such a motion.

---

[13] ECF No. 4.

[14] ECF No. 4-4.

4

O:\ORDERS\20-2068-JWB-3,4.DOCX

Plaintiff is hereby informed that, within 14 days after he is served with a copy of this order, he may, pursuant to Fed. R. Civ. P. 72 and D. Kan. Rule 72.1.4(a), file written objections to this order by filing a motion requesting that the presiding U.S. district judge review this order.  A party must file any objections within the 14-day period if the party wants to have appellate review of this order.

IT IS SO ORDERED.

February 20, 2020, at Kansas City, Kansas.

 s/ James P. O'Hara
James P. O'Hara
U. S. Magistrate Judge

5

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **GANIYU AYINLA JAIYEOLA,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Case No. 2:20-cv-2068-JWB-JPO** |
| | ) | |
| **GARMIN INTERNATIONAL, INC.,** | ) | |
| | ) | |
| Defendant. | ) | |

### DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT

COMES NOW Defendant Garmin International, Inc., by and through its attorneys, and for its answer to Plaintiff's Complaint, hereby states:

1.     Plaintiff Ganiyu Jaiyeola ("Jaiyeola") alleges Defendant Garmin International, Inc. ("Garmin"), by failing to hire Plaintiff, violated Plaintiffs rights under Title VII of the Civil Rights Act of 1964, as amended ("Title VII" — Race (African American), Color (Black), and National Origin (Nigerian)), 29 U.S.C. § 621, et seq. (Age Discrimination in Employment Act, as amended ("ADEA"), 42 U.S.C. §12112(b)(4) (Disability Association Discrimination - Title I of the Americans with Disabilities Act ("ADA")), The Kansas Age Discrimination in Employment Act[1] (Chapter 44, Art. 11, K.S.A., and specifically within the meaning of subsection (a)(1) of Section 44-1113 of said Act - "KADEA") and 42 U.S.C. § 1983 (Denial of Due Process — "Due Process"). Garmin is also liable for discrimination under Section 703(a) of Title VII because the fact that Jaiyeola was not

---

[1] See http ://www.kslegislature.org/li/b2019_20/statute/044_000_0000_chapter/044_011_0000 article/044 011 0013 section/044 011 0013 k/

hired by Garmin was based on the influence of a Garmin employee with a discriminatory motive; Subordinate Bias Liability ("cat's paw" theory of liability)[2].

**ANSWER:   The allegations in Paragraph 1 of the Complaint call for a legal conclusion, to which no response is required. To the extent a response is required, Defendant denies the same.  Moreover, to the extent the allegations contained in this paragraph in any way imply that Plaintiff has been wronged, injured, or damaged as a result of Defendant's alleged actions or inactions, such implications are hereby denied.**

2.      In November 2019, Garmin failed to hire Jaiyeola, then age 64, for the "Advanced Materials Engineer - Metals-19001CL" position he had applied and interviewed for. On July 25, 2019, Jaiyeola had a joint "Technical Phone Interview" with Mr. John Mudd (Mechanical Engineering Manager - Hiring Manager) and Mr. Jared Klein (Mechanical Engineering Manager). Both Garmin Managers remarked that Jaiyeola had highly pertinent qualifications and experience for the Garmin job under consideration. Indeed, the next day (July 26, 2019), Garmin invited Jaiyeola for an on-site interview at Garmin Headquarters/Manufacturing Center in Olathe, Kansas.

**ANSWER:   Defendant is without knowledge or information sufficient to form a belief as Plaintiff's age and therefore, denies the same.  Upon information and belief, Defendant further admits that the interviewers during the July 25, 2019 interview made comments regarding Plaintiff's experience and qualifications; however, Defendant is without knowledge or information sufficient to form a belief as to specific statements made by the interviewers and therefore, denies the same.  Defendant admits the remaining allegations in Paragraph 2 of the Complaint.**

---

[2] See *Equal Employment Opportunity Commission v. BCI Coca-Cola Bottling Company of Los Angeles,* 450 F. 3d 476 (10th Cir. 2006)

3.     A recent diversity rating report on Garmin concluded that "Diverse employees at Garmin International score the company 64/100 across various culture categories, placing Garmin International in the bottom 45% of companies in the United States with 10,000+ Employees for Comparably's diversity score. The Diversity score provides insights into how diverse employees feel and rate their work experience at Garmin International across various culture dimensions."[3]

**ANSWER:    Defendant denies the allegations in Paragraph 3 of the Complaint.**

**Parties**

4.     Plaintiff Jaiyeola was born on June 22, 1955 in Nigeria and has been 64 years old or older at all pertinent times referenced herein. He is Black, his national origin is Nigerian, he is a naturalized citizen of the United States, he is a current resident of Grand Rapids, Kent County, Michigan, and he has resided in Michigan at all pertinent times.

**ANSWER:    Upon information and belief, Garmin admits that Plaintiff is Black and that he resided in Michigan at the time he applied for a position with Defendant.  Defendant is without knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 4 of the Complaint and therefore, denies the same.**

5.     Defendant Garmin (headquartered in Olathe, Kansas) is an American multinational technology company that is into GPS navigation and wearable technology for diverse markets including automotive, aviation, marine, fitness, outdoor recreation, tracking, and mobile apps.

**ANSWER:    Defendant admits the allegations in Paragraph 5 of the Complaint.**

---

[3] See https://www.comparably.com/companies/garmin-international/diversity (as it appeared on February 12, 2020)

3

## Nature of Action

6.      This failure-to-hire action seeks redress for Defendant's violation of Plaintiffs rights under Title VII, ADEA, KADEA, and ADA. Defendant Garmin is also liable for discrimination under Section 703(a) of Title VII because the fact that Jaiyeola was not hired by Garmin was based on the influence of a Garmin employee with a discriminatory motive; Subordinate Bias Liability ("cat's paw" theory of liability)[4]. Defendant's denial of Due Process to Plaintiff is also an issue in this action.

**ANSWER:    The allegations in Paragraph 6 of the Complaint call for a legal conclusion, to which no response is required. To the extent a response is required, Defendant denies the same.  Moreover, to the extent the allegations contained in this paragraph in any way imply that Plaintiff has been wronged, injured, or damaged as a result of Defendant's alleged actions or inactions, such implications are hereby denied.**

## Jurisdictional Basis

7.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, 29 U.S.C. § 626(b)-(c), and 29 U.S.C. § 216(b).

**ANSWER:    The allegations in Paragraph 7 of the Complaint call for a legal conclusion, to which no response is required. To the extent a response is required, Defendant denies the same.**

8.      This Court has subject matter jurisdiction (over Title VII, ADEA, KADEA, ADA, and Due Process claims) pursuant to 28 U.S.C. § 1332(a) as the amount in controversy is greater than $75,000, exclusive of interest and costs, and is between citizens of different states.

---

[4] See *Equal Employment Opportunity Commission v. BCI Coca-Cola Bottling Company of Los Angeles,*450 F. 3d 476 (10th Cir. 2006)

4

**ANSWER:   The allegations in Paragraph 8 of the Complaint call for a legal conclusion, to which no response is required. To the extent a response is required, Defendant denies the same.**

9.     This Court has supplemental jurisdiction over Jaiyeola's state law claim pursuant to 28 U.S.C. § 1367, as that claim arises out of the same operative facts as Jaiyeola's other claim and, together, they form part of the same case or controversy.

**ANSWER:   The allegations in Paragraph 9 of the Complaint call for a legal conclusion, to which no response is required. To the extent a response is required, Defendant denies the same.**

10.     Defendant Garmin is located within this district. Accordingly, as the acts complained of herein took place within this District, the venue is proper in this district under 28 U.S.C. §1391.

**ANSWER:   Defendant admits this Court is a proper venue for this action.  To the extent the allegations contained in Paragraph 10 in any way imply that Plaintiff has been wronged, injured, or damaged as a result of Defendant's alleged actions or inactions, such implications are hereby denied.**

11.     This Court has personal jurisdiction over the Defendant because it engages in continuous and systematic business contacts within the State of Kansas and maintains a substantial physical presence in this State, including the operation of its corporate headquarters in Olathe, Kansas.

**ANSWER:   Defendant admits the allegations in Paragraph 11 of the Complaint.**

**Administrative remedies have been exhausted**

12.     Jaiyeola incorporates by reference the above paragraphs as though set forth separately herein.

**ANSWER:   Defendant incorporates by reference its responses to Paragraphs 1-11 of Plaintiff's Complaint.**

13.     Jaiyeola filed a Charge of Discrimination (No. 563-2020-00499) with the U.S. Equal Employment Opportunity Commission ("EEOC"), for Title VII, ADEA, and ADA Association Discrimination on November 26, 2019. See Ex A.

**ANSWER:   Upon information and belief, Defendant admits that Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) on November 26, 2019.  The remaining allegations in Paragraph 13 of the Complaint call for a legal conclusion to which no response is required.  To the extent a response is required, Defendant denies the same.**

14.     Jaiyeola filed another Charge of Discrimination (No. 41705-20) with the Kansas Human Rights Commission ("KHRC"), for Title VII, ADEA, KADEA, and ADA Association Discrimination on December 13, 2019. See Ex B.

**ANSWER:   Upon information and belief, Defendant admits that Plaintiff filed a charge of discrimination with the Kansas Human Rights Commission (KHRC) on December 13, 2019.  The remaining allegations in Paragraph 14 of the Complaint call for a legal conclusion to which no response is required.  To the extent a response is required, Defendant denies the same.**

15.     EEOC issued Jaiyeola a Notice of his Right-to-Sue for Charge No. 563-202000499 on December 4, 2019. See C.

**ANSWER:   Upon information and belief, Defendant admits the allegations in Paragraph 15 of the Complaint.**

16.     KHRC agreed with the determination of the EEOC. See Ex D.

**ANSWER:   Upon information and belief, Defendant admits the allegations in Paragraph 16 of the Complaint.**

17.     This complaint has been filed within 90 days of Jaiyeola receiving EEOC's Notice of Right-to-Sue.

**ANSWER:   Upon information and belief, Defendant admits the allegations in Paragraph 17 of the Complaint.**

18.     Accordingly, Jaiyeola has met all the administrative prerequisites prior to filing this failure-to-hire action.

**ANSWER:   The allegations in Paragraph 18 of the Complaint call for a legal conclusion, to which no response is required. To the extent a response is required, Defendant denies the same.**

### Facts Common to All Counts

19.     Jaiyeola has the following educational qualifications: 1.) a 1979 B.Sc. in Chemistry (Biochemistry Minor) from the University of Ibadan, Nigeria; 2.) a 1985 Masters in Inorganic Chemistry (Bioinorganic) from the University of Ibadan, Nigeria; 3.) a 1991 Masters in Inorganic Chemistry (Solid State Inorganic) from the University of Connecticut, Storrs; 4.) a 1995 Ph.D. in Materials Science from the University of Connecticut, Storrs; and 5.) a Masters in Business Administration (Major: Organization and Management, Minor: Marketing) from Syracuse University, Syracuse, New York. Since 1995, Jaiyeola has had extensive work experience in Materials Engineer positions with many companies including Element Materials Technology, Stryker, Boeing, Honeywell, and Carrier Corporation.

**ANSWER:    Defendant is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 19 of the Complaint and therefore, denies the same.**

20.    Jaiyeola saw an advertisement for the position of "Advanced Materials Engineer - Metals-19001CL" at Garmin International on a Job Board ([www.indeed.com](www.indeed.com)) and he applied on July 3, 2019. See Ex E and Ex F.

**ANSWER:    Defendant admits that Plaintiff applied for the position of Advanced Materials Engineer – Plastics and Metals (19001CL) on July 3, 2019.  Defendant is without knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 20 of the Complaint and therefore, denies the same.  To the extent Plaintiff attempts to reference documents he has attached and labeled as Exhibits E and F to the Complaint, Defendant denies any improper attempted inferences or allegations by Plaintiff.**

21.    Jaiyeola applied with his resume and cover letter. Jaiyeola's resume and cover letter indicate extensive Materials Engineering experience with a wide variety of metals including aluminum metals. See Ex G and Ex H.

**ANSWER:    Defendant admits that Plaintiff submitted a resume and cover letter along with his online application and that both documents discussed his experience. Defendant denies any remaining allegations in Paragraph 21 of the Complaint. To the extent Plaintiff attempts to reference documents he has attached and labeled as Exhibits G and H to the Complaint, Defendant denies any improper attempted inferences or allegations by Plaintiff.**

22.    Jaiyeola had Human Resources ("HR") phone interview with Ms. Michelle Cormack (Senior Technical Recruiter) on July 23, 2019. See Ex I.

**ANSWER:     Defendant admits the allegations in Paragraph 22 of the Complaint.  To the extent Plaintiff attempts to reference a document he has attached and labeled as Exhibit I to the Complaint, Defendant denies any attempted improper inferences or allegations by Plaintiff.**

23.     On July 25, 2019, Jaiyeola had a joint "Technical Phone Interview" with Mr. John Mudd (Mechanical Engineering Manager - Hiring Manager) and Mr. Jared Klein (Mechanical Engineering Manager). See Ex J.

**ANSWER:     Defendant admits the allegations in Paragraph 23 of the Complaint.  To the extent Plaintiff attempts to reference a document he has attached and labeled as Exhibit J to the Complaint, Defendant denies any attempted improper inferences or allegations by Plaintiff.**

24.     On July 26, 2019 (a day after the "Technical Phone Interview" on July 25, 2019), Jaiyeola received an invitation for an on-site interview (at Garmin Headquarters in Olathe, Kansas) from Mr. Evan Northup (Garmin's HR Coordinator). In the electronic mail invitation, one of the questions that Northup asked was the following: "What is your date of birth?". Jaiyeola replied and provided the following answer: "What is your date of birth?: [sic] See Ex K.

**ANSWER:     Defendant admits the allegations in Paragraph 24 of the Complaint. Defendant further states that Plaintiff was told by Mr. Northrup in the July 26, 2019 communication that he needed information, including Plaintiff's date of birth, in order to book a plane ticket for Plaintiff's visit to Defendant. To the extent Plaintiff attempts to reference a document he has attached and labeled as Exhibit J to the Complaint, Defendant denies any attempted improper inferences or allegations by Plaintiff.**

9

25.     On August 5, 2019, Cormack sent Jaiyeola an "Assignment" for the on-site interview at Garmin Headquarters in Olathe, Kansas. See Ex L. The "Assignment" topic:

"Gold plating is required on a charge/data pin connection to reduce contact resistance. This is a wearable product, and therefore cannot employ nickel in the plating solution. The ideal design utilizes SUS 316 as the base material for the pin to prevent corrosion in the event that the gold plating wears through or is otherwise compromised such that the underlying material is exposed. Propose an ideal process, material, and/or plating specification that would enable a reliable 100μin thick hardened gold layer to be plated onto SUS 316 pin."

**ANSWER:     Defendant admits that Cormack sent Plaintiff an email on August 5, 2019 stating that the hiring team would like Plaintiff to be prepared to discuss the topic indented in Paragraph 25 of the Complaint.  Defendant further admits that the regarding line on the email stated: Garmin: Assignment. Defendant denies the remaining allegations in the Paragraph.  To the extent Plaintiff attempts to reference a document he has attached and labeled as Exhibit L to the Complaint, Defendant denies any attempted improper inferences or allegations by Plaintiff.**

26.     Jaiyeola did an on-site interview at Olathe, Kansas, on August 14, 2019.

**ANSWER:     Defendant admits the allegations in Paragraph 26 of the Complaint.**

27.     Jaiyeola first did HR interview with Cormack. During the interview Cormack made the following statements: "Jeff is John's boss. If Jeff doesn't like you, John will not hire you.".[sic] When Cormack interviewed Jaiyeola, she informed him of the nearby (to Olathe, Kansas) places to live and Jaiyeola informed her that he has a son (6 years old) who has Down Syndrome and that he would want to live in a school district that has facilities for Down Syndrome

students. Cormack told Jaiyeola she has teachers in her family, and she would get the information on nearby school systems that have facilities for Down Syndrome students, and she would send the information to Jaiyeola that interview day or the next (August 14 or 15, 2019). Jaiyeola never heard back from Cormack on that information.

**ANSWER:   Defendant admits that during Plaintiff's onsite visit he first met with Cormack.   Defendant further admits that during their discussion, Plaintiff disclosed to Cormack that he had a disabled son. Defendant denies the remaining allegations in Paragraph 27 of the Complaint.**

28.      Next, Ms. Diane McLendon (Advanced Materials Engineer - Polymers) gave Jaiyeola a tour of Garmin facilities in Olathe. McLendon and Jaiyeola had technical discussions on the job requirements for the position during the tour. In particular, McLendon mentioned that the Engineering group had an urgent need for a suitable aluminum alloy, and Jaiyeola mentioned his extensive experience with material selection of suitable aluminum alloys for different application environments.

**ANSWER:   Upon information and belief, Defendant admits that Plaintiff took a tour of Defendant's facility with McLendon, a Materials Engineer.   Defendant is without knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 28 of the Complaint and therefore, denies the same.**

29.      After the tour, Jaiyeola did technical interviews with 3 separate teams composed of Mudd, Mr. Jeff Minelli (Director of Mechanical Engineering), Garmin Mechanical Engineering Team Leaders, and Garmin Mechanical Engineering Managers. See Ex M.

**ANSWER:   Defendant admits that Plaintiff meet with Mudd, Minelli, and various other members of the department during his onsite visit.   Defendant denies the remaining**

11

**allegations in Paragraph 29 of the Complaint. To the extent Plaintiff attempts to reference a document he has attached and labeled as Exhibit M to the Complaint, Defendant denies any attempted improper inferences or allegations by Plaintiff.**

30.     Mudd was part of the first technical interview team that Jaiyeola faced. Others in this team included Minelli and Mr. Jacob Zeller (Mechanical Engineering Manager Automotive). During the interview, Minelli repeatedly asked Jaiyeola the same question in exactly the same way about aluminum alloys. Jaiyeola was very uncomfortable by the repetition of the question because Jaiyeola had to repeat his answers each time Minelli asked the same question. Minelli didn't argue Jaiyeola's answers or indicated [sic] that he didn't understand Jaiyeola's answers.

**ANSWER:   Defendant admits that Plaintiff met with Mudd, Minelli, and Zeller during his onsite visit.   Defendant denies Plaintiff's allegations related to Minelli's comments/questions in the meeting.   Defendant is without knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 30 of the Complaint and therefore, denies the same.**

31.     During Jaiyeola's technical interview with the second or third interview team, Mudd opened the door to the interview room, stood by the door (he didn't come inside), and informed Jaiyeola (to the hearing of the interviewing team) that he would not be at Jaiyeola's PowerPoint presentation. Mudd did not give any reason why he wasn't going to be at the presentation and the discussion. Jaiyeola was surprised and concerned that Mudd would not attend his presentation and discussion. Jaiyeola was also concerned about the optics Mudd's announcement made to the technical team that was interviewing Jaiyeola at that instant. The

interviewing team heard what Mudd said. Jaiyeola became very uncomfortable for the rest of the team interview and during Jaiyeola's subsequent PowerPoint presentation and discussion.

**ANSWER:   Defendant admits Mudd informed Plaintiff that he would not be able to attend his final meeting during Plaintiff's onsite visit.  Defendant is without knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 31 of the Complaint and therefore, denies the same.**

32.    Immediately after the technical interviews with the 3 teams, Jaiyeola did a PowerPoint presentation on the Garmin "Assignment" (part of the interview requirement) in a conference room and had a discussion on the "Assignment" with a group of Garmin Mechanical Engineering Team Leaders, Garmin Mechanical Engineering Managers, Mechanical Engineers, and McLendon after the presentation. About 10 Engineers were present for the presentation and discussion. Cormack was not present.

**ANSWER:   Defendant admits that during his onsite visit, Plaintiff met with various members of the engineering department and they discussed the topic that was sent to Plaintiff on August 5, 2019.  Defendant further admits that Plaintiff presented a PowerPoint® deck during the discussion.  Defendant is without knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 32 of the Complaint and therefore, denies the same.**

33.    Mudd did not attend Jaiyeola's PowerPoint presentation on the Garmin "Assignment" and he did not participate in the discussion on the "Assignment". Therefore, Mudd did not have a complete and direct information to fairly decide on hiring Jaiyeola for the Garmin position.

**ANSWER:    Defendant admits that Mudd did not attend the discussion between Plaintiff and other members of the Department wherein Plaintiff presented his PowerPoint® deck.  Defendant denies the remainder of the allegations in Paragraph 33 of the Complaint.**

34.    McLendon and one Garmin Engineer saw Jaiyeola to the door after the PowerPoint presentation and discussion. McLendon collected Jaiyeola's visitor's badge at the door.

**ANSWER:    Defendant admits that Plaintiff returned his visitor badge at the conclusion of his onsite visit.  Defendant is without knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 34 of the Complaint and therefore, denies the same.**

35.    On August 15, 2019, Jaiyeola sent a "Thank You" electronic mail to Garmin. See Ex N.

**ANSWER:    Defendant admits the allegations in Paragraph 35 of the Complaint.  To the extent Plaintiff attempts to reference a document he has attached and labeled as Exhibit N to the Complaint, Defendant denies any attempted improper inferences or allegations by Plaintiff.**

36.    On August 22, 2019, Jaiyeola sent an "Update" request electronic mail to Cormack. On August 23, 2019, Cormack replied that "We are still considering you as a candidate, as we look at others as well. So, at this point, no decision has been made. I hope to know more next week!".[sic] Cormack never got back to Jaiyeola on Garmin's "decision". See Ex O.

**ANSWER:    Defendant admits the allegations in Paragraph 36 of the Complaint.  To the extent Plaintiff attempts to reference a document he has attached and labeled as Exhibit**

**O to the Complaint, Defendant denies any attempted improper inferences or allegations by Plaintiff.**

37.     On November 13, 2019 (about 3 months after Jaiyeola's on-site job interview at Olathe), Jaiyeola received an electronic mail from Garmin (from Mr. Michael Risinger) stating that Jaiyeola was not hired for the position of Advanced Materials Engineer - Metals-19001CL at Garmin. Garmin's reasons were "Because there is a high level of emphasis placed on achieving the best match between each candidate and position at Garmin, the hiring team has carefully reviewed the qualifications and skills on your application and information discussed during the interview. Garmin is unable to offer you employment at this time, but please keep in mind that Garmin is a dynamic and growing organization, so it is possible that in the future there may be other career opportunities that better match your qualifications.".[sic] See Ex P.

**ANSWER:   Defendant admits that the quoted language in the Paragraph was included in an email communication sent to Plaintiff on November 13, 2019, by Michael Risinger.  Defendant denies the remaining allegations in Paragraph 37 of the Complaint.  To the extent Plaintiff attempts to reference a document he has attached and labeled as Exhibit P to the Complaint, Defendant denies any attempted improper inferences or allegations by Plaintiff.**

38.     On November 13, 2019 (the same day that Jaiyeola received the job denial electronic mail from Garmin), Jaiyeola visited the Garmin "Jobs" website and noticed that the position of "Advanced Materials Engineer - Metals-19001CL" at Garmin International that he interviewed for was still open.

**ANSWER:    Defendant is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 38 of the Complaint and therefore, denies the same.**

39.    Jaiyeola read Garmin's Equal Employment Opportunity policy statement ("EEO Policy Statement"[5]) at Garmin's website. See Ex Q. The statement, signed by Mr. Cliff Pemble (Garmin's President and CEO), requested that EEO complaints should be directed to Ms. Laurie Minard (Garmin's Vice President of HR and "EEO Coordinator").

**ANSWER:    Defendant admits that its EEO policy is posted on its website and is signed by Defendant's Chief Executive Officer, Cliff Pemble, and that the policy states that individuals can report concerns under the policy to Laurie Minard, Defendant's EEO Coordinator. Defendant is without knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 39 of the Complaint and therefore, denies the same.**

40.    On November 22, 2019, Jaiyeola followed the guidelines in Garmin's EEO statement and filed a complaint (copied to Cormack) with Mudd (See Ex R.) on Garmin's failure to hire him.

**ANSWER:    Defendant admits that on November 22, 2019, Plaintiff emailed a letter to Mudd and cc'd Cormack regarding Defendant's failure to hire him.  Defendant denies the remaining allegations in Paragraph 40 of the Complaint.**

41.    On November 25, 2019, Jaiyeola again followed the guidelines in Garmin's EEO statement and made a phone call to the office Minard to complain about Garmin's job denial. Jaiyeola spoke with Minard's Executive Assistant. The Executive Assistant told Jaiyeola the following: 1.) Mudd notified Minard of Jaiyeola's complaint that morning (November 25, 2019),

---

[5] See https://careers.garmin.com/en-US/

2.) Jaiyeola should send his complaint to Garmin's Legal Department (to the attention of Mr. David Kight), and 3.) Jaiyeola should file his complaint with the Kansas EEOC office.

**ANSWER:   Defendant admits that on November 25, 2019, Plaintiff spoke to Minard's executive assistant who informed Plaintiff that Minard had been advised of his letter to Mudd, that he could send a written complaint to Garmin's legal department (care of David Kight) and that Plaintiff could also file a complaint with the EEOC.  Defendant denies the remaining allegations in Paragraph 41 of the Complaint.**

42.     On November 25, 2019, Jaiyeola filed a complaint with Minard (complaint was electronically mailed to Kight) on Garmin's failure to hire him. See Ex S.

**ANSWER:   Defendant admits the allegations in Paragraph 42 of the Complaint.  To the extent Plaintiff attempts to reference a document he has attached and labeled as Exhibit S to the Complaint, Defendant denies any attempted improper inferences or allegations by Plaintiff.**

43.     On November 26, 2019, Jaiyeola filed a Charge of Discrimination (No. 563-2020-00499) with the EEOC for Title VII, ADEA, and ADA Association Discrimination.

**ANSWER:   Upon information and belief, Defendant admits that Plaintiff filed a charge of discrimination with the EEOC on November 26, 2019.  The remaining allegations in Paragraph 43 of the Complaint call for a legal conclusion to which no response is required. To the extent a response is required, Defendant denies the same.**

44.     On November 27, 2019, Jaiyeola received a reply to his complaint (dated November 25, 2019) from Kight. Kight gave the following Garmin reasons as to why Garmin did not hire Jaiyeola: "After considering all candidates and Garmin's current business needs, Garmin withdrew the opening, the job posting has been removed and no one was hired for this

position.".[sic] Kight's reply did not indicate that Garmin did any investigation; as stated in Garmin's EEO statement. See Ex Q.

**ANSWER:    Defendant admits that Kight emailed Plaintiff on November 25, 2019, and that the quoted language in the Paragraph was included in Kight's email.  Defendant is without knowledge or information sufficient to form a belief as to when Plaintiff opened and read the email sent by Kight and, therefore, denies the same.  Defendant denies the remaining allegations in Paragraph 44 of the Complaint.  To the extent Plaintiff attempts to reference a document he has attached and labeled as Exhibit Q to the Complaint, Defendant denies any attempted improper inferences or allegations by Plaintiff.**

45.    Minard, Garmin's EEO Coordinator, never contacted Jaiyeola.

**ANSWER:    Defendant admits the allegations in Paragraph 45 of the Complaint.**

46.    On December 13, 2019, Jaiyeola filed another Charge of Discrimination (No. 41705-20) with KHRC for Title VII, ADEA, KADEA, and ADA Association Discrimination.

**ANSWER:    Upon information and belief, Defendant admits that Plaintiff filed a charge of discrimination with the Kansas Human Rights Commission (KHRC) on December 13, 2019.  The remaining allegations in Paragraph 46 of the Complaint call for a legal conclusion to which no response is required.  To the extent a response is required, Defendant denies the same.**

47.    To date, Garmin has given two "inconsistent"[6] reasons (from Risinger and Kight - See Ex T.) for not hiring Jaiyeola.

---

[6] *Fassbender v. Correct Care Solutions,* LLC, <u>890 F.3d 875</u> (2018)

**ANSWER:** **Defendant denies the allegations in Paragraph 47 of the Complaint. To the extent Plaintiff attempts to reference a document he has attached and labeled as Exhibit T to the Complaint, Defendant denies any attempted improper inferences or allegations by Plaintiff.**

48.     Upon information and belief, Garmin removed the job that Jaiyeola applied for from Garmin's career website on or after November 22, 2019 (the day that Jaiyeola filed a complaint with Mudd - See Ex R.). Jaiyeola saw the job at the career site on November 13, 2019.

**ANSWER:** **Defendant admits the job posting for the position Plaintiff applied for was closed after November 22, 2019. Defendant is without knowledge or information sufficient to form a belief as to what Plaintiff saw on Defendant's career site on November 13, 2019 and therefore, denies the same. Defendant denies the remaining allegations in Paragraph 48 of the Complaint. To the extent Plaintiff attempts to reference a document he has attached and labeled as Exhibit R to the Complaint, Defendant denies any attempted improper inferences or allegations by Plaintiff.**

49.     Upon information and belief, the fact that Garmin pulled the advertisement for the position from the Garmin job site and the two inconsistent reasons given by Garmin constitute a pretext for not hiring Jaiyeola.

**ANSWER:** **Defendant denies the allegations in Paragraph 49 of the Complaint.**

### COUNT I
**Violation of Title VII of the Civil Rights Act of 1964, <u>42 U.S.C. §2000e</u>, *et seq.*
Race, Color, and National Origin Discrimination**

50.     Jaiyeola realleges and incorporates all preceding paragraphs.

**ANSWER:** **Defendant incorporates by reference its responses to Paragraphs 1-49 of Plaintiff's Complaint.**

19

51.     Garmin was an employer for the purposes of Title VII.

**ANSWER:   The allegations in Paragraph 51 of the Complaint call for a legal conclusion, to which no response is required. To the extent a response is required, Defendant denies the same.**

52.     Jaiyeola applied to Garmin for employment for the position of "Advanced Materials Engineer - Metals-19001CL".

**ANSWER:   Defendant admits the allegations in Paragraph 52 of the Complaint (with the caveat that the correct position title was Advanced Materials Engineer – Plastics and Metals).**

53.     Jaiyeola was interviewed over the phone and on-site at Garmin Headquarters in Olathe, Kansas, by at least 12 Garmin employees (including a Director of Mechanical Engineering, Senior Engineering Managers, Engineering Managers, and Engineers).

**ANSWER:   Defendant admits that Plaintiff participated in telephone interviews and an onsite interview at Defendant's headquarters in Olathe, Kansas and that multiple individuals from the engineering department participated. Defendant is without knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 53 of the Complaint and therefore, denies the same.**

54.     Upon information and belief, all the Garmin employees that interviewed Jaiyeola were White.

**ANSWER:   Defendant is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 54 of the Complaint and therefore, denies the same.**

55.     Garmin has discriminated against Jaiyeola in violation of Title VII by subjecting him to different treatment on the basis of his Race (African American), Color (Black), and National

Origin (Nigerian). Jaiyeola has been treated differently as a result of Garmin's wrongful conduct and its policies, practices, and procedures.

**ANSWER:     Defendant denies the allegations in Paragraph 55 of the Complaint.**

56.     As a direct and proximate result of Garmin's intentional Race (African American), Color (Black), and National Origin (Nigerian) discrimination, Jaiyeola has been denied employment, denied the fair opportunity to obtain employment, and denied fair opportunities with regard to positions, compensation, and/or employment with Garmin.

**ANSWER:     Defendant denies the allegations in Paragraph 56 of the Complaint.**

57.     The adverse failure-to-hire employment action alleged above directly and proximately caused Jaiyeola to suffer damages, including lost wages, lost benefits, garden variety emotional distress, humiliation, intimidation, embarrassment, and frustration.

**ANSWER:     Defendant denies the allegations in Paragraph 57 of the Complaint.**

58.     The Garmin employee who did not hire Jaiyeola was an agent of Garmin who was acting in the court and scope of his agency with Garmin or acted with express authority from Garmin.

**ANSWER:     The allegations in Paragraph 58 of the Complaint call for a legal conclusion, to which no response is required. To the extent a response is required, Defendant denies the same.**

59.     Garmin, through its agents or employees, acted outrageously by engaging in discriminatory practices with malice or reckless indifference to Jaiyeola's Federally protected rights. Garmin is therefore liable for punitive damages in an amount sufficient to punish Garmin and to deter it and other employers from engaging in similar conduct.

**ANSWER:     Defendant denies the allegations in Paragraph 59 of the Complaint.**

<u>**COUNT II**</u>
**Violation of Title VII of the Civil Rights Act of 1964, <u>42 U.S.C. §2000e</u>,** *et seq.*
**Section 703(a) of Title VII**
**Race, Color, and National Origin Discrimination**
**Subordinate Bias Liability("cat's paw" theory of liability)[7]**

60.     Jaiyeola realleges and incorporates all preceding paragraphs.

**ANSWER:     Defendant incorporates by reference its responses to Paragraphs 1-59 of the Complaint.**

61.     Garmin was an employer for the purposes of Title VII.

**ANSWER:     The allegations in Paragraph 61 of the Complaint call for a legal conclusion, to which no response is required. To the extent a response is required, Defendant denies the same.**

62.     Jaiyeola applied to Garmin for employment for the position of "Advanced Materials Engineer - Metals-19001CL".

**ANSWER:     Defendant admits the allegations in Paragraph 62 of the Complaint (with the caveat that the correct position title was Advanced Materials Engineer – Plastics and Metals).**

63.     Jaiyeola had HR phone interview with Ms. Michelle Cormack (Senior Technical Recruiter) on July 23, 2019.

**ANSWER:     Defendant admits the allegations in Paragraph 63 of the Complaint.**

64.     On July 25, 2019, Jaiyeola had a joint "Technical Phone Interview" with Mr. John Mudd (Mechanical Engineering Manager - Hiring Manager) and Mr. Jared Klein (Mechanical Engineering Manager). Both Garmin Managers remarked that Jaiyeola had highly pertinent

---

[7] See *Equal Employment Opportunity Commission v. BCI Coca-Cola Bottling Company of Los Angeles,*<u>450 F. 3d 476</u> (10th Cir. 2006)

22

qualifications and experience for the Garmin job under consideration. They were particularly excited that Jaiyeola would be the eyes for Garmin U.S.A. at the Garmin manufacturing plant in Taipei, Taiwan.

**ANSWER:   Defendant admits that on July 25, 2019, Plaintiff had a "technical phone interview" with Mudd and Klein and, upon information and belief, during the interview they discussed Plaintiff's experience and education and that one of the responsibilities of the position would be to manage and work with international suppliers. Defendant is without knowledge or information sufficient to form a belief as to remaining allegations in Paragraph 64 and therefore, denies the same.**

65.     On July 26, 2019 (a day after the "Technical Phone Interview" on July 25, 2019), Jaiyeola received an invitation for an on-site interview (at Garmin Headquarters in Olathe, Kansas).

**ANSWER:   Defendant admits the allegations in Paragraph 65 of the Complaint.**

66.     When Cormack interviewed Jaiyeola on-site at Olathe, Kansas, on August 14, 2019, she again informed Jaiyeola that the Hiring Manager was Mudd and his boss was Mr. Jeff Minelli (Director of Mechanical Engineering) and she made the following statements: "Jeff is John's boss. If Jeff doesn't like you, John will not hire you.".[sic]

**ANSWER:   Defendant admits that Plaintiff met with Cormack during his onsite visit to Defendant's headquarters in Olathe, Kansas on August 14, 2019.  Defendant denies the remaining allegations in Paragraph 66 of the Complaint.**

67.     Jaiyeola's first team technical interview team on August 14, 2019, was composed of Minelli, Mudd, and Mr. Jacob Zeller (Mechanical Engineering Manager - Automotive). During the interview, Minelli repeatedly asked Jaiyeola the same question in exactly the same way about aluminum alloys. Jaiyeola was very uncomfortable by the repetition of the question because

23

Jaiyeola had to repeat his answers each time Minelli asked the same question. Minelli didn't argue Jaiyeola's answers or indicated [sic] that he didn't understand Jaiyeola's answers.

**ANSWER:   Defendant admits that Plaintiff met with Mudd, Minelli, and Zeller during his onsite visit.   Defendant denies Plaintiff's allegations related to Minelli's comments/questions in the meeting.   Defendant is without knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 67 of the Complaint and therefore, denies the same.**

68.     Jaiyeola had a technical interview with 3 technical teams on August 14, 2019. After the technical interview with the first team (Minelli, Mudd, and Zeller), Mudd informed Jaiyeola that he would not be present for Jaiyeola's PowerPoint presentation and discussion with the 3 technical teams and Garmin Engineers. Mudd gave Jaiyeola no reason for that decision. The PowerPoint presentation and discussion was an "Assignment" (a current Garmin Engineering issue for PowerPoint presentation and discussion with Garmin Engineers) that Cormack sent to Jaiyeola on August 5, 2019 as part of the requirements for the on-site interview at Garmin Headquarters. Cormack wrote: "The hiring team wanted me to send this your way so that you could be prepared to discuss this during your interview.".[sic] Jaiyeola prepared for the PowerPoint presentation and discussion for 9 days. Mudd was not present for Jaiyeola's PowerPoint presentation and discussion to the 3 technical teams and Garmin Engineers.

**ANSWER:   Defendant admits Plaintiff met with various individuals during his onsite visit, that he was asked to be prepared to discuss a specific topic during his onsite visit, and that Mudd informed Plaintiff that he would not be able to attend his final meeting during Plaintiff's onsite visit.   Defendant further incorporates its responses to Paragraphs 25, 31 and 32. Defendant denies the remaining allegations in Paragraph 68 of the Complaint.**

24

69.      Towards the end of Jaiyeola's PowerPoint presentation and discussion, Mr. Jacob Zeller (Mechanical Engineering Manager - Automotive) made a comment that Jaiyeola's PowerPoint presentation was not on the topic that he was asked to present. Zeller's comment was not correct, and Mr. Aaron Lindh (Mechanical Engineering Manager — Outdoor Segment) quickly corrected Zeller. Jaiyeola was surprised by the Zeller comment. Zeller was on the first technical team (Minelli, Mudd, and Zeller) that interviewed Jaiyeola earlier that day.

**ANSWER:      Defendant denies the allegations in Paragraph 69 of the Complaint.**

70.      Mudd did not hire Jaiyeola based on the influence of Minelli; who had a discriminatory motive. Garmin should therefore be held liable for discrimination under Section 703(a) of Title VII of the Civil Rights Act of 1964 as it relates to subordinate bias liability.

**ANSWER:      Defendant denies the allegations in Paragraph 70 of the Complaint.**

71.      Garmin has discriminated against Jaiyeola in violation of Title VII by subjecting him to different treatment on the basis of his Race (African American), Color (Black), and National Origin (Nigerian). Jaiyeola has been treated differently as a result of Garmin's wrongful conduct and its policies, practices, and procedures.

**ANSWER:      Defendant denies the allegations in Paragraph 71 of the Complaint.**

72.      As a direct and proximate result of Garmin's intentional Race (African American), Color (Black), and National Origin (Nigerian) discrimination, Jaiyeola has been denied employment, denied the fair opportunity to obtain employment, and denied fair opportunities with regard to positions, compensation, and/or employment with Garmin.

**ANSWER:      Defendant denies the allegations in Paragraph 72 of the Complaint.**

73.     The adverse failure-to-hire employment action alleged above directly and proximately caused Jaiyeola to suffer damages, including lost wages, lost benefits, garden variety emotional distress, humiliation, intimidation, embarrassment, and frustration.

**ANSWER:     Defendant denies the allegations in Paragraph 73 of the Complaint.**

74.     The Garmin employee who did not hire Jaiyeola was an agent of Garmin who was acting in the court and scope of his agency with Garmin or acted with express authority from Garmin.

**ANSWER:     The allegations in Paragraph 74 of the Complaint call for a legal conclusion, to which no response is required. To the extent a response is required, Defendant denies the same.**

75.     Garmin, through its agents or employees, acted outrageously by engaging in discriminatory practices with malice or reckless indifference to Jaiyeola's Federally protected rights. Garmin is therefore liable (subordinate bias liability) for punitive damages in an amount sufficient to punish Garmin and to deter it and other employers from engaging in similar conduct.

**ANSWER:     Defendant denies the allegations in Paragraph 75 of the Complaint.**

<u>**COUNT III**</u>
**Violation of the Age Discrimination in Employment Act of 1967, <u>29 U.S.C. §621</u>,** *et seq.*
**("ADEA")**
**Age Discrimination**

76.     Jaiyeola realleges and incorporates all preceding paragraphs.

**ANSWER:     Defendant incorporates by reference its responses to Paragraphs 1-75 of the Complaint.**

77.     Garmin was an employer for the purposes of ADEA.

26

**ANSWER:   The allegations in Paragraph 77 of the Complaint call for a legal conclusion, to which no response is required. To the extent a response is required, Defendant denies the same.**

78.     Garmin requested (through an electronic mail dated July 26, 2019) for Jaiyeola's date of birth when Garmin was scheduling Jaiyeola for the on-site interview (on August 14, 2019) at Olathe, Kansas, and Jaiyeola provided his date of birth to Garmin.

**ANSWER:   Defendant admits the allegations in Paragraph 78 of the Complaint. Defendant further states that Plaintiff was told by Mr. Northrup in the July 26, 2019, communication that he needed information, including Plaintiff's date of birth, in order to book a plane ticket for Plaintiff's visit to Defendant.**

79.     Jaiyeola was at least 64 years old when he applied and interviewed for the position of "Advanced Materials Engineer - Metals-19001CL" at Garmin.

**ANSWER:   Defendant admits that Plaintiff applied for the position of Advanced Materials Engineer – Plastics and Metals.  Defendant is without knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 79 of the Complaint and therefore, denies the same.**

80.     Jaiyeola is within the class of persons protected by 29 U.S.C. 621, *et seq.*.

**ANSWER:   The allegations in Paragraph 80 of the Complaint call for a legal conclusion, to which no response is required. To the extent a response is required, Defendant denies the same.**

81.     At all times material, Jaiyeola is entitled to the rights and protections provided under the ADEA.

**ANSWER:    The allegations in Paragraph 81 of the Complaint call for a legal conclusion, to which no response is required. To the extent a response is required, Defendant denies the same.**

82.    Garmin discriminated against Jaiyeola on the basis of his age in violation of the ADEA.

**ANSWER:    Defendant denies the allegations in Paragraph 82 of the Complaint.**

83.    Garmin, by and through its officers, employees and agents, engaged in a continuing pattern and practice of discrimination against or disparate treatment of Jaiyeola based upon Jaiyeola's age, ultimately not hiring Jaiyeola.

**ANSWER:    Defendant denies the allegations in Paragraph 83 of the Complaint.**

84.    The materially adverse acts alleged above directly and proximately caused Jaiyeola to suffer damages, including lost wages, lost benefits, garden variety emotional distress, humiliation, intimidation, embarrassment, and frustration.

**ANSWER:    Defendant denies the allegations in Paragraph 84 of the Complaint.**

85.    Garmin's treatment of Jaiyeola was done with malice and reckless indifference to Jaiyeola's Federally protected rights. Garmin is therefore liable for punitive damages in an amount sufficient to punish Garmin and to deter it and other employers from engaging in similar conduct.

**ANSWER:    Defendant denies the allegations in Paragraph 85 of the Complaint.**

### COUNT IV
**Violation of the Kansas Age Discrimination in Employment Act (Chapter 44, Art. 11, K.S.A., and specifically within the meaning of subsection (a)(1) of Section 44-1113 of said Act. ("KADEA")**
**Age Discrimination**

86.    Jaiyeola realleges and incorporates all preceding paragraphs.

**ANSWER:    Defendant incorporates by reference its responses to Paragraphs 1-85 of the Complaint.**

28

87.     Garmin was an employer in the State of Kansas for the purposes of KADEA.

**ANSWER:   The allegations in Paragraph 87 of the Complaint call for a legal conclusion, to which no response is required. To the extent a response is required, Defendant denies the same.**

88.     The KADEA prohibits an employer from discriminating on the basis of age.

**ANSWER:   The allegations in Paragraph 88 of the Complaint call for a legal conclusion, to which no response is required. To the extent a response is required, Defendant denies the same.**

89.     Garmin requested (through an electronic mail dated July 26, 2019) for Jaiyeola's date of birth when Garmin was scheduling Jaiyeola for the on-site interview (on August 14, 2019) at Olathe, Kansas, and Jaiyeola provided his date of birth to Garmin.

**ANSWER:   Defendant admits the allegations in Paragraph 89 of the Complaint. Defendant further states that Plaintiff was told by Mr. Northrup in the July 26, 2019 communication that he needed information, including Plaintiff's date of birth, in order to book a plane ticket for Plaintiff's visit to Defendant.**

90.     Jaiyeola was at least 64 years old when he applied and interviewed for the position of "Advanced Materials Engineer - Metals-19001CL" at Garmin.

**ANSWER:   Defendant admits that Plaintiff applied for the position of Advanced Materials Engineer – Plastics and Metals.  Defendant is without knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 90 of the Complaint and therefore, denies the same.**

91.     Jaiyeola is within the class of persons protected by KADEA.

**ANSWER:   The allegations in Paragraph 91 of the Complaint call for a legal conclusion, to which no response is required. To the extent a response is required, Defendant denies the same.**

92.    At all times material, Jaiyeola is entitled to the rights and protections provided under the KADEA.

**ANSWER:   The allegations in Paragraph 92 of the Complaint call for a legal conclusion, to which no response is required. To the extent a response is required, Defendant denies the same.**

93.    Garmin discriminated against Jaiyeola on the basis of his age in violation of the KADEA.

**ANSWER:   Defendant denies the allegations in Paragraph 93 of the Complaint.**

94.    Garmin, by and through its officers, employees and agents, engaged in a continuing pattern and practice of discrimination against or disparate treatment of Jaiyeola based upon Jaiyeola's age, ultimately not hiring Jaiyeola.

**ANSWER:   Defendant denies the allegations in Paragraph 94 of the Complaint.**

95.    The materially adverse acts alleged above directly and proximately caused Jaiyeola to suffer damages, including lost wages, lost benefits, garden variety emotional distress, humiliation, intimidation, embarrassment, and frustration.

**ANSWER:   Defendant denies the allegations in Paragraph 95 of the Complaint.**

96.    Garmin's treatment of Jaiyeola was done with malice and reckless indifference to Jaiyeola's KADEA protected rights. Garmin is therefore liable for punitive damages in an amount sufficient to punish Garmin and to deter it and other employers from engaging in similar conduct.

**ANSWER:   Defendant denies the allegations in Paragraph 96 of the Complaint.**

## COUNT V
### Violation of Title I of the Americans with Disabilities Act ("ADA"),
### 42 U.S.C. §12112(b)(4)
### Disability Association Discrimination

97.     Jaiyeola realleges and incorporates all preceding paragraphs.

**ANSWER:    Defendant incorporates by reference its responses to Paragraphs 1-96 of the Complaint.**

98.     Garmin was an employer for purposes of the ADA.

**ANSWER:    The allegations in Paragraph 98 of the Complaint call for a legal conclusion, to which no response is required. To the extent a response is required, Defendant denies the same.**

99.     Jaiyeola has a 6-year-old son who has Down Syndrome and therefore classified as disabled for purposes of the ADA.

**ANSWER:    Defendant is without knowledge or information sufficient to form a belief as to the allegations related to any medical diagnosis related to Plaintiff's son.  The remaining allegations in Paragraph 99 of the Complaint call for a legal conclusion, to which no response is required.  To the extent a response is required, Defendant denies the same.**

100.    Jaiyeola's son has a record of being disabled for purposes of the ADA.

**ANSWER:    The allegations in Paragraph 100 of the Complaint call for a legal conclusion, to which no response is required. To the extent a response is required, Defendant denies the same.**

101.    When Cormack interviewed Jaiyeola on August 14, 2019, she informed him of the nearby (to Olathe, Kansas) places to live and Jaiyeola informed her that he has a son (6 years old) who has Down Syndrome and that he would want to live in a school district that has facilities for Down Syndrome students. Cormack told Jaiyeola she has teachers in her family, and she would

31

get the information on nearby school systems that have facilities for Down Syndrome students, and she would send the information to Jaiyeola that interview day or the next (August 14 or 15, 2019). Jaiyeola never heard back from Cormack on that information.

**ANSWER:   Defendant admits that during Plaintiff's onsite visit he first met with Cormack.  Defendant further admits that during their discussion Plaintiff disclosed to Cormack that he had a disabled son.   Defendant denies the remaining allegations in Paragraph 27 of the Complaint.**

102.     The failure-to-hire adverse employment action alleged above directly and proximately caused Jaiyeola to suffer damages, including lost wages, lost benefits, garden variety emotional distress, humiliation, intimidation, embarrassment, and frustration.

**ANSWER:   Defendant denies the allegations in Paragraph 102 of the Complaint.**

103.     The person who failed to hire Jaiyeola was an agent of Garmin who was acting in the court and scope of his agency with Garmin or acted with express authority from Garmin.

**ANSWER:   The allegations in Paragraph 103 of the Complaint call for a legal conclusion, to which no response is required. To the extent a response is required, Defendant denies the same.**

104.     Garmin, through its agents or employees, acted outrageously by engaging in discriminatory practices with malice or reckless indifference to Jaiyeola's Federally protected rights. Garmin is therefore liable for punitive damages in an amount sufficient to punish Garmin and to deter it and other employers from engaging in similar conduct.

**ANSWER:   Defendant denies the allegations in Paragraph 104 of the Complaint.**

105.     Garmin has discriminated against Jaiyeola in violation of ADA by subjecting him to different treatment on the basis of his son's Down Syndrome disability. Jaiyeola has been treated differently as a result of Garmin's wrongful conduct and its policies, practices, and procedures.

**ANSWER:     Defendant denies the allegations in Paragraph 105 of the Complaint.**

## COUNT VI
**Deprivation of Due Process Under the Fourteenth Amendment, 42 U.S.C. § 1983**

106.     Jaiyeola realleges and incorporates all preceding paragraphs.

**ANSWER:     Defendant incorporates by reference its responses to Paragraphs 1-105 of the Complaint.**

107.     Jaiyeola saw an advertisement for the position of "Advanced Materials Engineer Metals-19001CL" at Garmin International on a Job Board (www.indeed.com) and he applied on July 3, 2019.

**ANSWER:     Defendant admits that Plaintiff applied for the position of Advanced Materials Engineer – Plastics and Metals (19001CL) on July 3, 2019.  Defendant is without knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 20 of the Complaint and therefore, denies the same.**

108.     Jaiyeola had HR phone interview with Ms. Michelle Cormack (Senior Technical Recruiter) on July 23, 2019. Cormack informed Jaiyeola that the Hiring Manager for the position was Mr. John Mudd.

**ANSWER:     Defendant admits Plaintiff had a telephone interview with Cormack on July 23, 2019.  Defendant is without knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 108 of the Complaint and therefore, denies the same.**

109.     On July 25, 2019, Jaiyeola had a joint "Technical Phone Interview" with Mr. John Mudd (Mechanical Engineering Manager - Hiring Manager) and Mr. Jared Klein (Mechanical Engineering Manager).

**ANSWER:     Defendant admits the allegations in Paragraph 109 of the Complaint.**

110.     On July 26, 2019 (a day after the "Technical Phone Interview" on July 25, 2019), Jaiyeola received an invitation for an on-site interview (at Garmin Headquarters in Olathe, Kansas) from Mr. Evan Northup (Garmin HR Coordinator) to occur August 14, 2019.

**ANSWER:     Defendant admits the allegations in Paragraph 110 of the Complaint.**

111.     On August 5, 2019, Cormack sent Jaiyeola an "Assignment" (a PowerPoint presentation and a discussion of the presentation with Garmin Engineers) for the on-site interview at Garmin Headquarters in Olathe, Kansas.

**ANSWER:     Defendant admits that Cormack sent Plaintiff an email on August 5, 2019, stating that the hiring team would like Plaintiff to be prepared to discuss a specific topic during his onsite visit.  Defendant further admits that the regarding line on the email stated: Garmin: Assignment. Defendant denies the remaining allegations in Paragraph 111 of the Complaint.**

112.     During Jaiyeola's technical interview with the second or third interview team, Mudd opened the door to the interview room, stood by the door (he didn't come inside), and informed Jaiyeola (to the hearing of the interviewing team) that he would not be at Jaiyeola's PowerPoint presentation and discussion. Mudd did not give any reason why he wasn't going to be at the presentation and the discussion. Jaiyeola was surprised and concerned that Mudd would not attend his presentation and discussion. Jaiyeola was also concerned about the optics Mudd's announcement made to the technical team that was interviewing Jaiyeola at that instant. The

interviewing team heard what Mudd said. Jaiyeola became very uncomfortable and embarrassed for the rest of the team interview and during Jaiyeola's subsequent PowerPoint presentation and discussion.

**ANSWER:    Defendant admits Mudd informed Plaintiff that he would not be able to attend his final meeting during Plaintiff's onsite visit.  Defendant is without knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 112 of the Complaint and therefore, denies the same.**

113.    Mudd did not attend Jaiyeola's PowerPoint presentation and discussion.

**ANSWER:    Defendant admits the allegations in Paragraph 113 of the Complaint.**

114.    Jaiyeola's PowerPoint presentation and discussion were part of the on-site interview requirements for the job that Jaiyeola applied for.

**ANSWER:    Defendant admits Plaintiff was asked to be prepared to discuss a specific topic during his onsite visit and that Plaintiff did discuss the topic with members of the engineering department during his visit.  Defendant denies the remaining allegations in Paragraph 114 of the Complaint.**

115.    Mudd did not have all of the necessary information to make an informed decision about hiring Jaiyeola for the position Jaiyeola applied for because Mudd did not attend Jaiyeola's PowerPoint presentation and discussion.

**ANSWER:    Defendant denies the allegations in Paragraph 115 of the Complaint.**

116.    Mudd's decision not to hire Jaiyeola constituted a denial of due process to Jaiyeola because his decision was based on less than complete information[8].

---

[8] See *Blackford v. Kansas Employment SEC. Bd. of Review,* 938 F. Supp. 739 (D. Kan. 1996)

35

**ANSWER:     Defendant denies the allegations in Paragraph 116 of the Complaint.**

117.     That materially adverse acts alleged above directly and proximately caused Jaiyeola to suffer damages, including lost wages, lost benefits, garden variety emotional distress, humiliation, intimidation embarrassment, and frustration.

**ANSWER:     Defendant denies the allegations in Paragraph 117 of the Complaint.**

118.     Garmin's action against Jaiyeola was done with malice and reckless indifference to Jaiyeola's Federally protected rights under the Constitution. Garmin is therefore liable for punitive damages in an amount sufficient to punish Garmin and to deter it and other employers from engaging in similar conduct.

**ANSWER:     Defendant denies the allegations in Paragraph 118 of the Complaint.**

<u>**DEFENDANT'S GENERAL DENIAL**</u>

**To the extent not expressly admitted herein, Defendant denies all allegations and prayers for relief contained in the Complaint.**

<u>**DEFENDANT'S AFFIRMATIVE AND OTHER DEFENSES**</u>

**Without assuming any burden of proof that by law is not otherwise Defendant's, Defendant asserts the following affirmative and other defenses:**

**1.     Plaintiff's Complaint, in whole or in part, against Defendant fails to state a claim or cause of action for which relief may be granted.**

**2.     Count VI fails to state a claim upon which relief can be granted because Defendant is not a state actor.**

**3.     Plaintiff's claims are barred because Defendant's actions were made in good faith and with reasonable grounds to believe its conduct was in full compliance with the relevant laws.**

4.    Plaintiff's Complaint, in whole or in part, against Defendant is barred because the alleged actions of Defendant, which are denied, were not intentional, malicious, willful or reckless.

5.    Plaintiff has failed to allege sufficient facts to demonstrate an unlawful motive was the 'but for' or motivating factor' in Defendant's decision not to hire Plaintiff.

6.    Defendant states Plaintiff has failed to mitigate his damages, if any.

7.    If Plaintiff has been damaged as alleged, which is denied, his damages have been caused by his own intentional or negligent acts or omissions, or by intentional or negligent acts or omissions of those other than Defendant, or for which Defendant is not responsible.

8.    Plaintiff's claim is barred because even if an impermissible factor had been a motivating or 'but for' factor in any decision made or action taken by Defendant, which Defendant denies, Defendant would have taken the same actions in the absence of any impermissible factor.

9.    To the extent Plaintiff has failed to exhaust and/or timely exhaust his administrative remedies, his claims are barred.

10.    Plaintiff is barred from pursuing some, or all, of his claims or remedies by the doctrine of laches and/or unclean hands, and by unreasonably delaying their assertion of claims to the disadvantage and prejudice of Defendant.

11.    Defendant is not liable for punitive damages because neither Defendant, nor any of its employees sufficiently high in its corporate hierarchy, committed any act with malice, intent, willfulness, or reckless indifference to Plaintiff's protected rights, or approved, authorized or ratified, or had actual knowledge, of any such acts.

12.     Plaintiff's Complaint fails to allege facts sufficient to state a claim that would support an award of actual, compensatory, or punitive damages against Defendant.

13.     Awarding liquidated and/or punitive damages to Plaintiff under the facts of this matter would violate the due process clause and/or provisions of the U.S. Constitution and/or the Constitution of Kansas.

14.     Defendant presently has insufficient knowledge or information on which to form a belief as to whether it may have additional, as yet unstated, affirmative or other defenses available.  Defendant reserves herein the right to assert additional defenses in the event that discovery indicates they would be appropriate.

15.     The actions taken by Defendant with respect to Plaintiff were within the business judgment of Defendant.

16.     Plaintiff's claim should be dismissed because Plaintiff's damages, if any, are too remote, speculative and *de minimis* to permit recovery.

17.     Defendant reserves the right to supplement and amend its affirmative and other defenses as warranted by the facts of the case, including but not limited to an after acquired evidence defense.  Defendant affirmatively states that it will rely upon each and every affirmative defense or other avoidance provided by the Federal Rules of Civil Procedure or state law that may become known during the course of litigation, including discovery, trial, or otherwise.

WHEREFORE, Defendant requests that the Court dismiss Plaintiff's Complaint with prejudice, enter judgment in Defendant's favor, award Defendant its attorney's fees and costs, and for any further relief the Court deems just and proper.

Respectfully submitted,

/s/ Kerri S. Reisdorff
Kerri S. Reisdorff,      KS #19709
Margaret K. Young,    KS #28157
OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.
4520 Main Street, Suite 400
Kansas City, Missouri 64111
816-471-1301
816-471-1303 *(Facsimile)*
kerri.reisdorff@ogletree.com
margaret.young@ogletree.com

ATTORNEYS FOR DEFENDANT

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 31st day of March, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and sent notification of such filing to the following:

Ganiyu Ayinla Jaiyeola
749 Preserve Circle Drive SE Apartment 6
Grand Rapids, Michigan 49548 Tel.: 616.635.4025
ganiyu.jaiyeola@gmail.com
*pro se*

**PLAINTIFF**

/s/ Kerri S. Reisdorff
ATTORNEY FOR DEFENDANT

42131745.1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **GANIYU AYINLA JAIYEOLA,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   **Case No. 2:20-cv-2068-JWB-JPO** |
| | ) |
| **GARMIN INTERNATIONAL, INC.,** | ) |
| | ) |
| Defendant. | ) |

### DEFENDANT'S PARTIAL MOTION TO DISMISS

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Garmin International, Inc. ("Garmin") moves to dismiss Counts II and VI of Plaintiff Gainyu Ayinla Jaiyeola's Complaint. In further support of this motion, Garmin is contemporaneously filing its Memorandum in Support of Defendant's Partial Motion to Dismiss, the arguments and authorities in which Garmin incorporates here by reference.

For the reasons more fully set forth in the Memorandum in Support of Defendant's Partial Motion to Dismiss, Garmin respectfully requests this Court enter an Order dismissing Counts II and VI against Garmin and for such other relief as this Court deems just.

Respectfully submitted,

/s/ Kerri S. Reisdorff
Kerri S. Reisdorff, KS 19709
Margaret K. Young, KS 78847
OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.
4520 Main Street, Suite 400
Kansas City, Missouri 64111
816-471-1301
816-471-1303 *(Facsimile)*
kerri.reisdorff@ogletree.com
margaret.young@ogletree.com

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 31st day of March, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and sent notification of such filing via email to the following:

Ganiyu Ayinla Jaiyeola
749 Preserve Circle Drive SE
Apartment 6
Grand Rapids, MI  49548
(616) 635.4025
Ganiyu.jaiyeola@gmail.com
*Pro Se Plaintiff*

/s/ Kerri S. Reisdorff
**ATTORNEY FOR DEFENDANT**

42346832.1

2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **GANIYU AYINLA JAIYEOLA,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Case No. 2:20-cv-2068-JWB-JPO** |
| | ) | |
| **GARMIN INTERNATIONAL, INC.,** | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM IN SUPPORT OF
### DEFENDANT'S PARTIAL MOTION TO DISMISS

**I.      INTRODUCTION**

Defendant Garmin International, Inc. ("Garmin"), by and through counsel, pursuant to Federal Rule of Procedure 12(b)(6), hereby moves to dismiss Counts II and VI of Plaintiff's Complaint with prejudice for failure to state a claim upon which relief can be granted. In support of its Motion to Dismiss, Garmin states as follows:

**II.     FACTUAL BACKGROUND**

In July 2019, Plaintiff Ganiyu Ayinla Jaiyeola submitted an online application for an Advanced Materials Engineer position (the "Position") with Garmin. [Doc. 1, ¶¶ 20-21]. Plaintiff was initially selected by Garmin for telephone interviews with Human Resources and the hiring managers and eventually was invited to an onsite interview at Garmin in August 2019. *Id.* at ¶¶ 22-23, 26. Garmin ultimately made the business decision to pull the Position and not hire anyone for the Position. [Doc. 9, Answer to ¶ 44]. Garmin notified the remaining candidates, including Plaintiff, that they were not selected for hire. [Doc. 9, Answer to ¶¶ 37, 44].

Plaintiff filed his lawsuit on February 19, 2020.  [Doc. 1]  Plaintiff's Complaint contains the following six (6) discrete claims:

- Count I: Race, color, and national origin intentional discrimination in violation of Title VII of the Civil rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII");

- Count II: Race, color, and national origin intentional discrimination in violation of Title VII;

- Count III: Age discrimination in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, *et seq.*;

- Count IV: Age discrimination in violation of the Kansas Age Discrimination in Employment Act, K.S.A. § 44-1111 *et seq.*;

- Count V:  Disability association discrimination in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.*; and

- Count VI:  Violation of due process rights under 42 U.S.C. § 1983 ("Section 1983").

[Doc. 1].

As set forth below, Counts II and VI should be dismissed.  Count II is redundant of Count I as both allege intentional race, color, and national origin discrimination in violation of Title VII (the only difference is that in Count II Plaintiff indicates he intends to prove his Title VII claim utilizing the "cat's paw" legal theory).  Count VI fails to state a claim upon which relief can be granted because a viable Section 1983 claim must be brought against a state actor.  Garmin is not a state actor.  Accordingly, Counts II and VI should be dismissed with prejudice.

## III.   STANDARD OF REVIEW AND ARGUMENT

### A.   STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), the Court must dismiss a cause of action if it fails to state a claim on which relief can be granted. In order to state a claim on which relief can be granted, a count must allege more than mere "labels and conclusions"—it must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To determine whether a claim has "facial plausibility," the Court must take all well-pled factual allegations in the complaint as true, but it is not required to accept as true "a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To survive a motion to dismiss, a count must present factual allegations, assumed true, that "raise a right to relief above the speculative level" and must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555. Under this standard, "the complaint must give the court reason to believe that the plaintiff has a reasonable likelihood of mustering factual support for these claims." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). In other words, the count must contain "factual content that allows the court to draw the *reasonable inference* that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A reasonable inference only exists when the count includes facts showing "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Conversely, an inference is not reasonable when the count "pleads facts that are merely consistent with" an allegation that a party engaged in illegality. *Id.*

## IV.    ARGUMENT AND AUTHORITIES

### A.    Count II is Redundant of Count I and Therefore, Should be Dismissed

Count I of Plaintiff's Complaint alleges that Garmin intentionally discriminated against him on the basis of his race, national origin, and color in violation of Title VII when he was denied employment. [Doc. 1, ¶¶ 50-59]. Count II also alleges that Garmin intentionally discriminated against Plaintiff on the basis of his race, national origin, and color in violation of Title VII, when he was denied employment. [Doc. 1, ¶¶ 60-75]. The only difference between Counts I and II is that in Count II Plaintiff discloses that he intends to utilize the "cat's paw[1]" theory to prove his claim under Title VII.  It is well settled that a legal theory, such as the "cat's paw" theory, does not constitute a separate cause of action. *See Thomas v. Berry Plastics Corp.*, 803 F.3d 510, 514 (10th Cir. 2015) (analyzing plaintiff's use of the "cat's paw *theory of*

---

[1] The Tenth Circuit has adopted "cat's paw" liability in a Title VII case; an employer may be liable for the bias of a subordinate if the plaintiff can establish that the subordinate's discriminatory reports, recommendation or other actions caused adverse employment action. *EEOC v. BCI Coca-Cola Bottling Co.*, 450 F.3d 476, 487 (10th Cir. 2006).

*recovery"* within the context of plaintiff's Title VII claim) (emphasis added). As such, Count II should be dismissed.

### B.    Garmin is Not a State Actor and Therefore, Count VI Should be Dismissed

Count VI of Plaintiff's Complaint should be dismissed because Garmin is not a state actor and therefore, Plaintiff's Section 1983 claim fails as a matter of law. To state a cause of action pursuant to Section 1983, Plaintiff must prove that Garmin's conduct occurred "under color of law." *Elliott v. Chrysler Fin.*, No. 04-2330, 2005 WL 428918, *1 (10th Cir. Feb 24, 2005). Therefore, the only proper defendants in a Section 1983 claim, are those who "represent [the state] in some capacity, whether they act in accordance with their authority or misuse it." *Nat'l Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179, 191 (1988).

There are a variety of tests used to determine whether the conduct of a private party constitutes state action, including (1) "whether there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself," *Jackson v. Metro Edison Co.*, 419 U.S. 345, 351 (1974); (2) whether the state has "so far insinuated itself into a position of interdependence" with the private party, *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 725 (1961); (3) if a private party is "a willful participant in joint activity with the State or its agents," *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970); or (4) if a private party exercises "powers traditionally reserved to the State," *Jackson*, 419 U.S. at 352.

Plaintiff fails to plead a single fact sufficient to establish that any of the four tests apply to Garmin or that Garmin could be characterized as a "state actor" in any way. As a result, Count VI of Plaintiff's Complaint fails to state a claim upon which relief can be granted and should be dismissed. *See Lane v. Johnson*, 385 F. Supp. 2d 1146, 1151-52 (D. Kan. 2005) (granting

defendant's motion to dismiss plaintiff's Section 1983 claim where defendant was not a state actor).

## V.      CONCLUSION

Based on the foregoing, Garmin respectfully requests that this Court dismiss Counts II and VI of Plaintiff's Complaint with prejudice. Garmin further moves for any other relief as the Court deems just.

Respectfully submitted,

/s/ Kerri S. Reisdorff
Kerri S. Reisdorff, KS 19709
Margaret K. Young, KS 78847
OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.
4520 Main Street, Suite 400
Kansas City, Missouri 64111
816-471-1301
816-471-1303 *(Facsimile)*
kerri.reisdorff@ogletree.com
margaret.young@ogletree.com

**ATTORNEYS FOR DEFENDANT**

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 31st day of March, 2020, filed the foregoing electronically with the Clerk of the Court using the CM/ECF system and sent notification of such filing to the following:

Ganiyu Ayinla Jaiyeola
749 Preserve Circle Drive SE
Apartment 6
Grand Rapids, MI  49548
(616) 635.4025
Ganiyu.jaiyeola@gmail.com


*Pro Se* Plaintiff


/s/ Kerri S. Reisdorff
**ATTORNEY FOR DEFENDANT**


42339902.1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

|  |  |  |
|---|---|---|
| | ) | |
| | ) | |
| GANIYU AYINLA JAIYEOLA, | ) | Case No.: 2:20-cv-2068-JWB-JPO |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| GARMIN INTERNATIONAL, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT
GARMIN'S PARTIAL MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM
UPON WHICH RELIEF CAN BE GRANTED UNDER RULE 12(b)(6)**

This is Plaintiff Ganiyu Jaiyeola's ("Jaiyeola") Memorandum in Opposition to Defendant

Garmin International, Inc.'s ("Garmin") Motion[1] and Memorandum[2] to Dismiss for failure to state

a claim (regarding Counts II and VI of Jaiyeola's Complaint[3]) upon which relief can be granted

pursuant to Federal Rule of Procedure 12(b)(6) ("Rule 12(b)(6)").  For the reasons stated below,

Garmin's Motion to Dismiss should be Denied.

## INTRODUCTION

**I.    BACKGROUND**

In November 2019, Garmin failed to hire Jaiyeola for the "Advanced Materials Engineer -

Metals-19001CL" position he applied and interviewed for; over the phone and on-site at Garmin's

---

[1] ECF No. 10, DEFENDANT'S PARTIAL MOTION TO DISMISS.
[2] ECF No. 11, MEMORANDUM IN SUPPORT OF DEFENDANT'S PARTIAL MOTION TO DISMISS.
[3] ECF No. 1, Plaintiff's Complaint.

Headquarters/Manufacturing Center in Olathe, Kansas. Jaiyeola made a good faith effort to resolve the failure-to-hire issues with Garmin by sending a Demand Letter[4] to Ms. Laurie Minard, Vice President, Human Resources, Garmin. Unfortunately, Garmin's reply[5] to Jaiyeola's Demand Letter was in bad faith and with incorrect statements that will be addressed during Discovery.

This is an employment discrimination lawsuit in which Garmin, by failing to hire Jaiyeola, violated Jaiyeola's rights under Title VII of the Civil Rights Act of 1964, as amended ("Title VII" – Race (African American), Color (Black), and National Origin (Nigerian)), 29 U.S.C. § 621, et seq. (Age Discrimination in Employment Act, as amended ("ADEA"), 42 U.S.C. §12112(b)(4) (Disability Association Discrimination - Title I of the Americans with Disabilities Act ("ADA")), The Kansas Age Discrimination in Employment Act[6] (Chapter 44, Art. 11, K.S.A., and specifically within the meaning of subsection (a)(1) of Section 44-1113 of said Act - "KADEA") and 42 U.S.C. § 1983 (Denial of Due Process – "Due Process"). Garmin is also liable for discrimination under Section 703(a) of Title VII because the fact that Jaiyeola was not hired by Garmin was based on the influence of a Garmin employee, Mr. Jeff Minelli (Garmin's Director of Mechanical Engineering), with a discriminatory motive; Subordinate Bias Liability ("cat's paw" theory of liability)[7].

A recent diversity rating report on Garmin concluded that "Diverse employees at Garmin International score the company 64/100 across various culture categories, placing Garmin International in the bottom 45% of companies in the United States with 10,000+ Employees for

---

[4] Exhibit A: Jaiyeola's "Demand Letter: RE - Advanced Materials Engineer - Metals-19001CL at Garmin".
[5] Exhibit B: Garmin's Reply to Jaiyeola's "Demand Letter: RE - Advanced Materials Engineer - Metals-19001CL at Garmin".
[6]http://www.kslegislature.org/li/b2019_20/statute/044_000_0000_chapter/044_011_0000_article/044_011_0013_section/044_011_0013_k/
[7] *Equal Employment Opportunity Commission v. BCI Coca-Cola Bottling Company of Los Angeles*, 450 F. 3d 476 (10th Cir. 2006)

-2-

Comparably's diversity score. The Diversity score provides insights into how diverse employees feel and rate their work experience at Garmin International across various culture dimensions."[8]

The findings in the survey are supported by an employment discrimination lawsuit against Garmin by a former Female Garmin employee, who stated the following in her Complaint: "This is an employment case based upon and arising under the Family and Medical Leave Act, as amended, 29 U.S.C. § 2611 et seq. ("FMLA"); the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA") the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. ("ADEA")"[9]. In 2009[10] and 2010[11], failure-to-hire employment discrimination lawsuits based on "Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, et seq., for employment discrimination on the basis of race, color, religion, gender, or national origin." and "Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §§ 621, et seq., for employment discrimination on the basis of age (age 40 or older)." were filed against Garmin.

## II.    Plaintiff is a *pro se*

Jaiyeola is filing this lawsuit as a *pro se*. The District Court granted[12] Jaiyeola's *in forma pauperis*[13] motion but denied Jaiyeola's motion for an Attorney[14].

In *Hall v. Witteman*,[15] this Court stated that "*Pro se* complaints, **however inartfully pleaded, must be liberally construed, and are held to less stringent standards than formal pleadings drafted by lawyers**. *Erickson v. Pardus*, ___ U.S. ___, 127 S.Ct. 2197, 2200, 167

---

[8] https://www.comparably.com/companies/garmin-international/diversity (as it appeared on February 12, 2020)

[9] *Peterson v. Garmin International, Inc.*, Case No. 2:09-cv-02659-JAR (D. Kan. Dec. 22, 2009), ECF No. 1, p. 1 at ¶ "1"

[10] *Leo v. Garmin Int'l, Inc.*, Case No. 2:09-cv-02139-KHV (D. Kan. 2009), ECF No. 1, p. 1.

[11] *Leo v. Garmin Int'l, Inc.*, Case No. 2:10-cv-02495-JTM-DJW (D. Kan. 2010), ECF No. 1-1, p. 1.

[12] ECF No. 6, Order: Plaintiff *in forma pauperis* Granted, Appointment of Attorney Denied.

[13] ECF No. 3, Plaintiff Motion: *in forma pauperis* Status.

[14] ECF No. 4, Plaintiff Motion: Appointment of an Attorney.

[15] *Hall v. Witteman*, 569 F. Supp. 2d 1208 (D. Kan. 2008)

L.Ed.2d 1081 (2007). See *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005). "[The] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (….). The court should not be the *pro se* litigant's advocate, *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991), and will not accept as true conclusory allegations unsupported by factual allegations. *Oxendine v. Kaplan*, 241 F.3d 1272, 1306 (10th Cir. 2001). The court's "broad reading of the plaintiff's complaint does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based." *Hall*, 935 F.2d at 1110.

**"Dismissal of a *pro se* complaint for failure to state a claim is proper only where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend**. ." *Kay v. Bemis*, 500 F.3d 1214, 1217 (10th Cir. 2007)".

In *Pittman v. City of Aurora*,[16] the Court stated that "…a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). See also *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (the court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues"). A plaintiff's *pro se* status does not entitle him to an application of different rules. See *Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002)."

---

[16] *Pittman v. City of Aurora*, No. 19-cv-02209 (D. Colo. Jan. 31, 2020)

## ARGUMENT

Defendant Garmin has filed a Motion to Dismiss for failure to state a claim (regarding Counts II and VI of Jaiyeola's Complaint[17]) under which relief can be granted pursuant to Rule 12(b)(6). However, Jaiyeola's complaint present factual allegations that "raise a right to relief above the speculative level" and contain "enough facts to state a claim to relief that is plausible on its face."[18] For the reasons stated below, Garmin's Motion to Dismiss should be Denied.

### I. Motion to Dismiss Under Rule 12(b)(6) Should be Considered As Motion For Judgment on the Pleadings Under Rule 12(c)

Garmin filed this Motion to Dismiss under Rule 12(b)(6) AFTER filing the Answer[19] to Jaiyeola's Complaint. In *Edwin Asebedo v. Kansas State University*,[20] the Tenth Circuit asserted that "Because KSU filed its motion to dismiss after it filed its answer, the motion was most appropriately considered as a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c).."". "Pursuant to Rule 12(c), a party may move for judgment on the pleadings once it has filed its answer.....".[21] Garmin's Motion to Dismiss should be considered as a Motion for Judgment on the Pleadings under Fed. R. Civ. P. 12(c) ("Rule 12(c)"). Garmin's Motion to Dismiss or Garmin's Motion for Judgment on the Pleadings should be Denied.

### II. Plaintiff Did NOT Apply For "Advanced Materials Engineer – Plastics and Metals": Sanction Garmin and Garmin Attorneys For Fraud On The Court

"It is well settled that a **plaintiff can show intentional discrimination either by direct evidence of discrimination or by indirect evidence**, employing the burden-shifting framework

---

[17] ECF No. 1, Plaintiff's Complaint.
[18] *Bell Atlantic Corp. v. Twombly*, 550 U.S. ___, ___, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007).
[19] ECF No. 9, DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT.
[20] *Asebedo v. Kansas State University*, No. 13-3206 (10th Cir. Mar. 17, 2014)
[21] *Daneshvar v. Graphic Technology, Inc.*, Case No. Case No. 2:04-cv-02212-JWL-JPO (D. Kan. Apr. 19, 2005), ECF No. 56, p. 3.

-5-

first articulated in the seminal case of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04

(1973)."[22]. "***McDonnell Douglas* involved a Title VII claim for failure to hire**". *Id.*

In a **failure-to-hire** lawsuit (*Brown v. Keystone Learning Serv.*, No. 19-3060 (10th Cir.

2020)), the Court stated,

> "Title VII prohibits an employer from "refus[ing] to hire . . any individual . .
>
> because of such individual's race." 42 U.S.C. § 2000e-2(a)(1). "To survive
>
> summary judgment on a **Title VII claim of [racial] discrimination**," **the**
>
> **plaintiff must "present either direct evidence of discrimination or indirect**
>
> **evidence that satisfies the burden-shifting framework of *McDonnell***
>
> ***Douglas*." *Bekkem v. Wilkie*, 915 F.3d 1258, 1267 (10th Cir. 2019).[[23]] The**
>
> **plaintiff bears "[t]he ultimate burden of persuading the trier of fact that the**
>
> **defendant intentionally discriminated against the plaintiff**." *Tex. Dep't of*
>
> *Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). Under the three-part
>
> *McDonnell Douglas* burden-shifting framework, the plaintiff first bears the "not
>
> onerous" "burden of proving by the preponderance of the evidence a prima facie
>
> case of discrimination." *Id.* at 252-53.[[24]]. If the plaintiff meets" the prima facie
>
> burden, the **employer bears the** "exceedingly light" **burden to "articulate a**
>
> **legitimate, nondiscriminatory reason" for not hiring the plaintiff**. *DePaula v.*

---

[22] *Perry v. Woodward*, Case Nos. 97-2343, 98-2003 (10th Cir. 1999).

[23] ""Direct evidence is evidence, which if believed, proves the existence of a
fact in issue without inference or presumption. Stated differently, direct evidence
demonstrates on its face that the employment decision was reached for discriminatory
reasons." *Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1117 (10th Cir. 2007)...".

[24] "**To establish a prima facie failure-to-hire claim, "[t]he plaintiff must show:
(i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for
which the employer was seeking applicants; (iii) that, despite his qualifications,
he was rejected; and (iv) that, after his rejection, the position remained open and the
employer continued to seek applicants from persons of complainant's qualifications."**...".

*Easter Seals El Mirador*, 859 F.3d 957, 970 (10th Cir. 2017)…. **The employer's explanation must be** "legally sufficient to justify a judgment for the defendant" by "clearly set[ting] forth . . . **admissible evidence.**" *Burdine*, 450 U.S. at 255; see also *DePaula*, 859 F.3d at 973 (…). "If the defendant articulates a nondiscriminatory reason, the burden shifts back to **plaintiff to show** a genuine issue of material fact as to whether the **defendant's reason . . . is pretextual.**" *Dewitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1308 (10th Cir. 2017)…...".

The "…**basic standard** originally articulated in *McDonnell Douglas* [a failure to hire case]…**only** required a plaintiff to show that the employer continued to seek applicants.". *Perry*. "The Supreme Court has held that **when a qualified [Jaiyeola]…, who is a member of a racial minority group that has traditionally suffered workplace discrimination, is not hired for a job in which a vacancy exists, the failure to hire alone is sufficient to raise the inference of discrimination**. See *International Bhd. of Teamsters v. United States*, 431 U.S. 324, 358 n.44 (1977) (…**Title VII claims for failure to hire**….). In *Teamsters*, the Court stated,

The *McDonnell Douglas* case involved…unlawful discrimination. … Although the *McDonnell Douglas* formula **does not require direct proof of discrimination, it does demand that the alleged discriminatee demonstrate at least that his rejection did not result from the two most common legitimate reasons on which an employer might rely to reject a job applicant: an absolute or relative lack of qualifications or the absence of a vacancy in the job sought**. **Elimination of these reasons for the refusal to hire is sufficient,**..…**to create an inference that the decision was a discriminatory one**.

*Id.* The Court….in *Teamsters*: "[W]e are willing to presume [discrimination] largely

-7-

because we know from our experience that more often than not **people do not act in a totally arbitrary manner, without any underlying reasons, especially in a business setting**." *Furnco Constr. Corp. v. Waters*, <u>438 U.S. 567, 577</u> (1978)."  *Id.*

In its Answer[25], **Garmin asserted (Six times)** that Jaiyeola applied for the position of "Advanced Materials Engineer – Plastics and Metals"[26].  **Jaiyeola APPLIED and INTERVIEWED for the position of "Advanced Materials Engineer - Metals-19001CL" at Garmin**.  See: **1.)** Copy of Garmin's Job Advertisement at Indeed.com[27], **2.)** Electronic Mail of July 3, 2019 acknowledging[28] Jaiyeola's application, **3.)** Mr. Evan Northup's (Garmin's Human Resources Coordinator) Electronic Mail of July 22, 2019[29], **4.)** Mr. Evan Northup's (Garmin's Human Resources Coordinator) Electronic Mail of July 26, 2019[30], **5.)** Mr. Evan Northup's (Garmin's Human Resources Coordinator) Electronic Mail of July 29, 2019[31], and **6.)** Mr. Michael Risinger's (Garmin's Human Resources) Electronic Mail of November 13, 2019[32].

**Jaiyeola NEITHER APPLIED nor INTERVIEWED for the position of "…Advanced**

---

[25] <u>ECF No. 9</u>, DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT.

[26] **1.)** "Defendant admits that Plaintiff applied for the position of Advanced Materials Engineer – Plastics and Metals (19001CL) on July 3, 2019.", <u>ECF No. 9, p. 8</u> at ¶ "20"; **2.)** "Defendant admits the allegations in Paragraph 52 of the Complaint (with the caveat that the correct position title was Advanced Materials Engineer – Plastics and Metals).", <u>ECF No. 9, p. 20</u> at ¶ "52"; **3.)** "Defendant admits the allegations in Paragraph 62 of the Complaint (with the caveat that the correct position title was Advanced Materials Engineer – Plastics and Metals).", <u>ECF No. 9, p. 22</u> at ¶ "62"; **4.)** "Defendant admits that Plaintiff applied for the position of Advanced Materials Engineer – Plastics and Metals.", <u>ECF No. 9, p. 27</u> at ¶ "79"; **5.)** "Defendant admits that Plaintiff applied for the position of Advanced Materials Engineer – Plastics and Metals.", <u>ECF No. 9, p. 29</u> at ¶ "90"; **6.)** "Defendant admits that Plaintiff applied for the position of Advanced Materials Engineer – Plastics and Metals (19001CL) on July 3, 2019.", <u>ECF No. 9, p. 33</u> at ¶ "107".

[27] <u>ECF No. 1-6, p. 2</u>.

[28] <u>ECF No. 1-7, p. 2</u>.

[29] Exhibit C: Mr. Evan Northup's (Garmin's Human Resources Coordinator) Electronic Mail of July 22, 2019.

[30] <u>ECF No. 1-12, p. 2</u>.

[31] Exhibit D: Mr. Evan Northup's (Garmin's Human Resources Coordinator) Electronic Mail of July 29, 2019.

[32] <u>ECF No. 1-17, p. 2</u>.

**Materials Engineer – Plastics and Metals (19001CL)**…."[33] **at Garmin**.

Garmin's assertion that Jaiyeola applied for the position of "Advanced Materials Engineer – Plastics and Metals" is a fraud on the Court.   "…"**Fraud on the court . . . is fraud which is directed to the judicial machinery itself and** ….." *Bulloch v. United States*, 763 F.2d 1115, 1121 (10th Cir. 1985). It is "fraud where the court or a member is corrupted or influenced or … — thus where the impartial functions of the court have been directly corrupted." *Id*. "'….**the fabrication of evidence by a party in which an attorney is implicated will constitute a fraud on the court**.'" *Weese v. Schukman*, 98 F.3d 542, 552-53 (10th Cir. 1996) (quoting *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1338 (5th Cir. 1978)).".

"The complainant in a Title VII trial must carry the initial burden….of establishing a prima facie case of racial discrimination. This may be done by showing (i) that he belongs to a racial minority; **(ii) that he applied and was qualified for a job for which the employer was seeking applicants**; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.".   *McDonnell Douglas*.  As Discovery would show, **Jaiyeola has met all the four requirements in the "initial burden" under *McDonnell Douglas***.  Garmin has committed a fraud on the Court by asserting (Six Times) that Jaiyeola applied for the position of "Advanced Materials Engineer – Plastics and Metals"[34].  Garmin advertised the position of

---

[33] ECF No. 9, p. 8 at ¶ "20".

[34] **1.)** "Defendant admits that Plaintiff applied for the position of Advanced Materials Engineer – Plastics and Metals (19001CL) on July 3, 2019.", ECF No. 9, p. 8 at ¶ "20"; **2.)** "Defendant admits the allegations in Paragraph 52 of the Complaint (with the caveat that the correct position title was Advanced Materials Engineer – Plastics and Metals).", ECF No. 9, p. 20 at ¶ "52"; **3.)** "Defendant admits the allegations in Paragraph 62 of the Complaint (with the caveat that the correct position title was Advanced Materials Engineer – Plastics and Metals).", ECF No. 9, p. 22 at ¶ "62"; **4.)** "Defendant admits that Plaintiff applied for the position of Advanced Materials Engineer – Plastics and Metals.", ECF No. 9, p. 27 at ¶ "79"; **5.)** "Defendant admits that Plaintiff applied for the position of Advanced Materials Engineer – Plastics and Metals.", ECF No. 9, p. 29 at ¶ "90"; **6.)**

"Advanced Materials Engineer –Metals" and Jaiyeola applied and was interviewed for the position of "Advanced Materials Engineer –Metals".  Garmin is intentionally trying to negate Jaiyeola's fulfillment of the "**(ii) that he applied and was qualified for a job for which the employer was seeking applicants**" requirement in Jaiyeola's *McDonnell Douglas* initial burden.

In *Leo v. Garmin International, Inc.*, 431 F. App'x 702 (10th Cir. 2011), the Court stated: "Citing *Garrison v. Gambro, Inc.*, 428 F.3d 933, 937 (10th Cir. 2005), the court recognized that to establish a **prima facie case of disparate treatment in the context of failure to hire**, Mr. Leo was required to show, among other things, that he was qualified for the job of software engineer." and "[Garmin] is entitled to define the qualifications for a job as long as the qualifications are not discriminatory. See *Garrison*, 428 F.3d at 938 (recognizing that the courts should not second guess the business decisions of employers in the absence of evidence of discriminatory motives)." but "Mr. Leo's failure to prove a prima facie case ..." and "...Garmin set out a legitimate nondiscriminatory reason for not hiring Mr. Leo, i.e. he was not qualified, and Mr. Leo failed to "present evidence that that proffered reason was pretextual, i.e. unworthy of belief." *Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1165 (10th Cir. 1998) (….)."  In this instant, **Jaiyeola has shown in his Complaint (and will show during Discovery), "a prima facie case of disparate treatment in the context of failure to hire"**.  "[Garmin]...define[d] the qualifications for [Advanced Materials Engineer - Metals] job" that Garmin advertised at www.indeed.com and confirmed by Garmin's Human Resources in electronic emails with Jaiyeola and during Jaiyeola's phone and on-site interviews at Garmin's Headquarters/Manufacturing Center in Olathe, Kansas. **Jaiyeola applied and interviewed for the job of [Advanced Materials Engineer - Metals]" that Garmin advertised and confirmed as valid.**  Jaiyeola has shown in his Complaint (and

---

"Defendant admits that Plaintiff applied for the position of Advanced Materials Engineer – Plastics and Metals (19001CL) on July 3, 2019.", ECF No. 9, p. 33 at ¶ "107".

will show during Discovery) that **Jaiyeola was not hired because Garmin's "business decisions .. [has] ..evidence[s] of [Title VII (Race (African American), Color (Black), and National Origin (Nigerian)), ADEA, ADA, KADEA] discriminatory motives" in addition to Subordinate Bias Liability ("cat's paw" theory of liability)**.  Jaiyeola will **"..prove a prima facie case ...[against Garmin]..,...Garmin [had discriminatory] reason[s] for not hiring [Jaiyeola], i.e. [Jaiyeola] was qualified, and [Jaiyeola] [will] "present evidence that [Garmin's] reason[s] [for not hiring Jaiyeola] was[were] pretextual, i.e. unworthy of belief."**.

      Garmin's Motion to Dismiss or Garmin's Motion for Judgment on the Pleadings should be Denied.  Garmin and Garmin's Attorneys (Ms. Kerri S. Reisdorff and Ms. Margaret K. Young) should be Sanctioned for Fraud on the Court.

**III.**    **No Evidence that "Garmin notified the remaining candidates…"**

      Jaiyeola cannot identify in Garmin's Answer[35] that "**Garmin notified the remaining candidates**,…..that they were not selected for hire. [Doc. 9, Answer to ¶¶ 37, 44]."[36] as asserted in Garmin's Answer.  Garmin is filing a Motion to Dismiss with no complete case record to support the Motion.  By making an assertion without the required concrete facts Garmin has not done due diligence as regards the record for this case.  Garmin is apparently waiting for the Discovery stage before providing the facts and pleadings required for the litigation in this case.  For the reasons stated above, Garmin's Motion to Dismiss or Garmin's Motion for Judgment on the Pleadings should be Denied.

---

[35] ECF No. 9, DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT.
[36] ECF No. 11, p. 1 at ¶ "II. FACTUAL BACKGROUND", Lines 6-7.

## IV.    Standard for a Motion to Dismiss Under Rule 12(b)(6)

In *Khalik v. United Air Lines*,[37] the Tenth Circuit stated that "Under <u>Federal Rule of Civil</u> <u>Procedure 8(a)(2)</u>, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." …., the Supreme Court clarified this pleading standard in *Bell Atlantic Corp. v. Twombly*, <u>550 U.S. 544</u>, <u>127 S.Ct. 1955</u>, <u>167 L.Ed.2d 929</u> (2007), and *Ashcroft v. Iqbal*, <u>556 U.S. 662</u>, <u>129 S.Ct. 1937</u>, <u>173 L.Ed.2d 868</u> (2009): to withstand a Rule 12(b)(6) motion to dismiss, a complaint must contain enough allegations of fact, taken as true, "to state a claim to relief that is plausible on its face. "*Twombly*, <u>550 U.S. at 570</u>, <u>127 S.Ct. 1955</u>. A plaintiff must "nudge [his] claims across the line from conceivable to plausible" in order to survive a motion to dismiss. *Id*.".  "..we have held that plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs `have not nudged their claims across the line from conceivable to plausible.'" *Robbins v. Oklahoma*, <u>519 F.3d 1242, 1247</u> (10th Cir.2008) (quoting *Twombly*, <u>550 U.S. at 570</u>, <u>127 S.Ct. 1955</u>)."  *Id*.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[38] and "..**determining whether a complaint states a plausible claim is context-specific**, requiring the reviewing court to draw on its experience and common sense.". *Id*. ".. **the 12(b)(6) standard does not require that [Jaiyeola] establish a prima facie case** in her complaint, the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim."[39]  "But ***Twombly and Iqbal* do not require that the complaint include all facts necessary to carry the plaintiffs burden**. "**Asking for plausible grounds to**

---

[37] *Khalik v. United Air Lines*, <u>671 F.3d 1188, 1191</u> (10th Cir. 2012)
[38] *Ashcroft v. Iqbal*, <u>556 U.S. 662, 678</u> (2009).
[39] *Khalik v. United Air Lines*, <u>671 F.3d 1188, 1191</u> (10th Cir. 2012).

infer "the existence of a claim for relief" does not impose a probability requirement at the

pleading stage; it simply calls for enough fact to raise a reasonable expectation that

discovery will reveal evidence" to prove that claim. *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955.

In this case, we hold that....has pled "enough facts to state a claim to relief that is plausible on its

face." *Id*. at 570, 127 S.Ct. 1955."[40].

    In *Norman v. Syracuse High Sch.*,[41] the District Court stated "…"Generally, **a court**

**considers only the contents of the complaint when ruling on a 12(b)(6) motion**.  " *Berneike v.*

*CitiMortgage, Inc.*, 708 F.3d 1141, 1146 (10th Cir. 2013) …). **But a court may consider**

**"documents incorporated by reference in the complaint;** documents referred to in and central

to the complaint, **when no party disputes its authenticity**; and 'matters of which a court may

take judicial notice.'".

### V.    Count II is Not a Redundant of Count I: Title VII and Cat's Paw Theory

    Garmin alleges that Count II in Jaiyeola's Complaint is Redundant to Count I and asserted

that "It is well settled that a legal theory, such as the "cat's paw" theory, does not constitute a

separate cause of action. See *Thomas v. Berry Plastics Corp.*, 803 F.3d 510, 514 (10th Cir.

2015)"[42].  Plaintiff disagrees.  "*Thomas* argues that ....he presented sufficient circumstantial

evidence ....**reason for his termination was a pretext for retaliation based on a cat's-paw**

**theory of recovery**." and "*Thomas* also alleged age and race discrimination. We do not consider

the age-discrimination claim because *Thomas* does not pursue it on appeal. We also do not

consider the race-discrimination claim because ***Thomas* waived the pretext theory—the only**

**theory of recovery for race discrimination he offers on appeal—by failing to argue pretext**

---

[40] *Al-Kidd v. Ashcroft*, 580 F.3d 949, 977 (9th Cir.2009).
[41] *Norman v. Syracuse High Sch.*, Case No. 1:12-cv-00021-EJF (D. Utah Mar. 28, 2013).
[42] ECF No. 11, p. 3 at ¶ " A. Count II is Redundant of Count I and Therefore, Should be Dismissed", Lines 7-9.

below. ..."  *Id.* *Thomas* pursued only the **retaliation claim on appeal based on the cat's paw theory**; a "subordinate bias theory"[43].

The cat's paw theory is one of the recovery theories in employment discrimination cases; others include the Mixed Motive theory, the Pretext theory, and the Hostile Work Environment theory, and Disparate Impact Theory.

"In *Staub v. Proctor Hospital*,[[44]] the United States Supreme Court accepted the "cat's paw" theory of establishing liability in an employment case. In doing so, the Court endorsed a view which had long prevailed among the Circuit Courts of Appeal. See, e.g., *Arendale v. City of Memphis*, <u>519 F.3d 587, 604</u> n.13 (6th Cir. 2008) ("When an adverse [employment] decision is made by a supervisor who lacks impermissible bias, but that supervisor was influenced by another individual who was motivated by such bias, this Court has held that **the employer may be held liable under a 'rubber-stamp' or 'cat's paw' theory of liability**."); *EEOC v. BCI Coca-Cola Bottling Co.*, <u>450 F.3d 476, 484</u> (10th Cir. 2006) (noting that the "cat's paw" and "rubber stamp" theories of subordinate liability have been "overwhelmingly" endorsed, including by the 3rd, 6th, 7th, 8th, 9th, 11th, and D.C. Circuits); *Roberts v. Principi*, <u>283 F. App'x 325, 333</u> (6th Cir. 2008) (defining "cat's paw" theory where (1) biased subordinate, not nominal decisionmaker, is driving force behind adverse employment action, (2) decisionmaker does not independently evaluate the employee, and (3) biased subordinate "clearly causes" the adverse employment action); *Llampallas v. Mini-Circuits, Lab, Inc.*, <u>163 F.3d 1236, 1249</u> (11th Cir. 1998) ("In effect, the [biased actor] is the decisionmaker, and the titular `decisionmaker' is a mere conduit for the [biased actor's] discriminatory animus."); *Cobbins v. Tennessee Dept. of Transp.*, <u>566 F.3d 582, 587</u> n.5 (6th Cir. 2009) ("In the employment discrimination context, what

---

[43] *EEOC v. BCI Coca-Cola Bottling Co.*, <u>450 F.3d 476, 484</u> (10th Cir. 2006)
[44] *Staub v. Proctor Hospital*, 562 U.S. ___, <u>131 S.Ct. 1186</u> (2011)

is known as the 'cat's paw' theory refers to a situation in which a biased subordinate, who lacks

decisionmaking power, influences the unbiased decisionmaker to make an adverse [employment]

decision, thereby hiding the subordinate's discriminatory intent."). Courts have found that

imposing liability on the employer in this context is in accord with the agency principles and

policies underlying Title VII. See, e.g., *Roberts v. Principi*, 283 F. App'x at 333; BCI Coca-Cola,

450 F.3d at 485-86.  Some courts, notably the Fourth Circuit, interpret the doctrine narrowly,

requiring, inter alia, evidence that the biased actor was principally responsible for the adverse

employment action. See *Lockheed Martin*, 354 F.3d 277, 291 (4th Cir. 2004) (en banc) ("[A]n

aggrieved employee who rests a discrimination claim under Title VII or the ADEA upon the

discriminatory motivations of a subordinate employee must come forward with sufficient

evidence that the subordinate employee possessed such authority as to be viewed as the one

principally responsible for the decision or the actual decisionmaker for the employer."). Other

courts, such as the Ninth Circuit have declined to adopt this narrow standard, noting that "many

companies separate the decisionmaking function from the investigation and reporting functions,

and that . . . bias can taint any of those functions." *Poland v. Chertoff*, 494 F.3d 1174, 1182 (9th

Cir. 2007) (quoting *BCI Coca-Cola*, 450 F.3d at 488); see also *Lust v. Sealy, Inc.*, 383 F.3d 580,

584 (7th Cir. 2004) (criticizing the Fourth Circuit's approach as "inconsistent with the normal

analysis of causal issues in tort litigation"). Under the more expansive standard, bias may be

imputed to the employer where the biased subordinate influences the employer's decision. See

*Poland*, 494 F.3d at 1182 (imputing liability where (1) the biased subordinate "sets in motion a

proceeding . . . that leads to an adverse employment action" and (2) **"the plaintiff can prove that**

**the . . . biased subordinate influenced or was involved in the decision or decisionmaking**

**process."**); *BCI Coca-Cola*, 450 F.3d at 490-93 (denying summary judgment where the

decisionmaker relied primarily on facts provided from a biased subordinate). On the other hand,

-15-

**an employer can usually defeat subordinate bias theories where it performs an independent investigation of the allegations against the employee**. *Id.* at 488."[45,46]  **In this instant, there is no evidence that Garmin performed "an independent investigation of the allegations against [Mr. Jeff Minelli's (Garmin's Director of Mechanical Engineering)]"**. *Id.*  **Discovery will show if Garmin followed its EEO[47] policy and did an investigation**.

In *Singh v. Cordle*,[48] "Plaintiff argues that the district court erred in granting summary judgment on his claims that **ESU violated Title VII and the KAAD by choosing to terminate his employment on the basis of race, color, and national origin.  Plaintiff relies on the "cat's-paw" theory of liability**, which allows a plaintiff to establish pretext even without evidence that the "actual decisionmaker" possessed an unlawful motive. *Thomas v. Berry Plastics Corp.*, 803 F.3d 510, 514 (10th Cir. 2015). An employer is liable for discrimination under this theory if a subordinate to the decisionmaker "performs an act motivated by [discriminatory] animus that is intended by the [subordinate] to cause an adverse employment action, and . . . that act is a proximate cause of the ultimate employment action." ***Staub v. Proctor*, 562 U.S. 411, 422 (2011) (describing the standard for the cat's-paw theory of liability in the context of the Uniformed Services Employment and Reemployment Rights Act)**. The subordinate's biased behavior must be a "proximate cause" of the adverse decision. *Staub*, 562 U.S. at 422 (emphasis added); *Lobato v. New Mexico Environment Dept.*, 733 F.3d 1283, 1294–96 (10th Cir. 2013) (**applying *Staub* proximate-cause standard to cat's-paw theory for Title VII claim**). If a final decisionmaker fires an employee based on "uncritical reliance" on facts provided by a biased subordinate, the subordinate's bias is the proximate cause of the employment action. *Lobato*, 733

---

[45] *Staub v. Proctor Hospital*, 562 U.S. ___, 131 S.Ct. 1186 (2011)
[46] http://www.civilrightsfirm.com/cats-paw-doctrine/
[47] ECF No. 1-18, p. 2, Garmin's EEO Policy Statement.
[48] *Singh v. Cordle*, No. 17-3230 (10th Cir. 2019).

F.3d at 1294 (internal quotation marks and brackets omitted); see *Staub*, 562 U.S. at 421.".

In *BCI Coca–Cola*, the Tenth Circuit asserted that "We reaffirm our earlier decisions holding that, because a plaintiff must demonstrate that the actions of the biased subordinate caused the employment action, an employer can avoid liability by conducting an independent investigation of the allegations against an employee." but **"Simply pulling the file therefore does not constitute an independent investigation..".**  *Id.*  Jaiyeola followed Garmin's EEO[49] policy and reported[50] the failure-to-hire issue to Garmin.  There is no evidence that Garmin did an investigation but **if Garmin did an investigation (which should come out during discovery), this Court will "..find [Garmin's] "investigation" inadequate, as a matter of law, to defeat the inference that [Mr. Jeff Minelli's (Garmin's Director of Mechanical Engineering)] racial bias tainted the decision.  *Id.*"**; **not to hire Jaiyeola**.

Nothing in *Thomas* (Garmin's case law on the cat's paw theory) or similar cases that Plaintiff reviewed suggests that "It is well settled that a legal theory, such as the "cat's paw" theory, does not constitute a separate cause of action..".  The **U.S. Supreme Court in *Staub v. Proctor Hospital*, 131 S.Ct. 1186 (2011), asserted that the cat's paw theory can be used "to prove [Jaiyeola's] claim under Title VII"** because the theory does **"constitute a separate cause of action"**; the Supreme Court reversed the Seventh Circuit (*Staub v. Proctor Hosp.*, 560 F.3d 647, 655-56  (7th Cir. 2009)) and held that **"If a supervisor performs an act motivated by anti[Title VII] animus that is intended by the supervisor to cause an adverse employment action, and if that act is a proximate cause of the ultimate employment action, then the employer is liable under [Title VII]"**.  For the reasons stated above, Garmin's Motion to Dismiss should be Denied.

---

[49] ECF No. 1-18, p. 2, Garmin's EEO Policy Statement.
[50] ECF No. 1, ¶¶ 39-42, 44-45, Jaiyeola Complained to Garmin.

## VI.    Plaintiff's 42 U.S.C. Section 1983 Claim: Garmin is A State Actor

Count VI in Plaintiff's Complaint[51] alleges "Deprivation of Due Process Under the

Fourteenth Amendment, 42 U.S.C. § 1983"[52].

In *Lane v. Johnson*,[53] this Court stated the following:

"Section § 1983 provides in relevant part that:

Every person who, under color of any statute, ordinance, regulation, custom or usage . . .

subjects or causes to be subjected, any citizen of the United States or other person . . . to the

deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be

liable to the party injured in an action at law. 42 U.S.C. § 1983. Thus, **to state a claim under §**

**1983, a party must allege that defendants deprived him of a federal right and that**

**defendants acted under color of law**. *Johnson v. Rodriguez*, 293 F.3d 1196, 1202 (10th Cir.

2002) (citing *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978).

For the purposes of this analysis, the court assumes that plaintiff has alleged a violation of a

federal right. Therefore, the court proceeds directly to the issue of whether the defendants' action

constitutes state action.

Although § 1983 actions are typically brought against state officers or employees, **the**

**language of § 1983 and this Circuit's interpretation of this language permit plaintiffs to**

**bring actions against private persons acting under color of law**. *Id*. at 1202. To determine

whether **a private person's action constitutes state action**, the court employs a two-part test:

First, the deprivation must be caused by the exercise of some right or privilege created by

the State or by a rule of conduct imposed by the state or by a person for whom the State is

---

[51] ECF No. 1, Plaintiff's Complaint.
[52] ECF No. 1, ¶¶ 106-118, "Deprivation of Due Process Under the Fourteenth Amendment, 42 U.S.C. § 1983".
[53] *Lane v. Johnson*, 385 F. Supp. 2d 1146 (D. Kan. 2005)

-18-

responsible . . . Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor. This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State. *Id*. at 1202 (citing *Lugar v. Edmondson Oil Co., Inc.*, <u>457 U.S. 922, 937</u>, <u>102 S.Ct. 2744</u>, <u>73 L.Ed.2d 482</u> (1982)).

To help decipher which private parties may be considered state actors, the Tenth Circuit has outlined four tests: 1) the public function test; 2) the nexus test; 3) **the symbiotic relationship test**; and 4) the joint action test. *Gallagher v. "Neil Young Freedom Concert*," <u>49 F.3d 1442</u> (10th Cir. 1995). Taking a flexible approach to these tests, the court inquires whether the conduct allegedly causing the deprivation of a federal right is "fairly attributable to the [s]tate" and whether the alleged deprivation of constitutional rights was "caused by exercise of some right or privilege created by the state or by a rule of conduct imposed by the state or by a person for whom the state is responsible." *Id*. at 1447. **The tests require a fact specific inquiry to determine which test should most appropriately be applied**. *Id*. at 1448.".

In *Gallagher*, in a "**flexible approach to the state action doctrine**", "The Court has also inquired whether **the state has "so far insinuated itself into a position of interdependence" with the private party**, *Burton v. Wilmington Parking Auth.*, <u>365 U.S. 715, 725</u>, <u>81 S.Ct. 856, 861-62</u>, <u>6 L.Ed.2d 45</u> (1961), that there is a **"symbiotic relationship"** between them, *Moose Lodge No. 107 v. Irvis*, <u>407 U.S. 163, 175</u>, <u>92 S.Ct. 1965, 1972-73</u>, <u>32 L.Ed.2d 627</u> (1972).". *Id*. "In *Burton*, the Court held that a privately owned restaurant's refusal to serve an African-American customer constituted state action because the restaurant leased space from a parking garage owned by a state agency. The Court reasoned that the **state's leasing of space to the restaurant conferred a variety of mutual benefits on each party**. **The restaurant obtained tax benefits and convenient parking for its customers**. **Public funds were used** for building

maintenance. In turn, **the restaurant was "a physically and financially integral and, indeed, indispensable part of the State's plan to operate its project as a self-sustaining unit."** *Burton*, 365 U.S. at 723-24, 81 S.Ct. at 861. Significantly, because the restaurant claimed that serving African-Americans would injure its business, **the *Burton* Court found that "profits earned by discrimination not only contribute[d] to, but also [were] indispensable elements in, the financial success of a governmental agency**." *Id.* at 724, 81 S.Ct. at 861.".

"*In Milo v. Cushing Mun. Hosp.*,[54] we applied *Burton* to find that the suspension of the staff privileges of two physicians at a municipally owned hospital constituted state action." because "A **bond indenture** [[55]] governed the manner in which the private corporation could use revenues generated from operation of the hospital. *Id*. Citing *Burton*, **we found the state action necessary to support the physicians' claims."**.   *Gallagher*.

Garmin has its Headquarters and a Manufacturing Center in the City of Olathe (In Shawnee Native American, the meaning of the name "Olathe" is: "Beautiful".), Kansas.  In 2017, in a **"symbiotic relationship"**, (*Gallagher*), "The Olathe City Council...signed off on selling **$200 million** ["In December 2015, the **City Council voted 7-0 in favor of the expansion plan**."[56]] in **industrial revenue bonds ["bond indenture"]** for the planned expansion **at Garmin International Inc.'s campus**. Council members on Tuesday approved the agreement, which also calls for granting the navigation technology company **a 10-year, 75 percent tax**

---

[54] *Milo v. Cushing Mun. Hosp.*, 861 F.2d 1194 (10th Cir. 1988)
[55] "A bond indenture is the contract associated with a bond. The terms of a bond indenture include a description of the bond features, restrictions placed on the issuer, and the actions that will be triggered if the issuer fails to make timely payments.",
https://www.accountingtools.com/articles/2017/5/11/bond-indenture
[56] "Garmin asks Olathe to shovel out incentives for $200M HQ expansion",
https://www.bizjournals.com/kansascity/news/2017/01/26/garmin-olathe-incentives-request.html

abatement[57] ["**Industrial Revenue Bond Tax Phase In**[58]"] **for the new property**."[59]  Garmin "...said the **project will create 150 new jobs with an average salary of $66,653 in the first year**." (*Id.*  ) and "According to a **cost-benefit analysis** of the first-phase project, it will have **a positive net benefit for all affected taxing jurisdictions over the 10-year term**. The present value of those benefits are:

- Olathe, $2.8 million

- Johnson County, $2.1 million

- Olathe school district, $2.3 million

- Johnson County Community College, $535,000

- State of Kansas, $11.6 million"[60]

The City of "**Olathe in September [2016] approved a similar agreement with Garmin, sponsoring $30 million in industrial revenue bonds for a parking garage**."[61]

An Industrial Revenue Bond is "**A tax-exempt municipal bond in which [Olathe City Council] is seeking to raise money for [Garmin]**. It may be used, for example, **to build a factory or some other facility on behalf of [Garmin]**. [Olathe City Council] issues an industrial

---

[57] Tax Abatement, "a reduction in the amount of tax that a business would normally have to pay in a particular situation, for example to encourage investment: The development is eligible for a 10-year property tax abatement. Without tax abatement, I will never get the loans to finance the project. a tax abatement package/programme.",
https://dictionary.cambridge.org/us/dictionary/english/tax-abatement
[58] Tax Phase-In is "The process to phase in tax changes resulting from reassessment, established at the discretion of City Council.".
[59] "Garmin gets go-ahead on Olathe campus expansion",
https://www.kansascity.com/news/local/community/joco-913/olathe-southwest-joco/article131462394.html; "Olathe, Kansas, 2017 Economic Development Incentives Activity Report, p. 3-5", https://www.olatheks.org/home/showdocument?id=408
[60] "Garmin asks Olathe to shovel out incentives for $200M HQ expansion",
https://www.bizjournals.com/kansascity/news/2017/01/26/garmin-olathe-incentives-request.html
[61] "Garmin seeks $200 million for Olathe headquarters expansion",
https://www.kansascity.com/news/business/development/article128714489.html

revenue bond when [Olathe City Council] wishes **to attract a business and the jobs** [Garmin] brings to the [Olathe City]**,…[Garmin] may be otherwise unable to obtain financing for the project**. [Olathe City Council] issuing the bond must be able to prove that a **public benefit** will be derived from the industrial revenue bond in order to **qualify for tax-exempt status**."[62].

"[Industrial Revenue Bonds] are issued by [Olathe City Council] to cover [Olathe City] development costs and are repaid by [Garmin], not [Olathe City] taxpayers. [Garmin] use the bonds because **[Garmin] typically receive better interest rates and [Garmin] avoid paying sales tax on construction materials"[63] and other taxes**.  Garmin indicated it **"Opened [Garmin's] new manufacturing facility in Olathe[64], Kansas, more than doubling [Garmin's] North American manufacturing capacity."[65]** in its 2019 filings with the Securities and Exchange Commission.

     Using the reasoning in *Gallagher*, **the "flexible approach to the state action doctrine" identifies Garmin as a "state actor" and there is "the state action necessary to support [Jaiyeolas'] claims".**"  *Id.*  For the reasons stated above, Defendant Garmin's Motion to Dismiss should be Denied.

## CONCLUSION

     For the reasons stated above, Defendant Garmin's Motion to Dismiss[66] (regarding Counts

---

[62] Industrial Revenue Bond, https://financial-dictionary.thefreedictionary.com/industrial+revenue+bond

[63] Garmin seeks $200 million for Olathe headquarters expansion, https://www.kansascity.com/news/business/development/article128714489.html

[64] Exhibit E: Olathe, Kansas, "2018 Economic Development Incentives - Activity Report" (April 16, 2019), https://www.olatheks.org/home/showdocument?id=408, p. 2-5.

[65] Garmin's "2018 Business Highlights. 'Opened our new manufacturing facility in Olathe, Kansas, more than doubling our North American manufacturing capacity.'", https://www.sec.gov/Archives/edgar/data/1121788/000130817919000153/lgrmn2019_def14a.htm

[66] ECF No. 10, DEFENDANT'S PARTIAL MOTION TO DISMISS.

II and VI of Jaiyeola's Complaint[67]) for failure to state a claim under which relief can be granted pursuant to Rule 12(b)(6) should be Denied.

For the reasons stated above, Defendant Garmin's Motion to Dismiss under Rule 12(b)(6) should be considered as a Motion for Judgment on the Pleadings under Rule 12(c), and Defendant Garmin's Motion for Judgment on the Pleadings under Rule 12(c) should be Denied.

For the reasons stated above, Defendant Garmin and Garmin's Attorneys (Ms. Kerri S. Reisdorff and Ms. Margaret K. Young) should be Sanctioned for Fraud on the Court.

For the reasons stated above, Jaiyeola further moves for any other relief as this Court deems fair as regards the following Two issues:

**1.)** No evidence in this case's record that "Garmin notified the remaining candidates, including Plaintiff, that they were not selected for hire. [Doc. 9, Answer to ¶¶ 37, 44]."[68] as stated in Garmin's Answer[69] and

**2.)** Any other relief that the Court deems fair.

Respectfully submitted,

Dated: April 14, 2020

Ganiyu Ayinla Jaiyeola, Ph.D., MBA
749 Preserve Circle Drive SE
Apartment 6
Grand Rapids, Michigan 49548
Tel.: 616.635.4025
ganiyu.jaiyeola@gmail.com

*pro se*
PLAINTIFF

---

[67] ECF No. 1, Plaintiff's Complaint.
[68] ECF No. 11, p. 1 at ¶ "II. FACTUAL BACKGROUND", Lines 6-7.
[69] ECF No. 9, DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT.

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 14th day of April, 2020, a copy of the above was filed

electronically via the Court's CM/ECF filing system with a copy sent electronically to:


Kerri S. Reisdorff
Margaret K. Young
OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.
4520 Main Street, Suite 400
Kansas City, Missouri 64111
816-471-1301
816-471-1303 (Facsimile)
kerri.reisdorff@ogletree.com
margaret.young@ogletree.com


ATTORNEYS FOR DEFENDANT




Dated:  April 14, 2020                    _____
                                         Ganiyu Ayinla Jaiyeola, Ph.D., MBA

                                         *pro se*
                                         PLAINTIFF

-24-

Index of Exhibits

Exhibit A     Jaiyeola's Demand Letter (Electronic Mail date-time stamped: **Jan 8, 2020, 2:25 PM**) to Ms. Laurie Minard, Vice President, Human Resources, Garmin.

Exhibit B     Garmin's Reply (Electronic Mail date-time stamped: **Jan 8, 2020, 2:56 PM**) to Jaiyeola's Demand Letter.

Exhibit C     Mr. Evan Northup's (Garmin's Human Resources Coordinator) Electronic Mail of July 22, 2019.

Exhibit D     Mr. Evan Northup's (Garmin's Human Resources Coordinator) Electronic Mail of July 29, 2019.

Exhibit E     Olathe, Kansas, "2018 Economic Development Incentives - Activity Report" (April 16, 2019), pp. 2-5.

# EXHIBIT A

from:    Ganiyu Jaiyeola <ganiyu.jaiyeola@gmail.com>

to:      "Kight, David" <david.kight@garmin.com>

date:    Jan 8, 2020, 2:25 PM

subject:        Demand Letter: RE - Advanced Materials Engineer - Metals-19001CL at Garmin

Mr. Kight,

The attached file is directed to your attention.  Thank you.


Sincerely,

Ganiyu Jaiyeola, Ph.D., MBA

616-635-4025

749 Preserve Circle Drive SE 6
Grand Rapids, Michigan 49548
January 8, 2020
(616) 635-4025
gjaiyeola@yahoo.com
ganiyu.jaiyeola@gmail.com

Ms. Laurie Minard, Vice President, HR

Garmin International

Through:       Mr. David Kight, Garmin International, Legal Dept.


RE:     Advanced Materials Engineer - Metals-19001CL at Garmin


Dear Ms. Minard,

1.     This is a follow-up to my Employment Discrimination complaint that I sent to you on
       November 25, 2019.  I have filed the complaint with the Equal Employment Opportunity
       Commission (EEOC) and the Kansas Human Rights Commission (KHRC) (Ex A).  The
       EEOC has issued me a right-to-sue letter (Ex B).

2.     Unlike in *Leo*[1], I have the facts to back up all my claims, including the claim related to
       the association provision[2] of the Americans with Disabilities Act (ADA).

3.     I would prefer, at this time, to resolve my complaint informally.  Please contact me to
       discuss whether you desire to resolve this matter amicably, privately, and without resort
       to litigation.  If I do not hear from you by January 22, 2020, I will proceed to take action
       to enforce my rights.


Thank you.


Sincerely,


Ganiyu A. Jaiyeola, Ph.D., MBA

---

[1] *Leo v. Garmin International*, Case No. 09-CV-2139 (D. Kan. May 21, 2010)
[2] https://www.eeoc.gov/facts/association_ada.html (December 20, 2017)

# EXHIBIT B

from:    Kight, David <David.Kight@garmin.com>

to:       Ganiyu Jaiyeola <ganiyu.jaiyeola@gmail.com>

date:     Jan 8, 2020, 2:56 PM

subject:        RE: Demand Letter: RE - Advanced Materials Engineer - Metals-19001CL at

Garmin

Mr. Jaiyeola,

We decline to engage in further discussions.  Garmin did not hire anyone for the position you

sought, so you are unable to demonstrate that you were discriminated against.  Further, the

EEOC found that your allegations – even if believed – do not establish a violation of the law.


Sincerely,

Dave Kight

Associate General Counsel

Employment and Regulatory Affairs

Garmin International, Inc.

1200 E. 151st Street

Olathe, Kansas 66062

(913) 440-6151 Direct

(913) 397-9079 Fax

david.kight@garmin.com

# EXHIBIT C

from:     evan.northup@garmin.com
to:       ganiyu.jaiyeola@gmail.com
cc:       evan.northup@garmin.com
date:     Jul 22, 2019, 9:11 AM
subject:  Phone Interview Confirmation

July 22, 2019

Dear Ganiyu,

Thank you very much for your continued interest in Garmin, and specifically, the Advanced Materials Engineer - Metals position.

To confirm, your phone interview is scheduled on **July 23, 2019 at 10:00 am Central Time/11:00 am Eastern Time** with Michelle Cormack, Senior Technical Recruiter.

I am attaching some information on our benefits package.  I encourage you to check out Garmin's Corporate Responsibility Report, a look at our mission, vision, values and dedication to corporate citizenship and environmental awareness.

We look forward to talking with you further regarding your experience and interests.  If you have any accommodation requests, please let me know so that I can make those arrangements.

Evan Northup
Recruiting Coordinator
Evan.Northup@garmin.com
913-440-5356


### Advanced Materials Engineer - Metals

Description :
As a leading worldwide provider of navigation devices and wearable technology, our focus is on developing, designing and supporting superior products. Our advanced technology promotes performance, safety and ease of use in every market we serve. That makes us an engineering and technology company with a keen focus on recruiting talent in those fields. But the same vertical integration business model that keeps all design and manufacturing processes in-house also gives us the incentive to hire top performers from different backgrounds, including operations, finance and accounting, information technology, sales, marketing and communications.

We're seeking an **Advanced Materials Engineer** at our headquarters in Olathe, KS with expertise in metals and their associated finishes to manage relations with key materials suppliers and internal customers to drive technology and innovation that ensure product relevancy.  In this role, you'll be involved with managing supplier relations, driving innovation, and ensuring product integration.  You will also be responsible for assisting the design team in root causing and resolving metal's related issues. Key functions of this role are below:

Managing Supplier Relations

- Perform industry wide survey of material's (i.e. aluminum, steel, titanium, magnesium, and more) manufacturers that meet Garmin's Engineering and Industrial Design requirements.
- Visit suppliers to evaluate their capability to meet high volume manufacturing demands and quality standards.
- Work with suppliers on metal materials and finishes, and capability roadmap, aligning with Garmin's needs.
- Provide technical input to Engineering and our suppliers to resolve quality issues related to materials and finishes.

Driving Innovation

- Continually evaluate new metal materials, finishes, and processes and regularly communicate status to the Product Development Team and Management.
- Bring key suppliers on site to demonstrate capabilities to the larger Garmin team.

Product Integration

- Work closely with the Product Development Team to ensure that new metal materials and processes are properly implemented in design and properly executed by Garmin's suppliers.
- Be our go-to engineer for questions regarding materials and finishes that come up during design.
- Manage database of metal material and finishing options.
- Oversee the process by which new metal materials and finishes are validated.
- Be on the forefront of emerging safety and environmental regulations as related to metal materials and finishes.

OTHER RESPONSIBILITIES:

- Perform other job-related duties as assigned
- Domestic and international travel required

Qualifications:
Bachelor of Science in Materials Science, Mechanical Engineering, Chemical Engineering, Metallurgical Engineering or another degree relevant for successful performance of the essential functions of this job description

- 5+ years of industry experience in material or process development
- Excellent academics (cumulative GPA greater than or equal to 3.0 as a general rule)
- Demonstrated strong and effective verbal, written, and interpersonal communication skills
- Demonstrated knowledge of Garmin's overall product line and customers

- Demonstrates exemplary judgment regarding product usability, customer expectations, and creative product tradeoffs
- Experience with metals and their associated finishes
-
- Ability to organize and direct multiple projects simultaneously
- Experience in providing concise reports with audience appropriate conclusions and recommendations
- Strong attention to detail and resolution to tackle complex problems
- Experience working with suppliers throughout the world

Fluency in Mandarin or Japanese is a plus.

At Garmin, we like to laugh, have fun and work hard. It comes easily when you work on cool products with hard-working individuals who share the same passion. We offer numerous opportunities to get involved – kickball anyone?  – and believe strongly in a work-life balance so your creativity can flow.

Our benefits, designed to lead an evolving marketplace, support innovation and encourage a healthy balance between work and life, keep us competitive and allow our associates to make their own decisions about their well-being and future. We offer a choice of healthcare plans—with low or no premiums—which consistently rank in the 90th percentile when compared to other high-tech employers, plus dental and vision plans for you and your family. In addition, our financial benefits rate 82% above the median for technology companies comparable in size. Our 401K retirement plan provides 5% of pay base contribution plus a match of 75 cents for every dollar you contribute to a maximum of 10% of your compensation. The employee stock purchase plan allows for shares to be bought at a 15% discount.

Relocation assistance provided.  Never been to Kansas City? You are missing out! Check out www.mykc.co

*Garmin International is an equal opportunity employer.  Qualified applicants will receive consideration for employment without regard to race, religion, color, national origin, citizenship, sex, sexual orientation, gender identity, veteran's status, age or disability.*

# EXHIBIT D

from:    evan.northup@garmin.com
to:      ganiyu.jaiyeola@gmail.com
cc:      evan.northup@garmin.com
date:    Jul 29, 2019, 6:19 PM
subject: Garmin Onsite Interview Confirmation

Ganiyu,

We are pleased to confirm your onsite interview on August 14, 2019 at 1:00 pm Central Time (CT) with
Garmin International for our Advanced Materials Engineer - Metals position.
As a part of the interview process, please send contact information including name, email and phone
number for two professional references who have directly supervised or managed your work to my email
Evan.Northup@garmin.com.  If you have access to your most recent performance review, please provide
that document as well.

Garmin is located at 1200 E. 151st Street, Olathe, KS 66062.  You will enter through the North Lobby off
of Ridgeview please park in the Visitors Parking, located on the first floor of the parking garage.  Upon
entering Garmin, let the receptionist know you are scheduled for an interview with Michelle Cormack.

When you arrive at KCI Airport, you will need to locate the appropriate rental car shuttle for
transportation to the rental car facility.  Please decline any prepaid gas options or extra insurance
coverage that the attendant may offer.  Garmin's insurance will cover you and the rental car in case of an
accident.  I have requested that a Garmin unit be provided for you by the rental car agency.  Please
request a Garmin unit if one is not already provided for you.

Please return the rental car with a full tank of gas to the rental car facility.  If you're interviewing in
Kansas City, KCI Car Care Center is located at the Kansas City Airport and is a convenient place to fill
up before you drop the rental car off.  Please feel free to stop at this location: KC Car Care Center, 426
Paris Street, Kansas City, MO 64153-1120,  816-243-5880.

As a helpful hint, the Kansas City airport is set up differently than most airports, and there is only a small
kiosk of food and drinks available in the terminal once you check in through security.  The restaurants
and bars at the airport are all outsideof the security area, and you will not be allowed to bring any drinks
(including water bottles or Starbucks) past security.

I also encourage you to check out this website that highlights a few of the GREAT things about Kansas
City!

Garmin will reimburse you for the expenses you incur while traveling for your interview. Please review
the Candidate Travel Policy prior to your interview. Following your interview, please submit the travel
expense form and all receipts to the human resources coordinator who scheduled your travel.

We look forward to seeing you on August 14, 2019 at 1:00 pm.  Do not hesitate to contact me with
questions or concerns.  If you have any accommodation requests, please let me know so that I can make
those arrangements.

Sincerely,
Evan Northup
Recruiting Coordinator
Evan.Northup@garmin.com
913-440-5356

# EXHIBIT E



# 2 0 1 8

# ECONOMIC DEVELOPMENT INCENTIVES

## A C T I V I T Y   R E P O R T

**Prepared by Resource Management April 2019**

OLATHE

K A N S A S

2017 Economic Development Incentives Activity Report    1

# Contents

Executive Summary                                          2

Industrial Revenue Bonds (IRB)                             3-5

Tax Increment Financing (TIF)                              6

Transportation Development Districts (TDD)                 7

Community Improvement Districts (CID)                      8

Active TIF/TDD/CID Projects                                9-21

Map Identifyng Active TIF/TDD/CID                          22

Benefit Districts                                          23

Map Identifying Active Benefit Districts                   24

Neighborhood Revitalization Area Tax Rebate Program (NRP)  25-32

April 16, 2019



# Executive Summary

Nationally identified as one of the most desirable places to live in the central U.S., Olathe is a progressive city utilizing innovative strategies to produce efficient, responsive government for its residents and business community. Growing and sustaining our economic base is a key priority for the City of Olathe.

The goal of the City is to sustain long-term economic health and vitality of the City through the retention, expansion and attraction of businesses and development that enhance property values, increase personal income, and make a positive contribution to the quality of life of the citizens of Olathe.

The Olathe Economic Development Program is based on a cooperative relationship between the City of Olathe and the Olathe Chamber of Commerce maintaining strong ties with the Johnson County Workforce Partnership, the Kansas City Area Development Council, and the Kansas Department of Commerce.

In partnership with the City, the Olathe Chamber of Commerce works closely with commercial property owners, business owners and developers to assure that all our businesses are functioning at their highest and best use, contributing to the City's tax base and helping us achieve the City's economic development goals. In addition, the Olathe Chamber of Commerce works to actively market the City, recruit new businesses, and help existing businesses thrive.

The Resource Management Department provides annual reports to the Olathe City Council regarding Olathe's economic development activity. These reports provide general information regarding new economic development activity as it relates to the City's industrial revenue bond, tax increment financing, transportation development district, community improvement district, and benefit district programs. The report may also contain other economic development information requested by the City Council from time to time.

## Summary of 2018 Economic Development Incentives Activity

| Incentive Type | Action |
|---|---|
| **Industrial Revenue Bonds** | • Resolution of Intent for 4 projects with tax phase in for 10 years<br>• Bond Authorization for 8 sales tax exemption only projects<br>• Bond Authorization for 7 projects with total investment of $197,724,000<br>• 7 projects completed.  (Attached report provides additional details.) |
| **Community Improvement District** | • 1 New CID (West Market) Created |
| **Tax Increment Financing District** | • 1 TIF District (Southgate) retired |

April 16, 2019

## Industrial Revenue Bond Tax Phase In (IRB)

The City of Olathe may provide qualified businesses a tax phase in of up to 100% of the new real property taxes for up to 10 years by the issuance of industrial revenue bonds.  The issuance of IRBs also allows the City to offer a sales tax exemption on the purchase of building materials in Kansas.



### Resolution of Intent Projects in 2018

| Project | Investment | Phase In | Term | Classification |
|---|---|---|---|---|
| AP Multifamily Investors | $53,925,000 | 100% | 10 yrs | Apartments |
| Bedrock Concrete | $6,500,000 | 50% | 10 yrs | Warehouse-Office |
| Pac Sun Building #2 | $28,450,000 | 50% | 10 yrs | Warehouse |
| Fremato (TVH Warehouse) | $15,850,000 | 50% | 10 yrs | Warehouse |

### IRBs Issued in 2018

| Project | Investment | Phase In | Term | Classification |
|---|---|---|---|---|
| OSC, LLC (Soccer Fields) | $12,400,000 | 100% | 10 yrs | Athletic Fields |
| TSVC, Inc. (Terracon) | $23,000,000 | 65% | 10 yrs | Office |
| Opus Building II | $16,524,000 | 50% | 10 yrs | Warehouse |
| Fremato (TVH Office) | $8,000,000 | 55% | 10 yrs | Office |
| Garmin Realty, LLC | $102,000,000 | 75% | 10 yrs | Warehouse |
| I-35 Logistic Park Building C | $30,000,000 | 50% | 10 yrs | Warehouse |
| Ace Properties, LLC Lot 1 | $5,800,000 | 50% | 10 yrs | Warehouse |

### Sales Tax Exemptions Issued in 2018

| Project | Investment | Classification |
|---|---|---|
| OSC, LLC | $16,000,000 | Commercial/Office |
| MoKan Hospitality, LLC | $20,000,000 | Hotel |
| RoKC Olathe Property | $3,000,000 | Athletic Facility |
| Blackbob KC Self-Storage, LTD | $3,780,000 | Storage Facility |
| Grayson Enterprise, LLC | $2,000,000 | Warehouse/Office |
| Holmes 111, LLC | $14,000,000 | Commercial |
| Bala, LLC/Olathe Plaza, LLC | $8,500,000 | Hotel |
| Woodsonia Real Estate, INC | $2,500,000 | Commercial |

April 16, 2019

## Completed IRB's in 2018

| Project | Location | Phase In | Appraised Value | Classification |
|---|---|---|---|---|
| Corporate Ridge, LLC | 18103 W. 106th St. | 55% | $11,730,000 | Office |
| ICS Blackbob 127, LLC A&B | 12718 S. Black Bob Road | 55% | $13,780,000 | Office |
| Garmin Int'l, Inc (Tower and Warehouse) | 1700 S. Mahaffie Circle | 75% | $99,097,000 | Warehouse-Office |
| Garmin Int'l, Inc. (Manufacturing) | 1700 S. Mahaffie Circle | 75% | $97,641,000 | Manufacturing |
| Sun Life Assurance | 22101 W. 167th St. | 50% | $29,912,000 | Warehouse |
| Karbank Enterprises, LLC (Building 4) | 16850 W. 119th St. | 55% | $10,887,000 | Office |
| US Bank National Association | 24101 W. Valley Pkwy | 55% | $40,851,980 | Office |

April 16, 2019

# Active IRB's in 2018

| Project | Business Park | Address | % Tax Phase In | Effective | Completed | Term |
|---------|---------------|---------|----------------|-----------|-----------|------|
| RKDBD (Delka Designs) | Parkside | 618 N CENTRAL ST, OLATHE, KS | 50% | 2011 | 2020 | 10 yrs |
| Deere and Company | Corporate Ridge | 10789 S RIDGEVIEW RD, OLATHE, KS | 55% | 2012 | 2021 | 10 yrs |
| Logics Control (DVR2) | KC Road | 890 N MART-WAY CT, OLATHE, KS | 50% | 2012 | 2021 | 10 yrs |
| TVH | Standalone | 16355 S LONE ELM RD, OLATHE, KS | 50% | 2013 | 2022 | 10 yrs |
| Webco | Standalone | 20575 W 151ST ST, OLATHE, KS | 50% | 2013 | 2022 | 10 yrs |
| Sun Life Assurance | I-35 Logistics Park | 15250 S GREEN RD, OLATHE, KS | 50% | 2014 | 2023 | 10 yrs |
| Grayson Enterprises, LLC | Deerfield | 1320 S ENTERPRISE ST, OLATHE, KS | 50% | 2015 | 2023 | 10 yrs |
| Grayson Enterprises, LLC | Deerfield | 1330 S ENTERPRISE ST, OLATHE, KS | 50% | 2015 | 2024 | 10 yrs |
| JCOC Holdings, LLC (Custom Store Fronts) | ERL | 1490 W IRONWOOD ST, OLATHE, KS | 50% | 2015 | 2024 | 10 yrs |
| JCKR Properties, LLC (Customer Store Fronts) | ERL | 1432 W IRONWOOD ST, OLATHE, KS | 50% | 2015 | 2024 | 10 yrs |
| Precision Manifold Systems | Standalone | 700 W FRONTIER LN, OLATHE, KS | 50% | 2015 | 2024 | 10 yrs |
| Gunze | Standalone | 1400 S HAMILTON CIR, OLATHE, KS | 50% | 2016 | 2025 | 10 yrs |
| DCI INC (Elecsys) | OPUS KC Road | 846 N MART-WAY CT, OLATHE, KS | 50% | 2016 | 2025 | 10 yrs |
| JDC Olathe, LLC | Standalone | 22525 W 167TH ST, OLATHE, KS | 50% | 2016 | 2025 | 10 yrs |
| TransAmTrucking Inc. | Standalone | 19865 W 156TH ST, OLATHE, KS | 50% | 2016 | 2025 | 10 yrs |
| Garmin Int'l | Standalone | 1200 E 151ST ST, STE #1, OLATHE, KS | 75% | 2017 | 2026 | 10 yrs |
| Himoinsa Power Systems INC | Standalone | 16600 S THEDEN ST, OLATHE, KS | 50% | 2017 | 2026 | 10 yrs |
| Lone Em 716 | Standalone | 16575 S THEDEN ST, OLATHE, KS | 50% | 2017 | 2026 | 10 yrs |
| Odyssey Lone Elm | Standalone | 16231 S LONE ELM RD, OLATHE, KS | 50% | 2017 | 2026 | 10 yrs |
| Orizon | 56 Commerce Industrial Park | 801 W OLD 56 HWY, OLATHE, KS | 50% | 2018 | 2027 | 10 yrs |
| Builder's Stone | Standalone | 665 N LINDENWOOD DR, OLATHE, KS | 50% | 2018 | 2027 | 10 yrs |
| Contrator's Garage | Mahaffie Business Park | 15845 S MAHAFFIE ST, OLATHE, KS | 50% | 2018 | 2027 | 10 yrs |
| William R. Miller | Mahaffie Business Park | 15520 S MAHAFFIE ST, OLATHE, KS | Fixed Pilot | 2018 | 2023 | 6 yrs |

April 16, 2019

# Tax Increment Financing Projects (TIF)

TIF is a development tool which allows cities to pay a portion of redevelopment costs for a new development which is located in the state Enterprise Zone, in a Blighted Area, or a Conservation Area. The redevelopment costs are paid from the new incremental property and sales tax revenue generated by the new development. The existing property and sales tax revenue is "frozen" until the project generates sufficient revenue to pay for redevelopment costs agreed upon between the City and the developer of the Project. Under Kansas law, these redevelopment costs may go toward public infrastructure improvements, including road and utility construction, as well as demolition of existing structures, buy may not go toward private building construction.



The following TIF District began in 2018; Ridgeview Marketplace.

## Active TIF Projects as of 12-31-18

| Project Name | Project Plan Approval Date | Sales Tax Captured*** | Total TIF Bonds Issued*** | Total Project Costs*** | TIF/TDD/CID Reimb. Costs | TIF Elig. Cost Cap*** | Revenues to date (Less Administrative Fee) | % Public Investment of Total Project Cost | TERM of TIF*** |
|---|---|---|---|---|---|---|---|---|---|
| Heritage Crossing TIF | April 25, 2006 | 50% City General | Pay-As-You-Go | $16,441,300 | $3,160,300 | $3,160,300 | $477,867 | 19.2% | 20 years |
| West Village Center TIF | June 6, 2006 | 100% City General | $17,250,000 TIF Bonds | $58,107,263 | $13,928,302 | $13,928,302 | $12,387,733 | 24% | 20 years |
| Olathe Gateway TIF Area 1 | November 28, 2006 | 100% City General | $13,030,000 TIF Bonds | $88,847,597 | $21,759,819 | $12,771,602 | $6,940,611 | 14.4% | 20 years |
| Olathe Gateway TIF Area 2A | -- | -- | -- | -- | $0 | $0 | $1,635,806 | -- | 20 years |
| Olathe Gateway TIF Area 2B | -- | -- | -- | -- | $0 | $0 | $489,230 | -- | 20 years |
| Olathe Entertainment District TIF (3) | -- | -- | -- | -- | $0 | $0 | $31,327 | -- | 20 years |
| Santa Fe and Ridgeview TIF | -- | 50% City General | -- | -- | $0 | $0 | $336,798 | -- | -- |
| Heart of America TIF (Hilton) | December 7, 2010 | 100% City General | Pay-As-You-Go | $17,795,000 | $4,250,000 | $3,750,000 | $1,484,408 | 21.1% | 20 years |
| Ancona TIF | November 20, 2012 | 100% Ad Valorem Property Tax | Pay-As-You-Go | 5,902,160 | $1,561,239 | $2,500,000 | $148,886 | 42.4% | 20 years |
| Heart of America TIF (Conference Center & Hotel) | August 20, 2013 | 100% City General Sales Tax and 100% of TGT | Pay-As-You-Go | $51,000,000 | $19,580,262 | N/A | $3,371,637 | 38.4% | 20 years |
| Ridgeview Marketplace | August 1, 2017 | 100% City General | Pay-As-You-Go | 59,950,000 | $12,500,000 | $8,500,000 | $9,002 | 20.9% | 15 years |

*At the time of project financing

**Date of creation

***Pre-Development agreement

April 16, 2019

# Transportaton Development Districts (TDD)

TDD is a special taxing district whereby a petitioner of 100% of the landowners in an area request either the levy of special assessments or the imposition of a sales tax of up to 1% on goods and services sold within a given area.

Under Kansas law, the revenue generated by TDD special assessments or sales tax may pay the costs of transportation infrastructure improvements in and around new development



## Active TDD Projects as of 12-31-18

| Project Name | Project Plan Approval Date | Sales Tax Captured | Total TDD Bonds Issued | Total Project Costs | TIF/TDD/CID Reimb. Costs | TDD Eligible Cost Cap | Revenues to date (Less Administrative Fee) | % Public Investment of Total Project Cost | Term of TDD |
|---|---|---|---|---|---|---|---|---|---|
| Olathe Pointe TDD Phase I | November 8, 2005 | 1% TDD Sales Tax | Pay-As-You-Go (50% to Developer/50% to City) | | | | $4,772,177 | | 22 years |
| Olathe Pointe TDD Phase II | November 8, 2005 | 1% TDD Sales Tax | Pay-As-You-Go (100% to Developer) | $30,000,000 | N/A | $15,000,000 | $756,909 | 50% | 22 years |
| | | | | | | | | | |
| Olathe Gateway TDD No. 1A | November 28, 2006 | 1% TDD Sales Tax | $9,195,000 | $88,847,597 | $21,759,819 | $8,988,217 | $3,339,953 | 10.1% | 22 years |
| Olathe Gateway TDD No. 1B | November 28, 2006 | 1% TDD Sales Tax | -- | -- | $    - | | $716,548 | 0 | 22 years |
| ORED TDD Area 2 | January 10, 2006 | 1% TDD Sales Tax | -- | -- | $    - | | $112,076 | 0 | 22 years |
| | | | | | | | | | |
| Ridgeview Falls TDD | April 1, 2008 | 1% TDD Sales Tax | Pay-As-You-Go (75% to Developer/25% to City) | 10,000,000 | N/A | $5,000,000 | $83,362 | 50% | 22 years |

*At the time of project financing

**Date of creation

***Pre-development agreement

April 16, 2019

# Community Improvement Districts (CID)



CID's allows a commercial property owner to petition the City to levy special assessments or impose up to an additional 2% sales tax within a CID to fund eligible project costs.

In accordance with City policy, eligible project costs may include land acquisition and construction costs but may not include ongoing operational costs.

The following CID's began in 2018; Ridgeview Marketplace, Olathe Station, West Market

## Active CID Projects as of 12-31-18

| Project Name | Project Plan Approval Date** | Sales Tax Captured | Total CID Bond Issued*** | Total Project Costs* | TIF/TDD/CID Eligible Cost Cap*** | CID Eligible Cost Cap | Revenues to date (Less Administrative Fee) | Incentive of Total Project Cost | Term of CID |
|---|---|---|---|---|---|---|---|---|---|
| Heart of America CID (Hilton) | October 12, 2010 | 1% CID Sales Tax | Pay-As-You-Go | $17,795,000 | $4,250,000 | $500,000 | $323,503 | 2.8% | 20 years |
| Heart of America CID (Conference Center & Hotel) | May 7, 2013 | 2% CID Sales Tax | Pay-As-You-Go | $51,000,000 | $19,580,262 | N/A | $749,898 | 38.4% | 20 years |
| Heart of America CID (Conference Center & Hotel)***** | May 7, 2013 | Special Assessment | $12,000,000 | $51,000,000 | N/A | $12,000,000 | $2,284,560 | 23.5% | 20 years |
| WIN LLC (Furniture Mall of KS) CID | January 6, 2015 | 1% CID Sales Tax | Pay-As-You-Go | $9,300,000 | N/A | $1,200,000 | $139,241 | 12.9% | 20 years |
| Santa Fe Square Shopping Area**** | May 17, 2016 | 1% CID Sales Tax | Pay-As-You-Go | $11,371,333 | N/A | $2,690,000 | $235,594 | 23.7% | 20 years |
| Ridgeview Marketplace | August 1, 2017 | 100% City General | Pay-As-You-Go | $59,950,000 | $12,500,000 | $4,000,000 | $105,294 | 20.9% | 22 years |
| Olathe Station | August 11, 2017 | 100% City General | Pay-As-You-Go | $33,766,170 | N/A | $2,416,000 | $56,836 | 7.2% | 20 years |
| West Market | May 15, 2018 | 100% City General | Pay-As-You-Go | $8,498,000 | N/A | $2,800,000 | $46,790 | 32.9% | 15 years |

*At the time of project financing

**Date of creation

***Pre-development agreement

*** Bond Ordinance sets max amnt of costs

****$3.8 m in capital improvements excluded from Total Project Costs due to being ineligible for CID reimbursements.

*****Revenues are used to pay the bonds issued for the project.

April 16, 2019

Active City of Olathe
TIF/TDD/CID PROJECTS

## Heritage Crossing TIF

- Project Plan Approval:  April 25, 2006
- City Sales Tax Captured:  50% City General
- Pay-As-You-Go
- TIF Reimbursement Costs: $3,160,300
- Total Project Costs:  $16,441,300
- Inception-to-Date Revenues:  $477,867





April 16, 2019

# City of Olathe Active
# TIF/TDD/CID PROJECTS



- Project Plan Approval: June 6, 2006
- City Sales Tax Captured: 100% City General
- $17,250,000 TIF Bonds
- TIF Reimbursement Costs: $13,928,302
- Total Project Costs: $58,107,263
- Inception-to-Date Revenues: $12,387,733



April 16, 2019

# City of Olathe Active
# TIF/TDD/CID PROJECTS

## Olathe Gateway TIF & TDD Area 1, No. 1B, ORED 2



**TIF**

- Project Plan Approval:  Nov 28, 2006
- City Sales Tax Captured:  100% of City General
- $13,030,000 TIF Bonds
- TIF Reimbursement Costs: $12,771,602
- Total Project Costs:  $88,847,597
- Inception-to-Date Revenues:  $9,096,973

**TDD**

- Date of Creation:  Nov 28, 2006
- City Sales Tax Captured:  1% TDD Sales Tax
- $9,195,000 TDD Bonds
- TDD Reimbursement Costs:  $8,988,217
- Total Project Costs:  $88,847,597
- Inception-to-Date Revenues: $4,168,577



April 16, 2019

City of Olathe Active
TIF/TDD/CID PROJECTS

**Heart of America Hilton Garden Inn TIF & CID**

TIF
- Project Plan Approval:  December 7, 2010
- City Sales Tax Captured:  100% City General
- Pay-as-You-Go
- TIF Reimbursement Costs:  $3,750,000
- Total Project Costs:  $17,795,000
- Inception-to-Date Revenues: $1,484,408



CID
- Project Plan Approval:  October 12, 2010
- City Sales Tax Captured:  1% CID Sales Tax
- Pay-as-You-Go
- CID Reimbursement Costs:  $500,000
- Total Project Costs:  $17,795,000
- Inception-to-Date Revenues:  $323,503



April 16, 2019

City of Olathe Active
TIF/TDD/CID Projects

**Embassy Suites Hotel & Conference Center**
**TIF & CID**



**TIF**

- Project Plan Approval: Aug 20, 2013
- City Sales Tax Captured:  100% City General & 100% Transient Guest Tax
- Pay-as-You-Go
- TIF & CID Reimbursement Costs:  $19,580,262
- Total Project Costs:  $51,000,000
- Inception-to-Date Revenues: $3,371,637

**CID**

- Project Plan Approval:  May 7, 2013
- City Sales Tax Captured:  2% CID Sales Tax
- Pay-as-You-Go
- CID & TIF Reimbursement Costs:  $19,580,262
- Total Project Costs:  $51,000,000
- Inception-to-Date Revenues:  $749,898
- $12,000,000 GO CID Bonds
- Special Assessment



April 16, 2019

# City of Olathe Active TIF/TDD/CID Projects

## Ancona Honda TIF

- Project Plan Approval: Nov 20, 2012
- 100% of Ad Valorem Property Tax Increase
- Pay-as-You-Go
- TIF Reimbursement Costs: $2,500,000
- Total Project Costs: $5,902,160
- Inception-to-Date Revenues:  $148,886





April 16, 2019

# City of Olathe Active
# TIF/TDD/CID Projects

## Olathe Pointe Phase I & II TDD

- Date of Creation:  November 8, 2005
- City Sales Tax Captured:  1% TDD Sales Tax
- Pay-as-You-Go (Phase I 50% to Developer/50% to City; Phase II 100% to Developer)
- TDD Reimbursement Costs:  $15,000,000
- Total Project Costs:  $30,000,000
- Inception-to-Date Revenues: $5,529,085





April 16, 2019

2017 Economic Development Incentives Activity Report      16

## City of Olathe Active
## TIF/TDD/CID Projects

### Ridgeview Falls TTD

- 
- 

- Date of Creation:  April 1, 2008
- City Sales Tax Captured:  1% TDD Sales Tax
- Pay-as-You-Go (75% to Developer/25% to City)
- TDD Reimbursement Costs:  $5,000,000
- Total Project Costs:  $10,000,000
- Inception-to-Date Revenues:  $83,362





April 16, 2019

## City of Olathe Active
## TIF/TDD/CID Projects

# Win, LLC CID

- Date of Creation:  January 6, 2015
- City Sales Tax Captured:  1% CID Sales Tax
- Pay-as-You-Go
- CID Reimbursement Costs:  $1,200,000
- Total Project Costs:  $9,300,000
- Inception-to-Date Revenues:  $139,241





April 16, 2019

City of Olathe Active
TIF/TDD/CID Projects

## Santa Fe Square Shopping Area CID

- 
- 
- 
- Date of Creation:  May 17, 2016
- City Sales Tax Captured:  1% CID Sales Tax
- Pay-as-You-Go
- CID Reimbursement Costs:  $2,690,000
- Total Project Costs:  $11,371,333
- Inception-to-Date Revenues:  $235,594





April 16, 2019

# City of Olathe Active TIF/TDD/CID Projects

## Ridgeview Soccer TIF & CID

- 
- 
- 

**TIF**
- Date of Creation: August 1, 2017
- City Sales Tax Captured: 100% City General and 50% transient guest tax
- Pay-as-You-Go
- TIF Reimbursement Costs: $8,500,000
- Total Project Costs: $59,950,000
- Inception-to-Date Revenues:  $9,002

**CID**
- Date of Creation:  August 1, 2017
- City Sales Tax Captured:  1% CID Sales Tax
- Pay-as-You-Go
- CID Reimbursement Costs: $4,000,000
- Total Project Costs: $59,950,000
- Inception-to-Date Revenues:  $105,294





April 16, 2019

2017 Economic Development Incentives Activity Report    20

City of Olathe Active
TIF/TDD/CID Projects



## Olathe Station CID

- 
- 
- 
- Date of Creation: August 11, 2017
- City Sales Tax Captured: 100% City General
- Pay-as-You-Go
- CID Reimbursement Costs: $2,416,000
- Total Project Costs: $33,766,170
- Inception-to-Date Revenues:  $56,836



OLATHE
K A N S A S

April 16, 2019

City of Olathe Active
TIF/TDD/CID Projects

## West Market CID

- 
- 
- 
- Date of Creation: May 15, 2018
- City Sales Tax Captured: 100% City General
- Pay-as-You-Go
- CID Reimbursement Costs: $2,800,000
- Total Project Costs: $8,498,000
- Inception-to-Date Revenues:  $46,790





April 16, 2019

## Active TIF/TDD/CID's



**Benefit Districts** are a financing and development tool whereby cities can issue general obligation bonds for construction of public improvements and assess the cost to properties that benefit.

In 2018, 29 Benefit Districts were active which included 7 combination projects, 9 sanitary sewer projects, 12 street projects and 1 waterline project.  See table below for detailed listing of all levied Benefit Districts.



### Active Benefit Districts in 2018

| ACTIVE BENEFIT DISTRICTS - TAX YEARS 2018-2032 | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| From | To | Project # | District ID # | Project Name | Final Cost | Final Impr Dist Cost | Final City Cost | Project Type | Tax Years |
| 2009 | 2018 | 30207 | 264 | Aurora Street | 639,000.00 | 639,000.00 | 0.00 | Combination Project | 2009-2018 |
| 2009 | 2018 | 31506 | 266 | Parkside Business Park | 1,105,000.00 | 1,105,000.00 | 0.00 | Combination Project | 2009-2018 |
| 2009 | 2018 | 31606 | 267 | Robben Industrial Park | 904,000.00 | 904,000.00 | 0.00 | Combination Project | 2009-2018 |
| 2010 | 2019 | 30906 | 310 | 167th St Ridgeview West | 2,063,248.00 | 1,560,640.79 | 502,607.21 | Combination Project | 2010-2019 |
| 2010 | 2019 | 33405 | 311 | 148th Lakeshore West | 812,615.00 | 812,615.00 | 0.00 | Combination Project | 2010-2019 |
| 2010 | 2019 | 3-B-031-0 | 309 | Greenwood Drive | 546,302.00 | 546,302.00 | 0.00 | Combination Project | 2010-2019 |
| 2010 | 2029 | 3-B-043-0 | 295 | K-State Bioscience | 6,590,113.00 | 6,590,113.00 | 0.00 | Combination Project | 2010-2029 |
| | | | | COMBINATION PROJECTS SUBTOTAL | 12,660,278.00 | 12,157,670.79 | 502,607.21 | | |
| 2009 | 2018 | 13503 | 268 | Prairie View | 1,349,441.05 | 1,349,441.05 | 0.00 | Sanitary Sewer | 2009-2018 |
| 2010 | 2019 | 16205 | 290 | NE Quadrant of 143rd | 1,203,000.00 | 1,203,000.00 | 0.00 | Sanitary Sewer | 2010-2019 |
| 2010 | 2019 | 1-B-001-0 | 294 | 143rd Sanitary Sewer | 1,202,790.00 | 1,202,790.00 | 0.00 | Sanitary Sewer | 2010-2019 |
| 2010 | 2024 | 17406 | 292 | OMC North Sewer | 155,000.00 | 155,000.00 | 0.00 | Sanitary Sewer | 2010-2024 |
| 2010 | 2024 | 1-B-040-0 | 291 | Life Church | 262,000.00 | 262,000.00 | 0.00 | Sanitary Sewer | 2010-2024 |
| 2012 | 2021 | 1-B-009-0 | 332 | Lakeshore Meadows | 632,408.00 | 632,408.00 | 0.00 | Sanitary Sewer | 2012-2021 |
| 2013 | 2022 | 1-B-052-0 | 333 | Highlands of Southglen | 1,200,877.00 | 1,200,877.00 | 0.00 | Sanitary Sewer | 2013-2022 |
| 2013 | 2027 | 1-B-077-1 | 335 | South Cedar Creek Phase I | 3,789,014.00 | 3,289,014.00 | 500,000.00 | Sanitary Sewer | 2013-2027 |
| 2013 | 2027 | 1-B-086-1 | 336 | South Cedar Creek Phase II & III | 1,487,845.00 | 1,487,845.00 | 0.00 | Sanitary Sewer | 2013-2027 |
| | | | | SANITARY SEWER PROJECTS SUBTOTAL | 11,282,375.05 | 10,782,375.05 | 500,000.00 | | |
| 2010 | 2019 | 35504 | 293 | Murlen Rd 175th to 164th | 6,147,287.82 | 4,884,545.21 | 1,262,742.61 | Streets | 2010-2019 |
| 2010 | 2019 | 3-B-048-0 | 288 | Woodland Road | 446,000.00 | 446,000.00 | 0.00 | Streets | 2010-2019 |
| 2011 | 2020 | 33605 | 323 | 167th St Ridgeview to Blackbob | 6,925,875.00 | 5,820,860.18 | 1,105,014.82 | Streets | 2011-2020 |
| 2010 | 2024 | 33106 | 289 | Blackfoot Drive | 613,000.00 | 613,000.00 | 0.00 | Streets | 2010-2024 |
| 2010 | 2024 | 33604 | 296 | 127th St Clare East | 2,505,270.00 | 943,745.69 | 1,561,524.31 | Streets | 2010-2024 |
| 2011 | 2025 | 33504 | 321 | South Clare Rd for 127th | 3,950,530.00 | 3,950,530.00 | 0.00 | Streets | 2011-2025 |
| 2011 | 2025 | 36706 | 320 | OMC 153rd Street | 1,217,988.00 | 1,183,682.55 | 34,305.45 | Streets | 2011-2025 |
| 2011 | 2025 | 36806 | 319 | OMC North/South Street | 2,381,801.97 | 2,381,801.97 | 0.00 | Streets | 2011-2025 |
| 2011 | 2025 | 1-B-032-R | 322 | 152nd Street | 1,269,515.00 | 1,269,515.00 | 0.00 | Streets | 2011-2025 |
| 2017 | 2026 | 1-B-032-R | 351 | South Cedar Creek Phase IV | 840,000.00 | 840,000.00 | 0.00 | Streets | 2017-2026 |
| 2017 | 2031 | 33505 | 287 | Lone Elm Rd 175th South | 993,000.00 | 993,000.00 | 0.00 | Streets | 2017-2031 |
| 2017 | 2031 | 3-B-080-1 | 350 | Hedge Lane Relocation | 6,345,000.00 | 6,345,000.00 | 0.00 | Streets | 2017-2031 |
| | | | | STREETS PROJECTS SUBTOTAL | 33,635,267.79 | 29,671,680.60 | 3,963,587.19 | | |
| 2009 | 2018 | 53405 | 265 | 143rd St Waterline | 378,000.00 | 378,000.00 | 0.00 | Water Line | 2009-2018 |
| 29 Total Projects | | | | | 57,955,920.84 | 52,989,726.44 | 4,966,194.40 | | |
| Benefit District Cost vs. City Cost | | | | | | 91% | 9% | | |

| Sum of bonds outstanding today | Total | % of Total |
|---|---|---|
| Benefit District (including Benefit District City Cost) | 31,442,103.00 | 17% |
| City-at-Large (Non-Benefit District) | 155,292,897.00 | 83% |
| Grand Total | 186,735,000.00 | 100%  Total |

April 16, 2019

2017 Economic Development Incentives Activity Report     24

## Active Benefit Districts



## Neighborhood Revitalization Program

The Neighborhood Revitalization Act (the Act) was passed by the Kansas Legislature in 1994 and amended in 1996 to provide a tool for municipalities to use in fighting blight and deterioration in residential neighborhoods and commercial districts.  The Act authorizes municipalities to enact a tax rebate program as a way of providing an incentive to property owners to make improvements.  The Act may be applied to either designated areas or to specific properties.

The intent of the Act is to encourage private investment in areas of the city that face deterioration or economic decline.  The program is designed to encourage partnerships between private citizens, businesses, and municipal and county government.  Additionally, it is hoped that the resulting improvements might lead to a ripple effect of improvements on neighboring properties.

The City of Olathe launched its Neighborhood Revitalization Area Tax Rebate Program (NRP) in 2008, including interlocal agreements with other participating taxing jurisdictions.

**Interlocal Agreements**

Because the NRP involves the rebate of taxes resulting from new improvements, and taxes are collected by Johnson County and distributed to the various taxing entities, it is essential that each taxing entity be involved early in the process.  The joint effort among the entities maximizes the benefits of the NRP.

The following are the mill levies for recent years:

| Mill Rates by Participating Taxing Jurisdictions | | | |
|---|---|---|---|
| | Tax Year 2016/ Rebate Year 2017 | Tax Year 2017/ Rebate Year 2018 | Tax Year 2018/ Rebate Year 2019 |
| Johnson County | 19.590 | 19.318 | 19.024 |
| JoCo Parks & Recreation | 3.102 | 3.112 | 3.088 |
| Johnson County Community College | 9.473 | 9.503 | 9.266 |
| City of Olathe | 24.708 | 24.700 | 24.406 |
| USD 233 | 67.774 | 71.174 | 70.665 |
| Total Participating Mill Levy | 124.647 | 127.807 | 126.449 |

**Eligibility**

One of Olathe's NRP districts is consistent with the City's Community Development Block Grant (CDBG) eligible area, and known as the Original Town Area.  The Original Town NRP area covers 5 square miles including approximately 6,839 parcels, of which 75% are residentially zoned.  The average build date for the district is 1963.  Original Town begins at Harold/127th Street and continues south to Old Highway 56.  To the east the boundary starts at Parker Street/K-7 Highway eastward to Interstate-35.

April 16, 2019

Both residential and commercial properties located in the Original Town area of Olathe are eligible to participate in the rebate program.  A map of the Original Town NRP area is included in Appendix A.

A minimum investment of $5,000 for residential and $10,000 for commercial properties is required to participate.  Also, the proposed improvements must increase the assessed value of the property by a minimum of 5% for residential and 10% for commercial properties.  The plan states that any improvements begun on or after June 6, 2008 may be eligible for the incentive.  However, an application for rebate must be filed prior to, or at the same time as the issuance of a building permit.

Olathe's second NRP district is for commercial, multi-family residential, and industrial properties.  The Commercial NRP area covers 180.47 acres of which is zone 26% commercial and of the residential units, 42% are multifamily units.  The Commercial NRP area begins at West Virginia Lane and continues south to railroad tracks just north of West Marley Road.  To the west the boundary starts at South Pitt Street and continues east to South Parker Street.  A map of the Commercial NRP area is included in Appendix A.

A minimum investment of $10,000 is required to participate.  Also, the proposed improvements must increase the assessed value of the property by a minimum of 10%.  The plan states that any improvements beginning after March 31, 2017 may be eligible for the incentive.  The application for rebate must be filed prior to, or at the same time as the issuance of a building permit.

**Rebate**

When improvements are made to residential or commercial property, the appraised and assessed value of the property will normally increase.  The increase in assessed value leads to an increase in the property taxes paid by the owner.  The idea behind the NRP is that a rebate of a portion of the tax increase lessens the total cost of the improvements to the property owner, and encourages private investment in the community.  The rebate applies only to taxes paid on the increase in the value related to the improvements, and not to the taxes related to the property value before the improvements.

Eligibility criteria established in Olathe will return 90% of the incremental increase in property taxes on residential properties and 80% for commercial, for up to ten (10) years and is transferable with the property.  The retained portion of the increment will remain in the NRP fund for Original Town area public improvements as recommended by the Olathe Downtown Master Plan and the Original Town Enhancement Plan, and mandated by Kansas statutes.

A flowchart of the NRP application process is included as Appendix B.

April 16, 2019

**2018 Program Activity**

The Summary of Activity report for 2017 is included Appendix C. The summary details the applications processed, the aggregate improvement values, and rebates paid. In 2018, the program paid out rebates to 31 property owners for a total of $75,717. The summary also details activity for the program from its start in 2008 through 2018. The number of rebates paid is dependent upon the status of the application and where it is in the process. Various stages of the process include: applicant has not completed improvements, certificate of occupancy not issued, and increased property value did not meet program requirements to receive rebate. Appendix D details the breakdown of rebates paid by taxing entity. The total rebate payments to the property owners in Appendix C is less than the total amount subject to rebate by taxing jurisdiction in Appendix D, because the owners are receiving only 90% for residential or 80% for commercial of the total amount subject to rebate

**Conclusion**

Many participants in the NRP have been single-family residential properties. The program is an attractive incentive to these property owners, because there are currently no other rehabilitation programs available in Olathe that are not income-based or regulated. The number and type of participants is summarized in Appendix E.

The use of the NRP to help stimulate and revitalize areas in need of physical, aesthetic and economic improvement has proven to be a legitimate and viable tool for communities since its inception. The City of Olathe looks forward to continued success and benefits of revitalization as a result of this rebate program.

Please direct any questions regarding the Neighborhood Revitalization Tax Rebate Program to Amy Tharnish, Assistant Director of Finance Services, at atharnish@olatheks.org or (913) 971-8539.

April 16, 2019

## Appendix A

### Map of Neighborhood Revitalization Districts



## Appendix B



*Criteria as set out in Plan, which includes minimum investment; code compliance when improvements were made and during term of rebate; no delinquent taxes or special assessments; continuous ownership; and timely construction or authorized extension.

# Appendix C

## Summary of Activity

**2018**

### Original Town NRP District

|  | Residential | Commercial | Total |
|---|---|---|---|
| Applications received | 2 | 1 | 3 |
| Value of Proposed Improvements | $ 19,000 | $ 1,700,000 | $ 1,719,000 |
| Properties receiving first rebate payment | - | - | - |
| Total properties receiving rebates | 23 | 8 | 31 |
| Total rebate payments to property owners | $ 43,864 | $ 31,854 | $ 75,717 |
| Total to Olathe NRP Fund | $ 3,655 | $ 6,968 | $ 10,623 |

### Commercial NRP District

|  | Total |
|---|---|
| Applications received | - |
| Value of Proposed Improvements | $ - |
| Properties receiving first rebate payment | - |
| Total properties receiving rebates | - |
| Total rebate payments to property owners | $ - |
| Total to Olathe NRP Fund | $ - |

**Program to Date (2008-2018)**

### Original Town NRP District

|  | Residential | Commercial | Total |
|---|---|---|---|
| Applications received | 46 | 29 | 75 |
| Value of Proposed Improvements | $ 5,173,548 | $ 16,830,337 | $ 22,003,885 |
| Total properties receiving rebates | 23 | 8 | 31 |
| Total rebate payments to property owners | $ 207,010 | $ 165,569 | $ 372,579 |
| Total to Olathe NRP Fund | $ 17,279 | $ 35,013 | $ 52,292 |

### Commercial NRP District

|  | Total |
|---|---|
| Applications received | 1 |
| Value of Proposed Improvements | $ 2,000,000 |
| Total properties receiving rebates | - |
| Total rebate payments to property owners | $ - |
| Total to Olathe NRP Fund | $ - |

April 16, 2019

## Appendix D

## Rebates by Taxing Jurisdiction

|  | Residential | Commercial | Total |
|---|---|---|---|
| Johnson County | $    7,366.64 | $    6,018.39 | $   13,385.03 |
| JoCo Parks & Recreation | 1,186.72 | 969.53 | 2,156.25 |
| Johnson County Community College | 3,623.83 | 2,960.60 | 6,584.43 |
| City of Olathe | 9,418.95 | 7,695.11 | 17,114.06 |
| USD 233 | 27,141.14 | 22,173.75 | 49,314.89 |
| Total Tax Rebate | $   48,737.28 | $   39,817.38 | $   88,554.66 |

April 16, 2019

# Appendix E

## Summary of Participating Activity – Application Received

|        | Residential | Commercial | Total |
|--------|-------------|------------|-------|
| 2008   | 5           | 2          | 7     |
| 2009   | 9           | 3          | 12    |
| 2010   | 5           | 2          | 7     |
| 2011   | 4           | 2          | 6     |
| 2012   | 10          | 5          | 15    |
| 2013   | 1           | 1          | 2     |
| 2014   | 5           | -          | 5     |
| 2015   | -           | -          | -     |
| 2016   | 4           | 4          | 8     |
| 2017   | 1           | 10         | 11    |
| 2018   | 2           | 1          | 3     |
| **Total** | **46**   | **30**     | **76** |

April 16, 2019

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **GANIYU AYINLA JAIYEOLA,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **Case No. 2:20-cv-2068-JWB-JPO** |
| ) | |
| **GARMIN INTERNATIONAL, INC.,** ) | |
| ) | |
| Defendant. ) | |

**REPLY IN SUPPORT OF
DEFENDANT'S PARTIAL MOTION TO DISMISS**

As set forth in Defendant's Partial Motion to Dismiss (the "Motion"), Counts II and VI of Plaintiff's Complaint are subject to dismissal.  In his response in opposition to Garmin's motion (the "Opposition"), Plaintiff argues that the "Cat's Paw" theory is a recognized theory of recovery in Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") claims, but fails to recognize that a theory of recovery is not a cause of action.  Plaintiff's response to Garmin's motion to dismiss Count VI is certainly robust and creative, but, it fails for several reasons.  First, Plaintiff's argument is premised solely on facts not alleged in his Complaint. Second, even if Plaintiff was granted leave to amend his Complaint to formally assert his relied upon facts, such amendment would be futile because as a matter of law, there is no legal or factual basis to find that Garmin was a state actor for purposes of Plaintiff's 42 U.S.C § 1983 ("Section 1983") claim.[1]

---

[1] Plaintiff asserts that the Court should consider Garmin's motion under Rule 12(c) as opposed to Rule 12(b)(6). Plaintiff's assertion is immaterial.  *See Pleas v. First Student, Inc.*, 837 F.Supp.2d 1250, 1252 (D. Kan. 2011) (analyzing defendant's motion to dismiss under the 12(b)(6) standard where the motion to dismiss was filed after defendant's answer and stating a "court may treat a 12(b)(6) motion as one under Rule 12(c)…[t]he distinction between the two motions is purely formal because a court reviews a 12(c) motion under the same standard as a Rule 12(b)(6) motion."). Plaintiff also spends an inordinate amount of time and energy in his Opposition arguing that Garmin's counsel should be sanctioned based on statements made by Garmin in its Answer to Plaintiff's Complaint and Memorandum in Support of its Partial Motion to Dismiss. [Docs. 9 and 11]. Plaintiff's frustration appears to lie with two words in the job title of the position he applied for at Garmin. Specifically, Plaintiff asserted that the job title was "Advanced Materials Engineer – Plastics" and Garmin asserted that it understood the job title to be "Advanced

## I.   COUNT II SHOULD BE DISMISSED AS REDUNDANT OF COUNT I

In response to Garmin's motion seeking the dismissal of Count II, Plaintiff correctly asserts that the "Cat's Paw" theory of recovery is a recognized theory of recovery in Title VII disparate treatment claims. Garmin does not dispute this. However, a theory of recovery is just that – a theory utilized to prove a cause of action. Plaintiff has set forth a cause of action in Count I of his Complaint for a disparate treatment claim under Title VII based on his race, color, and national origin. As such, Count II (asserting the same Title VII cause of action as Count I) is simply redundant of Count I and should be dismissed.

## II.   COUNT VI SHOULD BE DISMISSED AS GARMIN IS NOT A STATE ACTOR

Plaintiff asserts a novel argument in an attempt to survive the dismissal of his Section 1983 claim contained in Count VI. Plaintiff's argument is premised exclusively on facts not asserted in his Complaint. As such, Plaintiff has failed to satisfy his pleading requirements pursuant to Federal Rule of Civil Procedure 12(b)(6).[2] More importantly, any motion to amend by Plaintiff would be futile.[3]

Plaintiff argues that Garmin is a state actor by virtue of the symbiotic relationship test. Under the symbiotic relationship test, a private party becomes a state actor when "the state has so far insinuated itself into a position of interdependence" with the private party "that it must be recognized as a joint participant in the challenged activity."[4] This relationship "often exists where

---

Materials Engineer—Plastics and Metal". Not only is Plaintiff's request for sanctions inappropriately contained in his Opposition, but it is certainly frivolous.

[2] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("To state a claim upon which relief can be granted, a count must allege more than mere "labels and conclusions"—it must contain "enough facts to state a claim to relief that is plausible on its fact."").

[3] *Watson ex rel. Watson v. Beckel*, 242 F.3d 1237, 1239-40 (10th Cir. 2001) ("A proposed amended is futile if the complaint, as amended, would be subject to dismissal for any reason…").

[4] *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 725 (1961).

there is a 'public-private relationship' and 'the private and the public actors have sufficiently commingled their responsibilities.'"[5] A symbiotic relationship exists where "both the private party and the state benefit from an action."[6]  Moreover, the Tenth Circuit has made clear that "the only proper defendants in a Section 1983 claim are those who represent [the state] in some capacity, whether they act in accordance with their authority or misuse it."[7]

Plaintiff alleges in his Opposition that the symbiotic relationship test is satisfied because Garmin allegedly received revenue bonds and a tax abatement from the City of Olathe, Kansas (the "City") in connection with an expansion of its headquarters in 2015.[8]  Plaintiff relies heavily on the Supreme Court's decision in *Burton v. Wilmington Parking Authority* in support of his argument.[9]  In *Burton*, the defendant, a restaurant, leased land owned by a state agency and argued that serving African-Americans would hurt its business. The Supreme Court found "that a privately owned restaurant's refusal to serve an African-American customer constituted state action because the restaurant leased space from a parking garage owned by a state agency"[10] and as such, the Court found that the state agency was deriving a direct financial benefit from the restaurant's discriminatory conduct.[11]

Not only are the facts in *Burton* clearly distinguishable from the facts here, following *Burton*, the Tenth Circuit has specifically rejected Plaintiff's argument.  In *Gallagher v. Neil Young*

---

[5] *Gorenc v. Klaassen*, 2019 WL 2494230 at *6 (D. Kan., August 1, 2019) (quoting *Wittner v. Banner Health*, 720 F.3d 770, 778 (10th Cir. 2013)).

[6] *Id.* (*citing Johnson v. Rodrigues*, 293 F.3d 1196, 1204-05 (10th Cir. 2005)).

[7] *Gallagher v. "Neil Young Freedom Concert*, 49 F.3d 1442, 1447 (10th Cir.1995) (internal quotation omitted).

[8] Doc. 12, p. 18-22.

[9] *Id.* at p. 19-20.

[10] *Gallagher*, 49 F.3d at 1451.

[11] *Id.* ("Significantly, because the [defendant] claimed that serving African-Americans would injure its business, the *Burton* Court found that 'profits earned by discrimination not only contribute[d] to, but also [were] indispensable elements in, the financial success of a governmental agency.'") (internal citations omitted)).

*Freedom Concert*, the Tenth Circuit noted the *Burton* court's finding of state action in those particular circumstances was not dispositive of every lease of government property[12] and offered the following assessment of *Burton*: "subsequent Supreme Court decisions have read *Burton* narrowly…the present Supreme Court has not found state action in any case that has relied upon *Burton*…the Court has held that extensive regulation, the receipt of substantial state funds, and the performance of important public functions do not necessarily establish the kind of symbiotic relationship between the government and a private entity that is required for state action."[13]  The Tenth Circuit went on to hold: "…the receipt of government grants and tax benefits are insufficient to establish a symbiotic relationship between the government and a private entity."[14]

In *Massey v. Bd. of Trustees of Ogden Area,* the Tenth Circuit also held that a defendant in an employment dispute was not a state actor for purposes of Section 1983 absent a link between the state and the challenged employment action.[15] In *Massey*, the plaintiff was terminated by the board of a not-profit agency which received significant federal and state funding.[16] The plaintiff sued the board and its members arguing that the board was a state actor under Section 1983 and further alleging that the board was influenced in its decision to terminate the plaintiff by state

---

[12] *Id.* (citing *Burton* 365 U.S. at 724).

[13] *Id.* (internal citations omitted).

[14] *Id.* at 1453.  A Second Circuit decision is also analogous to the issue before the Court. In *Hadges v. Yonkers Racing Corporation*, the plaintiff pursued a Section 1983 claim when the defendant, Yonkers Racing Corporation ("YRC"), failed to hire him to work at its horseracing track, which YRC operated "pursuant to a one-year renewable license issued by the New York State Racing and Wagering Board…" The plaintiff, relying on *Burton*, argued that YRC's refusal to hire him "amounted to state action under Section 1983 because YRC was subject to pervasive State statutory and regulatory control, and because it generated significant tax revenues for the State, [and] received State tax credits…" Despite these various links between the state of New York and YRC, the Second Circuit did not find the existence of a symbiotic relationship. In its analysis, the court stated that the plaintiff "erroneously allie[d] the instant case with *Burton*…in contrast to *Burton*, the State in the instant case does not have a proprietary interest in [the horseracing track]." *See also New York City Jaycees, Inc. v. United States Jaycees, Inc.*, 512 F.2d 856, 859 (2nd. Cir. 1975) (no state action where private party received funds and tax exemptions from government).

[15] *Massey v. Bd. of Trustees of Ogden Area*, 4 Fed.Appx.611, 614 (10th Cir. 2001).

[16] *Id.* at 612.

4

officials.[17] Addressing the plaintiff's argument that there was a symbiotic relationship between the state and the board the Tenth Circuit explained: "[u]nder the symbiotic relationship test, courts inquire whether the state "'has so far insinuated itself into a position of interdependence' with a private party that 'it must be recognized as a joint participant in the challenged activity.' "[18] Absent probative evidence of a link between the state and the decision to terminate the plaintiff the Tenth Circuit found that, as a matter of law, the board could not be a state actor for purposes of the Section 1983 claim relating to plaintiff's termination and dismissed the claim against the board and its members.[19]

Similar to the plaintiffs in *Gallagher* and *Massey*, Plaintiff cannot successfully establish a symbiotic relationship between Garmin and the City by pointing to Garmin's alleged receipt of revenue bonds and a tax abatement from the City. Controlling precedent makes clear that Plaintiff would have to prove the existence of a much more involved relationship between Garmin and the City to establish a symbiotic relationship – which he cannot do.[20] There is no dispute that the City had absolutely no involvement in (or link to) Garmin's decision not to hire Plaintiff, or that the City profited/benefited in any way by Garmin's decision not to hire Plaintiff.  Moreover, the expansion of Garmin's headquarters was not part of a city or state project and Garmin purchased the bonds for the expansion from the City itself—without the use of public funds—as Plaintiff

---

[17] *Id.* at 613-14.

[18] *Id*. at 613. (quotations and citations omitted)

[19] *Id*. at 614.

[20] *See Rendell-Baker v. Kohn*, 457 U.S. 830, 842-43 (1982) (no symbiotic relationship where ninety percent of private school's funding came from public sources); *Gorenc v. Klaassen*, 2019 WL 3494230 at *6 (D. Kan., August 1, 2019) (no symbiotic relationship where plaintiffs could not establish how the state benefited from private party's conduct); *Hodge v. Paoli Memorial Hospital*, 576 F.2d 563, 564 (3d. Cir. 1978) (no symbiotic relationship where hospital was subject to state licensing requirements and received federal construction funding, Medicare and Medicaid funds, as well as a tax exemption).

notes in his Opposition.[21] Plaintiff also fails to account for the fact that the City does not exercise any control over operations at Garmin and importantly, the City does not have a proprietary interest in Garmin.[22]

Put simply, Plaintiff's argument that Garmin is a state actor for purposes of his Section 1983 claim fails as a matter of law.  As such, any amendment to Plaintiff's Complaint would be futile and thus, Count VI should be dismissed with prejudice.

## III.   CONLUSION

For the reasons set forth above, Garmin respectfully requests that this Court dismiss Counts II and VI of Plaintiff's Complaint with prejudice.

Respectfully submitted,

/s/ Kerri S. Reisdorff
Kerri S. Reisdorff, KS 19709
Margaret K. Young, KS 78847
OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.
4520 Main Street, Suite 400
Kansas City, Missouri 64111
816-471-1301
816-471-1303 *(Facsimile)*
kerri.reisdorff@ogletree.com
margaret.young@ogletree.com

**ATTORNEYS FOR DEFENDANT**

---

[21] Doc. 12 at 22 ("[Industrial Revenue Bonds are issued by [Olathe City Council] to cover [Olathe City] development costs and are repaid by [Garmin], not [Olathe City] taxpayers.").

[22] Plaintiff's reliance on *Milo v. Cushing Municipal Hospital* is also misguided. In *Milo*, the Tenth Circuit applied *Burton* and held that the suspension of the staff privileges of two physicians at a municipally owned hospital constituted state action. 861 F.2d 1194, 1197 (10th Cir. 1988)). In *Milo*, there was "evidence that the [City]…substantially participated in the funding, creation, and financial structure of the Hospital…" by issuing a bond indenture governing the manner in which the private corporation could use revenues generated from its operation of the hospital, creating a public trust to oversee hospital operations, and establishing a governing board of the hospital trust consisting of three city commissioners and two officials from the private corporation. *Id.* at 1196. Again, the facts in *Milo* are clearly distinguishable from the present set of alleged facts.

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 26th day of April, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and sent notification of such filing to the following:

Ganiyu Ayinla Jaiyeola
749 Preserve Circle Drive SE Apartment 6
Grand Rapids, Michigan 49548
ganiyu.jaiyeola@gmail.com

*Pro Se* **PLAINTIFF**

/s/ Kerri S. Reisdorff
**ATTORNEY FOR DEFENDANT**

42541161.1

7

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

|  |  |
|---|---|
| ) | |
| ) | |
| GANIYU AYINLA JAIYEOLA, ) | Case No.: 2:20-cv-2068-JWB-JPO |
| ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | |
| GARMIN INTERNATIONAL, INC., ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |
| ) | |
| ) | |

**PLAINTIFF'S MOTION FOR LEAVE TO FILE SURREPLY IN**
**OPPOSITION TO DEFENDANT'S REPLY IN SUPPORT OF**
**DEFENDANT'S PARTIAL MOTION TO DISMISS**

*Pro Se* Plaintiff Ganiyu Jaiyeola ("Jaiyeola") respectfully request that this Court grant

Jaiyeola leave to file a Surreply in Opposition to Defendant Garmin International, Inc.'s

("Garmin") Reply[1] in Support of Garmin's Partial Motion to Dismiss.

In *United States of America v. Malik*, No. 2:15-cv-09092 - Document 105, ¶ 2, pp. 1-2 (D.

Kan. 2017), this Court stated:

> "Under District of Kansas Local Rule 7.1(c), briefing on motions is
> limited to the motion (with memorandum in support), a response, and a
> reply.[2]  A surreply is not allowed unless the court grants a party leave to
> file it.[3]  Circumstances that may justify granting leave to file a surreply
> include **where a movant raises new legal arguments or presents new**
> **evidence in a reply, which the responding party should be given an**
> **opportunity to address**.[4]  The rules governing the filing of surreplies "are
> not only fair and reasonable, but they assist the court in defining when

---

[1] ECF No. 13.

-1-

briefed matters are finally submitted and in minimizing the battles over which side should have the last word."[5]".

Garmin has raised "new legal arguments" and presented "new evidence[s]" in their Reply and Jaiyeola "should be given an opportunity to address" them.

Jaiyeola states as follows:

1.       As regards Jaiyeola's Count II, Garmin stated: "In his response in opposition to Garmin's motion (the "Opposition"), Plaintiff argues that the "Cat's Paw" theory is a recognized theory of recovery in Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII") claims, but fails to recognize that a theory of recovery is not a cause of action."[2].  Garmin is wrong on this assertion and Garmin did not back up their assertion that "a theory of recovery is not a cause of action" with any case law or citation in our Tenth Circuit or even any Circuit or this Court.  Garmin even went further to state that "However, a theory of recovery is just that – a theory utilized to prove a cause of action."[3].  Again, no citation to back up their assertion.  In this instant, the "cat's-paw" recovery theory is a "cause of action"[4] for a "subordinate bias claim"[5] (Count II) that involves Mr. John Mudd (Mechanical Engineering Manager - Hiring Manager) and his Supervisor, Mr. Jeff Minelli (Director of Mechanical Engineering).  Jaiyeola suffered two injuries as regards Count II: Failure to hire and Denial of Due Process.  Count II is not "the same Title VII cause of action as Count I"[6] and it's not "simply redundant of Count I"[7] and should not be dismissed.

---

[2] ECF No. 13, p. 1 at ¶ 1, Lines 2-5.
[3] *Id*., p. 2 at ¶ "I", Lines 3-4.
[4] *Zokari v. Gates*, 561 F.3d 1076 (10th Cir. 2009); *Crews v. Paine et al.*, No. 16-1216 (10th Cir. 2017).
[5] *Equal Employment Opportunity Commission v. BCI Coca-Cola Bottling Company of Los Angeles*, 450 F. 3d 476 (10th Cir. 2006).
[6] ECF No. 13, p. 2 at ¶ "I", Line 6.
[7] *Id*., Lines 6-7.

2.       As regards Jaiyeola's Count VI, Garmin stated: "First, Plaintiff's argument is premised solely on facts not alleged in his Complaint."[8]  But "***Twombly* and *Iqbal* do not require that the complaint include all facts necessary to carry the plaintiff's burden**."[9] and similar to Jaiyeola's case, "cases that survived a motion to dismiss showed a higher level of detail. See, e.g., *Swierkiewicz*, 534 U.S. at 514, 122 S.Ct. 992 (holding a complaint sufficiently pled where the plaintiff "detailed the events leading to .. [Failure to hire] ..."); *Mahon v. Am. Airlines, Inc.*, 71 Fed. Appx. 32, 35 (10th Cir.2003) (holding that a complaint sufficiently stated [Denial of Due Process] claim where it specifically identified disparate treatment ....); *Duran v. Ashcroft*, 114 Fed.Appx. 368, 370 (10th Cir.2004) (holding a complaint sufficient to state a claim where the plaintiff included relevant dates and specific instances of discrimination).".  *Id.*

Garmin is a State Actor by virtue of its symbiotic relationship with the City of Olathe, Kansas ("Olathe").  Garmin "asks"[10] for and got the following "incentives"[11] from Olathe in 2016 and 2017: 1.) a $200 Million loan and a $30 Million loan that Garmin was not probably going to be able to get by itself, the loans were easily approved by the lenders, and the approvals were with low interest because the loans went through Olathe and Olathe guaranteed that Garmin would repay the loans; 2.) Garmin got a 10-year, 75 percent tax abatement from Olathe; 3.) Garmin paid no sales tax[12] on construction materials for the $230 Million construction, and 4.) Garmin was able to open "..[Garmin's] new manufacturing facility in Olathe[13], Kansas, [that]

---

[8] ECF No. 13, p. 1 at ¶ 1, Lines 5-7.
[9] *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012).
[10] "Garmin asks Olathe to shovel out incentives for $200M HQ expansion", https://www.bizjournals.com/kansascity/news/2017/01/26/garmin-olathe-incentives-request.html; Olathe, Kansas, "2018 Economic Development Incentives - Activity Report" (April 16, 2019), https://www.olatheks.org/home/showdocument?id=408, p. 2-5.
[11] *Id.*
[12] Garmin seeks $200 million for Olathe headquarters expansion, https://www.kansascity.com/news/business/development/article128714489.html.
[13] Olathe, Kansas, "2018 Economic Development Incentives - Activity Report" (April 16, 2019),

more than [double] [Garmin's] North American manufacturing capacity."[14].  In return, Garmin would provide to Olathe the following: 1.) Jobs; starting with "...**150 new jobs** with an average salary of $66,653 in the first year."[15] and 2.) a "positive tax revenue net benefit [Olathe, $2.8 million; …Olathe school district, $2.3 million; ….State of Kansas, $11.6 million] for all affected taxing jurisdictions over the 10-year term"[16] of the loans.  In short, the symbiotic relationship between Olathe and Garmin involve jobs and this is a failure to hire lawsuit related to a job that Jaiyeola applied for at Garmin in 2019; within the 10-year symbiotic relationship that Olathe established with Garmin to provide jobs to Olathe.

3.        In their Reply, Garmin stated that "....Plaintiff asserted that the job title was **"Advanced Materials Engineer – Plastics"** and **Garmin asserted that it understood the job title to be "Advanced Materials Engineer—Plastics and Metal"**....."[17].  First, Garmin is wrong; **Jaiyeola "asserted that" "Jaiyeola APPLIED and INTERVIEWED for the position of "Advanced Materials Engineer - Metals-19001CL" at Garmin**."[18] and **not "Advanced Materials Engineer – Plastics"**.  Second, it is hard to believe that "Garmin asserted that it understood the job title to be "Advanced Materials Engineer—Plastics and Metal"" when Garmin interviewed Jaiyeola over the phone and at Olathe, Kansas, for the position of "Advanced Materials Engineer - Metals-19001CL" at Garmin.

---

https://www.olatheks.org/home/showdocument?id=408, p. 2-5.

[14] Garmin's "2018 Business Highlights. 'Opened our new manufacturing facility in Olathe, Kansas, more than doubling our North American manufacturing capacity.'", https://www.sec.gov/Archives/edgar/data/1121788/000130817919000153/lgrmn2019_def14a.htm.

[15] "Garmin gets go-ahead on Olathe campus expansion", https://www.kansascity.com/news/local/community/joco-913/olathe-southwest-joco/article131462394.html; "Olathe, Kansas, 2017 Economic Development Incentives Activity Report, p. 3-5", https://www.olatheks.org/home/showdocument?id=408.

[16] "Garmin asks Olathe to shovel out incentives for $200M HQ expansion", https://www.bizjournals.com/kansascity/news/2017/01/26/garmin-olathe-incentives-request.html.

[17] ECF No. 13, pp. 1-2 at Footnotes, Lines 9.

[18] ECF No. 12, p. 8 at ¶ 2, Lines 2-4.

-4-

Garmin is trying really hard to reincarnate *Leo v. Garmin*[19] as regards "[Garmin's] actual expectations and qualifications for the position"[20] and "being unqualified for job is one of two "most common nondiscriminatory reasons" for rejection"[21].  From all indications, Garmin is intentionally committing **a fraud on the Court** in the job title act because Garmin's assertion on the job title didn't match the reality of the job title that Jaiyeola applied and interviewed for.

4.    In their Reply, Garmin did not explain why it is not in Garmin's Answer[22] that "Garmin notified the remaining candidates,…..that they were not selected for hire. [Doc. 9, Answer to ¶¶ 37, 44]."[23]; (as asserted in Garmin's Motion[24]).

5.    The interests of justice suggest that *pro se* Plaintiff Jaiyeola be allowed to file his Surreply and have it considered by the Court.


WHEREFORE, *Pro Se* Plaintiff Ganiyu Jaiyeola respectfully request that this honorable Court grant him leave to file his Surreply to Defendant Garmin's "REPLY IN SUPPORT OF DEFENDANT'S PARTIAL MOTION TO DISMISS" (Doc. #13) and provide for such other and further relief as the Court deems just and proper.

---

[19] *Leo v. Garmin Int'l, Inc.*, No. 09-CV-2139-KHV - Document 200 (D. Kan. 2010); *Leo v. Garmin Int'l, Inc.*, 431 F. App'x 702 (10th Cir. 2011).
[20] *Id*.
[21] *Id*.
[22] ECF No. 9, DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT.
[23] ECF No. 11, p. 1 at ¶ "II. FACTUAL BACKGROUND", Lines 6-7.
[24] ECF No. 10, DEFENDANT'S PARTIAL MOTION TO DISMISS.

Respectfully submitted,

Dated:  April 28, 2020

_____
Ganiyu Ayinla Jaiyeola, Ph.D., MBA
749 Preserve Circle Drive SE, #6
Grand Rapids, Michigan 49548
Tel.: 616.635.4025
ganiyu.jaiyeola@gmail.com

*pro se*
PLAINTIFF

-6-

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 28th day of April, 2020, a copy of the above was filed

electronically via the Court's CM/ECF filing system with a copy sent electronically to:


Kerri S. Reisdorff
Margaret K. Young
OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.
4520 Main Street, Suite 400
Kansas City, Missouri 64111
816-471-1301
816-471-1303 (Facsimile)
kerri.reisdorff@ogletree.com
margaret.young@ogletree.com


ATTORNEYS FOR DEFENDANT




Dated:  April 28, 2020                        Ganiyu Ayinla Jaiyeola, Ph.D., MBA

                                             *pro se*
                                             PLAINTIFF

-7-

```
MIME-Version:1.0
From:KSD_CMECF@ksd.uscourts.gov
To:ksd_nef@localhost.localdomain
Bcc:
--Case Participants: Margaret K. Young (kcmdocketing@ogletreedeakins.com,
margaret.young@ogletreedeakins.com, shelly.kunz@ogletree.com), Kerri S. Reisdorff
(amy.limback@odnss.com, julie.hill@odnss.com, kcmdocketing@ogletree.com,
kerri.reisdorff@ogletree.com, margaret.young@ogletree.com), Ganiyu Ayinla Jaiyeola
(ganiyu.jaiyeola@gmail.com), District Judge John W. Broomes (joyce_roach@ksd.uscourts.gov,
ksd_broomes_chambers@ksd.uscourts.gov), Magistrate Judge James P. O'Hara
(ksd_ohara_chambers@ksd.uscourts.gov)
--Non Case Participants: Colleen M. Abraham (colleen_abraham@ksd.uscourts.gov)
--No Notice Sent:

Message-Id:5030403@ksd.uscourts.gov
Subject:Activity in Case 2:20-cv-02068-JWB-JPO Jaiyeola v. Garmin International, Inc.
Order on Motion for Leave to File
Content-Type: text/html
```

### U.S. District Court

### DISTRICT OF KANSAS

**Notice of Electronic Filing**

The following transaction was entered on 4/29/2020 at 1:56 PM CDT and filed on 4/29/2020

| | |
|---|---|
| **Case Name:** | Jaiyeola v. Garmin International, Inc. |
| **Case Number:** | 2:20–cv–02068–JWB–JPO |
| **Filer:** | |
| **Document Number:** | 15(No document attached) |

**Docket Text:**
 **ORDER denying [14] Motion for Leave to File Surreply. Entered by District Judge John W. Broomes on 04/29/2020. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (jmr)**


**2:20–cv–02068–JWB–JPO Notice has been electronically mailed to:**

Kerri S. Reisdorff     kerri.reisdorff@ogletree.com, amy.limback@odnss.com, julie.hill@odnss.com, kcmdocketing@ogletree.com, margaret.young@ogletree.com

Margaret K. Young     margaret.young@ogletreedeakins.com, kcmdocketing@ogletreedeakins.com, shelly.kunz@ogletree.com

Ganiyu Ayinla Jaiyeola     ganiyu.jaiyeola@gmail.com

**2:20–cv–02068–JWB–JPO Notice has been delivered by other means to:**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

GANIYU AYINLA JAIYEOLA,           )
                                  )
            Plaintiff,            )
                                  )
v.                                )        Case No.  2:20-cv-2068-JWB-JPO
                                  )
GARMIN INTERNATIONAL, INC.        )
                                  )
            Defendant.            )
_____ )

## MEMORANDUM AND ORDER

This case comes before the court on Defendant's motion to dismiss counts II and VI of Plaintiff's complaint.  (Doc. 10.)  The motion has been fully briefed and is ripe for decision.  (Docs. 11, 12, 13.)  Defendant's motion is GRANTED IN PART AND DENIED IN PART for the reasons stated herein.

### I.      Facts

The following facts are taken from the allegations in Plaintiff's complaint.[1]  Plaintiff Ganiyu Jaiyeola applied and interviewed for an Advanced Materials Engineer position with Defendant, Garmin International, Inc., in July and August of 2019.  On July 23, 2019, Plaintiff was interviewed via phone by Michelle Cormack, Defendant's Senior Technical Recruiter.  Two days later, Plaintiff was interviewed over the phone by John Mudd, Defendant's Mechanical Engineering Hiring Manager, and another employee.  Plaintiff was then invited to conduct an on-site interview and given an assignment to be completed before, and discussed at, his interview.

---

[1] Because not all allegations are relevant to the motion to dismiss specific counts of the complaint, they are not included in this recitation.

Plaintiff interviewed at Defendant's headquarters in Olathe, Kansas on August 14, 2019. Plaintiff again interviewed with Cormack. During the in-person interview, Cormack told Plaintiff that Jeff Minelli was John Mudd's boss, and that "[i]f Jeff doesn't like you, John will not hire you." (Doc. 1 at ¶ 27.) Plaintiff was given a tour of the facilities and began a series of technical interviews.

The first technical interview was conducted by Minelli, Mudd, and another employee. In the interview, "Minelli repeatedly asked [Plaintiff] the same question in exactly the same way about aluminum alloys" causing Plaintiff to have to repeat his answers. (Doc. 1 at ¶ 30.) Plaintiff states that he was made very uncomfortable by the repetition of the questions, as Minelli did not argue with Plaintiff's answer or indicate that he did not understand Plaintiff's answers. During the second technical interview, conducted by a different set of employees, Mudd opened the door and informed Plaintiff that he would not be attending his presentation over his assignment. (Doc. 1 at ¶ 31.) Mudd did not provide Plaintiff with a reason why he would not be in attendance. Plaintiff concluded his on-site interview with a third and final technical interview and his presentation, at which Mudd was not present.

On August 15, 2019, Plaintiff followed up with thank-you emails. A week later Plaintiff requested an update, to which he received a response from Cormack, indicating that he was still a candidate for the position. On November 13, 2019, Plaintiff received an email from Mr. Michael Risinger informing him that he was not being hired for the position, stating:

> Because there is a high level of emphasis placed on achieving the best match between each candidate and position at Garmin, the hiring team has carefully reviewed the qualifications and skills on your application and information discussed during the interview. Garmin is unable to offer you employment at this time, but please keep in mind that Garmin is a dynamic and growing organization, so it is possible in the future there may be other career opportunities that better match your qualifications.

(Doc. 1 at ¶ 37.) After receiving this email Plaintiff checked Defendant's job website which listed the position that he interviewed for as still open.

On November 22, 2019, following the guidelines of Defendant's Equal Employment Opportunity policy statement which was set forth online, Plaintiff filed a complaint with Mudd and copied to Cormack concerning Garmin's failure to hire him.  (Doc. 1 at ¶ 40.)  On November 25, 2019, Laurie Minard, Defendant's Vice President of Human Resources and EEO Coordinator was notified of the complaint.  Minard's executive assistant instructed Plaintiff to send his complaint to Defendant's legal department and file it with the Kansas EEOC office, which Plaintiff did on November 26, 2019.

On November 27, 2019, Defendant's legal department responded to Plaintiff's complaint, providing a different reason as to why he was not hired, stating: "After considering all candidates and Garmin's current business needs, Garmin withdrew the opening, the job posting has been removed and no one was hired for this position."  (Doc. 1 at ¶ 44.)

On November 26, 2019, Plaintiff filed his claim with the EEOC, alleging discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), the ADEA, and the ADA. (Doc. 1 at ¶ 43.) Additionally, Plaintiff filed charges of discrimination with the Kansas Human Rights Commission alleging violations of Title VII, the ADEA, the KADEA, and the ADA on December 13, 2019.  (Doc. 1 at ¶ 46.)

Plaintiff filed this complaint against Defendant on February 19, 2020, after receiving his right to sue letter from the EEOC.  Plaintiff now asserts the following claims:  Violation of Title VII via discrimination based on race, color, and national origin; violation of Title VII via discrimination based on race, color, and national origin based on subordinate bias liability; age discrimination in violation of the ADEA; age discrimination in violation of the KADEA; disability

association discrimination in violation of the ADA; and deprivation of due process under the Fourteenth Amendment. (Doc. 1.) Defendant moves to dismiss count II and VI of Plaintiff's complaint. (Doc. 10.)

## II.    Motion to Dismiss Standards

To survive a motion to dismiss a complaint must allege enough well-pleaded facts to raise a facially plausible claim for relief. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court must view all well-pleaded facts, and the reasonable inferences drawn therefrom, in the light most favorable to the plaintiff. *Archuleta v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008). The court, however, will not consider bare assertions or legal conclusions when determining if a complaint is plausible. *Shero v. City of Grove, Okla.*, 510 U.S. 1196, 1200 (10th Cir. 2007).

Because Plaintiff is proceeding pro se, the court is required to construe his pleadings liberally. *Ledbetter v. City of Topeka, Kan.*, 318 F.3d 1183, 1187 (10th Cir. 2003). Construing Plaintiff's pleadings liberally requires that "if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). The court, however, will not supply Plaintiff with additional factual allegations or construct legal theories on his behalf. *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997).

## III.    Analysis

### A.  Violation of Title VII Based on Subordinate Bias Liability

Defendant contends that count II of Plaintiff's complaint is redundant of count I and should be dismissed.  (Doc. 11 at 3.) The only difference between the two counts is the theory of recovery on which Plaintiff relies.  In count I, Plaintiff alleges Defendant violated Title VII in failing to hire him because of his race, color, or national origin.  (Doc. 1 at ¶ 55.)  In count II, Plaintiff alleges the same injury, but bases it on a "cat's paw liability" theory of recovery.[2] (Doc. 1 at ¶ 70.)  This theory of recovery is used when a plaintiff seeks to hold an "employer liable for the animus of a supervisor who was not charged with making the ultimate employment decision." *Bird v. Regents of New Mexico State Univ*., 619 F. App'x 733, 756 (10th Cir. 2015) (quoting *Staub v. Proctor Hosp*., 562 U.S. 411, 415 (2011)).

Defendant is correct in asserting that a theory of recovery, such as cat's paw liability, is not a cause of action.  However, Defendant incorrectly conflates a count and a cause of action.  Though plaintiffs are required, for the promotion of clarity, to set out claims founded on separate transactions or occurrences in separate counts, this does not mean that every count must contain a separate cause of action.  *See* Fed. R. Civ. P. 10(b); *see also* Fed. R. Civ. P. 8(d)(2).  The Federal Rules of Civil Procedure also affords plaintiffs the opportunity to plead alternative theories of recovery "either in a single count or defense or in separate ones."  Fed. R. Civ. P. 8(d)(2).  The reading of these rules together suggests that the purpose of organizing a complaint into separate counts is to place defendants on notice as to exactly what they are defending against, whether an entirely separate cause of action or alternative theories of recovery.  *See Rezac Livestock Comm'n Co., Inc. v. Pinnacle Bank*, 255 F. Supp.3d 1150, 1174 (D. Kan. 2017) (plaintiff may plead two counts as alternative or even inconsistent legal theories under Rule 8(d)).

---

[2] Defendant's motion is limited in that it only seeks dismissal on the basis of redundancy.  (Docs. 11 at 3-4; 13 at 2.) Defendant does not assert that Plaintiff's allegations fail to state a claim under the cat's paw liability theory; therefore, the court's ruling is limited to whether Plaintiff's claim should be dismissed for redundancy and the court has not evaluated the claim on the merits.

Because Plaintiff may plead alternative theories as two counts, counts I and II of the complaint are not redundant).  *Id.*  Accordingly, Defendant's motion to dismiss count II of the complaint for redundancy is denied.

### B.  Count VI: Denial of Due Process

Plaintiff contends that he was denied due process in violation of 42 U.S.C. § 1983 when Mudd made his decision not to hire Plaintiff based off incomplete information.  To prevail on a Section 1983 claim, Plaintiff must show that a right secured under the Constitution and laws of the United States was violated by a person acting under color of state law.  *Johnson v. Rodrigues*, 293 F.3d 1196, 1202 (10th Cir. 2002).  "Thus, the only proper defendants in a Section 1983 claim are those who 'represent [the state] in some capacity, whether they act in accordance with their authority or misuse it.'"  *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1447 (10th Cir. 1995) (quoting *NCAA v. Tankanian*, 488 U.S. 179, 191 (1988)).

There are numerous ways to establish that the conduct of a private entity constitutes state action, however, the complaint is void of any facts to suggest that Defendant is a state actor, and Plaintiff fails as a matter of law to state a valid Section 1983 claim.  In his response, Plaintiff asserts new facts attempting to establish that a symbiotic relationship exists between the City of Olathe and Defendant.  (Doc. 12 at 21.)  However, even if Plaintiff properly pleaded such facts in his complaint, he still would fail to establish a symbiotic relationship.  A symbiotic relationship only exists when "[t]he State has so far insinuated itself into a position of interdependence with [the private entity] that it must be recognized as a joint participant in the challenged activity …."  *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 725 (1961).  Doing this requires that "the private and public actors have sufficiently commingled their responsibilities."  *Wittner v. Banner*

*Health*, 720 F.3d 770, 778 (10th Cir. 2013).  Plaintiff suggests that in granting Defendant industrial revenue bonds and other tax incentives, the Olathe City Council has effectively created this type of relationship.  (Doc. 12 at 20.)  This assertion is incorrect.  The Tenth Circuit has held that "payments under government contracts and the receipt of government grants and tax benefits are insufficient to establish a symbiotic relationship between the government and a private entity." *Gallagher*, 49 F.3d at 1453.

In his complaint, or otherwise, Plaintiff fails to show that Defendant is acting under the color of state law, and his Section 1983 claim fails as a matter of law.

## IV.   Conclusion

Defendant's motion to dismiss count II of Plaintiff's complaint is DENIED; Defendant's motion to dismiss count VI of Plaintiff's complaint is GRANTED.

IT IS SO ORDERED this 12th day of August, 2020.

_____ s/ John W. Broomes_____
JOHN W. BROOMES
UNITED STATES DISTRICT JUDGE

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **GANIYU AYINLA JAIYEOLA,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **Case No. 2:20-cv-2068-JWB-JPO** |
| ) | |
| **GARMIN INTERNATIONAL, INC.,** ) | |
| ) | |
| Defendant. ) | |

## DEFENDANT'S MOTION FOR PROTECTIVE ORDER

Pursuant to Fed. R. Civ. P. 26(c) and Paragraph 2(h) of the Court's Scheduling Order (Doc. 19), Defendant Garmin International, Inc., hereby moves the Court for entry of a protective order prohibiting and restricting the disclosure of confidential and proprietary information. For the reasons set forth more fully in Defendant's Memorandum in Support filed herewith, good cause exists for entry of a protective order in this case.

WHEREFORE, Defendant Garmin International, Inc. respectfully requests that the Court grant its Motion for Entry of Protective Order and any other such relief the Court deems necessary and just under the circumstances.

Respectfully submitted,

/s/ Margaret K. Young
Kerri S. Reisdorff       KS #19709
Margaret K. Young     KS #78847
OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.
4520 Main Street, Suite 400
Kansas City, Missouri 64111
816-471-1301
816-471-1303 *(Facsimile)*
kerri.reisdorff@ogletree.com
margaret.young@ogletree.com

**ATTORNEYS FOR DEFENDANT**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on this 6th day of October, 2020, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

Ganiyu Ayinla Jaiyeola
749 Preserve Circle Dr., SE, Apt. 6
Grand Rapids, MI 49548
616-635-4025
Ganiyu.jaiyeola@gmail.com

**PLAINTIFF PRO SE**

/s/ Margaret K. Young
**ATTORNEY FOR DEFENDANT**

44456714.1

2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **GANIYU AYINLA JAIYEOLA,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **Case No. 2:20-cv-2068-JWB-JPO** |
| ) | |
| **GARMIN INTERNATIONAL, INC.,** ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF**
**ITS MOTION FOR ENTRY OF PROTECTIVE ORDER**

Pursuant to Fed. R. Civ. P. 26(c) and Paragraph 2(h) of the Court's Scheduling Order (Doc. 19), Defendant Garmin International, Inc., hereby moves the Court for entry of a protective order prohibiting and restricting the disclosure of confidential and proprietary information as set forth in Defendant's Proposed Protective Order, attached hereto as **Exhibit A.** In support of this Motion, Defendant states as follows:

## I.    INTRODUCTION

On February 19, 2020, Plaintiff Ganiyu Jaiyeola filed suit alleging discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*., age discrimination in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, *et seq*. and in violation of the Kansas Age Discrimination in Employment Act, K.S.A. § 44-1111 *et seq*., disability association discrimination in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq*., and violation of due process rights under 42 U.S.C. § 1983. (Doc. 1).[1] Specifically, Plaintiff claims that Defendant unlawfully failed to hire him in the fall of 2019.

---

[1] Upon Defendant's Motion, Plaintiff's 42 U.S.C. § 1983 claim was dismissed by the Court on August 12, 2020. (Doc. 17).

Pursuant to the Court's Initial Order Regarding Planning and Scheduling, the parties held their Rule 26(f) conference via phone on September 9, 2020. Prior to the Rule 26(f) conference, Defendant provided Plaintiff with the Court's template for protective orders. During the conference, the parties discussed the need for a protective order and Plaintiff stated he would oppose any protective order. When Defendant pressed Plaintiff for the reason for his position, Plaintiff stated that he had no concern with his personal information being made public and that his intent was to oppose any position by Defendant thereby requiring the Court to decide all disputes. He also inferred that he thought that a protective order would prevent or allow Defendant not to produce discoverable information – which Defendant repeatedly informed him that was not accurate and it was just the opposite. Plaintiff maintained his opposition to a protective order in the Report of Parties' Planning Conference as well as during the Rule 16 conference with the Court on September 29, 2020.

Defendant's position is that due to the nature of the allegations in this case and the anticipated discovery, a protective order is necessary. Defendant reasonably anticipates that documents containing confidential business information and sensitive and confidential information regarding third parties will be requested, as well as confidential information related to the Plaintiff, including Plaintiff's medical records (as Plaintiff has disclosed in his Rule 26 Initial Disclosures that he is seeking millions of dollars for mental anguish and emotional distress). Plaintiff has indicated that he will be requesting confidential medical information of certain Garmin employees (although Defendant intends to vigorously oppose any such request). Moreover, Plaintiff has indicated that he will seek the dates of births/ages and other sensitive demographic information of other applicants and employees and will likely seek their applications

and resumes which will contain personal and non-public information of these non-parties. As such, the Court should grant Defendant's Motion for Entry of Protective Order.

## II.   ARGUMENT

"Federal Rule of Civil Procedure 26(b)(1) allows broad discovery, not only of 'any matter, not privileged, that is relevant to the claim or defense of any party,' but also of matters that appear 'reasonably calculated to lead to the discovery of admissible evidence.'" *Bartholomees v. Signator Investors, Inc.*, 2003 WL 22843174 at *1 (D. Kan. Nov. 25, 2003). There are several types of protective orders, including a blanket protective order, "which places upon the parties themselves the initial burden of determining what information is entitled to protection." *Id.* As discussed in *Bartholomees*, "blanket protective orders routinely are approved by courts in civil cases, frequently on the stipulated request of the parties." *Id.* (internal citation omitted). However, "the agreement of all parties is not required to enter a blanket protective order as long as the party seeking protection makes some threshold showing of good cause to believe that discovery will involve confidential or protected information. This showing may be done on a generalized as opposed to a document-by-document basis." *Id.*

In this case, Defendant seeks a blanket protective order regarding Confidential Information comprised of (i) medical information; (ii) financial information, including but not limited to bank records, financial statements, and tax returns; (iii) education records; (iv) employment information, including personnel files; (v) dates of birth, ages, and other personal demographics and confidential information of parties and third parties; (vi) proprietary information and/or trade secrets; (vii) records, documents, and information whose disclosure is restricted or prohibited by regulation, statute, or case law; and (viii) other confidential information of a party or third party previously maintained in a confidential manner. Good cause exists to issue a blanket protective

order because there is no way for Defendant to know whether Plaintiff intends to publicly (*i.e.*, through filings in this matter) or otherwise disclose Confidential Information or control his ability to do so. Defendant understands Plaintiff's argument in opposition to entry of a protective order to be that he does not care if his confidential information is made public and that he believes Defendant will intentionally withhold documents or information to which he is entitled if a protective order is entered. Defendant repeatedly indicated to Plaintiff during the Rule 26(f) conference that it would comply with all of its discovery obligations pursuant to the Federal Rules of Civil Procedure and has every intention of doing so. Defendant also explained that unlike Plaintiff, Defendant does care whether its confidential information – and the confidential and private information of third parties – is made public by Plaintiff. Good cause exists to issue a blanket protective order regarding both Plaintiff and Defendant's Confidential Information in this case.

### III.    CONCLUSION

For all of the reasons set forth above, Defendant Garmin International, Inc. respectfully requests that this Court grant its Motion for Entry of Protective Order and any other such relief the Court deems necessary and just under the circumstances.

Respectfully submitted,

/s/ Margaret K. Young
Kerri S. Reisdorff      KS #19709
Margaret K. Young    KS #78847
OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.
4520 Main Street, Suite 400
Kansas City, Missouri 64111
816-471-1301
816-471-1303 *(Facsimile)*
kerri.reisdorff@ogletree.com
margaret.young@ogletree.com

**ATTORNEYS FOR DEFENDANT**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on this 6th day of October 2020, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

Ganiyu Ayinla Jaiyeola
749 Preserve Circle Dr., SE, Apt. 6
Grand Rapids, MI 49548
616-635-4025
Ganiyu.jaiyeola@gmail.com

**PLAINTIFF PRO SE**

/s/ Margaret K. Young
**ATTORNEY FOR DEFENDANT**

44456699.1

Appellate Case: 21-3114     Document: 010110544162     Date Filed: 07/06/2021     Page: 408

# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **GANIYU AYINLA JAIYEOLA,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Case No. 2:20-cv-2068-JWB-JPO** |
| | ) | |
| **GARMIN INTERNATIONAL, INC.,** | ) | |
| | ) | |
| Defendant. | ) | |

## **PROTECTIVE ORDER**

Pending before the Court is Defendant Garmin International, Inc.'s Motion for Entry of Protective Order. Upon review of the Proposed Protective Order submitted by Defendant, the Court hereby grants the Motion for Entry of Protective Order as set forth herein.

During the course of discovery, it may be necessary to disclose certain confidential information relating to the subject matter of this action. Certain categories of such information should be treated as confidential, protected from disclosure outside this litigation, and used only for purposes of prosecuting or defending this action and any appeals. As such, Defendant requests entry of a protective order to limit the disclosure, dissemination, and use of certain identified categories of confidential information. Protection of the identified categories of confidential information is necessary because Plaintiff asserts claims that will necessitate discovery regarding his employment history, his medical history, confidential and sensitive information regarding third parties (i.e., dates of birth and EEO demographics), financial information of Plaintiff and Defendant, and/or other confidential business information of Defendant which has been maintained in a confidential manner. Defendant anticipates discovery will encompass the production of documents and tangible things, answering interrogatories, answering requests to admit, and taking depositions. All of these methods of discovery will likely require the production and disclosure of confidential information of and by the parties, and potentially, third parties.

Defendant is interested in permitting discovery to proceed without delay occasioned by possible disputes about the confidential nature of the documents and/or information being produced. For good cause shown under Fed. R. Civ. P. 26(c), the Court grants Defendant's request and hereby enters the following Protective Order:

1.   **Scope.**  All documents and materials produced in the course of discovery of this case, including initial disclosures, responses to discovery requests, all deposition testimony and exhibits, and information derived directly therefrom (hereinafter, collectively, "documents"), are subject to this Order concerning Confidential Information as set forth below. As there is a presumption in favor of open and public judicial proceedings in the federal courts, this Order will be strictly construed in favor of public disclosure and open proceedings wherever possible.

2.   **Definition of Confidential Information.** As used in this Order, "Confidential Information" is defined as information that the producing party designates in good faith has been previously maintained in a confidential manner and should be protected from disclosure and use outside the litigation because its disclosure and use are restricted by statute or could potentially cause harm to the interests of the disclosing party or nonparties. For purposes of this Order, the parties will limit their designation of "Confidential Information" to the following categories of information or documents:

(a)   Medical information, including physical and mental health records;

(b)   Financial information including, but not necessarily limited to bank records, financial statements, and tax returns;

(c)   Education records;

(d)   Employment information, including personnel files;

2

(e)     Dates of birth, ages, and other personal demographics and confidential information regarding the parties and third parties;

(f)     Proprietary information and/or trade secrets;

(g)     Records, documents, and information whose disclosure is restricted or prohibited by regulation, statute, or case law; and

(h)     Other confidential information of a party or third party previously maintained in a confidential manner.

Information or documents that are available to the public may not be designated as Confidential Information.

**3.     Form and Timing of Designation.**  The producing party may designate documents as containing Confidential Information and therefore subject to protection under this Order by marking or placing the words "CONFIDENTIAL" (hereinafter, "the marking") on the document and on all copies in a manner that will not interfere with the legibility of the document. As used in this Order, "copies" include electronic images, duplicates, extracts, summaries, or descriptions that contain the Confidential Information. The marking will be applied prior to or at the time the documents are produced or disclosed. Applying the marking to a document does not mean that the document has any status or protection by statute or otherwise except to the extent and for the purposes of this Order. Copies that are made of any designated documents must also bear the marking, except that indices, electronic databases, or lists of documents that do not contain substantial portions or images of the text of marked documents and do not otherwise disclose the substance of the Confidential Information are not required to be marked. By marking a designated document as confidential, the designating attorney or party appearing pro se thereby certifies that the document contains Confidential Information as defined in this Order.

4.      **Inadvertent Failure to Designate**. Inadvertent failure to designate any document or material as containing Confidential Information will not constitute a waiver of an otherwise valid claim of confidentiality pursuant to this Order, so long as a claim of confidentiality is asserted within 30 days after discovery of the inadvertent failure.

5.      **Depositions.**  Deposition testimony will be deemed confidential only if designated as such when the deposition is taken or within a reasonable time after receipt of the deposition transcript.  Such designation must be specific as to the portions of the transcript and/or any exhibits to be protected.

6.      **Protection of Confidential Material.**

(a)      **General Protections.**  Designated Confidential Information must be used or disclosed solely for purposes of prosecuting or defending this lawsuit, including any appeals.

(b)      **Who May View Designated Confidential Information.**  Except with the prior written consent of the designating party or prior order of the court, designated Confidential Information may only be disclosed to the following persons:

(1)      The parties to this litigation, including any employees, agents, and representatives of the parties;

(2)      Counsel for the parties and employees and agents of counsel;

(3)      The court and court personnel, including any special master appointed by the court, and members of the jury;

(4)      Court reporters, recorders, and videographers engaged for depositions;

(5)      Any mediator appointed by the court or jointly selected by the parties;

(6)     Any expert witness, outside consultant, or investigator retained specifically in connection with this litigation, but only after such persons have completed the certification contained in Attachment A, Acknowledgment and Agreement to be Bound;

(7)     Any potential, anticipated, or actual fact witness and his or her counsel, but only to the extent such confidential documents or information will assist the witness in recalling, relating, or explaining facts or in testifying, and only after such persons have completed the certification contained in Attachment A;

(8)     The author or recipient of the document (not including a person who received the document in the course of the litigation);

(9)     Independent providers of document reproduction, electronic discovery, or other litigation services retained or employed specifically in connection with this litigation; and

(10)    Other persons only upon consent of the producing party and on such conditions as the parties may agree.

(c)     **Control of Documents.**  The parties must take reasonable efforts to prevent unauthorized or inadvertent disclosure of documents designated as containing Confidential Information pursuant to the terms of this Order. Counsel for the parties must maintain a record of those persons, including employees of counsel, who have reviewed or been given access to the documents, along with the originals of the forms signed by those persons acknowledging their obligations under this Order.

7.     **Filing of Confidential Information.**  If a party seeks to file any document containing Confidential Information subject to protection under this Order, that party must take

5

appropriate action to ensure that the document receives proper protection from public disclosure, such as: (a) filing a redacted document with the consent of the party who designated the document as confidential; or (b) seeking permission to file the document under seal by filing a motion for leave to file under seal in accordance with D. Kan. Rule 5.4.6. Nothing in this Order will be construed as a prior directive to allow any document to be filed under seal.  The mere designation of information as confidential pursuant to this Order is insufficient to satisfy the court's requirements for filing under seal in light of the public's qualified right of access to court dockets. The parties understand that the requested documents may be filed under seal only with the permission of the court after proper motion. If the motion is granted and the requesting party permitted to file the requested documents under seal, only counsel of record and unrepresented parties will have access to the sealed documents. Pro hac vice attorneys must obtain sealed documents from local counsel.

      **8.**     **Challenges to a Confidential Designation.**  The designation of any material or document as Confidential Information is subject to challenge by any party. Before filing any motion or objection to a confidential designation, though, the objecting party must meet and confer in good faith to resolve the objection informally without judicial intervention. A party that elects to challenge a confidentiality designation may file a motion that identifies the challenged material and sets forth in detail the basis for the challenge; the parties are strongly encouraged to consider arranging a telephone conference with the undersigned magistrate judge before filing such a motion, but such a conference is not mandatory. The burden of proving the necessity of a confidentiality designation remains with the party asserting confidentiality. Until the court rules on the challenge, all parties must continue to treat the materials as Confidential Information under the terms of this Order.

**9.     Use of Confidential Documents or Information at Trial or Hearing.**  Nothing in this Order will be construed to affect the use of any document, material, or information at any trial or hearing. A party that intends to present or anticipates that another party may present Confidential Information at a hearing or trial must bring that issue to the attention of the court and the other parties without disclosing the Confidential Information. The court may thereafter make such orders as are necessary to govern the use of such documents or information at the hearing or trial.

**10.     Obligations on Conclusion of Litigation.**

**(a)     Order Remains in Effect.**  Unless otherwise agreed or ordered, all provisions of this Order will remain in effect and continue to be binding after conclusion of the litigation.

**(b)     Return of Confidential Documents.**  Within 30 days after this litigation concludes by settlement, final judgment, or final order, including all appeals, all documents designated as containing Confidential Information, including copies as defined above, must be returned to the party who previously produced the document unless:  (1) the document has been offered into evidence or filed without restriction as to disclosure; (2) the parties agree to destruction of the document to the extent practicable in lieu of return;  or (3) as to documents bearing the notations, summations, or other mental impressions of the receiving party, that party elects to destroy the documents and certifies to the producing party that it has done so.

**(c)     Retention of Work Product.**  Notwithstanding the above requirements to return or destroy documents, counsel may retain attorney work product, including an index which refers or relates to designated Confidential Information, so long as that work product does not duplicate verbatim substantial portions of the text or images of designated documents. This work

product will continue to be confidential under this Order. An attorney may use his or her own work product in subsequent litigation provided that its use does not disclose Confidential Information.

**11.    Order Subject to Modification.**  This Order is subject to modification by the court on its own motion or on motion of any party or any other person with standing concerning the subject matter. The Order must not, however, be modified until the parties have been given notice and an opportunity to be heard on the proposed modification.

**12.    Enforcement of Protective Order.**  Even after the final disposition of this case, a party or any other person with standing concerning the subject matter may file a motion to seek leave to reopen the case for the limited purpose of enforcing or modifying the provisions of this Order.

**13.    No Prior Judicial Determination.**  This Order is entered based on the representations and agreements of the parties and for the purpose of facilitating discovery. Nothing in this Order will be construed or presented as a judicial determination that any document or material designated as Confidential Information by counsel or the parties is entitled to protection under Fed. R. Civ. P. 26(c) or otherwise until such time as the court may rule on a specific document or issue.

**14.    Persons Bound by Protective Order.**  This Order will take effect when entered and is binding upon all counsel of record and their law firms, the parties, and persons made subject to this Order by its terms.

**15.    Applicability to Parties Later Joined.**  If additional persons or entities become parties to this lawsuit, they must not be given access to any Confidential Information until they execute and file their written agreement to be bound by the provisions of this Order.

16.     **Protections Extended to Third-Party's Confidential Information.** The parties

will extend the provisions of this Protective Order to Confidential Information produced in this

case by third parties, if timely requested by the third party.

17.     **Confidential Information Subpoenaed or Ordered Produced in Other**

**Litigation.**   If a receiving party is served with a subpoena or an order issued in other litigation that

would compel disclosure of any material or document designated in this action as Confidential

Information, the receiving party must so notify the designating party, in writing, immediately and

in no event more than three business days after receiving the subpoena or order. Such notification

must include a copy of the subpoena or court order.

The receiving party also must immediately inform in writing the party who caused the

subpoena or order to issue in the other litigation that some or all of the material covered by the

subpoena or order is the subject of this Order, and deliver a copy of this Order promptly to the

party in the other action that caused the subpoena to issue.

The purpose of imposing these duties is to alert the interested persons to the existence of

this Order and to afford the designating party in this case an opportunity to try to protect its

Confidential Information in the court from which the subpoena or order issued. The designating

party bears the burden and the expense of seeking protection in that court of its Confidential

Information, and nothing in these provisions should be construed as authorizing or encouraging a

receiving party in this action to disobey a lawful directive from another court. The obligations set

forth in this paragraph remain in effect while the party has in its possession, custody, or control

Confidential Information designated by the other party to this case.

18.     **Disclosure of Confidential Information Covered by Attorney-Client Privilege**

**or Work Product.** Whether inadvertent or otherwise, the disclosure or production of any

9

information or document that is subject to an objection on the basis of attorney-client privilege or work product protection, including, but not limited to, information or documents that may be considered Confidential Information under the Protective Order, will not be deemed to waive a party's claim to its privileged or protected nature or estop that party or the privilege holder from designating the information or document as attorney-client privileged or subject to the work-product doctrine at a later date. Any party receiving any such information or document must return it upon request to the producing party. Upon receiving such a request as to specific information or documents, the receiving party must return the information or documents to the producing party within 5 days, regardless of whether the receiving party agrees with the claim of privilege and/or work product protection. Disclosure of the information or document by the other party prior to such later designation will not be deemed a violation of the provisions of this Order. Although the provisions of this section constitute an order pursuant to Rule 502(d) and (e) of the Federal Rules of Evidence, and will be construed in a manner consistent with the maximum protection provided by said rule, nothing in this Order is intended or will be construed to limit a party's right to conduct a review of documents, including electronically-stored information, for relevance, responsiveness, or segregation of privileged or protected information before production.

IT IS SO ORDERED.

Dated:  _____, 2020

_____
Hon. James P. O'Hara
Chief Magistrate Judge

**ATTACHMENT A**
**ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND**

The undersigned hereby acknowledges that he/she has read the Protective Order dated

_____ in the case captioned, *Ganiyu Ayinla Jaiyeola v. Garmin International, Inc.*

and attached hereto, understands the terms thereof, and agrees to be bound by its terms.  The

undersigned submits to the jurisdiction of the United States District Court for the District of Kansas

in matters relating to this Protective Order and understands that the terms of the Protective Order

obligate him/her to use materials designated as Confidential Information in accordance with the

order solely for the purposes of the above-captioned action, and not to disclose any such

Confidential Information to any other person, firm, or concern, except in accordance with the

provisions of the Protective Order.

 The undersigned acknowledges that violation of the Protective Order may result in

penalties for contempt of court.

Name:            _____

Job Title:       _____

Employer:        _____

Business Address:  _____

                 _____


Date:_____    _____
                 Signature

44456724.1

11

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF KANSAS**

GANIYU AYINLA JAIYEOLA,

                    Plaintiff,

v.                             Case No.: 2:20-cv-2068-JWB-JPO

GARMIN INTERNATIONAL, INC.,

                    Defendant.

**<u>NOTICE OF SUBMISSION</u>**

**<u>SUBMISSION OF PLAINTIFF'S CONFIDENTIAL SETTLEMENT REPORT</u>**

**<u>TO MAGISTRATE JUDGE O'HARA</u>**

Plaintiff certifies that on the 6th day of October, 2020, Plaintiff Jaiyeola submitted, via e-mail, a

Confidential Settlement Report to Magistrate Judge O'Hara.

                              Respectfully submitted,

                             _____

                             GANIYU A. JAIYEOLA

                             Plaintiff

                             *pro se*

### CERTIFICATE OF SERVICE

Plaintiff hereby certifies that on the 6th day of October, 2020, Plaintiff e-mailed this notice to the

Clerk's office where it would be filed using the Court's CM/ECF system; which will

automatically send the notice of submission to the following:


Kerri S. Reisdorff

Margaret K. Young

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

4520 Main Street, Suite 400

Kansas City, Missouri 64111


ATTORNEYS FOR DEFENDANT



Respectfully submitted,

_____

GANIYU A. JAIYEOLA

Plaintiff

*pro se*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

GANIYU AYINLA JAIYEOLA,

                    Plaintiff,

v.                                          Case No.: 2:20-cv-2068-JWB-JPO

GARMIN INTERNATIONAL, INC.,

                    Defendant.


**<u>NOTICE OF SUBMISSION</u>**

**<u>PLAINTIFF'S REPORT OF THE PARTIES PLANNING CONFERENCE</u>**

**<u>TO MAGISTRATE JUDGE O'HARA</u>**

Plaintiff certifies that on the **22nd day of September, 2020**, Plaintiff Jaiyeola submitted, via electronic mail, **Plaintiff's Report (in edited Word and edited pdf format) of the Parties Planning Conference (September 9, 2020) to Magistrate Judge O'Hara**.  The following Defendant Garmin Attorneys were copied on the electronic mail to Magistrate Judge O'Hara:


Kerri S. Reisdorff

Margaret K. Young

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

4520 Main Street, Suite 400

Kansas City, Missouri 64111


ATTORNEYS FOR DEFENDANT

Respectfully submitted,

_____

GANIYU A. JAIYEOLA

Plaintiff

*pro se*

### <u>CERTIFICATE OF SERVICE</u>

Plaintiff hereby certifies that on the 6th day of October, 2020, Plaintiff e-mailed this notice to the

Clerk's office where it would be filed using the Court's CM/ECF system; which will

automatically send the notice of submission to the following:


Kerri S. Reisdorff

Margaret K. Young

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

4520 Main Street, Suite 400

Kansas City, Missouri 64111


ATTORNEYS FOR DEFENDANT


Respectfully submitted,


_____

GANIYU A. JAIYEOLA

Plaintiff

*pro se*


3

20-CV-02068-JWB-JPO   Jaiyeola v. Garmin   09.29.2020                    1

| | |
|---|---|
| 1 | UNITED STATES DISTRICT COURT |
|   | DISTRICT OF KANSAS |
| 2 | |

3  GANIYU AYINLA JAIYEOLA,

4       Plaintiff,

5       v.                              Case No. 20-CV-02068-JWB-JPO

6  GARMIN INTERNATIONAL, INC.,
                                        Kansas City, Kansas
7       Defendant.                      Date:  September 29, 2020

8  ........................

9               TRANSCRIPT OF TELEPHONE CONFERENCE
            BEFORE THE HONORABLE JAMES P. O'HARA
10              UNITED STATES MAGISTRATE JUDGE

11
                    A P P E A R A N C E S
12
   For the            Mr. Ganiyu Ayinla Jaiyeola
13  Plaintiff:         *Pro se*

14  For the            Ms. Kerri S. Reisdorff
   Defendant:         Ms. Margaret K. Young
15                     OGLETREE, DEAKINS, NASH, SMOAK & STEWART, PC
                       4520 Main Street, Suite 400
16                     Kansas City, Missouri 64111

17

18

19

20

21

22

23  ─────────────────────────────────────────────
         Proceedings recorded by digital recording,
    transcript produced by computer-aided transcription.
24

25

```
 1                    P R O C E E D I N G S
 2           THE COURT:  At this time for the audio record that
 3    we're keeping, the Court calls the civil action styled Jaiyeola
 4    versus Garmin International, Incorporated, Case No. 20-2068.
 5           Am I correct that we have the plaintiff on the line
 6    who's representing himself?  Is that correct?
 7           MR. JAIYEOLA:  Hi, Your Honor.
 8           THE COURT:  Good morning.
 9           MR. JAIYEOLA:  Good morning, Your Honor.
10           THE COURT:  The record should reflect that we have
11    Kerri Reisdorff and Margaret Young representing the defendant.
12           Folks, I've got the planning report that you submitted
13    and then also the e-mail that plaintiff submitted thereafter.
14    I gather there may have been some disagreements about what was
15    submitted, so I'm going to go through all of the various
16    deadlines to make sure that we come out of this conference with
17    a clear understanding as to what's going to happen from this
18    point forward.
19           I guess let me inquire first about settlement.  You
20    know, typically, as counsel I think are probably aware, our
21    court has a fairly robust policy of trying to encourage
22    settlement on the front end of the case, if that can be done,
23    to avoid the aggravation and expense of continued litigation.
24           But speaking as the Court's ADR coordinator, I can
25    tell you that it is not my view that every case must be
```

Case 2:20-cv-02068-HLT-JPO   Document 26   Filed 10/13/20   Page 3 of 29

Appellate Case: 21-3114   Document: 010110544162   Date Filed: 07/06/2021   Page: 427   3
20-CV-02068-JWB-JPO   Jaiyeola v. Garmin   09.29.2020

```
 1  mediated, and if the parties would appear to have a fundamental

 2  disagreement about whether the case is meritorious or even if

 3  potentially meritorious, what the value of the case might be.

 4  I don't require mediation all the time.

 5         In other words, if it's going to add more expense and

 6  more aggravation to an already expensive and aggravating

 7  process, then I just as soon get on with the litigating and

 8  dispense with the mediating.

 9         So I guess that's a long-winded preamble to this

10  question.  And I guess I'd like each side to maybe address this

11  briefly.  Is this a case that you believe that the settlement

12  dialogue of potentially a mediation with a third party would be

13  beneficial or should we just get on with things?

14         Mr. Jaiyeola, I apologize if I'm mispronouncing your

15  name.

16         MR. JAIYEOLA:  No, no.

17         THE COURT:  What do you think of that question?

18         MR. JAIYEOLA:  Your Honor, we had the planning

19  conference on September 9th, during which the settlement was

20  discussed.

21         By the way, Your Honor, I attended some class.  If you

22  do not understand what I'm saying, let me know.

23         But before filing this case, I did approach Garmin.  I

24  wanted to settle.  I was (undecipherable).  But it was on very

25  bad faith, really.  That was before I filed the case.
```

1    And on September 9th when we had the conference, the

2    issue came up again, and we had an agreement; that was my

3    understanding.  During the phone conference that -- on

4    September 14th, I was -- on the settlement proposal.  Then

5    Garmin will give a counterproposal by September 21, and by

6    September 28th, yesterday, you know, we should have that, like

7    the deadline to our settlement agreement, if it's possible.

8    But I got a shocker, Your Honor, a very bad one.  I

9    sent them a proposal on September 14th as we had agreed.  In

10   fact, I redid additional proposal on September 15th.  Then to

11   my surprise, when Garmin -- you know, we were sending e-mails

12   on the conference itself.  Then in one of the e-mails, you

13   know, to, you know, kind of updating on what we've discussed

14   for the conference -- at your conference, Garmin mentioned that

15   I only suggested the settlement timeline, that they never

16   agreed to it.  I was shocked.  I said that was terrible.  That

17   was like terrible, bad faith kind of thing.  Because Garmin --

18   they had not -- excuse me -- they had not agreed to that --

19   those settlement timelines, I would never have sent the

20   proposal that I did on September 14th and 15th.

21   So to me, I felt, well, there's Garmin again,

22   (undecipherable) -- (audio malfunction).

23   Everybody there?  Hello?

24   THE COURT:  Yes.  Yes.

25   MR. JAIYEOLA:  Sorry.  There was some buzzing in the

20-CV-02068-JWB-JPO   Jaiyeola v. Garmin   09.29.2020                    5

1    phone line.

2           So with those two attempts, Your Honor, to be honest

3    with you, the way it is now, we filed -- once -- and I even in

4    an e-mail that I sent to Garmin on Friday of last week, I said,

5    (indecipherable) when I communicate with Garmin, I want in

6    writing instead of like e-mails, only e-mail.  I do not want

7    communication by phone with them anymore because they're always

8    backing out of it, and you know, I probably will -- will lead

9    to a request for a transcript, you know, maybe issuing a

10   subpoena for a transcript of the phone call or something.

11          So talking about ADR or any mediated settlement I

12   don't think is meaningful, Your Honor.  It will be a waste of

13   time.  Again, I'm being honest, Your Honor, about that in good

14   faith.  Before the lawsuit was filed.

15          After the lawsuit was filed, Garmin sent to me

16   explaining some legal damages (indecipherable), I mean things

17   that is just not relevant to the settlement.  Then once

18   litigation -- and I think I'm going to give them litigation,

19   and that's the way to go, Your Honor.  I don't see any need for

20   any settlement, mediated kind of program, kind of thing.

21   That's my position, Your Honor.

22          THE COURT:  Very well.

23          Ms. Reisdorff, putting aside Mr. Jaiyeola's

24   characterization of the process that's led up to today, do you

25   agree with him that we ought to just skip the usual ADR

```
 1   provisions and move on with the litigation?

 2         MS. REISDORFF:  Judge, I'm torn because I generally

 3   think ADR is good, and I also think that there could be some

 4   benefit to it.

 5         I know the Court received Mr. Jaiyeola's Rule 26

 6   disclosures and his calculation of damages that -- I won't be

 7   too dramatic -- but well exceed the cap.  I did advise

 8   Mr. Jaiyeola in our written response to his settlement offer on

 9   the 21st that his numbers, his demands are not in line with the

10   cap and the damages that are even available under his claims,

11   and so I could -- I don't know that a mediator could help

12   further that communication just so we can at least get on the

13   same page of that.

14         So long way to say it is Garmin would consider a

15   mediation in the hopes that we could at least narrow down the

16   issues.

17         THE COURT:  Okay.  Well, let's do this.  I appreciate

18   everybody being candid about this.  I am going to dispense with

19   any deadlines in the scheduling order for making further

20   demands and counters and reports for the Court and mediation.

21         Having said that, I do agree with Ms. Reisdorff in the

22   sense that mediation, as a general proposition, has proven year

23   in and year out to be very effective, and I won't bore you with

24   the specific statistics on that.  But it does make sense for

25   parties to get realistic as early as possible as opposed to
```

20-CV-02068-JWB-JPO   Jaiyeola v. Garmin  09.29.2020                    7

1    just trying to slug things out.

2         So, Mr. Jaiyeola, I would, having reviewed your

3    disclosures on damages, respectfully urge you to spend some

4    time getting familiar with the source of damages that are

5    available in this kind of case and the caps that apply to those

6    recoveries.

7         I don't mean to imply that Garmin is likely to settle

8    this case for anything close to the caps, but to the extent

9    that you are demanding sums of money that exceed the caps, that

10   sort of demand is unproductive at best.

11        So I would encourage you to think about that.  I'm not

12   going to force you to.  I think -- I think if the parties want

13   to settle, that's a great and wonderful thing, but if they

14   don't, then so be it.  There are other ways to decide the case.

15        Let me shift gears a little bit and move to discovery

16   and the initial disclosures.  I do have the written disclosures

17   that each side has submitted.

18        Am I correct in understanding, Ms. Reisdorff, that

19   neither side has exchanged documents at this point?

20        MS. REISDORFF:  That is correct.  So in our initial

21   call on September 9th, the parties had an agreement that the

22   production would be just in conjunction with normal written

23   discovery served on the parties.

24        I believe Mr. Jaiyeola changed his position on that

25   when we exchanged multiple versions of the report back and

1   forth.  But by that point, later on in that scheduling

2   conference, he said he would never agree to a protective order,

3   even after I kind of -- I went through the different types of

4   documents we anticipated both producing to him and asking him

5   to produce.

6        And so at this point, Judge, I think Garmin would only

7   feel comfortable producing documents to Mr. Jaiyeola after the

8   Court rules on the -- what we intend to file, which is just

9   going to be not a joint position, but a motion on behalf of

10  Garmin for a protective order.

11       THE COURT:  Am I correct that you're in a position to

12  file that motion for protective order, I believe, by a week

13  from tomorrow?

14       MS. REISDORFF:  Yes.  That's our plan.

15       THE COURT:  Okay.  Mr. Jaiyeola, just for your

16  benefit, and I gather you've been around this kind of case

17  previously given what's been submitted here, but you know, in

18  the District of Kansas, it certainly is not uncommon for a

19  protective order to be entered in an employment discrimination

20  case given the types of documents that typically are produced.

21  Indeed, I would venture to say that protective orders are

22  entered in the vast majority of those cases.

23       But is Ms. Reisdorff correct in stating that it's your

24  position that under no circumstances would a protective order

25  be acceptable to you?

20-CV-02068-JWB-JPO   Jaiyeola v. Garmin  09.29.2020                9

1          MR. JAIYEOLA:  Your Honor, my point is I'm not going

2    to agree to a blanket protective order, Your Honor.  You know,

3    what I told Garmin was that it cannot be on like issue-by-issue

4    basis.  You know, if I make a request document and if they felt

5    they need a protective order on that particular document, then,

6    you know, then I will file a motion if they're not giving me

7    what I need, and then, you know, we will go through the motions

8    and the Court will decide.

9          I would rather have that, Your Honor, than just have a

10   blanket order covering everything I know that -- I do not want

11   a blanket protective order, Your Honor.  I'm not going to

12   sign -- I will oppose any motion on that blanket protective

13   order.  That's my position.

14          THE COURT:  Okay.  Well, maybe the nomenclature or the

15   terminology is important here.  I don't believe that

16   Ms. Reisdorff and Ms. Young contemplate that a protective order

17   necessarily would be blanket in nature in the sense that it

18   would apply to each and every document.  But there are broad

19   categories of documents that routinely are exchanged in this

20   kind of case that, for efficiency reasons to reduce the strain

21   on the parties and the Court, are produced pursuant to a

22   protective order.

23          So here again, I'm not here to debate the issue with

24   you, but I think it would benefit you to do some legal research

25   with regard to those instances in our court where I and my

1    colleagues have been asked to enter protective orders and how

2    those protective orders are used, how they're administered, et

3    cetera.

4         I can tell you, I have zero interest -- zero interest

5    -- in giving the parties an opportunity to have motion practice

6    over each and every document that one party may want to have

7    produced pursuant to a protective order.  That makes, in my

8    judgment, no sense at all.

9         Now, having said that, you'll have an opportunity to

10   respond on this, but I'm going to require that, as the

11   defendant has indicated, that they file their motion for

12   protective order on a contested basis, that the proposed

13   protective order attached, and their supporting (inaudible) in

14   by October 7th.

15        I'm going to require that any response to that be

16   filed by October 13th and any reply brief by October 18th.  And

17   then I will decide the issue in terms of what kind of

18   protective order should be entered in the case, if any, and

19   this is with the understanding that no documents that are

20   itemized in the parties' disclosures need to be produced until

21   this protective order issue is sorted out.

22        MR. JAIYEOLA:  That's fine with me, Your Honor.  I did

23   review many case laws in the district, and you know, what I saw

24   was a mix; some -- for some of the cases, for just like, you

25   know, three months, document by document, yeah, somewhere at

20-CV-02068-JWB-JPO   Jaiyeola v. Garmin   09.29.2020

1    the beginning of those cases, Your Honor, and I noted that in

2    those situations where, you know, where they had them in the

3    beginning, you know, nothing like a blanket or something close

4    to that.  It was a situation where the package had sort of like

5    a (indecipherable), not what we have right now, me and Garmin,

6    you know, so...

7         THE COURT:  I want to be clear on another point in

8    terms of the way this is going to work, Mr. Jaiyeola.  You

9    mentioned before that given the difficulty that you and defense

10   counsel have, from your perspective, in terms of submission of

11   the initial planning report, that you were going to insist upon

12   all future communications being in written form.  That, I can

13   tell you right now at least given the posture of this case, is

14   totally unacceptable to the Court.

15        In terms of managing discovery, the federal rules of

16   discovery or for civil procedure and our local rules that

17   correspond to those federal rules explicitly state and require

18   parties to confer and exchange views.

19        This process will be much more protracted, much more

20   expensive, much more inefficient, and much more aggravating for

21   all concerned if you and defense counsel can't at least have a

22   civil, business-like discussion.

23        Now, I've never dealt with you before, and I'm going

24   to do everything I can to give you a fair shake.  I can tell

25   you that, although I'm not very familiar with Ms. Young since

1    she's a younger lawyer -- no pun intended -- Ms. Reisdorff has

2    practiced in our court for many, many years.  I don't mean to

3    suggest she's old.  But she and her firm enjoy, you know, a

4    respect with the Court, and I fully expect that she will treat

5    you respectfully and responsively under the rules.

6         That doesn't mean she's going to agree with you, nor

7    does it mean that you need to agree with her.  But I do require

8    the parties in the case, whether they be unrepresented folks

9    such as yourself or those that have lawyers on both sides, to

10   be able to work most things out via phone calls or meetings.

11        That doesn't mean that you don't confirm those things

12   in written form and get it nailed down the way you think it is,

13   but I think this whole process collapses if people can't talk

14   to each other.  So please keep that in mind as the case moves

15   along.

16        With regard to a deadline to complete all discovery,

17   unless I've missed something in the written submissions -- and

18   I'm not looking for a long-winded discussion of this -- but if

19   there's something that we need to discuss further, we can.  But

20   it's my understanding that discovery would be completed by the

21   end of March 2021.

22        And so we're clear, Mr. Jaiyeola, how that works, that

23   means the discovery needs to be commenced or served in time to

24   be completed by March 31st of next year.  So, for example, with

25   a 30-day response time on interrogatories or document requests,

1   in order for those to be timely, they would need to be served

2   by March 1st instead of March 31st.  Hopefully that makes

3   sense.  That will be outlined in the order.

4          In the scheduling order that we will file -- and you

5   may have seen this, Mr. Jaiyeola, on our Court's website -- but

6   I want you to keep in mind -- and this is going to cut both

7   ways in terms of discovery requests if I'm called upon to

8   decide the propriety.  I do tend to strictly enforce the

9   relevance and proportionality mandate of Rule 26(b)(1) as it

10  was amended five years ago.  And likewise, keep in mind that I

11  do strictly enforce the certification requirements -- or

12  ramifications, I should say, of Rule 26(g).

13         And this will be highlighted in the scheduling order

14  that you'll get after today's conference.

15         But under that latter provision, keep in mind that if

16  somebody serves a discovery request, they are certifying with

17  their signature it is consistent with the Federal Rules of

18  Civil Procedure, and then it basically seeks relevant

19  information and is proportional to the needs of the case.  So

20  it doesn't serve anybody's interest to be serving discovery

21  requests that are overly broad and virtually impossible to

22  comply with without undue expense.

23         To the extent that objections are asserted, many

24  lawyers for years have served objections which are basically

25  boilerplate.  Those have been addressed in literally hundreds,

20-CV-02068-JWB-JPO   Jaiyeola v. Garmin   09.29.2020

```
1    if not thousands, of opinions out of our district.  Those sort

2    of objections are invalid under the rules and they're

3    sanctionable.

4         So my hope -- I don't have frankly much expectations

5    this will happen, but my hope in this case is that the parties

6    largely will be able to manage the discovery process by

7    themselves without Court supervision.

8         If Court supervision is called for and if I see the

9    sort of discovery abuses that I just described, then I will

10   enforce the rule -- Rule 26(g), that is -- which mandates --

11   does not permit -- sanctions.  And that can be attorney's fees;

12   it can be dismissal of claims and defenses; it can be a whole

13   number of things.

14        And that's not my objective.  I'd like to avoid

15   sanctioning parties and lawyers if I can do that, but if I see

16   discovery abuse going on in a case, nobody ought to expect me

17   to standby idly if that happens.

18        With regard to some of the intermediate deadlines, if

19   there are experts that the parties retain or designate on the

20   plaintiff's side, those would be due by December 31st of this

21   year.  For the defendant, any counter-designations will be due

22   January 29th of 2021.  And any rebuttal experts would be due

23   February 26th.

24        And I suspect you're already aware of this,

25   Mr. Jaiyeola, but if you do identify experts, make sure that
```

 1   you closely follow and adhere to Rule 26(a)(2) of the rules of

 2   civil procedure.

 3            With regard to any examinations of the parties under

 4   Rule 35, whether they be physical or mental examinations, I'm

 5   going to set a deadline for those to be January 15th.  If there

 6   are disputes between the parties about whether such an

 7   examination is appropriate, by whom it should be conducted, or

 8   what its parameters might be, that motion needs to be filed

 9   before that deadline.  In other words, far enough in advance of

10   that deadline so that the motion can be briefed in the ordinary

11   course, decided by the Court, and if the Court grants the

12   examination, to allow to get conducted by January 15th.  So if

13   this is going to be a problem, I guess my point is that you

14   need to get going quickly.

15            In terms of motion practice, if the parties had a

16   disagreement about when motions to amend ought to be filed,

17   this is no great Solomon-like decision, but I'm going to

18   essentially split the difference between your proposals, so

19   that deadline to file motions for leave to amend the pleading

20   will be November 30th, which is earlier than what the defendant

21   wanted, later than what -- excuse me, earlier than what the

22   plaintiff wanted and later than what the defendant did.

23            With regard to any summary judgment motions that might

24   be filed, I'm going to set that at June 1st of 2021.  That's a

25   hard deadline.  I saw some commentary, Mr. Jaiyeola, that you

 1    would file those whenever you deemed appropriate.  That's not

 2    the way it works in our district.  You certainly can file them

 3    earlier than June 1st, but no later than June 1st of next year.

 4            I did see the information flagged by defense counsel

 5    about possible need to adjust the reply brief schedule based on

 6    your summer of 2021 trial schedule.  I'm not going to include

 7    that in the scheduling order.  I would suggest, however, if

 8    this is still a problem, that you flag that issue in the

 9    proposed pretrial order that is submitted after the close of

10    discovery.

11            If there are summary judgment motions, whether they

12    come early or late in the case, both sides -- and for

13    Mr. Jaiyeola, I want to particularly highlight this for your

14    attention -- our court has summary judgment guidelines posted

15    on the website.  Make sure you look at those and comply with

16    them, otherwise a motion by the defendant could be granted on

17    procedural grounds without ever reaching the merits, which is

18    something I presume you want to avoid.

19            With regard to any expert-related motions, with this

20    case being assigned to Judge John Broomes as the presiding

21    district judge, those motions will be due June 1st along with

22    any summary judgment motions, as opposed to close to trial as

23    both of you had suggested.

24            Coming back to the summary judgment motions,

25    Ms. Reisdorff and Ms. Young, I wanted to highlight for you --

Case 2:20-cv-02068-HLT-JPO   Document 26   Filed 10/13/20   Page 17 of 29

Appellate Case: 21-3114   Document: 010110544162   Date Filed: 07/06/2021   Page: 441   17
20-CV-02068-JWB-JPO    Jaiyeola v. Garmin  09.29.2020

1    presumably you're already aware of this -- but since

2    Mr. Jaiyeola is an unrepresented party, if you file a summary

3    judgment motion against him, make sure you comply with the

4    applicable part of the local rule with regard to the notice

5    that needs to be included in your motion papers that reminds

6    him of the procedures on summary judgment.

7          MS. REISDORFF:  Thank you, Judge.

8          THE COURT:  With regard to the pretrial conference

9    that we conduct after the close of discovery, that is set for

10   April 19th at 9:00, and unless otherwise notified, that will be

11   in the courtroom.  If the pandemic is still upon us, then we'll

12   make adjustments at that time.

13         The proposed pretrial order that I mentioned, that the

14   form of that, Mr. Jaiyeola, is on our Court's website, but that

15   proposed pretrial order, which is a joint submission, just like

16   the Rule 26(f) report was, is due April 9th.  As is customary,

17   defense counsel will be primarily in the lead of preparing that

18   document, but that's a joint submission in consultation with

19   Mr. Jaiyeola.

20         With regard to status conferences in the case, I saw

21   that you requested one, but I'm not going to include that in

22   the scheduling order.  If something goes seriously awry with

23   this case and either side wants a status conference, simply

24   send an e-mail to chambers with a copy to the other side saying

25   you want a conference, what you want to talk about, and then

1    I'll try to get that set up.

2          In terms of a trial setting, Judge Broomes does not

3    establish trial settings in his scheduling orders.  That trial

4    setting will be deferred until such time that we conduct the

5    pretrial conference that I mentioned a moment ago.

6          Coming back yet again to summary judgment motions --

7    actually this would apply to any briefs -- keep in mind that

8    Judge Broomes has a standing order that applies to the length

9    of briefs.  By local rule and our standard scheduling order,

10   the argument section of a brief may not exceed 30 pages.  Judge

11   Broomes changes that procedure, and it's 30 pages for the whole

12   brief, facts and argument as well.  So make sure you comply

13   with that unless you want to have all the brief or everything

14   after 30 pages stricken.

15         With regard to discovery problems -- well, before we

16   get into that, let me mention with regard to a protective

17   order, I noticed one thing that did appear that you agreed upon

18   was, if there is production of material that might be

19   privileged or protected, in your report you suggest that that

20   would be covered or be able to get that material back if it was

21   inadvertently produced.

22         The Court's current form of protective order and

23   guidelines that were revised last year contemplate that the

24   parties would have the maximum protection afforded by Rule

25   502(d) of the rules of evidence.  So whether the production is

Case 2:20-cv-02068-HLT-JPO  Document 26  Filed 10/13/20  Page 19 of 29

Appellate Case: 21-3114  Document: 010110544162  Date Filed: 07/06/2021  Page: 443    19
20-CV-02068-JWB-JPO  Jaiyeola v. Garmin  09.29.2020

1    inadvertent or otherwise, you'd still be covered.  So I would

2    commend that to both sides as you litigate the issue of whether

3    there ought to be a protective order filed of any kind.

4         With regard to discovery, the potential problem -- I

5    guess this to some extent is bound up in the motion for

6    protective order -- but, Mr. Jaiyeola, I was a little bit

7    unclear what was contemplated.  In the report it indicated that

8    you intended to seek production of the medical records of three

9    employees of the defendant, specifically Misters Minelli, Mudd,

10   and Zeller.

11        Can you tell me in very brief terms why you would be

12   entitled to see their medical records?

13        MR. JAIYEOLA:  Their behaviors, Your Honor, during my

14   visit to Garmin on that August 14, 2019, date.  So I guess that

15   was the main reason, Your Honor.  I probably will want to put

16   that into a motion maybe, I don't know.  I think they probably

17   will oppose it.

18        THE COURT:  I'm still unclear.  I'm not following you.

19   Why would the medical records of employees of Garmin, who

20   evidently were involved in the interview process, be relevant

21   to this case?

22        MR. JAIYEOLA:  Your Honor, for the same reason that

23   Garmin wants to get my medical records, Your Honor.

24        THE COURT:  Ms. Reisdorff, let me make sure I've got

25   this in context.  To what extent, if any, does Garmin

1   anticipate asking for production of Mr. Jaiyeola's medical

2   records?

3          MS. REISDORFF:   There would be two bases, Judge, that

4   I see right now.   One, of course, is the large emotional

5   distress damages that Mr. Jaiyeola has alleged in his Rule 26

6   disclosures.

7          He has also -- and what would be a standard question

8   in our interrogatories would be to tell us if he's ever applied

9   for or received social security disability benefits.   We have

10   reason to believe that he has been receiving social security

11   disability benefits.   And I know, Judge, you're well aware of

12   the case law in terms of impact on economic damages if you're

13   physically unable to work and can't reconcile those

14   representations between your representations you make in a

15   lawsuit.

16          THE COURT:   Okay.   Well, it's helpful to know kind of

17   what's coming down the pike.   I guess --

18          MS. REISDORFF:   Sure.

19          THE COURT:   -- Mr. Jaiyeola, I'm not ruling today if

20   it would be premature that the plaintiff would have to produce

21   his medical records to the defendant given some of the claims

22   that have been made in this case, but I think it would be safe

23   to say that the mere fact that the defendant might be able to

24   demonstrate a basis for seeking your medical records based on

25   the claims you've made would not by itself in all likelihood be

1    a proper grounds for you to say, well, then I'm going to go

2    after the defendant's employees' medical records.  I'm not

3    saying you could never do that.  All I'm saying, as a practical

4    matter, you're going to need to be prepared to cite some

5    authority in this kind of case that would support that kind of

6    request.

7            But that's not something we need to decide today, but

8    I just wanted to make sure I was understanding, I guess, what

9    mines might lie out of the minefield on that point.

10           With regard to the location of depositions, if -- is

11   it contemplated, if the pandemic continues, that the parties

12   are going to conduct depositions by Zoom or some other

13   electronic means as opposed to being in person?

14           MS. REISDORFF:  Judge, I'll answer on behalf of

15   defendant.  I think that that's the presumption we're working

16   off of right now.  So absent, you know, something occurring in

17   written discovery that makes it so we believe strategically or

18   otherwise that we need to be in the same environment, the same

19   areas, then, you know, we'll confer about that with

20   Mr. Jaiyeola.  But I think we're working under the assumption

21   that depositions at least for the time being in pending cases

22   will be done virtually.

23           THE COURT:  Mr. Jaiyeola, are you of the same mind on

24   that issue?

25           MR. JAIYEOLA:  Kind of, Your Honor.  Yeah, probably

```
 1   will also -- like I mentioned in that report as well, they --

 2   some of -- some of the witnesses are also -- they're not

 3   working for Garmin anymore.  They're not their employees, like

 4   some of them.  Then they would probably be better off

 5   testifying -- you know, being deposed virtually, like Zoom kind

 6   of thing.  That's what I think.

 7           THE COURT:  And I guess, Mr. Jaiyeola, you've been

 8   involved in other employment cases, correct?

 9           MR. JAIYEOLA:  Yes, I have.

10           THE COURT:  Okay.  Do you have a familiarity, I guess,

11   with the expense and the logistics associated with your

12   initiating depositions?

13           MR. JAIYEOLA:  Yes, Your Honor.

14           THE COURT:  And you're prepared to, I mean, hire court

15   reporters and the like to take depositions; is that right?

16           MR. JAIYEOLA:  If I need to, Your Honor.  I don't have

17   to -- you know, there are other options to depositions, Your

18   Honor.  It doesn't have to be in person.

19           THE COURT:  I know, but in terms of a court reporter,

20   I'm just curious how you're going to manage that economically

21   in terms of the expense associated with a court reporter.

22           MR. JAIYEOLA:  Oh, yeah.  If I need to, Your Honor, if

23   I do need a court reporter, I surely can hire one.

24           THE COURT:  Do you have a sense of how much that

25   costs?
```

1          MR. JAIYEOLA:  So many of them, they vary in price,

2    Your Honor, depending on who you want and (indecipherable) to

3    prices (indecipherable), so many of them, yeah.

4          THE COURT:  Okay.  I just -- you know, they're not

5    cheap I guess is my point.

6          MR. JAIYEOLA:  They're not cheap, Your Honor.

7    Anything good is not cheap, Your Honor.  I've done it before,

8    Your Honor; I can do it again.

9          THE COURT:  In terms of the -- I'm just looking at

10   your financial status, whether you're going to be able to

11   handle that, but I suppose if you think you can handle it, go

12   for it.

13         With regard to everybody's favorite subject,

14   electronically-stored information, I saw on the report that --

15   I couldn't tell exactly what was involved here, but in one part

16   of the report it says defendant states that there's no

17   information currently available to suggest that a search of

18   disaster recovery backup media will need to occur.  Conversely,

19   plaintiff states that there surely will be a need to collect

20   ESI from disaster recovery backup.

21         I guess my question is, has there been any discussion

22   between the parties about what information the plaintiff has

23   asked for or is reasonably expected to ask for that would

24   involve disaster recovery backup?

25         MS. REISDORFF:  Judge, it's on defendant's side.  That

1    was language that Mr. Jaiyeola added after our September 9th

2    conference, and so we have not spoken directly about that.  I

3    did -- I did indicate in our September 9th call that we didn't

4    have any -- you know, a legal hold was issued and we believe

5    all relevant ESI will be available in this litigation.

6            We did talk briefly in the call about the custodians

7    issue.  We did identify/agree upon certain custodians.  The

8    others are the names that plaintiff stated, but right now I

9    don't know or have reason to know if they actually communicated

10   via electronically with respect to any of the allegations in

11   the lawsuit.  The custodians that we did agree to are ones that

12   we know had direct communications relating to plaintiff's

13   claims.

14           THE COURT:  Mr. Jaiyeola, let me ask you, is there any

15   specific information that you already have asked for or that

16   you expect to ask for that you believe would not be reasonably

17   acceptable as opposed to being subject to the disaster recovery

18   backup retrieval?

19           MR. JAIYEOLA:  Yes, Your Honor.  One key information,

20   in fact, a very important one is that when the position was

21   advertised and when the position was taken off from being

22   advertised, in terms of the (indecipherable) guidelines, I

23   mean, Garmin was still advertising the position after I was

24   denied employment, and so they need to look into their records

25   and bring all that information out in terms of when it was

1    the -- what date the position was first advertised, you know,

2    what web sites were they advertised on, Indeed and the rest of

3    them, and also critically, what dates were the ad pulled down,

4    because I saw the ad after I was denied employment.

5         Also, Your Honor, is plaintiff -- I would like to

6    know -- plaintiff would like to know the different people that

7    were interviewed in terms of the races, national origin,

8    (indecipherable), and probably also I need the information --

9    information on e-mails where my name was mentioned, because it

10   took Garmin like a period of three months after I was

11   interviewed before I was denied employment.  So that's why I am

12   saying I'm going to need that ESI.

13        THE COURT:  Okay.  Let me make a suggestion.  I'm not

14   going to decide this issue today, but I think my inclination is

15   to think that the sort of information you've asked for would

16   lend itself to, at least in the first instance, to

17   interrogatories or maybe even a single interrogatory with

18   subparts that would drill down on those kinds of information.

19   And it may be that by searching information that is reasonably

20   accessible, Garmin can provide you that information, and that

21   information may be entirely acceptable to you.

22        Even if that doesn't happen, I guess, respectfully, I

23   would urge you to do some research, starting I think if you

24   haven't already looked at it, the ESI guidelines that are

25   posted on our Court's website, and I believe they make very

1    clear as to The Sedona Conference Principles that, while there

2    are certain instances in which discovery of backup and disaster

3    tapes might be appropriate, the operating premise on the front

4    end of the case is that the parties will exhaust reasonable

5    efforts to search the information that is reasonably accessible

6    first, find out where that leads you, find out what answers

7    that provides you, and then at that point determine whether

8    it's even necessary to look at sources of ESI that are much

9    more difficult and much more expensive to retrieve, and even if

10   you get there, there may be a point at which, even if it's

11   retrievable, there may be cost-sharing involved, meaning you

12   might have to pay part of the freight to retrieve that

13   information.

14          So I guess as opposed to saying on the front end of

15   the case that we're going to look at every nook and every

16   cranny, no matter how expensive and now inconvenient it may be

17   to produce, I want the parties to get focused on trying to look

18   at those sources of information that are reasonably accessible

19   and then decide where we go from there.

20          Hopefully that makes sense to you.

21          MR. JAIYEOLA:  Yes, Your Honor.

22          THE COURT:  Okay.  Well, this complaint, I guess the

23   items about which I was unclear or at least in some of the

24   points I wanted to emphasize -- but, Mr. Jaiyeola, is there

25   anything else that we've not talked about today in terms of

1    scheduling or case management that you believe we need to take

2    up at this time?

3           MR. JAIYEOLA:  Your Honor, one thing I am kind of

4    concerned about is the defendant's, you know, lack of faith,

5    really, their showing of bad faith so far in my interactions

6    with them.  I think -- I think this litigation is going to

7    require more than one status conference, Your Honor.  I'm

8    thinking maybe the Court who's -- kind of looking like a

9    monthly status conference because I see a lot of conflict, Your

10   Honor.

11          I mean, the case has not only started, and the

12   defendant can't -- they cannot own up to an agreement as to a

13   settlement proposal.  That was even in which I'm going to be

14   filing the emotional damage, Your Honor.  That was in violation

15   of Rule 408, Your Honor.

16          The comment the defendant's attorney just made about

17   my social security benefits was something that I put up in a

18   settlement proposal, and they decided to sort of make that

19   discovery rule, which is a violation of (undecipherable) 402,

20   403(o), especially 408.

21          So, Your Honor, my point is I think a status

22   conference, monthly status conference, it is possible will

23   probably help for this lawsuit.  That's probably the only thing

24   that I have to say.

25          THE COURT:  Respectfully, Mr. Jaiyeola, and I don't

1    mean to argue the issue with you, but from where I sit -- and

2    I've been doing this for 20 years now -- I've seen nothing that

3    suggests that defense counsel has acted in bad faith.

4            With regard to this issue of, you know, the settlement

5    numbers or at least the subject being included in the report,

6    there clearly is no violation of Rule 408 of the rules of

7    evidence.  That deals with admissibility of settlement

8    discussions at a trial.

9            In federal litigation, it is not uncommon.  Indeed in

10   our district and in most others, it is standard for a judge who

11   is managing the case, typically a magistrate judge such as

12   myself, to be made privy to the numbers exchanged by the

13   parties.

14           So I could have asked you and Ms. Reisdorff and

15   Ms. Young specifically the settlement proposals that were

16   exchanged previous to today.  I thought that that, based on

17   what I had read thus far, would not be helpful to the process,

18   but it certainly would be proper.

19           So I'm not going to -- I'm not going to follow your

20   suggestion of having a monthly status conference.  I simply ask

21   that you redouble your efforts to listen and engage with

22   defense counsel.  I'm confident that they will treat you

23   respectfully.  I have every expectation that they will based on

24   what I've seen in the past.

25           So I do not find any bad faith at this point.  It may

1    come up at some point in the case later, but I just don't see

2    it here today.

3        Ms. Reisdorff, Ms. Young, anything further on behalf

4    of the defendant today?

5        MS. REISDORFF:  No, Judge.

6        MS. YOUNG:  No.  Thank you, Judge.

7        THE COURT:  Folks, I will get a scheduling order out

8    no later than tomorrow.  We've got a fairly full docket this

9    afternoon with another case starting in just a few minutes, but

10   I will get an order out that confirms the various deadlines and

11   other provisions that we've discussed today.  With that, we are

12   adjourned.  You all have a good day.

13       (The proceedings were adjourned.)

14                C E R T I F I C A T E

15     I certify that the foregoing is a true and correct

16   transcript from the digital record of proceedings as understood

17   and transcribed from the digital recording in the

18   above-entitled matter.

19     SIGNED 11th of October, 2020

20
                     /s/Danielle R. Murray
21                   DANIELLE R. MURRAY, RMR, CRR
                     United States Court Reporter
22

23

24

25

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

|  |  |  |
|---|---|---|
| | ) | |
| | ) | |
| GANIYU AYINLA JAIYEOLA, | ) | Case No.: 2:20-cv-2068-JWB-JPO |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| GARMIN INTERNATIONAL, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
## DEFENDANT GARMIN'S MOTION FOR PROTECTIVE ORDER

This is Plaintiff Ganiyu Jaiyeola's ("Jaiyeola") Memorandum in Opposition to Defendant

Garmin International, Inc.'s ("Garmin") Motion[1] and Memorandum[2] for a Protective Order.  For

the reasons stated below, Garmin's Motion for a Protective Order should be Denied.

## INTRODUCTION

**I.   BACKGROUND**

This is an employment discrimination lawsuit[3] in which Garmin, by failing to hire

Jaiyeola (for the "Advanced Materials Engineer - Metals-19001CL"[4] position he applied and

interviewed for over the phone and on-site at Garmin's Headquarters/Manufacturing Center in

Olathe, Kansas) violated Jaiyeola's rights under Title VII of the Civil Rights Act of 1964, as

amended ("Title VII" – Race (African American), Color (Black), and National Origin (Nigerian)),

---

[1] ECF No. 22, DEFENDANT'S MOTION FOR PROTECTIVE ORDER.
[2] ECF No. 23, MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR
PROTECTIVE ORDER.
[3] ECF No. 1, pp. 1-21. Plaintiff's Complaint.
[4] ECF No. 1-17, p. 2. Garmin's Human Resources Email Stating That Plaintiff Was Not Hired.

29 U.S.C. § 621, et seq. (Age Discrimination in Employment Act, as amended ("ADEA"), 42 U.S.C. §12112(b)(4) (Disability Association Discrimination - Title I of the Americans with Disabilities Act ("ADA")), The Kansas Age Discrimination in Employment Act[5] (Chapter 44, Art. 11, K.S.A., and specifically within the meaning of subsection (a)(1) of Section 44-1113 of said Act - "KADEA") and 42 U.S.C. § 1983 (Denial of Due Process – "Due Process").  Garmin is also liable for discrimination under Section 703(a) of Title VII because the fact that Jaiyeola was not hired by Garmin was based on the influence of a Garmin employee, Mr. Jeff Minelli (Garmin's Director of Mechanical Engineering), with a discriminatory motive; Subordinate Bias Liability ("cat's paw" theory of liability)[6].

Defendant's motion to dismiss the 42 U.S.C. § 1983 claim was granted by the Court but the pleading (in the same Defendant's motion) to dismiss the Subordinate Bias Liability claim was Denied[7].

A diversity rating report on Garmin concluded that "Diverse employees at Garmin International score the company 64/100 across various culture categories, placing Garmin International in the bottom 45% of companies in the United States with 10,000+ Employees for Comparably's diversity score.  The Diversity score provides insights into how diverse employees feel and rate their work experience at Garmin International across various culture dimensions."[8].

**Garmin's significantly incredibly low Diversity Rating (for an American multinational technology company) is strongly confirmed by the multiple employment discrimination**

---

[5]http://www.kslegislature.org/li/b2019_20/statute/044_000_0000_chapter/044_011_0000_article/044_011_0013_section/044_011_0013_k/

[6] *Equal Employment Opportunity Commission v. BCI Coca-Cola Bottling Company of Los Angeles*, 450 F. 3d 476 (10th Cir. 2006)

[7] ECF No. 17, pp. 4-6. Violation of Title VII Based on Subordinate Bias Liability.

[8] https://www.comparably.com/companies/garmin-international/diversity (as it appeared on February 12, 2020)

**lawsuits against Garmin in the United States since 2009 to date**.

A former **Female** Garmin employee stated the following in her Complaint: "This is an employment case based upon and arising under the **Family and Medical Leave Act**, as amended, 29 U.S.C. § 2611 et seq. ("FMLA"); the **Americans with Disabilities** Act, 42 U.S.C. § 12101 et seq. ("ADA") the **Age Discrimination** in Employment Act, 29 U.S.C. § 621 et seq. ("ADEA")"[9]. In 2009[10] and 2010[11], **failure-to-hire employment discrimination lawsuits** based on "Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, et seq., for employment discrimination on the basis of **race, color, religion, gender, or national origin**." and "Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §§ 621, et seq., for employment discrimination on the basis of age (age 40 or older)." were filed against Garmin.  In 2017, a Garmin employee filed an Equal Employment Opportunity Commission ("EEOC") charge of discrimination based on "**race, sex and national origin discrimination** and **retaliation under Title VII**"[12] against Garmin **after working for Garmin for 11 years**: **1.)** "**Plaintiff is a black female from Brazil, South America**. She has been a **naturalized citizen of the United States** since 2009."[13]; **2.)** "**Garmin's culture shows a preference for white employees and male employees**. For example, in July 2016, **a Garmin employee sent an email asking for hand models, specifically Caucasian hand models**."[14]; **3.)** "**Garmin's selection procedures and practices resulted in a workforce at its headquarters in 2017 that was eighty-two percent (82%) white, two and one-half percent (2.5%) black and two and two-tenths**

---

[9] *Peterson v. Garmin International, Inc.*, Case No. 2:09-cv-02659-JAR (D. Kan. Dec. 22, 2009), ECF No. 1, p. 1 at ¶ "1".

[10] *Leo v. Garmin Int'l, Inc.*, Case No. 2:09-cv-02139-KHV (D. Kan. 2009), ECF No. 1, p. 1.

[11] *Leo v. Garmin Int'l, Inc.*, Case No. 2:10-cv-02495-JTM-DJW (D. Kan. 2010), ECF No. 1-1, p. 1.

[12] *Antunes v. Garmin International, Inc.*, Case No. 2:18-cv-02697-JAR-KGG (D. Kan. Dec. 18, 2018), ECF No. 1, ¶ 9.

[13] *Id*; ¶ 12.

[14] *Id*; ¶ 26.

-3-

percent (2.2%) Hispanic."[15]; and **4.) "Garmin's selection procedures and practices resulted in a workforce at its headquarters in 2017 that was seventy-seven percent (77%) male and twenty-three percent (23%) female."**[16].

## II.   Plaintiff is a *pro se*

Jaiyeola is filing this lawsuit as a *pro se*. The District Court granted[17] Jaiyeola's *in forma pauperis*[18] motion but denied Jaiyeola's motion for an Attorney[19].

In *Hall v. Witteman*,[20] this Court stated that "*Pro se* complaints, **however inartfully pleaded, must be liberally construed, and are held to less stringent standards than formal pleadings drafted by lawyers**. *Erickson v. Pardus*, ___ U.S. ___, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007). See *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005)……". The Sixth Circuit asserted that "We recognize that *pro se* litigants impose a burden on the courts and that clients are usually better off if represented by counsel."[21] and "Pro se litigants have the right to be heard in federal courts and represent themselves. Derived directly from section 35 of the Judiciary Act of 1789, 28 U.S.C. § 1654 guarantees the right to proceed pro se in civil actions in federal courts. It provides that "[i]n all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein." Indeed, "[t]he Framers [n]ever doubted the right of self-representation, or imagined that this right might be considered inferior to the right of assistance of counsel." *Faretta v. California*, 422 U.S. 806, 832 (1975)."[22]  The U.S. Supreme

---

[15] *Id*; ¶ 45.
[16] *Id*; ¶ 47.
[17] ECF No. 6, Order: Plaintiff *in forma pauperis* Granted, Appointment of Attorney Denied.
[18] ECF No. 3, Plaintiff Motion: *in forma pauperis* Status.
[19] ECF No. 4, Plaintiff Motion: Appointment of an Attorney.
[20] *Hall v. Witteman*, 569 F. Supp. 2d 1208 (D. Kan. 2008)
[21] *King v. Curtis*, No. 14-2614 (6th Cir. 2015).
[22] *Greene v. Frost Brown Todd, et al.*, Nos. 16-6761/6763/6772 (6th Cir. 2017).

-4-

Court has stated that *pro se* pleadings and motions should be viewed liberally and held to a lesser standard than those drafted by Attorneys.[23].

## ARGUMENT

Defendant Garmin has filed a Motion for a Protective Order.  For the reasons stated below, Garmin's Motion for a Protective Order should be Denied.

"Fed.R.Civ.P. 26(b) states that [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at state in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable."[24].  "As such, the requested information must be nonprivileged, relevant, and proportional to the needs of the case to be discoverable. "**Federal Rule of Civil Procedure 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required**." *Layne Christensen Co. v. Purolite Co.*, 271 F.R.D. 240, 244 (D. Kan. 2010) (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984))."[25].  "Federal Rule of Civil Procedure 26(c) governs protective orders and provides, in relevant part **A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending. . . . The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action**. The court may, **for**

---

[23] *Haines v. Kerner*, 404 U.S. 520 (1971).
[24] *Chavira v. Packers Sanitation Serv. Inc., Ltd.*, No.: 17-2281-HLT-KGG, Document 70 (D. Kan. November 13, 2018).
[25] *Chavira*.

**good cause**, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: * * * (A) forbidding the disclosure or discovery; (B) specifying terms, including time and place, for the disclosure or discovery; * * * (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters;....Fed.R.Civ.P. 26(c)(1). Whether to issue a protective order is within the sound discretion of the Court. *Thomas v. IBM*, 48 F.3d 478, 482 (10th Cir.1995); *Terry v. Unified Gov't of Wyandotte Co.*, No. 09-2094-EFM-KGG, 2011 WL 795816 (D. Kan. March 1, 2011)."[26].

""It is clearly established that court documents are covered by a common law right of access[, . . .] but [they] may be sealed if the right to access is outweighed by the interests favoring nondisclosure." *United States v. McVeigh*, 119 F.3d 806, 811 (10th Cir. 1997) (citing *Nixon v. Warner Commc'ns*, 435 U.S. 589, 599, 602 (1978)). The decision to enter a protective order is within the discretion of the trial court and may be entered for "good cause." *Rohrbough v. Harris*, 549 F.3d 1313, 1321 (10th Cir. 2008) (citing *United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1427 (10th Cir. 1990); FED. R. CIV. P. 26(c)). **The "good cause" standard is "highly flexible, having been designed to accommodate all relevant interests as they arise**." *Rohrbough*, 549 F.3d at 1321 (quoting *United States v. Microsoft Corp.*, 165 F.3d 952, 959 (D.C. Cir. 1999)). **There are, broadly, three kinds of protective orders: 1) particular protective orders; 2) umbrella protective orders; and 3) blanket protective orders**. *Gillard v. Boulder Valley Sch. Dist. Re.-2*, 196 F.R.D. 382, 385 (D. Colo. 2000) (citing *Bayer AG & Miles, Inc. v. Barr Labs., Inc.*, 162 F.R.D. 456, 465 (S.D.N.Y. 1995)). **Particular protective orders** "cover[] specific, identified information[,]" are "usually sought by a party prior to disclosing the

---

[26] *Chavira*.

information for which protection is sought[,]" and "require[ courts to] review specific, identified information to determine whether good cause exists to enter [a protective order.]" *Id*. When the case involves more than a few documents, particular protective orders often prove inefficient. *Id*. at 385-86 (citing *Standard Chlorine of Delaware, Inc. v. Sinibaldi*, <u>821 F. Supp. 232, 256</u> (D. Del. 1992)). **Umbrella protective orders** "designate[] all discovery as protected without any prior review whatsoever, by either a court or the parties." *Id*. at 386. Umbrella protective orders are generally disfavored by courts. *Id*. (citing *Bayer AG*, <u>162 F.R.D. at 465</u>.) **Blanket protective orders** fall somewhere between the two extremes. These orders "place upon the parties themselves, or others from whom discovery is sought, the initial burden of determining what information is entitled to protection" and "requires that counsel for a producing party review the information to be disclosed and designate the information it believes, in good faith, is confidential or otherwise entitled to protection." *Id*. Designated information is then covered by the protective order unless objected to by an opposing party, at which point the court reviews the confidential designation. *Id*. **Blanket protective orders "serve the interests of a just, speedy, and less expensive determination of complex disputes" by limiting the need for judicial intervention**. *Id*."[27].  As seen in *Chavira*[28], a party or parties can file a motion with the Court for many protective orders as necessary during a case.

"In this case, Defendant seeks a blanket protective order regarding Confidential Information..."[29].

"…a party may request the court enter a protective order pursuant to <u>Fed. R. Civ. P. 26(c)</u> as a means to protect such confidential information."[30].  "…**"a concern for protecting**

---

[27] *Romero v. United States et al.*, Case 1:14-cv-00640-MV-WPL, Document 116 (D.N.M. 2015).
[28] *Chavira*; Document 12 (D. Kan. October 23, 2017), Document 54 (D. Kan. August 3, 2018).
[29] <u>ECF No. 23, p. 3</u>, ¶ 3, Lines 1-8.  Defendant's Memorandum for a Protective Order.
[30] *Manning v. Gen. Motors*, No. 2:06-cv-02504-JWL, Document 44; <u>247 F.R.D. 646</u> (D. Kan.

**confidentiality does not equate to privilege.**""[31] if there is no protective order on requested documents by a party.  "Furthermore, the Court is mindful of the rule that **"discovery in discrimination cases should not be narrowly circumscribed."  It is well settled that the scope of discovery is particularly broad in Title VII [c]ases.**"[32].

## I.   Defendant's Motion For a Protective Order Did Not Comply With <u>Federal Rule of Civil Procedure 26(c)(1)</u>

The **conference requirement** of Federal Rule of Civil Procedure ('Rule" 26(c)(1)) states as follows: "The **motion must include a certification** that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action."[33]. **Defendant's motion did not meet this requirement because the Defendant failed to attach a separate certificate of compliance with the conference requirement to its motion**. The Defendant's Motion for a Protective Order should therefore be Denied.

## II.   Garmins' Conclusory And Out-of-Context Assertions On Plaintiff Were Wrong, Unfair, and in Bad Faith

Garmin's made numerous conclusory and out-of-context assertions[34] about Plaintiff as regards the Rule 12(f) parties phone conference of September 9, 2020; examples: **1.)** "When Defendant pressed Plaintiff for the reason for his position, Plaintiff stated that he had no concern with his personal information being made public and that his intent was to oppose any position by Defendant thereby requiring the Court to decide all disputes."[35]; and **2.)** "Defendant understands Plaintiff's argument in opposition to entry of a protective order to be that he does not care if his

---

2007).

[31] *Id*.

[32] *Sonnino v. University of Kansas Hosp. Auth.*, No. 02-2576-KHV-DJW, Document 101; <u>220 F.R.D. 633</u> (D. Kan. 2004).

[33] <u>Federal Rule of Civil Procedure 26(c)(1)</u>.

[34] <u>ECF 23</u>.  "DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR ENTRY OF PROTECTIVE ORDER".

[35] <u>ECF 23</u>, ¶ 1, p. 2, Lines 5-8.

confidential information is made public and that he believes Defendant will intentionally

withhold documents or information to which he is entitled if a protective order is entered."[36].

Plaintiff took notes during the Rule 12(f) phone conference and **Plaintiff conferred[37] with the**

**Defendant in an effort to get the transcript of the phone record for the parties Rule 12(f)**

**phone conference**.   There were two Defendant Attorneys present for the Rule 12(f) parties

Conference: Ms. Kerri Reisdorff and Ms. Margaret Young.   **At the beginning of the phone**

**Conference, Residorff said she would do the talking and Young would take notes**.   Reisdorff

stated "No"[38] to the following Plaintiff statements: "**1.** That the Rule 12(f) conference between

Plaintiff and Defendants' Attorneys on September 9, 2020 was not voice or audio recorded by the

Defendants' Attorneys."[39]; and "**2.** That neither the Defendant nor the Defendants' Attorneys can

obtain a voice or audio record of the Rule 12(f) conference of September 9, 2020 with

Plaintiff."[40].   **Here are the key facts from Plaintiff's notes from the parties Rule 12(f) phone**

**conference: 1.)** Reisdorff started talking about settlement and said since Plaintiff was going to

claim mental distress, the Defendant would request for Plaintiffs' medical records; **2.)** Then

**Reisdorff threw in an "implied threat of consequences"**[41] that Plaintiff wouldn't want the

whole world to see his medical records; **3.)** Plaintiff now replied that he didn't care about his

medical records being requested and therefore made public; a reply that was meant to blunt

Reisdorff's "implicit threat of consequences"; **4.)** Then Reisdorff said if Plaintiff asked for more

than One Million Dollars in damages she would oppose it; and **5.)** Plaintiff didn't commit to any

---

[36] ECF 23, ¶ 1, p. 4, Lines 3-6.
[37] Exhibit A: Electronic Mail Discussion (October 7 to October 12, 2020) Between Defendant's Attorney Reisdorff and Plaintiff Regarding the Transcript of the Phone Record And Defendant's Attorney Young Notes for the September 9, 2020 Rule 12(f) Parties Conference.
[38] Exhibit A; Electronic Mail from Reisdorff to Jaiyeola dated October 9, 2020.
[39] *Id*; Electronic Mail from Jaiyeola to Reisdorff dated October 9, 2020.
[40] *Id*.
[41] *Speech First, Inc. v. Schlissel, et al*., No. 18-1917 (6th Cir. 2019).

-9-

damages award amount that he would settle for.

"Additionally, the invitation from the Response Team to meet could carry **an implicit threat of consequence** should a student decline the invitation."[42]; **an ordinary request to meet or negotiate on an issue could carry an "implicit threat of consequences"**.  Likewise, Reisdorff telling Plaintiff that his medical records would become public once the Defendant files the records with the Court carried an "implicit threat of consequences" of very profound and significant negative exposure should Plaintiff claim that mental distress arose as a result of the Defendant's employment discrimination.  "It was [Reisdorff]'s position as.......[Attorney for the Defendant] which invested in h[er] the power to create the implicit threat of consequences....."[43].  **The five facts that Plaintiff stated above should be in Young's notes**.

Garmins' conclusory and out-of-context assertions on Plaintiff as regards the parties Rule 12(f) phone conference do not constitute a "good cause" or evidence for Garmin's Motion for a Protective Order.  Garmin's Motion for a Protective Order should be Denied.

III.    **Defendant's Motion For Protective Order Did Not Reference Plaintiff's Interrogatories, Request to Admit, And Request for Documents**

On **October 5, 2020**, Plaintiff served his first set of interrogatories, first set of request to admit, and first set of request for documents on the Defendant.  The Defendant filed its Motion for a Protective Order on **October 6, 2020**; one day after Plaintiff served the Defendant Plaintiff's first set of interrogatories, request to admit, and request for documents.  The Defendant made no mention of Plaintiff's first set of interrogatories or first set of request to admit or first set of request for documents in the Defendant's Motion or Memorandum for Protective Order to indicate what the Defendant was seeking protection in reference to.  Also, the Defendant

---

[42] *Id.*
[43] *Fernot v. Crafts Inn, Inc.*, 895 F. Supp. 668 (D. Vt. 1995).

referenced the parties Rule 12(f) conference but did not back up its conclusory and out-of-context assertions as to what Plaintiff allegedly said with a written and certified transcript of the phone record of the Rule 12(f) conference or a certified copy of the notes that Young took during the parties Rule 12(f) phone conference.

"The court may, **for good cause**, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense,...."[44].  **Although "The "good cause" standard is "highly flexible..."" [45], "Whether to issue a protective order is within the sound discretion of the Court."[46] after a review of the evidence provided by the movant**.  In *Chavira*[47], the Defendant showed "good cause" by stating, in part, as follows: "Pursuant to <u>Fed. R. Civ. P. 26(c)</u>, Defendant Packers Sanitation Services, Inc. ("PSSI") moves the Court for a protective order concerning the Rule 30(b)(6) deposition of PSSI, which is tentatively scheduled to take place before the November 16, 2018, close of discovery….".  The evidence for the "good cause" in *Chavira* was the "twenty-six (26) designated matters (and corresponding documents)" in the "Rule 30(b)(6) deposition".  The evidence for the "good cause" in this case would have been at least one of the following: **1.)** Plaintiff's first set of interrogatories; **2.)** Plaintiff's first set of request to admit; **3.)** Plaintiff's first set of request for documents; **4.)** A certified written transcript of the phone record of the parties Rule 12(f) conference of September 9, 2020; and **5.)** A certified copy of Ms. Young's hand-written notes from the parties Rule 12(f) phone conference of September 9, 2020.

**Based on the facts stated by Plaintiff above, the Defendant has provided no evidence to support its request for a protective order; the Defendant therefore has not met the "good**

---

[44] *Chavira*; Document 70 (D. Kan. November 13, 2018).
[45] *Romero*.
[46] *Chavira*; Document 70 (D. Kan. November 13, 2018).
[47] *Id*; Document 54 (D. Kan. August 3, 2018).

cause" standard for a protective order.  The Defendant's Motion for a Protective Order should be Denied.

**IV.   Plaintiff Conferred On A Sample Protective Order With The Defendant**

Plaintiff conferred[48] (through electronic mail discussion) on a Sample Protective Order[49] with the Defendant on October 9, 2020.  The Defendant rebuffed Plaintiff.

## CONCLUSION

For the reasons stated above, Defendant Garmin's Motion for a Protective Order should be Denied.

Respectfully submitted,

_____

Dated:  October 15, 2020

Ganiyu A. Jaiyeola
749 Preserve Circle Drive SE #6
Grand Rapids, Michigan 49548
Tel.: 616.635.4025
ganiyu.jaiyeola@gmail.com

PLAINTIFF
*pro se*

---

[48] Exhibit B: Plaintiff Conferred with The Defendant On a Sample Protective Order (*Chavira*; Document 12 (D. Kan. October 23, 2017)) Through Electronic Mail Discussion Dated October 12, 2020.
[49] Exhibit C: Sample Protective Order (*Chavira*; Document 12 (D. Kan. October 23, 2017))That Plaintiff Conferred on With The Defendant.

-12-

## CERTIFICATE OF SERVICE

Plaintiff hereby certifies that on the 15th day of October, 2020, Plaintiff e-mailed the above

document to the Clerk's office where it would be filed using the Court's CM/ECF system which will

automatically send the document to the following:


Kerri S. Reisdorff
Margaret K. Young
OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.
4520 Main Street, Suite 400
Kansas City, Missouri 64111
816-471-1301
816-471-1303 (Facsimile)
kerri.reisdorff@ogletree.com
margaret.young@ogletree.com


ATTORNEYS FOR DEFENDANT


Dated: October 15, 2020                                    _____

                                                          Ganiyu A. Jaiyeola

                                                          PLAINTIFF
                                                          *pro se*

**Index of Exhibits – Plaintiff Response Garmin Protective Order**

Exhibit A  Electronic Mail Discussion (October 7 to October 12, 2020) Between Defendant's Attorney Reisdorff and Plaintiff Regarding the Transcript of the Phone Record And Defendant's Attorney Young Notes for the September 9, 2020 Rule 12(f) Parties Conference.

Exhibit B  Plaintiff Conferred with The Defendant On a Sample Protective Order (*Chavira*; Document 12 (D. Kan. October 23, 2017)) Through Electronic Mail Discussion Dated October 12, 2020.

Exhibit C  Sample Protective Order (*Chavira*; Document 12 (D. Kan. October 23, 2017)) That Plaintiff Conferred on With The Defendant.

# Exhibit A

Case 2:20-cv-02068-HLT-JPO   Document 29-2   Filed 10/15/20   Page 2 of 22

10/13/2020          Gmail - Jaiyeola v. Garmin: Request for the Full, Written, and Unedited Transcript of September 9 12(f) Conference
Appellate Case: 21-3114     Document: 010110544162     Date Filed: 07/06/2021     Page: 469



**Ganiyu Jaiyeola <ganiyu.jaiyeola@gmail.com>**

---

## Jaiyeola v. Garmin: Request for the Full, Written, And Unedited Transcript of September 9 Rule 12(f) Conference

11 messages

---

**Ganiyu Jaiyeola** <ganiyu.jaiyeola@gmail.com>                    Wed, Oct 7, 2020 at 10:35 AM
To: "Reisdorff, Kerri S." <kerri.reisdorff@ogletree.com>, "Young, Maggie" <margaret.young@ogletreedeakins.com>

Header:
Jaiyeola v. Garmin: Request for the Full, Written, And Unedited Transcript of September 9 Rule 12(f) Conference

Ms. Reisdorff,

1.  This is a "meet and confer" correspondence.

2. Plaintiff Jaiyeola and Defendant Garmin (the parties) held a Federal Rules of Civil Procedure 26(f) conference via phone on September 9, 2020.  The phone link was provided by Garmin as follows: 1-855-217-7103 (Code: 8164102245).

3. At the beginning of the conference on September 9, 2020, you said you would do the talking and Ms. Young would take notes.

4. In Garmin's Memorandum for a Protective Order (ECF 23), Garmin made many references to the conference of September 9, 2020, where Garmin referenced what Plaintiff said or what Plaintiff intended.  Examples: 1.) "When Defendant pressed Plaintiff for the reason for his position, Plaintiff stated that he had no concern with his personal information being made public and that his intent was to oppose any position by Defendant thereby requiring the Court to decide all disputes." (ECF 23, ¶ 1, p. 2, Lines 5-8); 2.) "Defendant understands Plaintiff's argument in opposition to entry of a protective order to be that he does not care if his confidential information is made public and that he believes Defendant will intentionally withhold documents or information to which he is entitled if a protective order is entered." (ECF 23, ¶ 1, p. 4, Lines 3-6).

5. Your conclusory and out-of-context assertions as regards what Plaintiff said or what Plaintiff intended were very unfair, wrong, and in bad faith.

6. Plaintiff has to file a response in opposition to Defendant's Motion for a Protective Order and to do that Plaintiff needs a copy of the full written and unedited Transcript of the phone conference of September 9, 2020.

**7. Plaintiff hereby requests for the following: The full, written and unedited Transcript of the phone conference of September 9, 2020 on or before October 12, 2020 via electronic mail.**

Case 2:20-cv-02068-HLT-JPO   Document 29-2   Filed 10/15/20   Page 3 of 22

10/13/2020                Gmail - Jaiyeola v. Garmin: Request for the Full, Written, And Unedited Transcript of September 9 Rule 12(f) Conference
Appellate Case: 21-3114      Document: 010110544162      Date Filed: 07/06/2021      Page: 470

8. If Defendant does not get the phone conference Transcript to Plaintiff by October 12, 2020, Plaintiff will file a Motion with the Court to Compel the Defendant.


Sincerely,

Ganiyu Jaiyeola, Ph.D., MBA
616 635 4025

---

**Reisdorff, Kerri S.** <kerri.reisdorff@ogletree.com>                    Thu, Oct 8, 2020 at 5:55 PM
To: Ganiyu Jaiyeola <ganiyu.jaiyeola@gmail.com>, "Young, Maggie" <margaret.young@ogletreedeakins.com>

Mr. Jaiyeola – The notes that Maggie made during our September 9 conference were made directly into the draft report.  In other words, she simply updated the draft as the parties discussed and finalized their positions.  The updated draft was sent to you several days later.  And just so we are clear going forward, any notes Maggie or I make during this case are our client's property and confidential work product and will not be provided to you unless we are compelled to do so by Judge O'Hara.


Finally, you have made numerous unfounded attacks on our integrity since the very beginning of this case.  While we certainly disagree with your subjective characterizations and attacks, you are entitled to your own subjective opinions (as are we).  Just as Maggie and I have done since the beginning of this case, I ask that you refrain from personal attacks on Maggie and myself either in emails or verbal discussions for the remainder of this case.  You may, of course, continue to share these subjective opinions with the Court subject to the Court's Scheduling Order and instructions to the parties.


Enjoy your evening.


Kerri



**Kerri S. Reisdorff | Ogletree, Deakins, Nash, Smoak & Stewart, P.C.**
4520 Main Street, Suite 400 | Kansas City, MO 64111 | Telephone: 816-410-2245 | Fax: 816-471-1303
kerri.reisdorff@ogletree.com | www.ogletree.com | Bio



**From:** Ganiyu Jaiyeola <ganiyu.jaiyeola@gmail.com>
**Sent:** Wednesday, October 07, 2020 9:35 AM
**To:** Reisdorff, Kerri S. <Kerri.Reisdorff@ogletreedeakins.com>; Young, Maggie <margaret.young@ogletreedeakins.com>
**Subject:** Jaiyeola v. Garmin: Request for the Full, Written, And Unedited Transcript of September 9 Rule 12(f) Conference

Case 2:20-cv-02068-HLT-JPO   Document 29-2   Filed 10/15/20   Page 4 of 22

10/13/2020                     Gmail - Jaiyeola v. Garmin: Request for the Full, Written, And Unedited Transcript of September 9 Rule 12(f) Conference
Appellate Case: 21-3114       Document: 010110544162      Date Filed: 07/06/2021       Page: 471

*[Caution: Email received from external source]*

---

## Header:

[Quoted text hidden]

*This transmission is intended only for the proper recipient(s). It is confidential and may contain attorney-client privileged information. If you are not the proper recipient, please notify the sender immediately and delete this message. Any unauthorized review, copying, or use of this message is prohibited.*

---

**Ganiyu Jaiyeola** <ganiyu.jaiyeola@gmail.com>                           Thu, Oct 8, 2020 at 6:14 PM
To: "Reisdorff, Kerri S." <kerri.reisdorff@ogletree.com>
Cc: "Young, Maggie" <margaret.young@ogletreedeakins.com>

Ms. Reisdorff,

Are you going to send me the "Full, Written, And Unedited Transcript of September 9 Rule 12(f) Conference"?  By the way, if you are sending it, have it certified as a true copy of the voice transcript.

If you feel "numerous unfounded attacks on our integrity", file a Motion with the Court.

Sincerely,

Ganiyu Jaiyeola, Ph.D., MBA
616 635 4025
[Quoted text hidden]

---

**Ganiyu Jaiyeola** <ganiyu.jaiyeola@gmail.com>                           Thu, Oct 8, 2020 at 7:34 PM
To: "Reisdorff, Kerri S." <kerri.reisdorff@ogletree.com>
Cc: "Young, Maggie" <margaret.young@ogletreedeakins.com>

For clarification:
1. I did not request for the notes that Ms. Young took at the September 9 Rule 12(f) Conference.

2. My request is for the phone record of the September 9 Rule 12(f) Conference.

3.  My request for a "Full, Written, And Unedited Transcript of September 9 Rule 12(f) Conference" refers to the phone record and I want the transcript certified as a true copy of the voice phone record.

4. If I do not hear back from you when I am getting what is stated in (3.) above by 1:00 PM (Eastern Time) tomorrow (October 9, 2020), I will file a Motion to Compel with the Court.

Case 2:20-cv-02068-HLT-JPO   Document 29-2   Filed 10/15/20   Page 5 of 22
10/13/2020                  Gmail - Jaiyeola v. Garmin: Request for the Full, Written, And Unedited Transcript of September 9 Rule 12(f) Conference
Appellate Case: 21-3114    Document: 010110544162    Date Filed: 07/06/2021    Page: 472

Sincerely,

Ganiyu Jaiyeola, Ph.D., MBA
616 635 4025

[Quoted text hidden]

---

**Reisdorff, Kerri S.** <kerri.reisdorff@ogletree.com>                    Fri, Oct 9, 2020 at 10:24 AM
To: Ganiyu Jaiyeola <ganiyu.jaiyeola@gmail.com>
Cc: "Young, Maggie" <margaret.young@ogletreedeakins.com>

Mr. Jaiyeola – It is not our practice to audio record calls with opposing counsel and our call on September 9 was not
audio recorded.

[Quoted text hidden]
[Quoted text hidden]

---

**Ganiyu Jaiyeola** <ganiyu.jaiyeola@gmail.com>                    Fri, Oct 9, 2020 at 11:10 AM
To: "Reisdorff, Kerri S." <kerri.reisdorff@ogletree.com>
Cc: "Young, Maggie" <margaret.young@ogletreedeakins.com>

Plaintiff took notes during the Rule 12(f) conference of September 9, 2020 with the
Defendants' Attorneys.

For clarification purposes, please answer a "Yes" or "No" to the following statements:
1. That the Rule 12(f) conference between Plaintiff and Defendants' Attorneys on
September 9, 2020 was not voice or audio recorded by the Defendants' Attorneys.

2. That neither the Defendant nor the Defendants' Attorneys can obtain a voice or audio
record of the Rule 12(f) conference of September 9, 2020 with Plaintiff.


Sincerely,

Ganiyu Jaiyeola, Ph.D., MBA
616 635 4025

[Quoted text hidden]

---

**Reisdorff, Kerri S.** <kerri.reisdorff@ogletree.com>                    Fri, Oct 9, 2020 at 11:20 AM
To: Ganiyu Jaiyeola <ganiyu.jaiyeola@gmail.com>
Cc: "Young, Maggie" <margaret.young@ogletreedeakins.com>

No.

[Quoted text hidden]
[Quoted text hidden]

---

**Ganiyu Jaiyeola** <ganiyu.jaiyeola@gmail.com>                    Sun, Oct 11, 2020 at 10:39 AM
To: "Reisdorff, Kerri S." <kerri.reisdorff@ogletree.com>
Cc: "Young, Maggie" <margaret.young@ogletreedeakins.com>

Case 2:20-cv-02068-HLT-JPO   Document 29-2   Filed 10/15/20   Page 6 of 22

10/13/2020          Gmail - Jaiyeola v. Garmin: Request for the Full, Written, And Unedited Transcript of September 9 Rule 12(f) Conference
Appellate Case: 21-3114     Document: 010110544162     Date Filed: 07/06/2021     Page: 473

1. Please provide to Plaintiff by electronic mail the following: A Certified Copy of the Complete and Unedited Copy of the notes that Ms. Young took at the parties Rule 12(f) phone conference on September 9, 2020.

2. Please provide the document in (1) on or before October 13, 2020 by 1:00 PM (Eastern Time).

Sincerely,

Ganiyu Jaiyeola, Ph.D., MBA
616 635 4025

[Quoted text hidden]

---

**Reisdorff, Kerri S.** <kerri.reisdorff@ogletree.com>          Mon, Oct 12, 2020 at 9:02 AM
To: Ganiyu Jaiyeola <ganiyu.jaiyeola@gmail.com>
Cc: "Young, Maggie" <margaret.young@ogletreedeakins.com>

Mr. Jaiyeola – Garmin already provided its response on October 8 regarding any notes taken by Ms. Young (see the email string below).

[Quoted text hidden]
[Quoted text hidden]

---

**Ganiyu Jaiyeola** <ganiyu.jaiyeola@gmail.com>          Mon, Oct 12, 2020 at 10:31 AM
To: "Reisdorff, Kerri S." <kerri.reisdorff@ogletree.com>
Cc: "Young, Maggie" <margaret.young@ogletreedeakins.com>

Plaintiff will be filing a Motion to Compel Garmin to provide "A Certified Copy of the Complete and Unedited Copy of the notes that Ms. Young took at the parties Rule 12(f) phone conference on September 9, 2020".

Sincerely,

Ganiyu Jaiyeola, Ph.D., MBA
616 635 4025

[Quoted text hidden]

---

**Reisdorff, Kerri S.** <kerri.reisdorff@ogletree.com>          Mon, Oct 12, 2020 at 10:42 AM
To: Ganiyu Jaiyeola <ganiyu.jaiyeola@gmail.com>
Cc: "Young, Maggie" <margaret.young@ogletreedeakins.com>

Mr. Jaiyeola - Please understand that if you do so we will consider the motion to be knowingly frivolous and a waste of the Court's time as you have been advised twice that Ms. Young did not take handwritten notes during the call - and any "notes" she took were simply updates to the draft report based on the parties' positions and ageeements during our call and that update was previously sent to you.  We also ask that you attach this entire email string to the motion you file.  If you choose not to, Gamin will provide it to the Court in its opposition brief.

Kerri

**From:** Ganiyu Jaiyeola <ganiyu.jaiyeola@gmail.com>
**Date:** Mon, Oct 12, 2020, 9:31 AM

Case 2:20-cv-02068-HLT-JPO   Document 29-2   Filed 10/15/20   Page 7 of 22

10/13/2020          Gmail - Jaiyeola v. Garmin: Request for the Full, Written, And Unedited Transcript of September 9 Rule 12(f) Conference

Appellate Case: 21-3114     Document: 010110544162     Date Filed: 07/06/2021     Page: 474

**To:** "Reisdorff, Kerri S." <Kerri.Reisdorff@ogletreedeakins.com>

**CC:** "Young, Maggie" <margaret.young@ogletreedeakins.com>

[Quoted text hidden]

# Exhibit B

M Gmail                                                    **Ganiyu Jaiyeola <ganiyu.jaiyeola@gmail.com>**

---

## E: Jaiyeola v Garmin: Sample Protective Order For Confer With Defendant
1 message

---

**Reisdorff, Kerri S.** <kerri.reisdorff@ogletree.com>                    Mon, Oct 12, 2020 at 9:22 AM
To: Ganiyu Jaiyeola <ganiyu.jaiyeola@gmail.com>, "Young, Maggie" <margaret.young@ogletreeakins.com>

Mr. Jaiyeola –As you know, Judge O'Hara's August 12, 2020 initial scheduling order attached the Court's model Report of Parties Planning Conference and in that report it specifically identifies the Court's "pre-approved" template for protective orders.   (Doc. 16, p. 9).   On September 8, 2020, I emailed you a copy of  D.Kan.'s guidelines for protective orders and the "pre-approved" form protective order.   Judge O'Hara specifically referenced the pre-approved form and guidelines in the parties conference with the Judge on September 29.

As you also know, the Court ordered Garmin to submit its motion and proposed protective order to the Court on or before October 7, 2020.  Garmin compiled with the Court's order.  The proposed protective order filed with the Court on October 6 models the Court's current pre-approved form.  In order to consider your request regarding the 2017 order you attached please answer the following:

-    Have you confirmed whether the order includes all of the language in D.Kan.'s current pre-approved protective order?  If it does not, please identify using highlights or redlines in your proposed order what is not in compliance or is different than the Court's pre-approved template.

-    For each difference, please state why you believe the Court's preapproved language is not appropriate for this case.

-    Please identify how your proposed protective order differs from the proposed order currently before the Court in Garmin's motion.  You can use redlines or highlighting.

-    With respect to each difference, please state your reasons supporting your language as opposed to the language proposed by Garmin.

Kerri

**Kerri S. Reisdorff | Ogletree, Deakins, Nash, Smoak & Stewart, P.C.**
4520 Main Street, Suite 400 | Kansas City, MO 64111 | Telephone: 816-410-2245 | Fax: 816-471-1303
kerri.reisdorff@ogletree.com | www.ogletree.com | Bio

**From:** Ganiyu Jaiyeola <ganiyu.jaiyeola@gmail.com>
**Sent:** Friday, October 09, 2020 3:36 PM
**To:** Reisdorff, Kerri S. <Kerri.Reisdorff@ogletreeakins.com>; Young, Maggie <margaret.young@ogletreeakins.com>
**Subject:** Jaiyeola v Garmin: Sample Protective Order For Confer With Defendant

*[Caution: Email received from external source]*

1. This is an attempt to Confer.


2. The attached Protective Order is from a Kansas District Court case: Chavira v. Packers Sanitation Serv. Inc., Ltd., 2:17-cv-02281-HLT-KGG, Document 12 (D. Kan. October 23, 2017).


3. I am agreeable to this Sample Protective Order.


4. Please review.  I am open to discussing this Sample Protective Order.  You can email or call.



Sincerely,


Ganiyu Jaiyeola, Ph.D., MBA

616 635 4025

*This transmission is intended only for the proper recipient(s). It is confidential and may contain attorney-client privileged information. If you are not the proper recipient, please notify the sender immediately and delete this message. Any unauthorized review, copying, or use of this message is prohibited.*

# Exhibit C

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **TRINIDAD CHAVIRA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No.:   2:17-cv-02281-JAR-KGG** |
| | ) | |
| **PACKERS SANITATION SERVICES,** | ) | |
| **INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

---

## PROTECTIVE ORDER

---

The parties agree that during the course of discovery it may be necessary to disclose certain confidential information relating to the subject matter of this action. They agree that certain categories of such information should be treated as confidential, protected from disclosure outside this litigation, and used only for purposes of prosecuting or defending this action and any appeals. The parties jointly request entry of this Protective Order to limit the disclosure, dissemination, and use of certain identified categories of confidential information.

The parties assert in support of their request that protection of the identified categories of confidential information is necessary because plaintiff, Trinidad Chavira ("Plaintiff"), has alleged claims of discrimination and/or retaliation under against defendant, Packers Sanitation Services, Inc. ("Defendant"). Given the nature of Plaintiff's claims, confidential personnel and employment records, medical records and information, confidential business records, trade secrets, and/or other proprietary information is likely to be sought by the parties. Disclosure of such information may violate the privacy of third parties and employees who have not authorized public disclosure of

such information, and/or may include disclosure of confidential or proprietary information of the parties.

For good cause shown under Fed. R. Civ. P. 26(c), the court grants the parties' joint request and hereby enters the following Protective Order:

1.      **Scope.**   All documents and materials produced in the course of discovery of this case, including initial disclosures, responses to discovery requests, all deposition testimony and exhibits, and information derived directly therefrom (hereinafter collectively "documents"), are subject to this Order concerning Confidential Information as set forth below. As there is a presumption in favor of open and public judicial proceedings in the federal courts, this Order will be strictly construed in favor of public disclosure and open proceedings wherever possible.

2.      **Definition of Confidential Information.**   As used in this Order, "Confidential Information" is defined as information that the producing party designates in good faith has been previously maintained in a confidential manner and should be protected from disclosure and use outside the litigation because its disclosure and use is restricted by statute or could potentially cause harm to the interests of the disclosing party or nonparties. For purposes of this Order, the parties will limit their designation of "Confidential Information" to the following categories of information or documents:

(1)      documents and information relating to Defendant's business, financials, marketing, sales, policies and procedures;

(2)      documents concerning the parties' income, net worth and income tax returns;

(3)      personnel and employment information of Defendant's current and former employees;

(4)      Defendant's confidential proprietary information and trade secrets; and

       (5)     Plaintiff's medical history and health care information. As required by HIPAA, the Court further orders that documents regarding Plaintiff's medical health or health care information, including but not limited to documents from Plaintiff's medical providers or treatment practitioners shall be treated as Confidential Information whether or not these documents are designated as Confidential and shall be unequivocally treated as confidential under this order.

Information or documents that are available to the public may not be designated as Confidential Information.

       **3.**       <u>**Form and Timing of Designation.**</u> The producing party may designate documents as containing Confidential Information, and therefore subject to protection under this Order, by marking or placing the word "CONFIDENTIAL" (hereinafter "the marking") on the document and on all copies in a manner that will not interfere with the legibility of the document. As used in this Order, "copies" includes electronic images, duplicates, extracts, summaries or descriptions that contain the Confidential Information. The marking will be applied prior to or at the time the documents are produced or disclosed. Applying the marking to a document does not mean that the document has any status or protection by statute or otherwise except to the extent and for the purposes of this Order. Copies that are made of any designated documents must also bear the marking, except that indices, electronic databases, or lists of documents that do not contain substantial portions or images of the text of marked documents and do not otherwise disclose the substance of the Confidential Information are not required to be marked. By marking a designated document as confidential, the designating attorney, thereby certifies that the document contains Confidential Information as defined in this Order.

       **4.**       <u>**Inadvertent Failure to Designate.**</u>   Inadvertent failure to designate any document or material as containing Confidential Information will not constitute a waiver of an otherwise

valid claim of confidentiality pursuant to this Order, so long as a claim of confidentiality is asserted within thirty (30) days after discovery of the inadvertent failure.

      **5.**    **Depositions.**   Deposition testimony will be deemed confidential only if designated as such when the deposition is taken or within fourteen (14) days after receipt of the deposition transcript.  Such designation must be specific as to the portions of the transcript and/or any exhibits to be protected.   There shall be no need to re-designate documents or exhibits which have been previously designated as Confidential Information.

      **6.**    **Protection of Confidential Material.**

      **(a)**    **General Protections.**   Designated Confidential Information must be used or disclosed solely for purposes of prosecuting or defending this lawsuit, including any appeals arising therefrom. No Confidential Information shall be disclosed to any other person, party, entity, agency, print or electronic media, or anyone outside this proceeding for any purpose, other than as set forth in this Order.

      **(b)**    **Who May View Designated Confidential Information.** Except with the prior written consent of the designating party or prior order of the court, designated Confidential Information may only be disclosed to the following persons:

    (1)     Parties, and counsel for the parties, who are actively engaged in the conduct of this litigation, and the partners, associates, secretaries, legal assistants and employees or agents of such counsel, to the extent reasonably necessary to render professional services to the litigation;

    (2)     The court and court personnel, including any special master appointed by the court, and members of the jury;

    (3)     Court reporters, recorders, and videographers engaged for depositions;

(4)     Any mediator appointed by the court or jointly selected by the parties;

(5)     Any expert witness, outside consultant, or investigator retained specifically in connection with this litigation, but only after such persons have completed the certification contained in Attachment A, Acknowledgment and Agreement to be Bound;

(6)     Any potential, anticipated, or actual fact witness and his or her counsel, but only to the extent such confidential documents or information will assist the witness in recalling, relating, or explaining facts or in testifying, but only after such persons have completed the certification contained in Attachment A, Acknowledgment and Agreement to be Bound;

(7)     The author or recipient of the document (not including a person who received the document in the course of the litigation);

(8)     Independent providers of document reproduction, electronic discovery, or other litigation services retained or employed specifically in connection with this litigation; and

(9)     Other persons only upon consent of the producing party and on such conditions as the parties may agree.

**(c)     Control of Documents**. The parties must take reasonable efforts to prevent unauthorized or inadvertent disclosure of documents designated as containing Confidential Information pursuant to the terms of this Order. Counsel for the parties, or the party appearing *pro se*, must maintain a record of those persons, including employees of counsel, who have reviewed or been given access to the documents along with the originals of the forms signed by those persons acknowledging their obligations under this Order.

**7.     Filing of Confidential Information.** In the event a party seeks to file any document containing Confidential Information subject to protection under this Order with the court, that party must take appropriate action to insure that the document receives proper protection from public disclosure including: (a) filing a redacted document with the consent of the

party who designated the document as confidential; (b) where appropriate (e.g., in relation to discovery and evidentiary motions), submitting the document solely for in camera review; or (c) when the preceding measures are inadequate, seeking permission to file the document under seal by filing a motion for leave to file under seal in accordance with D. Kan. Rule 5.4.6.

Nothing in this Order will be construed as a prior directive to allow any document to be filed under seal. The parties understand that the requested documents may be filed under seal only with the permission of the court after proper motion. If the motion is granted and the requesting party permitted to file the requested documents under seal, only counsel of record and unrepresented parties will have access to the sealed documents. Attorneys appearing *pro hac vice* must obtain sealed documents from local counsel.

**8.** **Challenges to a Confidential Designation.** The designation of any material or document as Confidential Information is subject to challenge by any party. Before filing any motion or objection to a confidential designation, the objecting party must meet and confer in good faith to resolve the objection informally without judicial intervention. A party that elects to challenge a confidentiality designation may file and serve a motion that identifies the challenged material and sets forth in detail the basis for the challenge. The burden of proving the necessity of a confidentiality designation remains with the party asserting confidentiality. Until the court rules on the challenge, all parties must continue to treat the materials as Confidential Information under the terms of this Order.

**9.** **Use of Confidential Documents or Information at Trial or Hearing.** Nothing in this Order will be construed to affect the use of any document, material, or information at any trial or hearing. A party that intends to present or that anticipates that another party may present Confidential Information at a hearing or trial must bring that issue to the attention of the court and

6

the other parties without disclosing the Confidential Information. The court may thereafter make such orders as are necessary to govern the use of such documents or information at the hearing or trial.

**10.** **Obligations on Conclusion of Litigation.**

**(a)** **Order Remains in Effect.** Unless otherwise agreed or ordered, all provisions of this Order will remain in effect and continue to be binding after conclusion of the litigation.

**(b)** **Return of Confidential Documents.** Within fourteen (14) days after this litigation concludes by settlement, final judgment, or final order, including all appeals, all documents designated as containing Confidential Information, including copies as defined above, must be returned to the party who previously produced the document unless the document has been offered into evidence or filed without restriction as to disclosure. However, counsel in this lawsuit may maintain a copy of all Confidential Information as a part of counsel's case files.

**(c)** **Retention of Work Product.** Notwithstanding the above requirements to return documents, counsel may retain attorney work product, including an index which refers or relates to designated Confidential Information and documents designated as Confidential Information. This work product will continue to be confidential under this Order. An attorney may use his or her own work product in subsequent litigation provided that its use does not disclose Confidential Information.

**11.** **Order Subject to Modification.** This Order is subject to modification by the court on its own motion or on motion of any party or any other person with standing concerning the subject matter. The Order must not, however, be modified until the parties have been given notice and an opportunity to be heard on the proposed modification.

12.    **No Prior Judicial Determination.** This Order is entered based on the representations and agreements of the parties and for the purpose of facilitating discovery. Nothing in this Order will be construed or presented as a judicial determination that any document or material designated as Confidential Information by counsel or the parties is entitled to protection under <u>Fed. R. Civ. P. 26(c)</u> or otherwise until such time as the court may rule on a specific document or issue.

13.    **Persons Bound by Protective Order.** This Order will take effect when entered and is binding upon all counsel of record and their law firms, the parties, and persons made subject to this Order by its terms.

14.    **Jurisdiction.** The court's jurisdiction to enforce the provisions of this Order will terminate on the final disposition of this case. But a party may file a motion to seek leave to reopen the case to enforce the provisions of this Order.

15.    **Protections Extended to Third-Party's Confidential Information.** The parties agree to extend the provisions of this Order to Confidential Information produced in this case by third parties, if timely requested by the third party.

16.    **Confidential Information Subpoenaed or Ordered Produced in Other Litigation.** If a receiving party is served with a subpoena or an order issued in other litigation that would compel disclosure of any material or document designated in this action as Confidential Information, the receiving party must so notify the designating party, in writing, immediately and in no event more than three business days after receiving the subpoena or order. Such notification must include a copy of the subpoena or court order.

The receiving party also must immediately inform in writing the party who caused the subpoena or order to issue in the other litigation that some or all of the material covered by the

subpoena or order is the subject of this Order. In addition, the receiving party must deliver a copy of this Order promptly to the party in the other action that caused the subpoena to issue.

The purpose of imposing these duties is to alert the interested persons to the existence of this Order and to afford the designating party in this case an opportunity to try to protect its Confidential Information in the court from which the subpoena or order issued. The designating party bears the burden and the expense of seeking protection in that court of its Confidential Information, and nothing in these provisions should be construed as authorizing or encouraging a receiving party in this action to disobey a lawful directive from another court. The obligations set forth in this paragraph remain in effect while the party has in its possession, custody, or control Confidential Information by the other party to this case.

**17.     Inadvertent Disclosure of Confidential Information Covered by Attorney-Client Privilege or Work Product.** The inadvertent disclosure or production of any information or document that is subject to an objection on the basis of attorney-client privilege or work-product protection, including, but not limited, to information or documents that may be considered Confidential Information under this Order, will not be deemed to waive a party's claim to its privileged or protected nature or to estop that party, or the privilege holder, from designating the information or document as attorney-client privileged or subject to the work-product doctrine at a later date. Any party receiving any such information or document must return it upon request to the producing party. Upon receiving such a request as to specific information or documents, the receiving party must return the information or documents to the producing party within seven (7) days, regardless of whether the receiving party agrees with the claim of privilege and/or work-product protection. Disclosure of the information or document by the other party prior to such later designation will not be deemed a violation of the provisions of this Order. The

9

provisions of this section constitute an order pursuant to Rules 502(d) and (e) of the Federal Rules

of Evidence.

**IT IS SO ORDERED.**

Dated: October 23, 2017

s/ KENNETH G. GALE
U.S. Magistrate Judge

*s/   Michael A. Williams*
Michael A. Williams
Williams Dirks Dameron, LLC
1100 Main Street
Suite 2600
Kansas City, Missouri 64105
Telephone: (816) 945-7110
Fax: (816) 945-7175
mwilliams@williamsdirks.com

*Attorney for Plaintiff*

*s/ James R. Holland, II*
James R. Holland, II
Lauren Sobaski
Fisher & Phillips LLP
4900 Main Street, Suite 650
Kansas City, Missouri 64112
Telephone: (816) 842-8770
Fax:    (816) 842-8767
jholland@fisherphillips.com
lsobaski@laborlawyers.com

*Attorney for Defendant*

**ATTACHMENT A**

**ACKNOWLEDGMENT**
**AND**
**AGREEMENT TO BE BOUND**

The undersigned hereby acknowledges that he/she has read the Protective Order dated October 12, 2017, in the case captioned *Trinidad Chavira v. Packers Sanitation Services, Inc.* (Case No. 2:17-cv-02281-JAR-KGG) and attached hereto, understands the terms thereof, and agrees to be bound by its terms. The undersigned submits to the jurisdiction of the United States District Court for the District of Kansas in matters relating to this Protective Order and understands that the terms of the Protective Order obligate him/her to use materials designated as Confidential Information in accordance with the order, solely for the purposes of the above-captioned action, and not to disclose any such Confidential Information to any other person, firm, or concern, except in accordance with the provisions of the Protective Order.

The undersigned acknowledges that violation of the Protective Order may result in penalties for contempt of court.

Name: _____

Job Title: _____

Employer: _____

Business Address: _____

_____

Date: _____          _____

Signature

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

GANIYU AYINLA JAIYEOLA,      )
         )
       Plaintiff,    )
         )
v.         )    **Case No. 2:20-cv-2068-JWB-JPO**
         )
**GARMIN INTERNATIONAL, INC.,**    )
         )
       Defendant.   )

## DEFENDANT'S REPLY IN SUPPORT OF ITS
## MOTION FOR ENTRY OF PROTECTIVE ORDER

Defendant filed its Motion for Protective Order (Doc. 22) and supporting Memorandum (Doc. 23) on October 6, 2020.[1] Attached to that Memorandum was Defendant's Proposed Protective Order ("Defendant's Proposed Order"), which is modeled after the Court's pre-approved Protective Order Form. (Doc. 23, Exhibit A.) Plaintiff filed his Memorandum in Opposition to Defendant's Motion (the "Memorandum") on October 15, 2020. (Doc. 29.) Attached to his Memorandum was a protective order entered in another case in this jurisdiction in 2017 that Plaintiff indicated he would agree to ("Plaintiff's Proposed Order"). (Doc. 29, Exhibit C.)[2]

Plaintiff's Proposed Order differs from Defendant's Proposed Order (and, more importantly, the Court's pre-approved language) in a number of respects. Prior to filing his Memorandum, Plaintiff did not respond to Defendant's written request that he identify and explain why he believed his proposed language was more appropriate in this case than the Court's pre-

---

[1] In his Memorandum, Plaintiff asserts that Defendant's Motion should be denied because Defendant violated Federal Rule of Civil Procedure 26(c)(1) by failing to include a certification that the Parties conferred in good faith regarding the entry of a Protective Order. Plaintiff's argument is misguided. Defendant included explanation of the Parties' discussions regarding a Protective Order as well as Defendant's understanding of Plaintiff's position based on those discussions in its Motion. Fed. R. Civ. P. 26(c)(1) does not require that Defendant "attach a separate certificate of compliance with the conference requirement to its motion" as suggested by Plaintiff. Moreover, the Court facilitated additional discussions between the parties on the topic during the September 29, 2020 conference.

[2] *See* Exhibit B, e-mail from Ganiyu Jaiyeola to Kerri Reisdorff and Margaret Young, October 9, 2020, 3:36 PM.

approved language and/or the language proposed by Defendant. (Doc. 29, Exhibit B.)  Plaintiff's Memorandum also fails to provide this information. (Doc. 29.)

For the ease of the Court, Defendant has attached a red-line version of Defendant's Proposed Order identifying the differences between the two proposed orders as Exhibit A.[3] Moreover, Defendant has provided the below summary of the material differences between the two proposed orders and identified Plaintiff's proposed changes that Defendant does not object to and those changes proposed by Plaintiff that Defendant does object to.[4]  Defendant has identified in Exhibit A those proposed changes it does not object to by highlighting in yellow.

## I.      CHANGES UNOPPOSED BY DEFENDANT

- **Paragraph Two, Definition of Confidential Information**

In Paragraph Two, Plaintiff has proposed changes to the language describing the categories of Confidential Information. These changes are largely semantic in nature and are unopposed by Defendant, with some exceptions, which are addressed in Section II below. More specifically, though, Defendant does not oppose Plaintiff's changes to the language describing the categories of (i) financial information with respect to both parties; (ii) personnel and employment information of Defendant's current or former employees; and (iii) Defendant's confidential proprietary information and trade secrets. Additionally, Defendant agrees to Plaintiff's addition of sub-paragraph (5), but proposes some changes to that paragraph, which are set forth in Section II below.

---

[3] Defendant did not redline the case caption, the opening paragraphs, or signature blocks.

[4] This Reply does not address each and every one of the proposed changes in Plaintiff's Proposed Order, as some of those changes do not impact the fundamental nature of the protective order. Additionally, this Reply addresses only aspects of Plaintiff's Memorandum which are relevant to the very narrow issue of whether a protective order should be entered in this case and the language to be included in such order.

- **Paragraph Five, Depositions**

In Paragraph Five, Plaintiff changed "a reasonable time" to "within 14 days" for the parties to designate deposition testimony as confidential. Defendant is willing to agree to a timeframe of 30 days for confidential designation of deposition testimony. Federal Rule of Civil Procedure 30(e)(1) provides 30 days for a party to review and submit any necessary corrections to a transcript. As such, Defendant believes a 30 day deadline is more appropriate. Plaintiff also added "there shall be no need to re-designate documents or exhibits which have been previously designated as Confidential Information" to the end of Paragraph Five. Defendant does not oppose this change.

- **Paragraph Seven, Filing of Confidential Information**

In Paragraph Seven, Plaintiff modified sub-point (b) by adding, "where appropriate (e.g., in relation to discovery and evidentiary motions), submitting the document solely for in camera review; or (c) when the preceding measures are inadequate…" Defendant does not oppose this change.

- **Paragraph Ten, Obligations on Conclusion of Litigation**
  - **Sub-paragraph (b), Return of Work Product**

In Paragraph 10(b), Plaintiff added, "however, counsel in this lawsuit may maintain a copy of all CI as part of counsel's case files." Defendant does not oppose this change.

- **Paragraph Eighteen, Disclosure of Confidential Information Covered by Attorney-Client Privilege or Work Product**

In Paragraph Eighteen, Plaintiff changed the timeframe for return of such documents from 5 days to 7 days. Defendant does not oppose this change.

- **Plaintiff's References to his "Pro Se" Status**

Throughout Plaintiff's Proposed Order, there are several references to the fact that Plaintiff is proceeding pro se. Defendant does not oppose inclusion of references to Plaintiff's pro se status.

## II.    CHANGES OPPOSED BY DEFENDANT

- **Introductory Paragraphs (which were not redlined by Defendant)**

In the introductory paragraphs, Plaintiff eliminated Defendant's descriptions of the documents at issue and inserted language from the case he relied on for his Proposed Order. Defendant's original description of the documents at issue is more specific and is tailored to this case, and thus, is more appropriate. Defendant opposes this change.

- **Paragraph Two, Definition of Confidential Information**

As noted above, Defendant does not agree to the entirety of Plaintiff's proposed changes to Paragraph Two. Specifically, Defendant opposes Plaintiff's elimination of the following categories of documents: (i) medical information, including physical and mental health records; (ii) education records; (iii) dates of birth, ages, and other personal demographics and confidential information regarding the parties and third parties; (iv) records, documents, and information whose disclosure is restricted or prohibited by regulation, statute, or case law; and (v) other confidential information of a party or third party previously maintained in a confidential manner. Additionally, while Defendant agrees to the addition of Plaintiff's proposed sub-paragraph (5), Defendant does not agree to incorporate the reference to "HIPPA" in that sub-paragraph as the reference is inapplicable in this context. Moreover, if ultimately included in the Protective Order, sub-paragraph (5) should apply not only to Plaintiff's medical records, but to any individual's medical records that are produced in this case. Defendant suggests the following language for sub-paragraph (5):

> "Medical history and health care information. The Court further orders that documents regarding any individual's medical health or health care information, including but not limited to documents from medical providers or treatment practitioners, shall be treated as Confidential Information whether or not these documents are designated as Confidential and shall be unequivocally treated as confidential under this order."

- **Paragraph Six, Protection of Confidential Material**

In Paragraph Six, Plaintiff added "no confidential information shall be disclosed to any other person, party, entity, agency, print or electronic media, or anyone outside this proceeding for any purpose, other than as set forth in this Order." This addition is unnecessary given the clear language throughout Paragraph Six—specifically, throughout sub-paragraph (b)—regarding who may view designated confidential information. The language provided in Defendant's Proposed Order is consistent with the Court's pre-approved language.

- **Paragraph Seven, Filing of Confidential Information**

In Paragraph Seven, Plaintiff eliminated the following Court-approved language: "the mere designation of information as confidential pursuant to this Order is insufficient to satisfy the court's requirements for filing under seal in light of the public's qualified right of access to court dockets." For the same reasons set forth above with respect to the Court's pre-approved language, Defendant opposes this change.

- **Paragraph Eight, Challenges to a Confidential Designation**

In Paragraph Eight, Plaintiff eliminated the following Court-approved language: "the parties are strongly encouraged to consider arranging a telephone conference with the undersigned magistrate judge before filing such a motion, but such a conference is not mandatory." In addition to the fact that this language is pre-approved by the Court, Judge O'Hara made a similar request of the parties during the Rule 16 conference on September 29, 2020 and this language is contained in the Court's Scheduling Order.  (Doc. 19, p. 8.)  As such, Defendant opposes this change.

- **Paragraph Ten, Obligations on Conclusion of Litigation**
  - **Sub-paragraph (b), Return of Confidential Documents**

In Paragraph 10(b), Plaintiff changed the timeframe for return of confidential documents from 30 days to 14 days. Defendant opposes this change in the interest of allowing both parties

ample time to comply with the requirements of this provision. Also in Paragraph 10(b), Plaintiff eliminated the following Court-approved language: "… (2) the parties agree to destruction of the document to the extent practicable in lieu of return; or (3) as to documents bearing the notations, summations, or other mental impressions of the receiving party, that party elects to destroy the documents and certifies to the producing party that it has done so." Defendant opposes this change as the Court's pre-approved language does not bind or commit either party at this stage; rather, it provides reasonable options the parties can consider at the appropriate time and based on the material considerations that exist at that time.

> o **Sub-paragraph (c), Retention of Work Product**

In Paragraph 10(c), Plaintiff deleted the following Court-approved language: "so long as that work product does not duplicate verbatim substantial portions of the text or images of designated documents" and replaced it with "and documents designated as Confidential Information." Defendant opposes this change to the Court's pre-approved language and believes it provides necessary protections to both parties.

> • **Paragraph Twelve, Enforcement of Protective Order**

Plaintiff eliminated Paragraph Twelve in its entirety. This paragraph is included in the Court's pre-approved language. As such, Defendant opposes this change. Relatedly, Plaintiff added a paragraph entitled "Jurisdiction" which is similar to the original Paragraph Twelve in Defendant's Proposed Order. However, although Plaintiff's proposed Paragraph Twelve contains language similar to the Court's pre-approved language, Defendant's Proposed Order incorporated the Court's exact pre-approved language. Thus, Defendant's original Paragraph Twelve is more appropriate for inclusion in the Protective Order.

- **Paragraph Fourteen, Applicability to Parties Later Joined**

Plaintiff also eliminated Paragraph Fourteen in its entirety. This paragraph is listed as "optional" in the Court's pre-approved language. Defendant opposes this change because the deadline to Amend the Pleadings to Add Additional Parties does not expire until November 30, 2020. Because this deadline is still pending, this paragraph should be included in the Protective Order.

- **Paragraph Eighteen, Disclosure of Confidential Information Covered by Attorney-Client Privilege or Work Product**

Plaintiff modified Paragraph Eighteen to include only *inadvertent* disclosure of Confidential Information covered by the attorney-client privilege or work product doctrine. The language in Defendant's Order is consistent with Court's current pre-approved language. Additionally, Defendant's proposed language provides the most protection for *both* parties. As such, Defendant opposes Plaintiff's changes in the interest of complying with the Court's best practices and also providing more protection for the parties, rather than less.

- **Final Paragraph of the Protective Order**

In this paragraph, Plaintiff eliminated the following Court-approved language: "…and will be construed in a manner consistent with the maximum protection provided by said rule, nothing in this Order is intended or will be construed to limit a party's right to conduct a review of documents, including electronically stored information, for relevance, responsiveness, or segregation of privileged or protected information before production." In addition to opposing the elimination of the Court's pre-approved language, Defendant further opposes this deletion as this provision provides additional protection for both parties and thus, is in the best interest of both parties.

### III.      CONCLUSION

For all of the reasons set forth above and in Defendant's original supporting Memorandum, good cause exists for entry of a Protective Order in this case. Therefore, Defendant Garmin International, Inc., respectfully requests that this Court grant its Motion for Entry of Protective Order, by entering a Protective Order consistent with Defendant's set forth herein.

Respectfully submitted,

/s/  Kerri S. Reisdorff
Kerri S. Reisdorff       KS #19709
Margaret K. Young     KS #78847
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
4520 Main Street, Suite 400
Kansas City, Missouri 64111
816-471-1301
816-471-1303 *(Facsimile)*
kerri.reisdorff@ogletree.com
margaret.young@ogletree.com

**ATTORNEYS FOR DEFENDANT**

**CERTIFICATE OF SERVICE**

The undersigned certifies that on this 26th day of October, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and a copy of same was mailed to the following:

Ganiyu Ayinla Jaiyeola
749 Preserve Circle Dr., SE, Apt. 6
Grand Rapids, MI 49548
616-635-4025
Ganiyu.jaiyeola@gmail.com

**PLAINTIFF PRO SE**

/s/  Kerri S. Reisdorff
**ATTORNEY FOR DEFENDANT**

44679877.1

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **GANIYU AYINLA JAIYEOLA,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   **Case No. 2:20-cv-2068-JWB-JPO** |
| | ) |
| **GARMIN INTERNATIONAL, INC.,** | ) |
| | ) |
| Defendant. | ) |

## PROTECTIVE ORDER

Pending before the Court is Defendant Garmin International, Inc.'s Motion for Entry of Protective Order. Upon review of the Proposed Protective Order submitted by Defendant, the Court hereby grants the Motion for Entry of Protective Order as set forth herein.

During the course of discovery, it may be necessary to disclose certain confidential information relating to the subject matter of this action. Certain categories of such information should be treated as confidential, protected from disclosure outside this litigation, and used only for purposes of prosecuting or defending this action and any appeals. As such, Defendant requests entry of a protective order to limit the disclosure, dissemination, and use of certain identified categories of confidential information. Protection of the identified categories of confidential information is necessary because Plaintiff asserts claims that will necessitate discovery regarding his employment history, his medical history, confidential and sensitive information regarding third parties (i.e., dates of birth and EEO demographics), financial information of Plaintiff and Defendant, and/or other confidential business information of Defendant which has been maintained in a confidential manner. Defendant anticipates discovery will encompass the production of documents and tangible things, answering interrogatories, answering requests to admit, and taking depositions. All of these methods of discovery will likely require the production and disclosure of confidential information of and by the parties, and potentially, third parties.

Defendant is interested in permitting discovery to proceed without delay occasioned by possible disputes about the confidential nature of the documents and/or information being produced. For good cause shown under Fed. R. Civ. P. 26(c), the Court grants Defendant's request and hereby enters the following Protective Order:

1.      **Scope.**  All documents and materials produced in the course of discovery of this case, including initial disclosures, responses to discovery requests, all deposition testimony and exhibits, and information derived directly therefrom (hereinafter collectively "documents"), are subject to this Order concerning Confidential Information as set forth below. As there is a presumption in favor of open and public judicial proceedings in the federal courts, this Order will be strictly construed in favor of public disclosure and open proceedings wherever possible.

2.      **Definition of Confidential Information.** As used in this Order, "Confidential Information" is defined as information that the producing party designates in good faith has been previously maintained in a confidential manner and should be protected from disclosure and use outside the litigation because its disclosure and use is restricted by statute or could potentially cause harm to the interests of the disclosing party or nonparties. For purposes of this Order, the parties will limit their designation of "Confidential Information" to the following categories of information or documents:

(a)     Medical information, including physical and mental health records;

(b)     Financial information including, but not necessarily limited to bank records, financial statements, and tax returns;

(c)     Education records;

(d)     Employment information, including personnel files;

(e)     Dates of birth, ages, and other personal demographics and confidential information regarding the parties and third parties;

2

(f)     Proprietary information and/or trade secrets;

(g)     Records, documents, and information whose disclosure is restricted or prohibited by regulation, statute, or case law; and

(h)     Other confidential information of a party or third party previously maintained in a confidential manner.

**[PLAINTIFF'S PROPOSED CATEGORIES**

(1)     Documents and information relating to Defendant's business, financials, marketing, sales, policies and procedures;

(2)     Documents concerning the parties' income, net worth and income tax returns;

(3)     Personnel and employment information on Defendant's current and former employees;

(4)     Defendant's confidential and proprietary information and trade secrets; and

(5)     Plaintiff's medical history and health care information. As required by HIPPA, the Court further orders that documents regarding Plaintiff's medical health or health care information, including but not limited to documents from Plaintiff's medical providers or treatment practitioners shall be treated as Confidential Information whether or not these documents are designated as Confidential and shall be unequivocally treated as confidential under this order. ]

Information or documents that are available to the public may not be designated as Confidential Information.

**3.     Form and Timing of Designation.**  The producing party may designate documents as containing Confidential Information, and therefore subject to protection under this Order, by marking or placing the word "CONFIDENTIAL" (hereinafter "the marking") on the document and on all copies in a manner that will not interfere with the legibility of the document. As used in this Order, "copies" includes electronic images, duplicates, extracts, summaries, or descriptions that contain the Confidential Information. The marking will be applied prior to or at the time the documents are produced or disclosed. Applying the marking to a document does not mean that the

3

document has any status or protection by statute or otherwise except to the extent and for the purposes of this Order. Copies that are made of any designated documents must also bear the marking, except that indices, electronic databases, or lists of documents that do not contain substantial portions or images of the text of marked documents and do not otherwise disclose the substance of the Confidential Information are not required to be marked. By marking a designated document as confidential, the designating attorney  thereby certifies that the document contains Confidential Information as defined in this Order.

4.    **Inadvertent Failure to Designate**. Inadvertent failure to designate any document or material as containing Confidential Information will not constitute a waiver of an otherwise valid claim of confidentiality pursuant to this Order, so long as a claim of confidentiality is asserted within thirty (30) days after discovery of the inadvertent failure.

5.    **Depositions.**  Deposition testimony will be deemed confidential only if designated as such when the deposition is taken or within fourteen (14) days after receipt of the deposition transcript.  Such designation must be specific as to the portions of the transcript and/or any exhibits to be protected. There shall be no need to re-designate documents or exhibits which have been previously designated as Confidential Information.

6.    **Protection of Confidential Material.**

(a)    **General Protections.**  Designated Confidential Information must be used or disclosed solely for purposes of prosecuting or defending this lawsuit, including any appeals arising therefrom. No Confidential Information shall be disclosed to any other person, party, entity, agency, print or electronic media, or anyone outside this proceeding for any purpose, other than as set forth in this Order.

(b)     **Who May View Designated Confidential Information.** Except with the prior written consent of the designating party or prior order of the court, designated Confidential Information may only be disclosed to the following persons:

(1)     Parties, and counsel for the parties, who are actively engaged in the conduct of this litigation,  and the partners, associates, secretaries, legal assistants and employees or agents of such counsel, to the extent reasonably necessary to render professional services to the litigation;

(2)     The court and court personnel, including any special master appointed by the court, and members of the jury;

(3)      Court reporters, recorders, and videographers engaged for depositions;

(4)     Any mediator appointed by the court or jointly selected by the parties;

(5)     Any expert witness, outside consultant, or investigator retained specifically in connection with this litigation, but only after such persons have completed the certification contained in Attachment A, Acknowledgment and Agreement to be Bound;

(6)     Any potential, anticipated, or actual fact witness and his or her counsel, but only to the extent such confidential documents or information will assist the witness in recalling, relating, or explaining facts or in testifying, but only after such persons have completed the certification contained in Attachment A, Acknowledgment and Agreement to be Bound;

(7)     The author or recipient of the document (not including a person who received the document in the course of the litigation);

(8)     Independent providers of document reproduction, electronic discovery, or other litigation services retained or employed specifically in connection with this litigation; and

(9)Other persons only upon consent of the producing party and on such conditions as the parties may agree.

(c)     **Control of Documents.**  The parties must take reasonable efforts to prevent unauthorized or inadvertent disclosure of documents designated as containing Confidential

Information pursuant to the terms of this Order. Counsel for the parties, ==or the party appearing *pro se*,== must maintain a record of those persons, including employees of counsel, who have reviewed or been given access to the documents along with the originals of the forms signed by those persons acknowledging their obligations under this Order.

7.     **Filing of Confidential Information.**   In the event a party seeks to file any document containing Confidential Information subject to protection under this Order, with the court, that party must take appropriate action to  insure that the document receives proper protection from public disclosure including (a) filing a redacted document with the consent of the party who designated the document as confidential;  (b) ==where appropriate (e.g., in relation to discovery and evidentiary motions), submitting the document solely for in camera review; or (c) when the preceding measures are inadequate,== seeking permission to file the document under seal by filing a motion for leave to file under seal in accordance with D. Kan. Rule 5.4.6.

Nothing in this Order will be construed as a prior directive to allow any document to be filed under seal.    The parties understand that the requested documents may be filed under seal only with the permission of the court after proper motion. If the motion is granted and the requesting party permitted to file the requested documents under seal, only counsel of record and unrepresented parties will have access to the sealed documents. Attorneys appearing *pro hac vice* must obtain sealed documents from local counsel.

8.     **Challenges to a Confidential Designation.**   The designation of any material or document as Confidential Information is subject to challenge by any party. Before filing any motion or objection to a confidential designation,  the objecting party must meet and confer in good faith to resolve the objection informally without judicial intervention. A party that elects to challenge a confidentiality designation may file and serve a motion that identifies the challenged

material and sets forth in detail the basis for the challenge; . The burden of proving the necessity of a confidentiality designation remains with the party asserting confidentiality. Until the court rules on the challenge, all parties must continue to treat the materials as Confidential Information under the terms of this Order.

**9.     Use of Confidential Documents or Information at Trial or Hearing.**  Nothing in this Order will be construed to affect the use of any document, material, or information at any trial or hearing. A party that intends to present or that anticipates that another party may present Confidential Information at a hearing or trial must bring that issue to the attention of the court and the other parties without disclosing the Confidential Information. The court may thereafter make such orders as are necessary to govern the use of such documents or information at the hearing or trial.

**10.     Obligations on Conclusion of Litigation.**

**(a)     Order Remains in Effect.** Unless otherwise agreed or ordered, all provisions of this Order will remain in effect and continue to be binding after conclusion of the litigation.

**(b)     Return of Confidential Documents.** Within  fourteen (14) days after this litigation concludes by settlement, final judgment, or final order, including all appeals, all documents designated as containing Confidential Information, including copies as defined above, must be returned to the party who previously produced the document unless the document has been offered into evidence or filed without restriction as to disclosure However, counsel in this lawsuit may maintain a copy of all Confidential Information as a part of counsel's case files.

**(c)     Retention of Work Product.**  Notwithstanding the above requirements to return  documents, counsel may retain attorney work product, including an index which refers or

7

relates to designated Confidential Information and documents designated as Confidential Information. This work product will continue to be confidential under this Order. An attorney may use his or her own work product in subsequent litigation provided that its use does not disclose Confidential Information.

11.     **Order Subject to Modification.**  This Order is subject to modification by the court on its own motion or on motion of any party or any other person with standing concerning the subject matter. The Order must not, however, be modified until the parties have been given notice and an opportunity to be heard on the proposed modification.

12.      **No Prior Judicial Determination.** This Order is entered based on the representations and agreements of the parties and for the purpose of facilitating discovery. Nothing in this Order will be construed or presented as a judicial determination that any document or material designated as Confidential Information by counsel or the parties is entitled to protection under Fed. R. Civ. P. 26(c) or otherwise until such time as the court may rule on a specific document or issue.**13.          Persons Bound by Protective Order.**  This Order will take effect when entered and is binding upon all counsel of record and their law firms, the parties, and persons made subject to this Order by its terms.

14.     **Jurisdiction.**  The court's jurisdiction to enforce the provisions of this Order will terminate on the final disposition of this case. But a party may file a motion to seek leave to reopen the case to enforce the provisions of this Order.

15.     **Protections Extended to Third-Party's Confidential Information.** The parties extend the provisions of this Order to Confidential Information produced in this case by third parties, if timely requested by the third party.

**16.     Confidential Information Subpoenaed or Ordered Produced in Other Litigation.**  If a receiving party is served with a subpoena or an order issued in other litigation that would compel disclosure of any material or document designated in this action as Confidential Information, the receiving party must so notify the designating party, in writing, immediately and in no event more than three business days after receiving the subpoena or order. Such notification must include a copy of the subpoena or court order.

The receiving party also must immediately inform in writing the party who caused the sub-poena or order to issue in the other litigation that some or all of the material covered by the subpoena or order is the subject of this Order In addition, the receiving party must deliver a copy of this Order promptly to the party in the other action that caused the subpoena to issue.

The purpose of imposing these duties is to alert the interested persons to the existence of this Order and to afford the designating party in this case an opportunity to try to protect its Confidential Information in the court from which the subpoena or order issued. The designating party bears the burden and the expense of seeking protection in that court of its Confidential Information, and nothing in these provisions should be construed as authorizing or encouraging a receiving party in this action to disobey a lawful directive from another court. The obligations set forth in this paragraph remain in effect while the party has in its possession, custody, or control Confidential Information by the other party to this case.

**17.     Inadvertent Disclosure of Confidential Information Covered by Attorney-Client Privilege or Work Product.**  The inadvertent disclosure or production of any information or document that is subject to an objection on the basis of attorney-client privilege or work-product protection, including, but not limited to, information or documents that may be considered Confidential Information under  this Order, will not be deemed to waive a party's claim to its

privileged or protected nature or to estop that party, or the privilege holder, from designating the information or document as attorney-client privileged or subject to the work-product doctrine at a later date. Any party receiving any such information or document must return it upon request to the producing party. Upon receiving such a request as to specific information or documents, the receiving party must return the information or documents to the producing party within seven (7) days, regardless of whether the receiving party agrees with the claim of privilege and/or work-product protection. Disclosure of the information or document by the other party prior to such later designation will not be deemed a violation of the provisions of this Order.  The provisions of this section constitute an order pursuant to Rules 502(d) and (e) of the Federal Rules of Evidence.

IT IS SO ORDERED.

Dated:  _____, 2020

/s/_____
Hon. James P. O'Hara
Chief Magistrate Judge

10

**ATTACHMENT A**
**ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND**

The undersigned hereby acknowledges that he/she has read the Protective Order dated

_____ in the case captioned, *Ganiyu Ayinla Jaiyeola v. Garmin International, Inc.*

and attached hereto, understands the terms thereof, and agrees to be bound by its terms.  The

undersigned submits to the jurisdiction of the United States District Court for the District of Kansas

in matters relating to this Protective Order and understands that the terms of the Protective Order

obligate him/her to use materials designated as Confidential Information in accordance with the

order solely for the purposes of the above-captioned action, and not to disclose any such

Confidential Information to any other person, firm, or concern, except in accordance with the

provisions of the Protective Order.

The undersigned acknowledges that violation of the Protective Order may result in

penalties for contempt of court.

Name:     _____

Job Title:   _____

Employer:   _____

Business Address:   _____

_____

Date:_____   _____
                    Signature

44725765.1

11

# EXHIBIT B

**Hill, Julie M.**

| | |
|---|---|
| **From:** | Ganiyu Jaiyeola <ganiyu.jaiyeola@gmail.com> |
| **Sent:** | Friday, October 09, 2020 3:36 PM |
| **To:** | Reisdorff, Kerri S.; Young, Maggie |
| **Subject:** | Jaiyeola v Garmin: Sample Protective Order For Confer With Defendant |
| **Attachments:** | Plaintiff Jaiyeola - Sample Protective Order For Confer.pdf |

*[Caution: Email received from external source]*

1. This is an attempt to Confer.

2. The attached Protective Order is from a Kansas District Court case: Chavira v. Packers Sanitation Serv. Inc., Ltd., 2:17-cv-02281-HLT-KGG, Document 12 (D. Kan. October 23, 2017).

3. I am agreeable to this Sample Protective Order.

4. Please review.  I am open to discussing this Sample Protective Order.  You can email or call.


Sincerely,

Ganiyu Jaiyeola, Ph.D., MBA
616 635 4025

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

GANIYU AYINLA JAIYEOLA,
               Plaintiff,

v.                                         Case No.: 2:20-cv-2068-JWB-JPO

GARMIN INTERNATIONAL, INC.,
               Defendant.

**PLAINTIFF'S MOTION FOR DISQUALIFICATION OF MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 455(a), Plaintiff hereby files a Motion for Disqualification of Magistrate Judge James P. O'Hara ("Magistrate") from this case.

This is an employment discrimination lawsuit[1] in which Garmin International, Inc. ("Garmin"), by failing to hire Plaintiff ("Jaiyeola") (for the "Advanced Materials Engineer - Metals-19001CL"[2] position he applied and interviewed for over the phone and on-site at Garmin's Headquarters/Manufacturing Center in Olathe, Kansas) violated Jaiyeola's rights under Title VII of the Civil Rights Act of 1964, as amended ("Title VII" – Race (African American), Color (Black), and National Origin (Nigerian)), 29 U.S.C. § 621, et seq. (Age Discrimination in Employment Act, as amended ("ADEA"), 42 U.S.C. §12112(b)(4) (Disability Association Discrimination - Title I of the Americans with Disabilities Act ("ADA")), The Kansas Age Discrimination in Employment Act[3] (Chapter 44, Art. 11, K.S.A., and specifically within the meaning of subsection (a)(1) of Section 44-1113 of said Act - "KADEA") and 42 U.S.C. § 1983

---

[1] ECF No. 1, pp. 1-21. Plaintiff's Complaint.
[2] ECF No. 1-17, p. 2. Garmin's Human Resources Email Stating That Plaintiff Was Not Hired.
[3] http://www.kslegislature.org/li/b2019_20/statute/044_000_0000_chapter/044_011_0000_article/044_011_0013_section/044_011_0013_k/

(Denial of Due Process – "Due Process").  Garmin is also liable for discrimination under Section 703(a) of Title VII because the fact that Jaiyeola was not hired by Garmin was based on the influence of a Garmin employee, Mr. Jeff Minelli (Garmin's Director of Mechanical Engineering), with a discriminatory motive; Subordinate Bias Liability ("cat's paw" theory of liability)[4].  Defendant's motion to dismiss the 42 U.S.C. § 1983 claim was granted by the Court but the pleading (in the same Defendant's motion) to dismiss the Subordinate Bias Liability claim was Denied[5].

Plaintiff states as follows:

1.      Plaintiff is a *pro se*.  In an Order dated February 20, 2020, this Magistrate granted[6] Plaintiff's *in forma pauperis*[7] motion but denied Plaintiff's motion for an Attorney[8].

2.      In *Hall v. Witteman*, this Court stated that "*Pro se* complaints, however inartfully pleaded, must be liberally construed, and are held to less stringent standards than formal pleadings drafted by lawyers. *Erickson v. Pardus*, ___ U.S. ___, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007). See *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005)……"[9].  The Sixth Circuit asserted that "We recognize that *pro se* litigants impose a burden on the courts and that clients are usually better off if represented by counsel."[10].   The U.S. Supreme Court has stated that *pro se*[11]pleadings and motions should be viewed liberally and held to a lesser standard than those

---

[4] *Equal Employment Opportunity Commission v. BCI Coca-Cola Bottling Company of Los Angeles*, 450 F. 3d 476 (10th Cir. 2006).
[5] ECF No. 17, pp. 4-6. Violation of Title VII Based on Subordinate Bias Liability.
[6] ECF No. 6, Magistrate Order: Plaintiff *in forma pauperis* Granted, Appointment of Attorney Denied.
[7] ECF No. 3, Plaintiff Motion: *in forma pauperis* Status.
[8] ECF No. 4, Plaintiff Motion: Appointment of an Attorney.
[9] *Hall v. Witteman*, 569 F. Supp. 2d 1208 (D. Kan. 2008).
[10] *King v. Curtis*, No. 14-2614 (6th Cir. 2015).
[11] *Haines v. Kerner*, 404 U.S. 520 (1971).

drafted by Attorneys.

3. At the parties <u>Federal Rules of Civil Procedure 16</u> ("Rule 16") planning and scheduling phone conference[12] with the Magistrate on September 29, 2020, it was apparent to Plaintiff that the Magistrate was personally biased and prejudiced against Plaintiff; it was clear "…the judge's impartiality might reasonably be questioned, see <u>28 U.S.C. § 455(a).</u>"[13].   It was apparent to Plaintiff that "…a reasonable person, knowing all the relevant facts, would harbor doubts about the judge's impartiality."[14].

4. Therefore, Magistrate Judge James P. O'Hara should be disqualified from presiding over any further proceedings in this matter.

5. For all the above reasons and for the reasons stated in the Memorandum, Plaintiff respectfully ask[15] this Court to Disqualify Honorable Magistrate Judge James P. O'Hara from presiding over any further proceedings in this matter and Magistrate Judge James P. O'Hara should Recuse himself from this case.

---

[12] <u>ECF No. 16</u>, <u>Fed. R. Civ. P. 16</u>: INITIAL ORDER REGARDING PLANNING AND SCHEDULING.
[13] *Lynn v. Lundry*, No. 5:20-cv-03116-EFM, Document 21 (D. Kan. June 17, 2020).
[14] *Nichols v. Alley*, <u>71 F.3d 347, 350</u> (10th Cir. 1995).
[15] Pursuant to <u>28 U.S.C. § 455(a)</u>.

Respectfully submitted,

Dated:  November 5, 2020

_____
Ganiyu A. Jaiyeola

749 Preserve Circle Drive SE #6

Grand Rapids, Michigan 49548

Tel.: 616.635.4025

ganiyu.jaiyeola@gmail.com


PLAINTIFF

*pro se*

## **CERTIFICATE OF SERVICE**

Plaintiff hereby certifies that on this 5th day of November, 2020, Plaintiff e-mailed this document to the District Court Clerk's office where it would be filed using the Court's CM/ECF system which will automatically send the document to the following Defendants' Attorneys:

Kerri S. Reisdorff

Margaret K. Young

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

4520 Main Street, Suite 400

Kansas City, Missouri 64111

kerri.reisdorff@ogletree.com

margaret.young@ogletree.com

ATTORNEYS FOR DEFENDANT

Respectfully submitted,

_____

Ganiyu A. Jaiyeola

PLAINTIFF

*pro se*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS


GANIYU AYINLA JAIYEOLA,
                    Plaintiff,

v.                                            Case No.: 2:20-cv-2068-JWB-JPO

GARMIN INTERNATIONAL, INC.,
                    Defendant.


**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION**

**FOR DISQUALIFICATION OF MAGISTRATE JUDGE**

This is Plaintiff's Memorandum in support of Plaintiff's Motion[1] for Disqualification of

Magistrate Judge James P. O'Hara ("Magistrate") from this case.  For the reasons stated below,

Plaintiff's Motion should be Granted.

## I.    INTRODUCTION

Plaintiff ("Jaiyeola") is a *pro se*.  In an Order dated February 20, 2020, this Magistrate

granted[2] Plaintiff's *in forma pauperis*[3] motion but denied Plaintiff's motion for an Attorney[4].  In

*Hall v. Witteman*,[5] this Court stated that "*Pro se* complaints, however inartfully pleaded, must be

liberally construed, and are held to less stringent standards than formal pleadings drafted by

lawyers. *Erickson v. Pardus*, ___ U.S. ___, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007). See

*Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005)......".  The Sixth Circuit asserted that

"We recognize that *pro se* litigants impose a burden on the courts and that clients are usually

---

[1] Pursuant to 28 U.S.C. § 455(a).
[2] ECF No. 6, Magistrate Order: Plaintiff *in forma pauperis* Granted, Appointment of Attorney Denied.
[3] ECF No. 3, Plaintiff Motion: *in forma pauperis* Status.
[4] ECF No. 4, Plaintiff Motion: Appointment of an Attorney.
[5] *Hall v. Witteman*, 569 F. Supp. 2d 1208 (D. Kan. 2008).

better off if represented by counsel."[6].  The U.S. Supreme Court has stated that *pro se*[7] pleadings

and motions should be viewed liberally and held to a lesser standard than those drafted by

Attorneys.

This is an employment discrimination lawsuit[8] in which Garmin International, Inc.

("Garmin"), by failing to hire Jaiyeola (for the "Advanced Materials Engineer - Metals-

19001CL"[9] position he applied and interviewed for over the phone and on-site at Garmin's

Headquarters/Manufacturing Center in Olathe, Kansas) violated Jaiyeola's rights under Title VII

of the Civil Rights Act of 1964, as amended ("Title VII" – Race (African American), Color

(Black), and National Origin (Nigerian)), 29 U.S.C. § 621, et seq. (Age Discrimination in

Employment Act, as amended ("ADEA"), 42 U.S.C. §12112(b)(4) (Disability Association

Discrimination - Title I of the Americans with Disabilities Act ("ADA")), The Kansas Age

Discrimination in Employment Act[10] (Chapter 44, Art. 11, K.S.A., and specifically within the

meaning of subsection (a)(1) of Section 44-1113 of said Act - "KADEA") and 42 U.S.C. § 1983

(Denial of Due Process – "Due Process").  Garmin is also liable for discrimination under Section

703(a) of Title VII because the fact that Jaiyeola was not hired by Garmin was based on the

influence of a Garmin employee, Mr. Jeff Minelli (Garmin's Director of Mechanical

Engineering), with a discriminatory motive; Subordinate Bias Liability ("cat's paw" theory of

liability)[11].  Defendant's motion to dismiss the 42 U.S.C. § 1983 claim was granted by the Court

---

[6] *King v. Curtis*, No. 14-2614 (6th Cir. 2015).

[7] *Haines v. Kerner*, 404 U.S. 520 (1971).

[8] ECF No. 1, pp. 1-21. Plaintiff's Complaint.

[9] ECF No. 1-17, p. 2. Garmin's Human Resources Email Stating That Plaintiff Was Not Hired.

[10]http://www.kslegislature.org/li/b2019_20/statute/044_000_0000_chapter/044_011_0000_articl e/044_011_0013_section/044_011_0013_k/

[11] *Equal Employment Opportunity Commission v. BCI Coca-Cola Bottling Company of Los Angeles*, 450 F. 3d 476 (10th Cir. 2006).

but the pleading (in the same Defendant's motion) to dismiss the Subordinate Bias Liability

claim was Denied[12].

Dr. Min Kao (**Male, Asian American - originally from Taiwan**; East Asia) co-founded

Garmin with Gary Burrell (**Male, White American**) in October 1989.  Kao, currently the

Executive Chairman of Garmin, "…led the development of the first GPS navigator to be certified

by the FAA."[13] and for all intents and purposes the GPS technology brain for the establishment

of Garmin.

A diversity rating report on Garmin concluded that "Diverse employees at Garmin

International score the company 64/100 across various culture categories, placing Garmin

International in the bottom 45% of companies in the United States with 10,000+ Employees for

Comparably's diversity score.  The Diversity score provides insights into how diverse employees

feel and rate their work experience at Garmin International across various culture dimensions."[14].

In comparison, Trimble (https://www.trimble.com/), a Garmin competitor, scored "77/100"[15] and

placed at "top 10%"[16].

**Garmin's significantly incredibly low Diversity Rating (for an American**

**multinational technology company) is strongly confirmed by the multiple employment**

**discrimination lawsuits against Garmin in the United States since 2009 to date**.  A former

**Female** Garmin employee stated the following in her Complaint: "This is an employment case

based upon and arising under the **Family and Medical Leave Act**, as amended, <u>29 U.S.C. §</u>

---

[12] <u>ECF No. 17, pp. 4-6</u>. Violation of Title VII Based on Subordinate Bias Liability.

[13] Garmin Executive Team: https://www.garmin.com/en-US/company/leadership/executive/

[14] https://www.comparably.com/companies/garmin-international/diversity (as it appeared on October 28, 2020).

[15] https://www.comparably.com/companies/trimble/diversity (as it appeared on October 28, 2020).

[16] *Id*.

2611 et seq. ("FMLA"); the **Americans with Disabilities** Act, 42 U.S.C. § 12101 et seq.

("ADA") the **Age Discrimination** in Employment Act, 29 U.S.C. § 621 et seq. ("ADEA")[17].  In

2009[18] and 2010[19], **failure-to-hire employment discrimination lawsuits** based on "Title VII of

the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, et seq., for employment

discrimination on the basis of **race, color, religion, gender, or national origin**." and "Age

Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §§ 621, et seq., for

employment discrimination on the basis of age (age 40 or older)." were filed against Garmin.  In

2017, a Garmin employee filed an Equal Employment Opportunity Commission ("EEOC")

charge of discrimination based on "**race, sex and national origin discrimination** and

**retaliation** under Title VII"[20] against Garmin **after working for Garmin for 11 years**: **1.)**

"**Plaintiff is a black female from Brazil, South America**. She has been a **naturalized citizen

of the United States** since 2009."[21]; **2.)** "**Garmin's culture shows a preference for white

employees and male employees**. For example, in July 2016, **a Garmin employee sent an email

asking for hand models, specifically Caucasian hand models**."[22]; **3.)** "Garmin's selection

procedures and practices resulted in **a workforce at its headquarters in 2017 that was eighty-

two percent (82%) white, two and one-half percent (2.5%) black and two and two-tenths

percent (2.2%) Hispanic.**"[23]; and **4.)** "Garmin's selection procedures and practices resulted in **a**

---

[17] *Peterson v. Garmin International, Inc.*, No. 2:09-cv-02659-JAR (D. Kan. Dec. 22, 2009); ECF No. 1, p. 1 at ¶ "1".
[18] *Leo v. Garmin Int'l, Inc.*, No. 2:09-cv-02139-KHV (D. Kan. 2009), ECF No. 1, p. 1.
[19] *Leo v. Garmin Int'l, Inc.*, No. 2:10-cv-02495-JTM-DJW (D. Kan. 2010), ECF No. 1-1, p. 1.
[20] *Antunes v. Garmin International, Inc.*, No. 2:18-cv-02697-JAR-KGG (D. Kan. Dec. 18, 2018), ECF No. 1, ¶ 9.
[21] *Id*; ¶ 12.
[22] *Id*; ¶ 26.
[23] *Id*; ¶ 45.

4

workforce at its headquarters in 2017 that was seventy-seven percent (77%) male and twenty-three percent (23%) female."[24].

Plaintiff interviewed[25] onsite at Garmin Headquarters/Manufacturing Center in Olathe, Kansas, on August 14, 2019 and noticed the following: **1.)** The Senior Technical Recruiter who interviewed Plaintiff over the phone and onsite was a **White Female**; **2.)** Plaintiff was given a tour of Garmin's facilities by a **White Female**; **3.)** The Technical Team that interviewed Plaintiff were **8 White Males**, and **4.)** The Garmin Engineers that attended Plaintiff's PowerPoint presentation were **14 White Males (93%)** and **1 White Female (7%)**.

## II.      ARGUMENT

"..the fair administration of justice requires that lawyers challenge a judge's purported impartiality when facts arise which suggest the judge has exhibited bias or prejudice. The appropriate mechanism for such a challenge is a motion to recuse."[26].

"The Court exercises discretion in deciding whether to recuse. See *Weatherhead v. Globe Int'l, Inc.*, 832 F.2d 1226, 1227 (10th Cir. 1987)."[27].  ""A district court abuses its discretion if it applies an incorrect legal standard, applies the law in an unreasonable or incorrect manner, follows improper procedures in making a determination, or makes findings of fact that are clearly erroneous," *Thomas v. Blue Cross & Blue Shield Ass'n*, 594 F.3d 814, 821 (11th Cir. 2010) (internal quotation marks omitted), and also "when it misconstrues its proper role, ignores or misunderstands the relevant evidence, and bases its decision upon considerations having little factual support.'" *Jove Eng'g, Inc. v. IRS*, 92 F.3d 1539, 1546 (11th Cir. 1996) (quoting *Arlook v. S. Lichtenberg & Co.*, 952 F.2d 367,

---

[24] *Id*; ¶ 47.

[25] ECF No. 1-14, p. 2.  Plaintiff's Interview Schedule on August 14, 2019.

[26] *United States v. Cooper* (in *Re Zalkind*) 872 F.2d 1 (1st Cir. 1989).

[27] *Zhu v. Federal Housing Finance Board, et al.*, No. 2:04-cv-02539, Document 501 (D. Kan. July 19, 2007).

374 (11th Cir. 1992))."[28]. "A district court by definition abuses its discretion when it makes an error of law." *Koon v. United States*, 518 U.S. 81, 100 (1996)."[29]

"There are two statutes governing judicial recusal, 28 U.S.C. §§ 144 and 455. [*Burleson v. Sprint PCS Group*, 123 F. App'x 957, 959 (10th Cir. 2005).]"[30], "Accordingly, there are two reasons for granting a motion for recusal: (1) the judge has a personal bias or prejudice towards a party, see 28 U.S.C. § 144, [28 U.S.C. §] 455(b)(1); or (2) the judge's impartiality might reasonably be questioned, see 28 U.S.C. § 455(a)."[31]. "Under 28 U.S.C. § 455(a) and [28 U.S.C. § 455](b)(1) a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned" or if "he has a personal bias or prejudice concerning a party." Section (b)(1) is subjective and contains the "extrajudicial source" limitation. [*Liteky v. United States*, 510 U.S. 540 (1994).]"[32]. "Section 455(a) has a broader reach than subsection (b) and the standard is not subjective, but rather objective. [*Nichols v. Alley*, 71 F.3d 347, 350 (10th Cir. 1995) (citing *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 858 n. 7 (1988) and *Liteky*, 510 U.S. at 548).] The factual allegations need not be taken as true, and the test is "whether a reasonable person, knowing all the relevant facts, would harbor doubts about the judge's impartiality." [*Nichols* at 350–51(quoting *United States v. Cooley*, 1 F.3d 985, 993 (10th Cir. 1993)); *Burleson*, 123 F. App'x at 960.] A judge has a "'continuing duty to ask himself what a reasonable person, knowing all of the relevant facts, would think about his impartiality.'" [*United States v. Greenspan*, 26 F.3d 1001, 1005 (10th Cir. 1994) (quoting *United States v. Hines*, 696 F.2d 722, 728 (10th Cir. 1982)).] "The goal of section 455(a) is to avoid even the

---

[28] *FTC v. AbbVie Products LLC*, No. 12-16488 (11th Cir. Mar. 21, 2013).
[29] *United States v. Begay*, No. 19-2022 (10th Cir. Sept. 11, 2020).
[30] *Ngiendo v. Sedgwick Claims Management Services, Inc. et al.*, No. 5:13-cv-04008, Document 73 (D. Kan. May 26, 2015).
[31] *Lynn v. Lundry*, No. 5:20-cv-03116-EFM, Document 21 (D. Kan. June 17, 2020).
[32] *Ngiendo*.

appearance of partiality." [*Liljeberg*, 486 U.S. at 860.]"[33].

Under 28 U.S.C. § 455(a), "The initial inquiry—whether a reasonable factual basis exists for questioning the judge's impartiality—is limited to outward manifestations and the reasonable inferences to be drawn from those manifestations. [*Nichols*, 71 F.3d at 351 (citing *Cooley*, 1 F.3d at 993).] "[T]he judge's actual state of mind, purity of heart, incorruptibility, or lack of partiality are not the issue." [*Nichols*. (quoting *Cooley*, 1 F.3d at 993).] "The trial judge must recuse himself when there is the appearance of bias, regardless of whether there is actual bias." [*Bryce v. Episcopal Church of Colo.*, 289 F.3d 648, 659 (10th Cir. 2002) (citing *Nichols*, 71 F.3d at 350).]"[34]. "A judge has "as much obligation . . . not to recuse when there is no occasion for him to do so as there is for him to do so when there is." [*David v. City & Cnty. of Denver*, 101 F.3d 1344, 1351 (10th Cir. 1996) (quotation omitted); *Greenspan*, 26 F.3d at 1005 (citation omitted).]"[35]. "The Supreme Court has explained that "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." [*Liteky*, 510 U.S. at 555.]" therefore "When no extrajudicial source is relied upon as a ground for recusal, "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a **deep-seated favoritism or antagonism that would make fair judgment impossible**." [*Liteky*, 510 U.S. at 555.]"[36].

Due Process requires disqualification of judges where "experience teaches that the probability of actual bias on the part of the judge or decision maker is too high to be constitutionally tolerable."[37]. If there is "such a likelihood of bias or an appearance of bias that the judge was unable to hold the

---

[33] *Ngiendo*.
[34] *Ngiendo*.
[35] *Ngiendo*.
[36] *Ngiendo*.
[37] *Withrow v. Larkin*, 421 U. S. 35, 47, 95 S. Ct 1456, 543 LEd2d 712 (1975).

balance between vindicating the interests of the court and the interests of the accused."[38] then "even though a judge personally believes himself to be unprejudiced, unbiased and impartial, he should nevertheless certify his disqualification where there are circumstances of such a nature to cause doubt as to his partiality, bias or prejudice."[39]. 28 U.S.C. § 455(a) statute was adopted "to promote public confidence in the impartiality"[40] of the Federal Courts.

Plaintiff, is entitled not just to the reality of fair treatment, but to its appearance as well.  As aptly stated by the Fifth Circuit[41,42]: "…The purpose of the disqualification statute is to avoid even the appearance of impropriety; the appearance of impropriety is not lessened by the fact that the litigation would have come out the same anyway…."; "justice must satisfy the appearance of justice."[43]

"A magistrate . . . must base determination...on sufficient information for the exercise of independent judgment rather than merely ratifying the bare conclusions of others."[44].  Indeed, a Court must prevent any likelihood of a punitive and vindictive use of judicial power[45] that could result if the Court displayed conclusory assertions or bias or prejudice or violation of Plaintiff's legal right or violation of Plaintiff's due process rights or "deep-seated favoritism or antagonism that would make fair judgment impossible."[46]

---

[38] *Ungar v. Sarafite*, 376 US 575, 588; 84 S. Ct. 841; 11 LEd2d 921 (1964).

[39] *Merritt v. Hunter*, 575 P2d 623, 624 (Okla, 1978).

[40] *Roberts v. Bailar*, 625 F2d 125, 129 (6th Cir 1980).

[41] *Health Services Acquisition Corp v. Liljeberg*, 796 F2d 795, 801 (5th Cir 1986).

[42] *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 870, 108 S. Ct. 2194, 100 L. Ed. 2d 855 (1988).

[43] *Offutt v. United States*, 348 U.S. 11 (1954).

[44] *United States v. Christian*, No. 17-1799 (6th Cir. 2018).

[45] Inquiry Concerning A Judge, No. 07-64 Re: Ralph E. Eriksson, Case No. SC07-1648 (FL Supreme CT., February 11, 2010).

[46] *Liteky v. United States*, 510 U.S. 540, 551, 114 S. Ct. 1147, 127 L. Ed. 2d 474 (1994); *Lyell v. Renico*, 470 F.3d1177, 1186-1187 (6th Cir. 2006); accord *United States v. Pearson*, 208 F.3d 1243, 1277 (10th Cir. 2000); *United States v. Deters*, 184 F.3d 1253, 1256 (10th Cir. 1999).

The parties had a <u>Federal Rules of  Civil Procedure 16</u> ("Rule 16") planning and scheduling phone conference[47] with this Magistrate on September 29, 2020.  **It was during this conference that it became apparent to Plaintiff that "…a reasonable person, knowing all the relevant facts, would harbor doubts about the judge's impartiality."[48].  U.S. Magistrate Judge James P. O'Hara displayed "deep-seated favoritism or antagonism that would make fair judgment impossible"[49] during the Rule 16 phone conference of September 29, 2020**.

A.     **Magistrate was conclusory and Displayed Antagonism.**

Parties settlement was the first issue discussed during the phone conference.  The Defendant's Attorney stated that Plaintiff's "….**calculation of damages that -- I won't be too dramatic -- but well exceed the cap.**"[50] and **the Magistrate was conclusory** when he stated, "I don't mean to imply that Garmin is likely to settle this case for anything close to the caps, but **to the extent that you are demanding sums of money that exceed the caps, that sort of demand is unproductive at best**."[51]. But Plaintiffs' settlement proposals contain "sums of money" that were in line with the case laws that Plaintiff cited in the settlement proposals.

"A magistrate . . . must base determination...on sufficient information for the exercise of independent judgment rather than merely ratifying the bare conclusions of others."[52].  **"Our cases require the district court to make findings, not conclusions."**[53].  "The district court's conclusory statement following voir dire that "[h]e will be accepted by this court as an expert" was devoid of any

---

[47] <u>ECF No. 16</u>, <u>Fed. R. Civ. P. 16</u>: INITIAL ORDER REGARDING PLANNING AND SCHEDULING.
[48] *Nichols* at 350–51.
[49] *Liteky*, <u>510 U.S. at 555</u>.
[50] <u>Exhibit A</u> - September 29, 2020 Transcript of Rule 16 Telephone Parties Conference With Magistrate Judge James P. O'Hara, p. 6, Lines 6-7.
[51] *Id*., p. 7, Lines 7-10.
[52] *United States v. Christian*, No. 17-1799 (6th Cir. 2018).
[53] *United States v. Wacker*, <u>72 F.3d 1453, 1477</u> (10th Cir. 1995).

9

explicit assessment of the witness's expertise."[54]. Therefore, "The district court abused its discretion in admitting Butler's expert testimony without making the requisite findings of reliability under Federal Rule of Evidence 702. See *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 592 (1993).". ""Conclusory statements unadorned with supporting facts are insufficient to establish a factual dispute...." *Alexander v. CareSource*, 576 F.3d 551, 560 (6th Cir. 2009)."[55]. **The Magistrate's conclusory comments, "…you are demanding sums of money that exceed the caps.." to Plaintiff constitute an abuse of discretion that showed "deep-seated favoritism or antagonism"**.

### B.    Magistrate Displayed Deep Antagonism Towards Plaintiff

Another issue that came up during the phone conference was the deposition of witnesses. **The Magistrate antagonistically focused the deposition discussion on Plaintiff and in the process was literally deposing Plaintiff with questions about Plaintiffs' "other employment cases" and Plaintiff's "financial status"**.

As at the day of the Rule 16 phone conference, the parties had not done discovery; therefore the Defendant had not discovered Plaintiffs' "other employment cases" and Plaintiff's "financial status". On Public Access to Court Electronic Records (PACER), Plaintiff's "MOTION for Leave to Proceed in forma pauperis"[56] (See ECF No. 3) and its four attachments contain information about Plaintiff's "financial status"; but ECF No. 3 has a privacy tag ("NOTE - Access to document is restricted pursuant to the courts privacy policy."[57]) and **ECF No. 3 documents are therefore not made available to the Defendant or the public in the case docket on PACER**.

In an Order dated February 20, 2020, this Magistrate granted[58] Plaintiff's *in forma*

---

[54] *United States v. Campos-Nunez*, No. 13-50194 (9th Cir. Jul. 8, 2014).

[55] *Viet v. Le*, No. 18-6191 (6th Cir. 2020).

[56] ECF No. 3.

[57] *Id*.

[58] ECF No. 6, Magistrate Order: Plaintiff *in forma pauperis* Granted, Appointment of Attorney

*pauperis*[59] motion but denied Plaintiff's motion for an Attorney[60].  This Magistrate was therefore very well aware of Plaintiff's "financial status" and Plaintiff's search for an Attorney.  The Sixth Circuit asserted that "We recognize that *pro se* litigants impose a burden on the courts and that clients are usually better off if represented by counsel."[61].  Plaintiff keeps searching for an Attorney that would take up his case on a contingency basis.  **The Magistrate did not ask Plaintiff any question on Plaintiff's search for an Attorney**.  The Magistrate stated: "I've been doing this for 20 years now -- "[62]; so the **Magistrate must have been fully aware that an Attorney retained on contingency basis by Plaintiff would probably bear the cost of any deposition**.

Here are excerpts about deposition from the transcript of the Rule 16 phone conference:

| | |
|---|---|
| "THE COURT: | And I guess, Mr. Jaiyeola, you've been involved in other employment cases, correct? |
| MR. JAIYEOLA: | Yes, I have. |
| THE COURT: | Okay. Do you have a familiarity, I guess, with the expense and the logistics associated with your initiating depositions? |
| MR. JAIYEOLA: | Yes, Your Honor. |
| THE COURT: | And you're prepared to, I mean, hire court reporters and the like to take depositions; is that right? |
| MR. JAIYEOLA: | If I need to, Your Honor. I don't have to -- you know, there are other options to depositions, Your Honor. It doesn't have to be in person. |
| THE COURT: | I know, but in terms of a court reporter, I'm just curious how you're going to manage that economically in terms of the expense associated with a court reporter. |
| MR. JAIYEOLA: | Oh, yeah. If I need to, Your Honor, if I do need a court reporter, I |

---

Denied.

[59] <u>ECF No. 3</u>, Plaintiff Motion: *in forma pauperis* Status.
[60] <u>ECF No. 4</u>, Plaintiff Motion: Appointment of an Attorney.
[61] *King v. Curtis*, No. 14-2614 (6th Cir. 2015).
[62] <u>Exhibit A</u> - September 29, 2020 Transcript of Rule 16 Telephone Parties Conference With Magistrate Judge James P. O'Hara, p. 28, Line 2.

| | surely can hire one. |
|---|---|
| THE COURT: | Do you have a sense of how much that costs? |
| MR. JAIYEOLA: | So many of them, they vary in price, Your Honor, depending on who you want and (indecipherable) to prices (indecipherable), so many of them, yeah. |
| THE COURT: | Okay. I just -- you know, they're not cheap I guess is my point. |
| MR. JAIYEOLA: | They're not cheap, Your Honor. Anything good is not cheap, Your Honor. I've done it before, Your Honor; I can do it again. |
| THE COURT: | In terms of the -- I'm just looking at your financial status, whether you're going to be able to handle that, but I suppose if you think you can handle it, go for it."[63] |

Plaintiff felt he **"was being badgered"[64]** by the Magistrate during the deposition questioning and the **"badgering was so open"[65]**.  Plaintiff was extremely uncomfortable during the "badgering" by the Magistrate and afterwards.

""An abuse of discretion is defined in this circuit as a judicial action which is arbitrary, capricious, or whimsical." *Pelican Prod. Corp. v. Marino*, 893 F.2d 1143, 1146 (10th Cir. 1990)."[66]. "A court abuses its discretion when it "clearly err[s] or venture[s] beyond the limits of permissible choice." *Hancock v. AT&T Co.*, 701 F.3d 1248, 1262 (10th Cir. 2012) (internal quotation marks omitted)."[67].  By asking about Plaintiffs' "other employment cases" and Plaintiff's "financial status" during a phone conference that the Defendants' Attorneys participated in, the Magistrate denied Plaintiff due process rights, denied Plaintiff legal right[68], and violated Plaintiff's privacy.  **The Magistrate abused his discretion and showed "deep-seated favoritism or antagonism".  It was**

---

[63] *Id.*, p. 22, Lines 7-25; p. 23, Lines 1-12.

[64] *Jones, et. al. v. Denver Post Corp.*, No. 98-1458 (10th Cir. 2000).

[65] *Id.*

[66] *Stringfellow v. Brown*, No. 95-7145 (10th Cir. Jan. 10, 1997); *Bethscheider v. Westar Energy*, No. 19-3243 (10th Cir. July 14, 2020).

[67] *Deere v. XPO Logistics Freight, Inc.; XPO Logistics, Inc.*, No. 19-1069 (10th Cir. Jan. 9, 2020).

[68] *In re estate of FOLWELL*, 68 N.J. Eq. 728, 731 (N.J. 1905)

apparent to Plaintiff that "...a reasonable person, knowing all the relevant facts, would harbor doubts about the judge's impartiality."[69].

**III.      CONCLUSION**

   For all the above reasons, Plaintiff respectfully ask[70] this Honorable Court to Disqualify Honorable Magistrate Judge James P. O'Hara from presiding over any further proceedings in this matter and Magistrate Judge James P. O'Hara should Recuse himself from this case.

            Respectfully submitted,


Dated:  November 5, 2020         Ganiyu A. Jaiyeola

            749 Preserve Circle Drive SE #6

            Grand Rapids, Michigan 49548

            Tel.: 616.635.4025

            ganiyu.jaiyeola@gmail.com


            PLAINTIFF

            *pro se*

---

[69] *Nichols* at 350–51.
[70] Pursuant to 28 U.S.C. § 455(a).

## <u>CERTIFICATE OF SERVICE</u>

Plaintiff hereby certifies that on this 5th day of November, 2020, Plaintiff e-mailed this

document to the District Court Clerk's office where it would be filed using the Court's CM/ECF

system which will automatically send the document to the following Defendants' Attorneys:


Kerri S. Reisdorff

Margaret K. Young

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

4520 Main Street, Suite 400

Kansas City, Missouri 64111

kerri.reisdorff@ogletree.com

margaret.young@ogletree.com


ATTORNEYS FOR DEFENDANT


Respectfully submitted,

_____

Ganiyu A. Jaiyeola


PLAINTIFF

*pro se*


14

Appellate Case: 21-3114   Document: 010110544162   Date Filed: 07/06/2021   Page: 531

**Index of Exhibit – Motion To Recuse Magistrate Judge**

Exhibit A        September 29, 2020 Transcript of Parties Rule 16 Telephone Conference With
Magistrate Judge James P. O'Hara.

**Exhibit A**

20-CV-02068-JWB-JPO   Jaiyeola v. Garmin   09.29.2020                    1

```
 1                    UNITED STATES DISTRICT COURT
                          DISTRICT OF KANSAS
 2

 3   GANIYU AYINLA JAIYEOLA,

 4        Plaintiff,

 5        v.                              Case No. 20-CV-02068-JWB-JPO

 6   GARMIN INTERNATIONAL, INC.,
                                          Kansas City, Kansas
 7        Defendant.                      Date:  September 29, 2020

 8   ..........................

 9                 TRANSCRIPT OF TELEPHONE CONFERENCE
                 BEFORE THE HONORABLE JAMES P. O'HARA
10                  UNITED STATES MAGISTRATE JUDGE

11
                         A P P E A R A N C E S
12
     For the           Mr. Ganiyu Ayinla Jaiyeola
13   Plaintiff:        Pro se

14   For the           Ms. Kerri S. Reisdorff
     Defendant:        Ms. Margaret K. Young
15                     OGLETREE, DEAKINS, NASH, SMOAK & STEWART, PC
                       4520 Main Street, Suite 400
16                     Kansas City, Missouri 64111

17

18

19

20

21

22
     _____
23            Proceedings recorded by digital recording,
         transcript produced by computer-aided transcription.
24

25
```

```
 1                    P R O C E E D I N G S

 2          THE COURT:  At this time for the audio record that

 3    we're keeping, the Court calls the civil action styled Jaiyeola

 4    versus Garmin International, Incorporated, Case No. 20-2068.

 5          Am I correct that we have the plaintiff on the line

 6    who's representing himself?  Is that correct?

 7          MR. JAIYEOLA:  Hi, Your Honor.

 8          THE COURT:  Good morning.

 9          MR. JAIYEOLA:  Good morning, Your Honor.

10          THE COURT:  The record should reflect that we have

11    Kerri Reisdorff and Margaret Young representing the defendant.

12          Folks, I've got the planning report that you submitted

13    and then also the e-mail that plaintiff submitted thereafter.

14    I gather there may have been some disagreements about what was

15    submitted, so I'm going to go through all of the various

16    deadlines to make sure that we come out of this conference with

17    a clear understanding as to what's going to happen from this

18    point forward.

19          I guess let me inquire first about settlement.  You

20    know, typically, as counsel I think are probably aware, our

21    court has a fairly robust policy of trying to encourage

22    settlement on the front end of the case, if that can be done,

23    to avoid the aggravation and expense of continued litigation.

24          But speaking as the Court's ADR coordinator, I can

25    tell you that it is not my view that every case must be
```

1    mediated, and if the parties would appear to have a fundamental

2    disagreement about whether the case is meritorious or even if

3    potentially meritorious, what the value of the case might be.

4    I don't require mediation all the time.

5            In other words, if it's going to add more expense and

6    more aggravation to an already expensive and aggravating

7    process, then I just as soon get on with the litigating and

8    dispense with the mediating.

9            So I guess that's a long-winded preamble to this

10   question.  And I guess I'd like each side to maybe address this

11   briefly.  Is this a case that you believe that the settlement

12   dialogue of potentially a mediation with a third party would be

13   beneficial or should we just get on with things?

14           Mr. Jaiyeola, I apologize if I'm mispronouncing your

15   name.

16           MR. JAIYEOLA:  No, no.

17           THE COURT:  What do you think of that question?

18           MR. JAIYEOLA:  Your Honor, we had the planning

19   conference on September 9th, during which the settlement was

20   discussed.

21           By the way, Your Honor, I attended some class.  If you

22   do not understand what I'm saying, let me know.

23           But before filing this case, I did approach Garmin.  I

24   wanted to settle.  I was (undecipherable).  But it was on very

25   bad faith, really.  That was before I filed the case.

1    And on September 9th when we had the conference, the

2    issue came up again, and we had an agreement; that was my

3    understanding.  During the phone conference that -- on

4    September 14th, I was -- on the settlement proposal.  Then

5    Garmin will give a counterproposal by September 21, and by

6    September 28th, yesterday, you know, we should have that, like

7    the deadline to our settlement agreement, if it's possible.

8    But I got a shocker, Your Honor, a very bad one.  I

9    sent them a proposal on September 14th as we had agreed.  In

10   fact, I redid additional proposal on September 15th.  Then to

11   my surprise, when Garmin -- you know, we were sending e-mails

12   on the conference itself.  Then in one of the e-mails, you

13   know, to, you know, kind of updating on what we've discussed

14   for the conference -- at your conference, Garmin mentioned that

15   I only suggested the settlement timeline, that they never

16   agreed to it.  I was shocked.  I said that was terrible.  That

17   was like terrible, bad faith kind of thing.  Because Garmin --

18   they had not -- excuse me -- they had not agreed to that --

19   those settlement timelines, I would never have sent the

20   proposal that I did on September 14th and 15th.

21   So to me, I felt, well, there's Garmin again,

22   (undecipherable) -- (audio malfunction).

23   Everybody there?  Hello?

24   THE COURT:  Yes.  Yes.

25   MR. JAIYEOLA:  Sorry.  There was some buzzing in the

20-CV-02068-JWB-JPO   Jaiyeola v. Garmin   09.29.2020                            5

```
 1    phone line.

 2          So with those two attempts, Your Honor, to be honest

 3    with you, the way it is now, we filed -- once -- and I even in

 4    an e-mail that I sent to Garmin on Friday of last week, I said,

 5    (indecipherable) when I communicate with Garmin, I want in

 6    writing instead of like e-mails, only e-mail.  I do not want

 7    communication by phone with them anymore because they're always

 8    backing out of it, and you know, I probably will -- will lead

 9    to a request for a transcript, you know, maybe issuing a

10    subpoena for a transcript of the phone call or something.

11          So talking about ADR or any mediated settlement I

12    don't think is meaningful, Your Honor.  It will be a waste of

13    time.  Again, I'm being honest, Your Honor, about that in good

14    faith.  Before the lawsuit was filed.

15          After the lawsuit was filed, Garmin sent to me

16    explaining some legal damages (indecipherable), I mean things

17    that is just not relevant to the settlement.  Then once

18    litigation -- and I think I'm going to give them litigation,

19    and that's the way to go, Your Honor.  I don't see any need for

20    any settlement, mediated kind of program, kind of thing.

21    That's my position, Your Honor.

22          THE COURT:  Very well.

23          Ms. Reisdorff, putting aside Mr. Jaiyeola's

24    characterization of the process that's led up to today, do you

25    agree with him that we ought to just skip the usual ADR
```

1    provisions and move on with the litigation?

2        MS. REISDORFF:  Judge, I'm torn because I generally

3    think ADR is good, and I also think that there could be some

4    benefit to it.

5        I know the Court received Mr. Jaiyeola's Rule 26

6    disclosures and his calculation of damages that -- I won't be

7    too dramatic -- but well exceed the cap.  I did advise

8    Mr. Jaiyeola in our written response to his settlement offer on

9    the 21st that his numbers, his demands are not in line with the

10   cap and the damages that are even available under his claims,

11   and so I could -- I don't know that a mediator could help

12   further that communication just so we can at least get on the

13   same page of that.

14       So long way to say it is Garmin would consider a

15   mediation in the hopes that we could at least narrow down the

16   issues.

17       THE COURT:  Okay.  Well, let's do this.  I appreciate

18   everybody being candid about this.  I am going to dispense with

19   any deadlines in the scheduling order for making further

20   demands and counters and reports for the Court and mediation.

21       Having said that, I do agree with Ms. Reisdorff in the

22   sense that mediation, as a general proposition, has proven year

23   in and year out to be very effective, and I won't bore you with

24   the specific statistics on that.  But it does make sense for

25   parties to get realistic as early as possible as opposed to

 1    just trying to slug things out.

 2          So, Mr. Jaiyeola, I would, having reviewed your

 3    disclosures on damages, respectfully urge you to spend some

 4    time getting familiar with the source of damages that are

 5    available in this kind of case and the caps that apply to those

 6    recoveries.

 7          I don't mean to imply that Garmin is likely to settle

 8    this case for anything close to the caps, but to the extent

 9    that you are demanding sums of money that exceed the caps, that

10    sort of demand is unproductive at best.

11          So I would encourage you to think about that.  I'm not

12    going to force you to.  I think -- I think if the parties want

13    to settle, that's a great and wonderful thing, but if they

14    don't, then so be it.  There are other ways to decide the case.

15          Let me shift gears a little bit and move to discovery

16    and the initial disclosures.  I do have the written disclosures

17    that each side has submitted.

18          Am I correct in understanding, Ms. Reisdorff, that

19    neither side has exchanged documents at this point?

20          MS. REISDORFF:  That is correct.  So in our initial

21    call on September 9th, the parties had an agreement that the

22    production would be just in conjunction with normal written

23    discovery served on the parties.

24          I believe Mr. Jaiyeola changed his position on that

25    when we exchanged multiple versions of the report back and

20-CV-02068-JWB-JPO   Jaiyeola v. Garmin  09.29.2020          8

1   forth.  But by that point, later on in that scheduling

2   conference, he said he would never agree to a protective order,

3   even after I kind of -- I went through the different types of

4   documents we anticipated both producing to him and asking him

5   to produce.

6        And so at this point, Judge, I think Garmin would only

7   feel comfortable producing documents to Mr. Jaiyeola after the

8   Court rules on the -- what we intend to file, which is just

9   going to be not a joint position, but a motion on behalf of

10   Garmin for a protective order.

11        THE COURT:  Am I correct that you're in a position to

12   file that motion for protective order, I believe, by a week

13   from tomorrow?

14        MS. REISDORFF:  Yes.  That's our plan.

15        THE COURT:  Okay.  Mr. Jaiyeola, just for your

16   benefit, and I gather you've been around this kind of case

17   previously given what's been submitted here, but you know, in

18   the District of Kansas, it certainly is not uncommon for a

19   protective order to be entered in an employment discrimination

20   case given the types of documents that typically are produced.

21   Indeed, I would venture to say that protective orders are

22   entered in the vast majority of those cases.

23        But is Ms. Reisdorff correct in stating that it's your

24   position that under no circumstances would a protective order

25   be acceptable to you?

1      MR. JAIYEOLA:  Your Honor, my point is I'm not going

2  to agree to a blanket protective order, Your Honor.  You know,

3  what I told Garmin was that it cannot be on like issue-by-issue

4  basis.  You know, if I make a request document and if they felt

5  they need a protective order on that particular document, then,

6  you know, then I will file a motion if they're not giving me

7  what I need, and then, you know, we will go through the motions

8  and the Court will decide.

9      I would rather have that, Your Honor, than just have a

10  blanket order covering everything I know that -- I do not want

11  a blanket protective order, Your Honor.  I'm not going to

12  sign -- I will oppose any motion on that blanket protective

13  order.  That's my position.

14      THE COURT:  Okay.  Well, maybe the nomenclature or the

15  terminology is important here.  I don't believe that

16  Ms. Reisdorff and Ms. Young contemplate that a protective order

17  necessarily would be blanket in nature in the sense that it

18  would apply to each and every document.  But there are broad

19  categories of documents that routinely are exchanged in this

20  kind of case that, for efficiency reasons to reduce the strain

21  on the parties and the Court, are produced pursuant to a

22  protective order.

23      So here again, I'm not here to debate the issue with

24  you, but I think it would benefit you to do some legal research

25  with regard to those instances in our court where I and my

Case 2:20-cv-02068-HLT-JPO   Document 36-2   Filed 11/05/20   Page 11 of 30

Appellate Case: 21-3114   Document: 010110544162   Date Filed: 07/06/2021   Page: 542      10
20-CV-02068-JWB-JPO   Jaiyeola v. Garmin   09.29.2020

1    colleagues have been asked to enter protective orders and how

2    those protective orders are used, how they're administered, et

3    cetera.

4           I can tell you, I have zero interest -- zero interest

5    -- in giving the parties an opportunity to have motion practice

6    over each and every document that one party may want to have

7    produced pursuant to a protective order.  That makes, in my

8    judgment, no sense at all.

9           Now, having said that, you'll have an opportunity to

10   respond on this, but I'm going to require that, as the

11   defendant has indicated, that they file their motion for

12   protective order on a contested basis, that the proposed

13   protective order attached, and their supporting (inaudible) in

14   by October 7th.

15          I'm going to require that any response to that be

16   filed by October 13th and any reply brief by October 18th.  And

17   then I will decide the issue in terms of what kind of

18   protective order should be entered in the case, if any, and

19   this is with the understanding that no documents that are

20   itemized in the parties' disclosures need to be produced until

21   this protective order issue is sorted out.

22          MR. JAIYEOLA:  That's fine with me, Your Honor.  I did

23   review many case laws in the district, and you know, what I saw

24   was a mix; some -- for some of the cases, for just like, you

25   know, three months, document by document, yeah, somewhere at

1    the beginning of those cases, Your Honor, and I noted that in

2    those situations where, you know, where they had them in the

3    beginning, you know, nothing like a blanket or something close

4    to that.  It was a situation where the package had sort of like

5    a (indecipherable), not what we have right now, me and Garmin,

6    you know, so...

7            THE COURT:  I want to be clear on another point in

8    terms of the way this is going to work, Mr. Jaiyeola.  You

9    mentioned before that given the difficulty that you and defense

10   counsel have, from your perspective, in terms of submission of

11   the initial planning report, that you were going to insist upon

12   all future communications being in written form.  That, I can

13   tell you right now at least given the posture of this case, is

14   totally unacceptable to the Court.

15           In terms of managing discovery, the federal rules of

16   discovery or for civil procedure and our local rules that

17   correspond to those federal rules explicitly state and require

18   parties to confer and exchange views.

19           This process will be much more protracted, much more

20   expensive, much more inefficient, and much more aggravating for

21   all concerned if you and defense counsel can't at least have a

22   civil, business-like discussion.

23           Now, I've never dealt with you before, and I'm going

24   to do everything I can to give you a fair shake.  I can tell

25   you that, although I'm not very familiar with Ms. Young since

1   she's a younger lawyer -- no pun intended -- Ms. Reisdorff has

2   practiced in our court for many, many years.  I don't mean to

3   suggest she's old.  But she and her firm enjoy, you know, a

4   respect with the Court, and I fully expect that she will treat

5   you respectfully and responsively under the rules.

6          That doesn't mean she's going to agree with you, nor

7   does it mean that you need to agree with her.  But I do require

8   the parties in the case, whether they be unrepresented folks

9   such as yourself or those that have lawyers on both sides, to

10  be able to work most things out via phone calls or meetings.

11         That doesn't mean that you don't confirm those things

12  in written form and get it nailed down the way you think it is,

13  but I think this whole process collapses if people can't talk

14  to each other.  So please keep that in mind as the case moves

15  along.

16         With regard to a deadline to complete all discovery,

17  unless I've missed something in the written submissions -- and

18  I'm not looking for a long-winded discussion of this -- but if

19  there's something that we need to discuss further, we can.  But

20  it's my understanding that discovery would be completed by the

21  end of March 2021.

22         And so we're clear, Mr. Jaiyeola, how that works, that

23  means the discovery needs to be commenced or served in time to

24  be completed by March 31st of next year.  So, for example, with

25  a 30-day response time on interrogatories or document requests,

Case 2:20-cv-02068-HLT-JPO   Document 36-2   Filed 11/05/20   Page 14 of 30

Appellate Case: 21-3114   Document: 010110544162   Date Filed: 07/06/2021   Page: 545   13
20-CV-02068-JWB-JPO   Jaiyeola v. Garmin   09.29.2020

1    in order for those to be timely, they would need to be served

2    by March 1st instead of March 31st.  Hopefully that makes

3    sense.  That will be outlined in the order.

4         In the scheduling order that we will file -- and you

5    may have seen this, Mr. Jaiyeola, on our Court's website -- but

6    I want you to keep in mind -- and this is going to cut both

7    ways in terms of discovery requests if I'm called upon to

8    decide the propriety.  I do tend to strictly enforce the

9    relevance and proportionality mandate of Rule 26(b)(1) as it

10   was amended five years ago.  And likewise, keep in mind that I

11   do strictly enforce the certification requirements -- or

12   ramifications, I should say, of Rule 26(g).

13        And this will be highlighted in the scheduling order

14   that you'll get after today's conference.

15        But under that latter provision, keep in mind that if

16   somebody serves a discovery request, they are certifying with

17   their signature it is consistent with the Federal Rules of

18   Civil Procedure, and then it basically seeks relevant

19   information and is proportional to the needs of the case.  So

20   it doesn't serve anybody's interest to be serving discovery

21   requests that are overly broad and virtually impossible to

22   comply with without undue expense.

23        To the extent that objections are asserted, many

24   lawyers for years have served objections which are basically

25   boilerplate.  Those have been addressed in literally hundreds,

 1  if not thousands, of opinions out of our district.  Those sort

 2  of objections are invalid under the rules and they're

 3  sanctionable.

 4          So my hope -- I don't have frankly much expectations

 5  this will happen, but my hope in this case is that the parties

 6  largely will be able to manage the discovery process by

 7  themselves without Court supervision.

 8          If Court supervision is called for and if I see the

 9  sort of discovery abuses that I just described, then I will

10  enforce the rule -- Rule 26(g), that is -- which mandates --

11  does not permit -- sanctions.  And that can be attorney's fees;

12  it can be dismissal of claims and defenses; it can be a whole

13  number of things.

14          And that's not my objective.  I'd like to avoid

15  sanctioning parties and lawyers if I can do that, but if I see

16  discovery abuse going on in a case, nobody ought to expect me

17  to standby idly if that happens.

18          With regard to some of the intermediate deadlines, if

19  there are experts that the parties retain or designate on the

20  plaintiff's side, those would be due by December 31st of this

21  year.  For the defendant, any counter-designations will be due

22  January 29th of 2021.  And any rebuttal experts would be due

23  February 26th.

24          And I suspect you're already aware of this,

25  Mr. Jaiyeola, but if you do identify experts, make sure that

Case 2:20-cv-02068-HLT-JPO   Document 36-2   Filed 11/05/20   Page 16 of 30

Appellate Case: 21-3114   Document: 010110544162   Date Filed: 07/06/2021   Page: 547   15
20-CV-02068-JWB-JPO   Jaiyeola v. Garmin   09.29.2020

1    you closely follow and adhere to Rule 26(a)(2) of the rules of

2    civil procedure.

3          With regard to any examinations of the parties under

4    Rule 35, whether they be physical or mental examinations, I'm

5    going to set a deadline for those to be January 15th.  If there

6    are disputes between the parties about whether such an

7    examination is appropriate, by whom it should be conducted, or

8    what its parameters might be, that motion needs to be filed

9    before that deadline.  In other words, far enough in advance of

10   that deadline so that the motion can be briefed in the ordinary

11   course, decided by the Court, and if the Court grants the

12   examination, to allow to get conducted by January 15th.  So if

13   this is going to be a problem, I guess my point is that you

14   need to get going quickly.

15         In terms of motion practice, if the parties had a

16   disagreement about when motions to amend ought to be filed,

17   this is no great Solomon-like decision, but I'm going to

18   essentially split the difference between your proposals, so

19   that deadline to file motions for leave to amend the pleading

20   will be November 30th, which is earlier than what the defendant

21   wanted, later than what -- excuse me, earlier than what the

22   plaintiff wanted and later than what the defendant did.

23         With regard to any summary judgment motions that might

24   be filed, I'm going to set that at June 1st of 2021.  That's a

25   hard deadline.  I saw some commentary, Mr. Jaiyeola, that you

1    would file those whenever you deemed appropriate.  That's not

2    the way it works in our district.  You certainly can file them

3    earlier than June 1st, but no later than June 1st of next year.

4         I did see the information flagged by defense counsel

5    about possible need to adjust the reply brief schedule based on

6    your summer of 2021 trial schedule.  I'm not going to include

7    that in the scheduling order.  I would suggest, however, if

8    this is still a problem, that you flag that issue in the

9    proposed pretrial order that is submitted after the close of

10   discovery.

11        If there are summary judgment motions, whether they

12   come early or late in the case, both sides -- and for

13   Mr. Jaiyeola, I want to particularly highlight this for your

14   attention -- our court has summary judgment guidelines posted

15   on the website.  Make sure you look at those and comply with

16   them, otherwise a motion by the defendant could be granted on

17   procedural grounds without ever reaching the merits, which is

18   something I presume you want to avoid.

19        With regard to any expert-related motions, with this

20   case being assigned to Judge John Broomes as the presiding

21   district judge, those motions will be due June 1st along with

22   any summary judgment motions, as opposed to close to trial as

23   both of you had suggested.

24        Coming back to the summary judgment motions,

25   Ms. Reisdorff and Ms. Young, I wanted to highlight for you --

Case 2:20-cv-02068-HLT-JPO   Document 36-2   Filed 11/05/20   Page 18 of 30

Appellate Case: 21-3114   Document: 010110544162   Date Filed: 07/06/2021   Page: 549   17
20-CV-02068-JWB-JPO   Jaiyeola v. Garmin   09.29.2020

 1   presumably you're already aware of this -- but since

 2   Mr. Jaiyeola is an unrepresented party, if you file a summary

 3   judgment motion against him, make sure you comply with the

 4   applicable part of the local rule with regard to the notice

 5   that needs to be included in your motion papers that reminds

 6   him of the procedures on summary judgment.

 7          MS. REISDORFF:  Thank you, Judge.

 8          THE COURT:  With regard to the pretrial conference

 9   that we conduct after the close of discovery, that is set for

10   April 19th at 9:00, and unless otherwise notified, that will be

11   in the courtroom.  If the pandemic is still upon us, then we'll

12   make adjustments at that time.

13          The proposed pretrial order that I mentioned, that the

14   form of that, Mr. Jaiyeola, is on our Court's website, but that

15   proposed pretrial order, which is a joint submission, just like

16   the Rule 26(f) report was, is due April 9th.  As is customary,

17   defense counsel will be primarily in the lead of preparing that

18   document, but that's a joint submission in consultation with

19   Mr. Jaiyeola.

20          With regard to status conferences in the case, I saw

21   that you requested one, but I'm not going to include that in

22   the scheduling order.  If something goes seriously awry with

23   this case and either side wants a status conference, simply

24   send an e-mail to chambers with a copy to the other side saying

25   you want a conference, what you want to talk about, and then

1    I'll try to get that set up.

2         In terms of a trial setting, Judge Broomes does not

3    establish trial settings in his scheduling orders.  That trial

4    setting will be deferred until such time that we conduct the

5    pretrial conference that I mentioned a moment ago.

6         Coming back yet again to summary judgment motions --

7    actually this would apply to any briefs -- keep in mind that

8    Judge Broomes has a standing order that applies to the length

9    of briefs.  By local rule and our standard scheduling order,

10   the argument section of a brief may not exceed 30 pages.  Judge

11   Broomes changes that procedure, and it's 30 pages for the whole

12   brief, facts and argument as well.  So make sure you comply

13   with that unless you want to have all the brief or everything

14   after 30 pages stricken.

15        With regard to discovery problems -- well, before we

16   get into that, let me mention with regard to a protective

17   order, I noticed one thing that did appear that you agreed upon

18   was, if there is production of material that might be

19   privileged or protected, in your report you suggest that that

20   would be covered or be able to get that material back if it was

21   inadvertently produced.

22        The Court's current form of protective order and

23   guidelines that were revised last year contemplate that the

24   parties would have the maximum protection afforded by Rule

25   502(d) of the rules of evidence.  So whether the production is

 1   inadvertent or otherwise, you'd still be covered.  So I would

 2   commend that to both sides as you litigate the issue of whether

 3   there ought to be a protective order filed of any kind.

 4          With regard to discovery, the potential problem -- I

 5   guess this to some extent is bound up in the motion for

 6   protective order -- but, Mr. Jaiyeola, I was a little bit

 7   unclear what was contemplated.  In the report it indicated that

 8   you intended to seek production of the medical records of three

 9   employees of the defendant, specifically Misters Minelli, Mudd,

10   and Zeller.

11          Can you tell me in very brief terms why you would be

12   entitled to see their medical records?

13          MR. JAIYEOLA:  Their behaviors, Your Honor, during my

14   visit to Garmin on that August 14, 2019, date.  So I guess that

15   was the main reason, Your Honor.  I probably will want to put

16   that into a motion maybe, I don't know.  I think they probably

17   will oppose it.

18          THE COURT:  I'm still unclear.  I'm not following you.

19   Why would the medical records of employees of Garmin, who

20   evidently were involved in the interview process, be relevant

21   to this case?

22          MR. JAIYEOLA:  Your Honor, for the same reason that

23   Garmin wants to get my medical records, Your Honor.

24          THE COURT:  Ms. Reisdorff, let me make sure I've got

25   this in context.  To what extent, if any, does Garmin

1    anticipate asking for production of Mr. Jaiyeola's medical

2    records?

3            MS. REISDORFF:  There would be two bases, Judge, that

4    I see right now.  One, of course, is the large emotional

5    distress damages that Mr. Jaiyeola has alleged in his Rule 26

6    disclosures.

7            He has also -- and what would be a standard question

8    in our interrogatories would be to tell us if he's ever applied

9    for or received social security disability benefits.  We have

10   reason to believe that he has been receiving social security

11   disability benefits.  And I know, Judge, you're well aware of

12   the case law in terms of impact on economic damages if you're

13   physically unable to work and can't reconcile those

14   representations between your representations you make in a

15   lawsuit.

16           THE COURT:  Okay.  Well, it's helpful to know kind of

17   what's coming down the pike.  I guess --

18           MS. REISDORFF:  Sure.

19           THE COURT:  -- Mr. Jaiyeola, I'm not ruling today if

20   it would be premature that the plaintiff would have to produce

21   his medical records to the defendant given some of the claims

22   that have been made in this case, but I think it would be safe

23   to say that the mere fact that the defendant might be able to

24   demonstrate a basis for seeking your medical records based on

25   the claims you've made would not by itself in all likelihood be

```
 1   a proper grounds for you to say, well, then I'm going to go

 2   after the defendant's employees' medical records.  I'm not

 3   saying you could never do that.  All I'm saying, as a practical

 4   matter, you're going to need to be prepared to cite some

 5   authority in this kind of case that would support that kind of

 6   request.

 7             But that's not something we need to decide today, but

 8   I just wanted to make sure I was understanding, I guess, what

 9   mines might lie out of the minefield on that point.

10             With regard to the location of depositions, if -- is

11   it contemplated, if the pandemic continues, that the parties

12   are going to conduct depositions by Zoom or some other

13   electronic means as opposed to being in person?

14        MS. REISDORFF:  Judge, I'll answer on behalf of

15   defendant.  I think that that's the presumption we're working

16   off of right now.  So absent, you know, something occurring in

17   written discovery that makes it so we believe strategically or

18   otherwise that we need to be in the same environment, the same

19   areas, then, you know, we'll confer about that with

20   Mr. Jaiyeola.  But I think we're working under the assumption

21   that depositions at least for the time being in pending cases

22   will be done virtually.

23        THE COURT:  Mr. Jaiyeola, are you of the same mind on

24   that issue?

25        MR. JAIYEOLA:  Kind of, Your Honor.  Yeah, probably
```

1    will also -- like I mentioned in that report as well, they --

2    some of -- some of the witnesses are also -- they're not

3    working for Garmin anymore.  They're not their employees, like

4    some of them.  Then they would probably be better off

5    testifying -- you know, being deposed virtually, like Zoom kind

6    of thing.  That's what I think.

7            THE COURT:  And I guess, Mr. Jaiyeola, you've been

8    involved in other employment cases, correct?

9            MR. JAIYEOLA:  Yes, I have.

10           THE COURT:  Okay.  Do you have a familiarity, I guess,

11   with the expense and the logistics associated with your

12   initiating depositions?

13           MR. JAIYEOLA:  Yes, Your Honor.

14           THE COURT:  And you're prepared to, I mean, hire court

15   reporters and the like to take depositions; is that right?

16           MR. JAIYEOLA:  If I need to, Your Honor.  I don't have

17   to -- you know, there are other options to depositions, Your

18   Honor.  It doesn't have to be in person.

19           THE COURT:  I know, but in terms of a court reporter,

20   I'm just curious how you're going to manage that economically

21   in terms of the expense associated with a court reporter.

22           MR. JAIYEOLA:  Oh, yeah.  If I need to, Your Honor, if

23   I do need a court reporter, I surely can hire one.

24           THE COURT:  Do you have a sense of how much that

25   costs?

1          MR. JAIYEOLA:  So many of them, they vary in price,

2    Your Honor, depending on who you want and (indecipherable) to

3    prices (indecipherable), so many of them, yeah.

4          THE COURT:  Okay.  I just -- you know, they're not

5    cheap I guess is my point.

6          MR. JAIYEOLA:  They're not cheap, Your Honor.

7    Anything good is not cheap, Your Honor.  I've done it before,

8    Your Honor; I can do it again.

9          THE COURT:  In terms of the -- I'm just looking at

10    your financial status, whether you're going to be able to

11    handle that, but I suppose if you think you can handle it, go

12    for it.

13          With regard to everybody's favorite subject,

14    electronically-stored information, I saw on the report that --

15    I couldn't tell exactly what was involved here, but in one part

16    of the report it says defendant states that there's no

17    information currently available to suggest that a search of

18    disaster recovery backup media will need to occur.  Conversely,

19    plaintiff states that there surely will be a need to collect

20    ESI from disaster recovery backup.

21          I guess my question is, has there been any discussion

22    between the parties about what information the plaintiff has

23    asked for or is reasonably expected to ask for that would

24    involve disaster recovery backup?

25          MS. REISDORFF:  Judge, it's on defendant's side.  That

20-CV-02068-JWB-JPO    Jaiyeola v. Garmin  09.29.2020      24

```
 1   was language that Mr. Jaiyeola added after our September 9th

 2   conference, and so we have not spoken directly about that.  I

 3   did -- I did indicate in our September 9th call that we didn't

 4   have any -- you know, a legal hold was issued and we believe

 5   all relevant ESI will be available in this litigation.

 6            We did talk briefly in the call about the custodians

 7   issue.  We did identify/agree upon certain custodians.  The

 8   others are the names that plaintiff stated, but right now I

 9   don't know or have reason to know if they actually communicated

10   via electronically with respect to any of the allegations in

11   the lawsuit.  The custodians that we did agree to are ones that

12   we know had direct communications relating to plaintiff's

13   claims.

14            THE COURT:  Mr. Jaiyeola, let me ask you, is there any

15   specific information that you already have asked for or that

16   you expect to ask for that you believe would not be reasonably

17   acceptable as opposed to being subject to the disaster recovery

18   backup retrieval?

19            MR. JAIYEOLA:  Yes, Your Honor.  One key information,

20   in fact, a very important one is that when the position was

21   advertised and when the position was taken off from being

22   advertised, in terms of the (indecipherable) guidelines, I

23   mean, Garmin was still advertising the position after I was

24   denied employment, and so they need to look into their records

25   and bring all that information out in terms of when it was
```

1    the -- what date the position was first advertised, you know,

2    what web sites were they advertised on, Indeed and the rest of

3    them, and also critically, what dates were the ad pulled down,

4    because I saw the ad after I was denied employment.

5           Also, Your Honor, is plaintiff -- I would like to

6    know -- plaintiff would like to know the different people that

7    were interviewed in terms of the races, national origin,

8    (indecipherable), and probably also I need the information --

9    information on e-mails where my name was mentioned, because it

10   took Garmin like a period of three months after I was

11   interviewed before I was denied employment.  So that's why I am

12   saying I'm going to need that ESI.

13          THE COURT:  Okay.  Let me make a suggestion.  I'm not

14   going to decide this issue today, but I think my inclination is

15   to think that the sort of information you've asked for would

16   lend itself to, at least in the first instance, to

17   interrogatories or maybe even a single interrogatory with

18   subparts that would drill down on those kinds of information.

19   And it may be that by searching information that is reasonably

20   accessible, Garmin can provide you that information, and that

21   information may be entirely acceptable to you.

22          Even if that doesn't happen, I guess, respectfully, I

23   would urge you to do some research, starting I think if you

24   haven't already looked at it, the ESI guidelines that are

25   posted on our Court's website, and I believe they make very

Case 2:20-cv-02068-HLT-JPO   Document 36-2   Filed 11/05/20   Page 27 of 30

Appellate Case: 21-3114   Document: 010110544162   Date Filed: 07/06/2021   Page: 558
20-CV-02068-JWB-JPO   Jaiyeola v. Garmin   09.29.2020                 26

1    clear as to The Sedona Conference Principles that, while there

2    are certain instances in which discovery of backup and disaster

3    tapes might be appropriate, the operating premise on the front

4    end of the case is that the parties will exhaust reasonable

5    efforts to search the information that is reasonably accessible

6    first, find out where that leads you, find out what answers

7    that provides you, and then at that point determine whether

8    it's even necessary to look at sources of ESI that are much

9    more difficult and much more expensive to retrieve, and even if

10   you get there, there may be a point at which, even if it's

11   retrievable, there may be cost-sharing involved, meaning you

12   might have to pay part of the freight to retrieve that

13   information.

14         So I guess as opposed to saying on the front end of

15   the case that we're going to look at every nook and every

16   cranny, no matter how expensive and now inconvenient it may be

17   to produce, I want the parties to get focused on trying to look

18   at those sources of information that are reasonably accessible

19   and then decide where we go from there.

20         Hopefully that makes sense to you.

21         MR. JAIYEOLA:  Yes, Your Honor.

22         THE COURT:  Okay.  Well, this complaint, I guess the

23   items about which I was unclear or at least in some of the

24   points I wanted to emphasize -- but, Mr. Jaiyeola, is there

25   anything else that we've not talked about today in terms of

1    scheduling or case management that you believe we need to take

2    up at this time?

3           MR. JAIYEOLA:  Your Honor, one thing I am kind of

4    concerned about is the defendant's, you know, lack of faith,

5    really, their showing of bad faith so far in my interactions

6    with them.  I think -- I think this litigation is going to

7    require more than one status conference, Your Honor.  I'm

8    thinking maybe the Court who's -- kind of looking like a

9    monthly status conference because I see a lot of conflict, Your

10   Honor.

11          I mean, the case has not only started, and the

12   defendant can't -- they cannot own up to an agreement as to a

13   settlement proposal.  That was even in which I'm going to be

14   filing the emotional damage, Your Honor.  That was in violation

15   of Rule 408, Your Honor.

16          The comment the defendant's attorney just made about

17   my social security benefits was something that I put up in a

18   settlement proposal, and they decided to sort of make that

19   discovery rule, which is a violation of (undecipherable) 402,

20   403(o), especially 408.

21          So, Your Honor, my point is I think a status

22   conference, monthly status conference, it is possible will

23   probably help for this lawsuit.  That's probably the only thing

24   that I have to say.

25          THE COURT:  Respectfully, Mr. Jaiyeola, and I don't

1   mean to argue the issue with you, but from where I sit -- and

2   I've been doing this for 20 years now -- I've seen nothing that

3   suggests that defense counsel has acted in bad faith.

4          With regard to this issue of, you know, the settlement

5   numbers or at least the subject being included in the report,

6   there clearly is no violation of Rule 408 of the rules of

7   evidence.  That deals with admissibility of settlement

8   discussions at a trial.

9          In federal litigation, it is not uncommon.  Indeed in

10  our district and in most others, it is standard for a judge who

11  is managing the case, typically a magistrate judge such as

12  myself, to be made privy to the numbers exchanged by the

13  parties.

14         So I could have asked you and Ms. Reisdorff and

15  Ms. Young specifically the settlement proposals that were

16  exchanged previous to today.  I thought that that, based on

17  what I had read thus far, would not be helpful to the process,

18  but it certainly would be proper.

19         So I'm not going to -- I'm not going to follow your

20  suggestion of having a monthly status conference.  I simply ask

21  that you redouble your efforts to listen and engage with

22  defense counsel.  I'm confident that they will treat you

23  respectfully.  I have every expectation that they will based on

24  what I've seen in the past.

25         So I do not find any bad faith at this point.  It may

 1    come up at some point in the case later, but I just don't see

 2    it here today.

 3         Ms. Reisdorff, Ms. Young, anything further on behalf

 4    of the defendant today?

 5         MS. REISDORFF:  No, Judge.

 6         MS. YOUNG:  No.  Thank you, Judge.

 7         THE COURT:  Folks, I will get a scheduling order out

 8    no later than tomorrow.  We've got a fairly full docket this

 9    afternoon with another case starting in just a few minutes, but

10    I will get an order out that confirms the various deadlines and

11    other provisions that we've discussed today.  With that, we are

12    adjourned.  You all have a good day.

13         (The proceedings were adjourned.)

14                   C E R T I F I C A T E

15    I certify that the foregoing is a true and correct

16    transcript from the digital record of proceedings as understood

17    and transcribed from the digital recording in the

18    above-entitled matter.

19    SIGNED 11th of October, 2020

20

21              /s/Danielle R. Murray
              DANIELLE R. MURRAY, RMR, CRR
22              United States Court Reporter

23

24

25

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

GANIYU AYINLA JAIYEOLA,                    )
                                            )
                    Plaintiff,              )
                                            )
v.                                          )   Case No. 20-2068-JWB
                                            )
GARMIN INTERNATIONAL, INC.,                 )
                                            )
                    Defendant.              )

**<u>ORDER</u>**

The pro se plaintiff, Ganiyu Ayinla Jaiyeola, has filed a motion (ECF No. 35) to

disqualify the undersigned U.S. Magistrate Judge, James P. O'Hara.  Plaintiff invokes <u>28</u>

<u>U.S.C. § 455(a)</u>, which governs disqualification of a judge.  For the reasons discussed

below, the undersigned respectfully denies plaintiff's motion.

<u>Standard</u>

Section 455 provides that "[a]ny justice, judge, or magistrate of the United States

shall disqualify himself in any proceeding in which his impartiality might reasonably be

questioned."[1]  "The standard is purely objective.  The inquiry is limited to outward

manifestations and reasonable inferences drawn therefrom.  In applying the test, the initial

inquiry is whether a reasonable *factual* basis exists for calling the judge's impartiality into

---

[1] <u>28 U.S.C. § 455(a)</u>.  The statute continues in § 455(b) to describe specific circumstances under which a judge should disqualify himself, but those circumstances do not apply here, nor does plaintiff argue they do.

question."[2]   Under this statute, "[t]here must be a reasonable factual basis to question the judge's impartiality."[3]   Recusal is not required based only on assumptions about a judge's beliefs that aren't substantiated by the record.[4]

<u>Analysis</u>

Plaintiff has failed to present adequate facts to support disqualification.   Much of plaintiff's briefing focuses on restating his position on the merits of the case, followed by a string of case cites stating the standard for a judge's recusal.   To the extent plaintiff does include specific factual support for disqualification, there is nothing that suggests the undersigned's impartiality should be questioned.

To support his motion, plaintiff argues "it was apparent [the undersigned] was personally biased and prejudiced against plaintiff" at the parties' Rule 16 scheduling conference on September 29, 2020.[5]   Plaintiff further cites the undersigned's February 20, 2020 order denying plaintiff's motion to appoint counsel.[6]   Specifically, plaintiff argues the undersigned made conclusory, antagonistic statements by explaining, to the extent plaintiff's damages calculation exceeded the statutory caps, as defense counsel represented

---

[2] *United States v. Cooley*, <u>1 F.3d 985, 993</u> (10th Cir. 1993) (citations omitted) (emphasis in original).

[3] *In re McCarthey*, <u>368 F.3d 1266, 1269</u> (10th Cir. 2004).

[4] *Id.* at 1269–70.

[5] <u>ECF No. 35 at 3</u>.

[6] <u>ECF No. 6</u>.

at the conference, mediation would likely be unproductive.[7]   Plaintiff argues these comments constituted an abuse of discretion that "showed deep-seated favoritism or antagonism."[8]

The record does not bear this out.  At the scheduling conference, the undersigned discussed the District of Kansas's position on settlement and alternative dispute resolution. After allowing each side to represent whether mediation would be productive in this case, the undersigned ultimately dispensed with mediation with the parties' agreement.  The undersigned did "respectfully urge [plaintiff] to spend some time getting familiar with the sorts of damages that are available in this kind of case and the caps that apply to those recoveries."[9]   Plaintiff is entitled to calculate his own damages demand, and the undersigned did not interfere with plaintiff's prerogative to do so.  Although the undersigned stated he wouldn't force a settlement, he did advise plaintiff that asking for damages well in excess of the caps would be unproductive at best.  Any comments regarding the likely productivity of such numbers were well within the undersigned's role of facilitating the progress and ultimate resolution of this case, including the decision whether to move forward with mediation.

---

[7] ECF No. 36 at 9.

[8] *Id.* at 10.

[9] 9/29/20 Scheduling Conference Tr.

Plaintiff also argues the undersigned began "literally deposing plaintiff"[10] by asking questions at the conference about the parties' plans for depositions.  Plaintiff seems to insinuate the undersigned's questions violated his privacy by revealing information about his financial status.[11]  Plaintiff represents this constituted "open badgering."[12]  During the scheduling conference, the undersigned raised plaintiff's pro se status as it relates to the substantial expense of taking depositions, particularly the cost of a court reporter.[13]  The undersigned did not comment with any specifics on plaintiff's financial status; rather, he inquired whether plaintiff was prepared to take on this expense, which plaintiff confirmed he was able to do.[14]

The undersigned denies plaintiff's motion for lack of adequate legal and factual support.  The disqualification statute is not intended to give litigants a veto power over sitting judges or a vehicle for obtaining a judge of their choice.[15]  To the extent plaintiff cites the undersigned's denial of his request for appointed counsel, the fact that a judge has

---

[10] ECF No. 35 at 3.

[11] ECF No. 36 at 10.

[12] *Id.* at 12.

[13] 9/29/20 Scheduling Conference Tr.

[14] *Id.*

[15] *McCormick v. Six*, No. 08-3058-SAC, 2008 WL 824253, at *1 (D. Kan. Mar. 25, 2008); *Cooley*, 1 F.3d at 993.

4

made an adverse ruling is not a basis for disqualification.[16]  To the extent plaintiff relies on statements from the scheduling conference, conclusory allegations of bias are not sufficient grounds for disqualification.[17]  Nor is disqualification warranted by rumor, speculation, beliefs, suspicion or opinion.[18]

The court, in reviewing the briefing and the audio recording of the relevant scheduling conference, finds that plaintiff's arguments are unsubstantiated suggestions of personal bias and prejudice.  The undersigned asked typical questions to explore the parties' plans to handle pre-trial obligations, including the possibility of mediation and the logistics of taking depositions.  The questions are ones the undersigned would be inclined to ask of any pro se plaintiff under similar circumstances.  Given the record, the undersigned maintains "as strong a duty to sit when there is no legitimate reason to recuse as he does to recuse when the law and facts require."[19]

IT IS THEREFORE ORDERED that plaintiff's motion to disqualify (ECF No. 35) is denied.

---

[16] *Kalashnikov v. Herbert*, No. 2:19-CV-00411-CW-PMW, 2020 WL 1030726, at *1–2 (D. Utah Mar. 3, 2020) (citing *Liteky v. United States*, 510 U.S. 540, 555 (1994) ("Judicial rulings alone almost never constitute a valid basis for a bias or partiality motion")).

[17] *Kalashnikov*, 2020 WL 1030726, at *1–2 (citing *In re Trierweiler*, 570 Fed. App'x 766, 775 (10th Cir. 2014)).

[18] *McCormick*, 2008 WL 824253, at *1.

[19] *Bryce v. Episcopal Church in the Diocese of Colorado*, 289 F.3d 648, 659 (10th Cir. 2002) (quoting *Nichols v. Alley*, 71 F.3d 347, 351 (10th Cir. 1995)).

Dated November 9, 2020, at Kansas City, Kansas.

 s/ James P. O'Hara
James P. O'Hara
U.S. Magistrate Judge

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

GANIYU AYINLA JAIYEOLA,                          )
                                                 )
                       Plaintiff,                )
                                                 )
v.                                               )   Case No. 20-2068-JWB
                                                 )
GARMIN INTERNATIONAL, INC.,                      )
                                                 )
                       Defendant.                )

## ORDER

Plaintiff, Ganiyu Ayinla Jaiyeola, proceeding pro se, filed this failure-to-hire employment-discrimination case against defendant, Garmin International, Inc.  During a scheduling conference held September 29, 2020, defendant argued discovery in this case should be governed by a protective order; plaintiff disagreed, stating he would oppose any blanket protective order (ECF No. 26 at 8–9).  The undersigned U.S. Magistrate Judge, James P. O'Hara, tried to explain to plaintiff that a protective order would not be blanket in the sense that it would apply to every document, rather, it would be for efficiency purposes given the broad categories of documents that typically are exchanged in employment-discrimination cases (ECF No. 26 at 9).  Given the parties' disagreement on this issue, the court set a deadline for defendant to file a formal motion for a protective order.

Defendant timely filed its motion for protective order (ECF No. 22), including a proposed protective order modeled after the form that's included as part of the Protective Order Guidelines posted on the District of Kansas website.  Plaintiff timely filed his

opposition to defendant's motion, and further took the position that, if any protective order is filed, his proposed order should be used.[1]  The sample protective order plaintiff attached to his opposition was entered in another case in this jurisdiction in 2017.[2]  Defendant's reply brief summarizes the material differences between the parties' proposed orders.[3]

Analysis

Federal Rule of Civil Procedure 26(c)(1) provides that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ."[4]  The Tenth Circuit has recognized the usefulness of blanket protective orders in that

> [t]hey allow the parties to make full disclosure in discovery without fear of public access to sensitive information and without the expense and delay of protracted disputes over every item of sensitive information, thereby promoting the overriding goal of the Federal Rules of Civil Procedure, 'to secure the just, speedy, and inexpensive determination of every action.'"[5]

The district court has broad discretion to decide when a protective order is appropriate and what degree of protection is required.[6]  The party seeking a protective order has the burden to show good cause for it.[7]  To establish good cause, this party must make

---

[1] ECF No. 29, Ex. B at 10.

[2] *See id.*, Ex. C.

[3] ECF No. 34 at 2.

[4] Fed. R. Civ. P. 26(c)(1).

[5] *Univ. of Kan. Ctr. for Research, Inc. v. United States*, No. 08-2565-JAR-DJW, 2010 U.S. Dist. LEXIS 12893, at *11–13 (D. Kan. Feb. 12, 2010) (quoting *United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1427 (10th Cir. 1990)).

[6] *Id.* at *10 (citing *MGP Ingredients, Inc. v. Mars, Inc.*, 245 F.R.D. 497, 500 (D. Kan. 2007)).

[7] *Id.* (citing *Reed v. Bennett*, 193 F.R.D. 689, 691 (D. Kan. 2000)).

a particular and specific demonstration of fact,[8] and may do so on a generalized basis, as opposed to a document-by-document basis.[9]  If the party seeking protection shows good cause to believe discovery will involve confidential or protected information, agreement to enter a blanket protective order between the parties is not required.[10]

Plaintiff's response largely focuses on the parties' scheduling conference and his various grievances stemming from it.  Specifically, plaintiff argues defendant made "conclusory and out-of-context assertions" that were in bad faith during the scheduling conference.[11]  Plaintiff primarily takes issue with defendant saying "that his medical records would become public" were he to claim mental distress.[12]  Because plaintiff proceeds pro se, the court will liberally construe his pleadings and hold them to a less stringent standard than formal pleadings drafted by lawyers.[13]  Nevertheless, the court "expects [him] to 'follow the same rules of procedure that govern [represented] litigants.'"[14]

As discussed at the scheduling conference and reiterated in today's order, a protective order is fairly standard practice in employment cases and useful to both parties.

---

[8] *Id.* (citing *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 (1981)).

[9] *Matson v. Hrabe*, No. 11-3192-RDR, 2013 U.S. Dist. LEXIS 117654, at *6 (D. Kan. Aug. 20, 2013) (citing *Bartholomees v. Signator Investors, Inc.*, No. 03-2081-GTV, 2003 U.S. Dist. EXIS 21443, at *1 (D. Kan. Nov. 25, 2003)).

[10] *Id.* at *5-6 (citing *Bartholomees*, 2003 U.S. Dist. LEXIS 21443, at *1).

[11] ECF No. 29 at 8.

[12] *Id.* at 10.

[13] *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[14] *Hirt v. Unified Sch. Dist. No. 287*, No. 17-2279-JAR-GEB, 2018 U.S. Dist. LEXIS 121478, at *6 (D. Kan. July 20, 2018) (quoting *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994) (recognizing the Tenth Circuit's insistence that pro se parties follow the same rules that govern represented parties)).

And ultimately, plaintiff seems to agree a protective order is necessary, though he has a different idea of the scope of it.  The court's form protective order includes provisions deemed necessary in civil cases for the fair and efficient resolution of cases.  The court is not inclined to remove provisions of the standard protective order in the absence of a compelling reason, and plaintiff has not persuaded the court his changes should be made.

Defendant has met its burden in showing good cause exists for a protective order on a generalized basis.  Defendant states it reasonably anticipates that documents containing confidential business information and sensitive, confidential information regarding third parties will be requested by plaintiff.[15]  This belief is based on plaintiff's indication that he will be requesting confidential information of Garmin employees and applicants, including dates of birth, demographic information, and applications and resumes containing personal and non-public information.[16]  Because defendant has met its burden with this showing, plaintiff's agreement to enter a protective order is not required.  The parties will be permitted to make full disclosures in discovery "without fear of public access to sensitive information and without the expense and delay of protracted disputes over every item of sensitive information."[17]

IT IS THEREFORE ORDERED that defendant's motion for protective order (ECF No. 22) is granted.  The court will enter a protective order, based on the parties' proposals, in a separate docket entry.

---

[15] ECF No. 23 at 2.

[16] *Id.* at 2–3.

[17] *Univ. of Kan. Ctr. for Research, Inc.*, 2010 U.S. Dist. LEXIS 12893, at *13 (quoting *United Nuclear Corp.*, 905 F.2d at 1427).

4

Dated November 9, 2020, at Kansas City, Kansas.

                    s/ James P. O'Hara
                   James P. O'Hara
                   U.S. Magistrate Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

GANIYU AYINLA JAIYEOLA,            )
                                   )
                    Plaintiff,     )
                                   )
v.                                 )        Case No. 20-2068-JWB
                                   )
GARMIN INTERNATIONAL, INC.,        )
                                   )
                    Defendant.     )
                                   )

## PROTECTIVE ORDER

Pending before the court is defendant Garmin International, Inc.'s motion for entry of protective order. Upon review of the proposed protective order submitted by defendant, the court hereby grants the motion for entry of protective order as set forth herein, with certain edits made at plaintiff's request.

During the course of discovery, it may be necessary to disclose certain confidential information relating to the subject matter of this action. Certain categories of such information should be treated as confidential, protected from disclosure outside this litigation, and used only for purposes of prosecuting or defending this action and any appeals. As such, defendant requests entry of a protective order to limit the disclosure, dissemination, and use of certain identified categories of confidential information. Protection of the identified categories of confidential information is necessary because plaintiff asserts claims that will necessitate discovery regarding his employment history, his medical history, confidential and sensitive information regarding third parties (i.e., dates of birth and EEO demographics), financial information of plaintiff and defendant,

and/or other confidential business information of defendant which has been maintained in a confidential manner. Defendant anticipates discovery will encompass the production of documents and tangible things, answering interrogatories, answering requests to admit, and taking depositions. All of these methods of discovery will likely require the production and disclosure of confidential information of and by the parties, and potentially, third parties. Defendant is interested in permitting discovery to proceed without delay occasioned by possible disputes about the confidential nature of the documents and/or information being produced. For good cause shown under <u>Fed. R. Civ. P. 26(c)</u>, the court grants defendant's motion (<u>ECF No. 22</u>) and hereby enters the following Protective Order:

     1.    **Scope.**  All documents and materials produced in the course of discovery of this case, including initial disclosures, responses to discovery requests, all deposition testimony and exhibits, and information derived directly therefrom (hereinafter collectively "documents"), are subject to this Order concerning Confidential Information as set forth below. As there is a presumption in favor of open and public judicial proceedings in the federal courts, this Order will be strictly construed in favor of public disclosure and open proceedings wherever possible.

     2.    **Definition of Confidential Information.** As used in this Order, "Confidential Information" is defined as information that the producing party designates in good faith has been previously maintained in a confidential manner and should be protected from disclosure and use outside the litigation because its disclosure and use are restricted by statute or could potentially cause harm to the interests of the disclosing party

or nonparties. For purposes of this Order, the parties will limit their designation of "Confidential Information" to the following categories of information or documents:

(a) Medical information, including physical and mental health records. The court further orders that documents regarding any individual's medical health or health care information, including but not limited to documents from medical providers or treatment practitioners, shall be treated as Confidential Information, whether or not these documents are designated as Confidential and shall be unequivocally treated as confidential under this order;

(b) Documents and information relating to defendant's business, financials, marketing, sales, policies and procedures;

(c) Documents concerning the parties' income, net worth and income tax returns;

(d) Education records;

(e) Personnel and employment information on defendant's current and former employees;

(f) Dates of birth, ages, and other personal demographics and confidential information regarding the parties and third parties;

(g) Defendant's confidential and proprietary information and trade secrets;

(h) Records, documents, and information whose disclosure is restricted or prohibited by regulation, statute, or case law; and

(i) Other confidential information of a party or third party previously maintained in a confidential manner.

Information or documents that are available to the public may not be designated as Confidential Information.

**3.    Form and Timing of Designation.**  The producing party may designate documents as containing Confidential Information, and therefore subject to protection

3

under this Order, by marking or placing the word "CONFIDENTIAL" (hereinafter "the marking") on the document and on all copies in a manner that will not interfere with the legibility of the document. As used in this Order, "copies" includes electronic images, duplicates, extracts, summaries, or descriptions that contain the Confidential Information. The marking will be applied prior to or at the time the documents are produced or disclosed. Applying the marking to a document does not mean that the document has any status or protection by statute or otherwise except to the extent and for the purposes of this Order. Copies that are made of any designated documents must also bear the marking, except that indices, electronic databases, or lists of documents that do not contain substantial portions or images of the text of marked documents and do not otherwise disclose the substance of the Confidential Information are not required to be marked. By marking a designated document as confidential, the designating attorney or party appearing pro se thereby certifies that the document contains Confidential Information as defined in this Order.

4. **Inadvertent Failure to Designate**. Inadvertent failure to designate any document or material as containing Confidential Information will not constitute a waiver of an otherwise valid claim of confidentiality pursuant to this Order, so long as a claim of confidentiality is asserted within thirty (30) days after discovery of the inadvertent failure.

5. **Depositions.** Deposition testimony will be deemed confidential only if designated as such when the deposition is taken or within thirty (30) days after receipt of the deposition transcript. Such designation must be specific as to the portions of the transcript and/or any exhibits to be protected. There shall be no need to re-designate documents or exhibits which have been previously designated as Confidential Information.

6. **Protection of Confidential Material.**

(a) **General Protections.** Designated Confidential Information must be used or disclosed solely for purposes of prosecuting or defending this lawsuit, including any appeals arising therefrom.

(b) **Who May View Designated Confidential Information.** Except with the prior written consent of the designating party or prior order of the court, designated Confidential Information may only be disclosed to the following persons:

(1) Parties to this litigation, including any employees, agents, and representatives of the parties;

(2) Counsel for the parties and employees and agents of counsel;

(3) The court and court personnel, including any special master appointed by the court, and members of the jury;

(4) Court reporters, recorders, and videographers engaged for depositions;

(5) Any mediator appointed by the court or jointly selected by the parties;

(6) Any expert witness, outside consultant, or investigator retained specifically in connection with this litigation, but only after such persons have completed the certification contained in Attachment A, Acknowledgment and Agreement to be Bound;

(7) Any potential, anticipated, or actual fact witness and his or her counsel, but only to the extent such confidential documents or information will assist the witness in recalling, relating, or explaining facts or in testifying, and only after such persons have completed the certification contained in Attachment A;

(8) The author or recipient of the document (not including a person who received the document in the course of the litigation);

(9)   Independent providers of document reproduction, electronic discovery, or other litigation services retained or employed specifically in connection with this litigation; and

(10)   Other persons only upon consent of the producing party and on such conditions as the parties may agree.

(c)   **Control of Documents.**   The parties must take reasonable efforts to prevent unauthorized or inadvertent disclosure of documents designated as containing Confidential Information pursuant to the terms of this Order. Counsel for the parties, or the party appearing pro se, must maintain a record of those persons, including employees of counsel, who have reviewed or been given access to the documents along with the originals of the forms signed by those persons acknowledging their obligations under this Order.

7.   **Filing of Confidential Information.** If a party seeks to file any document containing Confidential Information subject to protection under this Order, that party must take appropriate action to ensure that the document receives proper protection from public disclosure, such as: (a) filing a redacted document with the consent of the party who designated the document as confidential;   (b) where appropriate (e.g., in relation to discovery and evidentiary motions), submitting the document solely for in camera review; or (c) when the preceding measures are inadequate, seeking permission to file the document under seal by filing a motion for leave to file under seal in accordance with D. Kan. Rule 5.4.6.

Nothing in this Order will be construed as a prior directive to allow any document to be filed under seal.  The mere designation of information as confidential pursuant to this Order is insufficient to satisfy the court's requirements for filing under seal in light of the

6

public's qualified right of access to court dockets. The parties understand that the requested documents may be filed under seal only with the permission of the court after proper motion. If the motion is granted and the requesting party permitted to file the requested documents under seal, only counsel of record and unrepresented parties will have access to the sealed documents. *Pro hac vice* attorneys must obtain sealed documents from local counsel.

        **8.**      **Challenges to a Confidential Designation.**  The designation of any material or document as Confidential Information is subject to challenge by any party. Before filing any motion or objection to a confidential designation, though, the objecting party must meet and confer in good faith to resolve the objection informally without judicial intervention. A party that elects to challenge a confidentiality designation may file a motion that identifies the challenged material and sets forth in detail the basis for the challenge; the parties are strongly encouraged to consider arranging a telephone conference with the undersigned magistrate judge before filing such a motion, but such a conference is not mandatory. The burden of proving the necessity of a confidentiality designation remains with the party asserting confidentiality. Until the court rules on the challenge, all parties must continue to treat the materials as Confidential Information under the terms of this Order.

        **9.**      **Use of Confidential Documents or Information at Trial or Hearing.** Nothing in this Order will be construed to affect the use of any document, material, or information at any trial or hearing. A party that intends to present or anticipates that another party may present Confidential Information at a hearing or trial must bring that issue to the

attention of the court and the other parties without disclosing the Confidential Information. The court may thereafter make such orders as are necessary to govern the use of such documents or information at the hearing or trial.

**10.     Obligations on Conclusion of Litigation.**

(a)     **Order Remains in Effect.** Unless otherwise agreed or ordered, all provisions of this Order will remain in effect and continue to be binding after conclusion of the litigation.

(b)     **Return of Confidential Documents.** Within thirty (30) days after this litigation concludes by settlement, final judgment, or final order, including all appeals, all documents designated as containing Confidential Information, including copies as defined above, must be returned to the party who previously produced the document unless:  (1) the document has been offered into evidence or filed without restriction as to disclosure; (2) the parties agree to destruction of the document to the extent practicable in lieu of return;  or (3) as to documents bearing the notations, summations, or other mental impressions of the receiving party, that party elects to destroy the documents and certifies to the producing party that it has done so.  However, counsel in this lawsuit may maintain a copy of all Confidential Information as a part of counsel's case files.

(c)     **Retention of Work Product.**     Notwithstanding the above requirements to return or destroy documents, counsel may retain attorney work product, including an index which refers or relates to designated Confidential Information, so long as that work product does not duplicate verbatim substantial portions of the text or images of designated documents. This work product will continue to be confidential under this

Order. An attorney may use his or her own work product in subsequent litigation provided that its use does not disclose Confidential Information.

**11.     Order Subject to Modification.**  This Order is subject to modification by the court on its own motion or on motion of any party or any other person with standing concerning the subject matter. The Order must not, however, be modified until the parties have been given notice and an opportunity to be heard on the proposed modification.

**12.     Enforcement of Protective Order.**  Even after the final disposition of this case, a party or any other person with standing concerning the subject matter may file a motion to seek leave to reopen the case for the limited purpose of enforcing or modifying the provisions of this Order.

**13.     No Prior Judicial Determination.** Nothing in this Order will be construed or presented as a judicial determination that any document or material designated as Confidential Information by counsel or the parties is entitled to protection under Fed. R. Civ. P. 26(c) or otherwise until such time as the court may rule on a specific document or issue.

**14.     Persons Bound by Protective Order.**  This Order will take effect when entered and is binding upon all counsel of record and their law firms, the parties, and persons made subject to this Order by its terms.

**15.     Applicability to Parties Later Joined.**  If additional persons or entities become parties to this lawsuit, they must not be given access to any Confidential Information until they execute and file their written agreement to be bound by the provisions of this Order.

**16.**   **Protections Extended to Third-Party's Confidential Information.** The parties will extend the provisions of this Protective Order to Confidential Information produced in this case by third parties, if timely requested by the third party.

**17.**   **Confidential Information Subpoenaed or Ordered Produced in Other Litigation.**   If a receiving party is served with a subpoena or an order issued in other litigation that would compel disclosure of any material or document designated in this action as Confidential Information, the receiving party must so notify the designating party, in writing, immediately and in no event more than three (3) business days after receiving the subpoena or order. Such notification must include a copy of the subpoena or court order.

The receiving party also must immediately inform in writing the party who caused the subpoena or order to issue in the other litigation that some or all of the material covered by the subpoena or order is the subject of this Order, and deliver a copy of this Order promptly to the party in the other action that caused the subpoena to issue.

The purpose of imposing these duties is to alert the interested persons to the existence of this Order and to afford the designating party in this case an opportunity to try to protect its Confidential Information in the court from which the subpoena or order issued. The designating party bears the burden and the expense of seeking protection in that court of its Confidential Information, and nothing in these provisions should be construed as authorizing or encouraging a receiving party in this action to disobey a lawful directive from another court. The obligations set forth in this paragraph remain in effect while the party has in its possession, custody, or control Confidential Information designated by the other party to this case.

18.     **Disclosure of Confidential Information Covered by Attorney-Client Privilege or Work Product.** Whether inadvertent or otherwise, the disclosure or production of any information or document that is subject to an objection on the basis of attorney-client privilege or work product protection, including, but not limited to, information or documents that may be considered Confidential Information under the Protective Order, will not be deemed to waive a party's claim to its privileged or protected nature or estop that party or the privilege holder from designating the information or document as attorney-client privileged or subject to the work-product doctrine at a later date. Any party receiving any such information or document must return it upon request to the producing party. Upon receiving such a request as to specific information or documents, the receiving party must return the information or documents to the producing party within seven (7) days, regardless of whether the receiving party agrees with the claim of privilege and/or work product protection. Disclosure of the information or document by the other party prior to such later designation will not be deemed a violation of the provisions of this Order. Although the provisions of this section constitute an order pursuant to Rule 502(d) and (e) of the Federal Rules of Evidence, and will be construed in a manner consistent with the maximum protection provided by said rule, nothing in this Order is intended or will be construed to limit a party's right to conduct a review of documents, including electronically-stored information, for relevance, responsiveness, or segregation of privileged or protected information before production.

IT IS SO ORDERED.

Dated November 9, 2020, at Kansas City, Kansas.

s/ James P. O'Hara
James P. O'Hara
U.S. Magistrate Judge

**ATTACHMENT A**
**ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND**

The undersigned hereby acknowledges that he/she has read the Protective Order

dated _____ in the case captioned, *Ganiyu Ayinla Jaiyeola v. Garmin*

*International, Inc.* and attached hereto, understands the terms thereof, and agrees to be

bound by its terms. The undersigned submits to the jurisdiction of the United States District

Court for the District of Kansas in matters relating to this Protective Order and understands

that the terms of the Protective Order obligate him/her to use materials designated as

Confidential Information in accordance with the order solely for the purposes of the above-

captioned action, and not to disclose any such Confidential Information to any other person,

firm, or concern, except in accordance with the provisions of the Protective Order.

The undersigned acknowledges that violation of the Protective Order may result in

penalties for contempt of court.

Name: _____

Job Title: _____

Employer: _____

Business Address: _____

_____

Date:_____    _____
                    Signature

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS


GANIYU AYINLA JAIYEOLA,
                    Plaintiff,

v.                                              Case No.: 2:20-cv-2068-JWB-JPO

GARMIN INTERNATIONAL, INC.,
                    Defendant.


**PLAINTIFF'S MOTION REGARDING OBJECTIONS TO**

**MAGISTRATE JUDGE'S ORDER ON MOTION TO RECUSE**


Pursuant to D. Kan. Rule 72.1.4(a) ("Rule 72.1.4(a)"), Plaintiff hereby files a motion

regarding Plaintiffs' objections to Magistrate Judge James P. O'Hara ("Magistrate") Order

DENYING[1] Plaintiff's motion[2] for the Magistrate to disqualify from this case.  Rule 72.1.4(a)

states in part as follows: "The procedure for filing objections to an order of a magistrate judge

in a nondispositive matter follows Fed. R. Civ. P. 72(a). Such objections must be made by

filing a motion to review the order in question.".

This is an employment discrimination lawsuit[3] in which Garmin International, Inc.

("Garmin"), by failing to hire Plaintiff ("Jaiyeola") (for the "Advanced Materials Engineer -

Metals-19001CL"[4] position he applied and interviewed for over the phone and on-site at

Garmin's Headquarters/Manufacturing Center in Olathe, Kansas) violated Jaiyeola's rights under

Title VII of the Civil Rights Act of 1964, as amended ("Title VII" – Race (African American),

---

[1] ECF No. 38.  Magistrate's Order Denying Plaintiff's Motion To Disqualify Magistrate.
[2] ECF No. 35.  Plaintiff's Motion To Disqualify Magistrate.
[3] ECF No. 1, pp. 1-21. Plaintiff's Complaint.
[4] ECF No. 1-17, p. 2. Garmin's Human Resources Email Stating That Plaintiff Was Not Hired.

Color (Black), and National Origin (Nigerian)), 29 U.S.C. § 621, et seq. (Age Discrimination in

Employment Act, as amended ("ADEA"), 42 U.S.C. §12112(b)(4) (Disability Association

Discrimination - Title I of the Americans with Disabilities Act ("ADA")), The Kansas Age

Discrimination in Employment Act[5] (Chapter 44, Art. 11, K.S.A., and specifically within the

meaning of subsection (a)(1) of Section 44-1113 of said Act - "KADEA") and 42 U.S.C. § 1983

(Denial of Due Process – "Due Process").  Garmin is also liable for discrimination under Section

703(a) of Title VII because the fact that Jaiyeola was not hired by Garmin was based on the

influence of a Garmin employee, Mr. Jeff Minelli (Garmin's Director of Mechanical

Engineering), with a discriminatory motive; Subordinate Bias Liability ("cat's paw" theory of

liability)[6].  Defendant's motion to dismiss the 42 U.S.C. § 1983 claim was granted by the Court

but the pleading (in the same Defendant's motion) to dismiss the Subordinate Bias Liability

claim was Denied[7].

     Plaintiff states as follows:

1.    Plaintiff is a *pro se*.  In an Order dated February 20, 2020, this Magistrate granted[8]

Plaintiff's *in forma pauperis*[9] motion but denied Plaintiff's motion for an Attorney[10].

2.    In *Hall v. Witteman*, this Court stated that "*Pro se* complaints, however inartfully

pleaded, must be liberally construed, and are held to less stringent standards than formal pleadings

drafted by lawyers. *Erickson v. Pardus*, ___ U.S. ___, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081

---

[5] http://www.kslegislature.org/li/b2019_20/statute/044_000_0000_chapter/044_011_0000_article/044_011_0013_section/044_011_0013_k/

[6] *Equal Employment Opportunity Commission v. BCI Coca-Cola Bottling Company of Los Angeles*, 450 F. 3d 476 (10th Cir. 2006).

[7] ECF No. 17, pp. 4-6. Violation of Title VII Based on Subordinate Bias Liability.

[8] ECF No. 6, Magistrate Order: Plaintiff *in forma pauperis* Granted, Appointment of Attorney Denied.

[9] ECF No. 3, Plaintiff Motion: *in forma pauperis* Status.

[10] ECF No. 4, Plaintiff Motion: Appointment of an Attorney.

2

(2007). See *Martinez v. Garden*, <u>430 F.3d 1302, 1304</u> (10th Cir. 2005)……"[11].  The Sixth Circuit asserted that "We recognize that *pro se* litigants impose a burden on the courts and that clients are usually better off if represented by counsel."[12].   The U.S. Supreme Court has stated that *pro se*[13] pleadings and motions should be viewed liberally and held to a lesser standard than those drafted by Attorneys.

     3.     "…there are two reasons for granting a motion for recusal: (1) the judge has a personal bias or prejudice towards a party, see <u>28 U.S.C. § 144</u>, [28 U.S.C. §] 455(b)(1); or (2) the judge's impartiality might reasonably be questioned, see <u>28 U.S.C. § 455(a).</u>"[14].  ""[U]nder § 455(a), a judge should be disqualified only if it appears that he or she harbors an aversion, hostility or disposition of a kind that a fair-minded person could not set aside when judging the dispute." *Liteky v. United States*, <u>510 U.S. 540, 558</u> (1994) (Kennedy, J., concurring in the judgment)."[15].  Plaintiff's motion that the Magistrate Denied was pursuant to <u>28 U.S.C. § 455(a)</u>.

     4.     "Pursuant to <u>D.Kan.Rule 72.1.4</u>, the procedure for obtaining review of a magistrate's order in a nondispositive matter is set forth in <u>Fed.R.Civ.P. 72(a)</u>. Under Rule 72(a), "[t]he district judge to whom the case is assigned shall consider such objections and shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law." The clearly erroneous standard requires the court to affirm the magistrate judge's order unless it has the definite and firm conviction from all the evidence that error has occurred. [See *Ocelot Oil Corp. v. Sparrow Industries*, <u>847 F.2d 1458, 1464</u> (10th Cir.1988) (quoting *United* *733States v. United States Gypsum Co.*, <u>333 U.S. 364, 395</u>, <u>68 S.Ct. 525</u>, <u>92 L.Ed. 746</u> (1948)).

---

[11] *Hall v. Witteman*, <u>569 F. Supp. 2d 1208</u> (D. Kan. 2008).
[12] *King v. Curtis*, No. 14-2614 (6th Cir. 2015).
[13] *Haines v. Kerner*, <u>404 U.S. 520</u> (1971).
[14] *Lynn v. Lundry*, No. 5:20-cv-03116-EFM, Document 21 (D. Kan. June 17, 2020).
[15] *Burke v. Regalado et al.*, No. 18-5042 (10th Cir. 2019).

See also *Smith v. MCI Telecomm. Corp.*, <u>137 F.R.D. 25, 27</u> (D.Kan.1991) ("Because a magistrate is afforded broad discretion in the resolution of nondispositive discovery disputes, the court will generally grant the magistrate great deference and overrule the magistrate's determination only if the discretion is clearly abused.")]"[16].

5.      Plaintiff contends that the Magistrate's November 9, 2020 Order is clearly erroneous because it is based on THREE erroneous factual determinations: (1) Plaintiff contends Magistrate's "…denial of [Plaintiff's] request for appointed counsel…"[17] as a basis for judicial disqualification; (2) Plaintiff is relying on "...[Magistrate's] statements from the scheduling conference, [which are] conclusory allegations of bias...."[18]; and (3) Plaintiff is relying on "...rumor, speculation, beliefs, suspicion or opinion...."[19]

6.      Therefore, Magistrate Judge James P. O'Hara should be disqualified from presiding over any further proceedings in this matter.

7.      For all the above reasons and for the reasons stated in the Objections, Plaintiff respectfully ask[20] this Court to Disqualify Honorable Magistrate Judge James P. O'Hara from presiding over any further proceedings in this matter.

---

[16] *T & W Funding Co. XII, L.L.C. v. Pennant Rent-A-Car Midwest, Inc.*, <u>210 F.R.D. 730</u> (2002),
[17] <u>ECF No. 38, p. 4</u>, ¶ 2, Lines 3-4; p. 5, ¶ 1, Line 1. Magistrate's Order Denying Plaintiff's Motion To Disqualify Magistrate.
[18] *Id*; p. 5, ¶ 1, Lines 1-3.
[19] *Id*; p. 5, ¶ 1, Lines 3-4.
[20] Pursuant to <u>28 U.S.C. § 455(a)</u>.

Respectfully submitted,

Dated: November 13, 2020

_____

Ganiyu A. Jaiyeola

749 Preserve Circle Drive SE #6

Grand Rapids, Michigan 49548

Tel.: 616.635.4025

ganiyu.jaiyeola@gmail.com

PLAINTIFF

*pro se*

## <u>CERTIFICATE OF SERVICE</u>

Plaintiff hereby certifies that on this 13th day of November, 2020, Plaintiff e-mailed this

document to the District Court Clerk's office where it would be filed using the Court's CM/ECF

system which will automatically send the document to the following Defendants' Attorneys:


Kerri S. Reisdorff

Margaret K. Young

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

4520 Main Street, Suite 400

Kansas City, Missouri 64111

kerri.reisdorff@ogletree.com

margaret.young@ogletree.com


ATTORNEYS FOR DEFENDANT


Respectfully submitted,

_____

Ganiyu A. Jaiyeola


PLAINTIFF

*pro se*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS


GANIYU AYINLA JAIYEOLA,
　　　　　　　　Plaintiff,

v.　　　　　　　　　　　　　　　　Case No.: 2:20-cv-2068-JWB-JPO

GARMIN INTERNATIONAL, INC.,
　　　　　　　　Defendant.


## PLAINTIFFS' OBJECTIONS TO MAGISTRATE JUDGE'S
## ORDER ON MOTION TO RECUSE

　　　　Pursuant to <u>D. Kan. Rule 72.1.4(a)</u> ("Rule 72.1.4(a)"), Plaintiff hereby presents a

Memorandum that contains Plaintiffs' objections to Magistrate Judge James P. O'Hara

("Magistrate") Order DENYING[1] Plaintiff's motion[2] for the Magistrate to disqualify from this

case.  Rule 72.1.4(a) states in part as follows: "The procedure for filing objections to an order of

a magistrate judge in a nondispositive matter follows <u>Fed. R. Civ. P. 72(a)</u>. Such objections must

be made by filing a motion to review the order in question.".  For the reasons stated below,

Plaintiff's Motion should be Granted.

## I.　　　INTRODUCTION

　　　　Plaintiff ("Jaiyeola") is a *pro se*.  In an Order dated February 20, 2020, the Magistrate

Granted[3] Plaintiff's *in forma pauperis*[4] motion but Denied Plaintiff's motion for an Attorney[5].  In

---

[1] <u>ECF No. 38</u>.  Magistrate's Order Denying Plaintiff's Motion to Disqualify Magistrate.
[2] <u>ECF No. 35</u>.  Plaintiff's Motion to Disqualify Magistrate.
[3] <u>ECF No. 6</u>, Magistrate Order: Plaintiff *in forma pauperis* Granted, Appointment of Attorney Denied.
[4] <u>ECF No. 3</u>, Plaintiff Motion: *in forma pauperis* Status.
[5] <u>ECF No. 4</u>, Plaintiff Motion: Appointment of an Attorney.

*Hall v. Witteman*,[6] this Court stated that "*Pro se* complaints, however inartfully pleaded, must be liberally construed, and are held to less stringent standards than formal pleadings drafted by lawyers. *Erickson v. Pardus*, ___ U.S. ___, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007). See *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005)……".  The Sixth Circuit asserted that "We recognize that *pro se* litigants impose a burden on the courts and that clients are usually better off if represented by counsel."[7].  The U.S. Supreme Court has stated that *pro se*[8] pleadings and motions should be viewed liberally and held to a lesser standard than those drafted by Attorneys.

This is an employment discrimination lawsuit[9] in which Garmin International, Inc. ("Garmin"), by failing to hire Jaiyeola (for the "Advanced Materials Engineer - Metals-19001CL"[10] position he applied and interviewed for over the phone and on-site at Garmin's Headquarters/Manufacturing Center in Olathe, Kansas) violated Jaiyeola's rights under Title VII of the Civil Rights Act of 1964, as amended ("Title VII" – Race (African American), Color (Black), and National Origin (Nigerian)), 29 U.S.C. § 621, et seq. (Age Discrimination in Employment Act, as amended ("ADEA"), 42 U.S.C. §12112(b)(4) (Disability Association Discrimination - Title I of the Americans with Disabilities Act ("ADA")), The Kansas Age Discrimination in Employment Act[11] (Chapter 44, Art. 11, K.S.A., and specifically within the meaning of subsection (a)(1) of Section 44-1113 of said Act - "KADEA") and 42 U.S.C. § 1983 (Denial of Due Process – "Due Process").  Garmin is also liable for discrimination under Section

---

[6] *Hall v. Witteman*, 569 F. Supp. 2d 1208 (D. Kan. 2008).
[7] *King v. Curtis*, No. 14-2614 (6th Cir. 2015).
[8] *Haines v. Kerner*, 404 U.S. 520 (1971).
[9] ECF No. 1, pp. 1-21. Garmin's Complaint.
[10] ECF No. 1-17, p. 2. Garmin's Human Resources Email Stating That Plaintiff Was Not Hired.
[11] http://www.kslegislature.org/li/b2019_20/statute/044_000_0000_chapter/044_011_0000_articl e/044_011_0013_section/044_011_0013_k/

703(a) of Title VII because the fact that Jaiyeola was not hired by Garmin was based on the influence of a Garmin employee, Mr. Jeff Minelli (Garmin's Director of Mechanical Engineering), with a discriminatory motive; Subordinate Bias Liability ("cat's paw" theory of liability)[12].  Defendant's motion to dismiss the 42 U.S.C. § 1983 claim was granted by the Court but the pleading (in the same Defendant's motion) to dismiss the Subordinate Bias Liability claim was Denied[13].

Dr. Min Kao (**Male, Asian American - originally from Taiwan**; East Asia) co-founded Garmin with Gary Burrell (**Male, White American**) in October 1989.  Kao, currently the Executive Chairman of Garmin, "…led the development of the first GPS navigator to be certified by the FAA."[14] and for all intents and purposes the GPS technology brain for the establishment of Garmin.

A diversity rating report on Garmin concluded that "Diverse employees at Garmin International score the company 64/100 across various culture categories, placing Garmin International in the bottom 45% of companies in the United States with 10,000+ Employees for Comparably's diversity score.  The Diversity score provides insights into how diverse employees feel and rate their work experience at Garmin International across various culture dimensions."[15].  In comparison, Trimble (https://www.trimble.com/), a Garmin competitor, scored "77/100"[16] and placed at "top 10%"[17].

---

[12] *Equal Employment Opportunity Commission v. BCI Coca-Cola Bottling Company of Los Angeles*, 450 F. 3d 476 (10th Cir. 2006).
[13] ECF No. 17, pp. 4-6. Violation of Title VII Based on Subordinate Bias Liability.
[14] Garmin Executive Team: https://www.garmin.com/en-US/company/leadership/executive/
[15] https://www.comparably.com/companies/garmin-international/diversity (as it appeared on October 28, 2020).
[16] https://www.comparably.com/companies/trimble/diversity (as it appeared on October 28, 2020).
[17] *Id.*

**Garmin's significantly low Diversity Rating (for an American multinational technology company) is strongly confirmed by the multiple employment discrimination lawsuits against Garmin in the United States since 2009 to date**.  A former **Female** Garmin employee stated the following in her Complaint: "This is an employment case based upon and arising under the **Family and Medical Leave Act**, as amended, 29 U.S.C. § 2611 et seq. ("FMLA"); the **Americans with Disabilities** Act, 42 U.S.C. § 12101 et seq. ("ADA") the **Age Discrimination** in Employment Act, 29 U.S.C. § 621 et seq. ("ADEA")"[18].  In 2009[19] and 2010[20], **failure-to-hire employment discrimination lawsuits** based on "Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, et seq., for employment discrimination on the basis of **race, color, religion, gender, or national origin**." and "Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §§ 621, et seq., for employment discrimination on the basis of age (age 40 or older)." were filed against Garmin.  In 2017, a Garmin employee filed an Equal Employment Opportunity Commission ("EEOC") charge of discrimination based on "**race, sex and national origin discrimination** and **retaliation** under Title VII"[21] against Garmin **after working for Garmin for 11 years**: **1.)** "**Plaintiff is a black female from Brazil, South America**. She has been a **naturalized citizen of the United States** since 2009."[22]; **2.)** "**Garmin's culture shows a preference for white employees and male employees**. For example, in July 2016, **a Garmin employee sent an email asking for hand models,**

---

[18] *Peterson v. Garmin International, Inc.*, No. 2:09-cv-02659-JAR (D. Kan. Dec. 22, 2009); ECF No. 1, p. 1 at ¶ "1".

[19] *Leo v. Garmin Int'l, Inc.*, No. 2:09-cv-02139-KHV (D. Kan. 2009), ECF No. 1, p. 1.

[20] *Id.*, No. 2:10-cv-02495-JTM-DJW (D. Kan. 2010), ECF No. 1-1, p. 1.

[21] *Antunes v. Garmin International, Inc.*, No. 2:18-cv-02697-JAR-KGG (D. Kan. Dec. 18, 2018), ECF No. 1, ¶ 9.

[22] *Id*; ¶ 12.

4

specifically **Caucasian hand models.**"[23]; **3.)** "Garmin's selection procedures and practices resulted in **a workforce at its headquarters in 2017 that was eighty-two percent (82%) white, two and one-half percent (2.5%) black and two and two-tenths percent (2.2%) Hispanic.**"[24]; and **4.)** "Garmin's selection procedures and practices resulted in **a workforce at its headquarters in 2017 that was seventy-seven percent (77%) male and twenty-three percent (23%) female.**"[25].

Plaintiff interviewed[26] onsite at Garmin Headquarters/Manufacturing Center in Olathe, Kansas, on August 14, 2019 and noticed the following: **1.)** The Senior Technical Recruiter who interviewed Plaintiff over the phone and onsite was a **White Female**; **2.)** Plaintiff was given a tour of Garmin's facilities by a **White Female**; **3.)** The Technical Team that interviewed Plaintiff were **8 White Males**, and **4.)** The Garmin Engineers that attended Plaintiff's PowerPoint presentation were **14 White Males (93%)** and **1 White Female (7%)**.

## II.      ARGUMENT

"…there are two reasons for granting a motion for recusal: (1) the judge has a personal bias or prejudice towards a party, see 28 U.S.C. § 144, [28 U.S.C. §] 455(b)(1); or (2) the judge's impartiality might reasonably be questioned, see 28 U.S.C. § 455(a)."[27]. ""[U]nder § 455(a), a judge should be disqualified only if it appears that he or she harbors an aversion, hostility or disposition of a kind that a fair-minded person could not set aside when judging the dispute." *Liteky v. United States*, 510 U.S. 540, 558 (1994) (Kennedy, J., concurring in the judgment)."[28]. "The Court exercises

---

[23] *Id*; ¶ 26.
[24] *Id*; ¶ 45.
[25] *Id*; ¶ 47.
[26] ECF No. 1-14, p. 2.  Plaintiff's Interview Schedule on August 14, 2019.
[27] *Lynn v. Lundry*, No. 5:20-cv-03116-EFM, Document 21 (D. Kan. June 17, 2020).
[28] *Burke v. Regalado et al.*, No. 18-5042 (10th Cir. 2019).

discretion in deciding whether to recuse. See *Weatherhead v. Globe Int'l, Inc.*, 832 F.2d 1226, 1227 (10th Cir. 1987)."[29].

Even though not required under 28 U.S.C. § 455(a), "A judge who is the subject of a disqualification motion may transfer the matter to another judge for decision. 13D Charles Alan Wright & Arthur R. Miller et al., Federal Practice and Procedure § 3550 (3d ed. 2008);....("[T]he judge would have been well-advised either to bow out of the case or to ask that the recusal motion be assigned to a different judge for hearing."....)."[30].   Plaintiff's motion that the Magistrate Denied was pursuant to 28 U.S.C. § 455(a) and the motion was decided on by the Magistrate who was the subject of the disqualification motion.

"Pursuant to D.Kan.Rule 72.1.4, the procedure for obtaining review of a magistrate's order in a nondispositive matter is set forth in Fed.R.Civ.P. 72(a). Under Rule 72(a), "[t]he district judge to whom the case is assigned shall consider such objections and shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law." The clearly erroneous standard requires the court to affirm the magistrate judge's order unless it has the definite and firm conviction from all the evidence that error has occurred. [See *Ocelot Oil Corp. v. Sparrow Industries*, 847 F.2d 1458, 1464 (10th Cir.1988) (quoting *United *733States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948)). See also *Smith v. MCI Telecomm. Corp.*, 137 F.R.D. 25, 27 (D.Kan.1991) ("Because a magistrate is afforded broad discretion in the resolution of nondispositive discovery disputes, the court will generally grant the magistrate great deference and overrule the magistrate's determination only if

---

[29] *Zhu v. Federal Housing Finance Board, et al.*, No. 2:04-cv-02539, Document 501 (D. Kan. July 19, 2007).
[30] *Burke*.

the discretion is clearly abused.")]"[31].  ""A district court abuses its discretion if it applies an incorrect legal standard, applies the law in an unreasonable or incorrect manner, follows improper procedures in making a determination, or makes findings of fact that are clearly erroneous," *Thomas v. Blue Cross & Blue Shield Ass'n*, 594 F.3d 814, 821 (11th Cir. 2010) (internal quotation marks omitted), and also "when it misconstrues its proper role, ignores or misunderstands the relevant evidence, and bases its decision upon considerations having little factual support.'" *Jove Eng'g, Inc. v. IRS*, 92 F.3d 1539, 1546 (11th Cir. 1996) (quoting *Arlook v. S. Lichtenberg & Co.*, 952 F.2d 367, 374 (11th Cir. 1992))."[32].  ""An abuse of discretion is defined in this circuit as a judicial action which is arbitrary, capricious, or whimsical." *Pelican Prod. Corp. v. Marino*, 893 F.2d 1143, 1146 (10th Cir. 1990)."[33].  "A court abuses its discretion when it "clearly err[s] or venture[s] beyond the limits of permissible choice." *Hancock v. AT&T Co.*, 701 F.3d 1248, 1262 (10th Cir. 2012) (internal quotation marks omitted)."[34].

Plaintiff contends that the Magistrate's November 9, 2020 Order is clearly erroneous because it is based on THREE erroneous factual determinations: (1) Plaintiff used Magistrate's "…denial of [Plaintiff's] request for appointed counsel…"[35] as a basis for judicial disqualification; (2) Plaintiff is relying on "...[Magistrate's] statements from the scheduling conference, [which are] conclusory allegations of bias...."[36]; and (3) Plaintiff is relying on "...rumor, speculation, beliefs, suspicion or opinion...."[37].

---

[31] *T & W Funding Co. XII, L.L.C. v. Pennant Rent-A-Car Midwest, Inc.*, 210 F.R.D. 730 (2002),
[32] *FTC v. AbbVie Products LLC*, No. 12-16488 (11th Cir. Mar. 21, 2013).
[33] *Stringfellow v. Brown*, No. 95-7145 (10th Cir. Jan. 10, 1997); *Bethscheider v. Westar Energy*, No. 19-3243 (10th Cir. July 14, 2020).
[34] *Deere v. XPO Logistics Freight, Inc.; XPO Logistics, Inc.*, No. 19-1069 (10th Cir. Jan. 9, 2020).
[35] ECF No. 38, p. 4, ¶ 2, Lines 3-4; p. 5, ¶ 1, Line 1. Magistrate's Order Denying Plaintiff's Motion To Disqualify Magistrate.
[36] *Id*; p. 5, ¶ 1, Lines 1-3.
[37] *Id*; p. 5, ¶ 1, Lines 3-4.

**A.**   **Plaintiff Did Not Contend That Magistrate's "…denial of [Plaintiff's] request for appointed counsel…"[38] Constitute a Basis for Judicial Disqualification of The Magistrate**

The Magistrate asserts "To the extent plaintiff cites the undersigned's denial of his request for appointed counsel, the fact that a judge has made an adverse ruling is not a basis for disqualification. [*Kalashnikov v. Herbert*, No. 2:19-CV-00411-CW-PMW, 2020 WL 1030726, at \*1–2 (D. Utah Mar. 3, 2020) (citing *Liteky v. United States*, 510 U.S. 540, 555 (1994) ("Judicial rulings alone almost never constitute a valid basis for a bias or partiality motion")).]".   In *Kalashnikov*, the Plaintiff filed a Motion for disqualification (of a District Judge[39] and a Chief Magistrate Judge[40]) and that Plaintiff's stated basis for the disqualification motion was that "Plaintiff filed a motion for service of process....which the court denied ...."[41].   In this instant, Plaintiff DID NOT contend that this Magistrate's "denial of [Plaintiff's] request for appointed counsel" constitute a basis for disqualification of the Magistrate. First, Plaintiff cited the Magistrate's "denial of [Plaintiff's] request for appointed counsel" motion as well as the Magistrate's granting of Plaintiff's motion for *in forma pauperis*.   Second, Plaintiff cited the two motions in order to provide background information for the Motion and Memorandum for the motion for disqualification.   "A finding is "clearly erroneous" when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."[42].   The Magistrate's assertion that "To the extent plaintiff cites the undersigned's denial of his request for appointed counsel.." constitute a basis for Plaintiff's motion for disqualification is "clearly erroneous".   "A district court abuses its discretion if it.......or makes

---

[38] ECF No. 38, p. 4, ¶ 2, Lines 3-4; p. 5, ¶ 1, Line 1. Magistrate's Order Denying Plaintiff's Motion To Disqualify Magistrate.
[39] *Al Kalashnikov v. Herbert*, No. 2:19-cv-411 (D. Utah Mar. 4, 2020).
[40] *Kalashnikov*.
[41] *Id*.
[42] *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948).

findings of fact that are clearly erroneous," *Thomas v. Blue Cross & Blue Shield Ass'n*, <u>594 F.3d 814,</u> <u>821</u> (11th Cir. 2010). ""An abuse of discretion is defined in this circuit as a judicial action which is arbitrary, capricious, or whimsical." *Pelican Prod. Corp. v. Marino*, <u>893 F.2d 1143, 1146</u> (10th Cir. 1990)."[43]. This Magistrate abused his discretion.

### B.   **Magistrate Questioning Regarding Deposition**

"Quercia [*Quercia v. United States*, <u>289 U.S. 466, 470</u>, <u>53 S.Ct. 698</u>, <u>77 L.Ed. 1321</u> (1933)] stands for the...proposition that **a judge may not "add to" the evidence by becoming the source of information not in the record**. See id. (holding that **the judge "may not assume the role of…[Defendant Attorneys]"**)."[44]. "An important part of the City's overall defense was to **undermine [Plaintiff]'s credibility** by.....**portraying him as a chronic litigant**."[45]. While ""[plaintiff's] litigiousness** may have some slight probative value, but that value is outweighed by the **substantial danger of**...bias against the chronic litigant. **The trial court has a duty to prevent exploitation of this prejudice**. . . ."[46]; "....**improper questioning about a plaintiff's past litigation**....require a new trial—**entitles him to a reversal of the jury verdict**."[47]. While "Judicial questioning assists...jury in its search for the truth by "supplement[ing] the parties' evidence"...."[48]. or provide "additional evidence" [*United States v. Campino*, <u>890 F.2d 588, 592</u> (2<u>d Cir. 1989</u>)], **judicial questioning "for the truth"** or "additional evidence" **at a Rule 16 conference negatively impacts Plaintiff's due process rights,** provide **"probative value"** to the Defendant, create **"bias against the chronic litigant"**, and create a situation for **"punitive and vindictive use of judicial power"**[49];

---

[43] *Stringfellow v. Brown*, No. 95-7145 (10th Cir. Jan. 10, 1997); *Bethscheider v. Westar Energy*, No. 19-3243 (10th Cir. July 14, 2020).
[44] *U.S. v. Scott*, <u>529 F.3d 1290</u> (10th Cir. 2008).
[45] *Outley v. City of New York*, <u>837 F.2d 587</u> (2<u>d Cir. 1988</u>).
[46] *Id*.
[47] *Id*.
[48] *People v. Elliot*, No. 344740 (Mich. Ct. App. Mar. 5, 2020).
[49] Inquiry Concerning A Judge, No. 07-64 Re: Ralph E. Eriksson, Case No. SC07-1648 (FL

9

a judicial misconduct.  "There is certainly a distinction to be drawn between cases of **excessive judicial intervention in the questioning of [Plaintiff]**, and cases in which a...**judge makes comments...that appeal to bias or prejudice**. There can be no doubt that the latter sort of **judicial misconduct** is a more potent **contaminant**."[50].  "We do not suggest that a **[Judge's] curative [comments] always will suffice to obviate the adverse effect of a judge's improper questioning**."[51].  "The Sheriffs also contend that **Judge....comments....revealed enough bias against them to deprive them of due process**."[52]. ""The **Due Process** Clause entitles a person to an impartial and disinterested [Court] in both civil and criminal cases. This requirement. . . . **preserves both the appearance and reality of fairness**, generating the feeling, so important to a popular government, that justice has been done. . . ." *Marshall v. Jerrico, Inc.*, <u>446 U.S. 238, 242</u>, <u>100 S.Ct. 1610</u>, <u>64 L.Ed.2d 182</u> (1980) (quotation omitted). "**To demonstrate a violation of due process because of judicial bias, a claimant must show either actual bias or an appearance of bias**." *United States v. Nickl*, <u>427 F.3d 1286, 1298</u> (10th Cir. 2005) (citation omitted)."[53].

By questioning Plaintiff about Plaintiffs' "other employment cases"[54] and Plaintiff's "financial status"[55] during the Rule 16 phone conference of September 29, 2020 (that the Defendants' Attorneys participated in) the Magistrate (intentional or not) became "the source of information not in the record"[56], portrayed Plaintiff as a "chronic litigant"[57], denied Plaintiff "due process"[58], denied

---

Supreme CT., February 11, 2010).
[50] *Rush v. Smith*, <u>56 F.3d 918, 922</u> (8th Cir. 1995).
[51] *United States v. Morgan, et al.*, <u>376 F.3d 1002</u> (9th Cir. 2004).
[52] *Burke*.
[53] *U.S. v. Scott*, <u>529 F.3d 1290</u> (10th Cir. 2008).
[54] <u>ECF No. 36-2, p. 23</u>, Line 8.  September 29, 2020 Court Reporter Certified Transcript of Parties Rule 16 Telephone Conference With Magistrate Judge James P. O'Hara.
[55] *Id*, p. 24, Line 10.
[56] *Scott*.
[57] *Outley*.
[58] *Burke*.

Plaintiff legal right[59], and violated Plaintiff's privacy.  **When questioning Plaintiff on deposition, the Magistrate "badgering was so open"[60] and displayed "deep-seated favoritism or antagonism that would make fair judgment impossible"[61].  "…"badgering" does not lend itself to tables and charts.  It is uniquely one of those things any person can recognize."[62].** Surprisingly, t**he Magistrate did NOT question *pro se* Plaintiff on *pro se* Plaintiff's Attorney search**.  ""An abuse of discretion is defined in this circuit as a judicial action which is arbitrary, capricious, or whimsical." *Pelican Prod. Corp. v. Marino*, <u>893 F.2d 1143, 1146</u> (10th Cir. 1990)."[63].  The Magistrate abused his discretion.

### C.    The Court Should Review Magistrate's Rule 16 Conference With Plaintiff and Defendant Attorneys

Plaintiff respectfully requests that this Court review "the audio recording of the…scheduling conference"[64], the Court Reporter Certified Transcript[65] of the scheduling conference, Plaintiff's Motion[66] (and Memorandum[67]) for the Magistrate to recuse from this case, and the Magistrate's Order[68] Denying Plaintiff's Motion for the Magistrate to Recuse in order for the Court to determine if "..plaintiff's arguments are unsubstantiated suggestions of personal bias and prejudice."[69].  Plaintiff

---

[59] *In re estate of FOLWELL*, <u>68 N.J. Eq. 728, 731</u> (N.J. 1905)

[60] *Jones, et. al. v. Denver Post Corp.*, No. 98-1458 (10th Cir. 2000).

[61] *Liteky*, <u>510 U.S. at 555</u>.

[62] *Jones, et. al.*.

[63] *Stringfellow v. Brown*, No. 95-7145 (10th Cir. Jan. 10, 1997); *Bethscheider v. Westar Energy*, No. 19-3243 (10th Cir. July 14, 2020).

[64] <u>ECF No. 38, p. 5</u>, ¶ 2, Lines 1-2. Magistrate's Order Denying Plaintiff's Motion to Disqualify Magistrate.

[65] <u>ECF No. 36-2</u>.  September 29, 2020 Court Reporter Certified Transcript of Parties Rule 16 Telephone Conference With Magistrate Judge James P. O'Hara.

[66] <u>ECF No. 35</u>.  Plaintiff's Motion to Disqualify Magistrate.

[67] <u>ECF No. 36</u>.  Plaintiff's Memorandum in Support of Plaintiff's Motion to Disqualify Magistrate.

[68] <u>ECF No. 38</u>.  Magistrate's Order Denying Plaintiff's Motion to Disqualify Magistrate.

[69] *Id*, p. 5, ¶ 2, Lines 2-3.

respectfully suggests the following review factors: "(1) the nature of the **[Magistrate]'s [personal bias and prejudice]** conduct, (2) the **tone and demeanor of the [Magistrate]**, (3) the scope of the **[Magistrate]**'s [personal bias and prejudice] conduct within the context of the length of the [scheduling conference] and the complexity of the issues, (4) **whether the [Magistrate] directed the [personal bias and prejudice] conduct at one [party] more than the other**, (5) **the presence of….curative [comments by the Magistrate] [during the scheduling conference] or [at] the end of the [scheduling conference]**, and (6) other relevant factors relevant to the determination whether the [personal bias and prejudice] **conduct indicated [Magistrate's] [personal bias and prejudice]**. [*People v Swilley*, 504 Mich 350, 370; 934 NW2d 771 (2019).] at 371."[70]

In a motion to recuse against a District Judge, the Tenth Circuit asserted that "To disqualify a judge under § 455, a movant must show that a reasonable person, knowing all of the circumstances, would harbor doubts about the judge's impartiality.  Rumor, speculation, and opinions are not sufficient.  See *Green v. Branson*, 108 F.3d 1296, 1305 (10th Cir.1997)."[71]  Plaintiff is NOT relying on "...rumor, speculation, beliefs, suspicion or opinion...."[72]  Plaintiff has shown that "…a reasonable person, knowing all the relevant facts **[from the audio recording and the Court Reporter Certified Transcript of the scheduling conference]**, would harbor doubts about the [Magistrate Judge James P. O'Hara]'s impartiality."[73].

**III.    CONCLUSION**

For all the above reasons, Plaintiff respectfully ask[74] this Court to Disqualify Magistrate

---

[70] *People v. Elliot*, No. 344740 (Mich. Ct. App. Mar. 5, 2020).
[71] *Cauthon v. Rogers*, No. 96-3333 (10th Cir. 1997).
[72] ECF No. 38, p. 5, ¶ 1, Lines 3-4. Magistrate's Order Denying Plaintiff's Motion To Disqualify Magistrate.
[73] *Nichols v. Alley*, 71 F.3d 347, 350 (10th Cir. 1995).
[74] Pursuant to 28 U.S.C. § 455(a).

Judge James P. O'Hara from presiding over any further proceedings in this matter.

Respectfully submitted,

Dated: November 13, 2020

_____

Ganiyu A. Jaiyeola

749 Preserve Circle Drive SE #6

Grand Rapids, Michigan 49548

Tel.: 616.635.4025

ganiyu.jaiyeola@gmail.com

PLAINTIFF

*pro se*

13

## **CERTIFICATE OF SERVICE**

Plaintiff hereby certifies that on this 13th day of November, 2020, Plaintiff e-mailed this

document to the District Court Clerk's office where it would be filed using the Court's CM/ECF

system which will automatically send the document to the following Defendants' Attorneys:


Kerri S. Reisdorff

Margaret K. Young

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

4520 Main Street, Suite 400

Kansas City, Missouri 64111

kerri.reisdorff@ogletree.com

margaret.young@ogletree.com


ATTORNEYS FOR DEFENDANT


Respectfully submitted,

_____

Ganiyu A. Jaiyeola


PLAINTIFF

*pro se*

14

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**GANIYU AYINLA JAIYEOLA,**

    **Plaintiff,**

    **v.**

                             **Case No. 2:20-cv-2068-HLT**

**GARMIN INTERNATIONAL, INC.,**

    **Defendant.**

### ORDER

Pro se plaintiff Ganiyu Ayinla Jaiyeola[1] asserts various employment-discrimination claims against Defendant Garmin International, Inc. After a Rule 16 scheduling conference, Plaintiff moved to disqualify Chief Magistrate Judge James O'Hara under 28 U.S.C. § 455(a) (Doc. 35). Magistrate Judge O'Hara denied the motion (Doc. 38), and Plaintiff timely filed a motion and an objection (Docs. 42 and 43).[2]

Because Plaintiff objects to a non-dispositive order, the Court's scope of review is whether the order has been shown to be "clearly erroneous or contrary to law." *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1461-62 (10th Cir. 1988). Under this standard, a district court affirms the decision of a magistrate judge unless "on the entire evidence [the court] is left with the definite and firm conviction that a mistake has been committed." *Id.* at 1464 (internal quotation and citation omitted).

---

[1]    The Court is mindful of Plaintiff's pro se status and liberally construes his pleadings. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). But the Court will not take on the role of advocate. *Id.*

[2]    The Court understands these documents to be related, much like a motion and supporting memorandum. Even if considered independently, however, the outcome does not change.

The substantive issue in the underlying motion is disqualification under 28 U.S.C. § 455. This statute states that: "Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." The test in the Tenth Circuit is "whether a reasonable person, knowing all the relevant facts, would harbor doubts about the judge's impartiality." *United States v. Cooley*, 1 F.3d 985, 993 (10th Cir. 1993) (internal quotation and citation omitted).

Magistrate Judge O'Hara applied this standard and denied Plaintiff's motion. Plaintiff contends that Magistrate Judge O'Hara's order is clearly erroneous because it based on three erroneous factual determinations. Doc. 43 at 7. After careful review (and even when reviewed de novo), the Court disagrees, denies the motion, and overrules the objection.

First, Plaintiff contends that Magistrate Judge O'Hara erroneously determined that Plaintiff sought disqualification because he denied Plaintiff's motion for appointment of counsel. Plaintiff explains that the denial of appointment of counsel was not a basis for disqualification and was cited to provide background information. But consideration of an additional basis for disqualification does not render Magistrate Judge O'Hara's determination clearly erroneous or undermine his resolution of Plaintiff's motion. *See Cooley*, 1 F.3d at 992 (explaining that judges have a continuing duty to recuse when law and facts require it). Indeed, the standard under § 455 requires him to consider all relevant facts. Thus, Plaintiff's first argument is unpersuasive.

Second, Plaintiff contends that Magistrate Judge O'Hara erroneously determined that Plaintiff's motion relied on statements at the scheduling conference that were conclusory allegations of bias. Doc. 43 at 7. Plaintiff explains that he sought disqualification because, at the scheduling conference, Magistrate Judge O'Hara asked him about his other employment cases and questioned him about depositions. Plaintiff contends these questions attempted to paint him as a

chronic litigant, revealed his private information, constituted badgering, and reflected a deep-seated favoritism or antagonism that would make fair judgment impossible. Plaintiff argues that these questions and his concerns are not conclusory allegations of bias and invites the Court to review the audio recording and written transcript.

The Court again disagrees and finds that Magistrate Judge O'Hara's determination is not clearly erroneous. In his original motion, Plaintiff highlighted questions about the damage cap, his "other employment cases," and his "financial status." He then cited several cases, quoted portions of the transcript, and concluded that Magistrate Judge O'Hara displayed deep antagonism toward him. Magistrate Judge O'Hara considered these arguments and concluded that his questions and statements were appropriate. He noted that his comments about the damage cap came about in the context of discussing alternative dispute resolution and his advice to Plaintiff that seeking damages well in excess of the cap would be unproductive. He also explained that he raised Plaintiff's pro se status as it relates to the substantial financial expense of taking depositions and confirmed that Plaintiff was prepared and able to take on that expense as part of discovery. Magistrate Judge O'Hara ultimately concluded that Plaintiff had lodged conclusory allegations of bias that were unsupported by the record. Having reviewed the audio recording, the transcript, and the record, the Court finds that Magistrate Judge O'Hara's determination on this issue is not clearly erroneous. Plaintiff's second argument is unpersuasive.

Third, Plaintiff contends that Magistrate Judge O'Hara clearly erred when he concluded that Plaintiff was relying on rumor, speculation, beliefs, suspicion or opinion to seek disqualification. Doc. 43 at 7. Plaintiff explains that a reasonable person knowing all the relevant facts from the scheduling conference (including the audio recording) would harbor doubts about Magistrate Judge O'Hara's impartiality. Magistrate Judge O'Hara explained why he asked during

the scheduling conference the questions challenged by Plaintiff and concluded these issues do not merit disqualification. Having reviewed the recording, the transcript, and the record, the Court again finds that Magistrate Judge O'Hara's determination on this issue is not clearly erroneous. Plaintiff's third and final argument is unpersuasive.

The Court finds that Plaintiff has not shown that Magistrate Judge O'Hara's order was clearly erroneous or contrary to the law. His motion is denied, and his objection is overruled. To alleviate any lingering concern, the Court finds that disqualification under § 455 is not warranted even under a de novo standard of review. The Court reviewed the entire record and listened to the audio recording with attention to the areas identified by Plaintiff. Magistrate Judge O'Hara asked about mediation, urged Plaintiff to educate himself on the sources of damages, and noted that demands exceeding damage caps are unproductive. He then shifted gears to discovery and discussed the protective order, expectations on communication between the parties, and deadlines. Magistrate Judge O'Hara made passing references to Plaintiff's prior litigation experience but, in context, these comments appear designed to highlight possible different practices in the District of Kansas, determine Plaintiff's familiarity with aspects of litigation, or set expectations. The comments did not demean Plaintiff or characterize him as persistent litigant. Toward the end of the conference, Magistrate Judge O'Hara probed about deposition and deposition costs. In context, his questions and comments seem tailored to prompt Plaintiff to consider Plaintiff's approach to deposition practice and did not reveal any specific financial information.

In sum, Magistrate Judge O'Hara asked proper questions, made appropriate observations about the case, did not reveal the specifics of Plaintiff's financial information, asked suitable questions about the means and manner of discovery, including depositions, and appropriately set expectations for case. His tone was professional and occasionally firm but not disrespectful or

inappropriate. And Plaintiff's tone likewise remained professional throughout. After considering the facts and subtleties of this case, the Court cannot conclude that a reasonable person in possession of all the facts would harbor doubts about Magistrate Judge O'Hara's impartiality. On this record, a different outcome would convert the "reasonable person" from a thoughtful observer to a hypersensitive person and would broaden the § 455 standard to mandate disqualification on the merest perceived suggestion of bias or prejudice. *See Cooley*, 1 F.3d at 993 (explaining that the standard "must not be so broadly construed that it becomes, in effect, presumptive, so that recusal is mandated upon the merest unsubstantiated suggestion of personal bias or prejudice" (internal quotation and citation omitted)). The Court denies the motion and overrules the objection.

THE COURT THEREFORE ORDERS that Plaintiff's Motion Regarding Objection (Doc. 42) is DENIED.

THE COURT FURTHER ORDERS that Plaintiff's Objection (Doc. 43) is OVERRULED.

IT IS SO ORDERED.

Dated: December 16, 2020                    /s/ *Holly L. Teeter*
                                            HOLLY L. TEETER
                                            UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

GANIYU AYINLA JAIYEOLA,
                Plaintiff,

v.                                  Case No.: 2:20-cv-2068-HLT-JPO

GARMIN INTERNATIONAL, INC.,
                Defendant.


**PLAINTIFF'S MOTION FOR EXPEDITED HEARING AND MOTION FOR
PROTECTIVE ORDER EXCLUDING DEFENDANT REPRESENTATIVES DURING
THE DEPOSITION OF FACT WITNESSES**

This is an employment discrimination lawsuit[1] in which Garmin International, Inc.

("Garmin"), by failing to hire Plaintiff ("Jaiyeola") (for the "Advanced Materials Engineer -

Metals-19001CL"[2] position he applied and interviewed for over the phone and on-site at

Garmin's Headquarters/Manufacturing Center in Olathe, Kansas) violated Jaiyeola's rights under

Title VII of the Civil Rights Act of 1964, as amended ("Title VII" – Race (African American),

Color (Black), and National Origin (Nigerian)), 29 U.S.C. § 621, et seq. (Age Discrimination in

Employment Act, as amended ("ADEA"), 42 U.S.C. §12112(b)(4) (Disability Association

Discrimination - Title I of the Americans with Disabilities Act ("ADA")), The Kansas Age

Discrimination in Employment Act[3] (Chapter 44, Art. 11, K.S.A., and specifically within the

meaning of subsection (a)(1) of Section 44-1113 of said Act - "KADEA") and 42 U.S.C. § 1983

(Denial of Due Process – "Due Process").  Garmin is also liable for discrimination under Section

---

[1] ECF No. 1, pp. 1-21. Plaintiff's Complaint.
[2] ECF No. 1-17, p. 2. Garmin's Human Resources Email Stating That Plaintiff Was Not Hired.
[3] http://www.kslegislature.org/li/b2019_20/statute/044_000_0000_chapter/044_011_0000_article
/044_011_0013_section/044_011_0013_k/

703(a) of Title VII because the fact that Jaiyeola was not hired by Garmin was based on the influence of a Garmin employee, Mr. Jeff Minelli (Garmin's Director of Mechanical Engineering), with a discriminatory motive; Subordinate Bias Liability ("cat's paw" theory of liability)[4].  Defendant's motion to dismiss the 42 U.S.C. § 1983 claim was granted by the Court but the pleading (in the same Defendant's motion) to dismiss the Subordinate Bias Liability claim was Denied[5].

    Plaintiff states as follows:

1.    "As stated in ... Motion for Protective Order regarding .....deposition, pursuant to Fed. R. Civ. P. 26(c)(1)(E), this Court may issue a protective order "to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense, including … designating the persons who may be present while the discovery is conducted." Fed. R. Civ. P. 26(c)(1)(E). Any party to a litigation may move for a protective order under Fed. R. Civ. P. 26(c). *SEC v. Dowdell*, 144 Fed. Appx. 716, 723 (10th Cir. 2005). "[6]

2.    Plaintiff is a *pro se*.  In *Hall v. Witteman*, this Court stated that "*Pro se* complaints, however inartfully pleaded, must be liberally construed, and are held to less stringent standards than formal pleadings drafted by lawyers. *Erickson v. Pardus*, ___ U.S. ___, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007). See *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005)……"[7]. The Sixth Circuit asserted that "We recognize that *pro se* litigants impose a burden on the courts and that clients are usually better off if represented by counsel."[8]  The U.S. Supreme Court has

---

[4] *Equal Employment Opportunity Commission v. BCI Coca-Cola Bottling Company of Los Angeles*, 450 F. 3d 476 (10th Cir. 2006).
[5] ECF No. 17, pp. 4-6. Violation of Title VII Based on Subordinate Bias Liability.
[6] *Surat v. Klamser et al.*, No. 19-cv-0901-WJM-NRN, Document 87 (D. Colo. March 6, 2020).
[7] *Hall v. Witteman*, 569 F. Supp. 2d 1208 (D. Kan. 2008).
[8] *King v. Curtis*, No. 14-2614 (6th Cir. 2015).

stated that *pro se*[9]pleadings and motions should be viewed liberally and held to a lesser standard than those drafted by Attorneys.

       3.     In an email (dated December 29, 2020 and time-stamped 1:21 PM - See Ex A), Plaintiff informed the Defendant that Plaintiff was arranging for the deposition of Mr. John Mudd, a Defendant fact witness.

       4.     In an email (dated December 29, 2020 and time-stamped 1:57 PM – See Ex A), Plaintiff informed the Defendant that "For the deposition of John Mudd or any Garmin employee or even Plaintiff, Plaintiff will object to the presence of ANYONE other than the person being deposed, Plaintiff, or Defendant TWO Attorneys on record. If the Defendant has issue on this, the Defendant should either provide a case law or file a Motion with the Court.".

       5.     In an email (dated December 30, 2020 and time-stamped 10:01 AM – See Ex A), one of the Defendants Attorneys, Ms. Kerri Reisdorff, stated: **"Once he returns I will let you know what days work for Mr. Mudd, myself, and Garmin's representative."**.

       6.     In an email (dated December 30, 2020 and time-stamped 4:07 PM – See Ex A), Plaintiff stated: "..In the Defendants' Attorneys letter ("RE: Outstanding Privilege Log Issues") dated December 17, 2020, **the Defendant confirmed that Document GARMIN 000440 (created on August 14, 2019) involved a "crime-fraud exception"** (*Hale v. Emporia State Univ.*, Case No. 16-cv-4182-DDC-TJJ (D. Kan. Feb. 20, 2018) because **"The partial redaction in this document contains information that was gathered at the direction of Garmin's in-house counsel after Garmin received your complaint of unlawful discrimination on November 22, 2019. Dobbs added to his notes that day for the purpose of providing information to Garmin's in-house counsel to facilitate his efforts to investigate your complaint of unlawful**

---

[9] *Haines v. Kerner*, 404 U.S. 520 (1971).

**discrimination.""**.

7.      On January 4, 2021, Plaintiff and Reisdorff had a phone discussion for 15 minutes regarding the possible presence of a **"Garmin's representative"** at any deposition of fact witnesses in this lawsuit.

8.      Plaintiff and the Defendant could not agree on the possible presence of a **"Garmin's representative"** at any deposition of fact witnesses in this lawsuit.

9.      Pursuant to the meet and confer requirements of <u>Fed. R. Civ. P. 37(a)(1)</u> and <u>D. Kan. Rule 37.2</u>, Plaintiff hereby certifies, consistent with the above facts (See <u>Ex A</u>), that he has in good faith conferred with an Attorney for the Defendant in an effort to resolve the issue of the possible of a **"Garmin's representative"** at any deposition of fact witnesses in this lawsuit without court action.

10.     The first deposition in this lawsuit has been noticed for January 21, 2021.  Plaintiff has noticed the deposition of Garmin fact witness, John Mudd, for January 21, 2021.  Plaintiff is therefore requesting for an expedited hearing of this motion.

11.     For all the above reasons and for the reasons stated in the Memorandum, Plaintiff respectfully ask[10] this Court to enter an Order precluding any "Garmin's representative" from attending the deposition of John Mudd or any deposition of fact witnesses in this lawsuit.

---

[10] Pursuant to <u>Fed. R. Civ. P. 26(c)(1)(E)</u>.

4

Respectfully submitted,

Dated: January 8, 2021

_____

Ganiyu A. Jaiyeola

749 Preserve Circle Drive SE #6

Grand Rapids, Michigan 49548

Tel.: 616.635.4025

ganiyu.jaiyeola@gmail.com

PLAINTIFF

*pro se*

## <u>CERTIFICATE OF SERVICE</u>

Plaintiff hereby certifies that on this 8th day of January, 2021, Plaintiff e-mailed this

document to the District Court Clerk's office where it would be filed using the Court's CM/ECF

system which will automatically send the document to the following Defendants' Attorneys:


Kerri S. Reisdorff

Margaret K. Young

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

4520 Main Street, Suite 400

Kansas City, Missouri 64111

kerri.reisdorff@ogletree.com

margaret.young@ogletree.com


ATTORNEYS FOR DEFENDANT


Respectfully submitted,

_____

Ganiyu A. Jaiyeola


PLAINTIFF

*pro se*

**Index of Exhibit**

**Ex A**     Electronic mails between Plaintiff and Garmin regarding the possible attendance
of Garmin representatives at the deposition of all fact witnesses.

# Ex A



**Ganiyu Jaiyeola <ganiyu.jaiyeola@gmail.com>**

---

## Jaiyeola v. Garmin: Deposition of John Mudd (January 12 to 14, 2021)
21 messages

---

**Ganiyu Jaiyeola** <ganiyu.jaiyeola@gmail.com>                    Tue, Dec 29, 2020 at 1:21 PM
To: "Reisdorff, Kerri S." <kerri.reisdorff@ogletree.com>, "Young, Maggie" <margaret.young@ogletree.com>

Plaintiff is having discussions with Alaris to virtually depose John Mudd for 7 hours on one of the following dates:

January 12, 2021 or January 13, 2021 or January 14, 2021.

**Defendant should pick one of the above dates by January 1, 2021.**

The deposition can take place (subject to Alaris approval) at Defendant's office or Defendants Attorneys' office.

For the deposition, the Defendant must make available ALL the documents that have been produced in this case for documentation by the Court Reporter.

Please let me know if you have any question.


Sincerely,

Ganiyu Jaiyeola, Ph.D., MBA
616 635 4025

---

**Reisdorff, Kerri S.** <kerri.reisdorff@ogletree.com>                    Tue, Dec 29, 2020 at 1:29 PM
To: Ganiyu Jaiyeola <ganiyu.jaiyeola@gmail.com>, "Young, Maggie" <margaret.young@ogletreedeakins.com>

Ganiyu – As we have stated, we requested your deposition and you will be deposed first.  I will get you dates before the end of the week.  As I have also stated, I will be happy to mutually arrange a date for the depositions you would like to take after we set the date for your deposition.


I am still waiting to hear back from you on what depositions you would like to take given that Garmin will not be paying any fees or costs associated with any depositions you intend to take.  From the below,  I am assuming you would like to take Mr. Mudd's deposition.  Is there any others?


Finally, your assertion that Garmin would be responsible for supplying any documents to a court reporter for a deposition you are taking is incorrect.  You are responsible for sending any exhibits you intend to use in any deposition you are taking to both the court reporter and Garmin in advance of the deposition.   Garmin will not be sending any documents to any court reporter in advance of a deposition you are taking.

Case 2:20-cv-02068-HLT-JPO   Document 61-2   Filed 01/08/21   Page 3 of 11

1/7/2021                    Gmail - Jaiyeola v. Garmin: Deposition of John Mudd (January 12 to 14, 2021)
Appellate Case: 21-3114      Document: 010110544162      Date Filed: 07/06/2021      Page: 620

Kerri

**Kerri S. Reisdorff | Ogletree, Deakins, Nash, Smoak & Stewart, P.C.**
4520 Main Street, Suite 400 | Kansas City, MO 64111 | Telephone: 816-410-2245 | Fax: 816-471-3300
kerri.reisdorff@ogletree.com | www.ogletree.com | Bio

**From:** Ganiyu Jaiyeola <ganiyu.jaiyeola@gmail.com>
**Sent:** Tuesday, December 29, 2020 12:21 PM
**To:** Reisdorff, Kerri S. <Kerri.Reisdorff@ogletreedeakins.com>; Young, Maggie <margaret.young@ogletreedeakins.com>
**Subject:** Jaiyeola v. Garmin: Deposition of John Mudd (January 12 to 14, 2021)


*[Caution: Email received from external source]*


[Quoted text hidden]
[Quoted text hidden]

*This transmission is intended only for the proper recipient(s). It is confidential and may contain attorney-client privileged information. If you are not the proper recipient, please notify the sender immediately and delete this message. Any unauthorized review, copying, or use of this message is prohibited.*

---

**Ganiyu Jaiyeola** <ganiyu.jaiyeola@gmail.com>                    Tue, Dec 29, 2020 at 1:57 PM
To: "Reisdorff, Kerri S." <kerri.reisdorff@ogletree.com>
Cc: "Young, Maggie" <margaret.young@ogletreedeakins.com>

Just to be clear:
1. Defendant Garmin can virtually depose Plaintiff any time it wants, so long as Plaintiff gets at least 3 days notice.

2. Plaintiff will depose John Mudd on one of the dates that Plaintiff listed above.  Plaintiff expects the Defendant to pick a date by January 1, 2021.

3. Plaintiff will provide the documents that Plaintiff needs to the Court Reporter that Plaintiff will hire.  The Court Reporter will ALLOW John Mudd to PREVIEW any document that he is going to be deposed on DURING THE DEPOSITION.

**4. John Mudd will be deposed on the DOCUMENTS ON RECORD AND the ANSWERS HE GIVES (UNDER OATH) DURING THE DEPOSITION.**

5. Plaintiff will NOT provide ANY document that Plaintiff will depose John Mudd on to Garmin BEFORE THE DEPOSITION.  If the Defendant has any case law that says to the contrary, please produce it or just file a Motion with the Court.

6. Plaintiff will depose as many Garmin employees as Plaintiff deems fit; within the guidelines of the Scheduling Order in this case.  Plaintiff will give the Defendant at least 3 days notice BEFORE EACH deposition.

7. For the deposition of John Mudd or any Garmin employee or even Plaintiff, Plaintiff will object to the presence of ANYONE other than the person being deposed, Plaintiff, or Defendant TWO Attorneys on record.  If the Defendant has issue on this, the Defendant should either provide a case law or file a Motion with the Court.

Sincerely,

Ganiyu Jaiyeola, Ph.D., MBA
616 635 4025

[Quoted text hidden]

---

**Reisdorff, Kerri S.** <kerri.reisdorff@ogletree.com>                     Tue, Dec 29, 2020 at 2:39 PM
To: Ganiyu Jaiyeola <ganiyu.jaiyeola@gmail.com>
Cc: "Young, Maggie" <margaret.young@ogletreedeakins.com>

Ganiyu – I think we got off track a bit.  I am happy to schedule a short call to discuss.  But, I am hopeful that the following comments will assist the parties in moving forward:

-    As the parties stated in their Report of Parties' Planning conference, we agreed to confer in good faith regarding mutually agreeable dates for any deposition.  And we are certainly committed to doing so.

-    You might recall that in our extended call prior to the holiday, we discussed that your deposition would occur first and then we could schedule depositions that you would like to take (that's when you agreed to send us a list). In that call I also made you aware that I was booked solid in January with other previously planned work commitments. During that call you did not object to conducting depositions in February.

-    I am not available on the 3 dates you proposed in January.  I am willing to send you a list of dates that I am available and the dates that Mr. Mudd is available to be deposed.  From there we can get a date set.

-    As for your deposition, I would certainly never notice up your deposition with only 3 –days' notice as it would be impossible to secure a court reporter with short a time frame, would be unprofessional towards you, and would not allow the parties to arrange for virtual office space and the delivery and receipt of exhibits to both the court reporter and the opposing party (see note below).

-    You note below that the deposition can occur at Defendant's offices.  Please note that our offices are generally note open to visitors due to the pandemic.  As such, we will need to arrange a location where the witness can be and where I can be (and that may not be in the same location).  As such, it is imperative that we work together collaboratively throughout this pandemic.

-    As for your note regarding documents, if you do not intend to introduce any exhibits in the deposition then you have no obligation to provide any documents to the witness, defense counsel, or the court reporter prior to or during

1/7/2021                                    Gmail - Jaiyeola v. Garmin: Deposition of John Mudd (January 12 to 14, 2021)

Case 2:20-cv-02068-HLT-JPO   Document 61-2   Filed 01/08/21   Page 5 of 11
Appellate Case: 21-3114     Document: 010110544162     Date Filed: 07/06/2021     Page: 622

the deposition. If, however, you do intend to introduce exhibits or ask a witness to answer questions about a document then – just like in a live, in person deposition, you are required to provide the official exhibit to the court reporter to be marked by the court reporter. Given that the court reporter and the witness will not be in the same location then that also means you are required to provide the witness with a copy of the exhibit. Finally, any opposing party has a right to review an exhibit after it is marked and before a witness is required to answer questions. As such, it is customary that each party provide a copy of the exhibit to the opposing party as the exhibit is being marked. Ultimately, I will let you know in advance if any witness and I will be in the same physical location for any deposition you take. Note, that I will be sending you and the court reporter any exhibits I will use in your virtual deposition prior to your deposition.

I will be in touch with dates where both Mr. Mudd and I are available and we can get a deposition set. I also renew my request that you let us know as soon you can what other deposition you would like to take as we can begin confirming witness availability, location options, and logistics.

[Quoted text hidden]
[Quoted text hidden]

---

**Ganiyu Jaiyeola** <ganiyu.jaiyeola@gmail.com>                              Tue, Dec 29, 2020 at 4:02 PM
To: "Reisdorff, Kerri S." <kerri.reisdorff@ogletree.com>
Cc: "Young, Maggie" <margaret.young@ogletreedeakins.com>

1. Plaintiff agreeing to a mutually acceptable dates doesn't mean that Plaintiff agreed to go FIRST or last for Deposition.

2. The Defendant has 2 Attorneys in this case. The two Attorneys do NOT both need to be present for a deposition. During deposition, an Attorney CANNOT coach a witness or prevent a witness from answering a question without violating Court rules; something reportable to Kansas Bar.

3. Plaintiff expects 3 dates for John Mudd deposition from the Defendant on or before January 1, 2021.

Sincerely,

Ganiyu Jaiyeola, Ph.D., MBA
616 635 4025
[Quoted text hidden]

---

**Ganiyu Jaiyeola** <ganiyu.jaiyeola@gmail.com>                              Wed, Dec 30, 2020 at 8:13 AM
To: "Reisdorff, Kerri S." <kerri.reisdorff@ogletree.com>
Cc: "Young, Maggie" <margaret.young@ogletreedeakins.com>

In an effort to work out an amicable resolution regarding the deposition of John Mudd for 7 HOURS, Plaintiff states as follows:

1. Plaintiff will allow for John Mudd to have AT LEAST 18 DAYS NOTICE before deposition (counting from December 30, 2020) but the deposition of John Mudd must take place on January 18, 2021 or January 19, 2021 or January 20, 2021.

2. John Mudd REQUIRES the presence (virtual or physically) of ONE Garmin Attorney when he is being deposed by Plaintiff.

3. Zoom allows witnesses to PREVIEW documents online DURING THE DEPOSITION.

4. Garmin Attorneys are harping on the fact that they have other lawsuit obligations.

1/7/2021                    Gmail - Jaiyeola v. Garmin: Deposition of John Mudd (January 12 to 14, 2021)
Case 2:20-cv-02068-HLT-JPO   Document 61-2   Filed 01/08/21   Page 6 of 11
Appellate Case: 21-3114    Document: 010110544162    Date Filed: 07/06/2021    Page: 623

Indeed, Plaintiff (as a pro se) also has other lawsuit obligations and timelines other than the Garmin lawsuit at the Sixth Circuit Court of Appeals, Cincinnati, Ohio and other Federal District Courts.

5. Garmin should select THREE DATES (taking into account points "1." and "2." above) for Mudd's deposition.  Garmin should select THREE DATES that would be AGREEABLE to Plaintiff based on points "1." and "2." above.  Garmin should not select THREE DATES that are CONVENIENT for Garmin.  A witness never DECIDES a CONVENIENT time for deposition.  People get inconvenienced when they are deposed.

6.  If NONE OF THE THREE DATES that Garmin selects is AGREEABLE to Plaintiff, Plaintiff will issue a SUBPOENA to compel John Mudd for deposition on a date that will take into account point "1." above.

Sincerely,

Ganiyu Jaiyeola, Ph.D., MBA
616 635 4025

[Quoted text hidden]

---

**Reisdorff, Kerri S.** <kerri.reisdorff@ogletree.com>                    Wed, Dec 30, 2020 at 10:01 AM
To: Ganiyu Jaiyeola <ganiyu.jaiyeola@gmail.com>
Cc: "Young, Maggie" <margaret.young@ogletreedeakins.com>

Ganiyu – I just learned that Mr. Mudd is on vacation until January 4.  As such, I am unable to confirm his availability until he returns from vacation.  Once he returns I will let you know what days work for Mr. Mudd, myself, and Garmin's representative.

As for your deposition, please let me know if you are available on February 18 for your deposition.  I can provide other potential dates if that date does not work for you.

[Quoted text hidden]
[Quoted text hidden]

---

**Ganiyu Jaiyeola** <ganiyu.jaiyeola@gmail.com>                    Wed, Dec 30, 2020 at 11:34 AM
To: "Reisdorff, Kerri S." <kerri.reisdorff@ogletree.com>
Cc: "Young, Maggie" <margaret.young@ogletreedeakins.com>

1. At this time, Plaintiff is available for deposition on February 18, 2021.  Plaintiff will adjust his schedules accordingly.  However, if the Defendant changes the date for any reason, the Defendant should let Plaintiff know as soon as the Defendant is aware of the change.

2. For Plaintiff's deposition in this case that is conducted by the Defendant, ONLY the following people can be present other than the vendor deposition team: Plaintiff and the Defendants' TWO Attorneys on record.  If the Defendant wants to have any other

person present, the Defendant MUST file a Motion with the Court before the deposition date and obtain an Order allowing the presence of such individuals.

3. For John Mudd's or ANY witness deposition in this case that is conducted by Plaintiff, ONLY the following people can be present other than the vendor deposition team: Plaintiff, John Mudd or ANY witness to be deposed by Plaintiff, and Defendants' TWO Attorneys on record in this case.  If the Defendant wants to have any other person present, the Defendant MUST file a Motion with the Court before the deposition date and obtain an Order allowing the presence of such individuals.


Sincerely,

Ganiyu Jaiyeola, Ph.D., MBA
616 635 4025

[Quoted text hidden]

---

**Reisdorff, Kerri S.** <kerri.reisdorff@ogletree.com>                    Wed, Dec 30, 2020 at 11:37 AM
To: Ganiyu Jaiyeola <ganiyu.jaiyeola@gmail.com>
Cc: "Young, Maggie" <margaret.young@ogletreedeakins.com>


Ganiyu – The Rules allow any party to a lawsuit to have a representative present in addition to their legal counsel.  For example, if you had a lawyer in this matter both you and your lawyer would have the right to attend any deposition in this case.   The same is true for Garmin.  Garmin has the right to identify a representative to be present at any deposition  along with its legal counsel.

[Quoted text hidden]
[Quoted text hidden]

---

**Ganiyu Jaiyeola** <ganiyu.jaiyeola@gmail.com>                          Wed, Dec 30, 2020 at 12:49 PM
To: "Reisdorff, Kerri S." <kerri.reisdorff@ogletree.com>
Cc: "Young, Maggie" <margaret.young@ogletreedeakins.com>

1. Plaintiff plans to file a motion to EXCLUDE ANY Defendant employee or Defendant Expert that is NOT BEING DEPOSED during the deposition of Plaintiff or any Defendant employee or Defendant Expert.

2. During depositions, ONLY the following people will be present: Plaintiff, Defendant Employee that is BEING DEPOSED, and Defendant TWO Attorneys ON RECORD in this case.

3. Defendant should CONFIRM by January 1, 2021 if the Defendant plans to have Defendant employees or Defendant Expert(s) that ARE NOT BEING DEPOSED PRESENT during depositions.


Sincerely,

Ganiyu Jaiyeola, Ph.D., MBA

Case 2:20-cv-02068-HLT-JPO   Document 61-2   Filed 01/08/21   Page 8 of 11
1/7/2021                        Gmail - Jaiyeola v. Garmin: Deposition of John Mudd (January 12 to 14, 2021)
Appellate Case: 21-3114        Document: 010110544162        Date Filed: 07/06/2021        Page: 625

616 635 4025


Sincerely,

Ganiyu Jaiyeola, Ph.D., MBA
616 635 4025

[Quoted text hidden]

---

**Reisdorff, Kerri S.** <kerri.reisdorff@ogletree.com>                     Wed, Dec 30, 2020 at 12:54 PM
To: Ganiyu Jaiyeola <ganiyu.jaiyeola@gmail.com>
Cc: "Young, Maggie" <margaret.young@ogletreedeakins.com>

Ganiyu – What is the basis of your motion?  In other words, why do you believe a Garmin representative should not be allowed to be present virtually for the deposition?  And as another note, only I will be present at the depositions you take.  Ms. Young will not be present.

[Quoted text hidden]
[Quoted text hidden]

---

**Reisdorff, Kerri S.** <kerri.reisdorff@ogletree.com>                     Wed, Dec 30, 2020 at 12:56 PM
To: Ganiyu Jaiyeola <ganiyu.jaiyeola@gmail.com>
Cc: "Young, Maggie" <margaret.young@ogletreedeakins.com>

One final note.  You have demanded answers to multiple questions by January 1.  As you know, January 1 is a holiday and Ogletree and Garmin are closed on January 1 – as well as the courts.  As such, we will provide our responses by the next business day which is January 4.

[Quoted text hidden]
[Quoted text hidden]

---

Ganiyu Jaiyeola <ganiyu.jaiyeola@gmail.com>                                Wed, Dec 30, 2020 at 4:07 PM
To: "Reisdorff, Kerri S." <kerri.reisdorff@ogletree.com>
Cc: "Young, Maggie" <margaret.young@ogletreedeakins.com>

1. Defendant asks: "...What is the basis of your motion?  In other words, why do you believe a Garmin representative should not be allowed to be present virtually for the deposition? "

## 2. Plaintiff Response:

**A.** In the Defendants' Attorneys letter ("RE: Outstanding Privilege Log Issues") dated December 17, 2020, the Defendant confirmed that Document GARMIN 000440 (created on August 14, 2019) involved a **"crime-fraud exception"** (*Hale v. Emporia State Univ.*, Case No. 16-cv-4182-DDC-TJJ (D. Kan. Feb. 20, 2018) because "The partial redaction in this document contains information that was gathered at the direction of Garmin's in-house counsel after Garmin received your complaint of unlawful discrimination on November 22, 2019. Dobbs added to his notes that day for the purpose of providing information to Garmin's in-house counsel to facilitate his efforts to investigate your complaint of unlawful discrimination.".

**B.** ....[Plaintiff will] allege ... annoyance, embarrassment, oppression, or undue burden would befall [Plaintiff] if [Defendant employees] ...are able to attend [ANY OF THE] deposition in this case].". (*Surat v. Klamser et al.*, No. 19-cv-0901-WJM-NRN, Document 94 (D. Colo. March 9, 2020); *Id.*, Document 95 (D. Colo. March 10, 2020).).

**C.** And many other case laws on deposition attendance by non-deposing Defendant witnesses or Defendant Experts or Corporate employees of the Defendant.

3. Defendant states: "And as another note, only I will be present at the depositions you take. Ms. Young will not be present. ".

**Plaintiff Response:**
**A.** Plaintiff understands this to mean that the Defendant's non-deposing employees will NOT BE PRESENT. **If Plaintiff is CORRECT in concluding that ONLY Ms. Reisdorff and a Defendant deposing employee and Plaintiff will be present at depositions, then Plaintiff WILL NOT HAVE A NEED TO FILE A MOTION to exclude non-deposing Defendant employees during depositions**.

For all the depositions, Plaintiff sincerely hopes that deposition etiquette will prevail.  "A Louisiana lawyer who interrupted a deposition 145 times and made 106 objections will have to pay for the conduct." (https://www.abajournal.com/news/article/lawyer-who-interrupted-deposition-145-times-ordered-to-pay-1000-and-attorney-fees; *REC Marine Logistics, LLC v. Richard*, 2:19-cv-11149-LMA-DMD, Document 93  (E.D. La. Mar. 27, 2020).).  If Plaintiff is ever faced with anything close to the behavior described in the referenced article, Plaintiff will not only file for sanctions at the Court but Plaintiff will also ask the Kansas Bar and other relevant Bar associations to invoke Attorney misconduct charges.

Sincerely,

Ganiyu Jaiyeola, Ph.D., MBA
616 635 4025

[Quoted text hidden]

---

**Reisdorff, Kerri S.** <kerri.reisdorff@ogletree.com>                                    Wed, Dec 30, 2020 at 4:12 PM
To: Ganiyu Jaiyeola <ganiyu.jaiyeola@gmail.com>
Cc: "Young, Maggie" <margaret.young@ogletreedeakins.com>

Ganiyu – Please let me know your availability to confer on the below discovery issue next week.

[Quoted text hidden]
[Quoted text hidden]

---

**Ganiyu Jaiyeola** <ganiyu.jaiyeola@gmail.com>                                    Wed, Dec 30, 2020 at 4:20 PM
To: "Reisdorff, Kerri S." <kerri.reisdorff@ogletree.com>
Cc: "Young, Maggie" <margaret.young@ogletreedeakins.com>

Plaintiff doesn't know which issue the Defendant is talking about.


Sincerely,


Ganiyu Jaiyeola, Ph.D., MBA
616 635 4025

[Quoted text hidden]

---

**Reisdorff, Kerri S.** <kerri.reisdorff@ogletree.com>        Wed, Dec 30, 2020 at 4:24 PM
To: Ganiyu Jaiyeola <ganiyu.jaiyeola@gmail.com>


You have asserted that you intend to file a motion with the court regarding your demand that a Garmin representative not attend Mr. Mudd's deposition (and any other depos you take).  We are obligated to meet and confer on this discovery issue prior to either side filing a motion with the Court.

[Quoted text hidden]
[Quoted text hidden]

---

**Ganiyu Jaiyeola** <ganiyu.jaiyeola@gmail.com>        Wed, Dec 30, 2020 at 4:42 PM
To: "Reisdorff, Kerri S." <kerri.reisdorff@ogletree.com>, "Young, Maggie" <margaret.young@ogletreedeakins.com>

1. Plaintiff has stated his position with some of the applicable case laws.  The Defendant should review those case laws.

2. Plaintiff's wife was informed at work that she tested positive for Covid-19 yesterday (December 29, 2020).  She is now in quarantine.  Plaintiff has to take care of 3 kids (7, 10, and 13).

3. Due to Plaintiff's current very busy schedule, Plaintiff can discuss for **NO MORE THAN 10 minutes** on December 31, 2020 or January 4, 2021.  It has to be **December 31, 2020 or January 4, 2021** because Plaintiff is swamped.  Plaintiff hopes this phone discussion will not be cyclical like the other phone discussions to date.


Sincerely,


Ganiyu Jaiyeola, Ph.D., MBA
616 635 4025

[Quoted text hidden]

---

**Reisdorff, Kerri S.** <kerri.reisdorff@ogletree.com>        Wed, Dec 30, 2020 at 4:50 PM
To: Ganiyu Jaiyeola <ganiyu.jaiyeola@gmail.com>, "Young, Maggie" <margaret.young@ogletreedeakins.com>

I'm sorry to hear about your wife.  I am not available tomorrow.  Please let me know what time works best for you on Monday. Enjoy the holiday.

---

**From:** Ganiyu Jaiyeola <ganiyu.jaiyeola@gmail.com>
**Date:** Wed, Dec 30, 2020, 3:42 PM
**To:** "Reisdorff, Kerri S." <Kerri.Reisdorff@ogletreedeakins.com>, "Young, Maggie" <margaret.young@ogletreedeakins.com>

---

**Ganiyu Jaiyeola** <ganiyu.jaiyeola@gmail.com>                          Wed, Dec 30, 2020 at 4:54 PM
To: "Reisdorff, Kerri S." <kerri.reisdorff@ogletree.com>
Cc: "Young, Maggie" <margaret.young@ogletreedeakins.com>

## Any 10 minutes from 8:00 AM to 11:00 AM Eastern on January 4, 2021 is good.


Sincerely,


Ganiyu Jaiyeola, Ph.D., MBA
616 635 4025
[Quoted text hidden]

---

**Reisdorff, Kerri S.** <kerri.reisdorff@ogletree.com>                          Mon, Jan 4, 2021 at 9:34 AM
To: Ganiyu Jaiyeola <ganiyu.jaiyeola@gmail.com>


Ganiyu – Happy 2021.  Are you still  available at 10:30 ET?    If so, let's jump on a call.  I am reachable on my office line
below.

[Quoted text hidden]
[Quoted text hidden]

---

**Ganiyu Jaiyeola** <ganiyu.jaiyeola@gmail.com>                          Mon, Jan 4, 2021 at 9:54 AM
To: "Reisdorff, Kerri S." <kerri.reisdorff@ogletree.com>

I will call you at 10:30 AM EASTERN.  THE CALL WILL BE FOR 15 MINUTES.


Sincerely,


Ganiyu Jaiyeola, Ph.D., MBA
616 635 4025
[Quoted text hidden]

Appellate Case: 21-3114   Document: 010110544162   Date Filed: 07/06/2021   Page: 629

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

GANIYU AYINLA JAIYEOLA,
                Plaintiff,

v.                                        Case No.: 2:20-cv-2068-HLT-JPO

GARMIN INTERNATIONAL, INC.,
                Defendant.

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR EXPEDITED HEARING AND MOTION FOR PROTECTIVE ORDER EXCLUDING DEFENDANT REPRESENTATIVES DURING THE DEPOSITION OF FACT WITNESSES**

This is Plaintiff's Memorandum in support of Plaintiff's Motion[1] for the entry of a protective order excluding Defendant representatives during the deposition of fact witnesses. For the reasons stated below, Plaintiff's Motion should be Granted.

## I.      INTRODUCTION

Plaintiff ("Jaiyeola") is a *pro se*.  In *Hall v. Witteman*,[2] this Court stated that "*Pro se* complaints, however inartfully pleaded, must be liberally construed, and are held to less stringent standards than formal pleadings drafted by lawyers. *Erickson v. Pardus*, ___ U.S. ___, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007). See *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005)……".  The Sixth Circuit asserted that "We recognize that *pro se* litigants impose a burden on the courts and that clients are usually better off if represented by counsel."[3]  The U.S. Supreme Court has stated that *pro se*[4] pleadings and motions should be viewed liberally and held

---

[1] Pursuant to Fed. R. Civ. P. 26(c)(1)(E).
[2] *Hall v. Witteman*, 569 F. Supp. 2d 1208 (D. Kan. 2008).
[3] *King v. Curtis*, No. 14-2614 (6th Cir. 2015).
[4] *Haines v. Kerner*, 404 U.S. 520 (1971).

to a lesser standard than those drafted by Attorneys.

This is an employment discrimination lawsuit[5] in which Garmin International, Inc. ("Garmin"), by failing to hire Jaiyeola (for the "Advanced Materials Engineer - Metals-19001CL"[6] position he applied and interviewed for over the phone and on-site at Garmin's Headquarters/Manufacturing Center in Olathe, Kansas) violated Jaiyeola's rights under Title VII of the Civil Rights Act of 1964, as amended ("Title VII" – Race (African American), Color (Black), and National Origin (Nigerian)), 29 U.S.C. § 621, et seq. (Age Discrimination in Employment Act, as amended ("ADEA"), 42 U.S.C. §12112(b)(4) (Disability Association Discrimination - Title I of the Americans with Disabilities Act ("ADA")), The Kansas Age Discrimination in Employment Act[7] (Chapter 44, Art. 11, K.S.A., and specifically within the meaning of subsection (a)(1) of Section 44-1113 of said Act - "KADEA") and 42 U.S.C. § 1983 (Denial of Due Process – "Due Process").  Garmin is also liable for discrimination under Section 703(a) of Title VII because the fact that Jaiyeola was not hired by Garmin was based on the influence of a Garmin employee, Mr. Jeff Minelli (Garmin's Director of Mechanical Engineering), with a discriminatory motive; Subordinate Bias Liability ("cat's paw" theory of liability)[8].  Defendant's motion to dismiss the 42 U.S.C. § 1983 claim was granted by the Court but the pleading (in the same Defendant's motion) to dismiss the Subordinate Bias Liability claim was Denied[9].

---

[5] ECF No. 1, pp. 1-21. Plaintiff's Complaint.
[6] ECF No. 1-17, p. 2. Garmin's Human Resources Email Stating That Plaintiff Was Not Hired.
[7] http://www.kslegislature.org/li/b2019_20/statute/044_000_0000_chapter/044_011_0000_article /044_011_0013_section/044_011_0013_k/
[8] *Equal Employment Opportunity Commission v. BCI Coca-Cola Bottling Company of Los Angeles*, 450 F. 3d 476 (10th Cir. 2006).
[9] ECF No. 17, pp. 4-6. Violation of Title VII Based on Subordinate Bias Liability.

2

Dr. Min Kao (**Male, Asian American - originally from Taiwan**; East Asia) co-founded Garmin with Gary Burrell (**Male, White American**) in October 1989.  Kao, currently the Executive Chairman of Garmin, "…led the development of the first GPS navigator to be certified by the FAA."[10] and for all intents and purposes the GPS technology brain for the establishment of Garmin.

A diversity rating report on Garmin concluded that "Diverse employees at Garmin International score the company 64/100 across various culture categories, placing Garmin International in the bottom 45% of companies in the United States with 10,000+ Employees for Comparably's diversity score.  The Diversity score provides insights into how diverse employees feel and rate their work experience at Garmin International across various culture dimensions."[11]. In comparison, Trimble (https://www.trimble.com/), a Garmin competitor, scored "77/100"[12] and placed at "top 10%"[13].

**Garmin's significantly incredibly low Diversity Rating (for an American multinational technology company) is strongly confirmed by the multiple employment discrimination lawsuits against Garmin in the United States since 2009 to date**.  A former **Female** Garmin employee stated the following in her Complaint: "This is an employment case based upon and arising under the **Family and Medical Leave Act**, as amended, 29 U.S.C. § 2611 et seq. ("FMLA"); the **Americans with Disabilities** Act, 42 U.S.C. § 12101 et seq. ("ADA") the **Age Discrimination** in Employment Act, 29 U.S.C. § 621 et seq. ("ADEA")"[14].  In

---

[10] Garmin Executive Team: https://www.garmin.com/en-US/company/leadership/executive/
[11] https://www.comparably.com/companies/garmin-international/diversity (as it appeared on October 28, 2020).
[12] https://www.comparably.com/companies/trimble/diversity (as it appeared on October 28, 2020).
[13] *Id*.
[14] *Peterson v. Garmin International, Inc.*, No. 2:09-cv-02659-JAR (D. Kan. Dec. 22, 2009); ECF

3

2009[15] and 2010[16], **failure-to-hire employment discrimination lawsuits** based on "Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, et seq., for employment discrimination on the basis of **race, color, religion, gender, or national origin**." and "Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §§ 621, et seq., for employment discrimination on the basis of age (age 40 or older)." were filed against Garmin.  In 2017, a Garmin employee filed an Equal Employment Opportunity Commission ("EEOC") charge of discrimination based on "**race, sex and national origin discrimination** and **retaliation** under Title VII"[17] against Garmin **after working for Garmin for 11 years**: **1.)** "Plaintiff is a black female from Brazil, South America**. She has been a **naturalized citizen of the United States** since 2009."[18]; **2.)** "**Garmin's culture shows a preference for white employees and male employees**. For example, in July 2016, **a Garmin employee sent an email asking for hand models, specifically Caucasian hand models**."[19]; **3.)** "Garmin's selection procedures and practices resulted in **a workforce at its headquarters in 2017 that was eighty-two percent (82%) white, two and one-half percent (2.5%) black and two and two-tenths percent (2.2%) Hispanic.**"[20]; and **4.)** "Garmin's selection procedures and practices resulted in **a workforce at its headquarters in 2017 that was seventy-seven percent (77%) male and twenty-three percent (23%) female.**"[21]

---

No. 1, p. 1 at ¶ "1".

[15] *Leo v. Garmin Int'l, Inc.*, No. 2:09-cv-02139-KHV (D. Kan. 2009), ECF No. 1, p. 1.

[16] *Leo v. Garmin Int'l, Inc.*, No. 2:10-cv-02495-JTM-DJW (D. Kan. 2010), ECF No. 1-1, p. 1.

[17] *Antunes v. Garmin International, Inc.*, No. 2:18-cv-02697-JAR-KGG (D. Kan. Dec. 18, 2018), ECF No. 1, ¶ 9.

[18] *Id*; ¶ 12.

[19] *Id*; ¶ 26.

[20] *Id*; ¶ 45.

[21] *Id*; ¶ 47.

Plaintiff interviewed[22] onsite at Garmin Headquarters/Manufacturing Center in Olathe, Kansas, on August 14, 2019 and noticed the following: **1.)** The Senior Technical Recruiter who interviewed Plaintiff over the phone and onsite was a **White Female**; **2.)** Plaintiff was given a tour of Garmin's facilities by a **White Female**; **3.)** The Technical Team that interviewed Plaintiff were **8 White Males**, and **4.)** The Garmin Engineers that attended Plaintiff's PowerPoint presentation were **14 White Males (93%)** and **1 White Female (7%)**.

## II.    ARGUMENT

"As stated in ... Motion for Protective Order regarding .....deposition, pursuant to Fed. R. Civ. P. 26(c)(1)(E), this Court may issue a protective order "to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense, including … designating the persons who may be present while the discovery is conducted." Fed. R. Civ. P. 26(c)(1)(E). Any party to a litigation may move for a protective order under Fed. R. Civ. P. 26(c). *SEC v. Dowdell*, 144 Fed. Appx. 716, 723 (10th Cir. 2005). "[23].

### A.    Benjamin Dobbs Taleo Interview Notes On Plaintiff.

Dobbs, a Garmin employee (Mechanical Engineering Team Leader) and a fact witness in this lawsuit, was part of the technical panel that interviewed Plaintiff onsite for the position of "Advanced Materials Engineer - Metals-19001CL" at Garmin Headquarters/Manufacturing Center in Olathe, Kansas, on August 14, 2019.  Dobbs also attended (on August 14, 2019) Plaintiff's PowerPoint presentation and discussion on a technical topic that Garmin gave to Plaintiff. Plaintiff's PowerPoint presentation and discussion were part of the onsite interview requirements for the position that Plaintiff applied for.

---

[22] ECF No. 1-14, p. 2.  Plaintiff's Interview Schedule on August 14, 2019.
[23] *Surat v. Klamser et al.*, No. 19-cv-0901-WJM-NRN, Document 87 (D. Colo. March 6, 2020).

**Some Facts:**

1.     According to Garmin's "Hiring and Transfer/Promotion Procedure", "4.6 Taleo is the applicant tracking system used by associates to apply for positions at Garmin and by recruiters to review, hire, and store candidate interview documents.".  **See Ex A**.

2.     According to Garmin's "Hiring and Transfer/Promotion Procedure", "5.5.2 All candidate records will be stored in Taleo.".  **See Ex B**.

3.     According to Garmin's "Hiring and Transfer/Promotion Procedure", "6.2 Interview notes for candidates will be stored in Taleo.".  **See Ex C**.

4.     Benjamin Dobbs interview notes of August 14, 2019, constituted a Taleo record on Plaintiff.  **See Ex D**.

**The interview notes that Dobbs created on Plaintiff August 14, 2019 constituted a Taleo record on Plaintiff and should not be changed or modified in any way**.

**B.     Plaintiff Believes Defendant Garmin Committed Fraud**

In a letter to Plaintiff dated December 17, 2020, Defendant Attorney, Ms. Margaret Young, stated: "The partial redaction in this document contains information that was gathered at the direction of Garmin's in-house counsel after Garmin received your complaint of unlawful discrimination on November 22, 2019. Dobbs added to his notes that day for the purpose of providing information to Garmin's in-house counsel to facilitate his efforts to investigate your complaint of unlawful discrimination. These notes were ultimately communicated to Garmin's in-house counsel.".  **See Ex E (Page 2 at "GARMIN 000400")**.

The letter was referring to **"GARMIN 000440" (and not to "GARMIN 000400")**.  **See Ex D**.  According to the letter, **on November 22, 2019** and "…**at the direction of Garmin's in-house counsel** ….", **Dobbs "added to his notes" of August 14, 2019** at the location marked

6

**"REDACTED"** in **Ex D**.

Here is a chronology:

1.     Plaintiff was interviewed onsite by Dobbs on **August 14, 2019**.

2.     Dobbs created a Taleo record on Plaintiff on **August 14, 2019**.

3.     "On **November 13, 2019** (about **3 months after Jaiyeola's on-site job interview** at Olathe), Jaiyeola received an electronic mail from Garmin (from Mr. Michael Risinger) stating that Jaiyeola was not hired for the position of Advanced Materials Engineer - Metals-19001CL at Garmin."[24].

4.     "On **November 22, 2019**, Jaiyeola **followed the guidelines in Garmin's EEO statement and filed a complaint (copied to Cormack) with Mudd (See Ex R.) on Garmin's failure to hire him.**"[25].

5.     On **November 22, 2019**, **Plaintiff DID NOT** send his failure-to-hire complaint to Dobbs.  The complaint was sent to John Mudd and copied to Michelle Cormack.

6.     On **November 22, 2019** (**three (3) months after he created his Taleo interview notes on Plaintiff**), Dobbs **"added to his notes" of August 14, 2019 "…at the direction of Garmin's in-house counsel…"**.

By changing his Taleo interview notes on Plaintiff, Plaintiff believes that **Dobbs committed a fraud**; **a fraud that was committed "…at the direction of Garmin's in-house counsel…"**. Plaintiff also believes that **Attorney-Client privilege** would not apply in this instant because of the **"crime-fraud exception"** (*Hale v. Emporia State Univ.*, Case No. 16-cv-4182-DDC-TJJ (D. Kan. Feb. 20, 2018).

---

[24] <u>ECF No. 1</u>, ¶ 37.  Jaiyeola's Complaint.
[25] <u>ECF No. 1</u>, ¶ 40.  Jaiyeola's Complaint.

C.      **Fed. R. Civ. P. 26(c)** **Requires A Showing of Good Cause to Determine Who May**

**Attend A Deposition**

"**Federal Rules of Civil Procedure 26(c)(1)(E)** **governs protective orders and the**

**designation of persons who may be present while a deposition is being conducted**. The rule

provides that the "court may, for good cause, issue an order to protect a party or person from

annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1).

Under Rule 26(c), the "good cause" standard is "highly flexible, having been designed to

accommodate all relevant interests as they arise." *Rohrbough v. Harris*, 549 F.3d 1313, 1321 (10th

Cir. 2008)."[26]. ""A finding of good cause must be based on a particular factual demonstration of

potential harm, not on conclusory statements." *Anderson v. Cryovac, Inc.*, 805 F.2d 1, 7 (1st Cir.

1986)."[27].

Plaintiff has shown the Court a "good cause" for the entry of a Protective Order precluding

any "Garmin's representative" from attending the deposition of John Mudd or any deposition of

fact witnesses in this lawsuit.  **The "good cause" is that Benjamin Dobbs, a Garmin employee,**

**and a fact witness in this lawsuit "added to his notes" "at the direction of Garmin's in-house**

**counsel".  The "notes" were the interview notes that Dobbs created on Plaintiff on August 14,**

**2019.  Dobbs added to the "notes" on November 22, 2019; about 3 months after the "notes"**

**were created.**

Any "Garmin's representative" at the deposition of a fact witness in this lawsuit has the

potential to cause harm or prejudice to the deposition process through coaching of Garmin fact

witnesses and making efforts to align the testimonies of Garmin fact witnesses during deposition

---

[26] *Surat v. Klamser et al.*, No. 19-cv-0901-WJM-NRN, Document 94 (D. Colo. March 9, 2020).
[27] *Mansor v. JPMorgan Chase Bank, N.A.*, No. 12-10544-JGD (D. Mass. Sep. 19, 2017).

breaks.

**III.      CONCLUSION**

For all the above reasons, Plaintiff respectfully ask[28] this Court to enter an Order precluding

any "Garmin's representative" from attending the deposition of John Mudd or any deposition of

fact witnesses in this lawsuit.


Respectfully submitted,


_____

Dated: January 8, 2021                          Ganiyu A. Jaiyeola

749 Preserve Circle Drive SE #6

Grand Rapids, Michigan 49548

Tel.: 616.635.4025

ganiyu.jaiyeola@gmail.com


PLAINTIFF

*pro se*


_____

[28] Pursuant to Fed. R. Civ. P. 26(c)(1)(E).

9

### <u>CERTIFICATE OF SERVICE</u>

Plaintiff hereby certifies that on this 8th day of January, 2021, Plaintiff e-mailed this

document to the District Court Clerk's office where it would be filed using the Court's CM/ECF

system which will automatically send the document to the following Defendants' Attorneys:


Kerri S. Reisdorff

Margaret K. Young

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

4520 Main Street, Suite 400

Kansas City, Missouri 64111

kerri.reisdorff@ogletree.com

margaret.young@ogletree.com


ATTORNEYS FOR DEFENDANT


Respectfully submitted,

_____

Ganiyu A. Jaiyeola


PLAINTIFF

*pro se*

## Index of Exhibits

**Ex A**      "4.6 Taleo is the applicant tracking system used by associates to apply for positions at Garmin and by recruiters to review, hire, and store candidate interview documents.".

**Ex B**      "5.5.2 All candidate records will be stored in Taleo.".

**Ex C**      "6.2 Interview notes for candidates will be stored in Taleo.".

**Ex D**      Benjamin Dobbs interview notes of August 14, 2019, constituted a Taleo record on Plaintiff.  "GARMIN 000440".

**Ex E**      December 17, 2020 letter from Defendant Attorney, Ms. Margaret Young, to Plaintiff regarding "REDACTED" "GARMIN 000440".  (Page 2 at "GARMIN 000400").

# Ex A

## Hiring and Transfer/Promotion Procedure

**1**   **Purpose**

    **1.1**   The purpose of this document is to provide information and instruction on the hiring and transfer/promotion procedure at Garmin.

**2**   **Scope**

    **2.1**   This procedure shall apply to all Garmin United States facilities.

**3**   **Responsibilities**

    **3.1**   Human Resources (HR) Recruiters will seek approval from business segment Vice Presidents to open a requisition.  If the position is denied, HR will notify the hiring Manager/Supervisor.  For positions approved for recruitment, Human Resources Recruiters will share candidate information and seek feedback from hiring managers throughout the recruitment process.

        **3.1.1**   For both internal and external applications, the Hiring Manager and HR Recruiter shall ensure that the candidates under consideration meet the minimum qualifications to be transferred, promoted or hired.

        **3.1.2**   The HR Recruiter will ensure that this procedure is followed and that candidates being considered for external and internal applications, transfers, or promotions have completed the necessary HR and Hiring Manager interviews.

    **3.2**   The hiring manager is responsible to follow up with Human Resources and provide feedback regarding the interest level in the candidate.  If Human Resources has not heard back from the hiring manager within three (3) business days, sometimes shorter turn arounds in certain areas, Human Resources will contact the hiring manager.  **Feedback is a very important element to the interview process.**  Human Resources will work with the hiring Manager/Supervisor to determine if the candidate meets Garmin's standards and if the candidate should move forward in the process.

**4**   **Definitions**

    **4.1**   <u>Hiring Manager</u> includes any manager, supervisor or team leader who is filling a position through an internal applicant, transfer, or promotion.

    **4.2**   <u>Human Resources Management</u> refers to the HR Managers responsible for recruiting and retention, including giving approval of all transfers or promotions.

    **4.3**   <u>Human Resources Recruiter</u> refers to the Human Resources professional responsible for the sourcing, interviewing and hiring of candidates who have applied for open positions at Garmin or have been targeted for a transfer.

    **4.4**   <u>International Traffic in Arms Regulations (ITAR)</u> is a U.S. government regulations that control the export and import of defense-related articles and services on the United States Munitions List (USML).  These regulations are controlled by the Department of State and are described in CFR 22 (Foreign Relations).

    **4.5**   <u>Non-U.S. person(s)</u> a term used by Garmin to refer to citizens of countries other than the United States who are not "lawfully admitted" into the U.S. as permanent residents, and who are not a "protected individual" as defined by Title 8 U.S.C 1324b(a)(3).  As a general matter, this term shall be used to encompass both "Foreign Nationals" as defined under the EAR and "Foreign Persons" as defined under the ITAR throughout this document.

    **4.6**   <u>Taleo</u> is the applicant tracking system used by associates to apply for positions at Garmin and by recruiters to review, hire, and store candidate interview documents.

| Page 1 of 5 | **Hiring and Transfer/Promotion Procedure** | HRD-0001<br>Rev. L |
|---|---|---|
| | Hard copies or local copies of this document are uncontrolled and may have been superseded. Refer to findpart.garmin.com for the current revision. | |
| | **Garmin** | |

CONFIDENTIAL   GARMIN 000163

# Ex B

Hiring and Transfer/Promotion Procedure

**5** **Method**

**5.1** Whether it is a newly created position or a replacement, the Hiring Manager should notify their respective HR Recruiter.  Operations Managers should complete FRM-0324 (Job Requisition Form).

**5.2** The Hiring Manager should include justification for the opening including items such as the position title, a new budgeted position, backfill of an existing headcount and if requested any specialized advertising avenues, if any.  For a new position request, the Hiring Manager should work with his/her respective HR Recruiter to create a new job description.

    **5.2.1** HR Recruiters should work with Human Resources Management, legal  and HRIS for review and final approval of significantly revised or new job descriptions prior to posting in Garmin's applicant tracking system.

**5.3** If the position is approved, a recruiting team member will create the requisition in Taleo and attach approvals if applicable.  HR may post the position internally and/or externally as deemed appropriate.  All full-time positions must be posted for a minimum of three (3) days internally.

**5.4** Human Resources will post all external postings on required state/compliance job boards along with other external sources as requested and/or deemed appropriate.

**5.5** **Candidate Identification / Interviews**

    **5.5.1** Following the onset of an opening of a requisition, HR Recruiters will review candidates who have completed applications for specific positions in Taleo and will either terminate the application and notify the candidate of that decision, or will contact the candidate for further screening.

    **5.5.2** All candidate records will be stored in Taleo.

    **5.5.3** All candidates who submit their application online will receive an acknowledgment electronically that their application has been submitted or rejected.

    **5.5.4** The Hiring Manager and HR Recruiter should work together to interview qualified and suitable applicants and determine if any candidates are acceptable for the position.

        **5.5.4.1** Internal candidates - The HR Recruiter and/or Hiring Manager will review each applicant's experience, background, past performance evaluations and previous corrective action documents if applicable; discuss with the candidate's current supervisor regarding the associate's skills, abilities, and performance; and determine if there is a mutual agreement that the candidate is available for transfer or promotion.

        **5.5.4.2** Internal associates who have received corrective action in the prior six (6) month period will not be eligible for transfer or promotion and should not be considered in the list of eligible candidates.

        **5.5.4.3** Internal associates must meet the minimum qualifications for the new position and required skills as outlined in the job description

        **5.5.4.4** The Internal candidate is required to notify his/her current supervisor of their application prior to applying.

        **5.5.4.5** The Internal candidate is required to have completed a minimum of six (6) months or one (1) year of service in his/her current position to be eligible to apply.

        **5.5.4.6** All internal applicants who meet the minimum qualifications and requirements above will be considered for the position.

    **5.5.5** Hiring managers will have the ability to view screened candidate's profiles and qualifications.

    **5.5.6** HR Recruiters will pre-screen, interview, and/or evaluate candidates and provide interview notes, candidate information, and a recommendation for further action to the hiring

| Page 2 of 5 | **Hiring and Transfer/Promotion Procedure** | HRD-0001 Rev. L |
|---|---|---|
| | Hard copies or local copies of this document are uncontrolled and may have been superseded.  Refer to findpart.garmin.com for the current revision. | |
| | **Garmin** | |

GARMIN 000164

# Ex C

Hiring and Transfer/Promotion Procedure

5.8.2   The Hiring Manager is responsible for conducting formal introductions to co-workers, managers, and other key associates that the new associate's position will interact with. Hiring Managers or their designee should provide a departmental tour and help the associate get acclimated in their new role.  The Hiring Manager should show them their work area, set-up on computer and how to use the phone system, message system, conference system and the number which they can be reached at.  We encourage that you welcome all associates and assist them to feel comfortable with the new associate process as well as have a training agenda for new associates.

5.8.3   The Hiring Manager should also make sure the new associates in the department make the new associate feel welcome, are willing and able to answer questions for them, and are willing to share knowledge.

**6   Measurement and Analysis**

6.1   The Human Resources Management team will review this process on an annual basis to ensure that it is still current and will make revisions as necessary.

6.2   Interview notes for candidates will be stored in Taleo.

| Page 5 of 5 | **Hiring and Transfer/Promotion Procedure** | **HRD-0001**<br>Rev. L |
|---|---|---|
| Hard copies or local copies of this document are uncontrolled and may have been superseded.  Refer to findpart.garmin.com for the current revision. | | |
| **Garmin** | | |

CONFIDENTIAL

GARMIN 000167

# Ex D

11/22/2019                                    Ganiyu Jaiyeola - Dobbs, Benjamin - Garmin Confluence

Dashboard / Dobbs, Benjamin's Home / AVME Candidates Interview Notes - Dobbs

## Ganiyu Jaiyeola

Created by Dobbs, Benjamin, last modified less than a minute ago

Date:      14 Aug 2019

Interviewers:  @Klein, Jared  ,  @Dobbs, Benjamin  ,  @Rollheiser, Paul   (not present, copied for visibility)

Position: Advanced Materials Engineer - Metals

Degree: BSc Chemistry (Univ of Ibadan); MSc Chemistry (Univ of Ibadan); MS Chemistry (Univ of Conn); PhD Materials Science (Univ of Conn); MBA (Syracuse Univ)

GPA: N/A

Resume: Jaiyeola_Ganiyu_resume_2019-08-14.pdf

Transcript: N/A

Phone Screen: Jaiyeola_Ganiyu_PS_2019-08-14.doc

Other Documents: Jaiyeola_Ganiyu_TPS_2019-08-14.doc

**Experience:**

- found issue with corrosion due to the acidic reaction with sulfur.  was able to provide a step by step process of how he determined what the underlying issue was, and what the next steps would be (suggested improvements and way to test/evaluate).
- familiar with castings - at least in testing the cast materials.  found that typically the oils used in the casting process greatly affect the plating process.
- familiar with powdered metal/sintering  - sounds like testing only again
- metalized platings on plastics - tested only (nickel first)
- tin whiskers - familiar with it, but experience he has was to add lead to the tin.  (opposite of our direction...)
- brazing - completed failure analysis of a brazed joint.  filler materials are very critical and can easily create a medium for galvanic corrosion.  stated he had worked with different suppliers to evaluate different process controls to land on improved parts.
- struggled with providing examples of instances where he provided material/plating recommendations in the design phase.  did come up with an example where electrical conductivity was required to be maintained over moisture environments.
- galling experience (SS materials) - recommended avoiding crevices, no fluids, air to reduce galling.  had used Teflon in the past to help control/prevent galling.
- plating experience - nickel, gold, palladium, chrome, lead, silver, most alloys, chromate (stated he has lots of experience with this), anodizing
- stated familiarity with MIL-spec testing, previously worked at a company that was on an air force base, and Boeing.

**Why Garmin?  Looking For?**

- lots of challenges, lots to do
- part of teams
- equipment to work with
- conferences for learning
- consultation vs. specialist - more comfortable with variety, prefers that
- test lab - comfortable recommending equipment and determining what tests to run

**Questions?**

- what kind of challenges will this position face?

**Comments**

| Trait | Notes |
|---|---|
| Desire for product design at Garmin/Long-term Career Goals | no real read on Garmin being a long-term goal, more focused on challenges and that Garmin he thinks, would be a place where he would be challenged. |
| Personable (friendly, relaxed) | Yes, very respectful, seemed relaxed. |
| Communication (speaks clearly, articulate, and confident) | Yes, spoke confidently, was able to clearly communicate past experiences |
| Nervous (shifty eyes, shaky) | no |
| Technical skills (communicates role on job/project) | as stated previously yes.  that said, one question Jared asked about other examples where he provided material/plating recommendations in past work at the design phase caused him to stumble some.  He seems to have a lot of experience with platings and plating evaluations. seems less so with materials/base metals although he did elude to some experience there as well. |
| Teamwork (recognizes value in getting feedback from others) | mentioned that he likes to work on teams, not other real read on this. |
| **Final Comments** | REDACTED |

No labels

# Ex E

# Ogletree
# Deakins

**OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.**

*Attorneys at Law*

4520 Main Street, Suite 400
Kansas City, MO 64111
Telephone:  816-471-1301
Facsimile:  816-471-1303
www.ogletreedeakins.com

Margaret Young
816.410.2231
margaret.young@ogletree.com

December 17, 2020

**VIA EMAIL: Ganiyu.jaiyeola@gmail.com**

Mr. Ganiyu A. Jaiyeola
749 Preserve Cir. Dr. SE
Apt. 6
Grand Rapids, MI 49548

RE:    Outstanding Privilege Log Issues

Dear Mr. Jaiyeola:

As we discussed during our Teams meeting yesterday, I am providing additional explanations for our assertions of attorney-client privilege and the work-product privilege  on each of the bates-numbered documents you identified in your email correspondence on December 15, 2020. We hope these explanations will resolve your concerns. As we indicated on our call, we would be happy to schedule a follow-up call to discuss.

As an initial matter, I am universally addressing why each of the documents you identified is protected by the work-product privilege. The work-product privilege applies when "'(1) the materials sought to be protected are documents or tangible things; (2) they were prepared in anticipation of litigation or for trial; and (3) they were prepared by or for a party or a representative of that party.' The court evaluates both whether the documents in question were created because of the anticipation of litigation and whether the party reasonably believed the threat of litigation to be real and imminent." *Sudenga Indus., Inc. v. Global Indus., Inc.*, 2020 WL 2513072, at *8 (D. Kan. May 15, 2020) (internal citation omitted) (emphasis in original).

Each of the documents you identified satisfies all of the requirements set forth above and as such, each is protected from disclosure by the work-product privilege. First, they are all documents or tangible things. Second, each was prepared in anticipation of litigation after Garmin received your complaint of unlawful discrimination on November 22, 2019. As we discussed yesterday, your letter created a reasonable belief that the threat of litigation was real and imminent as it specifically referenced an "EEOC Complaint". Your reference to "EEOC" (which stands for the Equal Employment Opportunity Commission) led Garmin to reasonably believe you had or would be imminently filing a charge of discrimination with the EEOC. You can see on the log that each document was created on or after receipt of your November 22, 2019 letter. The one exception is GARMIN 000440. However, the partial redaction reflects information that was added to that

Atlanta ▪ Austin ▪ Berlin (Germany) ▪ Birmingham ▪ Boston ▪ Charleston ▪ Charlotte ▪ Chicago ▪ Cleveland ▪ Columbia ▪ Dallas ▪ Denver ▪ Detroit Metro ▪ Greenville ▪ Houston
Indianapolis ▪ Kansas City ▪ Las Vegas ▪ London (England) ▪ Los Angeles ▪ Memphis ▪ Mexico City (Mexico) ▪ Miami ▪ Milwaukee ▪ Minneapolis ▪ Montréal (Canada) ▪ Morristown
Nashville ▪ New Orleans ▪ New York City ▪ Oklahoma City ▪ Orange County ▪ Paris (France) ▪ Philadelphia ▪ Phoenix ▪ Pittsburgh ▪ Portland, ME ▪ Portland, OR ▪ Raleigh ▪ Richmond
St. Louis ▪ St. Thomas ▪ Sacramento ▪ San Antonio ▪ San Diego ▪ San Francisco ▪ Seattle ▪ Stamford ▪ Tampa ▪ Toronto (Canada) ▪ Torrance ▪ Tucson ▪ Washington

649

December 17, 2020
Page 2

document after receipt of your November 22, 2019. Finally, each document was prepared for the would-be party to the litigation—Garmin.

Below I address our assertions of the attorney-client privilege. However, please note that Garmin only has to establish the applicability of a single privilege in order to assert privilege. In other words, because Garmin has already established that the work-product privilege is applicable to each of the emails you identify it had the right to not produce the documents regardless of whether the additional privilege of attorney-client privilege is also applicable.

**GARMIN 000400**

The partial redaction in this document contains information that was gathered at the direction of Garmin's in-house counsel after Garmin received your complaint of unlawful discrimination on November 22, 2019. Dobbs added to his notes that day for the purpose of providing information to Garmin's in-house counsel to facilitate his efforts to investigate your complaint of unlawful discrimination. These notes were ultimately communicated to Garmin's in-house counsel. As such, the document is also protected by the attorney-client privilege. *See Williams v. Sprint/United Mgmt. Co.,* 238 F.R.D. 633, 639 (D. Kan. 2006) (affirming magistrate judge's finding that attorney-client privilege applied to communications among non-attorneys "where documents 'contained information collected for the dominant purpose of facilitating the attorney's efforts to provide services to the client, and the information in every instance, was, in one form or another, communicated to the attorney.'") (internal citations omitted).

**CTRL00000111-2 and GARMIN 000903**

These entries reflect the same email so I have grouped them together. The attorney-client "privilege 'protects confidential communications by a client to an attorney made in order to obtain legal assistance from the attorney in his capacity as a legal advisor.'" *AKH Co., Inc. v. Univ. Underwriters Ins. Co.*, 300 F.R.D. 684, 693 (D. Kan. 2014) (internal citations omitted). This email is protected by the attorney-client privilege precisely for the reason stated in *AKH*. Cormack received your complaint of unlawful discrimination on November 22, 2019 and sent it to Garmin's in-house counsel for the purpose of obtaining his assistance in his capacity as a legal advisor.

**CTRL00000160-1 (email) and CTRL00000161-1-00000162-3 (attachments)**

This email and the attachments are protected by the attorney-client privilege as the email is a communication among non-attorneys, which contains "'information collected for the dominant purpose of facilitating the attorney's efforts to provide services to the client, and the information in every instance, was, in one form or another, communicated to the attorney.'" *See Williams* 238 F.R.D. at 639 (internal citations omitted). Jared Klein sent this email to John Mudd pursuant to Garmin's investigation of your complaint of unlawful discrimination at the direction of Garmin's in-house counsel. The email was ultimately communicated to Garmin's in-house counsel to facilitate his efforts to investigate your complaint of unlawful discrimination.

December 17, 2020
Page 3

**CTRL00000168-1-   (email)   and   CTRL00000168-2-00000168-3   (attachments)   and CTRL00000125-1**

     These emails are protected by the attorney-client privilege for the same reason so I have grouped them together. The attorney-client privilege protects communications with in-house counsel. *See New Jersey v. Sprint Corp.*, 258 F.R.D. 421, 425 (D. Kan. 2009). With respect to both emails, the privilege applies because they are direct communications with in-house counsel relating to Garmin's investigation of your complaint of unlawful discrimination.

     Finally, you asked for the job titles of two individuals identified on the privilege log. Shanna Lynnes is the Manager of Human Resources Recruiting and Associate Relations. Patrick Desbois is Executive Vice President of Operations.

Sincerely,

Margaret Young

MY:

45346920.1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

GANIYU AYINLA JAIYEOLA,

Plaintiff,

v.                                              Case No.: 2:20-cv-2068-HLT-JPO

GARMIN INTERNATIONAL, INC.,

Defendant.

**PLAINTIFF'S MOTION TO COMPEL DISCOVERY**

**(ACCELERATED HEARING REQUESTED)**

This is an employment discrimination lawsuit[1] in which Garmin International, Inc.

("Garmin"), by failing to hire Plaintiff ("Jaiyeola") (for the "Advanced Materials Engineer -

Metals-19001CL"[2] position he applied and interviewed for over the phone and onsite at Garmin's

Headquarters/Manufacturing Center in Olathe, Kansas) violated Jaiyeola's rights under Title VII

of the Civil Rights Act of 1964, as amended ("Title VII" – Race (African American), Color

(Black), and National Origin (Nigerian)), 29 U.S.C. § 621, et seq. (Age Discrimination in

Employment Act, as amended ("ADEA"), 42 U.S.C. §12112(b)(4) (Disability Association

Discrimination - Title I of the Americans with Disabilities Act ("ADA")), The Kansas Age

Discrimination in Employment Act[3] (Chapter 44, Art. 11, K.S.A., and specifically within the

meaning of subsection (a)(1) of Section 44-1113 of said Act - "KADEA") and 42 U.S.C. § 1983

(Denial of Due Process – "Due Process").  Garmin is also liable for discrimination under Section

---

[1] ECF No. 1, pp. 1-21. Plaintiff's Complaint.
[2] ECF No. 1-17, p. 2. Garmin's Human Resources Email Stating That Plaintiff Was Not Hired.
[3] http://www.kslegislature.org/li/b2019_20/statute/044_000_0000_chapter/044_011_0000_article
/044_011_0013_section/044_011_0013_k/

703(a) of Title VII because the fact that Jaiyeola was not hired by Garmin was based on the influence of a Garmin employee, Mr. Jeff Minelli (Garmin's Director of Mechanical Engineering), with a discriminatory motive; Subordinate Bias Liability ("cat's paw" theory of liability)[4].  Defendant's motion to dismiss the 42 U.S.C. § 1983 claim was granted by the Court but the pleading (in the same Defendant's motion) to dismiss the Subordinate Bias Liability claim was Denied[5].

Plaintiff states as follows:

**1.**    Plaintiff is a *pro se*.  In *Hall v. Witteman*, this Court stated that "*Pro se* complaints, however inartfully pleaded, must be liberally construed, and are held to less stringent standards than formal pleadings drafted by lawyers. *Erickson v. Pardus*, ___ U.S. ___, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007). See *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005)……"[6]. The Sixth Circuit asserted that "We recognize that *pro se* litigants impose a burden on the courts and that clients are usually better off if represented by counsel."[7].  The U.S. Supreme Court has stated that *pro se*[8]pleadings and motions should be viewed liberally and held to a lesser standard than those drafted by Attorneys.

**2.**    Pursuant to Fed. R. Civ. P. 37(a)(3)(B)(iv) and Local Rule 37.1, Plaintiff moves for an Order compelling Defendant Garmin to produce **Defendant documents** that have the following Bates Numbers (**See Ex. A**): **1.)** GARMIN 000440, **2.)** CTRL00000111-2, **3.)** CTRL00000160-1 (email) - 00000161-1-00000162-3 (attachments), **4.)** GARMIN 000903, **5.)** CTRL00000168-1 -

---

[4] *Equal Employment Opportunity Commission v. BCI Coca-Cola Bottling Company of Los Angeles*, 450 F. 3d 476 (10th Cir. 2006).
[5] ECF No. 17, pp. 4-6. Violation of Title VII Based on Subordinate Bias Liability.
[6] *Hall v. Witteman*, 569 F. Supp. 2d 1208 (D. Kan. 2008).
[7] *King v. Curtis*, No. 14-2614 (6th Cir. 2015).
[8] *Haines v. Kerner*, 404 U.S. 520 (1971).

2

(email) - 00000168-2-00000168-3 (attachments), and **6.)** CTRL00000125-1.

**3.**  Attached hereto and incorporated herein is Plaintiff's Rule 37.2 Certification (**See Ex. B**).

**4.**  The Memorandum in Support of this motion is being filed contemporaneously.

**5.**  Plaintiff requests an ***in camera*** review of the **Defendant documents listed in paragraph 2 above**.

**6.**  In a letter to Plaintiff dated December 17, 2020, Defendant Attorney, Ms. Margaret Young, stated: "The partial redaction in this document contains information that was gathered at the direction of Garmin's in-house counsel after Garmin received your complaint of unlawful discrimination on November 22, 2019. Dobbs added to his notes that day for the purpose of providing information to Garmin's in-house counsel to facilitate his efforts to investigate your complaint of unlawful discrimination. These notes were ultimately communicated to Garmin's in-house counsel.". **(See Ex. C, Page 2 at "GARMIN 000400")**.  **"GARMIN 000400"** is a typographical error by the Defendant.  **"GARMIN 000400" is actually "GARMIN 000440".  GARMIN 000440 was created by Dobbs on August 14, 2019.  Dobbs, a Defendant fact witness "added to his notes" on November 22, 2019 "at the direction of Garmin's in-house counsel"**.

**7.**  Plaintiff has noticed a Defendant fact witness for deposition on January 21, 2021 and the **defendant documents in paragraph 2 above are needed for that deposition**.

**8.**  Plaintiff is requesting for an **accelerated hearing of this motion** because the defendant documents in paragraph 2 above are needed for a Defendant fact witness deposition on January 21, 2021.

**9.**  For all the above reasons and for the reasons stated in the Memorandum, Plaintiff

respectfully ask[9] this Court to enter an Order for the following:

**A.**   Compel Defendant Garmin to produce GARMIN 000440 that was created by Benjamin Dobbs (a Garmin fact witness) on August 14, 2019;

**B.**   Compel Defendant Garmin to produce GARMIN 000440 that was created by Benjamin Dobbs (a Garmin fact witness) on November 22, 2019;

**C.**   Sanction the "Garmin's in-house counsel" at whose "direction" **another GARMIN 000440 document was created by Dobbs on November 22, 2019**.  On November 22, 2019, **"Dobbs added to his notes"** (Dobbs interview notes) that was **created on August 14, 2019** when Dobbs interviewed Plaintiff;

**D.**   Sanction the Defendant for the fraud that resulted when "Dobbs added to his notes" (Taleo record that Dobbs created on Plaintiff on August 14, 2019) at the "direction" of "Garmin's in-house counsel" on November 22, 2019;

**E.**   Compel Defendant Garmin to produce the following **Five (5) Electronic Mails**:

    **I.**   CTRL00000111-2

    **II.**   CTRL00000160-1(email) - 00000161-1-00000162-3 (attachments)

    **III.**   GARMIN 000903

    **IV.**   CTRL00000168-1-(email)-00000168-2-00000168-3 (attachments)

    **V.**   CTRL00000125-1

---

[9] Pursuant to <u>Fed. R. Civ. P. 37(a)(3)(B)(iv)</u> and Local Rule 37.1.

Respectfully submitted,

Dated: January 12, 2021

_____

Ganiyu A. Jaiyeola, Ph.D., MBA

749 Preserve Circle Drive SE #6

Grand Rapids, Michigan 49548

Tel.: 616.635.4025

ganiyu.jaiyeola@gmail.com

PLAINTIFF

*pro se*

## CERTIFICATE OF SERVICE

Plaintiff hereby certifies that on this 12th day of January, 2021, Plaintiff e-mailed this

document to the District Court Clerk's office where it would be filed using the Court's CM/ECF

system which will automatically send the document to the following Defendants' Attorneys:

Kerri S. Reisdorff

Margaret K. Young

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

4520 Main Street, Suite 400

Kansas City, Missouri 64111

kerri.reisdorff@ogletree.com

margaret.young@ogletree.com

ATTORNEYS FOR DEFENDANT

Respectfully submitted,

_____

Ganiyu A. Jaiyeola, Ph.D., MBA

PLAINTIFF

*pro se*

6

**Index of Exhibits**

**Ex. A**          Defendant Garmin's Privilege Log dated December 14, 2020.

**Ex. B**          Plaintiff's Rule 37.2 Certification.

**Ex. B1**         December 14 to December 15, 2020 Electronic Mails between the parties.

**Ex. B2**         December 17 to December 20, 2020 Electronic Mails between the parties.

**Ex. B3**         December 22, 2020 Electronic Mail between the parties.

**Ex. C**          December 17, 2020 letter from Defendant Attorney, Ms. Margaret Young, to

                   Plaintiff.

# Ex. A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **GANIYU AYINLA JAIYEOLA,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )     **Case No. 2:20-cv-2068-JWB-JPO** |
| | ) |
| **GARMIN INTERNATIONAL, INC.,** | ) |
| | ) |
| Defendant. | ) |

### DEFENDANT GARMIN INTERNATIONAL, INC.'S PRIVILEGE LOG

| Bates Nos. | Type | Date of Creation/ Sent Date | From | To | CC | Privilege Type | Description/Basis for Withholding Document |
|---|---|---|---|---|---|---|---|
| GARMIN 000440 | .pdf | 8/14/2019 | Benjamin Dobbs | N/A | N/A | Attorney-Client Privilege and Work-Product Privilege | Partial redaction reflects pdf regarding Plaintiff's on-site interview that were compiled pursuant to Garmin's investigation of Plaintiff's complaint of unlawful discrimination per the direction of David Kight.[1] |
| CTRL00000111-2 | Email | 11/22/2019 | Michelle Cormack | Laurie Minard, Lynnette Huscher, David Kight | Shanna Lynnes, Jeff Minelli, John Mudd | Attorney-Client Privilege and Work-Product Privilege | Reflects communication with David Kight for purpose of providing legal advice regarding Plaintiff's complaint of unlawful discrimination. |
| CTRL00000160-1 (email) - 00000161-1-00000162-3 (attachments) | Email and attachment | 11/22/2019 | Jared Klein | John Mudd | N/A | Attorney-Client Privilege and Work-Product Privilege | Reflects communication and notes regarding Plaintiff's on-site interview that were compiled pursuant to Garmin's investigation of Plaintiff's complaint of unlawful discrimination per the direction of David Kight. |

---

[1] David Kight is an attorney and member of Garmin's In-House Legal Department.

| Bates Nos. | Type | Date of Creation/ Sent Date | From | To | CC | Privilege Type | Description/Basis for Withholding Document |
|---|---|---|---|---|---|---|---|
| CTRL000003 02-1 | Email | 11/22/2019 | Lynette Huscher | Michelle Cormack, Laurie Minard, David Kight | Shanna Lynnes, Jeff Minelli, John Mudd | Attorney-Client Privilege and Work-Product Privilege | Reflects request for legal advice from David Kight regarding Garmin's response to Plaintiff's complaint of unlawful discrimination. |
| CTRL000003 02-1 | Email | 11/22/2019 | David Kight | Lynnette Huscher | N/A | Attorney-Client Privilege and Work-Product Privilege | Reflects legal advice rendered by David Kight regarding Garmin's response to Plaintiff's complaint of unlawful discrimination. |
| CTRL000003 08-1 | Email | 11/22/2019 | David Kight | Kim Pikul[2] | N/A | Attorney-Client Privilege | Reflects communication between Garmin's lawyers regarding Plaintiff's complaint of unlawful discrimination. |
| CTRL000003 32-1 | Email | 11/22/2019 | David Kight | Andrew Etkind[3] | N/A | Attorney-Client Privilege | Reflects communication between Garmin's lawyers regarding Plaintiff's complaint of unlawful discrimination. |
| CTRL000004 20-1 | Email | 11/22/2019 | Lynette Huscher | Laurie Minard | N/A | Attorney-Client Privilege and Work-Product Privilege | Reflects communication containing legal advice rendered by David Kight regarding Garmin's response to Plaintiff's complaint of unlawful discrimination. |
| GARMIN 000903 | Email | 11/22/2019 | Michelle Cormack | Laurie Minard, Lynnette Huscher, David Kight | Shanna Lynnes, Jeff Minelli, John Mudd | Attorney-Client Privilege and Work-Product Privilege | Partial redaction reflects communication with David Kight for purpose of providing legal advice regarding Plaintiff's complaint of unlawful discrimination. |

[2] Kim Pikul is an attorney and member of Garmin's In House Legal Department.
[3] Andrew Etkind is Garmin's General Counsel.

2

| Bates Nos. | Type | Date of Creation/ Sent Date | From | To | CC | Privilege Type | Description/Basis for Withholding Document |
|---|---|---|---|---|---|---|---|
| CTRL000001 68-1- (email) - 00000168-2-00000168-3 (attachments) | Email | 11/24/2019 | John Mudd | Lynette Huscher, Michelle Cormack, Laurie Minard, David Kight | Shanna Lynnes, Jeff Minelli | Attorney-Client Privilege and Work-Product Privilege | Reflects communication with David Kight regarding Plaintiff's on-site interview relating to Garmin's investigation of Plaintiff's complaint of unlawful discrimination per the direction of David Kight. |
| CTRL000001 21-1 | Email | 11/25/2019 | Lynette Huscher | John Mudd, Michelle Cormack, Laurie Minard, David Kight | Shanna Lynnes, Jeff Minelli | Attorney-Client Privilege and Work-Product Privilege | Reflects communication with David Kight regarding Garmin's response to Plaintiff's complaint of unlawful discrimination. |
| CTRL000002 77-1 | Email | 11/25/2019 | Andrew Etkind | David Kight | N/A | Attorney-Client Privilege | Reflects communication between Garmin's lawyers regarding Garmin's investigation of Plaintiff's complaint of unlawful discrimination. |
| CTRL000002 86-1 | Email | 11/25/2019 | Andrew Etkind | David Kight | N/A | Attorney-Client Privilege | Reflects communication between Garmin's lawyers regarding Garmin's investigation of Plaintiff's complaint of unlawful discrimination. |
| CTRL000002 86-1 | Email | 11/25/2019 | David Kight | Andrew Etkind | N/A | Attorney-Client Privilege | Reflects communication between Garmin's lawyers regarding Garmin's investigation of Plaintiff's complaint of unlawful discrimination. |
| CTRL000002 88-1 | Email | 11/25/2019 | David Kight | Lynnette Huscher, Laurie Minard | N/A | Attorney-Client Privilege and Work-Product Privilege | Reflects communication from David Kight providing legal advice relating to Garmin's investigation of Plaintiff's complaint of unlawful discrimination. |

3

Appellate Case: 21-3114   Document: 010110544162   Date Filed: 07/06/2021   Page: 663

| Bates Nos. | Type | Date of Creation/ Sent Date | From | To | CC | Privilege Type | Description/Basis for Withholding Document |
|---|---|---|---|---|---|---|---|
| CTRL000002 96-1 | Email | 11/25/2019 | Laurie Minard | David Kight, Lynnette Huscher, Andrew Etkind | N/A | Attorney-Client Privilege and Work-Product Privilege | Reflects communication with David Kight and Andrew Etkind regarding Garmin's investigation of, and the response to, Plaintiff's complaint of unlawful discrimination. |
| CTRL000002 96-1- 00000296-2 | Email | 11/25/2019 | David Kight | Laurie Minard, Lynnette Huscher, Andrew Etkind | N/A | Attorney-Client Privilege and Work-Product Privilege | Reflects communication from David Kight providing legal advice regarding Garmin's investigation of, and the response to, Plaintiff's complaint of unlawful discrimination. |
| CTRL000002 98-1 | Email | 11/25/2019 | David Kight | Andrew Etkind | N/A | Attorney-Client Privilege | Reflects communication between Garmin's lawyers regarding Garmin's investigation of Plaintiff's complaint of unlawful discrimination. |
| CTRL000003 00-1 | Email | 11/25/2019 | David Kight | Andrew Etkind | N/A | Attorney-Client Privilege | Reflects communication between Garmin's lawyers regarding Garmin's investigation of Plaintiff's complaint of unlawful discrimination. |
| CTRL000003 04-1 | Email | 11/25/2019 | David Kight | Andrew Etkind | N/A | Attorney-Client Privilege | Reflects communication between Garmin's lawyers regarding Garmin's investigation of Plaintiff's complaint of unlawful discrimination. |
| CTRL000003 04-1 | Email | 11/25/2019 | Andrew Etkind | David Kight | N/A | Attorney-Client Privilege | Reflects communication between Garmin's lawyers regarding the investigation of Plaintiff's complaint of unlawful discrimination. |
| CTRL000003 23-1 | Email | 11/25/2019 | David Kight | Andrew Etkind | N/A | Attorney-Client Privilege | Reflects communication between Garmin's lawyers regarding Garmin's investigation of Plaintiff's complaint of unlawful discrimination. |

4

| Bates Nos. | Type | Date of Creation/ Sent Date | From | To | CC | Privilege Type | Description/Basis for Withholding Document |
|---|---|---|---|---|---|---|---|
| CTRL000003 23-1 | Email | 11/25/2019 | Andrew Etkind | David Kight | N/A | Attorney-Client Privilege | Reflects communication between Garmin's lawyers regarding Garmin's investigation of Plaintiff's complaint of unlawful discrimination. |
| CTRL000000 415-1 | Email | 11/25/2019 | Laurie Minard | Patrick Desbois | N/A | Attorney-Client Privilege and Work-Product Privilege | Reflects communication containing thoughts and mental impressions of David Kight regarding the investigation of Plaintiff's complaint of unlawful discrimination. |
| CTRL000001 25-1 | Email | 11/25/2019 | John Mudd | Lynette Huscher, Michelle Cormack, Laurie Minard, David Kight | Shanna Lynnes, Jeff Minelli | Attorney-Client Privilege and Work-Product Privilege | Reflects communication with David Kight regarding Garmin's investigation into Plaintiff's complaint of unlawful discrimination. |
| GARMIN 000924 | Email | 11/25/2019 | David Kight | Laurie Minard, Lynnette Hushcer, Andrew Etkind | N/A | Attorney-Client Privilege and Work-Product Privilege | Partial redaction reflects communication from David Kight providing legal advice regarding Garmin's investigation of, and the response to, Plaintiff's complaint of unlawful discrimination. |
| | | 11/26/19 – To Present | | | | Attorney-Client Privilege and Work-Product Privilege | Correspondence between Garmin and its legal counsel related to the defense of Plaintiff's charges of discrimination and his lawsuit. |
| GARMIN 001082 | Email | 11/27/209 | David Kight | Lynnette Huscher | N/A | Attorney-Client Privilege | Partial redaction reflects communication from David Kight regarding Plaintiff's EEOC Complaint. |

| Bates Nos. | Type | Date of Creation/ Sent Date | From | To | CC | Privilege Type | Description/Basis for Withholding Document |
|---|---|---|---|---|---|---|---|
| GARMIN 000444 | Email | 10/12/2020 | David Kight | Kerri Reisdorff, Margaret Young[4] | N/A | Attorney-Client Privilege | Partial redaction reflects communication amongst Garmin's counsel regarding Plaintiff's lawsuit. |
| GARMIN 000522 | Email | 10/12/2020 | David Kight | Kerri Reisdorff, Margaret Young | N/A | Attorney-Client Privilege | Partial redaction reflects communication amongst Garmin's counsel regarding Plaintiff's lawsuit. |
| GARMIN 000528 | Email | 10/12/2020 | David Kight | Kerri Reisdorff, Margaret Young | N/A | Attorney-Client Privilege | Partial redaction reflects communication amongst Garmin's counsel regarding Plaintiff's EEOC Complaint. |

Respectfully submitted,

/s/ Margaret K. Young
Kerri S. Reisdorff      KS #19709
Margaret K. Young     KS #78847
OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.
4520 Main Street, Suite 400
Kansas City, Missouri 64111
816-471-1301
816-471-1303 *(Facsimile)*
kerri.reisdorff@ogletree.com
margaret.young@ogletree.com

**ATTORNEYS FOR DEFENDANT**

---

[4] Kerri Reisdorff and Margaret Young are outside counsel for Garmin.

6

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 14th day of December, 2020, a true and correct copy of the foregoing was served via electronic mail to the following:

Ganiyu Ayinla Jaiyeola
749 Preserve Circle Dr., SE, Apt. 6
Grand Rapids, MI 49548
616-635-4025
Ganiyu.jaiyeola@gmail.com

**PLAINTIFF PRO SE**

/s/ Margaret K. Young
**ATTORNEY FOR DEFENDANT**

45222494.1

# Ex. B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

|  |  |  |
|---|---|---|
| GANIYU AYINLA JAIYEOLA, | ) ) ) | Case No.: 2:20-cv-2068-HLT-JPO |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| GARMIN INTERNATIONAL, INC., | ) ) | |
| Defendant. | ) ) ) ) ) | |

## PLAINTIFF'S MOTION TO COMPEL DISCOVERY
## PLAINTIFF'S CERTIFICATE REGARDING DUTY TO CONFER

Plaintiff states as follows regarding the Duty to Confer pursuant to Local Rule 37.2:

## COMPLIANCE WITH LOCAL RULE 37.2

**1.** Plaintiff is a *Pro se*. The U.S. Supreme Court has stated that *pro se* pleadings and motions should be viewed liberally and held to a lesser standard than those drafted by Attorneys.[1]. "*Pro se* complaints, however inartfully pleaded, must be liberally construed, and are held to less stringent standards than formal pleadings drafted by lawyers. *Erickson v. Pardus*, ___ U.S. ___, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007). See *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005)". "We recognize that *pro se* litigants impose a burden on the courts and that clients are usually better off if represented by counsel."[2].

**2.** On the 5th day of October, 2020, Plaintiff Ganiyu Jaiyeola's First Set of

---

[1] *Haines v. Kerner*, 404 U.S. 520 (1971).
[2] *King v. Curtis*, No. 14-2614 (6th Cir. 2015).

Interrogatories, Plaintiff's First Requests to Admit, and Plaintiff's First Request for Production of

Documents were served[3] to Defendant Garmin via electronic mail.

    **3.**       The Court granted[4] Defendant's motion for a Protective Order on November 9,

2020.

    **4.**       Defendant provided answers to Plaintiff's discovery on November 20, 2020.

    **5.**       Defendant provided documents to Plaintiff on December 1, 2020.

    **6.**       Plaintiff sent three (3) Golden Rule Letters to the Defendant (dated November 29,

2020; December 4, 2020; and December 6, 2020).

    **7.**       On **December 14, 2020**, the Defendant sent Plaintiff a letter to address the issues

that Plaintiff raised in his letters (dated November 29, 2020; December 4, 2020; and December 6,

2020) to the Defendant.  **The Defendant provided a Privilege Log to Plaintiff**, produced

documents to Plaintiff, and provided First Supplemental Answers and Objections to Plaintiff's

First Interrogatories to Defendant.

    **8.**       Plaintiff and the Defendant Attorneys had a video discussion meeting on

December 16, 2020.

    **9.**       **On December 17, 2020, the Defendant sent Plaintiff a Privilege Log letter to**

**address the concerns that Plaintiff raised** about **One (1)** fact witness document and **Five (5)**

electronic mails in the Defendant's Privilege Log.  The **Defendant documents** have the following

Bates Numbers: **1.)** GARMIN 000440, **2.)** CTRL00000111-2, **3.)** CTRL00000160-1 (email) -

00000161-1-00000162-3 (attachments), **4.)** GARMIN 000903, **5.)** CTRL00000168-1 - (email) -

00000168-2-00000168-3 (attachments), and **6.)** CTRL00000125-1.  The Defendant also

---

[3] ECF No. 20.
[4] ECF No. 39, 40.

requested for the parties to confer.

10.     On December 18, 2020, Plaintiff urge the Court to grant his Unopposed Motion[5] for an extension of time (from December 19, 2020 to January 18, 2021) to file a Motion to Compel Discovery on Plaintiff's First Set of Interrogatories, Plaintiff's First Requests to Admit, and Plaintiff's First Request for Production of Documents to the Defendant.

11.     On December 18, 2020, the Court Granted[6] "PLAINTIFF'S UNOPPOSED MOTION FOR EXTENSION OF TIME TO FILE MOTION TO COMPEL DISCOVERY"; **the time was extended till January 19, 2021**.

12.     The parties conferred on December 21, 2020 but unfortunately could not come to any agreement on the defendant documents in dispute.  The **Defendant agreed to provide a response on the documents in the first week of January 2021**.

13.     In an email dated December 22, 2020, Plaintiff informed the Defendant as follows: **"If the Defendant does not produce the documents that Plaintiff is requesting from the Privilege Log by January 1, 2021, Plaintiff will file a Motion to Compel."**.

14.     Electronic mail discussions between the parties are in **Ex. B1 (**December 14 to December 15, 2020**), Ex. B2 (**December 17 to December 20, 2020**), and Ex. B3 (**December 22, 2020**)**.

15.     **As of January 11, 2021, the Defendant has not produced the documents in dispute to Plaintiff**.

16.     Plaintiff has noticed a Defendant fact witness for **deposition on January 21, 2021** and the **defendant documents in dispute are needed for that deposition**.

---

[5] ECF No. 52.
[6] ECF No. 53.

**17.** Court intervention is now necessary to resolve the discovery dispute regarding the

**defendant documents in dispute (See paragraph 9 above)**. Plaintiff is requesting for an

accelerated hearing of the resolution of this dispute because the **defendant documents in dispute**

**are needed for a Defendant fact witness deposition on January 21, 2021**.

Respectfully submitted,

Dated: January 12, 2021

_____

Ganiyu A. Jaiyeola, Ph.D., MBA
749 Preserve Circle Drive SE #6
Grand Rapids, Michigan 49548
Tel.: 616.635.4025
ganiyu.jaiyeola@gmail.com

PLAINTIFF
*pro se*

-4-

## CERTIFICATE OF SERVICE

Plaintiff hereby certifies that on this 12th day of January, 2021, Plaintiff e-mailed the above

document to the Clerk's office where it would be filed using the Court's CM/ECF system which

will automatically send the document to the following:


Kerri S. Reisdorff

Margaret K. Young

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

4520 Main Street, Suite 400

Kansas City, Missouri 64111


ATTORNEYS FOR DEFENDANT



Dated: January 12, 2021                                        _____

Ganiyu A. Jaiyeola, Ph.D., MBA

PLAINTIFF
*pro se*

-5-

# Ex. B1

 Gmail

**Ganiyu Jaiyeola <ganiyu.jaiyeola@gmail.com>**

---

## Jaiyeola/Garmin
2 messages

---

**Reisdorff, Kerri S.** <kerri.reisdorff@ogletree.com>                    Mon, Dec 14, 2020 at 4:22 PM
To: Ganiyu Jaiyeola <ganiyu.jaiyeola@gmail.com>
Cc: "Young, Maggie" <margaret.young@ogletreedeakins.com>, "Limback, Amy R." <amy.limback@ogletreedeakins.com>,
"Hill, Julie M." <Julie.Hill@ogletreedeakins.com>


Ganiyu – I have attached the following documents:


- Garmin's comprehensive response to your 3 letters to us regarding Garmin's discovery responses

- A privilege log

- Garmin's first supplemental interrogatory responses along with a verification page

- An un-redacted copy of GARMIN431


I believe the attached documents will help us stream-line the identification and discussion of any remaining disputes.   In
addition, we will be sending a link to a supplemental document production tomorrow.


One final note, I hope our discussion on Wednesday will be productive and resolve all outstanding disputes.  You
indicated in your email this morning that in the event a dispute remains you intend to file a motion to compel.  As a
reminder, the Court's scheduling order in Paragraph 3(e) "strongly encouraged" the parties to arrange a telephone
conference with the Court before filing a discovery motion.  While you can certainly proceed with filing a motion, please
note that in the event there are outstanding disputes related to your discovery responses to Garmin, we will be complying
with the Court's preference for an informal conference which will also serve to achieve a more timely and efficient
resolution to any remaining disputes Garmin may have.


Enjoy your evening.


Kerri


**Kerri S. Reisdorff | Ogletree, Deakins, Nash, Smoak & Stewart, P.C.**
4520 Main Street, Suite 400 | Kansas City, MO 64111 | Telephone: 816-410-2245 | Fax: 816-471-1303
kerri.reisdorff@ogletree.com | www.ogletree.com | Bio


*This transmission is intended only for the proper recipient(s). It is confidential and may contain attorney-client privileged information. If you are not the proper
recipient, please notify the sender immediately and delete this message. Any unauthorized review, copying, or use of this message is prohibited.*

---

**5 attachments**

📄 **(2020.12.14) Garmin_s Response to P_s Golden Rule Letters.PDF**
272K

**Garmin_s Privilege Log to Plaintiff (December 14).PDF**
338K

**D Garmin_s First supplemental Answers to P First Interrogatories (12.14.2020).PDF**
280K

**Signed Verification.PDF**
334K

**Unredacted GARMIN431.PDF**
326K

---

**Ganiyu Jaiyeola** <ganiyu.jaiyeola@gmail.com>                    Tue, Dec 15, 2020 at 1:28 PM
To: "Reisdorff, Kerri S." <kerri.reisdorff@ogletree.com>
Cc: "Young, Maggie" <margaret.young@ogletreedeakins.com>, "Limback, Amy R." <amy.limback@ogletreedeakins.com>,
"Hill, Julie M." <Julie.Hill@ogletreedeakins.com>

To effectively utilize the 1 hour discussion time tomorrow (December 16, 2020; 2:00 PM
- 3:00 PM Eastern), Plaintiff has taken a look at the Defendant's Privilege Log.

**General Objection:**
The privilege log is deficient as per the following requirements in this Court:

1. No evidence that " the document was created under the supervision of an attorney".
"The identity of the person(s) for whom the document was prepared, as well as the
identities of those to whom the document and copies of the document were directed,
"including an evidentiary showing based on competent evidence supporting any
assertion that the document was created under the supervision of an attorney;"" (*Taylor
v. LM Ins. Corp.*, Case No. 19-1030-JWB (D. Kan. Nov. 4, 2019); *Sudenga Indus. v.
Glob. Indus.*, Case No. 18-2498-DDC (D. Kan. May. 15, 2020).).

2. Required evidence not provided. "The purpose of preparing the document, including
an evidentiary showing, based on competent evidence, "supporting any assertion that
the document was prepared in the course of adversarial litigation or in anticipation of a
threat of adversarial litigation that was real and imminent;" a similar evidentiary showing
that the subject of communications within the document relates to seeking or giving
legal advice; and a showing, again based on competent evidence, "that the documents
do not contain or incorporate non-privileged underlying facts;"". (*Taylor v. LM Ins.
Corp.*, Case No. 19-1030-JWB (D. Kan. Nov. 4, 2019); *Sudenga Indus. v. Glob. Indus.*,
Case No. 18-2498-DDC (D. Kan. May. 15, 2020).).

3. Number of pages of the documents are not indicated. "...number of pages of the
document;" (*Taylor v. LM Ins. Corp.*, Case No. 19-1030-JWB (D. Kan. Nov. 4,
2019); *Hardman v. Unified Gov't of Wyandotte Cnty.*, Case No. 19-2251-KHV-TJJ (D.
Kan. Aug. 10, 2020)).
===============

**Plaintiff objects to the following in the privilege log:**
GARMIN 000440
CTRL000001 11-2,
CTRL00000160-1 (email) - 00000161-1-00000162-3 (attachments)

GARMIN 000903
CTRL00000168-1- (email)- 00000168-2-00000168-3 (attachments)
CTRL000001 25-1


**A. GARMIN 000440**

1. Dobbs interviewed Plaintiff onsite and was present for Plaintiff's PowerPoint presentation.

2. Document was created on August 14, 2019 (the day Plaintiff interviewed onsite in Olathe, Kansas).

3. Document was not sent to or copied to anybody.

4. Dobbs REDACTED "Final Comments" constitute critical underlying facts.

"The privilege only protects the disclosure of communications, not disclosure of the underlying facts by those who communicated with the attorney.".  (Sudenga Indus. v. Glob. Indus., Case No. 18-2498-DDC (D. Kan. May. 15, 2020)).  "The fact of submission of a document to counsel for legal input is not a protected communication.".  (Burton v. R.J. Reynolds Tobacco Co., Inc., 170 F.R.D. 481 (D. Kan. 1997).).  "The Court ordered the parties to confer and, if unable to resolve their discovery dispute, Plaintiff could file a motion to compel production of the investigation report from Defendant....".  (Hale v. Emporia State Univ., Case No. 16-cv-4182-DDC-TJJ (D. Kan. Feb. 20, 2018).).
---------------

**B. CTRL000001 11-2**

1. Michelle Cormack's email was created on November 22, 2019 by Cormack (the day Plaintiff sent an email to Mr. John Mudd (copied to Michelle Cormack) to complain that Plaintiff was not hired.).

2. The email was sent to an in-house Attorney and other individuals who are not Attorneys.

3. Cormack interviewed Plaintiff on the phone (Phone Screen - HRPS) and onsite.

4. Cormack's email comments on Plaintiff constitute critical underlying facts.

"The privilege only protects the disclosure of communications, not disclosure of the underlying facts by those who communicated with the attorney.".  (Sudenga Indus. v. Glob. Indus., Case No. 18-2498-DDC (D. Kan. May. 15, 2020)).  "The fact of submission of a document to counsel for legal input is not a protected communication.".  (Burton v. R.J. Reynolds Tobacco Co., Inc., 170 F.R.D. 481 (D. Kan. 1997).).  "The

Court ordered the parties to confer and, if unable to resolve their discovery dispute, Plaintiff could file a motion to compel production of the investigation report from Defendant....".  (Hale v. Emporia State Univ., Case No. 16-cv-4182-DDC-TJJ (D. Kan. Feb. 20, 2018).).

-------------

## C. CTRL00000160-1 (email) - 00000161-1-00000162-3 (attachments)

1. Jared Klein's email (and attachments) was created on November 22, 2019 by Klein (the day Plaintiff sent an email to Mr. John Mudd (copied to Ms. Michelle Cormack but NOT to Mr. Jared Klein.) to complain that Plaintiff was not hired.).

2. Email was created by Jared Klein and sent to John Mudd.

3. Neither Klein nor Mudd is an Attorney.

4. Klein interviewed Plaintiff on the phone (Technical Phone Screen - TPS) and onsite.

5. Klein's email comments on Plaintiff constitute critical underlying facts.

"The privilege only protects the disclosure of communications, not disclosure of the underlying facts by those who communicated with the attorney.".  (Sudenga Indus. v. Glob. Indus., Case No. 18-2498-DDC (D. Kan. May. 15, 2020)).  "The fact of submission of a document to counsel for legal input is not a protected communication.".  (Burton v. R.J. Reynolds Tobacco Co., Inc., 170 F.R.D. 481 (D. Kan. 1997).).  "The Court ordered the parties to confer and, if unable to resolve their discovery dispute, Plaintiff could file a motion to compel production of the investigation report from Defendant....".  (Hale v. Emporia State Univ., Case No. 16-cv-4182-DDC-TJJ (D. Kan. Feb. 20, 2018).).

------------------------

## D. GARMIN 000903

1. There is no email document from Michelle Cormack at GARMIN 000903 that showed Cormack sent an email to Laurie Minard,
Lynnette Huscher, David Kight and copied Shanna Lynnes, Jeff Minelli, John Mudd.

2. The GARMIN 000903 email was sent to an in-house Attorney and other individuals who are not Attorneys.

3. Cormack interviewed Plaintiff on the phone (Phone Screen - HRPS) and onsite.

4. Cormack's email comments on Plaintiff constitute critical underlying facts.

"The privilege only protects the disclosure of communications, not disclosure of the underlying facts by those who communicated with the attorney.".  (Sudenga Indus. v.

Glob. Indus., Case No. 18-2498-DDC (D. Kan. May. 15, 2020)).  "The fact of submission of a document to counsel for legal input is not a protected communication.". (Burton v. R.J. Reynolds Tobacco Co., Inc., 170 F.R.D. 481 (D. Kan. 1997).).  "The Court ordered the parties to confer and, if unable to resolve their discovery dispute, Plaintiff could file a motion to compel production of the investigation report from Defendant....".  (Hale v. Emporia State Univ., Case No. 16-cv-4182-DDC-TJJ (D. Kan. Feb. 20, 2018).).

-------------------

### E. CTRL00000168-1- (email)- 00000168-2-00000168-3 (attachments)

1. John Mudd's email (and attachments) was created on November 24, 2019 (Sunday) by Mudd (On November 22, 2019 (Friday), Plaintiff sent an email to Mr. John Mudd (copied to Ms. Michelle Cormack) to complain that Plaintiff was not hired.).

2. The email was sent to an in-house Attorney and other individuals  who are not Attorneys (including Jeff Minelli (Mudd's Supervisor and Minelli interviewed Plaintiff onsite) and Michelle Cormack (Cormack interviewed Plaintiff on the phone (Phone Screen - HRPS) and onsite.)).

3. Mudd interviewed Plaintiff on the phone (Technical Phone Screen - TPS) and onsite.

4. Mudd's email comments on Plaintiff constitute critical underlying facts.

"The privilege only protects the disclosure of communications, not disclosure of the underlying facts by those who communicated with the attorney.".  (Sudenga Indus. v. Glob. Indus., Case No. 18-2498-DDC (D. Kan. May. 15, 2020)).  "The fact of submission of a document to counsel for legal input is not a protected communication.". (Burton v. R.J. Reynolds Tobacco Co., Inc., 170 F.R.D. 481 (D. Kan. 1997).).  "The Court ordered the parties to confer and, if unable to resolve their discovery dispute, Plaintiff could file a motion to compel production of the investigation report from Defendant....".  (Hale v. Emporia State Univ., Case No. 16-cv-4182-DDC-TJJ (D. Kan. Feb. 20, 2018).).

------------------------

### F. CTRL000001 25-1

1. John Mudd's email (and attachments) was created on November 25, 2019 (Monday) by Mudd (On November 22, 2019 (Friday), Plaintiff sent an email to Mr. John Mudd (copied to Ms. Michelle Cormack) to complain that Plaintiff was not hired.  On November 25, 2019 (Monday), Plaintiff called Ms. Laurie Minard's office and sent an email to Minard (copied to Mr. David Kight) to complain that Plaintiff was not hired.).

2. The email was sent to in-house Attorney and other individuals  who are not Attorneys (including Jeff Minelli (Mudd's Supervisor and Minelli interviewed Plaintiff onsite) and Michelle Cormack (Cormack interviewed Plaintiff on the phone (Phone Screen - HRPS)

and onsite.)).

3. Mudd interviewed Plaintiff on the phone (Technical Phone Screen - TPS) and onsite.

4. Mudd's email comments on Plaintiff constitute critical underlying facts.

"The privilege only protects the disclosure of communications, not disclosure of the underlying facts by those who communicated with the attorney.".  (Sudenga Indus. v. Glob. Indus., Case No. 18-2498-DDC (D. Kan. May. 15, 2020)).  "The fact of submission of a document to counsel for legal input is not a protected communication.".  (Burton v. R.J. Reynolds Tobacco Co., Inc., 170 F.R.D. 481 (D. Kan. 1997).).  "The Court ordered the parties to confer and, if unable to resolve their discovery dispute, Plaintiff could file a motion to compel production of the investigation report from Defendant....".  (Hale v. Emporia State Univ., Case No. 16-cv-4182-DDC-TJJ (D. Kan. Feb. 20, 2018).).
-----------------------

[Quoted text hidden]

# Ex. B2

                                        Ganiyu Jaiyeola <ganiyu.jaiyeola@gmail.com>

## Privilege Log

8 messages

---

**Young, Maggie** <margaret.young@ogletree.com>                     Thu, Dec 17, 2020 at 5:31 PM
To: Ganiyu Jaiyeola <ganiyu.jaiyeola@gmail.com>
Cc: "Reisdorff, Kerri S." <Kerri.Reisdorff@ogletreedeakins.com>

Mr. Jaiyeola,

It was nice to speak with you yesterday. Attached please find a letter addressing your concerns with our privilege log. If
you have further concerns after your review and would like to schedule a follow-up call, we are happy to do so.

Thanks and enjoy your evening.

Maggie

**Maggie Young | Ogletree, Deakins, Nash, Smoak & Stewart, P.C.**
4520 Main Street, Suite 400 | Kansas City, MO 64111 | Telephone: 816-410-2231 | Fax: 816-471-1303
margaret.young@ogletree.com | www.ogletree.com | Bio

*This transmission is intended only for the proper recipient(s). It is confidential and may contain attorney-client privileged information. If you are not the proper*
*recipient, please notify the sender immediately and delete this message. Any unauthorized review, copying, or use of this message is prohibited.*

---

 **(2020.12.17) MKY Privilege Log Letter to Plaintiff.pdf**
73K

---

**Ganiyu Jaiyeola** <ganiyu.jaiyeola@gmail.com>                     Thu, Dec 17, 2020 at 8:14 PM
To: "Young, Maggie" <margaret.young@ogletree.com>
Cc: "Reisdorff, Kerri S." <Kerri.Reisdorff@ogletreedeakins.com>

I have great concerns.  I am available to discuss tomorrow (December 18, 2020) from 9:45 AM to 2:00 PM Eastern.

Sincerely,

Ganiyu Jaiyeola, Ph.D., MBA
616 635 4025
[Quoted text hidden]

---

**Reisdorff, Kerri S.** <kerri.reisdorff@ogletree.com>              Fri, Dec 18, 2020 at 8:50 AM
To: Ganiyu Jaiyeola <ganiyu.jaiyeola@gmail.com>, "Young, Maggie" <margaret.young@ogletreedeakins.com>

Gamiyu - I am not available today.  I am available Monday morning. Please let me know if there is a time that will work for
you.

**From:** Ganiyu Jaiyeola <ganiyu.jaiyeola@gmail.com>
**Date:** Thu, Dec 17, 2020, 7:14 PM
**To:** "Young, Maggie" <margaret.young@ogletreedeakins.com>
**CC:** "Reisdorff, Kerri S." <Kerri.Reisdorff@ogletreedeakins.com>
**Subject:** Re: Privilege Log

*[Caution: Email received from external source]*

[Quoted text hidden]
[Quoted text hidden]
[Quoted text hidden]

---

**Ganiyu Jaiyeola** <ganiyu.jaiyeola@gmail.com>                    Fri, Dec 18, 2020 at 9:18 AM
To: "Reisdorff, Kerri S." <kerri.reisdorff@ogletree.com>
Cc: "Young, Maggie" <margaret.young@ogletreedeakins.com>

On Monday (December 21, 2020), I am available from 8:00 AM to 1:00 PM (Eastern).


Sincerely,

Ganiyu Jaiyeola, Ph.D., MBA
616 635 4025
[Quoted text hidden]

---

**Ganiyu Jaiyeola** <ganiyu.jaiyeola@gmail.com>                    Fri, Dec 18, 2020 at 9:34 AM
To: "Young, Maggie" <margaret.young@ogletree.com>
Cc: "Reisdorff, Kerri S." <Kerri.Reisdorff@ogletreedeakins.com>

In the attached file, Plaintiff has made some comments (in-between Defendant's letter) on the Defendants' objections as regards the Privilege Log.


Sincerely,

Ganiyu Jaiyeola, Ph.D., MBA
616 635 4025
[Quoted text hidden]

---

📄 **(2020.12.17) MKY Privilege Log Letter to Plaintiff_Pltf Comments.pdf**
252K

---

**Reisdorff, Kerri S.** <kerri.reisdorff@ogletree.com>              Fri, Dec 18, 2020 at 9:53 AM
To: Ganiyu Jaiyeola <ganiyu.jaiyeola@gmail.com>
Cc: "Young, Maggie" <margaret.young@ogletreedeakins.com>

Let's plan on 10ET.  I will send a link prior to the call.

Kerri

**From:** Ganiyu Jaiyeola <ganiyu.jaiyeola@gmail.com>
**Date:** Fri, Dec 18, 2020, 8:19 AM
**To:** "Reisdorff, Kerri S." <Kerri.Reisdorff@ogletreedeakins.com>
**CC:** "Young, Maggie" <margaret.young@ogletreedeakins.com>

[Quoted text hidden]

---

**Ganiyu Jaiyeola** <ganiyu.jaiyeola@gmail.com>                    Fri, Dec 18, 2020 at 10:16 AM
To: "Reisdorff, Kerri S." <kerri.reisdorff@ogletree.com>
Cc: "Young, Maggie" <margaret.young@ogletreedeakins.com>

10:00 AM  (Eastern) on December 21, 2020 is good.

Sincerely,

Ganiyu Jaiyeola, Ph.D., MBA
616 635 4025

[Quoted text hidden]

---

**Ganiyu Jaiyeola** <ganiyu.jaiyeola@gmail.com>                    Sun, Dec 20, 2020 at 1:53 PM
To: "Reisdorff, Kerri S." <kerri.reisdorff@ogletree.com>
Cc: "Young, Maggie" <margaret.young@ogletreedeakins.com>

Plaintiff's detailed response for the discussion tomorrow (December 21, 2020; 10:00 AM Eastern) is attached.

Sincerely,

Ganiyu Jaiyeola, Ph.D., MBA
616 635 4025

[Quoted text hidden]

---

📄 **(2020.12.17) MKY Privilege Log Letter to Plaintiff_Pltf Comments.pdf**
634K

# Ex. B3

1/10/2021                                 Gmail - Jaiyeola/Garmin

 Gmail

**Ganiyu Jaiyeola <ganiyu.jaiyeola@gmail.com>**

---

## Jaiyeola/Garmin

**Ganiyu Jaiyeola** <ganiyu.jaiyeola@gmail.com>                    Tue, Dec 22, 2020 at 11:14 AM
To: "Reisdorff, Kerri S." <kerri.reisdorff@ogletree.com>
Cc: "Young, Maggie" <margaret.young@ogletreedeakins.com>

"**Outstanding Privilege Log Issues:**
  - GARMIN 000440: We agreed to check with Garmin as to whether it can obtain from Taleo this document as it existed on August 15, 2019 (which would not include the redacted information added on November 22, 2019).  If Garmin is able to do so, we agreed to produce this document to resolve the dispute over this redaction.
  - With respect to the remaining documents originally identified in your December 17, 2020 letter, we agreed to provide you a response to your December 20, 2020 letter in the first week of January 2021."

Plaintiff has done a review of the **"Outstanding Privilege Log Issues"** and realizes the log has gone through at least two discussions and the Defendant is just being cyclical. Considering that Discovery ends on March 31, 2021, and the fact that Plaintiff may need to request for documents after deposing Garmin employees, Plaintiff has decided NOT to do any more discussion on the Privilege Log.  **If the Defendant does not produce the documents that Plaintiff is requesting** from the Privilege Log **by January 1, 2021, Plaintiff will file a Motion to Compel.**

Sincerely,

Ganiyu Jaiyeola, Ph.D., MBA
616 635 4025

On Mon, Dec 21, 2020 at 7:57 PM Reisdorff, Kerri S. <kerri.reisdorff@ogletree.com> wrote:
[Quoted text hidden]

# Ex. C

**Ogletree
Deakins**

**OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.**
*Attorneys at Law*

4520 Main Street, Suite 400
Kansas City, MO 64111
Telephone: 816-471-1301
Facsimile: 816-471-1303
www.ogletreedeakins.com

Margaret Young
816.410.2231
margaret.young@ogletree.com

December 17, 2020

**VIA EMAIL: Ganiyu.jaiyeola@gmail.com**

Mr. Ganiyu A. Jaiyeola
749 Preserve Cir. Dr. SE
Apt. 6
Grand Rapids, MI 49548

RE:    Outstanding Privilege Log Issues

Dear Mr. Jaiyeola:

As we discussed during our Teams meeting yesterday, I am providing additional explanations for our assertions of attorney-client privilege and the work-product privilege  on each of the bates-numbered documents you identified in your email correspondence on December 15, 2020. We hope these explanations will resolve your concerns. As we indicated on our call, we would be happy to schedule a follow-up call to discuss.

As an initial matter, I am universally addressing why each of the documents you identified is protected by the work-product privilege. The work-product privilege applies when "'(1) the materials sought to be protected are documents or tangible things; (2) they were prepared in anticipation of litigation or for trial; and (3) they were prepared by or for a party or a representative of that party.' The court evaluates both whether the documents in question were created because of the anticipation of litigation and whether the party reasonably believed the threat of litigation to be real and imminent." *Sudenga Indus., Inc. v. Global Indus., Inc.*, 2020 WL 2513072, at *8 (D. Kan. May 15, 2020) (internal citation omitted) (emphasis in original).

Each of the documents you identified satisfies all of the requirements set forth above and as such, each is protected from disclosure by the work-product privilege. First, they are all documents or tangible things. Second, each was prepared in anticipation of litigation after Garmin received your complaint of unlawful discrimination on November 22, 2019. As we discussed yesterday, your letter created a reasonable belief that the threat of litigation was real and imminent as it specifically referenced an "EEOC Complaint". Your reference to "EEOC" (which stands for the Equal Employment Opportunity Commission) led Garmin to reasonably believe you had or would be imminently filing a charge of discrimination with the EEOC. You can see on the log that each document was created on or after receipt of your November 22, 2019 letter. The one exception is GARMIN 000440. However, the partial redaction reflects information that was added to that

Atlanta ▪ Austin ▪ Berlin (Germany) ▪ Birmingham ▪ Boston ▪ Charleston ▪ Charlotte ▪ Chicago ▪ Cleveland ▪ Columbia ▪ Dallas ▪ Denver ▪ Detroit Metro ▪ Greenville ▪ Houston
Indianapolis ▪ Kansas City ▪ Las Vegas ▪ London (England) ▪ Los Angeles ▪ Memphis ▪ Mexico City (Mexico) ▪ Miami ▪ Milwaukee ▪ Minneapolis ▪ Montréal (Canada) ▪ Morristown
Nashville ▪ New Orleans ▪ New York City ▪ Oklahoma City ▪ Orange County ▪ Paris (France) ▪ Philadelphia ▪ Phoenix ▪ Pittsburgh ▪ Portland, ME ▪ Portland, OR ▪ Raleigh ▪ Richmond
St. Louis ▪ St. Thomas ▪ Sacramento ▪ San Antonio ▪ San Diego ▪ San Francisco ▪ Seattle ▪ Stamford ▪ Tampa ▪ Toronto (Canada) ▪ Torrance ▪ Tucson ▪ Washington

687

December 17, 2020
Page 2

document after receipt of your November 22, 2019. Finally, each document was prepared for the would-be party to the litigation—Garmin.

Below I address our assertions of the attorney-client privilege. However, please note that Garmin only has to establish the applicability of a single privilege in order to assert privilege. In other words, because Garmin has already established that the work-product privilege is applicable to each of the emails you identify it had the right to not produce the documents regardless of whether the additional privilege of attorney-client privilege is also applicable.

## GARMIN 000400

The partial redaction in this document contains information that was gathered at the direction of Garmin's in-house counsel after Garmin received your complaint of unlawful discrimination on November 22, 2019. Dobbs added to his notes that day for the purpose of providing information to Garmin's in-house counsel to facilitate his efforts to investigate your complaint of unlawful discrimination. These notes were ultimately communicated to Garmin's in-house counsel. As such, the document is also protected by the attorney-client privilege. *See Williams v. Sprint/United Mgmt. Co.*, 238 F.R.D. 633, 639 (D. Kan. 2006) (affirming magistrate judge's finding that attorney-client privilege applied to communications among non-attorneys "where documents 'contained information collected for the dominant purpose of facilitating the attorney's efforts to provide services to the client, and the information in every instance, was, in one form or another, communicated to the attorney.'") (internal citations omitted).

## CTRL00000111-2 and GARMIN 000903

These entries reflect the same email so I have grouped them together. The attorney-client "privilege 'protects confidential communications by a client to an attorney made in order to obtain legal assistance from the attorney in his capacity as a legal advisor.'" *AKH Co., Inc. v. Univ. Underwriters Ins. Co.*, 300 F.R.D. 684, 693 (D. Kan. 2014) (internal citations omitted). This email is protected by the attorney-client privilege precisely for the reason stated in *AKH*. Cormack received your complaint of unlawful discrimination on November 22, 2019 and sent it to Garmin's in-house counsel for the purpose of obtaining his assistance in his capacity as a legal advisor.

## CTRL00000160-1 (email) and CTRL00000161-1-00000162-3 (attachments)

This email and the attachments are protected by the attorney-client privilege as the email is a communication among non-attorneys, which contains "'information collected for the dominant purpose of facilitating the attorney's efforts to provide services to the client, and the information in every instance, was, in one form or another, communicated to the attorney.'" *See Williams* 238 F.R.D. at 639 (internal citations omitted). Jared Klein sent this email to John Mudd pursuant to Garmin's investigation of your complaint of unlawful discrimination at the direction of Garmin's in-house counsel. The email was ultimately communicated to Garmin's in-house counsel to facilitate his efforts to investigate your complaint of unlawful discrimination.

December 17, 2020
Page 3

**CTRL00000168-1-   (email)   and   CTRL00000168-2-00000168-3   (attachments)   and   CTRL00000125-1**

These emails are protected by the attorney-client privilege for the same reason so I have grouped them together. The attorney-client privilege protects communications with in-house counsel. *See New Jersey v. Sprint Corp.*, 258 F.R.D. 421, 425 (D. Kan. 2009). With respect to both emails, the privilege applies because they are direct communications with in-house counsel relating to Garmin's investigation of your complaint of unlawful discrimination.

Finally, you asked for the job titles of two individuals identified on the privilege log. Shanna Lynnes is the Manager of Human Resources Recruiting and Associate Relations. Patrick Desbois is Executive Vice President of Operations.

Sincerely,

Margaret Young

MY:

45346920.1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS


GANIYU AYINLA JAIYEOLA,

        Plaintiff,


v.                                                            Case No.: 2:20-cv-2068-HLT-JPO


GARMIN INTERNATIONAL, INC.,

        Defendant.


**PLAINTIFF'S MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO
COMPEL DEFENDANT TO PRODUCE DOCUMENTS
(ACCELERATED HEARING REQUESTED)**


       This is Plaintiff's Memorandum in support of Plaintiff's Motion[1] to compel Defendant Garmin to produce documents.  For the reasons stated below, Plaintiff's Motion should be Granted.


## I.       INTRODUCTION

       Plaintiff ("Jaiyeola") is a *pro se*.  In *Hall v. Witteman*,[2] this Court stated that "*Pro se* complaints, however inartfully pleaded, must be liberally construed, and are held to less stringent standards than formal pleadings drafted by lawyers. *Erickson v. Pardus*, ___ U.S. ___, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007). See *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005)……".  The Sixth Circuit asserted that "We recognize that *pro se* litigants impose a burden on the courts and that clients are usually better off if represented by counsel."[3]  The U.S.

---

[1] Pursuant to Fed. R. Civ. P. 37(a)(3)(B)(iv) and Local Rule 37.1.
[2] *Hall v. Witteman*, 569 F. Supp. 2d 1208 (D. Kan. 2008).
[3] *King v. Curtis*, No. 14-2614 (6th Cir. 2015).

Supreme Court has stated that *pro se*[4] pleadings and motions should be viewed liberally and held to a lesser standard than those drafted by Attorneys.

This is an employment discrimination lawsuit[5] in which Garmin International, Inc. ("Garmin"), by failing to hire Jaiyeola (for the "Advanced Materials Engineer - Metals-19001CL"[6] position he applied and interviewed for over the phone and onsite at Garmin's Headquarters/Manufacturing Center in Olathe, Kansas) violated Jaiyeola's rights under Title VII of the Civil Rights Act of 1964, as amended ("Title VII" – Race (African American), Color (Black), and National Origin (Nigerian)), 29 U.S.C. § 621, et seq. (Age Discrimination in Employment Act, as amended ("ADEA"), 42 U.S.C. §12112(b)(4) (Disability Association Discrimination - Title I of the Americans with Disabilities Act ("ADA")), The Kansas Age Discrimination in Employment Act[7] (Chapter 44, Art. 11, K.S.A., and specifically within the meaning of subsection (a)(1) of Section 44-1113 of said Act - "KADEA") and 42 U.S.C. § 1983 (Denial of Due Process – "Due Process").  Garmin is also liable for discrimination under Section 703(a) of Title VII because the fact that Jaiyeola was not hired by Garmin was based on the influence of a Garmin employee, Mr. Jeff Minelli (Garmin's Director of Mechanical Engineering), with a discriminatory motive; Subordinate Bias Liability ("cat's paw" theory of liability)[8].  Defendant's motion to dismiss the 42 U.S.C. § 1983 claim was granted by the Court but the pleading (in the same Defendant's motion) to dismiss the Subordinate Bias Liability claim was Denied[9].

Dr. Min Kao (**Male, Asian American - originally from Taiwan**; East Asia) co-founded Garmin with Gary Burrell (**Male, White American**) in October 1989.  Kao, currently the Executive Chairman of Garmin, "…led the development of the first GPS navigator to be certified by the FAA."[10] and for all intents and purposes the GPS technology brain for the establishment of Garmin.

---

[4] *Haines v. Kerner*, 404 U.S. 520 (1971).
[5] ECF No. 1, pp. 1-21. Plaintiff's Complaint.
[6] ECF No. 1-17, p. 2. Garmin's Human Resources Email Stating That Plaintiff Was Not Hired.
[7] http://www.kslegislature.org/li/b2019_20/statute/044_000_0000_chapter/044_011_0000_article/044_011_0013_section/044_011_0013_k/
[8] *Equal Employment Opportunity Commission v. BCI Coca-Cola Bottling Company of Los Angeles*, 450 F. 3d 476 (10th Cir. 2006).
[9] ECF No. 17, pp. 4-6. Violation of Title VII Based on Subordinate Bias Liability.
[10] Garmin Executive Team: https://www.garmin.com/en-US/company/leadership/executive/

A diversity rating report on Garmin concluded that "Diverse employees at Garmin International score the company 64/100 across various culture categories, placing Garmin International in the bottom 45% of companies in the United States with 10,000+ Employees for Comparably's diversity score.  The Diversity score provides insights into how diverse employees feel and rate their work experience at Garmin International across various culture dimensions."[11]. In comparison, Trimble (https://www.trimble.com/), a Garmin competitor, scored "77/100"[12] and placed at "top 10%"[13].

**Garmin's significantly incredibly low Diversity Rating (for an American multinational technology company) is strongly confirmed by the multiple employment discrimination lawsuits against Garmin in the United States since 2009 to date**.  A former **Female** Garmin employee stated the following in her Complaint: "This is an employment case based upon and arising under the **Family and Medical Leave Act**, as amended, 29 U.S.C. § 2611 et seq. ("FMLA"); the **Americans with Disabilities** Act, 42 U.S.C. § 12101 et seq. ("ADA") the **Age Discrimination** in Employment Act, 29 U.S.C. § 621 et seq. ("ADEA")"[14].  In 2009[15] and 2010[16], **failure-to-hire employment discrimination lawsuits** based on "Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, et seq., for employment discrimination on the basis of **race, color, religion, gender, or national origin**." and "Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §§ 621, et seq., for employment discrimination on the basis of age (age 40 or older)." were filed against Garmin.  In 2017, a Garmin employee filed an Equal Employment Opportunity Commission ("EEOC") charge of discrimination based on "**race, sex and national origin discrimination** and **retaliation** under Title VII"[17] against Garmin **after working for Garmin for 11 years**: **1.)** "**Plaintiff is a black female from Brazil, South America**. She has been a **naturalized citizen**

---

[11] https://www.comparably.com/companies/garmin-international/diversity (as it appeared on October 28, 2020).

[12] https://www.comparably.com/companies/trimble/diversity (as it appeared on October 28, 2020).

[13] *Id*.

[14] *Peterson v. Garmin International, Inc.*, No. 2:09-cv-02659-JAR (D. Kan. Dec. 22, 2009); ECF No. 1, p. 1 at ¶ "1".

[15] *Leo v. Garmin Int'l, Inc.*, No. 2:09-cv-02139-KHV (D. Kan. 2009), ECF No. 1, p. 1.

[16] *Leo v. Garmin Int'l, Inc.*, No. 2:10-cv-02495-JTM-DJW (D. Kan. 2010), ECF No. 1-1, p. 1.

[17] *Antunes v. Garmin International, Inc.*, No. 2:18-cv-02697-JAR-KGG (D. Kan. Dec. 18, 2018), ECF No. 1, ¶ 9.

of the United States since 2009."[18]; **2.)** "**Garmin's culture shows a preference for white employees and male employees**. For example, in July 2016, **a Garmin employee sent an email asking for hand models, specifically Caucasian hand models**."[19]; **3.)** "Garmin's selection procedures and practices resulted in **a workforce at its headquarters in 2017 that was eighty-two percent (82%) white, two and one-half percent (2.5%) black and two and two-tenths percent (2.2%) Hispanic."**[20]; and **4.)** "Garmin's selection procedures and practices resulted in **a workforce at its headquarters in 2017 that was seventy-seven percent (77%) male and twenty-three percent (23%) female."**[21].

Plaintiff interviewed[22] onsite at Garmin Headquarters/Manufacturing Center in Olathe, Kansas, on August 14, 2019 and noticed the following: **1.)** The Senior Technical Recruiter who interviewed Plaintiff over the phone and onsite was a **White Female**; **2.)** Plaintiff was given a tour of Garmin's facilities by a **White Female**; **3.)** The Technical Team that interviewed Plaintiff were **8 White Males**, and **4.)** The Garmin Engineers that attended Plaintiff's PowerPoint presentation were **14 White Males (93%)** and **1 White Female (7%)**.

## II.     PRELIMINARY STATEMENTS

**1.**     Pursuant to Fed. R. Civ. P. 37(a)(3)(B)(iv) and Local Rule 37.1, Plaintiff moves for an Order compelling Defendant Garmin to produce **Defendant documents** that have the following Bates Numbers (**See Ex. A**): **1.)** GARMIN 000440, **2.)** CTRL00000111-2, **3.)** CTRL00000160-1 (email) - 00000161-1-00000162-3 (attachments), **4.)** GARMIN 000903, **5.)** CTRL00000168-1 - (email) - 00000168-2-00000168-3 (attachments), and **6.)** CTRL00000125-1.

**2.**     According to Garmin's "Hiring and Transfer/Promotion Procedure", "4.6 **Taleo is the applicant tracking system used by associates to apply for positions at Garmin and by recruiters to review, hire, and store candidate interview documents**.".  **See Ex. B**.

**3.**     According to Garmin's "Hiring and Transfer/Promotion Procedure", "5.5.2 All candidate records will be stored in Taleo.".  **See Ex. C**.

**4.**     According to Garmin's "Hiring and Transfer/Promotion Procedure", "6.2 Interview

---

[18] *Id*; ¶ 12.
[19] *Id*; ¶ 26.
[20] *Id*; ¶ 45.
[21] *Id*; ¶ 47.
[22] ECF No. 1-14, p. 2.  Plaintiff's Interview Schedule on August 14, 2019.

notes for candidates will be stored in Taleo.".  **See Ex. D**.

   5.    Benjamin Dobbs interview notes of August 14, 2019, constituted a stored Taleo record on Plaintiff.  **See Ex. E**.

   6.    The stored interview notes that Dobbs created on Plaintiff on August 14, 2019 constituted a Taleo record on Plaintiff and should not be changed or modified in any way.

   **7.    A Taleo record created by Dobbs on Plaintiff on November 22, 2019 must be a new record and not an added record to the Taleo record Dobbs created on Plaintiff on August 14, 2019.**

## III.    ARGUMENT

   The Defendants' arguments are in the Defendant's letter (dated December 17, 2020) to Plaintiff.

**GARMIN 000440**

**DEFENDANT (See Ex. F, Page 2 at "GARMIN 000400"; "GARMIN 000400" is "GARMIN 000440"):**

   The partial redaction in this document contains information that was gathered at the direction of Garmin's in-house counsel after Garmin received your complaint of unlawful discrimination on November 22, 2019. Dobbs added to his notes that day for the purpose of providing information to Garmin's in-house counsel to facilitate his efforts to investigate your complaint of unlawful discrimination. These notes were ultimately communicated to Garmin's in-house counsel. As such, the document is also protected by the attorney-client privilege. *See Williams v. Sprint/United Mgmt. Co.,* 238 F.R.D. 633, 639 (D. Kan. 2006) (affirming magistrate judge's finding that attorney-client privilege applied to communications among non-attorneys "where documents 'contained information collected for the dominant purpose of facilitating the attorney's efforts to provide services to the client, and the information in every instance, was, in one form or another, communicated to the attorney.'") (internal citations omitted).

**PLAINTIFF:**

   1.    Dobbs interviewed Plaintiff onsite at Garmin Headquarters/Manufacturing Center in Olathe, Kansas and was present for Plaintiff's PowerPoint presentation.

   2.    Dobbs's Taleo document on Plaintiff was created on August 14, 2019 (the day Plaintiff interviewed onsite in Olathe, Kansas) by Dobbs.

**3.**     As listed in the Defendant's Privilege Log (**See Ex. A**), Dobbs's document was not sent to or copied to anybody.

**4.**     Dobbs "REDACTED" "Final Comments" constitute critical underlying facts. **See Ex. E**.

**5.**     Defendant stated; **"Dobbs added to his notes"** of August 14, 2019 after the following events: **A.)** "after Garmin received your complaint of unlawful discrimination on November 22, 2019" and **B.)** "at the direction of Garmin's in-house counsel". Plaintiff believes this is a Fraud on the Court and not any privilege. The Redacted part of this document does not contain "information collected" but facts created to alter facts; a fraud. Jared Klein confirmed that Dobbs's "notes" were created on August 14, 2019. (See **GARMIN 000441 - GARMIN 000443**; **See Ex. G**). Adding or removing any information to or from Dobbs's "notes" of August 14, 2019 on November 22, 2019 would be nothing but fraud. "Under the crime-fraud exception, "[t]he attorney-client privilege does not apply where the client consults an attorney to further a crime or fraud." The crime-fraud exception also applies to documents claimed to be protected from discovery as work product. The purpose of the crime-fraud exception is to assure that the seal of secrecy between the attorney and client does not extend to communications made for the purpose of getting advice for the commission of a fraud or crime."[23].

**6.**     Plaintiff will compel the production of GARMIN 000440 document and ask for "*in camera* reviews". "The undersigned's experience with past *in camera* reviews of purportedly privileged documents suggests that lawyers, for a variety of reasons, tend to be far too aggressive with their privilege assertions - seldom are more than 20% of those documents actually entitled to protection." (*Sudenga Indus. v. Glob. Indus.*, Case No. 18-2498-DDC (D. Kan. May. 15, 2020)). "The court will restate the standard here to remind the parties what the court considers protected. The court must be able to determine whether each element of the asserted privilege is satisfied. The following information must be included:". (*Id*.).

"The privilege only protects the disclosure of communications, not disclosure of the underlying facts by those who communicated with the attorney.". (*Sudenga Indus. v. Glob. Indus.*, Case No. 18-2498-DDC (D. Kan. May. 15, 2020)). "The fact of submission of a document to

---

[23] *Hale v. Emporia State Univ.*, Case No. 16-cv-4182-DDC-TJJ (D. Kan. Feb. 20, 2018).

counsel for legal input is not a protected communication.".  (*Burton v. R.J. Reynolds Tobacco Co., Inc.*, 170 F.R.D. 481 (D. Kan. 1997).).


## CTRL00000111-2 AND GARMIN 000903

**DEFENDANT: CTRL00000111-2 AND GARMIN 000903 (See Ex. F, Page 2)**

These entries reflect the same email so I have grouped them together. The attorney-client "privilege 'protects confidential communications by a client to an attorney made in order to obtain legal assistance from the attorney in his capacity as a legal advisor.'" *AKH Co., Inc. v. Univ. Underwriters Ins. Co.*, 300 F.R.D. 684, 693 (D. Kan. 2014) (internal citations omitted). This email is protected by the attorney-client privilege precisely for the reason stated in *AKH*. Cormack received your complaint of unlawful discrimination on November 22, 2019 and sent it to Garmin's in-house counsel for the purpose of obtaining his assistance in his capacity as a legal advisor.

**PLAINTIFF: CTRL00000111-2**

1.　　Michelle Cormack's email (CTRL00000111-2) was created on November 22, 2019 by Cormack.  November 22, 2019 was the day Plaintiff sent an email[24] to Mr. John Mudd (copied to Michelle Cormack) to complain that Plaintiff was not hired.

2.　　The CTRL00000111-2 email was sent to in-house Attorney (David Kight) and other individuals who are not Attorneys.  "....the attorney-client privilege does not protect documents just because "they were transferred to or routed through an attorney, or because an attorney was copied on a document." *Wiseman Oil Co., Inc. v. TIG Ins. Co.*, No. 011-1011, 2012 WL 1866296, at *2 (W.D. Pa. May 22, 2012) (internal citation omitted).".  (*Heinzl v. Cracker Barrel Old Country Store, Inc.*, No. 2:2014cv01455 - Document 93 (W.D. Pa. 2015).).

3.　　Cormack interviewed Plaintiff on the phone[25] (Phone Screen - HRPS) and onsite[26].

4.　　Cormack's email comments on Plaintiff constitute critical underlying facts.

5.　　"It is well-settled in this District that the production of private or confidential information is not, in and of itself, a valid reason to withhold discovery as the production could governed by a protective order....... Simply stated, "'[a] concern for protecting confidentiality does not equate to privilege.'"....."  (*Murray v. Manorcare of Topeka KS, LLC*, Case No. 19-2148-DDC-

---

[24] ECF No. 1, ¶ 40.  Plaintiff's Complaint.
[25] ECF No. 1, ¶ 22.  Plaintiff's Complaint.
[26] ECF No. 1, ¶ 27.  Plaintiff's Complaint.

KGG (D. Kan. Apr. 10, 2020).).

     **6.**     Plaintiff will compel the production of the CTRL00000111-2 document and ask for "*in camera* reviews".  "The undersigned's experience with past *in camera* reviews of purportedly privileged documents suggests that lawyers, for a variety of reasons, tend to be far too aggressive with their privilege assertions - seldom are more than 20% of those documents actually entitled to protection."  (*Sudenga Indus. v. Glob. Indus.*, Case No. 18-2498-DDC (D. Kan. May. 15, 2020)). "The court will restate the standard here to remind the parties what the court considers protected. The court must be able to determine whether each element of the asserted privilege is satisfied. The following information must be included:".  (*Id.*).  "In performing....[*in camera*] review of.....withheld documents, the [Court] will use the "related to the giving or receiving of legal advice" standard in determining whether the documents are protected."  (*In re Motor Fuel Temperature Sales Practices Litigation*, MDL No. 1840, Case No. 07-1840-KHV (D. Kan. Nov. 8, 2010).).

     "The privilege only protects the disclosure of communications, not disclosure of the underlying facts by those who communicated with the attorney".  (*Sudenga Indus. v. Glob. Indus.*, Case No. 18-2498-DDC (D. Kan. May. 15, 2020)).  "The fact of submission of a document to counsel for legal input is not a protected communication.".  (*Burton v. R.J. Reynolds Tobacco Co., Inc.*, 170 F.R.D. 481 (D. Kan. 1997).).

**PLAINTIFF: <u>GARMIN 000903</u>**

     **1.**     There is no email document from Michelle Cormack at GARMIN 000903 that showed Cormack sent an email to Laurie Minard, Lynnette Huscher, David Kight and copied Shanna Lynnes, Jeff Minelli, John Mudd.

     **2.**     The GARMIN 000903 email was sent to in-house Attorney (Kight) and other individuals who are not Attorneys.  "....the attorney-client privilege does not protect documents just because "they were transferred to or routed through an attorney, or because an attorney was copied on a document." *Wiseman Oil Co., Inc. v. TIG Ins. Co.*, No. 011-1011, 2012 WL 1866296, at *2 (W.D. Pa. May 22, 2012) (internal citation omitted).".  (*Heinzl v. Cracker Barrel Old Country Store, Inc.*, No. 2:2014cv01455 - Document 93 (W.D. Pa. 2015).).

     **3.**     Cormack interviewed Plaintiff on the phone (Phone Screen - HRPS) and onsite.

     **4.**     Cormack's email comments on Plaintiff constitute critical underlying facts.

     **5.**     Plaintiff will compel the production of the GARMIN 000903 document and ask

for "*in camera* reviews".  "The undersigned's experience with past *in camera* reviews of purportedly privileged documents suggests that lawyers, for a variety of reasons, tend to be far too aggressive with their privilege assertions - seldom are more than 20% of those documents actually entitled to protection."  (*Sudenga Indus. v. Glob. Indus.*, Case No. 18-2498-DDC (D. Kan. May. 15, 2020)).  "The court will restate the standard here to remind the parties what the court considers protected. The court must be able to determine whether each element of the asserted privilege is satisfied. The following information must be included:".  (*Id.*).  "In performing....[*in camera*] review of.....withheld documents, the [Court] will use the "related to the giving or receiving of legal advice" standard in determining whether the documents are protected."  (*In re Motor Fuel Temperature Sales Practices Litigation*, MDL No. 1840, Case No. 07-1840-KHV (D. Kan. Nov. 8, 2010).).

"The privilege only protects the disclosure of communications, not disclosure of the underlying facts by those who communicated with the attorney.".  (*Sudenga Indus. v. Glob. Indus.*, Case No. 18-2498-DDC (D. Kan. May. 15, 2020)).  "The fact of submission of a document to counsel for legal input is not a protected communication.".  (*Burton v. R.J. Reynolds Tobacco Co., Inc.*, 170 F.R.D. 481 (D. Kan. 1997).).

### CTRL00000160-1 (email) - 00000161-1-00000162-3 (attachments) (See Ex. F, Page 2)
**DEFENDANT:**

This email and the attachments are protected by the attorney-client privilege as the email is a communication among non-attorneys, which contains "'information collected for the dominant purpose of facilitating the attorney's efforts to provide services to the client, and the information in every instance, was, in one form or another, communicated to the attorney.'" *See Williams* 238 F.R.D. at 639 (internal citations omitted). Jared Klein sent this email to John Mudd pursuant to Garmin's investigation of your complaint of unlawful discrimination at the direction of Garmin's in-house counsel. The email was ultimately communicated to Garmin's in-house counsel to facilitate his efforts to investigate your complaint of unlawful discrimination.

**PLAINTIFF:**

1.  Jared Klein's email (and attachments) was created on November 22, 2019 by

9

Klein.  **November 22, 2019 was the day Plaintiff sent an email[27] to Mr. John Mudd to complain that Plaintiff was not hired**.  **That email from Plaintiff to Mudd was copied to Michelle Cormack.  Plaintiff DID NOT copy that email to Jared Klein**.

**2.**      The CTRL00000160-1 (email) - 00000161-1-00000162-3 (attachments) (email) - 00000161-1-00000162-3 (attachments) email document was created by Jared Klein and sent to John Mudd.

**3.**      Neither Klein nor Mudd is an Attorney.  No evidence from the email links indicated that an Attorney was part of this communication.  Even if an attorney was involved, "....the attorney-client privilege does not protect documents just because "they were transferred to or routed through an attorney, or because an attorney was copied on a document." *Wiseman Oil Co., Inc. v. TIG Ins. Co.*, No. 011-1011, 2012 WL 1866296, at *2 (W.D. Pa. May 22, 2012) (internal citation omitted).". (*Heinzl v. Cracker Barrel Old Country Store, Inc.*, No. 2:2014cv01455 - Document 93 (W.D. Pa. 2015).).  "Even though communications between two non-attorneys potentially can receive protection, [Defendant] fails to provide sufficient information for the Court to determine whether each element of attorney-client privilege is satisfied.".  (*Black & Veatch Corp. v. Aspen Ins. (U.K.) Ltd., et al.*, Case No. 12-2350-SAC, Document 164 (D. Kan. Feb. 28, 2014)).

**4.**      Klein interviewed Plaintiff on the phone[28] (Technical Phone Screen - TPS) on July 25, 2019 and onsite[29] (at Garmin Headquarters in Olathe, Kansas) on August 14, 2019.

**5.**      Klein's email comments on Plaintiff constitute critical underlying facts.

**6.**      Plaintiff will compel the production of the CTRL00000160-1 (email) - 00000161-1-00000162-3 (attachments) email document and ask for "*in camera* reviews".  "The undersigned's experience with past *in camera* reviews of purportedly privileged documents suggests that lawyers, for a variety of reasons, tend to be far too aggressive with their privilege assertions - seldom are more than 20% of those documents actually entitled to protection." (*Sudenga Indus. v. Glob. Indus.*, Case No. 18-2498-DDC (D. Kan. May. 15, 2020)).  "The court will restate the standard here to remind the parties what the court considers protected. The court must be able to determine whether each element of the asserted privilege is satisfied. The

---

[27] ECF No. 1, ¶ 40.  Plaintiff's Complaint.
[28] ECF No. 1, ¶ 23.  Plaintiff's Complaint.
[29] ECF No. 1, ¶ 31.  Plaintiff's Complaint.

following information must be included:".  (*Id*.).  "In performing....[*in camera*] review of.....withheld documents, the [Court] will use the "related to the giving or receiving of legal advice" standard in determining whether the documents are protected."  (*In re Motor Fuel Temperature Sales Practices Litigation*, MDL No. 1840, Case No. 07-1840-KHV (D. Kan. Nov. 8, 2010).).

"The privilege only protects the disclosure of communications, not disclosure of the underlying facts by those who communicated with the attorney.".  (*Sudenga Indus. v. Glob. Indus*., Case No. 18-2498-DDC (D. Kan. May. 15, 2020)).  "The fact of submission of a document to counsel for legal input is not a protected communication.".  (*Burton v. R.J. Reynolds Tobacco Co., Inc.*, 170 F.R.D. 481 (D. Kan. 1997).).

## CTRL00000168-1-(email)    and    CTRL00000168-2-00000168-3    (attachments)    and CTRL00000125-1 (See Ex. F, Page 3)

**DEFENDANT:**

These emails are protected by the attorney-client privilege for the same reason so I have grouped them together.  The attorney-client privilege protects communications with in-house counsel. *See New Jersey v. Sprint Corp*., 258 F.R.D. 421, 425 (D. Kan. 2009). With respect to both emails, the privilege applies because they are direct communications with in-house counsel relating to Garmin's investigation of your complaint of unlawful discrimination.

**PLAINTIFF: CTRL00000168-1 - (email) - 00000168-2-00000168-3 (attachments)**

1.       John Mudd's email (and attachments) was created on November 24, 2019 (Sunday) by Mudd.  On November 22, 2019 (Friday), Plaintiff sent an email[30] to John Mudd (copied to Ms. Michelle Cormack) to complain that Plaintiff was not hired.

2.       The CTRL00000168-1 - (email) - 00000168-2-00000168-3 (attachments) email was sent to in-house Attorney (Kight) and other individuals  who are not Attorneys (including Jeff Minelli (Mudd's Supervisor - Minelli interviewed Plaintiff onsite on August 14, 2019) and Michelle Cormack (Cormack interviewed Plaintiff on the phone[31] (Phone Screen - HRPS) on July 23, 2019 and onsite on August 14, 2019.).  "....the attorney-client privilege does not protect

---

[30] ECF 1, ¶ 40.  Plaintiff Complaint.
[31] ECF 1, ¶ 22.  Plaintiff Complaint.

documents just because "they were transferred to or routed through an attorney, or because an attorney was copied on a document." *Wiseman Oil Co., Inc. v. TIG Ins. Co.*, No. 011-1011, 2012 WL 1866296, at *2 (W.D. Pa. May 22, 2012) (internal citation omitted).". (*Heinzl v. Cracker Barrel Old Country Store, Inc.*, No. 2:2014cv01455 - Document 93 (W.D. Pa. 2015).).

    **3.**      Mudd interviewed Plaintiff on the phone[32] (Technical Phone Screen - TPS) on July 25, 2019 and onsite[33] on August 14, 219.

    **4.**      Mudd's email comments on Plaintiff constitute critical underlying facts.

    **5.**      Plaintiff will compel the production of the CTRL00000168-1 - (email) - 00000168-2-00000168-3 (attachments) document and ask for "*in camera* reviews". "The undersigned's experience with past *in camera* reviews of purportedly privileged documents suggests that lawyers, for a variety of reasons, tend to be far too aggressive with their privilege assertions - seldom are more than 20% of those documents actually entitled to protection." (*Sudenga Indus. v. Glob. Indus.*, Case No. 18-2498-DDC (D. Kan. May. 15, 2020)). "The court will restate the standard here to remind the parties what the court considers protected. The court must be able to determine whether each element of the asserted privilege is satisfied. The following information must be included:". (*Id.*). "In performing....[*in camera*] review of.....withheld documents, the [Court] will use the "related to the giving or receiving of legal advice" standard in determining whether the documents are protected." (*In re Motor Fuel Temperature Sales Practices Litigation*, MDL No. 1840, Case No. 07-1840-KHV (D. Kan. Nov. 8, 2010).).

    "The privilege only protects the disclosure of communications, not disclosure of the underlying facts by those who communicated with the attorney.". (*Sudenga Indus. v. Glob. Indus.*, Case No. 18-2498-DDC (D. Kan. May. 15, 2020)). "The fact of submission of a document to counsel for legal input is not a protected communication.". (*Burton v. R.J. Reynolds Tobacco Co., Inc.*, 170 F.R.D. 481 (D. Kan. 1997).).

**PLAINTIFF: <u>CTRL000001 25-1</u>**

    **1.**      John Mudd's email (and attachments) was created on November 25, 2019 (Monday) by Mudd.  On November 22, 2019 (Friday), Plaintiff sent an email to Mr. John Mudd

---

[32] ECF 1, ¶ 23.  Plaintiff Complaint.
[33] ECF 1, ¶ 30.  Plaintiff Complaint.

(copied to Ms. Michelle Cormack) to complain that Plaintiff was not hired.  On November 25, 2019 (Monday), Plaintiff called Ms. Laurie Minard's office and sent an email[34] to Minard (copied to Mr. David Kight) to complain that Plaintiff was not hired.

      2.      The CTRL000001 25-1 email was sent to in-house Attorney (Kight) and other individuals  who are not Attorneys (including Jeff Minelli (Mudd's Supervisor and Minelli interviewed Plaintiff onsite) and Michelle Cormack (Cormack interviewed Plaintiff on the phone (Phone Screen - HRPS) and onsite.).  "....the attorney-client privilege does not protect documents just because "they were transferred to or routed through an attorney, or because an attorney was copied on a document." *Wiseman Oil Co., Inc. v. TIG Ins. Co.*, No. 011-1011, <u>2012 WL 1866296</u>, at *2 (W.D. Pa. May 22, 2012) (internal citation omitted).".  (*Heinzl v. Cracker Barrel Old Country Store, Inc.*, No. 2:2014cv01455 - Document 93 (W.D. Pa. 2015).).

      3.      Mudd interviewed Plaintiff on the phone (Technical Phone Screen - TPS) and onsite.

      4.      Mudd's email comments on Plaintiff constitute critical underlying facts.

      5.      Plaintiff will compel the production of the CTRL000001 25-1 document and ask for "*in camera* reviews".  "The undersigned's experience with past *in camera* reviews of purportedly privileged documents suggests that lawyers, for a variety of reasons, tend to be far too aggressive with their privilege assertions - seldom are more than 20% of those documents actually entitled to protection."  (*Sudenga Indus. v. Glob. Indus.*, Case No. 18-2498-DDC (D. Kan. May. 15, 2020)).  "The court will restate the standard here to remind the parties what the court considers protected. The court must be able to determine whether each element of the asserted privilege is satisfied. The following information must be included:".  (*Id*.).  "In performing....[*in camera*] review of.....withheld documents, the [Court] will use the "related to the giving or receiving of legal advice" standard in determining whether the documents are protected."  (*In re Motor Fuel Temperature Sales Practices Litigation*, MDL No. 1840, Case No. 07-1840-KHV (D. Kan. Nov. 8, 2010).).

      "The privilege only protects the disclosure of communications, not disclosure of the underlying facts by those who communicated with the attorney.".  (*Sudenga Indus. v. Glob. Indus.*, Case No. 18-2498-DDC (D. Kan. May. 15, 2020)).  "The fact of submission of a

---

[34] <u>ECF 1</u>, ¶ 42.  Plaintiff Complaint.

document to counsel for legal input is not a protected communication.".  (*Burton v. R.J. Reynolds Tobacco Co., Inc.*, 170 F.R.D. 481 (D. Kan. 1997).).

**OTHER ARGUMENTS FROM PLAINTIFF:**

1.     "On **November 13, 2019** (about 3 months after Jaiyeola's onsite job interview at Olathe), Jaiyeola received an electronic mail from Garmin (from Mr. Michael Risinger) stating that Jaiyeola was not hired for the position of Advanced Materials Engineer - Metals-19001CL at Garmin."[35].

2.     "Jaiyeola read Garmin's Equal Employment Opportunity policy statement ("EEO Policy Statement"[36]) at Garmin's website.  The statement, signed by Mr. Cliff Pemble (Garmin's President and CEO), requested that EEO complaints should be directed to Ms. Laurie Minard (Garmin's Vice President of HR and "EEO Coordinator")."[37].

3.     "On **November 22, 2019**, Jaiyeola followed the guidelines in Garmin's EEO statement and filed a complaint (copied to Cormack) with Mudd (See Ex R.) on Garmin's failure to hire him."[38].

4.     In the letter (dated November 22, 2019) to John Mudd (Hiring Manager for the position of "Advanced Materials Engineer - Metals-19001CL" at Garmin International that Plaintiff applied to and was interviewed for.), **Plaintiff stated, "This is a complaint."**[39]. **Plaintiff's complaint letter of November 22, 2019 to John Mudd DID NOT state "EEOC Complaint"; as indicated by the Defendant**.

5.     **On November 22, 2019, the following events took place:**

A.     Plaintiff sent an electronic mail containing a complaint to Mudd.  Plaintiff copied the complaint to Michelle Cormack (Senior Technical Recruiter – Plaintiff's Garmin Human Resources contact).

B.     Jared Klein sent electronic mails with attachments **(CTRL00000160-1 (email) - 00000161-1-00000162-3 (attachments))** to Mudd.

---

[35] ECF 1, ¶ 37, Plaintiff Complaint.
[36] See https://careers.garmin.com/en-US/; https://www8.garmin.com/careers/EEO_policy.pdf; ECF 1-18, p. 2.
[37] ECF 1, ¶ 39.
[38] ECF 1, ¶ 40.
[39] ECF 1-19, p. 2, ¶ 1.

C.       Cormack sent **TWO** electronic mails **(CTRL00000111-2 and GARMIN 000903)** to Laurie Minard (Garmin's Vice President of HR and "EEO Coordinator"), Lynnette Huscher (Director of Recruiting and Associate Relations), David Kight (Asst. Gen. Counsel - Employment & Reg. Affairs).  The **TWO** electronic mails were copied to Shanna Lynnes (Manager of Human Resources Recruiting and Associate Relations), Jeff Minelli (John Mudd's Supervisor), and John Mudd.

D.       Cormack and Minard exchanged **THREE** electronic mails **("RE: Complaint: Denial of Employment"** – See **GARMIN 000902** ATTACHMENT - below).  Note that Cormack's electronic mails to Minard on November 22, 2019 had the **"Subject"** as **"RE: Complaint: Denial of Employment"**; there is **NO "EEOC Complaint" in the "Subject"**.

E.       Minard FIRST learnt about Plaintiff's "RE: Complaint: Denial of Employment" on November 22, 2019 and NOT November 25, 2019.  **See Ex. H**.

6.       On **November 24, 2019**, Mudd sent electronic mails with attachments **(CTRL00000168-1- (email) - 00000168-2-00000168-3 (attachments))** to Lynette Huscher, Michelle Cormack, Laurie Minard, David Kight.  The electronic mails were copied to Shanna Lynnes, Jeff Minelli.

7.       On **November 25, 2019**, the following events took place:

A.       "On **November 25, 2019**, Plaintiff again followed the guidelines in Garmin's EEO statement and made a phone call to the office Minard to complain about Garmin's job denial.  Plaintiff spoke with Minard's Executive Assistant. The Executive Assistant told Plaintiff the following: **1.)** Mudd notified Minard of Plaintiff 's complaint that morning (November 25, 2019), **2.)** Plaintiff should send his complaint to Garmin's Legal Department (to the attention of Mr. David Kight), and **3.)** Plaintiff should file his complaint with the Kansas EEOC office."[40].

B.       "On **November 25, 2019**, Jaiyeola filed a complaint with Minard (complaint was electronically mailed to Kight) on Garmin's failure to hire him. See Ex S."[41].

C.       On **November 25, 2019**, Mudd sent an electronic mails **(CTRL00000125-**

---

[40] ECF 1, ¶ 41.
[41] ECF 1, ¶ 42.

**1)** to Lynette Huscher, Michelle Cormack, Laurie Minard, David Kight.  The electronic mails were copied to Shanna Lynnes, Jeff Minelli.

**8.**      "On **November 26, 2019**, Jaiyeola filed a Charge of Discrimination (No. 563-2020-00499) with the EEOC for Title VII, ADEA, and ADA Association Discrimination."[42].

**9.**      "On **November 27, 2019**, Jaiyeola received a reply to his complaint (dated November 25, 2019) from Kight. Kight gave the following Garmin reasons as to why Garmin did not hire Jaiyeola: "After considering all candidates and Garmin's current business needs, Garmin withdrew the opening, the job posting has been removed and no one was hired for this position.".  Kight's reply did not indicate that Garmin did any investigation; as stated in Garmin's EEO statement[43].

**10.**      Kight's **November 27, 2019** reply "RE: Ganiyu Jaiyeola EEOC Complaint to Garmin"[44] referenced the complaint that Plaintiff sent to Minard on **November 25, 2019** but **Kight did not mention (in his electronic mail of November 27, 2019 to Plaintiff) the following electronic mails that contained Plaintiff's complaint to Mudd on November 22, 2019**:

   **A.**      On **November 22, 2019**, Cormack sent **TWO** electronic mails **(CTRL00000111-2 and GARMIN 000903)** to Kight and others.

   **B.**      On **November 24, 2019** and **November 25, 2019**, Mudd sent an electronic mail to Kight and others.

**11.**      As stated in Garmin's "AFFIRMATIVE ACTION AND EQUAL EMPLOYMENT OPPORTUNITY POLICY STATEMENT" ("EEO") signed by Garmin's President & CEO, Cliff Pemble, "...Laurie Minard to take on the responsibilities of EEO Coordinator.  As EEO Coordinator, Laurie will be responsible for the day to day implementation and monitoring of this Affirmative Action Plan."[45].  Garmin's EEO policy states, in part, that ".....applicants shall not be subjected to harassment, intimidation, threats, coercion or discrimination because they have: (1) filed a complaint; (2) assisted or participated in an investigation, compliance review hearing or any other activity related to the administration of

---

[42] ECF 1, ¶ 43.
[43] ECF 1, ¶ 44.
[44] ECF 1-40, p. 4.
[45] ECF 1-18, p. 2.

any federal, state or local law requiring equal employment opportunity;......or (4) exercised any other right protected by federal, state or local law requiring equal opportunity."[46].  Plaintiff filed complaints with John Mudd (Hiring Manager) and Laurie Minard (EEO Coordinator) as specified in Garmin's EEO policy.  Plaintiff filed a complaint with the EEOC on November 25, 2019 as advised by the Executive Assistant to Minard.

12.      "**The Court evaluates two components when it determines whether documents are prepared "in anticipation of litigation**." [*Kannaday v. Ball*, 292 F.R.D. 640, 648–49 (D. Kan. 2013).]. The first is causation; the document must have been created because litigation was anticipated (i.e., to prepare for litigation or for trial). The second is a reasonableness limit on a party's anticipation of litigation; the threat must be "real" and "imminent." [*Id*.]"[47].

13.      "[When Plaintiff filed a complaint **with John Mudd on November 22, 2019 and with Laurie Minard on November 25, 2019**], there was no indication of an attorney being involved. There..[was no allegation that Plaintiff had already threatened litigation, or any other fact that would suggest there was a "real" or "imminent" threat of litigation. [*Kannaday*, 292 F.R.D. at 648–49.] And Plaintiff did not file his complaint until [**November 25, 2019; after Minard's Executive Assistant told him he needed to**.]…….."[48].  "The Court determines that Plaintiff's …[complaint **with John Mudd on November 22, 2019** and **with Laurie Minard on November 25, 2019**] ..[were] taken in the ordinary course of business. [*Burton v. R.J. Reynolds Tobacco Co.*, 177 F.R.D. 491, 498 (D. Kan. 1997) **("[E]ven if there is a general prospect of litigation, a document is not protected by work-product immunity if the document was prepared merely in the regular course of business.").]**"[49].  Plaintiff's complaint with John Mudd on November 22, 2019 and with Laurie Minard on November 25, 2019 were "in the regular course of business" for Garmin because Plaintiff was following Garmin's EEO policy.

14.      **"EEOC Complaint":**

---

[46] *Id*.
[47] *Mai v. CSAA Fire & Casualty Insurance Company*, No. 6:2020cv01130 - Document 27 (D. Kan. 2020).
[48] *Mai*.
[49] *Mai*.

The Defendant has the following statements in their letter of December 17, 2020 **(See Ex. F, page 1, ¶ 3)**:

"Second, each was prepared in anticipation of litigation **after Garmin received your complaint of unlawful discrimination on November 22, 2019**. As we discussed yesterday, **your letter created a reasonable belief that the threat of litigation was real and imminent** as it specifically referenced an **"EEOC Complaint"**. Your reference to **"EEOC" (which stands for the Equal Employment Opportunity Commission)** led Garmin to reasonably believe you had or would be imminently filing a charge of discrimination with the **EEOC**. You can see on the log that **each document was created on or after receipt of your November 22, 2019 letter. The one exception is GARMIN 000440**. However, the partial redaction reflects information that was added to that document after receipt of your November 22, 2019.".

The Defendant should note the following facts:

A.    In Plaintiff's **November 22, 2019 "This is a complaint."**[50] letter to John Mudd, **Plaintiff mentioned "EEOC" ONLY ONCE** and in the following context: **"Please forward my complaint to the EEOC department (Ex E) at Garmin International (Laurie Minard- Vice President, HR at Garmin International, Inc.)."**[51]  The **"Ex E"** that Plaintiff referred to was **Defendant's EEO department** because **"Ex E"** referenced Defendant's EEO policy document (**"Exhibit R5 [] "EXHIBIT E- Garmin's EEO policy statement.""**[52]).  Plaintiff did **NOT** reference **"Equal Employment Opportunity Commission"** anywhere in his letter of November 22, 2019 to John Mudd.  Obviously, it was Plaintiff's typographic error that resulted in Plaintiff referencing "EEOC" instead of "EEO".

B.    In Plaintiff's **November 25, 2019 " This is an EEOC complaint."**[53] letter to Laurie Minard, **Plaintiff mentioned "EEOC" FOUR TIMES** as follows:

---

[50] ECF 1-19, p. 2, ¶ 1.
[51] ECF 1-19, p. 3, ¶ 7.
[52] ECF 1-1, p. 2; ECF 1-24, p. 2.
[53] ECF 1-25, p. 2, ¶ 1.

18

    **I.**      "RE: **EEOC** Complaint to Ms. Laurie Minard (Vice President, HR at Garmin International) Advanced Materials Engineer - Metals-19001 CL at Garmin"[54];

    **II.**      "This is an **EEOC** complaint."[55];

    **III.**      " My main concerns and the issues in my **EEOC** complaint are the following:"[56];

    **IV.**      "A copy of Garmin's **EEOC** policy statement (Ex N) is attached."[57].  The **"Ex N"** that Plaintiff referred to was **Defendant's EEO policy statement** because **"Ex N"** referenced Defendant's EEO policy document (**"Exhibit S14 [] "EXHIBIT N - Garmin's EEO policy statement.""[58]**).

    **Plaintiff did NOT reference "Equal Employment Opportunity Commission" anywhere in his letter of November 25, 2019 to Laurie Minard**.  Again, it was Plaintiff's typographic error that resulted in Plaintiff referencing "EEOC" instead of "EEO".

    **15.**    The Defendant asserted a "work-product privilege" as a single privilege[59] to cover all the documents in their Privilege Log because "…they were prepared in anticipation of litigation or for trial" which, according to the Defendant, was prompted by Plaintiff's "….reference to "EEOC" (which stands for the Equal Employment Opportunity Commission) led Garmin to reasonably believe you had or would be imminently filing a charge of discrimination with the EEOC.".  As Plaintiff explained above, the Defendant's premise for the "work-product privilege" hinged on Plaintiff's use of the word "EEOC" has no basis in fact because the Defendant got the use of the word "EEOC" out of context.

    **16.**    Plaintiff believes the Defendant cannot reasonably invoke either attorney-client privilege or work-product privilege or both to any of the documents in the Privilege Log that Plaintiff is seeking.  Of course, since neither attorney-client privilege nor work-product privilege

---

[54] ECF 1-25, p. 2.

[55] ECF 1-25, p. 2, ¶ 1.

[56] ECF 1-25, p. 3, ¶ 18.

[57] ECF 1-25, p. 4, ¶ 21.

[58] ECF 1-1, p. 3; ECF 1-39, p. 2.

[59] *In re Universal Serv. Fund Tel. Billing Practices Litig.*, 232 F.R.D. 669 (D. Kan. 2005); *Apsley v. Boeing Company*, Case No. 05-1368-MLB (D. Kan. Jan. 22, 2008).

applies, then a single privilege is a mirage.

## IV.      CONCLUSION

For all the above reasons and for the reasons stated in the Motion, Plaintiff respectfully ask[60] this Court to enter an Order for the following:

**A.**    Compel Defendant Garmin to produce GARMIN 000440 that was created by Benjamin Dobbs (a Garmin fact witness) on August 14, 2019;

**B.**    Compel Defendant Garmin to produce GARMIN 000440 that was created by Benjamin Dobbs (a Garmin fact witness) on November 22, 2019;

**C.**    Sanction the "Garmin's in-house counsel" at whose "direction" **another GARMIN 000440 document was created by Dobbs on November 22, 2019**.  On November 22, 2019, **"Dobbs added to his notes"** (Dobbs interview notes) that was **created on August 14, 2019** when Dobbs interviewed Plaintiff;

**D.**    Sanction the Defendant for the fraud that resulted when "Dobbs added to his notes" (Taleo record that Dobbs created on Plaintiff on August 14, 2019) at the "direction" of "Garmin's in-house counsel" on November 22, 2019;

**E.**    Compel Defendant Garmin to produce the following **Five (5) Electronic Mails**:

   I.      CTRL00000111-2

   II.      CTRL00000160-1(email) - 00000161-1-00000162-3 (attachments)

   III.      GARMIN 000903

   IV.      CTRL00000168-1-(email)-00000168-2-00000168-3 (attachments)

   V.      CTRL00000125-1

---

[60] Pursuant to Fed. R. Civ. P. 37(a)(3)(B)(iv) and Local Rule 37.1.

Respectfully submitted,

Dated: January 12, 2021

Ganiyu A. Jaiyeola, Ph.D., MBA

749 Preserve Circle Drive SE #6

Grand Rapids, Michigan 49548

Tel.: 616.635.4025

ganiyu.jaiyeola@gmail.com

PLAINTIFF

*pro se*

## CERTIFICATE OF SERVICE

Plaintiff hereby certifies that on this 12th day of January, 2021, Plaintiff e-mailed this document to the District Court Clerk's office where it would be filed using the Court's CM/ECF system which will automatically send the document to the following Defendants' Attorneys:

Kerri S. Reisdorff

Margaret K. Young

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

4520 Main Street, Suite 400

Kansas City, Missouri 64111

kerri.reisdorff@ogletree.com

margaret.young@ogletree.com

ATTORNEYS FOR DEFENDANT

Respectfully submitted,

_____

Ganiyu A. Jaiyeola, Ph.D., MBA

PLAINTIFF

*pro se*

## Index of Exhibits

**Ex. A**        Defendant Garmin's Privilege Log dated December 14, 2020.

**Ex. B**        "4.6 Taleo is the applicant tracking system used by associates to apply for

positions at Garmin and by recruiters to review, hire, and store candidate

interview documents.".

**Ex. C**        "5.5.2 All candidate records will be stored in Taleo.".

**Ex. D**        "6.2 Interview notes for candidates will be stored in Taleo.".

**Ex. E**        Benjamin Dobbs interview notes of August 14, 2019, constituted a Taleo record

on Plaintiff.  "GARMIN 000440".

**Ex. F**        December 17, 2020 letter from Defendant Attorney, Ms. Margaret Young, to

Plaintiff.

**Ex. G**        Jared Klein's August 14, 2019 Taleo interview notes on Plaintiff stated that

Benjamin Dobbs created a Taleo record on Plaintiff on August 14, 2019.

**Ex. H**        Laurie Minard, Garmin's Vice President of HR and "EEO Coordinator", first learnt

about Plaintiff's failure-to-hire complaint on November 22, 2019 and not November 25,

2019.

# Ex. A

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **GANIYU AYINLA JAIYEOLA,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **Case No. 2:20-cv-2068-JWB-JPO** |
| ) | |
| **GARMIN INTERNATIONAL, INC.,** ) | |
| ) | |
| Defendant. ) | |

<u>**DEFENDANT GARMIN INTERNATIONAL, INC.'S PRIVILEGE LOG**</u>

| Bates Nos. | Type | Date of Creation/ Sent Date | From | To | CC | Privilege Type | Description/Basis for Withholding Document |
|---|---|---|---|---|---|---|---|
| GARMIN 000440 | .pdf | 8/14/2019 | Benjamin Dobbs | N/A | N/A | Attorney-Client Privilege and Work-Product Privilege | Partial redaction reflects pdf regarding Plaintiff's on-site interview that were compiled pursuant to Garmin's investigation of Plaintiff's complaint of unlawful discrimination per the direction of David Kight.[1] |
| CTRL00000111-2 | Email | 11/22/2019 | Michelle Cormack | Laurie Minard, Lynnette Huscher, David Kight | Shanna Lynnes, Jeff Minelli, John Mudd | Attorney-Client Privilege and Work-Product Privilege | Reflects communication with David Kight for purpose of providing legal advice regarding Plaintiff's complaint of unlawful discrimination. |
| CTRL00000160-1 (email) - 00000161-1- 00000162-3 (attachments) | Email and attachment | 11/22/2019 | Jared Klein | John Mudd | N/A | Attorney-Client Privilege and Work-Product Privilege | Reflects communication and notes regarding Plaintiff's on-site interview that were compiled pursuant to Garmin's investigation of Plaintiff's complaint of unlawful discrimination per the direction of David Kight. |

---

[1] David Kight is an attorney and member of Garmin's In-House Legal Department.

| Bates Nos. | Type | Date of Creation/ Sent Date | From | To | CC | Privilege Type | Description/Basis for Withholding Document |
|---|---|---|---|---|---|---|---|
| CTRL000003 02-1 | Email | 11/22/2019 | Lynette Huscher | Michelle Cormack, Laurie Minard, David Kight | Shanna Lynnes, Jeff Minelli, John Mudd | Attorney-Client Privilege and Work-Product Privilege | Reflects request for legal advice from David Kight regarding Garmin's response to Plaintiff's complaint of unlawful discrimination. |
| CTRL000003 02-1 | Email | 11/22/2019 | David Kight | Lynnette Huscher | N/A | Attorney-Client Privilege and Work-Product Privilege | Reflects legal advice rendered by David Kight regarding Garmin's response to Plaintiff's complaint of unlawful discrimination. |
| CTRL000003 08-1 | Email | 11/22/2019 | David Kight | Kim Pikul[2] | N/A | Attorney-Client Privilege | Reflects communication between Garmin's lawyers regarding Plaintiff's complaint of unlawful discrimination. |
| CTRL000003 32-1 | Email | 11/22/2019 | David Kight | Andrew Etkind[3] | N/A | Attorney-Client Privilege | Reflects communication between Garmin's lawyers regarding Plaintiff's complaint of unlawful discrimination. |
| CTRL000004 20-1 | Email | 11/22/2019 | Lynette Huscher | Laurie Minard | N/A | Attorney-Client Privilege and Work-Product Privilege | Reflects communication containing legal advice rendered by David Kight regarding Garmin's response to Plaintiff's complaint of unlawful discrimination. |
| GARMIN 000903 | Email | 11/22/2019 | Michelle Cormack | Laurie Minard, Lynnette Huscher, David Kight | Shanna Lynnes, Jeff Minelli, John Mudd | Attorney-Client Privilege and Work-Product Privilege | Partial redaction reflects communication with David Kight for purpose of providing legal advice regarding Plaintiff's complaint of unlawful discrimination. |

---

[2] Kim Pikul is an attorney and member of Garmin's In House Legal Department.

[3] Andrew Etkind is Garmin's General Counsel.

| Bates Nos. | Type | Date of Creation/ Sent Date | From | To | CC | Privilege Type | Description/Basis for Withholding Document |
|---|---|---|---|---|---|---|---|
| CTRL000001 68-1- (email) - 00000168-2-00000168-3 (attachments) | Email | 11/24/2019 | John Mudd | Lynette Huscher, Michelle Cormack, Laurie Minard, David Kight | Shanna Lynnes, Jeff Minelli | Attorney-Client Privilege and Work-Product Privilege | Reflects communication with David Kight regarding Plaintiff's on-site interview relating to Garmin's investigation of Plaintiff's complaint of unlawful discrimination per the direction of David Kight. |
| CTRL000001 21-1 | Email | 11/25/2019 | Lynette Huscher | John Mudd, Michelle Cormack, Laurie Minard, David Kight | Shanna Lynnes, Jeff Minelli | Attorney-Client Privilege and Work-Product Privilege | Reflects communication with David Kight regarding Garmin's response to Plaintiff's complaint of unlawful discrimination. |
| CTRL000002 77-1 | Email | 11/25/2019 | Andrew Etkind | David Kight | N/A | Attorney-Client Privilege | Reflects communication between Garmin's lawyers regarding Garmin's investigation of Plaintiff's complaint of unlawful discrimination. |
| CTRL000002 86-1 | Email | 11/25/2019 | Andrew Etkind | David Kight | N/A | Attorney-Client Privilege | Reflects communication between Garmin's lawyers regarding Garmin's investigation of Plaintiff's complaint of unlawful discrimination. |
| CTRL000002 86-1 | Email | 11/25/2019 | David Kight | Andrew Etkind | N/A | Attorney-Client Privilege | Reflects communication between Garmin's lawyers regarding Garmin's investigation of Plaintiff's complaint of unlawful discrimination. |
| CTRL000002 88-1 | Email | 11/25/2019 | David Kight | Lynnette Huscher, Laurie Minard | N/A | Attorney-Client Privilege and Work-Product Privilege | Reflects communication from David Kight providing legal advice relating to Garmin's investigation of Plaintiff's complaint of unlawful discrimination. |

3

| Bates Nos. | Type | Date of Creation/ Sent Date | From | To | CC | Privilege Type | Description/Basis for Withholding Document |
|---|---|---|---|---|---|---|---|
| CTRL00000296-1 | Email | 11/25/2019 | Laurie Minard | David Kight, Lynnette Huscher, Andrew Etkind | N/A | Attorney-Client Privilege and Work-Product Privilege | Reflects communication with David Kight and Andrew Etkind regarding Garmin's investigation of, and the response to, Plaintiff's complaint of unlawful discrimination. |
| CTRL00000296-1-00000296-2 | Email | 11/25/2019 | David Kight | Laurie Minard, Lynnette Huscher, Andrew Etkind | N/A | Attorney-Client Privilege and Work-Product Privilege | Reflects communication from David Kight providing legal advice regarding Garmin's investigation of, and the response to, Plaintiff's complaint of unlawful discrimination. |
| CTRL00000298-1 | Email | 11/25/2019 | David Kight | Andrew Etkind | N/A | Attorney-Client Privilege | Reflects communication between Garmin's lawyers regarding Garmin's investigation of Plaintiff's complaint of unlawful discrimination. |
| CTRL00000300-1 | Email | 11/25/2019 | David Kight | Andrew Etkind | N/A | Attorney-Client Privilege | Reflects communication between Garmin's lawyers regarding Garmin's investigation of Plaintiff's complaint of unlawful discrimination. |
| CTRL00000304-1 | Email | 11/25/2019 | David Kight | Andrew Etkind | N/A | Attorney-Client Privilege | Reflects communication between Garmin's lawyers regarding Garmin's investigation of Plaintiff's complaint of unlawful discrimination. |
| CTRL00000304-1 | Email | 11/25/2019 | Andrew Etkind | David Kight | N/A | Attorney-Client Privilege | Reflects communication between Garmin's lawyers regarding the investigation of Plaintiff's complaint of unlawful discrimination. |
| CTRL00000323-1 | Email | 11/25/2019 | David Kight | Andrew Etkind | N/A | Attorney-Client Privilege | Reflects communication between Garmin's lawyers regarding Garmin's investigation of Plaintiff's complaint of unlawful discrimination. |

4

| Bates Nos. | Type | Date of Creation/ Sent Date | From | To | CC | Privilege Type | Description/Basis for Withholding Document |
|---|---|---|---|---|---|---|---|
| CTRL000003 23-1 | Email | 11/25/2019 | Andrew Etkind | David Kight | N/A | Attorney-Client Privilege | Reflects communication between Garmin's lawyers regarding Garmin's investigation of Plaintiff's complaint of unlawful discrimination. |
| CTRL000000 415-1 | Email | 11/25/2019 | Laurie Minard | Patrick Desbois | N/A | Attorney-Client Privilege and Work-Product Privilege | Reflects communication containing thoughts and mental impressions of David Kight regarding the investigation of Plaintiff's complaint of unlawful discrimination. |
| CTRL000001 25-1 | Email | 11/25/2019 | John Mudd | Lynette Huscher, Michelle Cormack, Laurie Minard, David Kight | Shanna Lynnes, Jeff Minelli | Attorney-Client Privilege and Work-Product Privilege | Reflects communication with David Kight regarding Garmin's investigation into Plaintiff's complaint of unlawful discrimination. |
| GARMIN 000924 | Email | 11/25/2019 | David Kight | Laurie Minard, Lynnette Hushcer, Andrew Etkind | N/A | Attorney-Client Privilege and Work-Product Privilege | Partial redaction reflects communication from David Kight providing legal advice regarding Garmin's investigation of, and the response to, Plaintiff's complaint of unlawful discrimination. |
| | | 11/26/19 – To Present | | | | Attorney-Client Privilege and Work-Product Privilege | Correspondence between Garmin and its legal counsel related to the defense of Plaintiff's charges of discrimination and his lawsuit. |
| GARMIN 001082 | Email | 11/27/209 | David Kight | Lynnette Huscher | N/A | Attorney-Client Privilege | Partial redaction reflects communication from David Kight regarding Plaintiff's EEOC Complaint. |

5

| Bates Nos. | Type | Date of Creation/ Sent Date | From | To | CC | Privilege Type | Description/Basis for Withholding Document |
|---|---|---|---|---|---|---|---|
| GARMIN 000444 | Email | 10/12/2020 | David Kight | Kerri Reisdorff , Margaret Young[4] | N/A | Attorney-Client Privilege | Partial redaction reflects communication amongst Garmin's counsel regarding Plaintiff's lawsuit. |
| GARMIN 000522 | Email | 10/12/2020 | David Kight | Kerri Reisdorff , Margaret Young | N/A | Attorney-Client Privilege | Partial redaction reflects communication amongst Garmin's counsel regarding Plaintiff's lawsuit. |
| GARMIN 000528 | Email | 10/12/2020 | David Kight | Kerri Reisdorff , Margaret Young | N/A | Attorney-Client Privilege | Partial redaction reflects communication amongst Garmin's counsel regarding Plaintiff's EEOC Complaint. |

Respectfully submitted,

/s/ Margaret K. Young
Kerri S. Reisdorff      KS #19709
Margaret K. Young     KS #78847
OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.
4520 Main Street, Suite 400
Kansas City, Missouri 64111
816-471-1301
816-471-1303 *(Facsimile)*
kerri.reisdorff@ogletree.com
margaret.young@ogletree.com

**ATTORNEYS FOR DEFENDANT**

---

[4] Kerri Reisdorff and Margaret Young are outside counsel for Garmin.

6

## <u>CERTIFICATE OF SERVICE</u>

   The undersigned certifies that on this 14th day of December, 2020, a true and correct copy of the foregoing was served via electronic mail to the following:

   Ganiyu Ayinla Jaiyeola
   749 Preserve Circle Dr., SE, Apt. 6
   Grand Rapids, MI 49548
   616-635-4025
   Ganiyu.jaiyeola@gmail.com

   **PLAINTIFF PRO SE**

         /s/ Margaret K. Young
         **ATTORNEY FOR DEFENDANT**

                45222494.1

# Ex. B

## Hiring and Transfer/Promotion Procedure

**1    Purpose**

    **1.1**    The purpose of this document is to provide information and instruction on the hiring and transfer/promotion procedure at Garmin.

**2    Scope**

    **2.1**    This procedure shall apply to all Garmin United States facilities.

**3    Responsibilities**

    **3.1**    Human Resources (HR) Recruiters will seek approval from business segment Vice Presidents to open a requisition.  If the position is denied, HR will notify the hiring Manager/Supervisor.  For positions approved for recruitment, Human Resources Recruiters will share candidate information and seek feedback from hiring managers throughout the recruitment process.

        **3.1.1**    For both internal and external applications, the Hiring Manager and HR Recruiter shall ensure that the candidates under consideration meet the minimum qualifications to be transferred, promoted or hired.

        **3.1.2**    The HR Recruiter will ensure that this procedure is followed and that candidates being considered for external and internal applications, transfers, or promotions have completed the necessary HR and Hiring Manager interviews.

    **3.2**    The hiring manager is responsible to follow up with Human Resources and provide feedback regarding the interest level in the candidate.  If Human Resources has not heard back from the hiring manager within three (3) business days, sometimes shorter turn arounds in certain areas, Human Resources will contact the hiring manager.  **Feedback is a very important element to the interview process.**  Human Resources will work with the hiring Manager/Supervisor to determine if the candidate meets Garmin's standards and if the candidate should move forward in the process.

**4    Definitions**

    **4.1**    <u>Hiring Manager</u> includes any manager, supervisor or team leader who is filling a position through an internal applicant, transfer, or promotion.

    **4.2**    <u>Human Resources Management</u> refers to the HR Managers responsible for recruiting and retention, including giving approval of all transfers or promotions.

    **4.3**    <u>Human Resources Recruiter</u> refers to the Human Resources professional responsible for the sourcing, interviewing and hiring of candidates who have applied for open positions at Garmin or have been targeted for a transfer.

    **4.4**    <u>International Traffic in Arms Regulations (ITAR)</u> is a U.S. government regulations that control the export and import of defense-related articles and services on the United States Munitions List (USML).  These regulations are controlled by the Department of State and are described in CFR 22 (Foreign Relations).

    **4.5**    <u>Non-U.S. person(s)</u> a term used by Garmin to refer to citizens of countries other than the United States who are not "lawfully admitted" into the U.S. as permanent residents, and who are not a "protected individual" as defined by Title 8 U.S.C 1324b(a)(3).  As a general matter, this term shall be used to encompass both "Foreign Nationals" as defined under the EAR and "Foreign Persons" as defined under the ITAR throughout this document.

    **4.6**    <u>Taleo</u> is the applicant tracking system used by associates to apply for positions at Garmin and by recruiters to review, hire, and store candidate interview documents.

| Page 1 of 5 | **Hiring and Transfer/Promotion Procedure** | **HRD-0001** Rev. L |
|---|---|---|
| | Hard copies or local copies of this document are uncontrolled and may have been superseded.  Refer to findpart.garmin.com for the current revision. | |
| | **Garmin** | |

CONFIDENTIAL                    GARMIN 000163

# Ex. C

Hiring and Transfer/Promotion Procedure

**5**    **Method**

**5.1**   Whether it is a newly created position or a replacement, the Hiring Manager should notify their respective HR Recruiter.  Operations Managers should complete FRM-0324 (Job Requisition Form).

**5.2**   The Hiring Manager should include justification for the opening including items such as the position title, a new budgeted position, backfill of an existing headcount and if requested any specialized advertising avenues, if any.  For a new position request, the Hiring Manager should work with his/her respective HR Recruiter to create a new job description.

**5.2.1**   HR Recruiters should work with Human Resources Management, legal  and HRIS for review and final approval of significantly revised or new job descriptions prior to posting in Garmin's applicant tracking system.

**5.3**   If the position is approved, a recruiting team member will create the requisition in Taleo and attach approvals if applicable.  HR may post the position internally and/or externally as deemed appropriate.  All full-time positions must be posted for a minimum of three (3) days internally.

**5.4**   Human Resources will post all external postings on required state/compliance job boards along with other external sources as requested and/or deemed appropriate.

**5.5**   **Candidate Identification / Interviews**

**5.5.1**   Following the onset of an opening of a requisition, HR Recruiters will review candidates who have completed applications for specific positions in Taleo and will either terminate the application and notify the candidate of that decision, or will contact the candidate for further screening.

**5.5.2**   All candidate records will be stored in Taleo.

**5.5.3**   All candidates who submit their application online will receive an acknowledgment electronically that their application has been submitted or rejected.

**5.5.4**   The Hiring Manager and HR Recruiter should work together to interview qualified and suitable applicants and determine if any candidates are acceptable for the position.

**5.5.4.1**   Internal candidates - The HR Recruiter and/or Hiring Manager will review each applicant's experience, background, past performance evaluations and previous corrective action documents if applicable; discuss with the candidate's current supervisor regarding the associate's skills, abilities, and performance; and determine if there is a mutual agreement that the candidate is available for transfer or promotion.

**5.5.4.2**   Internal associates who have received corrective action in the prior six (6) month period will not be eligible for transfer or promotion and should not be considered in the list of eligible candidates.

**5.5.4.3**   Internal associates must meet the minimum qualifications for the new position and required skills as outlined in the job description

**5.5.4.4**   The Internal candidate is required to notify his/her current supervisor of their application prior to applying.

**5.5.4.5**   The Internal candidate is required to have completed a minimum of six (6) months or one (1) year of service in his/her current position to be eligible to apply.

**5.5.4.6**   All internal applicants who meet the minimum qualifications and requirements above will be considered for the position.

**5.5.5**   Hiring managers will have the ability to view screened candidate's profiles and qualifications.

**5.5.6**   HR Recruiters will pre-screen, interview, and/or evaluate candidates and provide interview notes, candidate information, and a recommendation for further action to the hiring

| Page 2 of 5 | **Hiring and Transfer/Promotion Procedure** | HRD-0001 Rev. L |
|---|---|---|
| Hard copies or local copies of this document are uncontrolled and may have been superseded.  Refer to findpart.garmin.com for the current revision. | | |
| **Garmin** | | |

CONFIDENTIAL                                                                          GARMIN 000164

# Ex. D

Hiring and Transfer/Promotion Procedure

5.8.2   The Hiring Manager is responsible for conducting formal introductions to co-workers, managers, and other key associates that the new associate's position will interact with. Hiring Managers or their designee should provide a departmental tour and help the associate get acclimated in their new role.  The Hiring Manager should show them their work area, set-up on computer and how to use the phone system, message system, conference system and the number which they can be reached at.  We encourage that you welcome all associates and assist them to feel comfortable with the new associate process as well as have a training agenda for new associates.

5.8.3   The Hiring Manager should also make sure the new associates in the department make the new associate feel welcome, are willing and able to answer questions for them, and are willing to share knowledge.

**6      Measurement and Analysis**

6.1     The Human Resources Management team will review this process on an annual basis to ensure that it is still current and will make revisions as necessary.

6.2     Interview notes for candidates will be stored in Taleo.

| Page 5 of 5 | Hiring and Transfer/Promotion Procedure | HRD-0001 Rev. L |
|---|---|---|
| | Hard copies or local copies of this document are uncontrolled and may have been superseded.  Refer to findpart.garmin.com for the current revision. | |
| | Garmin | |

CONFIDENTIAL

GARMIN 000167

# Ex. E

11/22/2019                          Ganiyu Jaiyeola - Dobbs, Benjamin - Garmin Confluence
Dashboard / Dobbs, Benjamin's Home / AVME: Candidates Interview Notes - Dobbs

## Ganiyu Jaiyeola
Created by Dobbs, Benjamin, last modified less than a minute ago

Date:        14 Aug 2019
Interviewers:   @ Klein, Jared  ,  @ Dobbs, Benjamin  ,  @ Rollheiser, Paul   (not present, copied for visibility)
Position: Advanced Materials Engineer - Metals
Degree: BSc Chemistry (Univ of Ibadan); MSc Chemistry (Univ of Ibadan); MS Chemistry (Univ of Conn); PhD Materials Science (Univ of Conn); MBA (Syracuse Univ)
GPA: N/A
Resume: Jaiyeola_Ganiyu_resume_2019-08-14.pdf
Transcript: N/A
Phone Screen: Jaiyeola_Ganiyu_PS_2019-08-14.doc
Other Documents: Jaiyeola_Ganiyu_TPS_2019-08-14.doc

**Experience:**

- found issue with corrosion due to the acidic reaction with sulfur.  was able to provide a step by step process of how he determined what the underlying issue was, and what the next steps would be (suggested improvements and way to test/evaluate).
- familiar with castings - at least in testing the cast materials.  found that typically the oils used in the casting process greatly affect the plating process.
- familiar with powdered metal/sintering  - sounds like testing only again
- metalized platings on plastics - tested only (nickel first)
- tin whiskers - familiar with it, but experience he has was to add lead to the tin.  (opposite of our direction...)
- brazing - completed failure analysis of a brazed joint.  filler materials are very critical and can easily create a medium for galvanic corrosion.  stated he had worked with different suppliers to evaluate different process controls to land on improved parts.
- struggled with providing examples of instances where he provided material/plating recommendations in the design phase.  did come up with an example where electrical conductivity was required to be maintained over moisture environments.
- galling experience (SS materials) - recommended avoiding crevices, no fluids, air to reduce galling.  had used Teflon in the past to help control/prevent galling.
- plating experience - nickel, gold, palladium, chrome, lead, silver, most alloys, chromate (stated he has lots of experience with this), anodizing
- stated familiarity with MIL-spec testing, previously worked at a company that was on an air force base, and Boeing.

**Why Garmin?  Looking For?**

- lots of challenges, lots to do
- part of teams
- equipment to work with
- conferences for learning
- consultation vs. specialist - more comfortable with variety, prefers that
- test lab - comfortable recommending equipment and determining what tests to run

**Questions?**

- what kind of challenges will this position face?

**Comments**

| Trait | Notes |
|---|---|
| Desire for product design at Garmin/Long-term Career Goals | no real read on Garmin being a long-term goal, more focused on challenges and that Garmin he thinks, would be a place where he would be challenged. |
| Personable (friendly, relaxed) | Yes, very respectful, seemed relaxed. |
| Communication (speaks clearly, articulate, and confident) | Yes, spoke confidently, was able to clearly communicate past experiences |
| Nervous (shifty eyes, shaky) | no |
| Technical skills (communicates role on job/project) | as stated previously yes.  that said, one question Jared asked about other examples where he provided material/plating recommendations in past work at the design phase caused him to stumble some.  He seems to have a lot of experience with platings and plating evaluations. seems less so with materials/base metals although he did elude to some experience there as well. |
| Teamwork (recognizes value in getting feedback from others) | mentioned that he likes to work on teams, not other real read on this. |
| Final Comments | REDACTED |

No labels

https://confluence.garmin.com/pages/viewpage.action?spaceKey=~dobbsb&title=Ganiyu+Jaiyeola          1/1
CONFIDENTIAL                                                                          GARMIN 000440

# Ex. F

# Ogletree
# Deakins

**OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.**

*Attorneys at Law*

4520 Main Street, Suite 400
Kansas City, MO 64111
Telephone: 816-471-1301
Facsimile: 816-471-1303
www.ogletreedeakins.com

Margaret Young
816.410.2231
margaret.young@ogletree.com

December 17, 2020

**VIA EMAIL: Ganiyu.jaiyeola@gmail.com**

Mr. Ganiyu A. Jaiyeola
749 Preserve Cir. Dr. SE
Apt. 6
Grand Rapids, MI 49548

RE:    Outstanding Privilege Log Issues

Dear Mr. Jaiyeola:

As we discussed during our Teams meeting yesterday, I am providing additional explanations for our assertions of attorney-client privilege and the work-product privilege on each of the bates-numbered documents you identified in your email correspondence on December 15, 2020. We hope these explanations will resolve your concerns. As we indicated on our call, we would be happy to schedule a follow-up call to discuss.

As an initial matter, I am universally addressing why each of the documents you identified is protected by the work-product privilege. The work-product privilege applies when "'(1) the materials sought to be protected are documents or tangible things; (2) they were prepared in anticipation of litigation or for trial; and (3) they were prepared by or for a party or a representative of that party.' The court evaluates both whether the documents in question were created because of the anticipation of litigation and whether the party reasonably believed the threat of litigation to be real and imminent." *Sudenga Indus., Inc. v. Global Indus., Inc.*, 2020 WL 2513072, at *8 (D. Kan. May 15, 2020) (internal citation omitted) (emphasis in original).

Each of the documents you identified satisfies all of the requirements set forth above and as such, each is protected from disclosure by the work-product privilege. First, they are all documents or tangible things. Second, each was prepared in anticipation of litigation after Garmin received your complaint of unlawful discrimination on November 22, 2019. As we discussed yesterday, your letter created a reasonable belief that the threat of litigation was real and imminent as it specifically referenced an "EEOC Complaint". Your reference to "EEOC" (which stands for the Equal Employment Opportunity Commission) led Garmin to reasonably believe you had or would be imminently filing a charge of discrimination with the EEOC. You can see on the log that each document was created on or after receipt of your November 22, 2019 letter. The one exception is GARMIN 000440. However, the partial redaction reflects information that was added to that

Atlanta ▪ Austin ▪ Berlin (Germany) ▪ Birmingham ▪ Boston ▪ Charleston ▪ Charlotte ▪ Chicago ▪ Cleveland ▪ Columbia ▪ Dallas ▪ Denver ▪ Detroit Metro ▪ Greenville ▪ Houston
Indianapolis ▪ Kansas City ▪ Las Vegas ▪ London (England) ▪ Los Angeles ▪ Memphis ▪ Mexico City (Mexico) ▪ Miami ▪ Milwaukee ▪ Minneapolis ▪ Montréal (Canada) ▪ Morristown
Nashville ▪ New Orleans ▪ New York City ▪ Oklahoma City ▪ Orange County ▪ Paris (France) ▪ Philadelphia ▪ Phoenix ▪ Pittsburgh ▪ Portland, ME ▪ Portland, OR ▪ Raleigh ▪ Richmond
St. Louis ▪ St. Thomas ▪ Sacramento ▪ San Antonio ▪ San Diego ▪ San Francisco ▪ Seattle ▪ Stamford ▪ Tampa ▪ Toronto (Canada) ▪ Torrance ▪ Tucson ▪ Washington

730

December 17, 2020
Page 2

document after receipt of your November 22, 2019. Finally, each document was prepared for the would-be party to the litigation—Garmin.

Below I address our assertions of the attorney-client privilege.  However, please note that Garmin only has to establish the applicability of a single privilege in order to assert privilege. In other words, because Garmin has already established that the work-product privilege is applicable to each of the emails you identify it had the right to not produce the documents regardless of whether the additional privilege of attorney-client privilege is also applicable.

**GARMIN 000400**

The partial redaction in this document contains information that was gathered at the direction of Garmin's in-house counsel after Garmin received your complaint of unlawful discrimination on November 22, 2019. Dobbs added to his notes that day for the purpose of providing information to Garmin's in-house counsel to facilitate his efforts to investigate your complaint of unlawful discrimination. These notes were ultimately communicated to Garmin's in-house counsel. As such, the document is also protected by the attorney-client privilege. *See Williams v. Sprint/United Mgmt. Co.,* 238 F.R.D. 633, 639 (D. Kan. 2006) (affirming magistrate judge's finding that attorney-client privilege applied to communications among non-attorneys "where documents 'contained information collected for the dominant purpose of facilitating the attorney's efforts to provide services to the client, and the information in every instance, was, in one form or another, communicated to the attorney.'") (internal citations omitted).

**CTRL00000111-2 and GARMIN 000903**

These entries reflect the same email so I have grouped them together. The attorney-client "privilege 'protects confidential communications by a client to an attorney made in order to obtain legal assistance from the attorney in his capacity as a legal advisor.'" *AKH Co., Inc. v. Univ. Underwriters Ins. Co.*, 300 F.R.D. 684, 693 (D. Kan. 2014) (internal citations omitted). This email is protected by the attorney-client privilege precisely for the reason stated in *AKH*. Cormack received your complaint of unlawful discrimination on November 22, 2019 and sent it to Garmin's in-house counsel for the purpose of obtaining his assistance in his capacity as a legal advisor.

**CTRL00000160-1 (email) and CTRL00000161-1-00000162-3 (attachments)**

This email and the attachments are protected by the attorney-client privilege as the email is a communication among non-attorneys, which contains "'information collected for the dominant purpose of facilitating the attorney's efforts to provide services to the client, and the information in every instance, was, in one form or another, communicated to the attorney.'" *See Williams* 238 F.R.D. at 639 (internal citations omitted). Jared Klein sent this email to John Mudd pursuant to Garmin's investigation of your complaint of unlawful discrimination at the direction of Garmin's in-house counsel. The email was ultimately communicated to Garmin's in-house counsel to facilitate his efforts to investigate your complaint of unlawful discrimination.

December 17, 2020
Page 3

**CTRL00000168-1- (email) and CTRL00000168-2-00000168-3 (attachments) and CTRL00000125-1**

These emails are protected by the attorney-client privilege for the same reason so I have grouped them together. The attorney-client privilege protects communications with in-house counsel. *See New Jersey v. Sprint Corp.*, 258 F.R.D. 421, 425 (D. Kan. 2009). With respect to both emails, the privilege applies because they are direct communications with in-house counsel relating to Garmin's investigation of your complaint of unlawful discrimination.

Finally, you asked for the job titles of two individuals identified on the privilege log. Shanna Lynnes is the Manager of Human Resources Recruiting and Associate Relations. Patrick Desbois is Executive Vice President of Operations.

Sincerely,

Margaret Young

MY:

45346920.1

# Ex. G

**ME Interview Guide/Exp**

**Candidate Name:**  Ganiyu Jaiyeola (Materials Engineer – metals)          **Date:**  7/24/2019

**Interviewer:**  Jared Klein (TPS with John Mudd)


Types of design experience; details on past design projects & saleable products; what were the products and what were the design obstacles on each?  (without violating any confidentiality agreements)
Materials engineer for 20 years.  Supplier qualifications on many projects.  Focus of his experience has been with metallic materials, both common (steel, aluminum, etc.) and rare (platinum, silver, etc.).  Worked with domestic and overseas businesses and suppliers.  Knows Garmin & our products.

Stryker – Consultant, anodized aluminum.  Compatibility issues with surgical environment and cleaners. Asked to qualify suppliers for them for anodized aluminum, reviewed processes, analyzed & tested samples, utilized test labs.  Used SEM testing to identify issues (pores).  Problem was with the anodize process itself, it creates pores in the material, which can lead to corrosion.

Most jobs since 2001 have been consulting jobs, some were full-time but resulted in layoffs.  Seeking more challenges with a company.


Experience/example of working with design engineering on a new part/design
-   Has experience working with design team.  Has strong chemistry background, helps understand
    materials.  Advised design engineers on material compatibility, insulating materials from each other
    (galvanic corrosion), reviews material choices, advises design team.  Did this working for Element (test
    lab, consulting company), auto company working on rear view cameras with magnesium alloys, did
    testing.  Company was set on magnesium, so helped them select alloy for the environment and use case
    (exhaust gasses, salt & corrosion environment, galvanic compatibility).
Experience/example of investigating & solving a failure issue
-   Sifco, does brush plating.  Use a fresh solution all the time, important but more costly.  Oil drilling bits
    (Halliburton), silver plating, wear issues failing faster than expected, possibly coating adhesion issues,
    so investigated plating process with plating supplier.  Issue was with transport/handling of parts during
    hotter summer months, oxidized more quickly, and oxidation wasn't cleaned off properly prior to
    plating.
Experience working with various metal industries/processes (casting, machining, extrusions, SMP,
brazing)?
-   ?
Experience with platings, finishes (both functional and cosmetic)
-   Lots of experience with platings, especially.  With Cross, he was responsible for finding plating
    suppliers in China when product lines were moved over there.  Visited suppliers, sent samples to US,
    involved with every step of plating line.  Plated silver, gold, platinum.
Experience with corrosion, exposure to harsh environments
-   ?
Experience with material fatigue, wear, galling
-   Automotive company project, problems with platings flaking off, pitting, etc., worked with them to
    develop options that would be suitable for their harsh environments.
Experience with lab equipment & capability – defining, acquiring equipment, etc.
-   Sifco – Set up lab equipment for salt spray testing, same for Carrier. Also worked at Element, which is
    a test lab.  Helped Element select a new SEM (scanning electron microscope), attended seminars,
    worked with suppliers, evaluated equipment.


CONFIDENTIAL                                                          GARMIN 000441

Likes challenges, diligent.  Ask questions of everyone involved, work through process diligently as quickly as possible.

He was careful to avoid confidential/proprietary information, but was still able to adequately answer questions.


Academics –


Work that you would like to do –


Were you satisfied with the final products, or were there areas where you were designed into a corner by other factors such as industrial design, customer constraints, EE requirements, other inputs?


What 3D CAD experience have you had?


What are your biggest engineering strengths that you would bring to Garmin?


How would you describe your non-engineering (organizational, business, communication) skills?


When you are really stuck on a difficult engineering problem, how do you find answers or solutions?


Have you worked with industrial designers on past designs?  Process engineers?


How involved do you get with toolers and suppliers?


How do you like to handle shared/split projects?


What methods do you use to track your portion of the project, such as schedule, progress, cost, sourcing, etc.


If non-design responsibilities exist, what % of time was spent on design, what % on management, etc.?


CONFIDENTIAL                                                                                         GARMIN 000442

Why are you interested in Garmin?


Considering past experience and roles, what are your goals in a new job both immediately and in the future? What are you looking for in a job (short and long term)?
Do well in a challenging environment, used to not always having all the resources (but this is important), working with ME & EE and even Marketing.  Likes this team environment, working to solve complex challenges.  Can work with outside labs if in-house capability doesn't exist.

Questions about working at Garmin
Timing for hiring?
He felt we already described the basics for the position.


OSI – 8/14/2019 – With Ben Dobbs (I led the interview, see Ben's notes)
Summary – Good, directly relevant academic background.  Work background includes a variety of projects and markets (aerospace, automotive, consumer), typically on a consulting / shorter term basis of 1-2 years.  This has provided some good experience, but longer term dedication to projects / product lines and support is not demonstrated.  He has not been at a company/project long enough to know if his design & process input actually resulted in long-term success from a technical, supplier, reliability, process, etc. standpoint.  Technical area of expertise is more in platings & corrosion, lesser examples of base material mechanical properties and performance.

GARMIN 000443

# Ex. H

Message

| | |
|---|---|
| **From**: | Minard, Laurie [laurie.minard@garmin.com] |
| **Sent**: | 11/22/2019 4:14:43 PM |
| **To**: | Cormack, Michelle [michelle.cormack@garmin.com] |
| **Subject**: | RE: Complaint: Denial of Employment |
| **Attachments**: | image002.jpg; image003.png; image004.jpg |

I know it has happened to me too, and is very frustrating when there isn't any legitimate valid concerns or discrimination and someone falsely states that as a reason.  We will follow up next week and look at all the information and gather the facts to discuss our response.  Don't stress, we will help you through things.

Laurie Minard
VP, Human Resources
Garmin
laurie.minard@garmin.com



---

**From:** Cormack, Michelle <Michelle.Cormack@garmin.com>
**Sent:** Friday, November 22, 2019 2:22 PM
**To:** Minard, Laurie <Laurie.Minard@garmin.com>
**Subject:** RE: Complaint: Denial of Employment

First time in  my 12 years here that this has happened.



Michelle Cormack - *Senior Technical Recruiter*
Direct: (913) 440-2733

**Learn more about Garmin's:**
People/Passion/Products

---

**From:** Minard, Laurie <Laurie.Minard@garmin.com>
**Sent:** Friday, November 22, 2019 2:17 PM
**To:** Cormack, Michelle <Michelle.Cormack@garmin.com>
**Subject:** RE: Complaint: Denial of Employment

Thanks, Michelle.

I had not received any information yet so thank you for forwarding.

Laurie Minard
VP, Human Resources
Garmin
laurie.minard@garmin.com

CONFIDENTIAL

GARMIN 000902

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

GANIYU AYINLA JAIYEOLA,                )
                                       )
                    Plaintiff,         )
                                       )
v.                                     )   Case No. 20-2068-HLT
GARMIN INTERNATIONAL, INC.,            )
                                       )
                    Defendant.         )

## <u>ORDER</u>

The pro se plaintiff, Ganiyu Ayinla Jaiyeola, has filed a motion (ECF No. 61) for a protective order to preclude defendant from allowing a corporate representative to attend fact-witness depositions.  The parties are scheduling depositions in this case, the first of which has been noticed for January 21, 2021.[1]  Defense counsel has informed plaintiff her client will send a corporate representative to attend that deposition and ostensibly others.[2]  Plaintiff opposes the presence of anyone beyond the witness, plaintiff, and defendant's counsel of record.[3]  The parties have discussed the issue over the phone and continue to disagree on the presence of the corporate representative at fact-witness depositions.[4]

The District of Kansas has issued Deposition Guidelines, available on the court's website at http://ksd.uscourts.gov/wp-content/uploads/2015/10/depoguidelines.pdf. Section 4(a) provides for attendance at depositions by "counsel of record, members and

---

[1] ECF No. 60.
[2] ECF No. 61 at 3.
[3] *Id.*
[4] *Id.* at 4.

O:\ORDERS\20-2068-HLT-61.DOCX

employees of their firms, attorneys specially engaged by a party for purpose of the deposition, *the parties or the representative of a party*, and counsel for the deponent,"[5] unless otherwise ordered by Fed. R. Civ. P. 26(c).

Plaintiff argues, under Rule 26(c), he's entitled to a protective order to preclude any corporate representative's attendance. The bulk of the motion is spent reciting plaintiff's factual narrative of the case. Beyond setting out the protective-order standard, he doesn't cite any case law to support why he's entitled to a protective order under these circumstances. He only makes a brief argument that a corporate representative's appearance "has the potential to cause harm or prejudice to the deposition process through coaching of Garmin fact witnesses and making efforts to align the testimonies of Garmin fact witnesses during deposition breaks."[6]

The court is mindful plaintiff is proceeding pro se and may not be familiar with every procedural rule. To that end, plaintiff is encouraged to review the Deposition Guidelines, as this court has established its commitment to enforcing them and sanctioning violations.[7] In this instance, the Guidelines are clear that a corporate representative is generally allowed at depositions, and plaintiff hasn't shown any good cause for a protective order granting an exception. Plaintiff's assertion that a corporate representative is likely

---

[5] Emphasis added.
[6] ECF No. 62 at 8-9.
[7] *See, e.g., In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Practices & Antitrust Litig.*, No. 17-MD-2785-DDC-TJJ, 2018 WL 6617105, at *3 (D. Kan. Dec. 14, 2018) (discussing the significance of the Deposition Guidelines and situations where parties have been sanctioned for violating them).

to improperly coach the witness is unfounded by the record and purely speculative at this point.

Further, this remote possibility is addressed by the Deposition Guidelines.  Section 5(c) governs private consultation between deponents and their attorneys.  The Guidelines state private conferences during the deposition (rather than during recesses and adjournments) are improper except to determine whether a party should assert privilege or work-product immunity; violations of this guideline are proper subjects for inquiry during the deposition about whether there's been any witness-coaching.  Although it's not stated explicitly, the court reads this section to have similar force over corporate representatives.  So, in the unlikely event of improper coaching, plaintiff may raise that issue at the deposition.  Plaintiff is not entitled to a protective order before the deposition to preclude the corporate representative from even attending.

IT IS THEREFORE ORDERED that plaintiff's motion for protective order (ECF No. 61) is denied.

Dated January 12, 2021, at Kansas City, Kansas.

 s/ James P. O'Hara
James P. O'Hara
U.S. Magistrate Judge

```
MIME-Version:1.0
From:KSD_CMECF@ksd.uscourts.gov
To:ksd_nef@localhost.localdomain
Bcc:
--Case Participants: Margaret K. Young (kcmdocketing@ogletreedeakins.com,
margaret.young@ogletree.com, robin.russell@ogletree.com), Kerri S. Reisdorff
(amy.limback@odnss.com, julie.hill@odnss.com, kcmdocketing@ogletree.com,
kerri.reisdorff@ogletree.com, margaret.young@ogletree.com), Ganiyu Ayinla Jaiyeola
(ganiyu.jaiyeola@gmail.com), District Judge Holly L. Teeter
(ksd_teeter_chambers@ksd.uscourts.gov), Magistrate Judge James P. O'Hara
(ksd_ohara_chambers@ksd.uscourts.gov)
--Non Case Participants: Colleen M. Abraham (colleen_abraham@ksd.uscourts.gov)
--No Notice Sent:

Message-Id:5219530@ksd.uscourts.gov
Subject:Activity in Case 2:20-cv-02068-HLT-JPO Jaiyeola v. Garmin International, Inc.
Order on Motion to Compel
Content-Type: text/html
```

## U.S. District Court

## DISTRICT OF KANSAS

### Notice of Electronic Filing

The following transaction was entered on 1/12/2021 at 1:14 PM CST and filed on 1/12/2021

| | |
|---|---|
| **Case Name:** | Jaiyeola v. Garmin International, Inc. |
| **Case Number:** | 2:20–cv–02068–HLT–JPO |
| **Filer:** | |
| **Document Number:** | 66(No document attached) |

**Docket Text:**

 ORDER re [63] plaintiff's motion to compel. The court previously granted plaintiff's unopposed motion for extension of time to compel defendant's discovery responses, which gave plaintiff an additional month to file a motion to compel (ECF No. 53). Plaintiff has now filed that motion and asks the court to expedite deadlines so it's fully briefed and ruled on to accommodate a recently–noticed January 21, 2021 deposition. The court does not find good cause to do so and will not expedite deadlines as to this motion. Defendant shall have the full 14 days to respond to the motion and plaintiff shall have 14 days to reply. If this means plaintiff has to postpone the January 21 deposition, so be it. Signed by Magistrate Judge James P. O'Hara on 1/12/21. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (jc)

**2:20–cv–02068–HLT–JPO Notice has been electronically mailed to:**

Kerri S. Reisdorff     kerri.reisdorff@ogletree.com, amy.limback@odnss.com, julie.hill@odnss.com, kcmdocketing@ogletree.com, margaret.young@ogletree.com

Margaret K. Young     margaret.young@ogletree.com, kcmdocketing@ogletreedeakins.com, robin.russell@ogletree.com

Ganiyu Ayinla Jaiyeola     ganiyu.jaiyeola@gmail.com

**2:20–cv–02068–HLT–JPO Notice has been delivered by other means to:**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


GANIYU AYINLA JAIYEOLA,
                  Plaintiff,

v.                                 Case No.: 2:20-cv-2068-HLT-JPO

GARMIN INTERNATIONAL, INC.,
                  Defendant.


**PLAINTIFF'S MOTION TO RECONSIDER THE COURT'S ORDER (ECF No. 65)**

This is an employment discrimination lawsuit[1] in which Garmin International, Inc.

("Garmin"), by failing to hire Plaintiff ("Jaiyeola") (for the "Advanced Materials Engineer -

Metals-19001CL"[2] position he applied and interviewed for over the phone and on-site at

Garmin's Headquarters/Manufacturing Center in Olathe, Kansas) violated Jaiyeola's rights under

Title VII of the Civil Rights Act of 1964, as amended ("Title VII" – Race (African American),

Color (Black), and National Origin (Nigerian)), 29 U.S.C. § 621, et seq. (Age Discrimination in

Employment Act, as amended ("ADEA"), 42 U.S.C. §12112(b)(4) (Disability Association

Discrimination - Title I of the Americans with Disabilities Act ("ADA")), The Kansas Age

Discrimination in Employment Act[3] (Chapter 44, Art. 11, K.S.A., and specifically within the

meaning of subsection (a)(1) of Section 44-1113 of said Act - "KADEA") and 42 U.S.C. § 1983

(Denial of Due Process – "Due Process").  Garmin is also liable for discrimination under Section

703(a) of Title VII because the fact that Jaiyeola was not hired by Garmin was based on the

---

[1] ECF No. 1, pp. 1-21. Plaintiff's Complaint.
[2] ECF No. 1-17, p. 2. Garmin's Human Resources Email Stating That Plaintiff Was Not Hired.
[3] http://www.kslegislature.org/li/b2019_20/statute/044_000_0000_chapter/044_011_0000_article
/044_011_0013_section/044_011_0013_k/

influence of a Garmin employee, Mr. Jeff Minelli (Garmin's Director of Mechanical

Engineering), with a discriminatory motive; Subordinate Bias Liability ("cat's paw" theory of

liability)[4].  Defendant's motion to dismiss the <u>42 U.S.C. § 1983</u> claim was granted by the Court

but the pleading (in the same Defendant's motion) to dismiss the Subordinate Bias Liability

claim was Denied[5].

Plaintiff states as follows:

1.       Plaintiff is a *pro se*.  In *Hall v. Witteman*, this Court stated that "*Pro se* complaints,

however inartfully pleaded, must be liberally construed, and are held to less stringent standards

than formal pleadings drafted by lawyers. *Erickson v. Pardus*, ___ U.S. ___, <u>127 S.Ct. 2197, 2200</u>,

<u>167 L.Ed.2d 1081</u> (2007). See *Martinez v. Garden*, <u>430 F.3d 1302, 1304</u> (10th Cir. 2005)……"[6].

The Sixth Circuit asserted that "We recognize that *pro se* litigants impose a burden on the courts

and that clients are usually better off if represented by counsel."[7].  The U.S. Supreme Court has

stated that *pro se*[8] pleadings and motions should be viewed liberally and held to a lesser standard

than those drafted by Attorneys.

2.       Plaintiff moves this Court to reconsider its Order (<u>ECF No. 65</u>) denying Plaintiff a

Protective Order that would prevent Defendant employees who are not being deposed from being

present at the deposition of Plaintiff and Defendant fact witnesses.

3.       The following assertions by the Magistrate are conclusory and wrong: "The bulk

of the motion is spent reciting plaintiff's factual narrative of the case. Beyond setting out

---

[4] *Equal Employment Opportunity Commission v. BCI Coca-Cola Bottling Company of Los Angeles*, <u>450 F.3d 476</u> (10th Cir. 2006).
[5] ECF No. 17, pp. 4-6. Violation of Title VII Based on Subordinate Bias Liability.
[6] *Hall v. Witteman*, <u>569 F. Supp. 2d 1208</u> (D. Kan. 2008).
[7] *King v. Curtis*, No. 14-2614 (6th Cir. 2015).
[8] *Haines v. Kerner*, <u>404 U.S. 520</u> (1971).

2

the protective-order standard, he doesn't cite any case law to support why he's entitled to a protective order under these circumstances. He only makes a brief argument that a corporate representative's appearance "has the potential to cause harm or prejudice to the deposition process through coaching of Garmin fact witnesses and making efforts to align the testimonies of Garmin fact witnesses during deposition breaks."6"9.

4.      In Plaintiff's Motion[10] and Memorandum[11], Plaintiff advanced the fact that a Defendant fact witness committed a fraud on an evidence in this case by altering **(on November 22, 2019)** the Defendant fact witness interview notes **(created on August 14, 2019)** on Plaintiff. The alteration was done at the direction of the Defendant in-house Attorney.  Plaintiff believe the sanction on the Defendant should be that Defendant employees who are not being deposed be prevented from being present at the deposition of Plaintiff and Defendant fact witnesses.  Also, "the protective-order standard"[12] that Plaintiff stated is from a case law (*Surat v. Klamser et al.*, No. 19-cv-0901-WJM-NRN, Document 87 (D. Colo. March 6, 2020)) that relates to preventing persons who are not fact witnesses at a deposition.

5.      The U.S. Supreme Court has stated that *pro se*[13] pleadings and motions should be viewed liberally and held to a lesser standard than those drafted by Attorneys.  The Magistrate, in considering Plaintiff's Motion and Memorandum, apparently ignored the fact that Plaintiff is a *pro se*.

6.      "D. Kan. Rule 7.3(b) governs motions to reconsider non-dispositive orders. Under

---

[9] ECF No. 65, p. 2, ¶ 2, Lines 2-8.
[10] ECF No. 61.
[11] ECF No. 62.
[12] ECF No. 65, p. 2, ¶ 2, Line 3.
[13] *Haines v. Kerner*, 404 U.S. 520 (1971).

that rule, a party may seek reconsideration on the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence; or (3) the need to correct clear error or prevent manifest injustice. ….. **a motion to reconsider is available where the court has "misapprehended the facts, a party's position**, or the controlling law," ….."" [14].

7.      **The Magistrate "misapprehended the facts [and Plaintiff's] position"** in Plaintiff's Motion and Memorandum.  Plaintiff is therefore entitled to a reconsideration of the Court's Order (ECF No. 65).

8.      For all the reasons stated in the Motion and Memorandum, Plaintiff hereby ask[15] this Court to reconsider its Order (ECF No. 65) and enter a Protective Order precluding any Defendant employee who is not being deposed from attending any deposition of Plaintiff and fact witnesses in this lawsuit.


Respectfully submitted,


Dated: January 13, 2021                         Ganiyu A. Jaiyeola, PhD., MBA

749 Preserve Circle Drive SE #6

Grand Rapids, Michigan 49548

Tel.: 616.635.4025

ganiyu.jaiyeola@gmail.com


PLAINTIFF

*pro se*

---

[14] *Lawson v. Kansas City*, Case No. 19-CV-2344-JAR-JPO (D. Kan. May. 11, 2020).
[15] Pursuant to D. Kan. Rule 7.3(b) and Fed. R. Civ. P. 26(c)(1)(E).

## CERTIFICATE OF SERVICE

Plaintiff hereby certifies that on this 13th day of January, 2021, Plaintiff e-mailed this document to the District Court Clerk's office where it would be filed using the Court's CM/ECF system which will automatically send the document to the following Defendants' Attorneys:

Kerri S. Reisdorff

Margaret K. Young

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

4520 Main Street, Suite 400

Kansas City, Missouri 64111

kerri.reisdorff@ogletree.com

margaret.young@ogletree.com

ATTORNEYS FOR DEFENDANT

Respectfully submitted,

_____

Ganiyu A. Jaiyeola, PhD., MBA

PLAINTIFF

*pro se*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

GANIYU AYINLA JAIYEOLA,
                    Plaintiff,

v.                                                          Case No.: 2:20-cv-2068-HLT-JPO

GARMIN INTERNATIONAL, INC.,
                    Defendant.

## MEMORANDUM IN SUPPORT PLAINTIFF'S MOTION TO

## RECONSIDER THE COURT'S ORDER (ECF No. 65)

This is Plaintiff's Memorandum in support of Plaintiff's Motion[1] to reconsider the Court's

Order (ECF No. 65).  For the reasons stated below, Plaintiff's Motion should be Granted.

## I.      INTRODUCTION

Plaintiff ("Jaiyeola") is a *pro se*.  In *Hall v. Witteman*,[2] this Court stated that "*Pro se*

complaints, however inartfully pleaded, must be liberally construed, and are held to less stringent

standards than formal pleadings drafted by lawyers. *Erickson v. Pardus*, ___ U.S. ___, 127 S.Ct.

2197, 2200, 167 L.Ed.2d 1081 (2007). See *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir.

2005)……".  The Sixth Circuit asserted that "We recognize that *pro se* litigants impose a burden

on the courts and that clients are usually better off if represented by counsel."[3]  The U.S.

Supreme Court has stated that *pro se*[4] pleadings and motions should be viewed liberally and held

to a lesser standard than those drafted by Attorneys.

---

[1] Pursuant to D. Kan. Rule 7.3(b).
[2] *Hall v. Witteman*, 569 F. Supp. 2d 1208 (D. Kan. 2008).
[3] *King v. Curtis*, No. 14-2614 (6th Cir. 2015).
[4] *Haines v. Kerner*, 404 U.S. 520 (1971).

This is an employment discrimination lawsuit[5] in which Garmin International, Inc. ("Garmin"), by failing to hire Jaiyeola (for the "Advanced Materials Engineer - Metals-19001CL"[6] position he applied and interviewed for over the phone and on-site at Garmin's Headquarters/Manufacturing Center in Olathe, Kansas) violated Jaiyeola's rights under Title VII of the Civil Rights Act of 1964, as amended ("Title VII" – Race (African American), Color (Black), and National Origin (Nigerian)), 29 U.S.C. § 621, et seq. (Age Discrimination in Employment Act, as amended ("ADEA"), 42 U.S.C. §12112(b)(4) (Disability Association Discrimination - Title I of the Americans with Disabilities Act ("ADA")), The Kansas Age Discrimination in Employment Act[7] (Chapter 44, Art. 11, K.S.A., and specifically within the meaning of subsection (a)(1) of Section 44-1113 of said Act - "KADEA") and 42 U.S.C. § 1983 (Denial of Due Process – "Due Process").  Garmin is also liable for discrimination under Section 703(a) of Title VII because the fact that Jaiyeola was not hired by Garmin was based on the influence of a Garmin employee, Mr. Jeff Minelli (Garmin's Director of Mechanical Engineering), with a discriminatory motive; Subordinate Bias Liability ("cat's paw" theory of liability)[8].  Defendant's motion to dismiss the 42 U.S.C. § 1983 claim was granted by the Court but the pleading (in the same Defendant's motion) to dismiss the Subordinate Bias Liability claim was Denied[9].

Dr. Min Kao (**Male, Asian American - originally from Taiwan**; East Asia) co-founded Garmin with Gary Burrell (**Male, White American**) in October 1989.  Kao, currently the

---

[5] ECF No. 1, pp. 1-21. Plaintiff's Complaint.
[6] ECF No. 1-17, p. 2. Garmin's Human Resources Email Stating That Plaintiff Was Not Hired.
[7] http://www.kslegislature.org/li/b2019_20/statute/044_000_0000_chapter/044_011_0000_article/044_011_0013_section/044_011_0013_k/
[8] *Equal Employment Opportunity Commission v. BCI Coca-Cola Bottling Company of Los Angeles*, 450 F. 3d 476 (10th Cir. 2006).
[9] ECF No. 17, pp. 4-6. Violation of Title VII Based on Subordinate Bias Liability.

Executive Chairman of Garmin, "…led the development of the first GPS navigator to be certified by the FAA."[10] and for all intents and purposes the GPS technology brain for the establishment of Garmin.

A diversity rating report on Garmin concluded that "Diverse employees at Garmin International score the company 64/100 across various culture categories, placing Garmin International in the bottom 45% of companies in the United States with 10,000+ Employees for Comparably's diversity score.  The Diversity score provides insights into how diverse employees feel and rate their work experience at Garmin International across various culture dimensions."[11]. In comparison, Trimble (https://www.trimble.com/), a Garmin competitor, scored "77/100"[12] and placed at "top 10%"[13].

**Garmin's significantly incredibly low Diversity Rating (for an American multinational technology company) is strongly confirmed by the multiple employment discrimination lawsuits against Garmin in the United States since 2009 to date**.  A former **Female** Garmin employee stated the following in her Complaint: "This is an employment case based upon and arising under the **Family and Medical Leave Act**, as amended, 29 U.S.C. § 2611 et seq. ("FMLA"); the **Americans with Disabilities** Act, 42 U.S.C. § 12101 et seq. ("ADA") the **Age Discrimination** in Employment Act, 29 U.S.C. § 621 et seq. ("ADEA")"[14].  In

---

[10] Garmin Executive Team: https://www.garmin.com/en-US/company/leadership/executive/
[11] https://www.comparably.com/companies/garmin-international/diversity (as it appeared on October 28, 2020).
[12] https://www.comparably.com/companies/trimble/diversity (as it appeared on October 28, 2020).
[13] *Id*.
[14] *Peterson v. Garmin International, Inc.*, No. 2:09-cv-02659-JAR (D. Kan. Dec. 22, 2009); ECF No. 1, p. 1 at ¶ "1".

2009[15] and 2010[16], **failure-to-hire employment discrimination lawsuits** based on "Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, et seq., for employment discrimination on the basis of **race, color, religion, gender, or national origin**." and "Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §§ 621, et seq., for employment discrimination on the basis of age (age 40 or older)." were filed against Garmin.  In 2017, a Garmin employee filed an Equal Employment Opportunity Commission ("EEOC") charge of discrimination based on "**race, sex and national origin discrimination** and **retaliation** under Title VII"[17] against Garmin **after working for Garmin for 11 years**: **1.)** "**Plaintiff is a black female from Brazil, South America**. She has been a **naturalized citizen of the United States** since 2009."[18]; **2.)** "**Garmin's culture shows a preference for white employees and male employees**. For example, in July 2016, **a Garmin employee sent an email asking for hand models, specifically Caucasian hand models**."[19]; **3.)** "Garmin's selection procedures and practices resulted in **a workforce at its headquarters in 2017 that was eighty-two percent (82%) white, two and one-half percent (2.5%) black and two and two-tenths percent (2.2%) Hispanic.**"[20]; and **4.)** "Garmin's selection procedures and practices resulted in **a workforce at its headquarters in 2017 that was seventy-seven percent (77%) male and twenty-three percent (23%) female.**"[21]

---

[15] *Leo v. Garmin Int'l, Inc.*, No. 2:09-cv-02139-KHV (D. Kan. 2009), ECF No. 1, p. 1.
[16] *Leo v. Garmin Int'l, Inc.*, No. 2:10-cv-02495-JTM-DJW (D. Kan. 2010), ECF No. 1-1, p. 1.
[17] *Antunes v. Garmin International, Inc.*, No. 2:18-cv-02697-JAR-KGG (D. Kan. Dec. 18, 2018), ECF No. 1, ¶ 9.
[18] *Id*; ¶ 12.
[19] *Id*; ¶ 26.
[20] *Id*; ¶ 45.
[21] *Id*; ¶ 47.

Plaintiff interviewed[22] onsite at Garmin Headquarters/Manufacturing Center in Olathe, Kansas, on August 14, 2019 and noticed the following: **1.)** The Senior Technical Recruiter who interviewed Plaintiff over the phone and onsite was a **White Female**; **2.)** Plaintiff was given a tour of Garmin's facilities by a **White Female**; **3.)** The Technical Team that interviewed Plaintiff were **8 White Males**, and **4.)** The Garmin Engineers that attended Plaintiff's PowerPoint presentation were **14 White Males (93%)** and **1 White Female (7%)**.

## II.     ARGUMENT

"As stated in ... Motion for Protective Order regarding .....deposition, pursuant to Fed. R. Civ. P. 26(c)(1)(E), this Court may issue a protective order "to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense, including … designating the persons who may be present while the discovery is conducted." Fed. R. Civ. P. 26(c)(1)(E). Any party to a litigation may move for a protective order under Fed. R. Civ. P. 26(c). *SEC v. Dowdell*, 144 Fed. Appx. 716, 723 (10th Cir. 2005). "[23].

### A.     Benjamin Dobbs Taleo Interview Notes On Plaintiff.

Dobbs, a Garmin employee (Mechanical Engineering Team Leader) and a fact witness in this lawsuit, was part of the technical panel that interviewed Plaintiff onsite for the position of "Advanced Materials Engineer - Metals-19001CL" at Garmin Headquarters/Manufacturing Center in Olathe, Kansas, on August 14, 2019.  Dobbs also attended (on August 14, 2019) Plaintiff's PowerPoint presentation and discussion on a technical topic that Garmin gave to Plaintiff. Plaintiff's PowerPoint presentation and discussion were part of the onsite interview requirements for the position that Plaintiff applied for.

---

[22] ECF No. 1-14, p. 2.  Plaintiff's Interview Schedule on August 14, 2019.
[23] *Surat*, Document 87 (D. Colo. March 6, 2020).

**Some Facts:**

1.      According to Garmin's "Hiring and Transfer/Promotion Procedure", "4.6 Taleo is the applicant tracking system used by associates to apply for positions at Garmin and by recruiters to review, hire, and store candidate interview documents.".  **See Ex A**.

2.      According to Garmin's "Hiring and Transfer/Promotion Procedure", "5.5.2 All candidate records will be stored in Taleo.".  **See Ex B**.

3.      According to Garmin's "Hiring and Transfer/Promotion Procedure", "6.2 Interview notes for candidates will be stored in Taleo.".  **See Ex C**.

4.      Benjamin Dobbs interview notes of August 14, 2019, constituted a Taleo record on Plaintiff.  **See Ex D**.

**The interview notes that Dobbs created on Plaintiff August 14, 2019 constituted a Taleo record on Plaintiff and should not be changed or modified in any way**.

**B.      Plaintiff Believes Defendant Garmin Committed Fraud**

In a letter to Plaintiff dated December 17, 2020, Defendant Attorney, Ms. Margaret Young, stated: "The partial redaction in this document contains information that was gathered at the direction of Garmin's in-house counsel after Garmin received your complaint of unlawful discrimination on November 22, 2019. Dobbs added to his notes that day for the purpose of providing information to Garmin's in-house counsel to facilitate his efforts to investigate your complaint of unlawful discrimination. These notes were ultimately communicated to Garmin's in-house counsel.".  **See Ex E (Page 2 at "GARMIN 000400")**.

The letter was referring to **"GARMIN 000440" (and not to "GARMIN 000400")**.  **See Ex D**.  According to the letter, **on November 22, 2019** and "…**at the direction of Garmin's in-house counsel** ….", **Dobbs "added to his notes"** of **August 14, 2019** at the location marked

6

**"REDACTED"** in **Ex D**.

Here is a chronology:

1.       Plaintiff was interviewed onsite by Dobbs on **August 14, 2019**.

2.       Dobbs created a Taleo record on Plaintiff on **August 14, 2019**.

3.       "On **November 13, 2019** (about **3 months after Jaiyeola's on-site job interview** at Olathe), Jaiyeola received an electronic mail from Garmin (from Mr. Michael Risinger) stating that Jaiyeola was not hired for the position of Advanced Materials Engineer - Metals-19001CL at Garmin."[24].

4.       "On **November 22, 2019**, Jaiyeola **followed the guidelines in Garmin's EEO statement and filed a complaint (copied to Cormack) with Mudd (See Ex R.) on Garmin's failure to hire him**."[25].

5.       On **November 22, 2019**, **Plaintiff DID NOT** send his failure-to-hire complaint to Dobbs.  The complaint was sent to John Mudd and copied to Michelle Cormack.

6.       On **November 22, 2019** (**three (3) months after he created his Taleo interview notes on Plaintiff**), Dobbs **"added to his notes"** of August 14, 2019 **"…at the direction of Garmin's in-house counsel…"**.

By changing his Taleo interview notes on Plaintiff, Plaintiff believes that **Dobbs committed a fraud**; **a fraud that was committed "…at the direction of Garmin's in-house counsel…"**. Plaintiff also believes that **Attorney-Client privilege** would not apply in this instant because of the **"crime-fraud exception"** (*Hale v. Emporia State Univ.*, Case No. 16-cv-4182-DDC-TJJ (D. Kan. Feb. 20, 2018).

---

[24] ECF No. 1, ¶ 37.  Jaiyeola's Complaint.
[25] ECF No. 1, ¶ 40.  Jaiyeola's Complaint.

**C.**      <u>**Fed. R. Civ. P. 26(c)**</u> **Requires A Showing of Good Cause to Determine Who May Attend A Deposition**

"<u>**Federal Rules of Civil Procedure 26(c)(1)(E)**</u> **governs protective orders and the designation of persons who may be present while a deposition is being conducted**. The rule provides that the "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." <u>Fed. R. Civ. P. 26(c)(1)</u>. Under Rule 26(c), the "good cause" standard is "highly flexible, having been designed to accommodate all relevant interests as they arise." *Rohrbough v. Harris*, <u>549 F.3d 1313, 1321</u> (10th Cir. 2008)."[26]. ""A finding of good cause must be based on a particular factual demonstration of potential harm, not on conclusory statements." *Anderson v. Cryovac, Inc.*, <u>805 F.2d 1, 7</u> (1st Cir. 1986)."[27].

In *Surat v. Klamser et al.*, No. 19-cv-0901-WJM-NRN, Document 95 (D. Colo. March 10, 2020), the Court ruled that "If [Defendant] is present during Plaintiff's deposition, then the Plaintiff is entitled to have one of [persons who are not fact witnesses] present for .... support. If Defendant] is not present, then Plaintiff's [persons who are not fact witnesses] should not be present.".

Plaintiff has shown a "good cause" for the entry of a Protective Order precluding any Defendant employee who is not being deposed from attending the deposition of Plaintiff or any deposition of fact witnesses in this lawsuit. **The "good cause" is that Benjamin Dobbs, a Garmin employee, and a fact witness in this lawsuit committed a fraud: Dobbs "added to his notes" "at the direction of Garmin's in-house counsel".** The "notes" were the interview notes that Dobbs created on Plaintiff on August 14, 2019. Dobbs added to the "notes" on November 22, 2019;

---

[26] *Surat*, Document 94 (D. Colo. March 9, 2020).
[27] *Mansor v. JPMorgan Chase Bank, N.A.*, No. 12-10544-JGD (D. Mass. Sep. 19, 2017).

about 3 months after the "notes" were created.  **The "good cause" is that Dobbs committed a fraud "at the direction of Garmin's in-house counsel".**

Any Defendant employee who is not being deposed at the deposition of a fact witness in this lawsuit has the potential to cause harm or prejudice to the deposition process through coaching of Garmin fact witnesses and making efforts to align the testimonies of Garmin fact witnesses during deposition breaks.  "....[Plaintiff] allege ... annoyance, embarrassment, oppression, or undue burden would befall [Plaintiff] if [Defendant employees who are not being deposed] ...are able to attend [ANY OF THE] deposition in this case."[28].

## III.      CONCLUSION

For all the reasons stated in the Motion and Memorandum, Plaintiff hereby ask[29] this Court to reconsider its Order (ECF No. 65) and enter a Protective Order precluding any Defendant employee who is not being deposed from attending any deposition of Plaintiff and fact witnesses in this lawsuit.

---

[28] *Surat*, Document 94 (D. Colo. March 9, 2020).
[29] Pursuant to D. Kan. Rule 7.3(b) and Fed. R. Civ. P. 26(c)(1)(E).

9

Respectfully submitted,

Dated: January 13, 2021

Ganiyu A. Jaiyeola, Ph.D., MBA

749 Preserve Circle Drive SE #6

Grand Rapids, Michigan 49548

Tel.: 616.635.4025

ganiyu.jaiyeola@gmail.com

PLAINTIFF

*pro se*

## CERTIFICATE OF SERVICE

Plaintiff hereby certifies that on this 13th day of January, 2021, Plaintiff e-mailed this document to the District Court Clerk's office where it would be filed using the Court's CM/ECF system which will automatically send the document to the following Defendants' Attorneys:

Kerri S. Reisdorff

Margaret K. Young

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

4520 Main Street, Suite 400

Kansas City, Missouri 64111

kerri.reisdorff@ogletree.com

margaret.young@ogletree.com

ATTORNEYS FOR DEFENDANT

Respectfully submitted,

_____

Ganiyu A. Jaiyeola, Ph.D., MBA

PLAINTIFF

*pro se*

11

### Index of Exhibits

| | |
|---|---|
| **Ex A** | "4.6 Taleo is the applicant tracking system used by associates to apply for positions at Garmin and by recruiters to review, hire, and store candidate interview documents.". |
| **Ex B** | "5.5.2 All candidate records will be stored in Taleo.". |
| **Ex C** | "6.2 Interview notes for candidates will be stored in Taleo.". |
| **Ex D** | Benjamin Dobbs interview notes of August 14, 2019, constituted a Taleo record on Plaintiff.  "GARMIN 000440". |
| **Ex E** | December 17, 2020 letter from Defendant Attorney, Ms. Margaret Young, to Plaintiff regarding "REDACTED" "GARMIN 000440".  (Page 2 at "GARMIN 000400"). |

# Ex A

Hiring and Transfer/Promotion Procedure

**1**    **Purpose**

   **1.1**    The purpose of this document is to provide information and instruction on the hiring and transfer/promotion procedure at Garmin.

**2**    **Scope**

   **2.1**    This procedure shall apply to all Garmin United States facilities.

**3**    **Responsibilities**

   **3.1**    Human Resources (HR) Recruiters will seek approval from business segment Vice Presidents to open a requisition.  If the position is denied, HR will notify the hiring Manager/Supervisor.  For positions approved for recruitment, Human Resources Recruiters will share candidate information and seek feedback from hiring managers throughout the recruitment process.

      **3.1.1**    For both internal and external applications, the Hiring Manager and HR Recruiter shall ensure that the candidates under consideration meet the minimum qualifications to be transferred, promoted or hired.

      **3.1.2**    The HR Recruiter will ensure that this procedure is followed and that candidates being considered for external and internal applications, transfers, or promotions have completed the necessary HR and Hiring Manager interviews.

   **3.2**    The hiring manager is responsible to follow up with Human Resources and provide feedback regarding the interest level in the candidate.  If Human Resources has not heard back from the hiring manager within three (3) business days, sometimes shorter turn arounds in certain areas, Human Resources will contact the hiring manager.  **Feedback is a very important element to the interview process.**  Human Resources will work with the hiring Manager/Supervisor to determine if the candidate meets Garmin's standards and if the candidate should move forward in the process.

**4**    **Definitions**

   **4.1**    <u>Hiring Manager</u> includes any manager, supervisor or team leader who is filling a position through an internal applicant, transfer, or promotion.

   **4.2**    <u>Human Resources Management</u> refers to the HR Managers responsible for recruiting and retention, including giving approval of all transfers or promotions.

   **4.3**    <u>Human Resources Recruiter</u> refers to the Human Resources professional responsible for the sourcing, interviewing and hiring of candidates who have applied for open positions at Garmin or have been targeted for a transfer.

   **4.4**    <u>International Traffic in Arms Regulations (ITAR)</u> is a U.S. government regulations that control the export and import of defense-related articles and services on the United States Munitions List (USML).  These regulations are controlled by the Department of State and are described in CFR 22 (Foreign Relations).

   **4.5**    <u>Non-U.S. person(s)</u> a term used by Garmin to refer to citizens of countries other than the United States who are not "lawfully admitted" into the U.S. as permanent residents, and who are not a "protected individual" as defined by Title 8 U.S.C 1324b(a)(3).  As a general matter, this term shall be used to encompass both "Foreign Nationals" as defined under the EAR and "Foreign Persons" as defined under the ITAR throughout this document.

   **4.6**    <u>Taleo</u> is the applicant tracking system used by associates to apply for positions at Garmin and by recruiters to review, hire, and store candidate interview documents.

| Page 1 of 5 | **Hiring and Transfer/Promotion Procedure** | **HRD-0001** Rev. L |
|---|---|---|
| | Hard copies or local copies of this document are uncontrolled and may have been superseded.  Refer to findpart.garmin.com for the current revision. | |
| | **Garmin** | |

CONFIDENTIAL                                                                                                  GARMIN 000163

# Ex B

### Hiring and Transfer/Promotion Procedure

**5    Method**

**5.1**    Whether it is a newly created position or a replacement, the Hiring Manager should notify their respective HR Recruiter.  Operations Managers should complete FRM-0324 (Job Requisition Form).

**5.2**    The Hiring Manager should include justification for the opening including items such as the position title, a new budgeted position, backfill of an existing headcount and if requested any specialized advertising avenues, if any.  For a new position request, the Hiring Manager should work with his/her respective HR Recruiter to create a new job description.

    **5.2.1**    HR Recruiters should work with Human Resources Management, legal  and HRIS for review and final approval of significantly revised or new job descriptions prior to posting in Garmin's applicant tracking system.

**5.3**    If the position is approved, a recruiting team member will create the requisition in Taleo and attach approvals if applicable.  HR may post the position internally and/or externally as deemed appropriate.  All full-time positions must be posted for a minimum of three (3) days internally.

**5.4**    Human Resources will post all external postings on required state/compliance job boards along with other external sources as requested and/or deemed appropriate.

**5.5**    **Candidate Identification / Interviews**

    **5.5.1**    Following the onset of an opening of a requisition, HR Recruiters will review candidates who have completed applications for specific positions in Taleo and will either terminate the application and notify the candidate of that decision, or will contact the candidate for further screening.

    **5.5.2**    All candidate records will be stored in Taleo.

    **5.5.3**    All candidates who submit their application online will receive an acknowledgment electronically that their application has been submitted or rejected.

    **5.5.4**    The Hiring Manager and HR Recruiter should work together to interview qualified and suitable applicants and determine if any candidates are acceptable for the position.

        **5.5.4.1**    Internal candidates - The HR Recruiter and/or Hiring Manager will review each applicant's experience, background, past performance evaluations and previous corrective action documents if applicable; discuss with the candidate's current supervisor regarding the associate's skills, abilities, and performance; and determine if there is a mutual agreement that the candidate is available for transfer or promotion.

        **5.5.4.2**    Internal associates who have received corrective action in the prior six (6) month period will not be eligible for transfer or promotion and should not be considered in the list of eligible candidates.

        **5.5.4.3**    Internal associates must meet the minimum qualifications for the new position and required skills as outlined in the job description

        **5.5.4.4**    The Internal candidate is required to notify his/her current supervisor of their application prior to applying.

        **5.5.4.5**    The Internal candidate is required to have completed a minimum of six (6) months or one (1) year of service in his/her current position to be eligible to apply.

        **5.5.4.6**    All internal applicants who meet the minimum qualifications and requirements above will be considered for the position.

    **5.5.5**    Hiring managers will have the ability to view screened candidate's profiles and qualifications.

    **5.5.6**    HR Recruiters will pre-screen, interview, and/or evaluate candidates and provide interview notes, candidate information, and a recommendation for further action to the hiring

| Page 2 of 5 | **Hiring and Transfer/Promotion Procedure** | HRD-0001<br>Rev. L |
|---|---|---|
| | Hard copies or local copies of this document are uncontrolled and may have been superseded.  Refer to findpart.garmin.com for the current revision. | |
| | **Garmin** | |

# Ex C

Hiring and Transfer/Promotion Procedure

5.8.2   The Hiring Manager is responsible for conducting formal introductions to co-workers, managers, and other key associates that the new associate's position will interact with. Hiring Managers or their designee should provide a departmental tour and help the associate get acclimated in their new role.  The Hiring Manager should show them their work area, set-up on computer and how to use the phone system, message system, conference system and the number which they can be reached at.  We encourage that you welcome all associates and assist them to feel comfortable with the new associate process as well as have a training agenda for new associates.

5.8.3   The Hiring Manager should also make sure the new associates in the department make the new associate feel welcome, are willing and able to answer questions for them, and are willing to share knowledge.

**6    Measurement and Analysis**

6.1   The Human Resources Management team will review this process on an annual basis to ensure that it is still current and will make revisions as necessary.

6.2   Interview notes for candidates will be stored in Taleo.

| Page 5 of 5 | **Hiring and Transfer/Promotion Procedure** | **HRD-0001**<br>**Rev. L** |
|---|---|---|
| | Hard copies or local copies of this document are uncontrolled and may have been superseded. Refer to findpart.garmin.com for the current revision. | |
| | **Garmin** | |

CONFIDENTIAL

GARMIN 000167

# Ex D

11/22/2019                                          Ganiyu Jaiyeola - Dobbs, Benjamin - Garmin Confluence

Dashboard / Dobbs, Benjamin's Home / AVME Candidates Interview Notes - Dobbs

## Ganiyu Jaiyeola

Created by Dobbs, Benjamin, last modified less than a minute ago

Date:       14 Aug 2019
Interviewers:   @Klein, Jared  ,  @Dobbs, Benjamin  ,  @Rollheiser, Paul   (not present, copied for visibility)
Position: Advanced Materials Engineer - Metals
Degree: BSc Chemistry (Univ of Ibadan); MSc Chemistry (Univ of Ibadan); MS Chemistry (Univ of Conn); PhD Materials Science (Univ of Conn); MBA (Syracuse Univ)
GPA: N/A
Resume: Jaiyeola_Ganiyu_resume_2019-08-14.pdf
Transcript: N/A
Phone Screen: Jaiyeola_Ganiyu_PS_2019-08-14.doc
Other Documents: Jaiyeola_Ganiyu_TPS_2019-08-14.doc

**Experience:**

- found issue with corrosion due to the acidic reaction with sulfur.  was able to provide a step by step process of how he determined what the underlying issue was, and what the next steps would be (suggested improvements and way to test/evaluate).
- familiar with castings - at least in testing the cast materials.  found that typically the oils used in the casting process greatly affect the plating process.
- familiar with powdered metal/sintering  - sounds like testing only again
- metalized platings on plastics - tested only (nickel first)
- tin whiskers - familiar with it, but experience he has was to add lead to the tin.  (opposite of our direction...)
- brazing - completed failure analysis of a brazed joint.  filler materials are very critical and can easily create a medium for galvanic corrosion.  stated he had worked with different suppliers to evaluate different process controls to land on improved parts.
- struggled with providing examples of instances where he provided material/plating recommendations in the design phase.  did come up with an example where electrical conductivity was required to be maintained over moisture environments.
- galling experience (SS materials) - recommended avoiding crevices, no fluids, air to reduce galling.  had used Teflon in the past to help control/prevent galling.
- plating experience - nickel, gold, palladium, chrome, lead, silver, most alloys, chromate (stated he has lots of experience with this), anodizing
- stated familiarity with MIL-spec testing, previously worked at a company that was on an air force base, and Boeing.

**Why Garmin?  Looking For?**

- lots of challenges, lots to do
- part of teams
- equipment to work with
- conferences for learning
- consultation vs. specialist - more comfortable with variety, prefers that
- test lab - comfortable recommending equipment and determining what tests to run

**Questions?**

- what kind of challenges will this position face?

**Comments**

| Trait | Notes |
|---|---|
| Desire for product design at Garmin/Long-term Career Goals | no real read on Garmin being a long-term goal, more focused on challenges and that Garmin he thinks, would be a place where he would be challenged. |
| Personable (friendly, relaxed) | Yes, very respectful, seemed relaxed. |
| Communication (speaks clearly, articulate, and confident) | Yes, spoke confidently, was able to clearly communicate past experiences |
| Nervous (shifty eyes, shaky) | no |
| Technical skills (communicates role on job/project) | as stated previously yes.  that said, one question Jared asked about other examples where he provided material/plating recommendations in past work at the design phase caused him to stumble some.  He seems to have a lot of experience with platings and plating evaluations. seems less so with materials/base metals although he did elude to some experience there as well. |
| Teamwork (recognizes value in getting feedback from others) | mentioned that he likes to work on teams, not other real read on this. |
| **Final Comments** | REDACTED |

No labels

**Ex E**

# Ogletree
# Deakins

**OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.**

*Attorneys at Law*

4520 Main Street, Suite 400
Kansas City, MO 64111
Telephone:  816-471-1301
Facsimile:  816-471-1303
www.ogletreedeakins.com

Margaret Young
816.410.2231
margaret.young@ogletree.com

December 17, 2020

**VIA EMAIL: Ganiyu.jaiyeola@gmail.com**

Mr. Ganiyu A. Jaiyeola
749 Preserve Cir. Dr. SE
Apt. 6
Grand Rapids, MI 49548

RE:    Outstanding Privilege Log Issues

Dear Mr. Jaiyeola:

As we discussed during our Teams meeting yesterday, I am providing additional explanations for our assertions of attorney-client privilege and the work-product privilege  on each of the bates-numbered documents you identified in your email correspondence on December 15, 2020. We hope these explanations will resolve your concerns. As we indicated on our call, we would be happy to schedule a follow-up call to discuss.

As an initial matter, I am universally addressing why each of the documents you identified is protected by the work-product privilege. The work-product privilege applies when "'(1) the materials sought to be protected are documents or tangible things; (2) they were prepared in anticipation of litigation or for trial; and (3) they were prepared by or for a party or a representative of that party.' The court evaluates both whether the documents in question were created because of the anticipation of litigation and whether the party reasonably believed the threat of litigation to be real and imminent." *Sudenga Indus., Inc. v. Global Indus., Inc.*, 2020 WL 2513072, at *8 (D. Kan. May 15, 2020) (internal citation omitted) (emphasis in original).

Each of the documents you identified satisfies all of the requirements set forth above and as such, each is protected from disclosure by the work-product privilege. First, they are all documents or tangible things. Second, each was prepared in anticipation of litigation after Garmin received your complaint of unlawful discrimination on November 22, 2019. As we discussed yesterday, your letter created a reasonable belief that the threat of litigation was real and imminent as it specifically referenced an "EEOC Complaint". Your reference to "EEOC" (which stands for the Equal Employment Opportunity Commission) led Garmin to reasonably believe you had or would be imminently filing a charge of discrimination with the EEOC. You can see on the log that each document was created on or after receipt of your November 22, 2019 letter. The one exception is GARMIN 000440. However, the partial redaction reflects information that was added to that

Atlanta ▪ Austin ▪ Berlin (Germany) ▪ Birmingham ▪ Boston ▪ Charleston ▪ Charlotte ▪ Chicago ▪ Cleveland ▪ Columbia ▪ Dallas ▪ Denver ▪ Detroit Metro ▪ Greenville ▪ Houston
Indianapolis ▪ Kansas City ▪ Las Vegas ▪ London (England) ▪ Los Angeles ▪ Memphis ▪ Mexico City (Mexico) ▪ Miami ▪ Milwaukee ▪ Minneapolis ▪ Montréal (Canada) ▪ Morristown
Nashville ▪ New Orleans ▪ New York City ▪ Oklahoma City ▪ Orange County ▪ Paris (France) ▪ Philadelphia ▪ Phoenix ▪ Pittsburgh ▪ Portland, ME ▪ Portland, OR ▪ Raleigh ▪ Richmond
St. Louis ▪ St. Thomas ▪ Sacramento ▪ San Antonio ▪ San Diego ▪ San Francisco ▪ Seattle ▪ Stamford ▪ Tampa ▪ Toronto (Canada) ▪ Torrance ▪ Tucson ▪ Washington

770

December 17, 2020
Page 2

document after receipt of your November 22, 2019. Finally, each document was prepared for the would-be party to the litigation—Garmin.

Below I address our assertions of the attorney-client privilege. However, please note that Garmin only has to establish the applicability of a single privilege in order to assert privilege. In other words, because Garmin has already established that the work-product privilege is applicable to each of the emails you identify it had the right to not produce the documents regardless of whether the additional privilege of attorney-client privilege is also applicable.

**GARMIN 000400**

The partial redaction in this document contains information that was gathered at the direction of Garmin's in-house counsel after Garmin received your complaint of unlawful discrimination on November 22, 2019. Dobbs added to his notes that day for the purpose of providing information to Garmin's in-house counsel to facilitate his efforts to investigate your complaint of unlawful discrimination. These notes were ultimately communicated to Garmin's in-house counsel. As such, the document is also protected by the attorney-client privilege. *See Williams v. Sprint/United Mgmt. Co.,* 238 F.R.D. 633, 639 (D. Kan. 2006) (affirming magistrate judge's finding that attorney-client privilege applied to communications among non-attorneys "where documents 'contained information collected for the dominant purpose of facilitating the attorney's efforts to provide services to the client, and the information in every instance, was, in one form or another, communicated to the attorney.'") (internal citations omitted).

**CTRL00000111-2 and GARMIN 000903**

These entries reflect the same email so I have grouped them together. The attorney-client "privilege 'protects confidential communications by a client to an attorney made in order to obtain legal assistance from the attorney in his capacity as a legal advisor.'" *AKH Co., Inc. v. Univ. Underwriters Ins. Co.*, 300 F.R.D. 684, 693 (D. Kan. 2014) (internal citations omitted). This email is protected by the attorney-client privilege precisely for the reason stated in *AKH*. Cormack received your complaint of unlawful discrimination on November 22, 2019 and sent it to Garmin's in-house counsel for the purpose of obtaining his assistance in his capacity as a legal advisor.

**CTRL00000160-1 (email) and CTRL00000161-1-00000162-3 (attachments)**

This email and the attachments are protected by the attorney-client privilege as the email is a communication among non-attorneys, which contains "'information collected for the dominant purpose of facilitating the attorney's efforts to provide services to the client, and the information in every instance, was, in one form or another, communicated to the attorney.'" *See Williams* 238 F.R.D. at 639 (internal citations omitted). Jared Klein sent this email to John Mudd pursuant to Garmin's investigation of your complaint of unlawful discrimination at the direction of Garmin's in-house counsel. The email was ultimately communicated to Garmin's in-house counsel to facilitate his efforts to investigate your complaint of unlawful discrimination.

December 17, 2020
Page 3

**CTRL00000168-1- (email) and CTRL00000168-2-00000168-3 (attachments) and CTRL00000125-1**

These emails are protected by the attorney-client privilege for the same reason so I have grouped them together. The attorney-client privilege protects communications with in-house counsel. *See New Jersey v. Sprint Corp.*, 258 F.R.D. 421, 425 (D. Kan. 2009). With respect to both emails, the privilege applies because they are direct communications with in-house counsel relating to Garmin's investigation of your complaint of unlawful discrimination.

Finally, you asked for the job titles of two individuals identified on the privilege log. Shanna Lynnes is the Manager of Human Resources Recruiting and Associate Relations. Patrick Desbois is Executive Vice President of Operations.

Sincerely,

Margaret Young

MY:

45346920.1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

GANIYU AYINLA JAIYEOLA,                    )
                                           )
                    Plaintiff,             )
                                           )
v.                                         )   Case No. 20-2068-HLT
                                           )
GARMIN INTERNATIONAL, INC.,                )
                                           )
                    Defendant.             )

## **ORDER**

On January 12, 2021, the court denied plaintiff's motion for protective order (ECF No. 61) seeking to preclude defendant from allowing a corporate representative to attend fact-witness depositions in this case (ECF No. 65). Plaintiff has timely filed a motion for reconsideration of the order (ECF No. 67). For the following reasons, the court denies plaintiff's motion.

Motions for reconsideration may be granted only if the moving party can establish: "(1) an intervening change in controlling law, (2) the availability of new evidence, or (3) the need to correct clear error or prevent manifest injustice."[1] The decision whether to grant or deny a motion for reconsideration is committed to the court's discretion.[2] A motion for reconsideration should not be used to "rehash previously rejected arguments or

_____

[1] D. Kan. Rule 7.3. *See also Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000).

[2] *Wright ex rel. Trust Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1235–36 (10th Cir. 2001).

to offer new legal theories or facts."[3]  Such a motion "is not a second chance for the losing party to make its strongest case or to dress up arguments that previously failed."[4]  A motion for reconsideration is "not appropriate to revisit issues already addressed."[5]

Plaintiff ostensibly relies on the third prong, arguing the court misapprehended the facts and plaintiff's position.  Although he arguably relies solely on new legal theories in his argument, the court will construe the pro se motion as arguing that the court's prior ruling was in error.  Plaintiff first reiterates his theory of the case and argues one of the defendant's witnesses committed fraud by altering notes in plaintiff's employment file.  Accordingly, plaintiff argues the sanction for defendant should be to preclude non-deponents from attending depositions.[6]

In support, plaintiff has cited a District of Colorado case that he contends "relates to preventing persons who are not fact witnesses at a deposition."[7]  Plaintiff cites the case for the proposition that "if [defendant] is present during plaintiff's deposition, then the plaintiff is entitled to have one [persons who are not fact witnesses] for . . . support.  If [defendant] is not present, then plaintiff's [persons who are not fact witnesses] should not

---

[3] *Theno v. Tonganoxie Unified Sch. Dist. No. 464*, 377 F. Supp. 2d 952, 976 (D. Kan. 2005) (citing *Demster v. City of Lenexa, Kan.*, 359 F. Supp. 2d 1182, 1184 (D. Kan. 2005)).

[4] *Fears v. Unified Gov't of Wyandotte Cty.*, No. CV 17-2668-KHV, 2018 WL 5435403, at *1 (D. Kan. Oct. 29, 2018) (citing *Brown v. Presbyterian Healthcare Servs.*, 101 F.3d 1324, 1332 (10th Cir. 1996)).

[5] *Fears*, 2018 WL 5435403, at *1.

[6] ECF No. 67 at 3.

[7] *Id.*

2

be present."[8]

The case plaintiff cites, *Surat v. Klamser, et al.*, 19-00901-WJM-NRN (D. Colo. 2019) involves a plaintiff who alleged her Fourth Amendment rights were violated during an arrest by the defendant police officer. The plaintiff wanted her parents to attend her deposition for emotional support as she testified about what was, to her, a traumatic and painful experience.[9]   The defendants filed a motion for a protective order to preclude the plaintiff's parents from attending. The U.S. Magistrate Judge, N. Reid Neureiter, entered a minute entry on March 10, 2020, granting the motion in part and allowing plaintiff to have one of her parents present for emotional support, but only if the arresting officer attended the deposition.[10]

This case is inapposite. For one, plaintiff has cited to the defendants' *motion*, not any binding or persuasive case law. Further, that case involved the contested presence of the plaintiff's non-party parents for the purpose of emotional support, not a corporate representative of a party. As discussed in the court's prior order, this district's Deposition Guidelines specifically permit corporate representatives to attend depositions. What's more, Judge Neureiter actually *did* allow one parent to attend the deposition, provided the defendant was present. Beyond broadly involving the use of a protective order to govern deposition attendance, *Surat* doesn't apply to the circumstances here. Plaintiff hasn't

---

[8] ECF No. 68 at 8.

[9] Case No. 19-00901-WJM-NRN, ECF No. 94.

[10] *Id.*, ECF No. 95.

shown the court erred in its prior ruling.  The court finds reconsideration is therefore not

appropriate.

IT IS SO ORDERED that plaintiff's motion (ECF No. 67) is denied.

Dated January 15, 2021, at Kansas City, Kansas.

 s/ James P. O'Hara
James P. O'Hara
U.S. Magistrate Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

GANIYU AYINLA JAIYEOLA,
                    Plaintiff,

v.                                        Case No.: 2:20-cv-2068-HLT-JPO

GARMIN INTERNATIONAL, INC.,
                    Defendant.

## NOTICE - CLARIFICATION ON
## DEFENDANT'S "AMENDED NOTICE TO TAKE VIDEO CONFERENCE
## DEPOSITION OF PLAINTIFF GANIYU JAIYEOLA" (ECF No. 70.)

This is an employment discrimination lawsuit[1] in which Garmin International, Inc.

("Garmin"), by failing to hire Plaintiff ("Jaiyeola") (for the "Advanced Materials Engineer -

Metals-19001CL"[2] position he applied and interviewed for over the phone and on-site at

Garmin's Headquarters/Manufacturing Center in Olathe, Kansas) violated Jaiyeola's rights under

Title VII of the Civil Rights Act of 1964, as amended ("Title VII" – Race (African American),

Color (Black), and National Origin (Nigerian)), 29 U.S.C. § 621, et seq. (Age Discrimination in

Employment Act, as amended ("ADEA"), 42 U.S.C. §12112(b)(4) (Disability Association

Discrimination - Title I of the Americans with Disabilities Act ("ADA")), The Kansas Age

Discrimination in Employment Act[3] (Chapter 44, Art. 11, K.S.A., and specifically within the

meaning of subsection (a)(1) of Section 44-1113 of said Act - "KADEA") and 42 U.S.C. § 1983

(Denial of Due Process – "Due Process").  Garmin is also liable for discrimination under Section

_____

[1] ECF No. 1, pp. 1-21. Plaintiff's Complaint.
[2] ECF No. 1-17, p. 2. Garmin's Human Resources Email Stating That Plaintiff Was Not Hired.
[3] http://www.kslegislature.org/li/b2019_20/statute/044_000_0000_chapter/044_011_0000_article/044_011_0013_section/044_011_0013_k/

703(a) of Title VII because the fact that Jaiyeola was not hired by Garmin was based on the influence of a Garmin employee, Mr. Jeff Minelli (Garmin's Director of Mechanical Engineering), with a discriminatory motive; Subordinate Bias Liability ("cat's paw" theory of liability)[4].  Defendant's motion to dismiss the 42 U.S.C. § 1983 claim was granted by the Court but the pleading (in the same Defendant's motion) to dismiss the Subordinate Bias Liability claim was Denied[5].

Plaintiff states as follows:

1.      On January 14, 2021, Defendant GARMIN INTERNATIONAL, INC. ("Garmin") filed "AMENDED NOTICE TO TAKE VIDEO CONFERENCE DEPOSITION OF PLAINTIFF GANIYU JAIYEOLA"[6].

2.      The footnote (**"Defendant is filing this amended notice because Plaintiff threatened to file a motion with the Court if Defendant did not remove certain language, which he objected to by close of business today."**[7]) in the Garmin notice is devoid of facts from Plaintiff.

3.      In an email (dated January 14, 2021 and time-stamped 9:44 AM - **See Ex. A**), Defendant's Attorney, Kerri S. Reisdorff, wrote the following to Plaintiff: "I will be filing the notice of deposition for your deposition on Feb. 18 today.".  Reisdorff referred to **ECF No. 69**.

4.      In an email (dated January 14, 2021 and time-stamped 11:45 AM - **See Ex. B**), Plaintiff wrote the following to Reisdorff concerning **ECF No. 69**:

"The just filed deposition notice for Plaintiff states as follows:

---

[4] *Equal Employment Opportunity Commission v. BCI Coca-Cola Bottling Company of Los Angeles*, 450 F. 3d 476 (10th Cir. 2006).
[5] ECF No. 17, pp. 4-6. Violation of Title VII Based on Subordinate Bias Liability.
[6] ECF No. 70.
[7] *Id*, p. 1, Footnote.

2

**"The deposition will continue from day to day, at the same place, until complete or adjourned.". ECF No. 69.**

The deposition of Plaintiff is for 7 hours as stated in the Scheduling Order:

"g) No more than 10 depositions may be taken by either party. Each deposition must be limited to 7 hours. All depositions must be governed by the written guidelines that are available on the court's website: http://www.ksd.uscourts.gov/deposition-guidelines/". ECF No. 19, p. 6 at "g)".

The Defendant should clearly state in the notice that Plaintiff's deposition is for 7 hours.".

5.      In an email (dated January 14, 2021 and time-stamped 11:50 AM - **See Ex. C**), Reisdorff replied to Plaintiff as follows: "Ganiyu - The 7 hour reference in the rule only counts time on the record. And we certainly will agree to the maximum time allowed without court permission. We always include that language in the notice because events sometimes the day of a deposition require it to be postponed half way through until the next day. For example, I was defending a deposition where the deponent learned 4 hours into his deposition his wife went into labor. So, the parties agreed to continue the deposition until he was available again. But, rest assured, we know the rule and will comply with it.".

6.      In an email (dated January 14, 2021 and time-stamped 11:56 AM - **See Ex. D**), Plaintiff replied to Reisdorff as follows: "Plaintiff understands the defendant's explanation; however, Plaintiff wants it stated in the notice that the deposition of Plaintiff will be for a total of 7 hours. If the Defendant doesn't reflect 7 hours in the notice by the end of business day today, Plaintiff will file a motion with the Court, objecting to the notice. This has been an attempt to meet and confer.".

7.      In an email (dated January 14, 2021 and time-stamped 12:01 PM - **See Ex. E**),

Reisdorff replied to Plaintiff as follows: "Ganiyu - Rule 30 does not require a reference to 7 hours. We will remove the language you object to and file an amended notice.".

8.      In spite of the email discussion that Plaintiff had with Reisdorff, Defendants' Attorneys (Reisdorff and Margaret K. Young) still did not reflect "7 hours" in the amended notice[8] as stated in the Scheduling Order[9].

9.      In *Magin v. Solitude Homeowner's Inc.*, 255 P.3d 920, 2011 WY 102 (Wyo. 2011), the **Wyoming Supreme Court** made the following comments:

"This case calls to mind the story of the senior attorney advising a new associate: **When you have compelling facts, pound on those facts. When the law is agreeable to your position, pound on the law. When you have neither favorable facts nor law, pound the table.**" It is less amusing than unsettling.

**When counsel intentionally drive an otherwise routine case to the margins by infecting the trial with personal issues or by purposefully seeking to supercharge emotions**, alert observers quickly recognize that the object is not justice, but victory. **The ethical obligation to zealously serve client interests is tempered by the opposing, but no less imposing, obligation to act within the limits of the law-not merely the letter, but also the spirit, of the law.** Any failure to appropriately and consistently measure duty to clients against duty to the profession perpetuates the "hired gun" image some lawyers cultivate and we all must live with. Worse, it sustains a popularly held conception that our professional ethic accepts the notions that success justifies, and occasionally necessitates, excessive zeal and that the cost of victory is irrelevant. . . . **When a case is measured, not**

---

[8] ECF No. 70.
[9] ECF No. 19.

4

**by the merit of the cause, the quality of the evidence, or the logic of the arguments, but by the level of invective, something is amiss**. A trial [and other court proceedings] then becomes an ordeal which is neither dignified nor appropriate and, predictably, the result reflects the performance; the process is demeaned, as are the participants.".

10.      In *The City of New York v. City Oases, LLC*, 2015 NY Slip Op 51459(U*)*, the **New York Supreme Court** made the following comments:

" According to an old legal adage, with many variations, "**If the law is against you, pound the facts; if the facts are against you, pound the law; if they both are against you, pound the table.**" Here, **plaintiff has defendants "dead to rights."** In response to plaintiff's overwhelming avalanche of evidence that defendants' acts violate ……, **defendants have opted to pound the table** (they do not claim that they are not doing what plaintiff alleges, and they do no more than quibble with plaintiff's interpretation of the law).".

Respectfully submitted,

Dated: January 15, 2021

Ganiyu A. Jaiyeola, Ph.D., MBA

749 Preserve Circle Drive SE #6

Grand Rapids, Michigan 49548

Tel.: 616.635.4025

ganiyu.jaiyeola@gmail.com

PLAINTIFF

*pro se*

## CERTIFICATE OF SERVICE

Plaintiff hereby certifies that on this 15th day of January, 2021, Plaintiff e-mailed this

document to the District Court Clerk's office where it would be filed using the Court's CM/ECF

system which will automatically send the document to the following Defendants' Attorneys:


Kerri S. Reisdorff

Margaret K. Young

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

4520 Main Street, Suite 400

Kansas City, Missouri 64111

kerri.reisdorff@ogletree.com

margaret.young@ogletree.com


ATTORNEYS FOR DEFENDANT


Respectfully submitted,

_____

Ganiyu A. Jaiyeola, Ph.D., MBA


PLAINTIFF

*pro se*

6

### Index of Exhibits

**Ex. A**   Electronic Mail (dated January 14, 2021 and time-stamped 9:44 AM) from Defendant's Attorney, Kerri S. Reisdorff, to Plaintiff.

**Ex. B**   Electronic Mail (dated January 14, 2021 and time-stamped 11:45 AM) from Plaintiff to Defendant's Attorney, Kerri S. Reisdorff.

**Ex. C**   Electronic Mail (dated January 14, 2021 and time-stamped 11:50 AM) from Defendant's Attorney, Kerri S. Reisdorff, to Plaintiff.

**Ex. D**   Electronic Mail (dated January 14, 2021 and time-stamped 11:56 AM) from Plaintiff to Defendant's Attorney, Kerri S. Reisdorff.

**Ex. E**   Electronic Mail (dated January 14, 2021 and time-stamped 12:01 PM) from Defendant's Attorney, Kerri S. Reisdorff, to Plaintiff.

# Ex. A

 Gmail

**Ganiyu Jaiyeola <ganiyu.jaiyeola@gmail.com>**

---

## Follow-Up

**Reisdorff, Kerri S.** <kerri.reisdorff@ogletree.com>    Thu, Jan 14, 2021 at 9:44 AM
To: Ganiyu Jaiyeola <ganiyu.jaiyeola@gmail.com>
Cc: "Young, Margaret" <margaret.young@ogletreedeakins.com>

Thank you for letting us know.

I will be filing the notice of deposition for your deposition on Feb. 18 today.

Kerri

**Kerri S. Reisdorff | Ogletree, Deakins, Nash, Smoak & Stewart, P.C.**
4520 Main Street, Suite 400 | Kansas City, MO 64111 | Telephone: 816-410-2245 | Fax: 816-471-1303
kerri.reisdorff@ogletree.com | www.ogletree.com | Bio

**From:** Ganiyu Jaiyeola <ganiyu.jaiyeola@gmail.com>
**Sent:** Thursday, January 14, 2021 8:41 AM
**To:** Reisdorff, Kerri S. <Kerri.Reisdorff@ogletreedeakins.com>
**Cc:** Young, Margaret <margaret.young@ogletreedeakins.com>
**Subject:** Re: Follow-Up

*[Caution: Email received from external source]*

---

# Plaintiff has rescheduled Mr. Mudd's deposition to February 23, 2021.

[Quoted text hidden]
[Quoted text hidden]
[Quoted text hidden]

# Ex. B

                          **Ganiyu Jaiyeola <ganiyu.jaiyeola@gmail.com>**

---

## Follow-Up

---

**Ganiyu Jaiyeola** <ganiyu.jaiyeola@gmail.com>                    Thu, Jan 14, 2021 at 11:45 AM
To: "Reisdorff, Kerri S." <kerri.reisdorff@ogletree.com>
Cc: "Young, Margaret" <margaret.young@ogletreedeakins.com>

The just filed deposition notice for Plaintiff states as follows: **"The deposition will continue from day to day, at the same place, until complete or adjourned.".  ECF No. 69.**

The deposition of Plaintiff is for 7 hours as stated in the Scheduling Order:

"g) No more than 10 depositions may be taken by either party. Each deposition must be limited to 7 hours. All depositions must be governed by the written guidelines that are available on the court's website: http://www.ksd.uscourts.gov/deposition-guidelines/". ECF No. 19, p. 6 at "g)".

The Defendant should clearly state in the notice that Plaintiff's deposition is for 7 hours.


Sincerely,

Ganiyu Jaiyeola, Ph.D., MBA
616 635 4025
[Quoted text hidden]

# Ex. C

 **Gmail**                                                **Ganiyu Jaiyeola <ganiyu.jaiyeola@gmail.com>**

---

## Follow-Up

**Reisdorff, Kerri S.** <kerri.reisdorff@ogletree.com>                    Thu, Jan 14, 2021 at 11:50 AM
To: Ganiyu Jaiyeola <ganiyu.jaiyeola@gmail.com>
Cc: "Young, Margaret" <margaret.young@ogletreedeakins.com>

Ganiyu - The 7 hour reference in the rule only counts time on the record.  And we certainly will agree to the maximum time allowed without court permission.  We always include that language in the notice because events sometimes the day of a deposition require it to be postponed half way through until the next day.  For example, I was defending a deposition where the deponent learned 4 hours into his deposition his wife went into labor.  So, the parties agreed to continue the deposition until he was available again.  But, rest assured,  we know the rule and will comply with it.

---

**From:** Ganiyu Jaiyeola <ganiyu.jaiyeola@gmail.com>
**Date:** Thu, Jan 14, 2021, 10:45 AM
**To:** "Reisdorff, Kerri S." <Kerri.Reisdorff@ogletreedeakins.com>
**CC:** "Young, Margaret" <margaret.young@ogletreedeakins.com>

[Quoted text hidden]

# Ex. D

 Gmail

**Ganiyu Jaiyeola <ganiyu.jaiyeola@gmail.com>**

---

## Follow-Up

**Ganiyu Jaiyeola** <ganiyu.jaiyeola@gmail.com>                    Thu, Jan 14, 2021 at 11:56 AM
To: "Reisdorff, Kerri S." <kerri.reisdorff@ogletree.com>
Cc: "Young, Margaret" <margaret.young@ogletreedeakins.com>

Plaintiff understands the defendant's explanation; however, Plaintiff wants it stated in
the notice that the deposition of Plaintiff will be for a total of 7 hours.  If the Defendant
doesn't reflect 7 hours in the notice by the end of business day today, Plaintiff will file a
motion with the Court, objecting to the notice.  This has been an attempt to meet and
confer.


Sincerely,

Ganiyu Jaiyeola, Ph.D., MBA
616 635 4025

[Quoted text hidden]

# Ex. E

Case 2:20-cv-02068-HLT-JPO   Document 72-2   Filed 01/15/21   Page 10 of 10
Appellate Case: 21-3114      Document: 010110544162      Date Filed: 07/06/2021      Page: 793

                                    **Ganiyu Jaiyeola <ganiyu.jaiyeola@gmail.com>**

## Follow-Up

**Reisdorff, Kerri S.** <kerri.reisdorff@ogletree.com>                    Thu, Jan 14, 2021 at 12:01 PM
To: Ganiyu Jaiyeola <ganiyu.jaiyeola@gmail.com>
Cc: "Young, Margaret" <margaret.young@ogletreedeakins.com>

Ganiyu - Rule 30 does not require a reference to 7 hours.  We will remove the language you object to and file an amended notice.

**From:** Ganiyu Jaiyeola <ganiyu.jaiyeola@gmail.com>
**Date:** Thu, Jan 14, 2021, 10:56 AM
[Quoted text hidden]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


GANIYU AYINLA JAIYEOLA,
                    Plaintiff,

v.                                          Case No.: 2:20-cv-2068-JWB-JPO

GARMIN INTERNATIONAL, INC.,
                    Defendant.


**PLAINTIFFS' OBJECTIONS ON MAGISTRATE JUDGE'S ORDER REGARDING
PLAINTIFF'S MOTION FOR PROTECTIVE ORDER EXCLUDING DEFENDANT
REPRESENTATIVES DURING THE DEPOSITION OF FACT WITNESSES**

Pursuant to D. Kan. Rule 72.1.4(a) ("Rule 72.1.4(a)"), Plaintiff hereby files a motion regarding Plaintiffs' objections to Magistrate Judge James P. O'Hara ("Magistrate") Order denying[1] Plaintiff's motion[2] for a Protective Order excluding Defendant representatives during the deposition of fact witnesses in this case.  Rule 72.1.4(a) states in part as follows: "The procedure for filing objections to an order of a magistrate judge in a nondispositive matter follows Fed. Civ. P. 72(a). Such objections must be made by filing a motion to review the order in question.".

This is an employment discrimination lawsuit[3] in which Garmin International, Inc. ("Garmin"), by failing to hire Plaintiff ("Jaiyeola") (for the "Advanced Materials Engineer - Metals-19001CL"[4] position he applied and interviewed for over the phone and on-site at Garmin's Headquarters/Manufacturing Center in Olathe, Kansas) violated Jaiyeola's rights under

---

[1] ECF No. 65; ECF No. 71.
[2] ECF No. 61; ECF No. 67.
[3] ECF No. 1, pp. 1-21. Plaintiff's Complaint.
[4] ECF No. 1-17, p. 2. Garmin's Human Resources Email Stating That Plaintiff Was Not Hired.

Title VII of the Civil Rights Act of 1964, as amended ("Title VII" – Race (African American),

Color (Black), and National Origin (Nigerian)), 29 U.S.C. § 621, et seq. (Age Discrimination in

Employment Act, as amended ("ADEA"), 42 U.S.C. §12112(b)(4) (Disability Association

Discrimination - Title I of the Americans with Disabilities Act ("ADA")), The Kansas Age

Discrimination in Employment Act[5] (Chapter 44, Art. 11, K.S.A., and specifically within the

meaning of subsection (a)(1) of Section 44-1113 of said Act - "KADEA") and 42 U.S.C. § 1983

(Denial of Due Process – "Due Process").  Garmin is also liable for discrimination under Section

703(a) of Title VII because the fact that Jaiyeola was not hired by Garmin was based on the

influence of a Garmin employee, Mr. Jeff Minelli (Garmin's Director of Mechanical

Engineering), with a discriminatory motive; Subordinate Bias Liability ("cat's paw" theory of

liability)[6].  Defendant's motion to dismiss the 42 U.S.C. § 1983 claim was granted by the Court

but the pleading (in the same Defendant's motion) to dismiss the Subordinate Bias Liability

claim was Denied[7].

　　　　Plaintiff states as follows:

**1.**　　　　Plaintiff is a *pro se*.  In *Hall v. Witteman*, this Court stated that "*Pro se* complaints,

however inartfully pleaded, must be liberally construed, and are held to less stringent standards

than formal pleadings drafted by lawyers. *Erickson v. Pardus*, ___ U.S. ___, 127 S.Ct. 2197, 2200,

167 L.Ed.2d 1081 (2007). See *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005)……"[8].

The Sixth Circuit asserted that "We recognize that *pro se* litigants impose a burden on the courts

---

[5] http://www.kslegislature.org/li/b2019_20/statute/044_000_0000_chapter/044_011_0000_article
/044_011_0013_section/044_011_0013_k/

[6] *Equal Employment Opportunity Commission v. BCI Coca-Cola Bottling Company of Los
Angeles*, 450 F. 3d 476 (10th Cir. 2006).

[7] ECF No. 17, pp. 4-6. Violation of Title VII Based on Subordinate Bias Liability.

[8] *Hall v. Witteman*, 569 F. Supp. 2d 1208 (D. Kan. 2008).

and that clients are usually better off if represented by counsel."[9]   The U.S. Supreme Court has stated that *pro se*[10] pleadings and motions should be viewed liberally and held to a lesser standard than those drafted by Attorneys.

2.       "Pursuant to D.Kan.Rule 72.1.4, the procedure for obtaining review of a magistrate's order in a nondispositive matter is set forth in Fed.R.Civ.P. 72(a). Under Rule 72(a), "[t]he district judge to whom the case is assigned shall consider such objections and shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law." The clearly erroneous standard requires the court to affirm the magistrate judge's order unless it has the definite and firm conviction from all the evidence that error has occurred. [See *Ocelot Oil Corp. v. Sparrow Industries*, 847 F.2d 1458, 1464 (10th Cir.1988) (quoting *United *733States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948)). See also *Smith v. MCI Telecomm. Corp.*, 137 F.R.D. 25, 27 (D.Kan.1991) ("Because a magistrate is afforded broad discretion in the resolution of nondispositive discovery disputes, the court will generally grant the magistrate great deference and overrule the magistrate's determination only if the discretion is clearly abused.")]"[11].

3.       "Federal Rules of Civil Procedure 26(c)(1)(E) governs **protective orders and the designation of persons who may be present while a deposition is being conducted**. The rule provides that the "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Under Rule 26(c), the "good cause" standard is "highly flexible, having been designed to accommodate all relevant interests as they arise." *Rohrbough v. Harris*, 549 F.3d 1313, 1321 (10th

---

[9] *King v. Curtis*, No. 14-2614 (6th Cir. 2015).
[10] *Haines v. Kerner*, 404 U.S. 520 (1971).
[11] *T & W Funding Co. XII, L.L.C. v. Pennant Rent-A-Car Midwest, Inc.*, 210 F.R.D. 730 (2002),

3

Cir. 2008)."[12]. ""**A finding of good cause must be based on a particular factual demonstration of potential harm**, not on conclusory statements." *Anderson v. Cryovac, Inc.*, 805 F.2d 1, 7 (1st Cir. 1986)."[13].

    **4.**    Plaintiff contends that the Magistrate abused his discretion in the Motion Order[14] of January 12, 2021 and the Motion for Reconsideration Order[15] of January 15, 2021 in the following ways:

    **A.**    The Magistrate did not consider the "good cause" in Plaintiff's motion. The good cause for the Protective Order is that a Defendant fact witness committed fraud.

    **B.**    The Magistrate conducted no fraud evidentiary hearing to evaluate the "good cause".

    **C.**    The Magistrate got no input from the Defendant. The Defendant never filed a response to Plaintiff's motion[16] and Plaintiff's motion for reconsideration[17].

    **5.**    For all the above reasons and for the reasons stated in the Objections Memorandum, Plaintiff respectfully ask[18] this Court to do the following:

    **A.**    Set aside the Magistrates' Orders[19];

    **B.**    Grant Plaintiff's Motion;

    **C.**    Issue a Protective Order to exclude Defendant representatives during the deposition of fact witnesses in this case.

---

[12] *Surat v. Klamser et al.*, No. 19-cv-0901-WJM-NRN, Document 94 (D. Colo. March 9, 2020).
[13] *Mansor v. JPMorgan Chase Bank, N.A.*, No. 12-10544-JGD (D. Mass. Sep. 19, 2017).
[14] ECF No. 65.
[15] ECF No. 71.
[16] ECF No. 61.
[17] ECF No. 67.
[18] Pursuant to D. Kan. Rule 72.1.4(a).
[19] ECF No. 65; ECF No. 71.

Respectfully submitted,

Dated: January 15, 2021

Ganiyu A. Jaiyeola, PhD., MBA

749 Preserve Circle Drive SE #6

Grand Rapids, Michigan 49548

Tel.: 616.635.4025

ganiyu.jaiyeola@gmail.com

PLAINTIFF

*pro se*

## CERTIFICATE OF SERVICE

Plaintiff hereby certifies that on this 15th day of January, 2021, Plaintiff e-mailed this

document to the District Court Clerk's office where it would be filed using the Court's CM/ECF

system which will automatically send the document to the following Defendants' Attorneys:


Kerri S. Reisdorff

Margaret K. Young

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

4520 Main Street, Suite 400

Kansas City, Missouri 64111

kerri.reisdorff@ogletree.com

margaret.young@ogletree.com


ATTORNEYS FOR DEFENDANT


Respectfully submitted,

_____

Ganiyu A. Jaiyeola, PhD., MBA


PLAINTIFF

*pro se*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

GANIYU AYINLA JAIYEOLA,
                    Plaintiff,

v.                                    Case No.: 2:20-cv-2068-JWB-JPO

GARMIN INTERNATIONAL, INC.,
                    Defendant.

**PLAINTIFFS' MEMORANDUM ON OBJECTIONS TO MAGISTRATE JUDGE'S ORDER REGARDING PLAINTIFF'S MOTION FOR PROTECTIVE ORDER EXCLUDING DEFENDANT REPRESENTATIVES DURING THE DEPOSITION OF FACT WITNESSES**

Pursuant to D. Kan. Rule 72.1.4(a) ("Rule 72.1.4(a)"), Plaintiff hereby presents a Memorandum that contains Plaintiffs' objections to Magistrate Judge James P. O'Hara ("Magistrate") Order denying[1] Plaintiff's motion[2] for a Protective Order excluding Defendant representatives during the deposition of fact witnesses in this case. Rule 72.1.4(a) states in part as follows: "The procedure for filing objections to an order of a magistrate judge in a nondispositive matter follows Fed. R. Civ. P. 72(a). Such objections must be made by filing a motion to review the order in question.".

## I.        INTRODUCTION

Plaintiff ("Jaiyeola") is a *pro se*. In *Hall v. Witteman*,[3] this Court stated that "*Pro se* complaints, however inartfully pleaded, must be liberally construed, and are held to less stringent

---

[1] ECF No. 65; ECF No. 71.
[2] ECF No. 61; ECF No. 67.
[3] *Hall v. Witteman*, 569 F. Supp. 2d 1208 (D. Kan. 2008).

standards than formal pleadings drafted by lawyers. *Erickson v. Pardus*, ___ U.S. ___, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007). See *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005)……". The Sixth Circuit asserted that "We recognize that *pro se* litigants impose a burden on the courts and that clients are usually better off if represented by counsel."[4]. The U.S. Supreme Court has stated that *pro se*[5] pleadings and motions should be viewed liberally and held to a lesser standard than those drafted by Attorneys.

This is an employment discrimination lawsuit[6] in which Garmin International, Inc. ("Garmin"), by failing to hire Jaiyeola (for the "Advanced Materials Engineer - Metals-19001CL"[7] position he applied and interviewed for over the phone and on-site at Garmin's Headquarters/Manufacturing Center in Olathe, Kansas) violated Jaiyeola's rights under Title VII of the Civil Rights Act of 1964, as amended ("Title VII" – Race (African American), Color (Black), and National Origin (Nigerian)), 29 U.S.C. § 621, et seq. (Age Discrimination in Employment Act, as amended ("ADEA"), 42 U.S.C. §12112(b)(4) (Disability Association Discrimination - Title I of the Americans with Disabilities Act ("ADA")), The Kansas Age Discrimination in Employment Act[8] (Chapter 44, Art. 11, K.S.A., and specifically within the meaning of subsection (a)(1) of Section 44-1113 of said Act - "KADEA") and 42 U.S.C. § 1983 (Denial of Due Process – "Due Process"). Garmin is also liable for discrimination under Section 703(a) of Title VII because the fact that Jaiyeola was not hired by Garmin was based on the influence of a Garmin employee, Mr. Jeff Minelli (Garmin's Director of Mechanical

---

[4] *King v. Curtis*, No. 14-2614 (6th Cir. 2015).
[5] *Haines v. Kerner*, 404 U.S. 520 (1971).
[6] ECF No. 1, pp. 1-21. Plaintiff's Complaint.
[7] ECF No. 1-17, p. 2. Garmin's Human Resources Email Stating That Plaintiff Was Not Hired.
[8] http://www.kslegislature.org/li/b2019_20/statute/044_000_0000_chapter/044_011_0000_article/044_011_0013_section/044_011_0013_k/

Engineering), with a discriminatory motive; Subordinate Bias Liability ("cat's paw" theory of liability)[9].  Defendant's motion to dismiss the 42 U.S.C. § 1983 claim was granted by the Court but the pleading (in the same Defendant's motion) to dismiss the Subordinate Bias Liability claim was Denied[10].

Dr. Min Kao (**Male, Asian American - originally from Taiwan**; East Asia) co-founded Garmin with Gary Burrell (**Male, White American**) in October 1989.  Kao, currently the Executive Chairman of Garmin, "…led the development of the first GPS navigator to be certified by the FAA."[11] and for all intents and purposes the GPS technology brain for the establishment of Garmin.

A diversity rating report on Garmin concluded that "Diverse employees at Garmin International score the company 64/100 across various culture categories, placing Garmin International in the bottom 45% of companies in the United States with 10,000+ Employees for Comparably's diversity score.  The Diversity score provides insights into how diverse employees feel and rate their work experience at Garmin International across various culture dimensions."[12]. In comparison, Trimble (https://www.trimble.com/), a Garmin competitor, scored "77/100"[13] and placed at "top 10%"[14].

**Garmin's significantly low Diversity Rating (for an American multinational technology company) is strongly confirmed by the multiple employment discrimination**

---

[9] *Equal Employment Opportunity Commission v. BCI Coca-Cola Bottling Company of Los Angeles*, 450 F. 3d 476 (10th Cir. 2006).
[10] ECF No. 17, pp. 4-6. Violation of Title VII Based on Subordinate Bias Liability.
[11] Garmin Executive Team: https://www.garmin.com/en-US/company/leadership/executive/
[12] https://www.comparably.com/companies/garmin-international/diversity (as it appeared on October 28, 2020).
[13] https://www.comparably.com/companies/trimble/diversity (as it appeared on October 28, 2020).
[14] *Id.*

**lawsuits against Garmin in the United States since 2009 to date**.  A former **Female** Garmin employee stated the following in her Complaint: "This is an employment case based upon and arising under the **Family and Medical Leave Act**, as amended, 29 U.S.C. § 2611 et seq. ("FMLA"); the **Americans with Disabilities** Act, 42 U.S.C. § 12101 et seq. ("ADA") the **Age Discrimination** in Employment Act, 29 U.S.C. § 621 et seq. ("ADEA")"[15].  In 2009[16] and 2010[17], **failure-to-hire employment discrimination lawsuits** based on "Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, et seq., for employment discrimination on the basis of **race, color, religion, gender, or national origin**." and "Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §§ 621, et seq., for employment discrimination on the basis of age (age 40 or older)." were filed against Garmin.  In 2017, a Garmin employee filed an Equal Employment Opportunity Commission ("EEOC") charge of discrimination based on "**race, sex and national origin discrimination** and **retaliation** under Title VII"[18] against Garmin **after working for Garmin for 11 years**: **1.)** "**Plaintiff is a black female from Brazil, South America**. She has been a **naturalized citizen of the United States** since 2009."[19]; **2.)** "**Garmin's culture shows a preference for white employees and male employees**. For example, in July 2016, **a Garmin employee sent an email asking for hand models, specifically Caucasian hand models**."[20]; **3.)** "Garmin's selection procedures and practices resulted in **a workforce at its headquarters in 2017 that was eighty-two percent (82%)**

---

[15] *Peterson v. Garmin International, Inc.*, No. 2:09-cv-02659-JAR (D. Kan. Dec. 22, 2009); ECF No. 1, p. 1 at ¶ "1".
[16] *Leo v. Garmin Int'l, Inc.*, No. 2:09-cv-02139-KHV (D. Kan. 2009), ECF No. 1, p. 1.
[17] *Id.*, No. 2:10-cv-02495-JTM-DJW (D. Kan. 2010), ECF No. 1-1, p. 1.
[18] *Antunes v. Garmin International, Inc.*, No. 2:18-cv-02697-JAR-KGG (D. Kan. Dec. 18, 2018), ECF No. 1, ¶ 9.
[19] *Id*; ¶ 12.
[20] *Id*; ¶ 26.

white, two and one-half percent (2.5%) black and two and two-tenths percent (2.2%) Hispanic."[21]; and **4.)** "Garmin's selection procedures and practices resulted in **a workforce at its headquarters in 2017 that was seventy-seven percent (77%) male and twenty-three percent (23%) female.**"[22].

Plaintiff interviewed[23] onsite at Garmin Headquarters/Manufacturing Center in Olathe, Kansas, on August 14, 2019 and noticed the following: **1.)** The Senior Technical Recruiter who interviewed Plaintiff over the phone and onsite was a **White Female**; **2.)** Plaintiff was given a tour of Garmin's facilities by a **White Female**; **3.)** The Technical Team that interviewed Plaintiff were **8 White Males**, and **4.)** The Garmin Engineers that attended Plaintiff's PowerPoint presentation were **14 White Males (93%)** and **1 White Female (7%)**.

## II.    ARGUMENT

"Pursuant to D.Kan.Rule 72.1.4, the procedure for obtaining review of a magistrate's order in a nondispositive matter is set forth in Fed.R.Civ.P. 72(a). Under Rule 72(a), "[t]he district judge to whom the case is assigned shall consider such objections and shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law." The clearly erroneous standard requires the court to affirm the magistrate judge's order unless it has the definite and firm conviction from all the evidence that error has occurred. [See *Ocelot Oil Corp. v. Sparrow Industries*, 847 F.2d 1458, 1464 (10th Cir.1988) (quoting *United *733States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948)). See also *Smith v. MCI Telecomm. Corp.*, 137 F.R.D. 25, 27 (D.Kan.1991) ("Because a magistrate

---

[21] *Id*; ¶ 45.
[22] *Id*; ¶ 47.
[23] ECF No. 1-14, p. 2.  Plaintiff's Interview Schedule on August 14, 2019.

is afforded broad discretion in the resolution of nondispositive discovery disputes, **the court will generally grant the magistrate great deference and overrule the magistrate's determination only if the discretion is clearly abused**.")]"[24].

"**"A district court abuses its discretion** if it applies an incorrect legal standard, applies the law in an unreasonable or incorrect manner, **follows improper procedures in making a determination, or makes findings of fact that are clearly erroneous**," *Thomas v. Blue Cross & Blue Shield Ass'n*, 594 F.3d 814, 821 (11th Cir. 2010) (internal quotation marks omitted), and also **"when it misconstrues its proper role, ignores or misunderstands the relevant evidence, and bases its decision upon considerations having little factual support.'"** *Jove Eng'g, Inc. v. IRS*, 92 F.3d 1539, 1546 (11th Cir. 1996) (quoting *Arlook v. S. Lichtenberg & Co.*, 952 F.2d 367, 374 (11th Cir. 1992))."[25]. ""An abuse of discretion is defined in this circuit as a judicial action which is arbitrary, capricious, or whimsical." *Pelican Prod. Corp. v. Marino*, 893 F.2d 1143, 1146 (10th Cir. 1990)."[26]. "A court abuses its discretion when it "clearly err[s] or venture[s] beyond the limits of permissible choice." *Hancock v. AT&T Co.*, 701 F.3d 1248, 1262 (10th Cir. 2012) (internal quotation marks omitted)."[27].

"Federal Rules of Civil Procedure 26(c)(1)(E) **governs protective orders and the designation of persons who may be present while a deposition is being conducted**. The rule provides that the "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Under Rule 26(c), the "good cause" standard is "highly flexible, having been designed to

---

[24] *T & W Funding Co. XII, L.L.C. v. Pennant Rent-A-Car Midwest, Inc.*, 210 F.R.D. 730 (2002),
[25] *FTC v. AbbVie Products LLC*, No. 12-16488 (11th Cir. Mar. 21, 2013).
[26] *Stringfellow v. Brown*, No. 95-7145 (10th Cir. Jan. 10, 1997); *Bethscheider v. Westar Energy*, No. 19-3243 (10th Cir. July 14, 2020).
[27] *Deere v. XPO Logistics Freight, Inc.; XPO Logistics, Inc.*, No. 19-1069 (10th Cir. Jan. 9, 2020).

accommodate all relevant interests as they arise." *Rohrbough v. Harris*, <u>549 F.3d 1313, 1321</u> (10th Cir. 2008)."[28].  ""**A finding of good cause must be based on a particular factual demonstration of potential harm**, not on conclusory statements." *Anderson v. Cryovac, Inc.*, <u>805 F.2d 1, 7</u> (1st Cir. 1986)."[29].

    **A.**    **The Magistrate Abused His Discretion**

    Plaintiff contends that **the Magistrate abused his discretion in the Motion Order[30] of January 12, 2021 and the Motion for Reconsideration Order[31] of January 15, 2021** in the following ways:

    **I.**    The Magistrate did not consider the "good cause" in Plaintiff's motion.  The good cause for the Protective Order is that a Defendant fact witness committed fraud.  The Magistrate ignored the facts of this case.

    **II.**    The Magistrate conducted no fraud evidentiary hearing to evaluate Plaintiff's "good cause".

    **III.**    The Magistrate got no input from the Defendant.  The Defendant never filed a response to Plaintiff's motion[32] and Plaintiff's motion for reconsideration[33].

    ""**A district court abuses its discretion** if it ….., **follows improper procedures in making a determination, or makes findings of fact that are clearly erroneous**," *Thomas v. Blue Cross & Blue Shield Ass'n*, <u>594 F.3d 814, 821</u> (11th Cir. 2010) (internal quotation marks omitted), and also **"when it misconstrues its proper role, ignores or misunderstands the relevant evidence, and**

---

[28] *Surat v. Klamser et al.*, No. 19-cv-0901-WJM-NRN, Document 94 (D. Colo. March 9, 2020).
[29] *Mansor v. JPMorgan Chase Bank, N.A.*, No. 12-10544-JGD (D. Mass. Sep. 19, 2017).
[30] <u>ECF No. 65</u>.
[31] <u>ECF No. 71</u>.
[32] <u>ECF No. 61</u>.
[33] <u>ECF No. 67</u>.

bases its decision upon considerations having little factual support.'" *Jove Eng'g, Inc. v. IRS*, 92 F.3d 1539, 1546 (11th Cir. 1996) (quoting *Arlook v. S. Lichtenberg & Co.*, 952 F.2d 367, 374 (11th Cir. 1992))."[34]…."[35].

**B.    Plaintiff's "good cause" for a Protective Order: Defendant Fact Witness Committed Fraud on Plaintiff's Interview Notes**

Plaintiff has shown a "good cause" for the entry of a Protective Order precluding any Defendant employee who is not being deposed from attending the deposition of Plaintiff or any deposition of fact witnesses in this lawsuit.  **The "good cause" is that Benjamin Dobbs, a Garmin employee, and a fact witness in this lawsuit committed a fraud: Dobbs "added to his notes" "at the direction of Garmin's in-house counsel".**  The "notes" were the interview notes that Dobbs created on Plaintiff on August 14, 2019.  Dobbs added to the "notes" on November 22, 2019; about 3 months after the "notes" were created.  **The "good cause" is that Dobbs committed a fraud "at the direction of Garmin's in-house counsel".**

Any Defendant employee who is not being deposed at the deposition of a fact witness in this lawsuit has the potential to cause harm or prejudice to the deposition process through coaching of Garmin fact witnesses and making efforts to align the testimonies of Garmin fact witnesses during deposition breaks.  **"….[Plaintiff] allege … annoyance, embarrassment, oppression, or undue burden would befall [Plaintiff] if [Defendant employees who are not being deposed] …are able to attend [ANY OF THE] deposition in this case]."[36].**

---

[34] *FTC v. AbbVie Products LLC*, No. 12-16488 (11th Cir. Mar. 21, 2013).
[35] *Deere v. XPO Logistics Freight, Inc.; XPO Logistics, Inc.*, No. 19-1069 (10th Cir. Jan. 9, 2020).
[36] *Surat v. Klamser et al.*, No. 19-cv-0901-WJM-NRN, Document 94 (D. Colo. March 9, 2020).

**III.       CONCLUSION**

For all the above reasons, Plaintiff respectfully ask[37] this Court to do the following:

     **A.**     Set aside the Magistrates' Orders[38];

     **B.**     Grant Plaintiff's Motion;

     **C.**     Issue a Protective Order to exclude Defendant representatives during the deposition of fact witnesses in this case.


Respectfully submitted,



_____

Dated: January 15, 2021                    Ganiyu A. Jaiyeola, PhD., MBA

749 Preserve Circle Drive SE #6

Grand Rapids, Michigan 49548

Tel.: 616.635.4025

ganiyu.jaiyeola@gmail.com


PLAINTIFF

*pro se*

---

[37] Pursuant to D. Kan. Rule 72.1.4(a).
[38] ECF No. 65; ECF No. 71.

## CERTIFICATE OF SERVICE

Plaintiff hereby certifies that on this 15th day of January, 2021, Plaintiff e-mailed this

document to the District Court Clerk's office where it would be filed using the Court's CM/ECF

system which will automatically send the document to the following Defendants' Attorneys:


Kerri S. Reisdorff

Margaret K. Young

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

4520 Main Street, Suite 400

Kansas City, Missouri 64111

kerri.reisdorff@ogletree.com

margaret.young@ogletree.com


ATTORNEYS FOR DEFENDANT


Respectfully submitted,

_____

Ganiyu A. Jaiyeola, PhD., MBA


PLAINTIFF

*pro se*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**GANIYU AYINLA JAIYEOLA,**

    **Plaintiff,**

    **v.**                      **Case No. 2:20-cv-02068-HLT**

**GARMIN INTERNATIONAL, INC,**

    **Defendant.**

---

## ORDER

Pro se plaintiff Ganiyu Ayinla Jaiyeola asserts various employment-discrimination claims against Defendant Garmin International, Inc.[1] Plaintiff moved for a protective order to prevent Defendant from having a corporate representative attend the fact-witness depositions. The first deposition is scheduled for January 21, 2021. Chief Magistrate Judge James P. O'Hara filed an order on January 12, 2021, denying Plaintiff's motion, Doc. 65, and filed an order on January 15, 2021, denying Plaintiff's motion for reconsideration, Doc. 71. Plaintiff timely filed an objection and supplement. Docs. 73 and 74. He contends that Chief Magistrate Judge O'Hara abused his discretion in denying the motion for protective order because he (1) did not consider the good cause in Plaintiff's motion, (2) did not conduct a fraud evidentiary hearing, and (3) resolved the motion without waiting for Defendant's response. Doc. 73 at 4. Plaintiff also asks the Court to set aside Chief Magistrate Judge O'Hara's orders, grant his motion, and enter a protective order. *Id.*

Because Plaintiff objects to non-dispositive orders, the Court's scope of review is whether the orders have been shown to be "clearly erroneous or contrary to law." *Ocelot Oil Corp. v.*

---

[1] The Court is mindful of Plaintiff's pro se status and liberally construes his pleadings. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

*Sparrow Indus.*, 847 F.2d 1458, 1461-62 (10th Cir. 1988). Under this standard, a district court affirms the decision of a magistrate judge unless "on the entire evidence [the court] is left with the definite and firm conviction that a mistake has been committed." *Id.* at 1464 (internal quotation and citation omitted).

The Court reviewed both orders and finds that Chief Magistrate Judge O'Hara appropriately identifies the governing law and applies that law. Docs. 65 and 71. His order recognizes the District of Kansas Deposition Guidelines and the interplay of Fed. R. Civ. P. 26(c) with those guidelines. The Court also finds that Chief Magistrate Judge O'Hara's conclusions concerning these guidelines and Fed. R. Civ. P. 26(c) are reasonable. Plaintiff has not demonstrated good cause justifying the protective order. The Court thus concludes that Chief Magistrate Judge O'Hara's orders are not clearly erroneous or contrary to the law and overrules the objection.[2]

THE COURT THEREFORE ORDERS that Plaintiff's Objection (Doc. 73) is OVERRULED.

IT IS SO ORDERED.

Dated: January 19, 2021                    /s/ *Holly L. Teeter*
                                           HOLLY L. TEETER
                                           UNITED STATES DISTRICT JUDGE

---

[2]     Because of the upcoming deposition, the importance of this issue to that deposition, and the nature of the objection, the Court took up the objection before Defendant responded.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

GANIYU AYINLA JAIYEOLA,
                 Plaintiff,

v.                                   Case No.: 2:20-cv-2068-HLT-JPO

GARMIN INTERNATIONAL, INC.,
                 Defendant.

**PLAINTIFF'S MOTION TO EXPAND THE NUMBER OF INTERROGATORIES**

Plaintiff hereby files a motion to expand the number of interrogatories in this case by

nine (9).

This is an employment discrimination lawsuit[1] in which Garmin International, Inc.

("Garmin"), by failing to hire Plaintiff ("Jaiyeola") (for the "Advanced Materials Engineer -

Metals-19001CL"[2] position he applied and interviewed for over the phone and on-site at

Garmin's Headquarters/Manufacturing Center in Olathe, Kansas) violated Jaiyeola's rights under

Title VII of the Civil Rights Act of 1964, as amended ("Title VII" – Race (African American),

Color (Black), and National Origin (Nigerian)), 29 U.S.C. § 621, et seq. (Age Discrimination in

Employment Act, as amended ("ADEA"), 42 U.S.C. §12112(b)(4) (Disability Association

Discrimination - Title I of the Americans with Disabilities Act ("ADA")), The Kansas Age

Discrimination in Employment Act[3] (Chapter 44, Art. 11, K.S.A., and specifically within the

---

[1] ECF No. 1, pp. 1-21. Plaintiff's Complaint.
[2] ECF No. 1-17, p. 2. Garmin's Human Resources Email Stating That Plaintiff Was Not Hired.
[3] http://www.kslegislature.org/li/b2019_20/statute/044_000_0000_chapter/044_011_0000_article/044_011_0013_section/044_011_0013_k/

meaning of subsection (a)(1) of Section 44-1113 of said Act - "KADEA") and <u>42 U.S.C. § 1983</u>

<u>(Denial of Due Process – "Due Process").  Garmin is also liable for discrimination under Section</u>

703(a) of Title VII because the fact that Jaiyeola was not hired by Garmin was based on the

influence of a Garmin employee, Mr. Jeff Minelli (Garmin's Director of Mechanical

Engineering), with a discriminatory motive; Subordinate Bias Liability ("cat's paw" theory of

liability)[4].  Defendant's motion to dismiss the <u>42 U.S.C. § 1983</u> claim was granted by the Court

but the pleading (in the same Defendant's motion) to dismiss the Subordinate Bias Liability

claim was Denied[5].

Plaintiff states as follows:

**1.**    Plaintiff is a *pro se*.  In *Hall v. Witteman*, this Court stated that "*Pro se* complaints,

however inartfully pleaded, must be liberally construed, and are held to less stringent standards

than formal pleadings drafted by lawyers. *Erickson v. Pardus*, ___ U.S. ___, <u>127 S.Ct. 2197, 2200</u>,

<u>167 L.Ed.2d 1081</u> (2007). See *Martinez v. Garden*, <u>430 F.3d 1302, 1304</u> (10th Cir. 2005)……"[6].

The Sixth Circuit asserted that "We recognize that *pro se* litigants impose a burden on the courts

and that clients are usually better off if represented by counsel."[7].  The U.S. Supreme Court has

stated that *pro se*[8] pleadings and motions should be viewed liberally and held to a lesser standard

than those drafted by Attorneys.

**2.**    In the **Scheduling Order dated September 29, 2020**, the Court ruled that "f)

Neither party may serve more than **25 interrogatories**, including all discrete subparts….."[9].

---

[4] *Equal Employment Opportunity Commission v. BCI Coca-Cola Bottling Company of Los Angeles*, <u>450 F. 3d 476</u> (10th Cir. 2006).
[5] ECF No. 17, pp. 4-6. Violation of Title VII Based on Subordinate Bias Liability.
[6] *Hall v. Witteman*, <u>569 F. Supp. 2d 1208</u> (D. Kan. 2008).
[7] *King v. Curtis*, No. 14-2614 (6th Cir. 2015).
[8] *Haines v. Kerner*, <u>404 U.S. 520</u> (1971).
[9] ECF No. 19, p. 5, ¶ "f)".

**3.**    Fed. R. Civ. P. 33(a)(1) determines the number of interrogatories in a lawsuit:

"Number. Unless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts. Leave to serve additional interrogatories may be granted to the extent consistent with Rule 26(b)(1) and (2).".

**4.**    Fed. R. Civ. P. 26 (b)(2)(C) applies to the limit on the number of interrogatories allowed:

"When Required. On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:

(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;

(ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

(iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).".

**5.**    "In this district, D. Kan. Rule 33.1 expressly applies the meet-and-confer requirement to motions seeking to serve additional interrogatories. "If a party seeks leave to serve additional interrogatories to those permitted by Fed. R. Civ. P. 33(a), a motion must be filed that sets forth (1) the proposed additional interrogatories; and (2) the reasons establishing good cause for their service. Such motion is subject to D. Kan. Rule 37.2." [D. Kan. Rule 33.1.]"[10].

**6.**    Plaintiff complied with the requirements of D. Kan. Rule 37.2 **(See Ex. A)**.

---

[10] *Tuschhoff v. USIC Locating Servs., LLC*, Case No. 6:19-cv-01149 (D. Kan. Oct. 14, 2020).

7.      The **nine (9) interrogatories** that Plaintiff wants to add are listed in **Ex. B**.  The

Defendant refused to answer 3 Interrogatories and 6 Request For Documents and Things that the

Defendant considered as Interrogatories: "This paragraph seeks information as opposed to the

production of documents. As such, it is an interrogatory pursuant to Fed.R.Civ.P. 33." **(See Ex.**

**B)**.

8.      Plaintiff   hereby   ask[11]   the   Court   to   Grant   Plaintiff's   additional   nine   (9)

interrogatories.

Respectfully submitted,

_____

Dated: January 19, 2021

Ganiyu A. Jaiyeola, PhD., MBA

749 Preserve Circle Drive SE #6

Grand Rapids, Michigan 49548

Tel.: 616.635.4025

ganiyu.jaiyeola@gmail.com

PLAINTIFF

*pro se*

---

[11] Pursuant to Fed. R. Civ. P. 33(a)(1) and Fed. R. Civ. P. 26 (b)(2)(C).

4

## CERTIFICATE OF SERVICE

Plaintiff hereby certifies that on this 19th day of January, 2021, Plaintiff e-mailed this

document to the District Court Clerk's office where it would be filed using the Court's CM/ECF

system which will automatically send the document to the following Defendants' Attorneys:

Kerri S. Reisdorff

Margaret K. Young

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

4520 Main Street, Suite 400

Kansas City, Missouri 64111

kerri.reisdorff@ogletree.com

margaret.young@ogletree.com

ATTORNEYS FOR DEFENDANT

Respectfully submitted,

_____

Ganiyu A. Jaiyeola, PhD., MBA

PLAINTIFF

*pro se*

5

**Index of Exhibits**

**Ex. A**        Plaintiff complied with the requirements of <u>D. Kan. Rule 37.2</u>.

**Ex. B**        PLAINTIFF'S NINE (9) INTERROGATORIES FOR MOTION TO INCREASE

THE NUMBER OF INTERROGATORIES.

# Ex. A

 Gmail

**Ganiyu Jaiyeola <ganiyu.jaiyeola@gmail.com>**

---

## Summary of Call
3 messages

---

**Reisdorff, Kerri S.** <kerri.reisdorff@ogletree.com>                    Wed, Dec 16, 2020 at 8:01 PM
To: Ganiyu Jaiyeola <ganiyu.jaiyeola@gmail.com>
Cc: "Young, Maggie" <margaret.young@ogletreedeakins.com>

Ganiyu – Thank you again for a very productive call this afternoon.  We have attempted to summarize the important
agreements/positions from the call below.

**Discovery from Garmin to You**

- Interrogatory 3:  You confirmed you do not intend to rely upon or refer to any work experience or history prior to
  1995 to support your claims in this lawsuit.  Based on this representation, Garmin will not compel a complete
  response.
- Interrogatory 6:   You agreed to look for and produce (if found) the state determinations relating to the
  administrative charges you filed against Carrier, Federal Mogul, and Summit. Following our meeting you provided
  the determinations relating to Federal and Summit and indicated you could not locate the determination for
  Carrier.  We consider this issue resolved.
- Interrogatory 10:  You confirmed that you have not been offered employment by any entity since January 1, 2019.
  With respect to other non-disclosed information regarding your job search since 2019, Garmin offered, and you
  agreed, that Garmin can obtain the remaining information in your deposition.
- Request 10:  We indicated that you had not produced signed copies of your Michigan tax returns for 2017-2019.
  You agreed to cooperate with Garmin's efforts to obtain the signed copies either from the State or your tax
  prepared.  We will be in touch.
- Request 13: Unfortunately, this issue remains unresolved. You shared that your practice is to copy and paste
  electronic communications received referencing or relating to your job search since January 2019 into a text file.
  When I asked if you still had the original emails and other communications (such as letters etc…) with companies
  you sought employment with you indicated you may have those documents.  In response to your concern that an
  email search would be too burdensome, Garmin offered to limit the search to entities where you were offered an
  interview (on the phone and/or onsite).  You indicated that you would only agree to produce responsive
  communications for up to 10 companies.  When asked for an estimate on how many entities you interviewed with
  since 2019 you stated you were not sure and indicated that at this juncture you were unwilling to investigate to
  come up with the actual number or a good estimate.  Without this information, we indicated that we were unable to
  agree to your "up to 10" limitation.    We will discuss this dispute with Garmin to determine whether we intend to
  request an informal conference with the Court.
- Request No. 19.  You indicated you had produced all responsive information in your possession.  Based on this
  representation, Garmin considers this issue resolved.

**Discovery from You to Garmin**

- Privilege Log: Garmin agreed to provide additional information this week and we will not oppose any request for an
  extension you may seek related to your deadline to compel.
- Interrogatory 17:  You agreed to accept Garmin's objection.
- Request 2:  You asked for an un-redacted copy of Kyle McKillop's full Taleo transcript.  We agreed to discuss with
  Garmin.  We will be in touch.

We also discussed the limit of 25 Interrogatories per party and a potential date for your deposition in February.  I will
hopefully be in touch in the next week with date options.

 **Gmail**

Ganiyu Jaiyeola <ganiyu.jaiyeola@gmail.com>

---

### Jaiyeola v. Garmin: Plaintiff's Motion to Expand The Number of Interrogatories
8 messages

---

**Ganiyu Jaiyeola** <ganiyu.jaiyeola@gmail.com>                    Thu, Jan 14, 2021 at 12:38 PM
To: "Reisdorff, Kerri S." <kerri.reisdorff@ogletree.com>, "Young, Maggie" <margaret.young@ogletree.com>

Plaintiff plans to file a motion with the Court **to expand the number of interrogatories from 25 to 40** because Plaintiff plans to have 15 more interrogatories.  Does the Defendant have any objection?

Meet and Confer:

1.       The Scheduling order has 25 interrogatories limit.  "Neither party may serve more than 25 interrogatories...".  ECF No. 19, p. 5, at "f)".

2.       **Plaintiff and the Defendant had a video discussion on December 16, 2020 during which the parties "....discussed the limit of 25 Interrogatories per party...."**.  See the attached Electronic Mail file.

3.       In "DEFENDANT'S ANSWERS AND OBJECTIONS TO PLAINTIFF'S SECOND SET OF INTERROGATORIES", dated January 5, 2021, the Defendant objected to Plaintiffs' "2.", "3.", "4." "SECOND SET OF INTERROGATORIES" as follows:

"OBJECTION: On September 29, 2020, **the Court entered its Scheduling Order instructing the parties that neither party shall serve more than 25 interrogatories. (Doc. 19.)** On October 5, 2020, Plaintiff served his First Set of Interrogatories on Defendant which included 24 separately numbered interrogatories. (Doc. 20.) **This interrogatory exceeds the Court ordered limit and therefore, Defendant is not required to respond.**".

4.     In "DEFENDANT'S RESPONSES AND OBJECTIONS TO PLAINTIFF'S SECOND SET OF REQUEST FOR PRODUCTION OF DOCUMENTS AND THINGS", dated January 5, 2021, the Defendant objected to Plaintiffs' "2.", "3.", "5.", "6.","7.", "9." "REQUEST FOR PRODUCTION OF DOCUMENTS AND THINGS" with all or part of the following "RESPONSE":

"RESPONSE: This paragraph seeks information as opposed to the production of documents. As such, it is an interrogatory pursuant to Fed.R.Civ.P. 33. On September 29, 2020, **the Court entered its Scheduling Order instructing the parties that neither party shall serve more than 25 interrogatories. (Doc. 19.)** On October 5, 2020, Plaintiff served his First Set of Interrogatories on Defendant, which included 24 separately numbered interrogatories. (Doc. 20.) On December 2, 2020, Plaintiff served his Second Interrogatories on Defendant, which included 4 separately numbered interrogatories. (Doc. 47.) **This interrogatory exceeds the Court ordered limit and therefore, Defendant is not required to respond.**".

Sincerely,

Ganiyu Jaiyeola, Ph.D., MBA

616 635 4025

---

 **Jaiyeola Interrogatory Limit Email Discussion.pdf**
69K

---

**Reisdorff, Kerri S.** <kerri.reisdorff@ogletree.com>                    Thu, Jan 14, 2021 at 3:40 PM
To: Ganiyu Jaiyeola <ganiyu.jaiyeola@gmail.com>, "Young, Margaret" <margaret.young@ogletreedeakins.com>

Ganiyu - In order for the parties to meet its obligations to confer in good faith, what Garmin needs to know is what 15 ROGs do you wish to serve and have Garmin answer. Once we have that information our client can provide its position on which ROGs it would be willing to respond to without court intervention. I am available Tuesday to confer. Let me know if there is time on Tuesday that works for you. If I could get your 15 ROGs in advance of our call that would be great as I will need to discuss with our client.

**From:** Ganiyu Jaiyeola <ganiyu.jaiyeola@gmail.com>
**Date:** Thu, Jan 14, 2021, 12:39 PM
**To:** "Reisdorff, Kerri S." <Kerri.Reisdorff@ogletreedeakins.com>, "Young, Margaret" <margaret.young@ogletreedeakins.com>
**Subject:** Jaiyeola v. Garmin: Plaintiff's Motion to Expand The Number of Interrogatories

*[Caution: Email received from external source]*

---

[Quoted text hidden]

[Quoted text hidden]

*This transmission is intended only for the proper recipient(s). It is confidential and may contain attorney-client privileged information. If you are not the proper recipient, please notify the sender immediately and delete this message. Any unauthorized review, copying, or use of this message is prohibited.*

---

**Ganiyu Jaiyeola** <ganiyu.jaiyeola@gmail.com>                    Fri, Jan 15, 2021 at 12:48 PM
To: "Reisdorff, Kerri S." <kerri.reisdorff@ogletree.com>
Cc: "Young, Margaret" <margaret.young@ogletreedeakins.com>

Plaintiff has done the "meet and confer" required for filing a Motion to expand the number of interrogatories. Plaintiff will file a Motion with the Court to expand Plaintiff's number of interrogatories from 25 to 40.


Sincerely,

Ganiyu Jaiyeola, Ph.D., MBA
616 635 4025

[Quoted text hidden]

---

**Reisdorff, Kerri S.** <kerri.reisdorff@ogletree.com>                    Fri, Jan 15, 2021 at 1:23 PM
To: Ganiyu Jaiyeola <ganiyu.jaiyeola@gmail.com>
Cc: "Young, Margaret" <margaret.young@ogletreedeakins.com>

Ganiyu - We strongly disagree. We have neither met nor conferred and more importantly, you have not provided the information necessary for the parties to explore a potential resolution.

Kerri

---

**From:** Ganiyu Jaiyeola <ganiyu.jaiyeola@gmail.com>
**Date:** Fri, Jan 15, 2021, 12:49 PM
**To:** "Reisdorff, Kerri S." <Kerri.Reisdorff@ogletreedeakins.com>
**CC:** "Young, Margaret" <margaret.young@ogletreedeakins.com>
**Subject:** Re: Jaiyeola v. Garmin: Plaintiff's Motion to Expand The Number of Interrogatories
[Quoted text hidden]

---

Ganiyu Jaiyeola <ganiyu.jaiyeola@gmail.com>           Tue, Jan 19, 2021 at 11:07 AM
To: "Reisdorff, Kerri S." <kerri.reisdorff@ogletree.com>
Cc: "Young, Margaret" <margaret.young@ogletreedeakins.com>

1. In "DEFENDANT'S ANSWERS AND OBJECTIONS TO PLAINTIFF'S SECOND SET OF INTERROGATORIES", dated January 5, 2021, the **Defendant objected to Three (3) Plaintiffs' "SECOND SET OF INTERROGATORIES" (No. "2.", "3.", "4.") as follows**:

**DEFENDANT RESPONSE:** This paragraph seeks information as opposed to the production of documents. As such, it is an interrogatory pursuant to Fed.R.Civ.P. 33. **On September 29, 2020, the Court entered its Scheduling Order instructing the parties that neither party shall serve more than 25 interrogatories. (Doc. 19.) On October 5, 2020, Plaintiff served his First Set of Interrogatories on Defendant, which included 24 separately numbered interrogatories. (Doc. 20.) On December 2, 2020, Plaintiff served his Second Interrogatories on Defendant, which included 4 separately numbered interrogatories. (Doc. 47.) This interrogatory exceeds the Court ordered limit and therefore, Defendant is not required to respond.**

2. In "DEFENDANT'S RESPONSES AND OBJECTIONS TO PLAINTIFF'S SECOND SET OF REQUEST FOR PRODUCTION OF DOCUMENTS AND THINGS", dated January 5, 2021, the **Defendant objected to Six (6) Plaintiffs' "REQUEST FOR PRODUCTION OF DOCUMENTS AND THINGS" (No. "2.", "3.", "5.", "6.","7.", "9."), CATEGORIZED them as INTERROGATORIES, and did not respond to them**:

**DEFENDANT RESPONSE:** This paragraph seeks information as opposed to the production of documents. As such, it is an interrogatory pursuant to Fed.R.Civ.P. 33. **On September 29, 2020, the Court entered its Scheduling Order instructing the parties that neither party shall serve more than 25 interrogatories. (Doc. 19.) On October 5, 2020, Plaintiff served his First Set of Interrogatories on Defendant, which included 24 separately numbered interrogatories. (Doc. 20.) On December 2, 2020, Plaintiff served his Second Interrogatories on Defendant, which included 4 separately numbered interrogatories. (Doc. 47.) This interrogatory exceeds the Court ordered limit and therefore, Defendant is not required to respond.**

**3. Plaintiff will file a motion to expand the number of Interrogatories by Nine (9): 3 from (1.) above and 6 from (2.) above.**

Sincerely,

Ganiyu Jaiyeola, Ph.D., MBA

616 635 4025

[Quoted text hidden]

---

**Reisdorff, Kerri S.** <kerri.reisdorff@ogletree.com>                    Tue, Jan 19, 2021 at 11:13 AM
To: Ganiyu Jaiyeola <ganiyu.jaiyeola@gmail.com>
Cc: "Young, Margaret" <margaret.young@ogletreedeakins.com>

Ganiyu – Good morning.  I am available tomorrow for a meet and confer call.  Please let me know if there is a time tomorrow that works for you.

Kerri

**Kerri S. Reisdorff | Ogletree, Deakins, Nash, Smoak & Stewart, P.C.**
4520 Main Street, Suite 400 | Kansas City, MO 64111 | Telephone: 816-410-2245 | Fax: 816-471-1303
kerri.reisdorff@ogletree.com | www.ogletree.com | Bio

[Quoted text hidden]
[Quoted text hidden]

---

**Ganiyu Jaiyeola** <ganiyu.jaiyeola@gmail.com>                    Tue, Jan 19, 2021 at 11:31 AM
To: "Reisdorff, Kerri S." <kerri.reisdorff@ogletree.com>
Cc: "Young, Margaret" <margaret.young@ogletreedeakins.com>

1. The Defendant and Plaintiff discussed over-the-limit interrogatories in an audio-video call on December 16, 2020 and electronic mail discussions on January 14, 2021 and January 15, 2021.  See the attached files.

2. The Defendant rejected the nine (9) interrogatories in its responses to Plaintiff: 3 in Defendant's January 5, 2021 response to Plaintiffs' interrogatories and  6 in Defendant's January 5, 2021 response to Plaintiffs' Request for Documents and Things.

Sincerely,

Ganiyu Jaiyeola, Ph.D., MBA
616 635 4025

[Quoted text hidden]

---

**2 attachments**

📄 **Jaiyeola Interrogatory Limit Email Discussion 1.pdf**
69K

📄 **Jaiyeola Interrogatory Limit Email Discussion 2.pdf**
193K

---

**Reisdorff, Kerri S.** <kerri.reisdorff@ogletree.com>                    Tue, Jan 19, 2021 at 11:38 AM
To: Ganiyu Jaiyeola <ganiyu.jaiyeola@gmail.com>

Cc: "Young, Margaret" <margaret.young@ogletreedeakins.com>

Ganiyu – Yes, as a courtesy I reminded you of the 25 limit for ROGs in our call in December.  And as a further courtesy I asked if you had a preference for which of the additional interrogatories you would like us to answer – and you responded that Garmin could simply answer the first one served in your second set of interrogatories (as your first set included 24).  We never discussed the substance of the additional ROGs you served in the second set.  Please let me know when you are available to meet and confer regarding your intended discovery motion.

[Quoted text hidden]
[Quoted text hidden]

# Ex. B

## PLAINTIFF'S NINE (9) INTERROGATORIES FOR MOTION TO
## INCREASE THE NUMBER OF INTERROGATORIES

**INTERROGATORIES THE DEFENDANT DID NOT RESPOND TO:**

In "DEFENDANT'S ANSWERS AND OBJECTIONS TO PLAINTIFF'S SECOND SET OF INTERROGATORIES", dated January 5, 2021, the **Defendant objected to Three (3) Plaintiffs' "SECOND SET OF INTERROGATORIES" (No. "2.", "3.", "4.") as follows**:

1.        **INTERROGATORY NO. 2.:**  Identify the **Supervisor(s)** for the following individuals that Plaintiff interacted with when Plaintiff applied, interviewed, and denied hire for the position of "Advanced Materials Engineer-Metals-19001CL" at Garmin:

   1.      Michelle Cormack
   2.      John Mudd
   3.      Jeff Minelli
   4.      Jacob Zeller
   5.      Mr. Evan Northup
   6.      Michael Risinger
   7.      Laurie Minard
   8.      David Kight
   9.      Jared Klein
   10.     Diane Mclendon
   11.     Paul Rollheiser
   12.     John Whiteside
   13.     Aaron Lindh
   14.     Brian Sandefur

**DEFENDANT:**

OBJECTION: **On September 29, 2020, the Court entered its Scheduling Order instructing the parties that neither party shall serve more than 25 interrogatories. (Doc. 19.) On October 5, 2020, Plaintiff served his First Set of Interrogatories on Defendant which**

included 24 separately numbered interrogatories. (**Doc. 20**.) **This interrogatory exceeds the Court ordered limit and therefore, Defendant is not required to respond**.

2.      **INTERROGATORY No. 3.:** Identify which one of the individuals listed below is **NO LONGER AN EMPLOYEE** of Garmin. For any individual that is no longer an employee of Garmin, **state when they left and reason for leaving**.

    1.      Michelle Cormack
    2.      John Mudd
    3.      Jeff Minelli
    4.      Jacob Zeller
    5.      Mr. Evan Northup
    6.      Michael Risinger
    7.      Laurie Minard
    8.      David Kight
    9.      Jared Klein
   10.      Diane Mclendon
   11.      Paul Rollheiser
   12.      John Whiteside
   13.      Aaron Lindh
   14.      Brian Sandefur

**DEFENDANT:**

OBJECTION: **On September 29, 2020, the Court entered its Scheduling Order instructing the parties that neither party shall serve more than 25 interrogatories. (Doc. 19**.) **On October 5, 2020, Plaintiff served his First Set of Interrogatories on Defendant which included 24 separately numbered interrogatories. (Doc. 20**.) **This interrogatory exceeds the Court ordered limit and therefore, Defendant is not required to respond**.

3.      **INTERROGATORY No. 4.:** Provide the names of **ALL Garmin employees** who **Supervised Jessica Antunes** while she was a Garmin employee.

**DEFENDANT:**

OBJECTION: **On September 29, 2020, the Court entered its Scheduling Order instructing the parties that neither party shall serve more than 25 interrogatories. (Doc. 19.) On October 5, 2020, Plaintiff served his First Set of Interrogatories on Defendant which included 24 separately numbered interrogatories. (Doc. 20.) This interrogatory exceeds the Court ordered limit and therefore, Defendant is not required to respond**.

**PLAINTIFF'S REQUEST FOR PRODUCTION OF DOCUMENTS AND THINGS THE DEFENDANT CATEGORIZED AS INTERROGATORIES AND DID NOT RESPOND TO:**

In "DEFENDANT'S RESPONSES AND OBJECTIONS TO PLAINTIFF'S SECOND SET OF REQUEST FOR PRODUCTION OF DOCUMENTS AND THINGS", dated January 5, 2021, the **Defendant objected to Six (6) Plaintiffs' "REQUEST FOR PRODUCTION OF DOCUMENTS AND THINGS" (No. "2.", "3.", "5.", "6.","7.", "9."), CATEGORIZED them as INTERROGATORIES, and did not respond to them**:

1.   **REQUEST FOR PRODUCTION OF DOCUMENTS No. 2.:** Provide the Names and Titles (Positions) of ALL Garmin employees that **Supervised Jessica Antunes** while she was a Garmin employee for 11 years.

**DEFENDANT:**

RESPONSE: This paragraph seeks information as opposed to the production of documents. As such, it is an interrogatory pursuant to Fed.R.Civ.P. 33. **On September 29, 2020, the Court entered its Scheduling Order instructing the parties that neither party shall serve more than 25 interrogatories. (Doc. 19.) On October 5, 2020, Plaintiff served his First Set of Interrogatories on Defendant, which included 24 separately numbered interrogatories. (Doc. 20.) On December 2, 2020, Plaintiff served his Second Interrogatories on Defendant, which included 4 separately numbered interrogatories. (Doc. 47.) This interrogatory exceeds the Court ordered limit and therefore, Defendant is not required to respond**.

2.   **REQUEST FOR PRODUCTION OF DOCUMENTS No. 3.:** For anyone (other than

employees of the Defendants' Attorneys) that provided an input to the Defendants' answers to Plaintiff's second set of Interrogatories or Plaintiff's second request for the Production of Documents and Things or assisted the Defendants' Attorneys in the preparation of Plaintiff's second set of Interrogatories or Plaintiff's second request for the Production of Documents and Things, **provide the following:**

A.    Provide the Names and Titles (Positions) of the individuals;

B.    Identify what the individuals did;

C.    Provide a copy of the Protective Order[1] that each individual signed..


**DEFENDANT:**

RESPONSE: This paragraph seeks information as opposed to the production of documents. As such, it is an interrogatory pursuant to Fed.R.Civ.P. 33. **On September 29, 2020, the Court entered its Scheduling Order instructing the parties that neither party shall serve more than 25 interrogatories. (Doc. 19.) On October 5, 2020, Plaintiff served his First Set of Interrogatories on Defendant, which included 24 separately numbered interrogatories. (Doc. 20.) On December 2, 2020, Plaintiff served his Second Interrogatories on Defendant, which included 4 separately numbered interrogatories. (Doc. 47.) This interrogatory exceeds the Court ordered limit and therefore, Defendant is not required to respond**. To the extent this Request seeks the production of a signed Protective Order from individuals Defendant does not possess any responsive documents.


3.    **REQUEST FOR PRODUCTION OF DOCUMENTS No. 5.:** For Mr. Jeff Minelli, the Defendant stated: "Defendant states that as of October 1, 2019, Mr. Minelli directly supervised 12 individuals. Based on employee voluntary, self-disclosures 11 of the employees identified as Caucasian and one identified as Asian.".

A.    Provide the **races (as per EEOC classification)** for the "11 of the employees identified as **Caucasian**".

B.    Provide the National Origin for the "12 individuals".

C.    How many of the "supervised 12 individuals" indicate disability in their Garmin

---

[1] ECF No. 40, p. 13.

personnel file?

    **D.**    What are the ages of the "supervised 12 individuals"?

**DEFENDANT:**

RESPONSE: This paragraph seeks information as opposed to the production of documents. As such, it is an interrogatory pursuant to Fed.R.Civ.P. 33. **On September 29, 2020, the Court entered its Scheduling Order instructing the parties that neither party shall serve more than 25 interrogatories. (Doc. 19.) On October 5, 2020, Plaintiff served his First Set of Interrogatories on Defendant, which included 24 separately numbered interrogatories. (Doc. 20.) On December 2, 2020, Plaintiff served his Second Interrogatories on Defendant, which included 4 separately numbered interrogatories. (Doc. 47.) This interrogatory exceeds the Court ordered limit and therefore, Defendant is not required to respond**.

4.      **REQUEST FOR PRODUCTION OF DOCUMENTS No. 6.:** For Mr. John Mudd, the Defendant stated: "Defendant states that as of October 1, 2019, Mr. Mudd directly supervised 15 individuals. Based on employee voluntary, self-disclosures 14 of the employees identified as Caucasian and one identified as two or more races.".

    **A.**    Provide the **races (as per EEOC classification)** for the "14 of the employees identified as **Caucasian**".

    **B.**    Provide the National Origin for the "15 individuals".

    **C.**    How many of the "15 individuals" indicate disability in their Garmin personnel file?

    **D.**    What are the ages of the "15 individuals"?

**DEFENDANT:**

RESPONSE: This paragraph seeks information as opposed to the production of documents. As such, it is an interrogatory pursuant to Fed.R.Civ.P. 33. **On September 29, 2020, the Court entered its Scheduling Order instructing the parties that neither party shall serve more than 25 interrogatories. (Doc. 19.) On October 5, 2020, Plaintiff served his First Set of Interrogatories on Defendant, which included 24 separately numbered interrogatories. (Doc. 20.) On December 2, 2020, Plaintiff served his Second Interrogatories on Defendant,**

which included 4 separately numbered interrogatories. (**Doc. 47**.) **This interrogatory exceeds the Court ordered limit and therefore, Defendant is not required to respond**.

5.    **REQUEST FOR PRODUCTION OF DOCUMENTS No. 7.:** For Mr. Jacob Zeller, the Defendant stated: " Defendant states that as of October 1, 2019, Mr. Zeller directly supervised 8 individuals. Based on employee voluntary, self-disclosures these employees identified as Caucasian.".

    **A.**    Provide the **races (as per EEOC classification)** for the "8 individuals".

    **B.**    Provide the National Origin for the "8 individuals".

    **C.**    How many of the "8 individuals" indicate disability in their Garmin personnel file?

    **D.**    What are the ages of the "8 individuals"?

**DEFENDANT:**

RESPONSE: This paragraph seeks information as opposed to the production of documents. As such, it is an interrogatory pursuant to Fed.R.Civ.P. 33. **On September 29, 2020, the Court entered its Scheduling Order instructing the parties that neither party shall serve more than 25 interrogatories. (Doc. 19.) On October 5, 2020, Plaintiff served his First Set of Interrogatories on Defendant, which included 24 separately numbered interrogatories. (Doc. 20.) On December 2, 2020, Plaintiff served his Second Interrogatories on Defendant, which included 4 separately numbered interrogatories. (Doc. 47.) This interrogatory exceeds the Court ordered limit and therefore, Defendant is not required to respond**.

6.    **REQUEST FOR PRODUCTION OF DOCUMENTS No. 9.:** In an answer to Plaintiff First Interrogatory (**"16. [Inadvertently numbered as INTERROGATORY NO. 20]: Please state in exhaustive detail the basis for not hiring Plaintiff."**), the Defendant asserted (in part) as follows: "**Defendant states that it considered all relevant information in reaching its decision not to offer employment to Plaintiff**. This information included, but was not limited to: Garmin's business needs, Plaintiff's past work history and experience, including with colors and finishes; Plaintiff's interviews during his onsite visit at Defendant on August 14, 2019.".

"….."[i]n Title VII litigation, in which plaintiffs are *** required **to demonstrate pretext, courts have customarily allowed a wide discovery of personnel files.**" *Coughlin v. Lee*, supra at 1159, citing *Trevino v. Celanese Corp.*, 701 F.2d 397, 405-06 (5th Cir.1983); *Burns v. Thiokol Chem. Corp.*, 483 F.2d 300, 303-07 (5th Cir.1973); *Weahkee v. Norton*, 621 F.2d 1080, 1082 (10th Cir.1980); *Rich v. Martin Marietta Corp.*, 522 F.2d 333, 344-45 (10th Cir.1975); *Marshall v. Westinghouse Elec. Corp.*, 576 F.2d 588, 592 (5th Cir.1978)."[2].  "In Woods v. North American Rockwell Corp., 480 F.2d 644 (10th Cir. 1973), the plaintiff contended that he was given an examination which was irrelevant in relationship to the job he was seeking. The court held that since the plaintiff made no showing that the test itself produced a discriminatory result, plaintiff had failed to establish a prima facie case. **The court went on to hold that the plaintiff was required to demonstrate with statistics** or otherwise the discriminatory effect of the promotion test. **We think it is plain, therefore, that the plaintiffs had a right to the information and statistics from which they could have compiled trends and policies on the numbers of white persons receiving promotions during the relevant time periods in the departments and throughout the plant opposed to the number of blacks, Hispanos and women** who received promotions. If it is true that the immediate evidence and circumstance pertaining to the plaintiffs are not sufficient to constitute a prima facie case, **plant-wide statistics and department statistics are of the highest relevance**."[3].

Provide the **Defendant Garmin statistics for the Garmin Headquarters in Olathe, for 5 years (2014-2019)**, to show how the Defendant decides "not to offer employment" to **Job Candidates** at the Olathe Headquarters.  The statistics should reflect the following factors ("A", "B", and "C" below):

A.   For **EACH** Job Candidate, State Garmin's comments as regards **"all relevant information in reaching its decision not to offer employment to [Job Candidates]. This information included, but…not limited to:"**:

1.   "Garmin's business needs";

2.   "Plaintiff's past work history and experience; including with colors and finishes";

3.   "Plaintiff's interviews during his onsite visit at Defendant." in Olathe;

---

[2] *Onwuka v. Federal Express Corporation*, 178 F.R.D. 508 (D. Minn. 1997).
[3] *Rich v. Martin Marietta Corporation*, 522 F.2d 333 (10th Cir. 1975).

    4.     Any other "relevant information in reaching its decision".

**B.**    For **EACH** Job Candidate, indicate the EEOC classification of the **Race classification**:

    1.     Hispanic or Latino;

    2.     White (Not Hispanic or Latino);

    3.     Black or African American (Not Hispanic or Latino);

    4.     Native Hawaiian or Pacific Islander (Not Hispanic or Latino);

    5.     Asian (Not Hispanic or Latino);

    6.     Native American or Alaska Native (Not Hispanic or Latino);

    7.     Two or more races (Not Hispanic or Latino - All persons who identify with more than one race).

**C.**    For **EACH** Job Candidate, indicate the following:

    1.     Age;

    2.     National Origin;

    3.     Disability (if voluntary stated).


**DEFENDANT:**

RESPONSE: This paragraph seeks information as opposed to the production of documents. As such, it is an interrogatory pursuant to Fed.R.Civ.P. 33. **On September 29, 2020, the Court entered its Scheduling Order instructing the parties that neither party shall serve more than 25 interrogatories. (Doc. 19.) On October 5, 2020, Plaintiff served his First Set of Interrogatories on Defendant, which included 24 separately numbered interrogatories. (Doc. 20.) On December 2, 2020, Plaintiff served his Second Interrogatories on Defendant, which included 4 separately numbered interrogatories. (Doc. 47.) This interrogatory exceeds the Court ordered limit and therefore, Defendant is not required to respond.** To the extent this Request seeks documents related to Plaintiff's application for employment with Defendant, Defendant states that all relevant documents discovered after a reasonable search have already be e n produce d to Plaintiff in re s pons e to Plaintiff's First Request for Production of Documents.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS


GANIYU AYINLA JAIYEOLA,

Plaintiff,


v.                                                  Case No.: 2:20-cv-2068-HLT-JPO


GARMIN INTERNATIONAL, INC.,

Defendant.


**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION**

**TO EXPAND THE NUMBER OF INTERROGATORIES**


This is Plaintiff's Memorandum in support of Plaintiff's Motion[1] to expand interrogatories by nine (9).  For the reasons stated below, Plaintiff's Motion should be Granted.


I.   **INTRODUCTION**

Plaintiff ("Jaiyeola") is a *pro se*.  In *Hall v. Witteman*,[2] this Court stated that "*Pro se* complaints, however inartfully pleaded, must be liberally construed, and are held to less stringent standards than formal pleadings drafted by lawyers. *Erickson v. Pardus*, ___ U.S. ___, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007). See *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005)……".  The Sixth Circuit asserted that "We recognize that *pro se* litigants impose a burden on the courts and that clients are usually better off if represented by counsel."[3]  The U.S. Supreme Court has stated that *pro se*[4] pleadings and motions should be viewed liberally and held

---

[1] Pursuant to Fed. R. Civ. P. 33(a)(1) and Fed. R. Civ. P. 26 (b)(2)(C).

[2] *Hall v. Witteman*, 569 F. Supp. 2d 1208 (D. Kan. 2008).

[3] *King v. Curtis*, No. 14-2614 (6th Cir. 2015).

[4] *Haines v. Kerner*, 404 U.S. 520 (1971).

to a lesser standard than those drafted by Attorneys.

This is an employment discrimination lawsuit[5] in which Garmin International, Inc. ("Garmin"), by failing to hire Jaiyeola (for the "Advanced Materials Engineer - Metals-19001CL"[6] position he applied and interviewed for over the phone and on-site at Garmin's Headquarters/Manufacturing Center in Olathe, Kansas) violated Jaiyeola's rights under Title VII of the Civil Rights Act of 1964, as amended ("Title VII" – Race (African American), Color (Black), and National Origin (Nigerian)), 29 U.S.C. § 621, et seq. (Age Discrimination in Employment Act, as amended ("ADEA"), 42 U.S.C. §12112(b)(4) (Disability Association Discrimination - Title I of the Americans with Disabilities Act ("ADA")), The Kansas Age Discrimination in Employment Act[7] (Chapter 44, Art. 11, K.S.A., and specifically within the meaning of subsection (a)(1) of Section 44-1113 of said Act - "KADEA") and 42 U.S.C. § 1983 (Denial of Due Process – "Due Process").  Garmin is also liable for discrimination under Section 703(a) of Title VII because the fact that Jaiyeola was not hired by Garmin was based on the influence of a Garmin employee, Mr. Jeff Minelli (Garmin's Director of Mechanical Engineering), with a discriminatory motive; Subordinate Bias Liability ("cat's paw" theory of liability)[8].  Defendant's motion to dismiss the 42 U.S.C. § 1983 claim was granted by the Court but the pleading (in the same Defendant's motion) to dismiss the Subordinate Bias Liability claim was Denied[9].

Dr. Min Kao (**Male, Asian American - originally from Taiwan**; East Asia) co-founded Garmin with Gary Burrell (**Male, White American**) in October 1989.  Kao, currently the Executive Chairman of Garmin, "…led the development of the first GPS navigator to be certified by the FAA."[10] and for all intents and purposes the GPS technology brain for the establishment of Garmin.

A diversity rating report on Garmin concluded that "Diverse employees at Garmin International score the company 64/100 across various culture categories, placing Garmin

---

[5] ECF No. 1, pp. 1-21. Plaintiff's Complaint.
[6] ECF No. 1-17, p. 2. Garmin's Human Resources Email Stating That Plaintiff Was Not Hired.
[7] http://www.kslegislature.org/li/b2019_20/statute/044_000_0000_chapter/044_011_0000_article/044_011_0013_section/044_011_0013_k/
[8] *Equal Employment Opportunity Commission v. BCI Coca-Cola Bottling Company of Los Angeles*, 450 F. 3d 476 (10th Cir. 2006).
[9] ECF No. 17, pp. 4-6. Violation of Title VII Based on Subordinate Bias Liability.
[10] Garmin Executive Team: https://www.garmin.com/en-US/company/leadership/executive/

2

International in the bottom 45% of companies in the United States with 10,000+ Employees for Comparably's diversity score.  The Diversity score provides insights into how diverse employees feel and rate their work experience at Garmin International across various culture dimensions."[11]. In comparison, Trimble (https://www.trimble.com/), a Garmin competitor, scored "77/100"[12] and placed at "top 10%"[13].

**Garmin's significantly incredibly low Diversity Rating (for an American multinational technology company) is strongly confirmed by the multiple employment discrimination lawsuits against Garmin in the United States since 2009 to date**.  A former **Female** Garmin employee stated the following in her Complaint: "This is an employment case based upon and arising under the **Family and Medical Leave Act**, as amended, 29 U.S.C. § 2611 et seq. ("FMLA"); the **Americans with Disabilities** Act, 42 U.S.C. § 12101 et seq. ("ADA") the **Age Discrimination** in Employment Act, 29 U.S.C. § 621 et seq. ("ADEA")"[14].  In 2009[15] and 2010[16], **failure-to-hire employment discrimination lawsuits** based on "Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, et seq., for employment discrimination on the basis of **race, color, religion, gender, or national origin**." and "Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §§ 621, et seq., for employment discrimination on the basis of age (age 40 or older)." were filed against Garmin.  In 2017, a Garmin employee filed an Equal Employment Opportunity Commission ("EEOC") charge of discrimination based on "**race, sex and national origin discrimination** and **retaliation** under Title VII"[17] against Garmin **after working for Garmin for 11 years**: **1.) "Plaintiff is a black female from Brazil, South America**. She has been a **naturalized citizen of the United States** since 2009."[18]; **2.) "Garmin's culture shows a preference for white**

---

[11] https://www.comparably.com/companies/garmin-international/diversity (as it appeared on October 28, 2020).

[12] https://www.comparably.com/companies/trimble/diversity (as it appeared on October 28, 2020).

[13] *Id.*

[14] *Peterson v. Garmin International, Inc.*, No. 2:09-cv-02659-JAR (D. Kan. Dec. 22, 2009); ECF No. 1, p. 1 at ¶ "1".

[15] *Leo v. Garmin Int'l, Inc.*, No. 2:09-cv-02139-KHV (D. Kan. 2009), ECF No. 1, p. 1.

[16] *Leo v. Garmin Int'l, Inc.*, No. 2:10-cv-02495-JTM-DJW (D. Kan. 2010), ECF No. 1-1, p. 1.

[17] *Antunes v. Garmin International, Inc.*, No. 2:18-cv-02697-JAR-KGG (D. Kan. Dec. 18, 2018), ECF No. 1, ¶ 9.

[18] *Id*; ¶ 12.

3

**employees and male employees**. For example, in July 2016, **a Garmin employee sent an email asking for hand models, specifically Caucasian hand models**."[19]; **3.)** "Garmin's selection procedures and practices resulted in **a workforce at its headquarters in 2017 that was eighty-two percent (82%) white, two and one-half percent (2.5%) black and two and two-tenths percent (2.2%) Hispanic."**[20]; and **4.)** "Garmin's selection procedures and practices resulted in **a workforce at its headquarters in 2017 that was seventy-seven percent (77%) male and twenty-three percent (23%) female."**[21].

Plaintiff interviewed[22] onsite at Garmin Headquarters/Manufacturing Center in Olathe, Kansas, on August 14, 2019 and noticed the following: **1.)** The Senior Technical Recruiter who interviewed Plaintiff over the phone and onsite was a **White Female**; **2.)** Plaintiff was given a tour of Garmin's facilities by a **White Female**; **3.)** The Technical Team that interviewed Plaintiff were **8 White Males**, and **4.)** The Garmin Engineers that attended Plaintiff's PowerPoint presentation were **14 White Males (93%)** and **1 White Female (7%)**.

## II.    ARGUMENT

<u>Fed. R. Civ. P. 33(a)(1)</u> determines the number of interrogatories in a lawsuit: "Number. Unless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts. Leave to serve additional interrogatories may be granted to the extent consistent with Rule 26(b)(1) and (2).".

<u>Fed. R. Civ. P. 26</u> (b)(2)(C) applies to the limit on the number of interrogatories allowed: "When Required. On motion or on its own, **the court must limit the frequency or extent of discovery** otherwise allowed by these rules or by local rule **if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).**".

### A.    Plaintiff Wants to Add Nine (9) Interrogatories

---

[19] *Id*; ¶ 26.
[20] *Id*; ¶ 45.
[21] *Id*; ¶ 47.
[22] <u>ECF No. 1-14, p. 2</u>.  Plaintiff's Interview Schedule on August 14, 2019.

In "DEFENDANT'S ANSWERS AND OBJECTIONS TO PLAINTIFF'S SECOND SET OF INTERROGATORIES", dated January 5, 2021, the **Defendant objected to Three (3) Plaintiffs' "SECOND SET OF INTERROGATORIES" (No. "2.", "3.", "4.") as follows**:

1.       **INTERROGATORY No. 2.:**  Identify the **Supervisor(s)** for the following individuals that Plaintiff interacted with when Plaintiff applied, interviewed, and denied hire for the position of "Advanced Materials Engineer-Metals-19001CL" at Garmin:

 

1.       Michelle Cormack

2.       John Mudd

3.       Jeff Minelli

4.       Jacob Zeller

5.       Mr. Evan Northup

6.       Michael Risinger

7.       Laurie Minard

8.       David Kight

9.       Jared Klein

10.     Diane Mclendon

11.     Paul Rollheiser

12.     John Whiteside

13.     Aaron Lindh

14.     Brian Sandefur

 

**DEFENDANT:**

OBJECTION: **On September 29, 2020, the Court entered its Scheduling Order instructing the parties that neither party shall serve more than 25 interrogatories. (Doc. 19.) On October 5, 2020, Plaintiff served his First Set of Interrogatories on Defendant which included 24 separately numbered interrogatories. (Doc. 20.) This interrogatory exceeds the Court ordered limit and therefore, Defendant is not required to respond**.

2.       **INTERROGATORY No. 3.:**  Identify which one of the individuals listed below is **NO LONGER AN EMPLOYEE** of Garmin.  For any individual that is no longer an

employee of Garmin, **state when they left and reason for leaving**.

1.  Michelle Cormack
2.  John Mudd
3.  Jeff Minelli
4.  Jacob Zeller
5.  Mr. Evan Northup
6.  Michael Risinger
7.  Laurie Minard
8.  David Kight
9.  Jared Klein
10. Diane Mclendon
11. Paul Rollheiser
12. John Whiteside
13. Aaron Lindh
14. Brian Sandefur

**DEFENDANT:**

OBJECTION: **On September 29, 2020, the Court entered its Scheduling Order instructing the parties that neither party shall serve more than 25 interrogatories. (<u>Doc. 19</u>.) On October 5, 2020, Plaintiff served his First Set of Interrogatories on Defendant which included 24 separately numbered interrogatories. (<u>Doc. 20</u>.) This interrogatory exceeds the Court ordered limit and therefore, Defendant is not required to respond**.

3.   **INTERROGATORY No. 4.:**  Provide the names of **ALL Garmin employees** who **Supervised Jessica Antunes** while she was a Garmin employee.

**DEFENDANT:**

OBJECTION: **On September 29, 2020, the Court entered its Scheduling Order instructing the parties that neither party shall serve more than 25 interrogatories. (<u>Doc. 19</u>.) On October 5, 2020, Plaintiff served his First Set of Interrogatories on Defendant which**

included 24 separately numbered interrogatories. (**Doc. 20**.) **This interrogatory exceeds the Court ordered limit and therefore, Defendant is not required to respond**.

**PLAINTIFF'S REQUEST FOR PRODUCTION OF DOCUMENTS AND THINGS THE DEFENDANT CATEGORIZED AS INTERROGATORIES AND DID NOT RESPOND TO:**

In "DEFENDANT'S RESPONSES AND OBJECTIONS TO PLAINTIFF'S SECOND SET OF REQUEST FOR PRODUCTION OF DOCUMENTS AND THINGS", dated January 5, 2021, the **Defendant objected to Six (6) Plaintiffs' "REQUEST FOR PRODUCTION OF DOCUMENTS AND THINGS" (No. "2.", "3.", "5.", "6.","7.", "9."), CATEGORIZED them as INTERROGATORIES, and did not respond to them**:

1.      **REQUEST FOR PRODUCTION OF DOCUMENTS No. 2.:** Provide the Names and Titles (Positions) of ALL Garmin employees that **Supervised Jessica Antunes** while she was a Garmin employee for 11 years.

**DEFENDANT:**

RESPONSE: This paragraph seeks information as opposed to the production of documents. As such, it is an interrogatory pursuant to <u>Fed.R.Civ.P. 33</u>. **On September 29, 2020, the Court entered its Scheduling Order instructing the parties that neither party shall serve more than 25 interrogatories. (Doc. 19.) On October 5, 2020, Plaintiff served his First Set of Interrogatories on Defendant, which included 24 separately numbered interrogatories. (Doc. 20.) On December 2, 2020, Plaintiff served his Second Interrogatories on Defendant, which included 4 separately numbered interrogatories. (Doc. 47.) This interrogatory exceeds the Court ordered limit and therefore, Defendant is not required to respond**.

2.      **REQUEST FOR PRODUCTION OF DOCUMENTS No. 3.:** For anyone (other than employees of the Defendants' Attorneys) that provided an input to the Defendants' answers to Plaintiff's second set of Interrogatories or Plaintiff's second request for the Production of Documents and Things or assisted the Defendants' Attorneys in the preparation of Plaintiff's second set of Interrogatories or Plaintiff's second request for the

Production of Documents and Things, **provide the following:**

A.      Provide the Names and Titles (Positions) of the individuals;

B.      Identify what the individuals did;

C.      Provide a copy of the Protective Order[23] that each individual signed..


**DEFENDANT:**

RESPONSE: This paragraph seeks information as opposed to the production of documents. As such, it is an interrogatory pursuant to Fed.R.Civ.P. 33. **On September 29, 2020, the Court entered its Scheduling Order instructing the parties that neither party shall serve more than 25 interrogatories. (Doc. 19.) On October 5, 2020, Plaintiff served his First Set of Interrogatories on Defendant, which included 24 separately numbered interrogatories. (Doc. 20.) On December 2, 2020, Plaintiff served his Second Interrogatories on Defendant, which included 4 separately numbered interrogatories. (Doc. 47.) This interrogatory exceeds the Court ordered limit and therefore, Defendant is not required to respond**. To the extent this Request seeks the production of a signed Protective Order from individuals Defendant does not possess any responsive documents.


3.      **REQUEST FOR PRODUCTION OF DOCUMENTS No. 5.:** For Mr. Jeff Minelli, the Defendant stated: "Defendant states that as of October 1, 2019, Mr. Minelli directly supervised 12 individuals. Based on employee voluntary, self-disclosures 11 of the employees identified as Caucasian and one identified as Asian.".

A.      Provide the **races (as per EEOC classification)** for the "11 of the employees identified as **Caucasian**".

B.      Provide the National Origin for the "12 individuals".

C.      How many of the "supervised 12 individuals" indicate disability in their Garmin personnel file?

D.      What are the ages of the "supervised 12 individuals"?


**DEFENDANT:**

---

[23] ECF No. 40, p. 13.

8

RESPONSE: This paragraph seeks information as opposed to the production of documents. As such, it is an interrogatory pursuant to Fed.R.Civ.P. 33. **On September 29, 2020, the Court entered its Scheduling Order instructing the parties that neither party shall serve more than 25 interrogatories. (Doc. 19.) On October 5, 2020, Plaintiff served his First Set of Interrogatories on Defendant, which included 24 separately numbered interrogatories. (Doc. 20.) On December 2, 2020, Plaintiff served his Second Interrogatories on Defendant, which included 4 separately numbered interrogatories. (Doc. 47.) This interrogatory exceeds the Court ordered limit and therefore, Defendant is not required to respond**.

4.       **REQUEST FOR PRODUCTION OF DOCUMENTS No. 6.:** For Mr. John Mudd, the Defendant stated: "Defendant states that as of October 1, 2019, Mr. Mudd directly supervised 15 individuals. Based on employee voluntary, self-disclosures 14 of the employees identified as Caucasian and one identified as two or more races.".

    **A.**    Provide the **races (as per EEOC classification)** for the "14 of the employees identified as **Caucasian**".

    **B.**    Provide the National Origin for the "15 individuals".

    **C.**    How many of the "15 individuals" indicate disability in their Garmin personnel file?

    **D.**    What are the ages of the "15 individuals"?

**DEFENDANT:**

RESPONSE: This paragraph seeks information as opposed to the production of documents. As such, it is an interrogatory pursuant to Fed.R.Civ.P. 33. **On September 29, 2020, the Court entered its Scheduling Order instructing the parties that neither party shall serve more than 25 interrogatories. (Doc. 19.) On October 5, 2020, Plaintiff served his First Set of Interrogatories on Defendant, which included 24 separately numbered interrogatories. (Doc. 20.) On December 2, 2020, Plaintiff served his Second Interrogatories on Defendant, which included 4 separately numbered interrogatories. (Doc. 47.) This interrogatory exceeds the Court ordered limit and therefore, Defendant is not required to respond**.

5.       **REQUEST FOR PRODUCTION OF DOCUMENTS No. 7.:** For Mr. Jacob Zeller, the

9

Defendant stated: " Defendant states that as of October 1, 2019, Mr. Zeller directly supervised 8 individuals. Based on employee voluntary, self-discloses these employees identified as Caucasian.".

**A.**     Provide the **races (as per EEOC classification)** for the "8 individuals".

**B.**     Provide the National Origin for the "8 individuals".

**C.**     How many of the "8 individuals" indicate disability in their Garmin personnel file?

**D.**     What are the ages of the "8 individuals"?

**DEFENDANT:**

RESPONSE: This paragraph seeks information as opposed to the production of documents. As such, it is an interrogatory pursuant to Fed.R.Civ.P. 33. **On September 29, 2020, the Court entered its Scheduling Order instructing the parties that neither party shall serve more than 25 interrogatories. (Doc. 19.) On October 5, 2020, Plaintiff served his First Set of Interrogatories on Defendant, which included 24 separately numbered interrogatories. (Doc. 20.) On December 2, 2020, Plaintiff served his Second Interrogatories on Defendant, which included 4 separately numbered interrogatories. (Doc. 47.) This interrogatory exceeds the Court ordered limit and therefore, Defendant is not required to respond**.

6.     **REQUEST FOR PRODUCTION OF DOCUMENTS No. 9.:** In an answer to Plaintiff First Interrogatory **("16. [Inadvertently numbered as INTERROGATORY NO. 20]: Please state in exhaustive detail the basis for not hiring Plaintiff.")**, the Defendant asserted (in part) as follows: "**Defendant states that it considered all relevant information in reaching its decision not to offer employment to Plaintiff**. This information included, but was not limited to: Garmin's business needs, Plaintiff's past work history and experience, including with colors and finishes; Plaintiff's interviews during his onsite visit at Defendant on August 14, 2019.".

"….."[i]n Title VII litigation, in which plaintiffs are *** required **to demonstrate pretext, courts have customarily allowed a wide discovery of personnel files**." *Coughlin v. Lee*, supra at 1159, citing *Trevino v. Celanese Corp.*, 701 F.2d 397, 405-06 (5th Cir.1983); *Burns v. Thiokol Chem. Corp.*, 483 F.2d 300, 303-07 (5th Cir.1973); *Weahkee v. Norton*, 621 F.2d

1080, 1082 (10th Cir.1980); *Rich v. Martin Marietta Corp.*, 522 F.2d 333, 344-45 (10th Cir.1975); *Marshall v. Westinghouse Elec. Corp.*, 576 F.2d 588, 592 (5th Cir.1978)."[24]  "In *Woods v. North American Rockwell Corp.*, 480 F.2d 644 (10th Cir. 1973), the plaintiff contended that he was given an examination which was irrelevant in relationship to the job he was seeking. The court held that since the plaintiff made no showing that the test itself produced a discriminatory result, plaintiff had failed to establish a prima facie case. **The court went on to hold that the plaintiff was required to demonstrate with statistics** or otherwise the discriminatory effect of the promotion test. **We think it is plain, therefore, that the plaintiffs had a right to the information and statistics from which they could have compiled trends and policies on the numbers of white persons receiving promotions during the relevant time periods in the departments and throughout the plant opposed to the number of blacks, Hispanos and women** who received promotions. If it is true that the immediate evidence and circumstance pertaining to the plaintiffs are not sufficient to constitute a prima facie case, **plant-wide statistics and department statistics are of the highest relevance**."[25].

Provide the **Defendant Garmin statistics for the Garmin Headquarters in Olathe, for 5 years (2014-2019)**, to show how the Defendant decides "not to offer employment" to **Job Candidates** at the Olathe Headquarters.  The statistics should reflect the following factors ("A", "B", and "C" below):

A.  For **EACH** Job Candidate, State Garmin's comments as regards **"all relevant information in reaching its decision not to offer employment to [Job Candidates]. This information included, but…not limited to":**

    1.  "Garmin's business needs";

    2.  "Plaintiff's past work history and experience; including with colors and finishes";

    3.  "Plaintiff's interviews during his onsite visit at Defendant." in Olathe;

    4.  Any other "relevant information in reaching its decision".

B.  For **EACH** Job Candidate, indicate the EEOC classification of the **Race classification**:

    1.  Hispanic or Latino;

---

[24] *Onwuka v. Federal Express Corporation*, 178 F.R.D. 508 (D. Minn. 1997).
[25] *Rich v. Martin Marietta Corporation*, 522 F.2d 333 (10th Cir. 1975).

    2.        White (Not Hispanic or Latino);

    3.        Black or African American (Not Hispanic or Latino);

    4.        Native Hawaiian or Pacific Islander (Not Hispanic or Latino);

    5.        Asian (Not Hispanic or Latino);

    6.        Native American or Alaska Native (Not Hispanic or Latino);

    7.        Two or more races (Not Hispanic or Latino - All persons who identify with more than one race).

**C.**    For **EACH** Job Candidate, indicate the following:

    1.        Age;

    2.        National Origin;

    3.        Disability (if voluntary stated).

**DEFENDANT:**

RESPONSE: This paragraph seeks information as opposed to the production of documents. As such, it is an interrogatory pursuant to Fed.R.Civ.P. 33. **On September 29, 2020, the Court entered its Scheduling Order instructing the parties that neither party shall serve more than 25 interrogatories. (Doc. 19.) On October 5, 2020, Plaintiff served his First Set of Interrogatories on Defendant, which included 24 separately numbered interrogatories. (Doc. 20.) On December 2, 2020, Plaintiff served his Second Interrogatories on Defendant, which included 4 separately numbered interrogatories. (Doc. 47.) This interrogatory exceeds the Court ordered limit and therefore, Defendant is not required to respond.** To the extent this Request seeks documents related to Plaintiff's application for employment with Defendant, Defendant states that all relevant documents discovered after a reasonable search have already be e n produce d to Plaintiff in re s pons e to Plaintiff's First Request for Production of Documents.

**B.**    **The Discovery Sought is not Unreasonably Cumulative or Duplicative, and Cannot be Obtained from Some Other Source That is More Convenient, Less Burdensome, or Less Expensive**

    This is a failure-to-hire employment discrimination lawsuit.  None of the 9 interrogatories that Plaintiff wants to add is "unreasonably cumulative or duplicative, or can be obtained from some other source".  The Defendant is the only source of these discoveries.  "....the **[Defendant]'s**

argument that further discovery results will be cumulative is not supported by the record."[26]. None of the 9 interrogatories is burdensome.  "This court has held that a document request or interrogatory is overly broad or unduly **burdensome** on its face if "it (1) uses an omnibus term such as 'relating to' or 'concerning,' and (2) applies to a general category or group of documents or a broad range of information." [*Moses v. Halstead*, 236 F.R.D. 667, 672 (D. Kan. 2006).] But even if an interrogatory or request is overly broad in nature, a party generally has a duty to respond to the extent the interrogatory or request can be narrowed to an appropriate scope. [*Id*. at 672–73.]"[27].  "**A party asserting an unduly burdensome objection to a discovery request has 'the burden to show facts justifying [its] objection by demonstrating that the time or expense involved in responding to requested discovery is unduly burdensome.'**" [*Stonebarger v. Union Pac. RR Co.*, No. 13-2137-JAR-TJJ, 2015 WL 64980, at *5 (D. Kan. Jan. 5, 2015) (quoting *Shoemake v. McCormick, Summers & Talarico II, LLC*, No. 10–2514–RDR, 2011 WL 5553652, at *3 (D. Kan. Nov. 15, 2011)).] The objecting party must also show "the burden or expense is unreasonable in light of the benefits to be secured from the discovery." [*Id*.] Objections that discovery is unduly burdensome "must contain a factual basis for the claim, and the objecting party must usually provide 'an affidavit or other evidentiary proof of the time or expense involved in responding to the discovery request.'" [*Id*.]"[28].

      **C.**    **Plaintiff Has Not "had ample opportunity to obtain the information by discovery in the action" on the Nine (9) Interrogatories That Plaintiff is Requesting**

In "DEFENDANT'S ANSWERS AND OBJECTIONS TO PLAINTIFF'S SECOND SET OF INTERROGATORIES", dated January 5, 2021, the Defendant objected to Plaintiffs' "2.", "3.", "4." "SECOND SET OF INTERROGATORIES".  In "DEFENDANT'S RESPONSES AND OBJECTIONS TO PLAINTIFF'S SECOND SET OF REQUEST FOR PRODUCTION OF DOCUMENTS AND THINGS", dated January 5, 2021, the Defendant objected to Plaintiffs' Six (6) "REQUEST FOR PRODUCTION OF DOCUMENTS AND THINGS" (No. "2.", "3.", "5.", "6.","7.", "9."), categorized them as Interrogatories, and did not respond to them.

The Defendants' replies to Plaintiffs' efforts "to obtain the information by discovery"

---

[26] *In re: CCA Recordings 2255 Litigation v. United States*, Case No. 19-cv-2491-JAR (D. Kan. July 27, 2020).

[27] *Abouelenein v. Kan. City Kan. Cmty. Coll.*, Case No. 18-2670-DDC (D. Kan. Mar. 6, 2020).

[28] *Cruz v. Am. Nat'l Red Cross*, Case No. 19-cv-1107-EFM-TJJ (D. Kan. Jan. 27, 2020).

regarding the 9 interrogatories requested has been mainly as follows: **"On September 29, 2020, the Court entered its Scheduling Order instructing the parties that neither party shall serve more than 25 interrogatories. (<u>Doc. 19</u>.) On October 5, 2020, Plaintiff served his First Set of Interrogatories on Defendant, which included 24 separately numbered interrogatories. (<u>Doc. 20</u>.) On December 2, 2020, Plaintiff served his Second Interrogatories on Defendant, which included 4 separately numbered interrogatories. (<u>Doc. 47</u>.) This interrogatory exceeds the Court ordered limit and therefore, Defendant is not required to respond."**.

    **D.**    **The 9 Interrogatories That Plaintiff is Requesting Are Not "outside the scope permitted by Rule 26(b)(1)"**

"Plaintiff Ganiyu Jaiyeola ("Jaiyeola") alleges Defendant Garmin International, Inc. ("Garmin"), by **failing to hire Plaintiff**, violated Plaintiffs rights under Title VII of the Civil Rights Act of 1964, as amended ("Title VII" -Race (African American), Color (Black), and National Origin (Nigerian)), <u>29 U.S.C. § 621</u>, et seq. (Age Discrimination in Employment Act, as amended ("ADEA"), <u>42 U.S.C. §12112(b)(4)</u> (Disability Association Discrimination - Title I of the Americans with Disabilities Act ("ADA")), The Kansas Age Discrimination in Employment Act1 (Chapter 44, Art. 11, K.S.A., and specifically within the meaning of subsection (a)(l) of Section 44-1113 of said Act - "KADEA") ....  Garmin is also liable for discrimination under Section 703(a) of Title VII because the fact that Jaiyeola was not hired by Garmin was based on the influence of a Garmin employee with a discriminatory motive; Subordinate Bias Liability ("cat's paw" theory of liability) [*Equal Employment Opportunity Commission v. BCI Coca-Cola Bottling Company of Los Angeles*, <u>450 F. 3d 476</u> (10th Cir. 2006)]."[29]

    "To establish **a prima facie failure-to-hire claim**, "[t]he plaintiff must show: (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications." *Burdine*, <u>450 U.S. at 253</u> n.6 (quotations omitted)."[30]  The 9 interrogatories that Plaintiff is seeking are to provide the information required to "establish a prima facie failure-to-hire claim".  Plaintiff's additional 9 interrogatories are asking the Defendant for information on nationality, racial identities, age, and other parameters that would "establish a

---

[29] <u>ECF No. 1</u>.  Plaintiff's Complaint.
[30] *Brown v. Keystone Learning Services*, No. 19-3060 (10th Cir. 2020).

prima facie failure-to-hire claim".

"We've held that **a jury can reasonably infer pretext when an employer is "inconsistent in the reasons it provide[s] for the [failure-to-hire].**" *Whittington v. Nordam Grp. Inc.*, 429 F.3d 986, 994 (10th Cir. 2005). Such inconsistencies include abandoning explanations that the employer previously asserted. See *id.*"[31].   **The Defendant has been ""inconsistent in the reasons it provide[s] for the [failure-to-hire].""** Plaintiff.   ".....[i]n Title VII litigation, in which plaintiffs are \*\*\* required to demonstrate pretext, courts have customarily allowed a wide discovery of personnel files**." *Coughlin v. Lee*, supra at 1159, citing *Trevino v. Celanese Corp.*, 701 F.2d 397, 405-06 (5th Cir.1983); *Burns v. Thiokol Chem. Corp.*, 483 F.2d 300, 303-07 (5th Cir.1973); *Weahkee v. Norton*, 621 F.2d 1080, 1082 (10th Cir.1980); *Rich v. Martin Marietta Corp.*, 522 F.2d 333, 344-45 (10th Cir.1975); *Marshall v. Westinghouse Elec. Corp.*, 576 F.2d 588, 592 (5th Cir.1978)."[32].

"If the party seeking discovery meets its initial, minimal burden to demonstrate its request is relevant on its face, **the resisting party "...must either demonstrate the discovery sought does not come within the broad scope of relevance defined in Rule 26(b)(1), or that it is of such marginal relevance that the potential harm caused by the discovery would outweigh the presumption in favor of broad disclosure.**" See *Smith v. Kansas Pub. Employees Ret. Sys.*, 2019 WL 1171512, at \*2 (D. Kan. Mar. 13, 2019)"[33].   ".....in order to be discoverable, the requested information must be nonprivileged, relevant, and proportional to the needs of the case to be discoverable. --------"[34].   The 9 interrogatories that Plaintiff is requesting seek information that are "nonprivileged, relevant, and proportional to the needs of the case".

The issue of private or confidential information is not a limitation to the 9 requested interrogatories.   "First, "[a] concern for protecting confidentiality does not equate to a privilege." In fact, "it is well settled that confidentiality does not act as a bar to discovery and is generally not grounds to withhold documents from discovery.""[35].   "It is well-settled in this District that the

---

[31] *Fassbender v. Correct Care Solutions*, LLC, No. 17-3054 (10th Cir. 2018).

[32] *Onwuka v. Federal Express Corporation*, 178 F.R.D. 508 (D. Minn. 1997).

[33] *Nichols et al. v. Denver Health and Hospital Authority*, No. 1:2019cv02818, Document 86 (D. Colo. 2020).

[34] *Murray v. Manorcare of Topeka KS, LLC*, Case No. 19-2148-DDC-KGG (D. Kan. Apr. 10, 2020).

[35] *Sarl v. Sprint Nextel Corp., et al.*, Case No. 09-2269-CM-DJW (D. Kan. July 29, 2011).

production of private or confidential information is not, in and of itself, a valid reason to withhold discovery as the production could governed by a protective order....... Simply stated, "'[a] concern for protecting confidentiality does not equate to privilege.'"....."[36].

## III.      CONCLUSION

For all the reasons stated in the Motion and Memorandum, Plaintiff hereby ask[37] the Court to Grant Plaintiff additional nine (9) interrogatories.

Respectfully submitted,

_____

Dated: January 19, 2021          Ganiyu A. Jaiyeola, Ph.D., MBA

749 Preserve Circle Drive SE #6

Grand Rapids, Michigan 49548

Tel.: 616.635.4025

ganiyu.jaiyeola@gmail.com

PLAINTIFF

*pro se*

---

[36] *Murray v. Manorcare of Topeka KS, LLC*, Case No. 19-2148-DDC-KGG (D. Kan. Apr. 10, 2020).
[37] Pursuant to Fed. R. Civ. P. 33(a)(1) and Fed. R. Civ. P. 26 (b)(2)(C).

## CERTIFICATE OF SERVICE

Plaintiff hereby certifies that on this 19th day of January, 2021, Plaintiff e-mailed this document to the District Court Clerk's office where it would be filed using the Court's CM/ECF system which will automatically send the document to the following Defendants' Attorneys:

Kerri S. Reisdorff

Margaret K. Young

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

4520 Main Street, Suite 400

Kansas City, Missouri 64111

kerri.reisdorff@ogletree.com

margaret.young@ogletree.com

ATTORNEYS FOR DEFENDANT

Respectfully submitted,

_____

Ganiyu A. Jaiyeola, Ph.D., MBA

PLAINTIFF

*pro se*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS


GANIYU AYINLA JAIYEOLA,

          Plaintiff,


v.                          Case No.: 2:20-cv-2068-HLT-JPO


GARMIN INTERNATIONAL, INC.,

          Defendant.


## PLAINTIFF'S MOTION FOR DISQUALIFICATION OF MAGISTRATE JUDGE PURSUANT TO 28 U.S.C. § 455(a)


Pursuant to 28 U.S.C. § 455(a), Plaintiff hereby files a Motion for Disqualification of Magistrate Judge James P. O'Hara ("Magistrate") from this case.

This is an employment discrimination lawsuit[1] in which Garmin International, Inc. ("Garmin"), by failing to hire Plaintiff ("Jaiyeola") (for the "Advanced Materials Engineer - Metals-19001CL"[2] position he applied and interviewed for over the phone and on-site at Garmin's Headquarters/Manufacturing Center in Olathe, Kansas) violated Jaiyeola's rights under Title VII of the Civil Rights Act of 1964, as amended ("Title VII" – Race (African American), Color (Black), and National Origin (Nigerian)), 29 U.S.C. § 621, et seq. (Age Discrimination in Employment Act, as amended ("ADEA"), 42 U.S.C. §12112(b)(4) (Disability Association Discrimination - Title I of the Americans with Disabilities Act ("ADA")), The Kansas Age Discrimination in Employment Act[3] (Chapter 44, Art. 11, K.S.A., and specifically within the

---

[1] ECF No. 1, pp. 1-21. Plaintiff's Complaint.
[2] ECF No. 1-17, p. 2. Garmin's Human Resources Email Stating That Plaintiff Was Not Hired.
[3] http://www.kslegislature.org/li/b2019_20/statute/044_000_0000_chapter/044_011_0000_article

meaning of subsection (a)(1) of Section 44-1113 of said Act - "KADEA") and 42 U.S.C. § 1983 (Denial of Due Process – "Due Process").  Garmin is also liable for discrimination under Section 703(a) of Title VII because the fact that Jaiyeola was not hired by Garmin was based on the influence of a Garmin employee, Mr. Jeff Minelli (Garmin's Director of Mechanical Engineering), with a discriminatory motive; Subordinate Bias Liability ("cat's paw" theory of liability)[4].  Defendant's motion to dismiss the 42 U.S.C. § 1983 claim was granted by the Court but the pleading (in the same Defendant's motion) to dismiss the Subordinate Bias Liability claim was Denied[5].

Plaintiff states as follows:

1. Plaintiff is a *pro se*.  In *Hall v. Witteman*, this Court stated that "*Pro se* complaints, however inartfully pleaded, must be liberally construed, and are held to less stringent standards than formal pleadings drafted by lawyers. *Erickson v. Pardus*, ___ U.S. ___, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007). See *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005)……"[6]. The Sixth Circuit asserted that "We recognize that *pro se* litigants impose a burden on the courts and that clients are usually better off if represented by counsel."[7].  The U.S. Supreme Court has stated that *pro se*[8] pleadings and motions should be viewed liberally and held to a lesser standard than those drafted by Attorneys.

2. "..**the fair administration of justice requires that [parties] challenge a judge's purported impartiality when facts arise which suggest the judge has exhibited bias or prejudice**. The appropriate mechanism for such a challenge is **a motion to recuse**."[9].  A motion to recuse

---

/044_011_0013_section/044_011_0013_k/

[4] *Equal Employment Opportunity Commission v. BCI Coca-Cola Bottling Company of Los Angeles*, 450 F. 3d 476 (10th Cir. 2006).

[5] ECF No. 17, pp. 4-6. Violation of Title VII Based on Subordinate Bias Liability.

[6] *Hall v. Witteman*, 569 F. Supp. 2d 1208 (D. Kan. 2008).

[7] *King v. Curtis*, No. 14-2614 (6th Cir. 2015).

[8] *Haines v. Kerner*, 404 U.S. 520 (1971).

[9] *United States v. Cooper* (in *Re Zalkind*) 872 F.2d 1 (1st Cir. 1989).

prevents **punitive and vindictive use of judicial power**[10].   **Even if "...the judge feels a deep disdain for [a party]..."**[11], **a party deserves a fair hearing in Court.   ".…. our holding…in no way relieves judges of their duties to not only refrain from presiding over cases in which they harbor a bias against …[a] party, but to also avoid the mere appearance of impropriety. Parties have the right to an impartial judge, and we must stand unwavering in our commitment not to impinge upon this right."**[12].   The Tenth Circuit Court of Appeals has a judicial misconduct complaint process for parties to use in cases of punitive and vindictive use of judicial power and other complaints.   Even though not required under 28 U.S.C. § 455(a), "A judge who is the subject of a disqualification motion may transfer the matter to another judge for decision. 13D Charles Alan Wright & Arthur R. Miller et al., Federal Practice and Procedure § 3550 (3d ed. 2008);....("[T]he judge would have been well-advised either to bow out of the case or to ask that the recusal motion be assigned to a different judge for hearing.".…)."[13].

3.      Under 28 U.S.C. § 455(a), "The initial inquiry—whether a reasonable factual basis exists for questioning the judge's impartiality—is limited to outward manifestations and the reasonable inferences to be drawn from those manifestations. .."[14].   "Section 455(a) provides that a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." Under § 455, the "test is whether a reasonable person, knowing all the relevant facts, would harbor doubts about the judge's impartiality." *Hinman v. Rogers*, 831 F.2d 937, 939 (10th Cir.

---

[10] Inquiry Concerning A Judge, No. 07-64 Re: Ralph E. Eriksson, Case No. SC07-1648 (FL Supreme CT., February 11, 2010).

[11] *Jimmie Gordon v. Blaine Lafler*, No. 15-1494 (6th Cir. 2017).

[12] *Id*.

[13] *Burke v. Regalado et al.*, No. 18-5042 (10th Cir. 2019).

[14] *Ngiendo v. Sedgwick Claims Management Services, Inc. et al*., No. 5:13-cv-04008, Document 73 (D. Kan. May 26, 2015).

1987) (per curiam)."[15]. "…disqualification is appropriate only where the reasonable person, were he to know all the circumstances, would harbor doubts about the judge's impartiality.'" *Wells*, <u>873 F.3d at 1251</u> (quoting Mathis, <u>787 F.3d at 1310</u>). "'In conducting this review, we must ask how these facts would appear to a well-informed, thoughtful and objective observer,' who is 'an average member of the public,' not a 'hypersensitive, cynical, and suspicious person.'" *Id.* (quoting *Mathis*, <u>787 F.3d at 1310</u>)"[16]. "The Court exercises discretion in deciding whether to recuse. See *Weatherhead v. Globe Int'l, Inc.*, <u>832 F.2d 1226, 1227</u> (10th Cir. 1987)."[17]

4.      In **Plaintiffs' two recently (and related) filed motions (See <u>ECF No. 61</u> and <u>ECF No. 63</u>)** with the Court, Plaintiff requested for accelerated hearing in order to do a Defendant deposition.   Plaintiffs' two motions requested a ruling on the substantive issues in BOTH MOTIONS (See <u>ECF No. 61</u> and <u>ECF No. 63</u>) in order to do the deposition of a Defendant fact witness on January 21, 2020.  (See <u>ECF No. 60</u>).  The Magistrate ruled on the substantive issues in <u>ECF No. 61</u> (See <u>ECF No. 65</u>) but he **DID NOT** rule on the substantive issues in the related <u>ECF No. 63</u> (See <u>ECF No. 66</u>).  **By selectively ruling on the substantive issues in <u>ECF No. 61</u> and NOT ruling on the substantive issues in the related <u>ECF No. 63</u>, the Magistrate showed that he has a bias in this case.**  "a reasonable person, knowing all the relevant facts, would harbor doubts about the [Magistrate's] impartiality"[18] in this case.

5.      For all the above reasons and for the reasons stated in the Memorandum, Plaintiff hereby ask[19] this Court to Disqualify Honorable Magistrate Judge James P. O'Hara from presiding over any further proceedings in this case and Honorable Magistrate Judge James P. O'Hara should Recuse himself from this case.

---

[15] *Vazirabadi v. Denver Health and Hospital Auth., et al.*, No. 18-1411 (10th Cir. 2019).
[16] *United States v. Mobley*, No. 19-3122 (10th Cir. 2020).
[17] *Zhu v. Federal Housing Finance Board, et al.*, No. 2:04-cv-02539, Document 501 (D. Kan. July 19, 2007).
[18] *Vazirabadi*.
[19] Pursuant to <u>28 U.S.C. § 455(a)</u>.

Respectfully submitted,

Dated:  January 22, 2021

Ganiyu A. Jaiyeola, Ph.D., MBA

749 Preserve Circle Drive SE #6

Grand Rapids, Michigan 49548

Tel.: 616.635.4025

ganiyu.jaiyeola@gmail.com

PLAINTIFF

*pro se*

## CERTIFICATE OF SERVICE

Plaintiff hereby certifies that on this 22nd day of January, 2021, Plaintiff e-mailed this document to the District Court Clerk's office where it would be filed using the Court's CM/ECF system which will automatically send the document to the following Defendants' Attorneys:

Kerri S. Reisdorff

Margaret K. Young

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

4520 Main Street, Suite 400

Kansas City, Missouri 64111

kerri.reisdorff@ogletree.com

margaret.young@ogletree.com

ATTORNEYS FOR DEFENDANT

Respectfully submitted,

_____

Ganiyu A. Jaiyeola, Ph.D., MBA

PLAINTIFF

*pro se*

6

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


GANIYU AYINLA JAIYEOLA,
                    Plaintiff,

v.                                      Case No.: 2:20-cv-2068-HLT-JPO

GARMIN INTERNATIONAL, INC.,
                    Defendant.


**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION**

**FOR DISQUALIFICATION OF MAGISTRATE JUDGE**

**PURSUANT TO <u>28 U.S.C. § 455(a)</u>**


This is Plaintiff's Memorandum in support of Plaintiff's Motion[1] for Disqualification of

Magistrate Judge James P. O'Hara ("Magistrate") from this case.  For the reasons stated below,

Plaintiff's Motion should be Granted.


## I.        INTRODUCTION

Plaintiff ("Jaiyeola") is a *pro se*.  In *Hall v. Witteman*,[2] this Court stated that "*Pro se*

complaints, however inartfully pleaded, must be liberally construed, and are held to less stringent

standards than formal pleadings drafted by lawyers. *Erickson v. Pardus*, ___ U.S. ___, 127 S.Ct.

2197, 2200, <u>167 L.Ed.2d 1081</u> (2007). See *Martinez v. Garden*, <u>430 F.3d 1302, 1304</u> (10th Cir.

2005)……".  The Sixth Circuit asserted that "We recognize that *pro se* litigants impose a burden

on the courts and that clients are usually better off if represented by counsel."[3]  The U.S.

---

[1] Pursuant to <u>28 U.S.C. § 455(a)</u>.
[2] *Hall v. Witteman*, <u>569 F. Supp. 2d 1208</u> (D. Kan. 2008).
[3] *King v. Curtis*, No. 14-2614 (6th Cir. 2015).

Supreme Court has stated that *pro se*[4] pleadings and motions should be viewed liberally and held to a lesser standard than those drafted by Attorneys.

This is an employment discrimination lawsuit[5] in which Garmin International, Inc. ("Garmin"), by failing to hire Jaiyeola (for the "Advanced Materials Engineer - Metals-19001CL"[6] position he applied and interviewed for over the phone and on-site at Garmin's Headquarters/Manufacturing Center in Olathe, Kansas) violated Jaiyeola's rights under Title VII of the Civil Rights Act of 1964, as amended ("Title VII" – Race (African American), Color (Black), and National Origin (Nigerian)), 29 U.S.C. § 621, et seq. (Age Discrimination in Employment Act, as amended ("ADEA"), 42 U.S.C. §12112(b)(4) (Disability Association Discrimination - Title I of the Americans with Disabilities Act ("ADA")), The Kansas Age Discrimination in Employment Act[7] (Chapter 44, Art. 11, K.S.A., and specifically within the meaning of subsection (a)(1) of Section 44-1113 of said Act - "KADEA") and 42 U.S.C. § 1983 (Denial of Due Process – "Due Process").  Garmin is also liable for discrimination under Section 703(a) of Title VII because the fact that Jaiyeola was not hired by Garmin was based on the influence of a Garmin employee, Mr. Jeff Minelli (Garmin's Director of Mechanical Engineering), with a discriminatory motive; Subordinate Bias Liability ("cat's paw" theory of liability)[8].  Defendant's motion to dismiss the 42 U.S.C. § 1983 claim was granted by the Court

---

[4] *Haines v. Kerner*, 404 U.S. 520 (1971).
[5] ECF No. 1, pp. 1-21. Plaintiff's Complaint.
[6] ECF No. 1-17, p. 2. Garmin's Human Resources Email Stating That Plaintiff Was Not Hired.
[7] http://www.kslegislature.org/li/b2019_20/statute/044_000_0000_chapter/044_011_0000_article/044_011_0013_section/044_011_0013_k/
[8] *Equal Employment Opportunity Commission v. BCI Coca-Cola Bottling Company of Los Angeles*, 450 F. 3d 476 (10th Cir. 2006).

2

but the pleading (in the same Defendant's motion) to dismiss the Subordinate Bias Liability claim was Denied[9].

Dr. Min Kao (**Male, Asian American - originally from Taiwan**; East Asia) co-founded Garmin with Gary Burrell (**Male, White American**) in October 1989.  Kao, currently the Executive Chairman of Garmin, "…led the development of the first GPS navigator to be certified by the FAA."[10] and for all intents and purposes the GPS technology brain for the establishment of Garmin.

A diversity rating report on Garmin concluded that "Diverse employees at Garmin International score the company 64/100 across various culture categories, placing Garmin International in the bottom 45% of companies in the United States with 10,000+ Employees for Comparably's diversity score.  The Diversity score provides insights into how diverse employees feel and rate their work experience at Garmin International across various culture dimensions."[11].  In comparison, Trimble (https://www.trimble.com/), a Garmin competitor, scored "77/100"[12] and placed at "top 10%"[13].

**Garmin's significantly incredibly low Diversity Rating (for an American multinational technology company) is strongly confirmed by the multiple employment discrimination lawsuits against Garmin in the United States since 2009 to date**.  A former **Female** Garmin employee stated the following in her Complaint: "This is an employment case based upon and arising under the **Family and Medical Leave Act**, as amended, <u>29 U.S.C. §</u>

---

[9] <u>ECF No. 17, pp. 4-6</u>. Violation of Title VII Based on Subordinate Bias Liability.
[10] Garmin Executive Team: https://www.garmin.com/en-US/company/leadership/executive/
[11] https://www.comparably.com/companies/garmin-international/diversity (as it appeared on October 28, 2020).
[12] https://www.comparably.com/companies/trimble/diversity (as it appeared on October 28, 2020).
[13] *Id*.

2611 et seq. ("FMLA"); the **Americans with Disabilities** Act, 42 U.S.C. § 12101 et seq.

("ADA") the **Age Discrimination** in Employment Act, 29 U.S.C. § 621 et seq. ("ADEA")"[14].  In

2009[15] and 2010[16], **failure-to-hire employment discrimination lawsuits** based on "Title VII of

the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, et seq., for employment

discrimination on the basis of **race, color, religion, gender, or national origin**." and "Age

Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §§ 621, et seq., for

employment discrimination on the basis of age (age 40 or older)." were filed against Garmin.  In

2017, a Garmin employee filed an Equal Employment Opportunity Commission ("EEOC")

charge of discrimination based on "**race, sex and national origin discrimination** and

**retaliation** under Title VII"[17] against Garmin **after working for Garmin for 11 years**: **1.)**

"**Plaintiff is a black female from Brazil, South America**. She has been a **naturalized citizen

of the United States** since 2009."[18]; **2.)** "**Garmin's culture shows a preference for white

employees and male employees**. For example, in July 2016, **a Garmin employee sent an email

asking for hand models, specifically Caucasian hand models**."[19]; **3.)** "Garmin's selection

procedures and practices resulted in **a workforce at its headquarters in 2017 that was eighty-

two percent (82%) white, two and one-half percent (2.5%) black and two and two-tenths

percent (2.2%) Hispanic.**"[20]; and **4.)** "Garmin's selection procedures and practices resulted in **a**

---

[14] *Peterson v. Garmin International, Inc.*, No. 2:09-cv-02659-JAR (D. Kan. Dec. 22, 2009); ECF No. 1, p. 1 at ¶ "1".
[15] *Leo v. Garmin Int'l, Inc.*, No. 2:09-cv-02139-KHV (D. Kan. 2009), ECF No. 1, p. 1.
[16] *Leo v. Garmin Int'l, Inc.*, No. 2:10-cv-02495-JTM-DJW (D. Kan. 2010), ECF No. 1-1, p. 1.
[17] *Antunes v. Garmin International, Inc.*, No. 2:18-cv-02697-JAR-KGG (D. Kan. Dec. 18, 2018), ECF No. 1, ¶ 9.
[18] *Id*; ¶ 12.
[19] *Id*; ¶ 26.
[20] *Id*; ¶ 45.

workforce at its headquarters in 2017 that was seventy-seven percent (77%) male and twenty-three percent (23%) female."[21].

Plaintiff interviewed[22] onsite at Garmin Headquarters/Manufacturing Center in Olathe, Kansas, on August 14, 2019 and noticed the following: **1.)** The Senior Technical Recruiter who interviewed Plaintiff over the phone and onsite was a **White Female**; **2.)** Plaintiff was given a tour of Garmin's facilities by a **White Female**; **3.)** The Technical Team that interviewed Plaintiff were **8 White Males**, and **4.)** The Garmin Engineers that attended Plaintiff's PowerPoint presentation were **14 White Males (93%)** and **1 White Female (7%)**.

## II.      ARGUMENT

**"Section 455(a) requires disqualification for the appearance of impartiality**, § 455(b)(1) for actual partiality. [Charles Gardner Geyh, Judicial Disqualification: An Analysis of Federal Law 76-77 (2d ed. 2010)], at 17...."[23]. **"The test under § 455(a) is not whether the judge believes he or she is capable of impartiality, but rather whether a reasonable person might question the judge's impartiality**. *United States v. Cooley*, 1 F.3d 985, 993 (10th Cir. 1993); *Hinman v. Rogers*, 831 F.2d 937, 939 (10th Cir. 1987). Similarly, the test is not whether someone could conceivably question a judge's impartiality but whether a reasonable person, knowing all relevant facts, would harbor doubts. *In re McCarthey*, 368 F.3d 1266, 1269 (10th Cir. 2004); *Bryce*, 289 F.3d at 659; *Cooley*, 1 F.3d at 993.87 As Justice Kennedy observed, **"[U]nder § 455(a), a judge should be disqualified only if it appears that he or she harbors an aversion, hostility or disposition of a kind that a fair-minded person could not set aside when judging the dispute."** *Liteky v. United*

---

[21] *Id*; ¶ 47.
[22] ECF No. 1-14, p. 2.  Plaintiff's Interview Schedule on August 14, 2019.
[23] *Burke v. Regalado et al.*, No. 18-5042 (10th Cir. 2019).

*States*, 510 U.S. 540, 558 (1994) (Kennedy, J., concurring in the judgment)."[24].   **Relevant facts must support the moving party's belief that the judge is biased**. See *United States v. Mendoza*, 468 F.3d 1256, 1262 (10th Cir. 2006); Nichols, 71 F.3d at 352."[25].   "The Court exercises discretion in deciding whether to recuse. See *Weatherhead v. Globe Int'l, Inc.*, 832 F.2d 1226, 1227 (10th Cir. 1987)."[26].

Due Process requires disqualification of judges where "experience teaches that the probability of actual bias on the part of the judge or decision maker is too high to be constitutionally tolerable."[27]. If there is "such a likelihood of bias or an appearance of bias that the judge was unable to hold the balance between vindicating the interests of the court and the interests of the [Plaintiff]."[28], then …., he should …. certify his disqualification where there are circumstances of such a nature to cause doubt as to his partiality, bias or prejudice."[29].   28 U.S.C. § 455(a) statute was adopted "to promote public confidence in the impartiality"[30] of the Federal Courts.

A party is entitled not just to the reality of fair treatment, but to its appearance as well.   As aptly stated by the Fifth Circuit[31,32]: "…The purpose of the disqualification statute is to avoid even the appearance of impropriety; the appearance of impropriety is not lessened by the fact that the litigation would have come out the same anyway…."; "justice must satisfy the appearance of justice."[33]

---

[24] *Id.*
[25] *Id.*
[26] *Zhu v. Federal Housing Finance Board, et al.*, No. 2:04-cv-02539, Document 501 (D. Kan. July 19, 2007).
[27] *Withrow v. Larkin*, 421 U. S. 35, 47, 95 S. Ct 1456, 543 LEd2d 712 (1975).
[28] *Ungar v. Sarafite*, 376 US 575, 588; 84 S. Ct. 841; 11 LEd2d 921 (1964).
[29] *Merritt v. Hunter*, 575 P2d 623, 624 (Okla, 1978).
[30] *Roberts v. Bailar*, 625 F2d 125, 129 (6th Cir 1980).
[31] *Health Services Acquisition Corp v. Liljeberg*, 796 F2d 795, 801 (5th Cir 1986).
[32] *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 870, 108 S. Ct. 2194, 100 L. Ed. 2d 855 (1988).
[33] *Offutt v. United States*, 348 U.S. 11 (1954).

A.      **The Magistrate is Biased in This Case Because the Magistrate Was Arbitrary And Capricious As Regards ECF No. 61 And ECF No. 63**

"Relevant facts must support the moving party's belief that the judge is biased. See *United States v. Mendoza*, 468 F.3d 1256, 1262 (10th Cir. 2006); Nichols, 71 F.3d at 352."[34].

In **Plaintiffs' two recently (and related) filed motions (See ECF No. 61 and ECF No. 63)** with the Court, Plaintiff requested for accelerated hearing in order to do a Defendant deposition.   Plaintiffs' two motions requested a ruling on the substantive issues in BOTH MOTIONS (See ECF No. 61 and ECF No. 63) in order to do the deposition of a Defendant fact witness on January 21, 2020.  (See ECF No. 60).  The Magistrate ruled on the substantive issues in ECF No. 61 (See ECF No. 65) but he **DID NOT** rule on the substantive issues in the related ECF No. 63 (See ECF No. 66).  **By selectively ruling on the substantive issues in ECF No. 61 and NOT ruling on the substantive issues in the related ECF No. 63, the Magistrate showed that he has a bias in this case.**  "a reasonable person, knowing all the relevant facts, would harbor doubts about the [Magistrate's] impartiality"[35] in this case.  The Magistrate did not give the Defendant the opportunity to respond to either ECF No. 61 or ECF No. 63 before his ruling on ECF No. 61 and ECF No. 63.

**The Magistrate's arbitrary and capricious judicial action as regards ECF No. 61 and ECF No. 63 confirmed that the Magistrate is biased in this case.**  ""[A] court abuses its discretion only when it makes a clear error of judgment, exceeds the bounds of permissible choice, or **when its decision is arbitrary, capricious** or whimsical, or results in a manifestly unreasonable judgment." *Id*. at 1309 (alteration in original) (citation and internal quotation marks omitted)."[36].  The Magistrate

---

[34] *Burke*.
[35] *Vazirabadi*.
[36] *United States v. Mobley*, No. 19-3122 (10th Cir. 2020).

abused his discretion by being "**arbitrary, capricious**".  The Magistrate abused his discretion because he is biased in this case.  "a reasonable person, knowing all the relevant facts, would harbor doubts about the [Magistrate's] impartiality"[37] in this case.

## III.      CONCLUSION

For all the above reasons, Plaintiff hereby ask[38] this Court to Disqualify Honorable Magistrate Judge James P. O'Hara from presiding over any further proceedings in this case and Honorable Magistrate Judge James P. O'Hara should Recuse himself from this case.

Respectfully submitted,

Dated: January 22, 2021

Ganiyu A. Jaiyeola, Ph.D., MBA

749 Preserve Circle Drive SE #6

Grand Rapids, Michigan 49548

Tel.: 616.635.4025

ganiyu.jaiyeola@gmail.com

PLAINTIFF

*pro se*

---

[37] *Vazirabadi v. Denver Health and Hospital Auth., et al.*, No. 18-1411 (10th Cir. 2019).
[38] Pursuant to 28 U.S.C. § 455(a).

8

## CERTIFICATE OF SERVICE

Plaintiff hereby certifies that on this 22nd day of January, 2021, Plaintiff e-mailed this

document to the District Court Clerk's office where it would be filed using the Court's CM/ECF

system which will automatically send the document to the following Defendants' Attorneys:


Kerri S. Reisdorff

Margaret K. Young

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

4520 Main Street, Suite 400

Kansas City, Missouri 64111

kerri.reisdorff@ogletree.com

margaret.young@ogletree.com


ATTORNEYS FOR DEFENDANT


Respectfully submitted,

_____

Ganiyu A. Jaiyeola, Ph.D., MBA


PLAINTIFF

*pro se*

9

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

GANIYU AYINLA JAIYEOLA,          )
                                 )
                Plaintiff,       )
                                 )
v.                               )   Case No. 20-2068-HLT
                                 )
GARMIN INTERNATIONAL, INC.,      )
                                 )
                Defendant.       )

**<u>ORDER</u>**

The pro se plaintiff, Ganiyu Ayinla Jaiyeola, has filed a second motion (<u>ECF No.
81</u>) to disqualify the presiding U.S. Magistrate Judge, James P. O'Hara.  Plaintiff invokes
<u>28 U.S.C. § 455(a)</u>, which governs disqualification of a judge.  On November 9, 2020, the
undersigned denied plaintiff's first motion[1] to disqualify under the same statute, based on
the undersigned's rulings in this case and statements made at the parties' Rule 16
scheduling conference.[2]  For the reasons discussed below, the court respectfully denies
plaintiff's second motion to disqualify.

Section 455(a) provides that "[a]ny justice, judge, or magistrate of the United States
shall disqualify himself in any proceeding in which his impartiality might reasonably be
questioned." "The standard is purely objective. The inquiry is limited to outward
manifestations and reasonable inferences drawn therefrom.  In applying the test, the initial

_____

[1] <u>ECF No. 35</u>.

[2] <u>ECF No. 38</u>.

O:\ORDERS\20-2068-HLT-81.DOCX

inquiry is whether a reasonable *factual* basis exists for calling the judge's impartiality into question."[3]  Under this statute, "[t]here must be a reasonable factual basis to question the judge's impartiality."[4]  Recusal is not required based only on assumptions about a judge's beliefs that aren't substantiated by the record.[5]

Plaintiff has again moved to disqualify the undersigned.  Plaintiff cites two recently-filed motions, one for a protective order (ECF No. 61) and one to compel certain discovery responses (ECF No. 63).  On January 12, 2021, the undersigned denied the motion for protective order because he could rule on the issue without requiring defendant to respond.[6]  To summarize, plaintiff had moved to preclude the attendance of a corporate representative at depositions, and the District of Kansas Deposition Guidelines specifically allow a corporate representative to attend depositions.  The undersigned, citing those guidelines, denied plaintiff's motion.

As for the motion to compel, the undersigned hasn't yet ruled.  Plaintiff asked for expedited briefing on the motion, filed on January 12, 2021, because he wanted rulings before a deposition scheduled for January 21.  Plaintiff had previously asked for an additional month to file the motion to compel, which was granted.[7]  The undersigned didn't

---

[3] *United States v. Cooley*, 1 F.3d 985, 993 (10th Cir. 1993) (citations omitted) (emphasis in original).

[4] *In re McCarthey*, 368 F.3d 1266, 1269 (10th Cir. 2004).

[5] *Id.* at 1269–70.

[6] ECF No. 65.

[7] ECF No. 66.

find good cause to then expedite the briefing to accommodate the recently-scheduled deposition of John Mudd, which was, at that point, only nine days away. In the absence of good cause to expedite the briefing, the undersigned has allowed the full briefing period for the motion, as governed by D. Kan. R. 6.1(d)(1). Further, the text entry instructed plaintiff he could postpone the deposition if he wanted to wait until the undersigned rules. The motion remains pending and will be ripe on February 9, 2021. It appears from the docket plaintiff has indeed filed an amended notice moving that deposition to February 23, 2021.[8]

Plaintiff contends the undersigned should be disqualified for "selectively ruling"[9] on the motion for protective order and declining to rule on the motion to compel. Plaintiff cites the disqualification standard to argue the undersigned has a bias in this case. But plaintiff hasn't met his burden, beyond arguing the rulings were "arbitrary and capricious,"[10] and the record doesn't show any bias. The undersigned used his discretion to rule on the motion for protective order because the Deposition Guidelines are clear as to the legal issue presented, and no response from defendant was needed. In contrast, the undersigned has allowed full briefing on the motion to compel to comport with the practices of the District of Kansas, as well as D. Kan. R. 6.1(d)(1). There is no reason to recuse based on these rulings.

---

[8] ECF No. 76.

[9] ECF No. 82 at 7.

[10] *Id.*

3

Appellate Case: 21-3114   Document: 010110544162   Date Filed: 07/06/2021   Page: 869

IT IS THEREFORE ORDERED that plaintiff's second motion to disqualify (ECF No. 81) is denied.

Dated January 25, 2021, at Kansas City, Kansas.

 s/ James P. O'Hara
James P. O'Hara
U.S. Magistrate Judge